**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA and THE CONTINENTAL INSURANCE COMPANY** : : : : : : : | JURY TRIAL DEMANDED |
| : | |
| Plaintiffs,                : | **FIRST AMENDED COMPLAINT** |
| : | |
| versus                : | CIVIL ACTION NO. 08 CV 02012 |
| : | |
| **FREEPORT-MCMORAN COPPER & GOLD INC., AS THE CLAIMED SUCCESSOR TO PHELPS DODGE CORPORATION, AS THE CLAIMED SUCCESSOR TO CYPRUS AMAX MINERALS COMPANY, AS THE CLAIMED SUCCESSOR TO AMAX, INC. AND AMAX METALS RECOVERY, INC., AS SUCCESSOR TO AMERICAN METAL CLIMAX, INC.** : : : : : : : : : : | **ELECTRONICALLY FILED DOCUMENT** |
| : | |
| Defendant.                : | |
| : | |

## COMPLAINT

Plaintiffs Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance Company of North America) ("Century") and The Continental Insurance Company ("Continental") invoke the jurisdiction of this court pursuant to 28 U.S.C.A. § 1332 (diversity of citizenship) and plead as their complaint against defendant Freeport-McMoRan Copper and Gold Inc., as the claimed successor to Phelps Dodge Corporation, as the claimed successor to Cyprus Amax Minerals Company, as the claimed successor to Amax, Inc., as successor to American Metal Climax, Inc. ("Freeport McMoRan") as follows:

PHLDMS1 4195826v.6

INTRODUCTION

1.      In this insurance coverage action, Century and Continental seek a declaratory judgment that the liability insurance policies Century and Continental issued to Amax, Inc. and/or American Metal Climax, Inc. (collectively, "Amax") provide no insurance coverage for the costs Freeport-McMoRan claims it has incurred and continues to incur in its effort to assimilate the corporate records of Amax into Freeport-McMoRan's own corporate records (the "Corporate Records Assimilation Project").  Century and Continental also seek a declaration of all rights and obligations between the parties under the insurance policies issued by Century and Continental to Freeport-McMoRan with respect to the underlying Louisiana Litigation (defined below).  Century and Continental further seek to recover on the basis of unjust enrichment any past payments made by Century and Continental based on false and/or misleading information provided by Freeport-McMoRan in connection with the Louisiana Litigation, and any payments that were made by Century and Continental for uncovered defense costs submitted by Freeport-McMoRan, which unjustly enrich Freeport-McMoRan.  Finally, Continental seeks to recover damages for Freeport-McMoRan's fraudulent misrepresentations with respect to the Corporate Records Assimilation Project.

THE PARTIES

2.      Plaintiff Century is a corporation that is incorporated in the Commonwealth of Pennsylvania and whose principal place of business is in Philadelphia, Pennsylvania.  Century, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Pennsylvania.

3.      Plaintiff Continental is a corporation that is incorporated in the Commonwealth of Pennsylvania and whose principal place of business is in Chicago, Illinois.  Continental, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Pennsylvania and Illinois.

4.    Defendant Freeport-McMoRan is a corporation that is incorporated in the State of Delaware and whose principal place of business is in New Orleans, Louisiana. Freeport-McMoRan, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Delaware and Louisiana.

### AMOUNT IN CONTROVERSY

5.    Freeport-McMoRan claims it has incurred $3,900,000 through December 2007 and that it will incur a total of $7,800,000 by year-end 2008 for the Corporate Records Assimilation Project. The parties dispute whether (a) Freeport-McMoRan is entitled to coverage under the policies that Century and Continental issued to Amax, and (b) even if Freeport-McMoRan is entitled to coverage, whether Century and Continental are responsible for these costs. Freeport-McMoRan further claims that it is entitled to reimbursement of defense costs incurred in connection with the Louisiana Litigation. Although Century and Continental have in the past paid amounts purported to be their proportionate and equitable share of covered reasonable and necessary defense costs, Century and Continental dispute the amount claimed by Freeport-McMoRan.

