UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

CENTURY INDEMNITY COMPANY, AS    :
SUCCESSOR TO CCI INSURANCE    :   ELECTRONICALLY FILED
COMPANY, AS SUCCESSOR TO    :
INSURANCE COMPANY OF NORTH    :
AMERICA and THE CONTINENTAL    :
INSURANCE COMPANY,    :   Index No. 08 Civ. 02012 (PKL)
    :
           Plaintiffs,    :
    :
           v.    :
    :
FREEPORT-MCMORAN COPPER & GOLD    :
INC., AS THE CLAIMED SUCCESSOR TO    :
PHELPS DODGE CORPORATION, AS THE    :
CLAIMED SUCCESSOR TO CYPRUS    :
AMAX MINERALS COMPANY, AS THE    :
CLAIMED SUCCESSOR TO AMAX INC.,    :
AS SUCCESSOR TO AMERICAN METAL    :
CLIMAX, INC.,    :
    :
           Defendant.    :
    :
--------------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANT
FREEPORT-MCMORAN COPPER & GOLD INC.
IN SUPPORT OF ITS MOTION TO DISMISS OR STAY THIS ACTION**

Mark J. Plumer (admitted *pro hac vice*)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C.  20036
(202) 912-2000

Lisa M. Cirando (LC 1916)
Chelsea J. Walsh (CW 1489)
HELLER EHRMAN LLP
7 Times Square
New York, New York 10036
(212) 832-8300

Attorneys for Defendant

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

STATEMENT OF FACTS .....................................................................................................5

ARGUMENT ..........................................................................................................................9

I.    THIS CASE SHOULD BE DISMISSED BECAUSE IT IS PROCEDURALLY
      DEFECTIVE.................................................................................................................9

      A.    The Complaint Against Freeport Should be Dismissed Under Rule 12
            Because There Is No Case or Controversy And The Complaint Fails to
            State A Claim Upon Which Relief Can be Granted. ..........................................9

      B.    AMRI Is A Necessary and Indispensable Party, And The Insurers'
            Inability To Join AMRI To This Action Requires Dismissal Under Rule
            12(b)(7) and Rule 19...........................................................................................13

            1.    AMRI Is A Necessary Party ...................................................................14

                  a.    AMRI Cannot Be Joined to this Action.......................................15

                  b.    AMRI is an Indispensable Party ...................................................16

II.   THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE IN
      FAVOR OF THE MORE APPROPRIATE AND COMPREHENSIVE
      ACTION PENDING IN CALIFORNIA ....................................................................16

      A.    The Court Should Abstain Pursuant To The Brillhart Doctrine. ....................17

            1.    This Insurance Dispute Involves No Federal Law Issues........................18

            2.    All Parties are  Amenable to Process in the California Action,
                  While Not All Necessary or Otherwise Relevant Parties Can Be
                  Joined To This Action ............................................................................18

            3.    The California Action Will Allow The Claims Of All Parties In
                  Interest To Be Satisfactorily Adjudicated..............................................18

            4.    Abstention Will Avoid Duplicative Proceedings and Inconsistent
                  Results.....................................................................................................19

            5.    The Totality of Other Circumstances Likewise Favor Abstention............20

      B.    The Court Should Abstain Pursuant To the Colorado River Doctrine. .................21

1.    Abstention is Necessary to Avoid Piecemeal Litigation ...........................22

2.    The Fact that this Action was Filed First does not Militate
      Against Abstention ......................................................................................23

3.    No Federal Law is Implicated Here ...........................................................23

4.    The Inconvenience of the Federal Forum ..................................................23

5.    The California Action will Adequately Protect Insurers' Rights .............24

CONCLUSION.................................................................................................................24

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*
    436 F.3d 82 (2d Cir. 2006) ...........................................................................................12

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*
    961 F. Supp. 652 (S.D.N.Y. 1997) ..............................................................................22

*Am. Home Assur. Co. v. Babcock & Wilcox Co.*
    No. 06-CV-6506, 2007 WL 4299847 (E.D.N.Y. Dec. 6, 2007) ...............................14

*AmSouth Bank v. Dale*
    386 F.3d 763 (6th Cir. 2004) ........................................................................................21

*Brillhart v. Excess Ins. Co. of America*
    316 U.S. 491 (1942) ............................................................................................ passim

*Calhoun v. La. Materials Co.*
    206 So. 2d 147 (La. Ct. App. 1968) ............................................................................13

*Colorado River Water Conser. Dist. v. United States*
    424 U.S. 800 (1976) ............................................................................................ passim

*Commercial Underwriters Ins. Co. v. Glowmaster Corp.*
    105 F. Supp. 2d 268 (S.D.N.Y. 2000) ........................................................................20

*Conley v. Gibson*
    355 U.S. 41 (1957) .......................................................................................................13

*Cont'l. Ins. Co. v. Wickes Cos. Inc.*
    No. 90 Civ. 8215, 1991 WL 193771 (S.D.N.Y. Sept. 6, 1991) ...............................20

*DiVittorio v. Equidyne Extractive Indus., Inc.*
    822 F.2d 1242 (2d Cir. 1987) ......................................................................................13

*E & L Consulting, Ltd. v. Doman Indus.Ltd.*
    472 F.3d 23 (2d Cir. 2006) ..........................................................................................12

*Ente Nazionale Idrocarburi v. Prudential Securities Group, Inc.*
    744 F. Supp. 450 (S.D.N.Y. 1990) ..............................................................................15

*Fireman's Fund Ins. Co v. Chris Craft Indus., Inc.*
    932 F. Supp. 618 (S.D.N.Y. 1996) ..............................................................................19

*Gen. Reins. Corp. v. CIBA-Geigy Corp.*
    853 F.2d 78 (2d Cir. 1998) ..........................................................................................23

*Gen. Star Int'l Indem. Ltd v. Chase Manhattan Bank*
    No. 01 Civ. 1139, 2002 WL 850012 (S.D.N.Y. May 3, 2002) ..............................21, 22, 23, 24

*Gilbraltar Sav. v. LDBrinkman Corp.*
    860 F.2d 1275 (5th Cir. 1988) .....................................................................................13

*Global Disc. Travel Serv., LLC v. Trans World Airlines, Inc.*
　　960 F. Supp. 701 (S.D.N.Y. 1997) ............................................................................14, 15, 16

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*
　　735 F. Supp. 581 (S.D.N.Y. 1990) .................................................................................17, 20

*Hess v. L.G. Balfour Co., Inc.*
　　822 F. Supp. 84 (D. Conn. 1993) ...........................................................................................13

*Int'l. Customs Assocs., Inc. v. Ford Motor Co.*
　　893 F. Supp. 1251 (S.D.N.Y. 1995) .......................................................................................13

*Lujan v. Defenders of Wildlife*
　　504 U.S. 555 (1992) ...............................................................................................................12

*Maltz v. Union Carbide Chemical & Plastics Co.*
　　992 F. Supp. 286 (S.D.N.Y. 1998) .........................................................................................13

*Marakova v. United States*
　　201 F.3d 110 (2d Cir. 2000) ...................................................................................................10

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*
　　312 U.S. 270 (1941) ...............................................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
　　460 U.S. 1 (1983) ...................................................................................................................22

*N. Am. Airlines, Inc. v. Int'l Broth. of Teamsters, AFL-CIO*
　　No. 04 Civ. 9949, 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) ...........................................21

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hick, Muse, Tate & Furst, Inc.*
　　No. 02 Civ. 1334, 2002 WL 1482625 (S.D.N.Y. July 10, 2002) ...............................11, 12, 13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Warrantech Corp.*
　　No. 00 Civ. 5007, 2001 WL 194903 (S.D.N.Y. Feb. 27, 2001)......................................18, 19