### JURISDICTION

6.    Jurisdiction is proper in this court under 28 U.S.C.A. § 1332 (diversity of citizenship) because this is a civil action between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### VENUE

7.    Venue is proper in this court under 28 U.S.C.A. § 1391 (a) and 28 U.S.C.A. § 1391 (c) because Freeport-McMoRan is a defendant corporation that resides in this judicial district because it is subject to personal jurisdiction in this district at the date of commencement of this action.

-3-

8.    Venue is further proper in this court under 28 U.S.C.A. § 1391 (a) and 28 U.S.C.A. § 1391 (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### STATEMENT OF CENTURY'S AND CONTINENTAL'S CLAIM

9.    On January 1, 1958, Climax Molybdenum Company merged with American Metals Company to form American Metal Climax, Inc.

10.    On or after January 1, 1975, American Metal Climax, Inc. became Amax, Inc.

11.    On or around November 15, 1993, Amax, Inc. merged with Cyprus Minerals Company to form Cyprus Amax Minerals Company.

12.    On December 2, 1999, Phelps Dodge Corporation acquired Cyprus Amax Minerals Company.

13.    Amax Minerals Recovery, Inc. ("AMRI") is a wholly owned subsidiary of Cyprus Amax Minerals Company.

14.    On March 19, 2007, Freeport-McMoRan acquired Phelps Dodge Corporation.

15.    Century issued the following liability insurance policies to Amax, which at the time of issuance, had its principal place of business located in New York, New York:

(a)    Policy No. LB 39736 for the January 1, 1965 to January 1, 1968 policy period;

(b)    Policy No. ALB 47168 for the January 1, 1968 to January 1, 1971 policy period;

(c)    Policy No. ALB 47212 for the January 1, 1971 to January 1, 1972 policy period;

-4-

(d)     Policy No. ALB 47240 for the January 1, 1972 to January 1, 1974 policy period;

(e)     Policy No. ALB 47276 for the January 1, 1974 to January 1, 1975 policy period; and

(f)     Policy No. ALB 47279 for the January 30, 1974 to January 1, 1975 policy period.

16.     Continental issued the following primary, occurrence-based, liability insurance policies to Amax, which at the time of issuance of at least the first policy at issue, had its principal place of business located in New York, New York:

(a)     Policy No. L-3 32 08 62 for the January 1, 1975 to January 1, 1976 policy period;

(b)     Policy No. L-3 61 88 26 for the January 1, 1976 to January 1, 1977 policy period;

(c)     Policy No. L 1 18 43 28 for the January 1, 1977 to January 1, 1980 policy period;

(d)     Policy No. SRL-3 63 59 13 for the January 1, 1980 to January 1, 1981 policy period;

(e)     Policy No. SRL 3 63 60 99 for the January 1, 1981 to January 1, 1982 policy period;

(f)     Policy No. SRL 3 63 62 91 for the January 1, 1982 to January 1, 1983 policy period;

(g)     Policy No. SRL 3 63 66 77 for the January 1, 1983 to January 1, 1984 policy period;

(h)     Policy No. SRL 3 63 68 59 for the January 1, 1984 to January 1, 1985 policy period;

(i)     Policy No. SRL 3 34 44 12 for the January 1, 1985 to January 1, 1986 policy period;

(j)     Policy No. SRL 3 34 74 18 for the January 1, 1986 to April 1, 1986 policy period.

**ALLOCATION OF PAST COSTS AND OTHER ORDINARY BUSINESS EXPENSES**

17.     AMRI, a wholly owned subsidiary of Freeport-McMoRan, has been sued by underlying claimants in connection with alleged asbestos exposure at its former facility in Braithwaite, Louisiana (the "Louisiana Litigation").

18.     AMRI has sought and continues to seek reimbursement of certain claimed costs of defending itself in the Louisiana Litigation under the Century and Continental policies.

19.     Century and Continental have in the past reimbursed AMRI for their claimed proportionate and equitable share of AMRI's purported reasonable and necessary covered defense costs under an express reservation of rights.

20.     The Century and Continental policies only pay for damages and defense costs attributable to bodily injury that occurs *during the policy period*.

21.     Freeport-McMoRan's other insurers are responsible for damages and defense costs attributable to bodily injury occurring during their respective policy periods, and Freeport-McMoRan is responsible for any damages and defense costs attributable to bodily injury occurring during uninsured periods.