*Natowitz v. Mehlman*
　　542 F. Supp. 674 (S.D.N.Y. 1982) .........................................................................................13

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*
　　94 F.3d 747 (2d Cir. 1996) .....................................................................................................10

*Randolph Found. v. Duncan*
　　No. 00 Civ. 6445, 2002 WL 32862 (S.D.N.Y. Jan. 11, 2002) ...............................................14

*Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp.*
　　No. 94 CIV. 6971, 1996 WL 61763 (S.D.N.Y. Feb. 3, 1996) .....................................18, 19, 20

*Robinson v. Gov't of Malaysia*
　　269 F.3d 133 (2d Cir. 2001) .....................................................................................................9

*Shimkin v. Tompkins, McGuire, Wachenfeld & Barry*
　　No. 02 Civ. 9731, 2003 WL 21964959 (S.D.N.Y. Aug. 19, 2003)..........................................16

*Travelers Indem. Co. v. Philips Elec. N. Am. Corp.*
　　No. 02 Civ. 9800, 2004 WL 193564 (S.D.N.Y. Feb. 3, 2004)..................................................18

*Valley Forge Coll. v. Americans Unitedfor the Separation of Church and State*
    454 U.S. 464 (1982) ............................................................................................10

*Wilton v. Seven Falls Co.*
    515 U.S. 277 (1995) .................................................................................... passim

## STATE CASES

*Cont'l Ins. Co. v. AMAX Inc.*
    No. 19737/91 (N.Y. Sup. Ct. June 26, 1992), 6 Mealey's Litig. Rpts.: Ins. No. 34, at B-1
    (July 14, 1992) ...............................................................................................3, 8

*Cont'l Ins. Co. v. AMAX Inc.*
    192 A.D.2d 391, 596 N.Y.S.2d 370 (1st Dep't 1993).........................................4, 8

*Landoil Res. Corp. v. Alexander & Alexander Serv., Inc.*
    77 N.Y. 28, 565 N.E.2d 488 (N.Y. 1990) ...........................................................15

*WarckMeister v. Diana Lowenstein Fine Arts*
    7 A.D. 3d 351, 775 N.Y.S.2d 859 (1st Dep't 2004)..............................................16

*Washington Mut. Bank, FA v. Superior Court*
    24 Cal. 4th 906, 15 P.3d 1071 (Cal. 2001) .........................................................19

## STATUTES, RULES AND CONSTITUTIONS

15 U.S.C.A. § 1011 (1945) .........................................................................................18

28 U.S.C.A. § 2201 (2006) .........................................................................................10

CPLR 302(a)(1) (McKinney's 2008)............................................................................15

Fed. R. Civ. P. 9(b) ...................................................................................................13

Fed. R. Civ. P. 12 ..................................................................................................1, 16

Fed R. Civ. P. 12(b)(1) ..........................................................................................1, 10

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 9, 12, 13

Fed. R. Civ. P. 12(b)(7) .........................................................................................2, 13, 14

Fed. R. Civ. P. 19...............................................................................................1, 13, 16

Fed. R. Civ. P. 19(a)(1)(B)(i) .......................................................................................14

Fed. R. Civ. P. 19(a)(1)(B)(ii) ......................................................................................15

Fed. R. Civ. P. 19(b) .............................................................................................2, 16

U.S. Const. art. III § 2 cl. 1 .........................................................................................10

## OTHER AUTHORITIES

1 William Meade Fletcher et al., <u>Fletcher Cyclopedia of the Law of Private Corporations</u> § 26
    (perm. ed., rev. vol. 2007) ...........................................................................11

Defendant Freeport-McMoRan Copper & Gold Inc. ("Freeport") respectfully submits this Memorandum of Law in Support of its Motion to dismiss or stay this action.  First, the current action is procedurally defective under Federal Rules of Civil Procedure ("FRCP") 12 and 19. Second, the Court should abstain from hearing this action in lieu of another action now pending in California pursuant to the abstention doctrines set forth by the U.S. Supreme Court in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) and *Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800 (1976).

## **INTRODUCTION**

This is an insurance dispute between two primary insurers, Continental Insurance Company ("Continental") and Century Indemnity Company ("Century") (collectively the "insurers"), and the policyholders to whom they issued liability insurance.  The particular question presented is whether insurers are obliged to pay defense costs related to the review of certain documents potentially relevant to pending discovery requests in ongoing litigations over asbestos bodily injury claims asserted against Amax Metals Recovery, Inc. ("AMRI").

To begin, insurers have sued the wrong party.  The only defendant sued by insurers in this case is Freeport.  Yet, Freeport is not a party to any of the contracts of insurance at issue.  Freeport is not a defendant in any of the underlying asbestos claims for which coverage is claimed. Furthermore, Freeport is not claiming on the policies.  Freeport's only connection to this dispute is that it is the ultimate parent of a series of companies, two of whom were issued coverage directly by insurers and claim coverage for the defense costs in dispute in this case.  On these facts, not one of insurers' claims support the exercise of this Court's jurisdiction, and the case should be dismissed pursuant to FRCP 12(b)(1) and 12(b)(6).

Insurers also have  failed to sue the proper parties, at least one of whom is indispensable and cannot be joined in this action.  The two necessary parties to this dispute are Cyprus Amax

1

Minerals Company ("Cyprus Amax") and AMRI. Cyprus Amax is the corporate successor by merger to AMAX Inc., a Named Insured on policies issued by Continental and Century. AMRI is a former subsidiary of AMAX Inc. and a current subsidiary of Cyprus Amax, and is also a Named Insured on the policies issued by Continental and Century. Cyprus Amax and AMRI are defending multiple lawsuits for alleged bodily injuries arising out of exposure to asbestos at AMRI's nickel refinery in Braithwaite, Louisiana. The current dispute over Continental's and Century's insurance obligations arise solely out of these lawsuits, all of which are pending in Louisiana. AMRI, at least, cannot involuntarily be joined as a defendant, because this Court lacks personal jurisdiction over it. Hence, this action is properly dismissed under FRCP 12(b)(7) and 19(b).

Putting aside the procedural defects of insurers' pleading, the Court should exercise its discretion and abstain from asserting jurisdiction in this case and should allow a recently filed, more comprehensive state court action to proceed in California. *Cyprus Amax Minerals Co., et al. v. Cont'l. Casualty Co., et al.*, No. BC391068 (Super. Ct. L.A. County). The California action includes as plaintiffs both Cyprus Amax and AMRI. In addition to naming as defendants Continental and Century, the California action also names as defendants four additional insurers interested in the dispute. These other insurers are interested because the document collection giving rise to the current dispute involved the commingled documents of AMAX Inc. and Cyprus Mines Corporation, and their former predecessors and subsidiaries; these two companies merged in 1993 to create Cyprus Amax. The historic insurers of Cyprus Mines Corporation likewise dispute their obligation to pay the disputed defense costs for review of the commingled document collection. Whether such costs are covered under the AMAX Inc. and AMRI policies, on the one hand, and the Cyprus Mines Company policies, on the other hand, will require nearly identical

discovery and application of similar or identical legal principles.  Importantly, pursuant to a 2007 settlement agreement between the four Cyprus Mines insurers and Cyprus Amax, any such disputes between them must be heard in California State Court (in Los Angeles County) and decided pursuant to California law.  Thus, the Cyprus Mines insurers cannot be sued over this dispute in New York while the insurers in this case (who do business in California) can be joined to the California case.