-6-

22.     Freeport-McMoRan has improperly allocated and billed to Century and Continental defense costs attributable to bodily injury occurring outside of Century's and Continental's respective policy periods.

23.     Freeport-McMoRan has also improperly billed Century and Continental for the cost of National Coordinating Counsel ("NCC") in a disproportionate amount to the actual amount of services NCC has provided in connection with the Louisiana Litigation.

24.     Freeport-McMoRan has further improperly billed Century and Continental for the document storage costs of corporate and historical documents related to the Braithwaite facility. These are ordinary business costs that should be borne by Freeport-McMoRan.

25.     Century and Continental in good faith and under an express reservation of rights have paid Freeport-McMoRan certain amounts improperly billed to Century and Continental.

26.     Freeport-McMoRan was not entitled to the above amounts improperly billed to and paid by Century and Continental.

### CORPORATE RECORDS ASSIMILATION PROJECT

27.     Beginning in April 2005, Phelps Dodge Corporation began to ship corporate documents from its locations around the country to Phoenix, Arizona to review the documents and to assimilate those records into its general corporate records.

28.     Beginning in February 2007, Phelps Dodge Corporation undertook the review and corporate assimilation of the documents it obtained from Cyprus Amax Minerals Company when Phelps Dodge Corporation acquired Cyprus Amax Minerals Company in 1999.

29.     Phelps Dodge Corporation neither sought nor obtained the consent of Century or Continental before it began the review and corporate assimilation of the Cyprus Amax Minerals Company records.

-7-

30.    Since February or March 2007, Freeport-McMoRan has continued the review and corporate assimilation of the Cyprus Amax Minerals Company records.

31.    Freeport-McMoRan neither sought nor obtained the consent of Century or Continental before it continued the review and corporate assimilation of the Cyprus Amax Minerals Company records.

32.    Through December 2007, Freeport-McMoRan claims the review and corporate assimilation of the Cyprus Amax Minerals Company records cost $3,900,000.

33.    Through the project's completion, Freeport-McMoRan claims the review and corporate assimilation of the Cyprus Amax Minerals Company records will cost an additional $3,900,000, for a total of $7,800,000.

34.    Freeport-McMoRan claims the insurance policies Century and Continental issued to Amax cover the cost of the assimilation of the Cyprus Amax Minerals Company corporate records into Freeport-McMoRan's corporate records.

35.    Century and Continental deny any obligation for the cost of the Corporate Records Assimilation Project.

36.    An actual controversy exists between Century and Continental, on the one hand, and Freeport-McMoRan, on the other hand, over whether the insurance policies cover the cost of the Corporate Records Assimilation Project.

## COUNT I

### CENTURY AND CONTINENTAL VERSUS FREEPORT-MCMORAN
### *DECLARATORY JUDGMENT*

37.    Century and Continental seek a declaratory judgment under 28 U.S.C.A. § 2201 that Century and Continental are only obligated to pay their share of indemnity and defense costs

attributable to bodily injury occurring during the policy period under the Century and Continental policies.

38.     Century and Continental seek a declaratory judgment under 28 U.S.C.A. § 2201 that Century and Continental are only obligated to pay their share of indemnity and defense costs attributable to bodily injury occurring during the policy period under the Century and Continental policies.

39.     Century and Continental further seek a declaratory judgment under 28 U.S.C.A. § 2201 declaring the rights and obligations of Century and Continental to reimburse Freeport-McMoRan for NCC and document storage costs currently being billed to Century and Continental purportedly in connection with the Louisiana Litigation.

40.     Century and Continental similarly seek a declaratory judgment under 28 U.S.C.A. § 2201 declaring that the insurance policies issued to Amax do not provide coverage for the cost of the Corporate Records Assimilation Project on the following grounds:

(a)     The costs incurred are not defense costs within the meaning of the policies;

(b)     Century and Continental are not responsible for costs Freeport-McMoRan voluntarily incurs;

(c)     Century and Continental are not responsible for costs Freeport-McMoRan incurred without Century's and Continental's consent;

(d)     Century and Continental are not responsible for unreasonable and/or unnecessary costs;

(e)     Freeport-McMoRan is neither the named insured nor a successor entitled to coverage under the liability insurance policies that Century and Continental issued to Amax;

(f)     Freeport-McMoRan failed to cooperate with Century and Continental, as the policies require; and

(g)     Any other grounds stemming from the policies, the law, or otherwise.