Moreover, this dispute does not involve the New York forum nor any federal issue.  The underlying claims are all in Louisiana and brought against a Louisiana defendant (AMRI).  The witnesses and documents at issue are predominantly in Arizona, where the documents at the center of this case are located and were reviewed and where Cyprus Amax is headquartered.  Other known witnesses and documents may be found in Chicago (where Continental is headquartered) and Philadelphia (where Century is headquartered).  AMAX Inc. and Continental both were at one time headquartered in New York, but both left long ago, and there is no dispute in this case about contract formation as Cyprus Amax has copies of the disputed policies and the wording at issue is standard-form.  Interpretation of the policies will be pursuant to state substantive law and no federal statute or policy is implicated.

This is simply a case of forum shopping by Continental and Century, and it should not be countenanced.  It is not the first time these insurers have tried to take a bite at this apple.  In 1992, Continental filed a lawsuit against AMAX Inc. in state court in New York and sought declaratory relief under the same policies seeking the application of New York law.  *Cont'l Ins. Co. v. AMAX Inc.*, No. 19737/91 (N.Y. Sup. Ct.).  Continental claimed that New York was the proper forum because the parties had once been headquartered in New York, AMAX Inc.'s broker was resident in New York, the policies allegedly had been formed in New York, and the claims then at issue

(over environmental liabilities) had been negotiated in New York. Notwithstanding, the action was dismissed on AMAX Inc.'s motion in favor of a later-filed Colorado lawsuit that included the actual subsidiaries against whom claims had been made (who resided outside of New York). On an appeal taken by Continental <u>and</u> Century (the two plaintiffs here), the New York Appellate Division held that "[s]ince [Continental] commenced this action at a time when negotiations for settlement of these claims were taking place, we afford plaintiff no benefit from having commenced this action before defendant Amax commenced its similar Colorado action." *Cont'l Ins. Co. v. AMAX Inc.*, 192 A.D.2d 391, 391, 596 N.Y.S.2d 370, 370-71 (1st Dep't 1993). History repeats itself. Once again, the factual predicate for this lawsuit is that the policyholder presented a claim and sought to resolve it outside of court, but the insurers filed a tactical lawsuit in New York in an effort to preempt the insured's choice of forum and to secure what they obviously consider to be a more favorable forum and the application of New York law.

Taking into account all of the relevant facts and circumstances, the Court should exercise its discretion and abstain from hearing this case. The California action is the only suit that can comprehensively resolve all of the issues presently in dispute, among all of the relevant parties in interest, including the insurer-plaintiffs in this case, the historical Cyprus Mines Company insurers, Cyprus Amax Minerals Company and AMRI. All of the insurers' claims sought to be decided – whether declaratory judgment, unjust enrichment or fraud – can be decided in the California action. The abstention doctrine set forth by the U.S. Supreme Court in *Wilton*, 515 U.S. at 286 most properly applies here. Insurers transparent attempt to plead around *Wilton* by filing an Amended Complaint and adding claims for unjust enrichment and fraud **after** Freeport advised the Court of its intention to file an abstention motion pursuant to *Wilton* cannot transform what is essentially a declaratory judgment action over insurance coverage into

4

something more. Gamesmanship of this sort should not be tolerated. Even if the Court were to

find that insurers' eleventh-hour amendment allows them to circumvent *Wilton,* it does not

change the outcome. This action also presents sufficiently "exceptional circumstances" to permit

abstention under the *Colorado River* abstention doctrine.

## STATEMENT OF FACTS

The Relevant Corporate History

AMAX Inc., formerly named American Metal Climax, Inc., purchased liability insurance

from Century from at least the 1960's to the mid-1970's and from Continental from the mid-

1970's until at least 1986. Affidavit of Victoria Bellamy, sworn to on May 22, 2008 ("Bellamy

Aff."), at ¶¶ 4, 6. In 1971, AMAX Inc. formed a subsidiary, AMRI, to operate a nickel refinery in

Braithwaite, Louisiana. Affidavit of Michelle A. Hughes, sworn to on May 22, 2008 ("Hughes

Aff."), at ¶ 4. The subsidiary, originally named Amax Nickel Refining Company Inc., later

changed its name to Amax Metals Recovery, Inc. or AMRI. Hughes Aff. ¶ 4. In 1993, AMAX

Inc. merged into Cyprus Minerals Company, which immediately changed its name to Cyprus

Amax Minerals Company or Cyprus Amax. Hughes Aff. ¶ 6. Cyprus Amax and AMR1 remain

corporations in good standing, though they are now subsidiaries of Phelps Dodge Corporation,

which, in turn, is a subsidiary of Freeport-McMoRan Copper & Gold, Inc. Hughes Aff. ¶ 7-9.

The AMAX Inc. And AMRI Policies

Considering that AMRI was not formed until 1971, any claims based on exposure to

asbestos at the AMRI facility would appear to implicate only those policies issued beginning in

1971. The policies issued by Century, then named Insurance Company of North America, from

1971-75, all were issued to American Metal Climax, Inc. (now Cyprus Amax), and all include the

following definition: "'Named Insured' means the person or organization named in the

declarations of this policy and shall include any of its subsidiaries and any other company of which it assumes active management." Hughes Aff. ¶ 7.

The policies issued by Continental from 1975-86 all were issued to AMAX Inc. (now Cyprus Amax), and all include an Endorsement which includes a Schedule of additional Named Insureds, including either "Amax Nickel Refining Co., Inc." or "AMAX Inc. and "any Subsidiary, Affiliated or Related Company and any other Company coming under the Named Insured's control of which it assumes active Management." Hughes Aff. ¶ 5.

The Claims Arising Out Of AMRI Operations

Lawsuits seeking damages for bodily injury related to AMRI's historic nickel refinery operations are pending exclusively in Louisiana against AMRI (the "AMRI Actions"). Bellamy Aff. ¶ 9. Since approximately the middle of 2004, Continental and Century each have provided coverage for the AMRI Actions, including paying defense costs related to the AMRI Actions. Bellamy Aff. ¶ 12.

The Current Dispute Over AMRI's Defense Costs

Beginning in February 2007, Cyprus Amax commenced a review of commingled AMAX Inc. and Cyprus Minerals Company documents. Affidavit of Gregory D. Winfree, sworn to on May 22, 2008 ("Winfree Aff."), at ¶ 3 . The review was undertaken in response to outstanding discovery requests in the AMRI Actions as part of the defense of the AMRI Actions (the "Document Review"). Winfree Aff. ¶ 4. The review also was undertaken in response to outstanding discovery requests in defense of certain actions pending against Cyprus Minerals Company and/or its historic subsidiaries or predecessors (the "Cyprus Actions"). Winfree Aff. ¶ 5.

The Cyprus Minerals Company component of the review is governed by a confidential settlement agreement (the "2007 Agreement") entered into by Cyprus Amax and its four primary

6

insurers providing coverage for the historic operations of Cyprus — Continental Casualty Company, American Insurance Company, Old Republic Insurance Company , and Truck Insurance Company (collectively, the "Cyprus Insurers"). The 2007 Agreement sets out the parties' respective duties and responsibilities towards one another, including the payment of defense costs. It also provides that any breach of the 2007 Agreement shall be enforced in an action in the Los Angeles Superior Court and shall be construed under California law. Winfree Aff. ¶ 7.