### DEMAND FOR JUDGMENT

Wherefore, Century and Continental demand judgment, as follows:

i.      A declaratory judgment that Century and Continental have no obligation to pay for Freeport-McMoRan's Corporate Records Assimilation Project;

ii.     Alternatively, should the court determine that Century and Continental have an obligation to pay any portion of the Corporate Records Assimilation Project, a declaratory judgment over the respective rights and obligations of the parties under the Century and Continental policies, and declaratory judgment for the amount of any obligation of Century and/or Continental to pay for the Corporate Records Assimilation Project;

iii.    A declaration of the rights of all parties under the Century and Continental Policies regarding the Louisiana Litigation;

iv.     Costs; and

v.      All other relief to which Century and Continental are entitled.

-10-

## COUNT II

### CENTURY AND CONTINENTAL VERSUS FREEPORT-McMORAN

#### *UNJUST ENRICHMENT*

41.     Century and Continental restate the allegations set forth in paragraphs 1 through 40 of this complaint and incorporate them by reference herein.

42.     Freeport-McMoRan was unjustly enriched by payments made by Century and Continental to Freeport-McMoRan based on Freeport-McMoRan's improper allocation and billing.

43.     Freeport-McMoRan's unjust enrichment was made at the expense of Century and Continental.

44.     Equity and good conscience require Freeport-McMoRan to make restitution to Century and Continental.

Wherefore, Century and Continental demand judgment, as follows:

i.      Compensatory damages for all amounts billed to and paid by Century and Continental for uncovered defense costs purportedly related to the Louisiana Litigation.

ii.     Costs;

iii.    All other relief to which Century and Continental are entitled.

-11-

## COUNT III

## CONTINENTAL VERSUS FREEPORT-MCMORAN

### FRAUD

59.     Since at least as early as January 1, 2007, Enviro-Tox Loss Services, Inc. has been an agent of Cyprus Amax Minerals Company and/or Phelps Dodge Corporation.

60.     At all times from January 1, 2007 to the present, Cyprus Amax Minerals Company and/or Phelps Dodge Corporation has authorized Enviro-Tox Loss Services, Inc. to attempt to get Continental to pay for the costs of the Corporate Records Assimilation Project.

61.     Since at least as early as January 1, 2007, Enviro-Tox Loss Services, Inc. has helped manage the Corporate Records Assimilation Project for Cyprus Amax Minerals Company and Phelps Dodge Corporation.

62.     Neither Enviro-Tox Loss Services, Inc. nor Cyprus Amax Minerals Company nor Phelps Dodge Corporation informed Continental of the existence of the Corporate Records Assimilation Project before May 8, 2007.

63.     Neither Enviro-Tox Loss Services, Inc. nor Cyprus Amax Minerals Company nor Phelps Dodge Corporation informed Continental that Cyprus Amax Minerals Company and/or Phelps Dodge Corporation had hired a new law firm, Ryley Carlock & Applewhite, to review the Cyprus Amax Minerals Company documents before May 8, 2007.

64.     When the Corporate Records Assimilation Project was begun in February 2007, Cyprus Amax Minerals Company and Phelps Dodge Corporation knew there were over 10,000 boxes of Cyprus Amax Minerals Company documents Phelps Dodge Corporation and Cyprus Amax Minerals Company intended to review.

-12-

65.     When the Corporate Records Assimilation Project was begun in February 2007, Cyprus Amax Minerals Company and Phelps Dodge Corporation knew the project would cost millions of dollars.

66.     On or about May 8, 2007, Cyprus Amax Minerals Company and Phelps Dodge Corporation delivered to Continental bills for an Amax records review.

67.     On or about May 8, 2007, Yvonne Prater of Continental called Cyprus Amax Minerals Company's and Phelps Dodge Corporation's agent Enviro-Tox Loss Services, Inc. to inquire about the bills.

68.     On or about May 8, 2007, Robert Medlin, an employee of Enviro-Tox Loss Services, Inc., acting on behalf of Cyprus Amax Minerals Company and/or Phelps Dodge, told Ms. Prater that the bills were for new documents found in Arizona.