The AMAX Inc. component of the review, involving the insurer-plaintiffs in this case, are governed by the insurance policies described *supra* at 4-5, none of which contain choice of forum or choice of law provisions. Bellamy Aff. ¶¶ 5, 7. Once it realized that Continental and Century were reneging on their duty to defend with respect to the Document Review, Cyprus Amax initiated discussions with its insurers in an effort to resolve the dispute. On December 6, 2007, principals from Freeport, on behalf of Cyprus Amax and AMRI, traveled to Philadelphia to meet with principals from CNA, the parent of Continental, and Resolute Management, a claims management company acting on behalf of Century. Bellamy Aff. ¶ 15. On December 21, 2007, insurers were provided information requested at the December 6 meeting and were requested by letter to provide "your written commitment to participate in the Cyprus Amax review project no later than 5:00 p.m. EST on January 31, 2008." Bellamy Aff. ¶ 16; Declaration of Chelsea J. Walsh, dated May 22, 2008 ("Walsh Decl."), Ex. A. On January 11, 2008, Century sent a letter stating that the information provided to date "is insufficient for us to make a decision regarding our commitment to this Project at this time" and requested the opportunity to tour the Document Review facility in Arizona on January 31, 2008. Bellamy Aff. ¶ 17; Walsh Decl. Ex. B. On January 14, 2008, CNA wrote that "CNA is currently in the process of reviewing all of the

information at its disposal with regard to the project . . .and will continue to do so . . .it is simply not feasible to relay our position at present." Bellamy Aff. ¶ 18; Walsh Decl. Ex. C.  On January 31, 2008, Century and CNA sent representatives to Arizona to tour the facility where the Document Review was ongoing. Bellamy Aff. ¶ 19. Without warning and to Freeport's, Cyprus Amax's and AMRI's complete surprise, Continental and Century filed this lawsuit on February 28, 2008 in lieu of providing a commitment or other response to the pending claim discussion. Bellamy Aff. ¶ 20; Winfree Aff. ¶ 9.

The Insurers' Forum Shopping

This is not the first time that Cyprus Amax's insurers have strategically filed a lawsuit in New York in the midst of ongoing negotiations over a claim.  Continental did so in 1992 regarding nationwide environmental claims asserted against AMAX Inc. and its subsidiaries. *Cont'l Ins. Co. v. AMAX Inc.*, No. 19737/91 (N.Y. Sup. Ct. June 26, 1992), *reprinted in* 6 *Mealey's Litig. Rpts.: Ins.* No. 34, at B-1 (July 14, 1992); *see* Walsh Decl. Ex. D.  AMAX Inc. moved to dismiss in favor of its later-filed lawsuit in Colorado.  The New York trial court granted AMAX Inc.'s motion to dismiss.  Walsh Decl. ¶ 5.  The trial court pointed out in its decision that "[i]t is undisputed that prior to the commencement of either action, the parties met to discuss the potential environmental claims of AMAX and its subsidiaries and the coverage issues.  AMAX claims it relied on Continental's misrepresentations that it intended to negotiate in good faith out of court, and thus, delayed in commencing its action." *Id.* at 10.  The trial court ultimately found "special circumstances" and favored dismissal of the New York action "in the interest of discouraging forum shopping." *Id.* at 11.  Continental and Century jointly appealed.  In its ruling affirming the dismissal, the New York state appellate court likewise chastised insurers for filing suit without warning during an ongoing negotiation. *Cont'l Ins.*, 192 A.D.2d at 391.   The Colorado court ultimately applied Colorado law to the policies.  Walsh Decl. ¶ 6, Ex. E.

The Insurers' Amended Complaint

Continental and Century filed this diversity lawsuit against Freeport on February 28, 2008. In their original Complaint ("Orig. Compl."), insurers sought only a declaratory judgment that the policies they issued to AMAX Inc. did not obligate them to contribute to the costs of the Document Review.   Orig. Compl. ¶ 26; Walsh Decl. Ex. F.   After Freeport advised the Court (on April 16th) that it intended to move to dismiss the action under the *Wilton* abstention doctrine, insurers amended their Complaint (on May 9th ) to add claims for unjust enrichment and fraud ("Amd. Compl."). Amd. Compl. ¶¶ 1, 41-44, 59-74; Walsh Decl. Ex. G .

Cyprus Amax's More Comprehensive Lawsuit In California

On May 16, 2008, Cyprus Amax and AMRI filed an insurance coverage action in the Los Angeles Superior Court, naming the two AMAX Insurers and the four Cyprus Insurers ("CA. Compl.") as defendants.  Walsh Decl. Ex H.

## ARGUMENT

## I.    THIS CASE SHOULD BE DISMISSED BECAUSE IT IS PROCEDURALLY DEFECTIVE

A.    The Complaint Against Freeport Should be Dismissed Under Rule 12 Because There Is No Case or Controversy And The Complaint Fails to State A Claim Upon Which Relief Can be Granted.

Pursuant to Rules 12(b)(1) and 12(b)(6), insurers' Amended Complaint is deficient because it sues the wrong party. The Amended Complaint identifies a single defendant:  Freeport-McMoRan Copper & Gold, Inc.  Amd. Compl. ¶ 4; Walsh Decl. Ex. G.  But, Freeport is not a Named Insured under any of the policies of insurance at issue in this lawsuit.  Amd. Compl. ¶¶ 15-16; Walsh Decl. Ex. G.  Moreover, Freeport is not a defendant in any of the Louisiana claims asserted against AMRI as a result of the historic operation of its nickel refinery.  Bellamy Aff. ¶ 10.  Perhaps most important, Freeport is not making a claim for coverage for the defense costs

related to the Document Review at issue in this case nor is it making a claim of any kind under

Continental and Century's policies for any of the claims asserted against AMRI. Bellamy Aff. ¶

11. Freeport's only connection to this dispute is that it is the ultimate parent of Cyprus Amax and

AMRI. *See supra* at 5.

First and foremost, therefore, the Amended Complaint is deficient, because it fails to

identify a case and controversy mandating dismissal under Rule 12(b)(1).[1] Federal courts possess

subject matter jurisdiction over "justiciable" declaratory judgments. *See* U.S. Const. art. III, § 2,

cl. 1; *Valley Forge Coll. v. Americans United for the Se*, 454 U.S. 464, 471 (1982); *Niagara*

*Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747 (2d Cir. 1996). Under

the Declaratory Judgment Act, 28 U.S.C. § 2201, a case is justiciable only when the "facts

alleged, under all the circumstances, show that there is a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

There is no "controversy" between Freeport and the plaintiff-insurers in this case. There is

no privity between Freeport and the insurers, as Freeport was not insured under the insurance

policies at issue in this case; indeed, at the time these policies were issued, there was no corporate

relationship between Freeport and what was then AMAX Inc. Hughes Aff. ¶¶7-8. In the caption

of the Amended Complaint, insurers plead that Freeport is the "successor" to Phelps Dodge,

Cyprus Amax and AMRI, although in the body of the Amended Complaint, insurers allege no

more than that "Freeport McMoRan acquired Phelps Dodge Corporation." Amd. Compl. ¶¶ 9-14,

---

[1]    To sustain an action upon a motion to dismiss under Rule 12(b)(1), insurers must prove jurisdiction
"by a preponderance of the evidence." *See Marakova v. United States*, 201 F.3d 110, 113 (2d Cir.
2000). A court considering a 12(b)(1) motion is not limited to the face of complaint, but may
consider evidence, including affidavits submitted by the parties. *See Robinson v. Gov't of Malaysia*,
269 F.3d 133, 141 n. 6 (2d Cir. 2001).

Walsh Decl. Ex. G.  To be clear, Phelps Dodge is a subsidiary of Freeport, Cyprus Amax is a

subsidiary of Phelps Dodge, and AMRI is a subsidiary of Cyprus Amax.  Hughes Aff. ¶¶4, 7-8.