69.     On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental that the documents were not found in Arizona, though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the documents were not from Arizona.

70.     On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental that the documents were unrelated to underlying tort litigation but were instead a corporate records management project, though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the project was a corporate records assimilation effort.

71.     On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental the scope of the project, though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the project involved well over 10,000 boxes of documents.

-13-

72.     On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental the cost of the project, even though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the project would cost millions of dollars to complete.

73.     Mr. Medlin, through his misrepresentations and failure to disclose the true nature of the project to Ms. Prater, deceived Continental into believing the bills were legitimate defense costs.

74.     By reason of Cyprus Amax Minerals Company's and Phelps Dodge Corporation's agent Enviro-Tox Loss Services, Inc.'s knowing misrepresentations and failure to disclose to Continental the true nature of the Corporate Records Assimilation Project, Cyprus Amax Minerals Company and Phelps Dodge Corporation fraudulently caused Continental to pay approximately $211,000 of the costs of the Corporate Records Assimilation Project.

### DEMAND FOR JUDGMENT

Wherefore, Continental demands judgment, as follows:

i.      Judgment in the amount of $211,000 or in accordance with the proof at trial;

ii.     Costs;

iii.    Interest; and

iv.     All other relief to which Continental is entitled.

PHLDMS1 4195826v.6

Dated:  May 9, 2008

**WHITE AND WILLIAMS LLP**

By:   s/ Rafael Vergara
      Rafael Vergara (RV-4098)
      White and Williams LLP
      One Penn Plaza, Suite 1801
      New York, NY 10119
      Phone: 212-244-9500
          -and-
      Shane R. Heskin (SH-9984)
      White and Williams LLP
      1800 One Liberty Place
      Philadelphia, Pennsylvania  19103
      Telephone:  (215) 864-7000
      *Attorneys for plaintiff Century Indemnity Company*


**CARROLL BURDICK & McDONOUGH L.L.P.**

By:   s/ Alan P. Jacobus
      Alan P. Jacobus (admitted *pro hac vice*)
      Carroll Burdick & McDonough L.L.P.
      44 Montgomery Street
      San Francisco, California 94104
      Telephone:  (415) 989-1900
      *Attorneys for plaintiff The Continental Insurance Company*

-15-

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA and THE CONTINENTAL INSURANCE COMPANY** : | |
| : | |
| : | |
| Plaintiffs, : | **DEMAND FOR TRIAL BY JURY** |
| : | |
| versus : | CIVIL ACTION NO. |
| : | |
| **FREEPORT-MCMORAN COPPER & GOLD INC., AS THE CLAIMED SUCCESSOR TO PHELPS DODGE CORPORATION, AS THE CLAIMED SUCCESSOR TO CYPRUS AMAX MINERALS COMPANY, AS THE CLAIMED SUCCESSOR TO AMAX, INC., AS THE CLAIMED SUCCESSOR TO AMERICAN METAL CLIMAX, INC.** : | |
| : | |
| Defendant. : | |

<u>**DEMAND FOR TRIAL BY JURY**</u>

Pursuant to FED. R. CIV. P. 38 (b) plaintiffs Century Indemnity Company and The

Continental Insurance Company hereby demand a trial by jury of issues so triable.

Dated:  May 9, 2008

**WHITE AND WILLIAMS LLP**

By:   s/ Rafael Vergara         
      Rafael Vergara (RV-4098)
      White and Williams LLP
      One Penn Plaza, Suite 1801
      New York, NY 10119
      Phone: 212-244-9500
         -and-
      Shane R. Heskin (SH-9984)
      White and Williams LLP
      1800 One Liberty Place
      Philadelphia, Pennsylvania  19103
      Telephone:  (215) 864-7000
      *Attorneys for plaintiff Century Indemnity*
      *Company*

**CARROLL BURDICK & McDONOUGH L.L.P.**

By:    s/ Alan P. Jacobus        
      Alan P. Jacobus (admitted *pro hac vice*)
      Carroll Burdick & McDonough L.L.P.
      44 Montgomery Street
      San Francisco, California 94104
      Telephone:  (415) 989-1900
      *Attorneys for plaintiff The Continental*
      *Insurance Company*

-2-