To the extent that insurers suggest that a parent and its subsidiary corporations are alter egos or

otherwise one and the same, they are wrong as a matter of well-established law.

> A leading treatise on corporate law, states the rule as follows:
>
> A 'subsidiary corporation' is one that is controlled by another corporation by
> reason of the latter's ownership of at least a majority of the shares of the capital
> stock.  A subsidiary corporation is presumed to be a separate and distinct entity
> from its parent corporation.  This rule applies even where one corporation wholly
> owns another … the mere ownership of the capital stock of one corporation by
> another does not create an identity of corporate interest between the two
> companies, or create the relationship of principal and agent, or representative, or
> alter ego between the two.  Accordingly, a parent corporation does not, for reason
> of owning the stock of a subsidiary, alone, own or have legal title to the assets of
> the subsidiary.  This rule applies equally to the subsidiaries of a subsidiary.

1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 26

(perm. ed., rev. vol. 2007)

A federal district court in the Southern District of New York unsurprisingly dismissed a

parent-policyholder from a lawsuit brought against it by insurers where only its subsidiary's

liabilities were at issue.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hick, Muse, Tate & Furst,

Inc.*, No. 02 Civ. 1334, 2002 WL 1482625, *4 (S.D.N.Y. July 10, 2002) ("*Hicks Muse*").  The

insurer in *Hicks Muse* sought a declaratory judgment of no coverage against the parent, Hicks

Muse, for claims pending against its subsidiary, International Wire Group, Inc. ("IWG"), relating

to underlying lawsuits alleging damages from exploding washing machines assembled with IWG

hoses. *Id.* at *1.  IWG alone sought coverage as an insured under policies issued to Hicks Muse.

*Id.* at *2.  The court held that the insurer's declaratory judgment action against Hicks Muse was

neither ripe nor justiciable because Hicks Muse (i) had not submitted any demand for coverage;

(ii) had not been named as a defendant in any of the underlying lawsuits; and (iii) had not received notice of any potential claim against it. *Id.* at *4.

Freeport is even further removed than the corporate parent in *Hicks Muse*, because it is not named in the policies, is not claimed to have caused the alleged bodily injury arising out of AMRI operations, and is not asserting any rights to coverage under the policies issued by Continental and Century. *See supra* at 9. In sum, Freeport is a virtual stranger to this dispute except in so far as it may have assisted its subsidiary in making the subsidiary's claim for coverage, which is no more than Continental's parent – CNA – did during pre-litigation negotiation of the claim. *See supra* at 7. As between insurers and Freeport, there simply is no dispute, let alone a ripe, justiciable claim for declaratory relief. Based on *Hicks Muse* and the relevant facts, Plaintiffs' claims against Freeport should be dismissed as failing to meet the minimum Constitutional requirement of a case and controversy sufficient to confer subject matter jurisdiction on the Court.[2]

In addition, the Amended Complaint fails to state a claim under Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 28 (2d

---

[2]    The insurers' more recently pled claims likewise are deficient. "An important component of the Article III jurisdictional limit of federal courts to decide 'cases' or 'controversies' is standing. In order for this Court to exercise its jurisdiction, Plaintiffs must allege (i) an injury-in-fact that is (ii) fairly traceable to defendants' allegedly unlawful conduct that is (iii) likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). Plaintiffs bear the burden of establishing the elements of standing. *Lujan*, 504 U.S. at 561. There are no facts to support the conclusion that either the fraud or the unjust enrichment claims allege harm that is "fairly . . . trace[able] to the challenged action of [Freeport], and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 561. Freeport is a corporate parent, twice removed from the parties with direct claims to coverage. Amd. Compl. ¶¶ 9-14, Walsh Decl. Ex. G. Freeport has made no claim for benefits under the Policies. Bellamy Aff. ¶ 11. Continental's claim for fraud makes no mention of Freeport whatsoever; rather, it repeatedly identifies Cyprus Amax and Phelps Dodge. Amd. Compl. ¶¶ 59-74; Walsh Decl. Ex. G. The claim for unjust enrichment seeks "damages for amounts billed to and paid by Century and Continental for uncovered defense costs purportedly related to the Louisiana Litigation." Amd. Compl. Count II(i); Walsh Decl. Ex. G. Plaintiffs have not presented – and cannot present – proof to demonstrate that Freeport is the entity that directed the allegedly improper allocations or billings and/or that Freeport is the entity that directly received and benefited from the payments. Therefore, Plaintiffs lack standing to assert such ancillary claims against Freeport.

Cir. 2006); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Again, *Hicks Muse* controls. The *Hicks Muse* court flatly refused, as legally unsupportable, the insurer's invitation that it disregard the corporate form to permit a coverage declaration against the parent as to its subsidiary's liability. 2002 WL 1482625, at *4 (citing cases). Insurers in this case cannot even avail themselves of the factual arguments relied upon by the insurer in *Hicks Muse*, because Freeport (i) did not procure the policy; (ii) is not an insured; and (iii) did not pay premiums. Thus, as in *Hicks Muse*, this Court should be guided by the rule that "parent and subsidiary corporations [are regarded] as legally distinct, and [courts] generally do not treat a contract under the name of one as that of both[,]" and dismiss the pending claim for declaratory judgment. *Id.; see e.g., Gilbraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1286-87 (5th Cir. 1988); *Maltz v. Union Carbide Chem. & Plastics Co.*, 992 F. Supp. 286, 300 (S.D.N.Y. 1998); *Int'l. Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1255 (S.D.N.Y. 1995), *Hess v. L.G. Balfour Co., Inc.*, 822 F. Supp. 84, 86 (D. Conn. 1993); *Calhoun v. La. Materials Co.*, 206 So.2d 147, 150 (La. Ct. App. 1968).[3]

    B.    **AMRI Is A Necessary and Indispensable Party, And The Insurers' Inability To Join AMRI To This Action Requires Dismissal Under Rule 12(b)(7) and Rule 19**

    Rule 19 establishes a two-step process for determining whether an action should be dismissed for non-joinder. The Court first must evaluate whether the party is necessary.[4] *See*

---

[3]    Continental also "can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief" as against Freeport for fraud. Amd. Compl. ¶¶ 59-74; Walsh Decl. Ex. G. Continental makes no mention of Freeport whatsoever in its fraud pleadings. According to Rule 9(b). fraud claims must be alleged with particularity and fraud allegations "should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Natowitz v. Mehlman*, 542 F. Supp. 674, 676 (S.D.N.Y. 1982). The fraud claim fails to meet these standards and must be dismissed for failure to state a claim under Rule 12(b)(6).

[4]    According to Rule 19(a)(1), a party is necessary if: "(B) that party claims an interest in relating to the subject of the action and is so situated that disposing of the action in the party's absence may: (i) as a practical matter impair or impede the party's ability to protect the interest, or (ii) leave an existing party subject to a substantial risk of incurring double. multiple or otherwise inconsistent liability obligations because of the interest."

*(Footnote continued)*

*Randolph Found. v. Duncan*, No. 00 Civ. 6445, 2002 WL 32862, at *4 (S.D.N.Y. Jan. 11, 2002). If the party is deemed necessary, then it must be joined. If, however, joinder is not feasible, then the court must determine if the party is indispensable. *Global Disc. Travel Serv., LLC v. Trans World Airlines Inc.*, 960 F. Supp. 701, 709 (S.D.N.Y. 1997). Here, dismissal is mandated by Rule 12(b)(7) and Rule 19, because AMRI is necessary and indispensable and cannot be joined because this Court lacks personal jurisdiction over it.

 1. AMRI Is A Necessary Party

 AMRI is a necessary party under Rule 19(a)(1)(B)(i) because it (and not Freeport) has a clear interest in the subject matter and outcome of this action. *Am. Home Assur. Co. v. Babcock & Wilcox Co.*, No. 06-CV-6506, 2007 WL 4299847, at *2 (E.D.N.Y. Dec. 6, 2007) (co-insurer and named party to contract is necessary); *Randolph Found.*, 2002 WL 32862, at *4 ("[I]t is well established that a party to a contract which is the subject of the litigation is considered a necessary party."); *Global Disc. Travel Serv.*, 960 F. Supp. at 707-08 (same). AMRI is a Named Insured under Continental's and Century's Policies. *See supra* at 6. Moreover, as insurers acknowledge, AMRI (not Freeport) is the defendant in the Underlying Actions and "AMRI . . . has sought and continues to seek reimbursement of certain claimed costs of defending itself in the Louisiana Litigation under the Century and Continental policies." Amd. Comp. at ¶¶ 17-18; Walsh Decl. Ex. G.

 On these facts, it is indisputable that AMRI's rights to coverage will be affected by the outcome of this litigation and that AMRI will be unable to protect its interests should the coverage issues be determined in this Court in its absence. *Babcock*, 2007 WL 4299847, at *5; *Global*

---

Generally, in an insurance coverage action. a party with coverage rights that will be determined by the outcome of the case is deemed a necessary party. *Am. Home Assur. Co. v. Babcock & Wilcox Co.*, No. 06-CV-6506, 2007 WL 4299847, at *5 (E.D.N.Y. Dec. 6, 2007).

*Disc. Travel Serv.*, 960 F. Supp. at 708; *Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.*, 744 F. Supp. 450, 458 (S.D.N.Y. 1990). Under Rule 19(a)(1)(B)(ii), there is a significant risk that the parties will incur inconsistent obligations. *Global Disc. Travel Serv.*, 960 F. Supp. at 708-09; *Entze Nazionale*, 744 F. Supp. at 458. AMRI is a plaintiff in the California action where it has chosen to assert its coverage claims and has raised breach of contract and declaratory judgment claims against insurers that duplicate the claims raised here, creating the risk of inconsistent results. *See infra* at Section II.A.4 at p. 19. It is inconceivable that AMRI's rights to coverage can be determined in this case in its absence.

> a.    AMRI Cannot Be Joined to this Action

Although AMRI is a necessary party, it cannot be joined to this action because this Court lacks personal jurisdiction over it. Although insurers mention AMRI in their Amended Complaint after they were alerted by Freeport to AMRI's importance, insurers did not seek to add AMRI as a defendant nor do any of their pleadings even suggest facts sufficient to demonstrate personal jurisdiction exists. A "foreign corporation," such as AMRI, is only "amenable to suit in New York courts under CPLR 301 if it has engaged in such continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." *Landoil Res. Corp. v. Alexander & Alexander Serv., Inc.* 77 N.Y. 28, 33, 565 N.E.2d 488, 490 (N.Y. 1990). There is no evidence that AMRI has been present in New York at all, let alone with the "fair measure of permanence and continuity" required to find its presence here for jurisdictional purposes. *See id.* at 34. Rather, AMRI is organized under the laws of Delaware and is licensed to conduct business only in Louisiana. Hughes Aff. ¶ 4. Furthermore, there is no evidence that AMRI has "purposefully availed [itself] of the privilege of transacting business in New York" in any manner that would support jurisdiction over AMRI under New York's long-arm statute, CPLR 302(a)(1),

and on information and belief it has not.  *WarckMeister v. Diana Lowenstein Fine Arts*, 7 A.D. 3d 351, 352 (1st Dep't 2004).

        b.    <u>AMRI is an Indispensable Party</u>

    Because AMRI is a necessary party and joinder is infeasible, Rule 19(b) requires that this Court determine whether "in equity and good conscience" the action should continue.  *Global Disc. Travel Serv.*, 960 F. Supp. at  707.  Here, the equities strongly favor dismissal.  Any judgment rendered in this action will affect AMRI's ability to protect its coverage interests under the policies.  *See Shimkin v. Tompkins, McGuire, Wachenfeld & Barry*, No. 02 Civ. 9731, 2003 WL 21964959 (S.D.N.Y. Aug. 19, 2003).  At the same time, the opportunity exists to litigate this dispute in the California action with all the parties in one forum.  *See Global Disc. Travel Serv.*, 960 F. Supp. at 709.  "[C]ourts and the public have an interest in the complete, consistent and efficient settlement of controversies."  *Id.*  For any and all of the foregoing reasons, this Court should dismiss this action on the basis of Rules 12 and 19.

## II.    THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE IN FAVOR OF THE MORE APPROPRIATE AND COMPREHENSIVE ACTION PENDING IN CALIFORNIA

    The focus of the current litigation is whether insurers must pay as defense costs the monies spent to conduct the Document Review (*see supra* at 6-8).  Whether such costs must be paid by Cyprus Amax's historic insurers and whether such costs, if covered, are "unreasonable and/or unnecessary" in whole or in part (Amd. Compl. at ¶ 40(d); Walsh Decl. Ex. G) are the key issues presented in this lawsuit and the separate lawsuit filed by Cyprus Amax and AMRI in Los Angeles Superior Court.  Since both lawsuits arise out of the same transaction – the Document Review – and raise the same legal issues – including whether the monies spent are reasonable and necessary defense costs – the issues should be decided in one proceeding to avoid piecemeal and

potentially inconsistent litigation.  The Los Angeles Superior Court is the only court that can

adjudicate the entire case, as the dispute with the Cyprus Minerals Company insurers must be

heard in that Court and AMRI is not a party to this case nor subject to this Court's jurisdiction.

Thus, even if the Court were to conclude that it has subject matter jurisdiction and could proceed

without AMRI, it should not, based upon an exercise of its discretion under the doctrine of

abstention.

A.     <u>The Court Should Abstain Pursuant To The *Brillhart* Doctrine.</u>

Federal District Courts have broad discretion to dismiss or stay actions seeking a

declaratory judgment.  As the U.S. Supreme Court reiterated in *Wilton v. Seven Falls Co.*, 515

U.S. 277 (1995), upholding the doctrine first articulated in *Brillhart v. Excess Ins. Co. of Am.*, 316

U.S. 491 (1942), "[c]onsistent with the nonobligatory nature of the [Declaratory Judgment Act]

remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss

an action seeking a declaratory judgment ...." *Wilton*, 515 U.S. at 288.  Indeed, this Court has

recognized that "[t]he Court must look at the litigation situation as a whole in determining whether

it is appropriate for the Court to exercise its jurisdiction over [a] declaratory judgment ...." *Great

Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990) (Leisure, P.).

Thus, "[i]n the declaratory judgment context, the normal principle that federal courts should

adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial

administration." *Wilton*, 515 U.S. at 288.  This is such a case, and every one of the factors

identified by the Supreme Court in *Brillhart* and *Wilton* favoring abstention are satisfied here.[5]

---

[5]     Tellingly, when Continental sued AMAX Inc. in 1992 in State Court in New York, *see supra* at 8, it sought to distinguish federal cases cited by AMAX Inc. and properly observed that "[w]hen the federal action is one for declaratory judgment the court is under no compulsion to exercise its jurisdiction." Brief of Plaintiff Cont'l. Ins. Co. at p. 28 n. 14, Cont'l. Ins. Co. v. AMAX Inc., No. 19737/91 (N.Y. Sup. Ct. Dec. 7, 1991) (quoting *Hartford Accident & Indemnity Co. v. Hop-On International Corp.*, 568 F. Supp. 1569, 1571 (S.D.N.Y. 1983)); Walsh Decl. Ex I.

1.    This Insurance Dispute Involves No Federal Law Issues.

In this case, insurers seek to have the Court declare the meaning of state law applicable to the insurance contracts they sold to AMAX Inc. and AMRI. Insurance is a creature largely relegated to the States. 15 U.S.C.A. § 1011 (1945). Abstention is appropriate where no question of federal law is presented, and that is almost always the case in insurance coverage disputes. Indeed, some courts even "weight[] the scales presumptively in favor of abstention in declaratory judgment actions where insurance coverage disputes are the issue." *Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp.*, No. 94 CIV. 6971, 1996 WL 61763, at *3 (S.D.N.Y. Feb. 3, 1996); *see Travelers Indem. Co. v. Philips Elec. N. Am. Corp.*, No. 02 Civ. 9800, 2004 WL 193564, at *2 (S.D.N.Y. Feb. 3, 2004) (stating that "district courts routinely invoke [the] doctrine of abstention in insurance coverage actions, which necessarily turn on issues of state law") (citing cases); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Warrantech Corp.*, No. 00 Civ. 5007, 2001 WL 194903, at *3 (S.D.N.Y. Feb. 27, 2001).

2.    All Parties are Amenable to Process in the California Action, While Not All Necessary or Otherwise Relevant Parties Can Be Joined To This Action

Federal courts consider whether necessary parties have been joined and whether such parties are amenable to process in the competing state action. *Wilton*, 515 U.S. at 283. The California action is the only proceeding that will permit the satisfactory adjudication of all parties and all issues on all sides of this dispute, including the AMAX Insurers, the Cyprus Insurers as well as AMRI, the principal insured seeking coverage as the entity defending the underlying claims. *Multi-Fin.*, 2004 WL 193564, at *3-4. Both Continental and Century do business in California, and both are amenable to service of process in California.

3.    The California Action Will Allow The Claims Of All Parties In Interest To Be Satisfactorily Adjudicated

Federal courts also consider whether the claims of all parties in interest can satisfactorily be adjudicated in the competing state action. *Wilton*, 515 U.S. at 283. As stated above, the California action is the only proceeding that will allow for satisfactory adjudication of all parties in interest, including the Cyprus Insurers and AMRI. *Warrantech*, 2001 WL 194903 at *3; *Multi-Fin.*, 1996 WL 61763, at *3. Moreover, Continental and Century can obtain a declaratory judgment on their newly pled allocation issues in California (Cyprus Amax and AMRI raised these same issues in their California Complaint), and they are entitled to argue – as they would before this Court – for choice of whatever law they believe is appropriate as well as raise any defenses available to them. *Washington Mut. Bank, FA v. Superior Court,* 24 Cal. 4th 906, 916-918, 15 P.3d 1071, 1080-81 (Cal. 2001).

4.    Abstention Will Avoid Duplicative Proceedings and Inconsistent Results

Abstention is favored under *Wilton* when necessary to avoid duplicative proceedings. Litigating this action while the same claims are being litigated in California creates the real risk of two courts reaching inconsistent results. *Wilton*, 515 U.S. at 283; *Fireman's Fund Ins. Co v. Chris Craft Indus., Inc.*, 932 F. Supp. 618, 620-621 (S.D.N.Y. 1996). This action and the California action involve overlapping claims, legal issues, and parties. There is no question that the California action will proceed – it must as against at least the Cyprus Insurers – because they agreed with Cyprus Amax that any claims against each other would be litigated in the Los Angeles Superior Court. If the two cases proceed in parallel, this Court and the California court could reach conflicting decisions about the scope of plaintiff-insurers' duty to defend related to Document Review project under the identical policies. Moreover, the same discovery – focused on the necessity and reasonableness of the Document Review – will be taken twice. For this action to proceed under such circumstances would be "a wasteful expenditure of judicial

19

resources" and a "[g]ratuitous interference with the orderly and comprehensive disposition" of the California action. *Wilton*, 515 U.S. at 288; *Brillhart*, 316 U.S. at 495.

        5.      <u>The Totality of Other Circumstances Likewise Favor Abstention</u>

       This action has little or no connection to New York. *Multi-Fin.*, 1996 WL 61763, at *4. The challenged document review took place in Arizona. The Underlying Actions are pending in Louisiana. Documents and witnesses are scattered across several states, principally in Arizona, but not in New York. Whatever slim interest New York may have in this dispute is heavily outweighed by the fact that this action does not involve policy formation issues as the case involves undisputed standard-form policy language involving the duty to defend in primary policies.

       Moreover, this Court need not add to its financial and administrative burdens by entertaining litigation that is the obvious product of forum shopping. *Commercial Underwriters Ins. Co. v. Glowmaster Corp.*, 105 F. Supp. 2d 268, 270 (S.D.N.Y. 2000). It should not be forgotten that the insurers initiated this lawsuit without prior warning in the midst of negotiations in an obvious effort to preempt an action by their policyholder (the natural insurance plaintiff) so as to gain a perceived litigation advantage. "[D]eclaratory judgment is not a prize to the winner of a race to the courthouse."[6] *Id.* at 270 (quotations omitted). On this point, further evidence of

---

[6]    Significantly, Cyprus Amax is not the only policyholder that Continental has attempted to prevent from choosing a forum. In *Cont'l. Ins. Co. v. Wickes Cos. Inc.*, No. 90 Civ. 8215, 1991 WL 193771 (S.D.N.Y. Sept. 6, 1991), Continental commenced a declaratory judgment action in the United States District Court for the Southern District of New York the day before it sent a letter to its insured denying coverage for a pending shareholder suit. When the insured then filed its own coverage action in California state court, Judge Wood of the Southern District, transferred the New York action. In doing so, she condemned Continental's "preemptive strike," stating that, "by anticipating the possible filing of a suit by [the insured], Continental reversed the usual roles of plaintiff and defendant and deprived the putative injured party [i.e., the insured], of its chance to have this dispute heard in the forum of its choice." That is precisely what Continental has tried to do here, and it is respectfully submitted that this Court should prevent this blatant forum shopping maneuver by dismissing the present action. *See, also, Great Am. Ins. Co. v. Houston General Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ("misuse [by insurer] of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff . . . militates in favor of dismissing the declaratory judgment action").

Continental's gamesmanship is that CNA (the lead parent-negotiator for Continental prior to the filing of this lawsuit) issued primary insurance both to AMAX Inc. (as Continental Insurance) and to the Cyprus Minerals Companies (as Continental Casualty); as such, CNA knew that Continental Casualty was required to litigate *this dispute* in California, but nonetheless filed its lawsuit on the AMAX Inc. policies in New York.

Finally, the insurers filed an Amended Complaint in this case only after Freeport advised them (and the Court) that it would be filing an abstention motion. The addition of claims for unjust enrichment and fraud in the Amended Complaint is an obvious attempt to side-step *Brillhart* and highlights the insurers' attempt to elevate form over substance. Gamesmanship should not be rewarded and, indeed, counsels in favor of the Court exercising its discretion to abstain.[7] At least one federal court in this District found as much in similar circumstances. *See e.g. Gen. Star Int'l Indem. Ltd v. Chase Manhattan Bank*, No. 01 Civ. 1139, 2002 WL 850012, *5, *10 (S.D.N.Y. May 3, 2002) ("the late addition of the [claims] . . . strongly suggests that it is pretextual, designed to manufacture jurisdiction." and "merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit.").

B.     The Court Should Abstain Pursuant To the Colorado River Doctrine.

Whether or not the *Brillhart* abstention doctrine applies, the Court separately may and should abstain pursuant to the abstention doctrine articulated in *Colorado River Water Conser. Dist. v. U.S.*, 424 U.S. 800 (1978). Although less permissive than the *Brillhart* doctrine, "the

---

[7]     Additionally, insurers headquartered in Illinois (Continental) and Pennsylvania (Century) are entitled to no deference in their choice of this New York forum. "Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *N. Am. Airlines, Inc. v. Int'l Broth. of Teamsters, AFL-CIO*, No. 04 Civ. 9949, 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)).

federal courts have frequently followed *Colorado River* and abstained from exercising jurisdiction in deference to parallel state actions." *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652, 656 (S.D.N.Y. 1997) ("*Eagle*"). Under *Colorado River* and its progeny, a federal court is required to weigh six factors – several of which are similar or identical to the *Brillhart* factors – to ascertain whether "exceptional circumstances" exist sufficient to justify the surrender of federal jurisdiction.[8] *Colorado River*, 424 U.S. 800; *Gen. Star*, 2002 WL 850012, at *5; *Eagle*, 961 F. Supp. at 655. The requisite "exceptional circumstances" exist in this case, as demonstrated below.[9] *See e.g. Gen. Star*, 2002 WL 850012, *5, *10.

     1.     <u>Abstention is Necessary to Avoid Piecemeal Litigation</u>

"The avoidance of piecemeal litigation goes to the heart of the abstention doctrine, principles of which 'rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Gen. Star*, 2002 WL 850012, at *7. This factor quite closely resembles the *Brillhart* factor of avoiding duplicative proceedings and inconsistent results discussed, *supra* Section II.A.4 at p. 19, and favors abstention. In sum, this action does not, and cannot, resolve the claims and defenses of all the parties to the dispute and allowing parallel proceedings to proceed raises the specter of conflicting decisions about the scope of the plaintiff-insurers' duty to defend as to the same Document Review project under the same policies.

---

[8]    The Colorado River factors are as follows: (1) the avoidance of piecemeal litigation; (2) the order in which jurisdiction was obtained in the concurrent forums; (3) whether state or federal law supplies the rule of decision; (4) the inconvenience of the federal forum; (5) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction; and (6) whether either court has jurisdiction over property at issue in the dispute. *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652, 656 (S.D.N.Y. 1997). In this insurance case involving defense costs, there is no "res" or property over which either court has jurisdiction so that factor is not discussed.

[9]    No one factor is controlling, and the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

2.    The Fact that this Action was Filed First does not Militate Against Abstention

Federal courts weighing *Colorado River* factors consider the order in which the competing lawsuits were filed, but only "in terms of how much progress has been made in the two actions" because "speed does not carry much weight with regard to abstention." *Gen. Star*, 2002 WL 850012, at *8-9. This action was filed first (insurers' Amended Complaint was filed only 14 days ago), but there has been no Answer filed in either action and no discovery has taken place in either court. This factor is neutral.

3.    No Federal Law is Implicated Here

For the same reasons noted in Section II.A.1 at p. 17, the complete absence of federal issues in this insurance coverage case favors abstention. "Indeed, abstention may be favored where the overwhelming majority of issues are state law-based." *Gen. Star*, 2002 WL 850012, at *10 (citing *Gen. Reins. Corp. v. CIBA-Geigy Corp.*, 853 F.2d 78, 82 (2d Cir. 1998)).

4.    The Inconvenience of the Federal Forum

The principal witnesses related to this dispute – the Document Review project – are located in Phoenix Arizona, where the 18,000 boxes of disputed documents are located, were reviewed, and where the document reviewers and Cyprus Amax reside. Winfree Aff. ¶ 3; 6. Phoenix is approximately 350 miles from the Los Angeles Superior Court courthouse, as compared to approximately 2500 miles from the Federal courthouse in New York. Walsh Decl. ¶ 11. Moreover, at least one of the Cyprus Minerals insurers, Truck Insurance Exchange, is headquartered in California. CA Complaint ¶ 11; Walsh Decl. Ex. H. No party to this action or the California action reside in New York and no known relevant documents reside in New York. Witnesses in other locations, such as Louisiana, Texas, Pennsylvania, and Illinois, will be equally inconvenient to either a California or New York forum. On balance, the federal court is less convenient.

5.    <u>The California Action will Adequately Protect Insurers' Rights</u>

Just as the *Brillhart* doctrine requires consideration of whether the claims of all parties in interest can satisfactorily be adjudicated in the competing state court action, *see supra* Section II.A.3 at p. 18, federal courts considering *Colorado River* abstention examine whether the parallel state court proceeding will provide an adequate vehicle for the complete and prompt resolution of the issues between the parties. *Gen. Star*, 2002 WL 850012, at *11. To reiterate, there is no claim or defense insurers cannot raise in the California action and no party they cannot join. The California forum adequately protects insurers' <u>and</u> all parties' rights.

## **CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed. If the Court does not dismiss the Complaint, then the action should be stayed pending a final determination in the California state proceeding.

Dated: New York, New York
May 23, 2008

Respectfully submitted,

Mark J. Plumer /s/_____
Mark J. Plumer (admitted *pro hac vice*)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C.  20036
(202) 912-2000

Lisa M. Cirando (LC 1916)
Chelsea J. Walsh (CW 1489)
HELLER EHRMAN LLP
7 Times Square
New York, New York 10036
(212) 832-8300

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

CENTURY INDEMNITY COMPANY,         :
AS SUCCESSOR TO CCI INSURANCE       :
COMPANY, AS SUCCESSOR TO            :
INSURANCE COMPANY OF NORTH          :
AMERICA and THE CONTINENTAL         :    08 Civ. 2012 (PKL)
INSURANCE COMPANY,                  :
                                    :
            Plaintiffs,             :    **<u>CERTIFICATE OF SERVICE</u>**
                                    :
      v.                            :

FREEPORT-MCMORAN COPPER &
GOLD INC., AS THE CLAIMED
SUCCESSOR TO PHELPS DODGE
CORPORATION, AS THE CLAIMED
SUCCESSOR TO CYPRUS AMAX
MINERALS COMPANY, AS THE
CLAIMED SUCCESSOR TO AMAX,
INC., AS SUCCESSOR TO AMERICAN
METAL CLIMAX, INC.,

            Defendant.

---------------------------------------------------------x

I, Ryan Larson, hereby declare under penalty of perjury, on the 23rd day of May, 2008, I

caused true and correct copies of Defendant Freeport-McMoRan Copper & Gold Inc.'s Notice of

Motion and Memorandum of Law In Support of Its Motion to Dismiss or Stay this Action, and

the affidavits of Gregory D. Winfree, Victoria Bellamy, and Michelle A. Hughes, each dated

May 22, 2008; and the Declaration of Chelsea J. Walsh, dated May 22, 2008; in the above

captioned case to be served on plaintiffs Century Indemnity Company's and The Continental

Insurance Company's counsel listed below by US Mail:

                    Shane R. Heskin, Esq.
                    White and Williams LLP

1800 One Liberty Place
Philadelphia, Pennsylvania  19103
(215) 864-7000
Attorneys for Plaintiff Century Indemnity Company

Alan P. Jacobus, Esq.
Carroll Burdnick & McDonough LLP
44 Montgomery Street
Suite 400
San Francisco, California  94104
(415) 989-1900
Attorneys for Plaintiff The Continental Insurance Company

Dated:  New York, New York
        May 23, 2008                        Ryan P. Larson