UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

CENTURY INDEMNITY COMPANY, AS          :
SUCCESSOR TO CCI INSURANCE             :
COMPANY, AS SUCCESSOR TO               :      Index No. 08 Civ. 02012 (PKL)
INSURANCE COMPANY OF NORTH             :
AMERICA and THE CONTINENTAL            :
INSURANCE COMPANY,                     :      **DECLARATION OF**
                                       :      **CHELSEA J. WALSH**
                    Plaintiffs,        :
                                       :
            v.                         :
                                       :
FREEPORT-MCMORAN COPPER & GOLD         :
INC., AS THE CLAIMED SUCCESSOR TO      :
PHELPS DODGE CORPORATION, AS THE       :
CLAIMED SUCCESSOR TO CYPRUS            :
AMAX MINERALS COMPANY, AS THE          :
CLAIMED SUCCESSOR TO AMAX, INC.,       :
AS SUCCESSOR TO AMERICAN METAL         :
CLIMAX, INC.,                          :
                                       :
                    Defendant.         :
                                       :

---------------------------------------------------------x

Chelsea J. Walsh, hereby declares pursuant to 28 U.S.C. § 17746 as follows:

1. I am an attorney in the law firm of Heller Ehrman LLP, counsel of record for defendant Freeport-McMoRan Copper & Gold, Inc. ("Freeport") in this action. I submit this Declaration in support of the motion to dismiss by Freeport. Unless stated upon information and belief, I have personal knowledge of the facts stated herein and affirm that such statements of fact are true and correct to the best of my knowledge.

2. Attached hereto as Exhibit A is a true and correct copy of the December 21, 2007 letter from Joseph A. Peters, Vice President of Enviro - Tox Loss Services, Inc., directed to Robert Galardi, Claims Specialist for CNA Insurance, and Margo Dedeyan, Claims Specialist for Resolute Management, Inc.

3.  Attached hereto as Exhibit B is a true and correct copy of the January 11, 2008 letter from Margo Dedeyan to Joseph A. Peters.

4.  Attached hereto as Exhibit C is a true and correct copy of the January 14, 2008 letter from Robert Galardi directed to Joseph A. Peters.

5.  In 1992, Continental Insurance Company filed a lawsuit against AMAX Inc. in the Supreme Court of the State of New York, New York County and sought declaratory relief as to the same policies at issue here.  The trial court dismissed the action in favor of a later-filed Colorado lawsuit.  Attached hereto as Exhibit D is a true and correct copy of the Decision, dated June 26, 1992 entered by Justice Peter Tom in *Cont'l Ins. Co. v. AMAX Inc.*, No. 19737/91 (N.Y. Sup. Ct. June 26, 1992), *reprinted in* 6 *Mealey's Litig. Rpts.: Ins.* No. 34, at B-1 (July 14, 1992).

6.  The Colorado court ultimately applied Colorado law to the policies.  Attached hereto as Exhibit E is a true and correct copy of the Order, dated May 24, 1993 entered by Judge John P. Leopold in *Amax Research & Development, Inc. v. Cont'l Ins. Co.*, No. 91CV3707 (Dist. Ct. Colo.). *reprinted in* 7 *Mealey's Litig. Rpts.: Ins.* No. 30, at G-1 (June 8, 1993).

7.  Attached hereto as Exhibit F is a true and correct copy of the Original Complaint in this action filed on February 28, 2008.

8.  Attached hereto as Exhibit G is a true and correct copy of the First Amended Complaint in this action filed on May 9, 2008.

9.  Attached hereto as Exhibit H is a true and correct copy of the Complaint filed on May 16, 2008 in *Cyprus Amax Minerals Co., et al. v. Continental Casualty Co., et al.*, No. BC391068 (Super. Ct. L.A. County).

10. Attached hereto as Exhibit I is a true and correct copy of the Memorandum of Law of Plaintiff Continental Insurance Company in Opposition to AMAX Inc.'s Motion to Dismiss or Stay this Action filed on December 7, 1991 in *Cont'l Ins. Co. v. AMAX Inc.*, No. 19737/91 (N.Y. Sup. Ct.).

11. Based upon my review of Google Maps, Phoenix is approximately 350 miles from the Los Angeles Superior courthouse, as compared to 2,500 miles from the Federal Courthouse in New York.

Dated:   New York, New York
         May 22, 2008

_____
Chelsea J. Walsh

# *Enviro-Tox Loss Services, Inc.*

*2421 Callender Rd. Suite 123*
*Mansfield, TX 76063*
*www.etls.net*

*Larry Poling and Joseph Peters*
*Phone: 817-561-9675*
*Fax: 817-561-9678*
*P.O. Box 172859*
*Arlington, TX 76017*

*Gene Waymon*
*Phone: 508-746-3190*
*Fax: 508-746-4247*
*P.O. Box 3253*
*Plymouth, MA 02361*

December 21, 2007

Margo Dedeyan
Claims Specialist
Resolute Management, Inc.
Mid-Atlantic Division
United Plaza-Suite 700
30 South 17th Street
Philadelphia, Pa  19103

Certified Mail, Return Receipt Requested
7006 0100 0002 2199 9796

Robert Galardi
Claim Specialist
CNA
Law Department
Environmental & Mass Tort Claims
Cranbury Executive Center
1249 South River Road, Suite 300
Cranbury, NJ  08512

Certified Mail, Return Receipt Requested
7006 0100 0002 2199 9789

Re:  Freeport-McMoRan Copper & Gold Inc. Document Review Project (Revlon Project)

Dear Ms. Dedeyan and Mr. Galardi:

Thank you for meeting with us on December 6, 2007 in Philadelphia. At the meeting Freeport-McMoRan Copper & Gold Inc. (FCX) agreed to provide the additional information you requested concerning the review of Cyprus Amax Minerals Company (Cyprus Amax) documents currently housed at the former Revlon facility in Phoenix, Arizona (Revlon).  In accordance with that agreement, enclosed are the following:

- *Revlon Building Floor Plan*
- Agreement for Payment of Revlon Building Lease
- Revised Case List
- Case-specific pro-rata sheets of each Cyprus Amax case on the revised case list
- Email from counsel regarding  the inactive Ohio cases
- Contact List for silica cases insurers
- FCX Insurance Program Chart

The following additional items will be forwarded to you under separate cover:

Page 2
December 21, 2007
Peters to CNA and INA

- Quarterly status reports both on how litigation is going and the status of the document review project for quarter ending December 31, 2007
- Budget for Louisiana litigation (range)

## Project Overview

The Revlon Project was started in April 2005 with the discovery of various pockets of stored documents at various locations through the company. The subsequent discovery of Cyprus Amax documents that had been previously marked for destruction by Cyprus Amax prior to the merger between Cyprus Amax and Phelps Dodge Corporation in December 1999 caused concern that our prior responses to discovery requests may have been flawed. As a result of this discovery, we proceeded to review the document indexes for storage boxes received from Cyprus Amax we received and found an almost 50% error rate. At that time, it was determined that a comprehensive review should be undertaken; so these boxes were included in the Revlon Project.

## Project Details

| | |
|---|---|
| Date Commenced: | April 2005 |
| Total Leased Space (square feet): | 216,300 |
| Lease Costs per Square Foot: | Varies (from $0.72 to $.081) |
| Total Number of Boxes: | 62,712 |
| Reviewing Counsel: | Ryley Carlock, & Applewhite |
| Rate of Review per Month: | 2,000 boxes |
| Estimated Projected Completion: | Summer 2008 |

## Cyprus Amax Document Review

| | |
|---|---|
| Date Commenced: | February 2007 |
| Total Number of Cyprus Amax Boxes: | 23,425 (all collections) |
| Estimated Cyprus Amax Review Cost: | $7.8 mil |
| Total Billed to Date for Cyprus Amax: | $3.9 mil |
| Estimated Remaining Review Cost: | $3.9 mil |

## Cyprus Amax Document Review Justification

There are a number of Amax asbestos and Cyprus clay, talc and silica cases presently in litigation. In each of these cases, discovery has been propounded to the defendants by the plaintiffs. Though these discovery requests may have been previously answered by Cyprus Amax, a continuing obligation exists for Cyprus Amax to examine any newly discovered documents to determine if material relevant to ongoing litigation is contained and, if need be, to supplement their responses to discovery. This obligation is the direct purpose of the Cyprus Amax document review and the sole reason that Cyprus Amax insurers are being asked to participate in the payment of this portion of the Revlon Project. The document review, entry into the database and scanning is being conducted on the first floor of Building B-1 of the former Revlon facility (a copy of the floor plan is included in this package.) There are approximately 18,000 Cyprus Amax boxes that have commingled corporate records from both Cyprus Minerals Company and Amax Inc. are currently being reviewed at the Revlon facility. The review of the other Cyprus Amax collections have been completed and were not charged to the Cyprus Amax insurers. Thus far, roughly 41% to 46% of the boxes reviewed contain information pertaining to and potentially responsive to Cyprus Amax asbestos, silica, and talc litigation.

## Selection of Active Cases

Cases for allocation of the Cyprus Amax document review costs were selected based on whether the case was active and an ongoing discovery obligation existed. The enclosed case list shows the open and active Cyprus Amax cases. As previously discussed, the original list was in error as it contained a number of cases that had previously been resolved. That revised case list will be

Page 3
December 21, 2007
Peters to CNA and INA

used on a going forward basis. As new cases are filed, the list will be modified to include the new cases. Similarly, as cases are resolved, the list will be modified to omit the resolved cases.

**Correction of Prior Invoices**

To date, the Cyprus Amax insurers have been billed $3,852,771.63 (Amax Louisiana asbestos $3,105, 173.61; Cyprus clay, talc and silica $747,598.02). Because of the error noted above, the allocation of these costs will have to be adjusted. We have also included a breakdown of the percentages owed by each insurer as well as Freeport's share. We are unable to share the cost allocation on the silica cases because the percentages are part of a confidential cost sharing agreement. We have included a contact list for these insurers for your convenience.

In summary, your insured has undertaken a review of the Cyprus Amax boxes in order to comply with its ongoing discovery obligations on active cases in which you are participating in the defense. This review is part of that defense and, as such, your insured fully expects you to participate in this project. At this point, your insured has been paying a large share of legal *expenses associated with its discovery obligation which rightfully should be paid by you.* Therefore, please provide your written commitment to participate in the Cyprus Amax review project no later than 5:00 PM EST on January 15, 2008. Furthermore, the insured requests that your reimbursement payments begin no later than 5:00 PM EST on January 31, 2008.

I thank you in advance for your time and attention to this matter and I look forward to receiving your response at your earliest possible convenience.

Very truly yours,

Joseph A. Peters
Vice-President
Enviro-Tox Loss Services, Inc.

## Resolute Management Inc.

**Margo H. Dedeyan**
Senior Claims Specialist
267.765.5945 – tele
267.765.5946 – fax
margo.dedeyan@resolute-midatlantic.com

**Mid-Atlantic Division**
United Plaza – Suite 700
30 South 17th Street
Philadelphia, PA  19103

January 11, 2008

*RECEIVED*

JAN 15 2008

*Enviro-Tox Loss*
*Services*

Joseph A. Peters
Vice-President
Enviro-Tox Loss Services, Inc.
2421 Callender Rd., Suite 123
Mansfield, Texas 76063

**Re:    Freeport-McMoRan Copper & Gold, Inc. Document Review Project
(Revlon Project)**

Dear Mr. Peters:

Thank you for providing us with the information contained in your December 21, 2007 letter regarding the above-referenced document review project.  The information provided therein, however, is insufficient for us to make a decision regarding our commitment to this project at this time.  In an effort to assist us with understanding the scope and nature of this project, we would like to make a site visit to the Revlon facility as soon as possible.  Please let us know if there are any conflicts with us conducting our visit on January 31, 2008.

In the interim, we ask that you provide us with a copy of the document requests referenced by your letter, which you assert are the basis of the allocation to the Cyprus Amax insurers.  Additionally, we ask that you provide us with historical Cyprus Amax settlement amounts in the underlying-asbestos litigation and any other information that will assist us with evaluating Cyprus Amax's potential exposure.

We again thank you for your cooperation and look forward to hearing from you.

Very truly yours,

Margo H. Dedeyan

cc:

Greg Winfree, Esquire
Phelps Dodge
One North Central
Phoenix, AZ  85004-2306





**Cranbury Executive Center**
**1249 South River Road, Suite 300**
**Cranbury, New Jersey 08512**

*Robert Galardi*
*Claims Specialist*
*Law Department*
*Environmental and Mass Tort Claims*
*Telephone    609-860-2198*
*Facsimile    609-655-6609/6610*
*Toll Free    800-266-7035*
*robert.galardi@cna.com*

January 14, 2008

Mr. Joseph A. Peters
Enviro-Tox Loss Services, Inc.
2421 Callender Road, Suite 123
Mansfield, TX 76063

**RE:**    **Freeport-McMoRan Copper & Gold, Inc. Document Review Project**
**CNA INSURED:**    **Amax, Inc.**
**CNA Claim #:**    **AS002184**

Dear Mr. Peters:

Kindly allow this correspondence to confirm receipt of yours dated December 21, 2007, with regard to the above-referenced matter. I thank you for providing the information contained within that correspondence. We are currently in the process of reviewing this information in detail. We will apprise you if we need clarification or any further documentation regarding the information that your had forwarded regarding the Revlon building and lease, the insurance carrier information, claim / litigation information and all other information that you provided.

As you recall, this information was requested when the insurance carrier representatives had met with yourself and the insured's representatives back on December 6, 2007. At that time, we had discussed, in some detail, the nature, scope and extent of the review project currently being undertaken. Until that time, I had little knowledge of what was being done with regard to this project.

CNA is currently in the process of reviewing all of the information at its disposal with regard to this project and all matters associated with this project and will continue to do so. In specific response to your request that we provide our written commitment to participate in the Cyprus Amax review project, no later than January 15, 2008, it is simply not feasible to relay our position at present. As we had recently received much of the information necessary perform a diligent investigation with regard to this project, our coverage analysis is ongoing.

We require further information, prior to tendering our final position with regard to the project. Such information includes, but may not be limited to obtaining information that would precisely define the current allocation scheme to the Amax and Cyprus insurance carriers. Accordingly, by way of this correspondence, I am requesting all documents that you have that supports the current allocation regarding the respective carriers.

This letter supplements all previous claims correspondence that CNA has sent. Nothing in this letter is intended to waive or alter in any way any of CNA's previous coverage positions. Nothing in the defense or investigation of these matters shall constitute an estoppel of any of CNA's rights under the policies. CNA expressly reserves the right to rely on all terms, conditions or exclusions in deciding whether or not coverage is afforded under the policies. Further, CNA reserve the right to rely on any additional terms, conditions, exclusions or limitations to coverage contained within or incorporated in the policies. Any action that CNA may take in the investigation of this matter is not to be construed as a waiver of any of the terms and conditions of the policies.

I anticipate that we will shortly be in touch with you to discuss further. If there is anything that you would like to discuss in the interim, please do not hesitate to contact me.

Respectfully

*Robert Galardi*

ROBERT GALARDI – Claims Specialist
CNA Insurance
CC. Gregory D. Winfree, Esq.

# AMAX INC.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YOR : I.A. PART 55
------------------------------------------x

THE CONTINENTAL INSURANCE COMPANY,

                          Plaintiff,          Index No.19737/91

        -against-                             DECISION

AMAX INC., INSURANCE COMPANY OF NORTH
AMERICA, THE HOME INSURANCE COMPANY AND
UNDERWRITERS AT LLOYD'S OF LONDON,

                          Defendants.

------------------------------------------x

PETER TOM, J.:

Plaintiff Continental Insurance Company moves for an order recalling this Court's decision dated March 24, 1992 to correct and/or modify the decision prior to the entry or settlement of an order based upon that decision.

Defendant AMAX, Inc. cross-moves to modify the Court's March 24, 1992 decision for an order pursuant to CPLR §327 dismissing this action on the ground of forum non conveniens.

Due to certain events which occurred prior to and subsequent to the rendering of the March 24, 1992 decision and in consideration of the cross-motion by AMAX the Court hereby recalls and vacates its decision dated March 24, 1992 and renders the following decision in its place and stead.

Motion by defendant AMAX, Inc. for an order dismissing the complaint on various grounds are consolidated with plaintiff's instant motion to recall this Court's decision and defendant's instant motion to dismiss the complaint on the ground of forum non conveniens for decision.

That portion of plaintiff's motion for an order recalling

- 1 -

Index No.19737/91

this Court's decision dated March 24, 1992 is granted.

Defendant Amax, Inc. ("AMAX") moves for an order dismissing the complaint on the grounds that: 1) another action is pending between the parties for the same cause of action in the state of Colorado ("the Colorado Action"), and 2) plaintiff failed to join necessary parties; or in the alternative, to stay this action pending determination of the Colorado action. AMAX argues that the more comprehensive Colorado action includes as parties the AMAX subsidiaries which are not named herein but are the subject of the environmental claims that are asserted in the amended complaint of plaintiff Continental Insurance Company ("CONTINEN-TAL"). AMAX asserts that Colorado is the convenient forum for a more complete resolution of the coverage issues raised. Defendant AMAX also cross-moves to dismiss this action based on the ground of forum non-conveniens.

Plaintiff Continental is incorporated under the laws of the State of New Hampshire and has its principal place of business in New York. Continental is engaged in the business of issuing insurance policies.

Defendant AMAX is incorporated under the laws of the State of New York and maintains its principal place of business in New York. AMAX is a diversified mining and industrial company with subsidiaries operating at locations throughout the United States and in several foreign countries.

Commencing January 1, 1975 and continuing until April 1,

- 2 -

© COPYRIGHT 1992 MEALEY PUBLICATIONS, INC., WAYNE, PA

MEALEY'S LITIGATION REPORTS INSURANCE

© COPYRIGHT 1992 MEALEY PUBLICATIONS, INC., WAYNE, PA

MEALEY'S LITIGATION REPORTS

**INSURANCE**

Index No.19737/91

1992, Continental has been the primary insurer of AMAX and its subsidiaries, issuing sixteen (16) contracts of general liability insurance relevant to this action. Prior to 1975, co-defendant Insurance Company of North America ("INA") was their primary insurer. From 1958 to the present, co-defendants, the Home Insurance Company ("Home") and Underwriters at Lloyd's of London ("Lloyd's"), also engaged in the business of issuing insurance policies, have provided AMAX and its subsidiaries with initial excess and/or umbrella layer insurance. INA is incorporated under the laws of the State of Pennsylvania, maintains its principal place of business in Philadelphia, Pennsylvania, and is licensed to do business in the State of New York. Home is incorporated under the laws of the State of New Hampshire, maintains its principal place of business in New York and is licensed to do business in the State of New York. Lloyd's is an unincorporated association of underwriters organized under the laws of Great Britain and allegedly conducted business in New York at all relevant times to this action.

Continental commenced this action in or about August, 1991 against AMAX and on or about October 21, 1991, amended its complaint and joined INA, Home and Lloyd's as additional defendants. Over the last ten years, the United States Environmental Protection Agency ("EPA"), state regulatory agencies and/or private parties have requested information, commenced actions and made claims against AMAX and a number of its subsidiaries concerning

- 3 -

Index No.19737/91

their alleged liabilities for property damage, personal injury and/or bodily injury attributable to environmental contamination.

In this action, plaintiff seeks a declaratory judgment that it has no duty to defend AMAX in the underlying EPA and/or state environmental agency administrative proceedings as well as any third-party bodily injury or property damage claims or in any future cases or claims involving environmental contamination. Plaintiff further seeks a declaration that it has no duty to indemnify AMAX for any expenses or costs arising from the aforementioned proceedings or claims. Finally, plaintiff seeks attorney fees, costs and disbursements.

Approximately seven weeks after this action was commenced, AMAX and eight (8) of its subsidiaries commenced an action against Continental, INA, Home and Lloyd's in the District Court, County of Arapahoe, State of Colorado, seeking (1) a declaration of coverage with respect to all defendants; (2) damages from INA and Continental for breach of contract; and (3) punitive damages from Continental for bad faith misconduct.

In this action, coverage is disputed for claims of pollution and environmental contamination at approximately 33 sites located throughout the United States. The states involved include, inter alia, Colorado, California, Oklahoma, Utah, New Jersey, Kentucky, South Carolina, Montana, Florida, Georgia, Kansas, Wyoming, Arizona, New Mexico and Idaho.

AMAX argues that Colorado is a more convenient forum than

- 4 -

© COPYRIGHT 1992 MEALEY PUBLICATIONS, INC. WAYNE, PA

Index No.19737/91

New York for this litigation because, inter alia, Colorado is the state where the relevant AMAX companies' largest and most troublesome environmental claims are located; and where their environmental remediation work nationwide is based. It is further argued that New York has relatively small interest in the subject claims since there are presently no New York sites for which coverage is sought; none of the claimants against AMAX are based in New York; and most, if not all of the key witnesses and necessary documents are located outside of New York. Further, it is asserted that Continental will not be seriously inconvenienced if this action was heard in Colorado since it operates throughout the United States. Finally, AMAX argues that the more comprehensive subsequently filed action in Colorado would provide a more complete resolution of the case since the subsidiaries of AMAX, some of which are not subject to this Court's jurisdiction, are necessary parties.

Continental asserts that the AMAX subsidiaries are not indispensable or necessary parties to this action as they are controlled divisions of AMAX whose interests are united with AMAX and whose interests will be fully protected by AMAX. Continental further maintains that New York has the most significant contacts with, and interests in, this action since, among other things: the parties are located here; the insurance policies were executed, negotiated and delivered in New York; New York substantive law will apply in interpreting the policies at issue; and New York is

- 5 -

Index No.19737/91

easily accessible to witnesses and evidence located in other states. Continental contends that the "first-filed rule" mandates that, where, as here, the relief sought in both actions is the same, the priority in time of Continental's action should be dispositive in dismissing AMAX's motion.

The doctrine of forum non conveniens exists for the convenience of both the parties and the Court. (Silver v Great American Ins. Co., 29 NY2d 356, app.den. 31 NY2d 645). An analysis of this doctrine should "turn on considerations of justice, fairness, and convenience..." (id. at p.361; see also CPLR 327).

In determining an application for forum non conveniens, the Court must consider and balance a variety of factors. (See, Islamic Republic v Pahlavi, 62 NY2d 474). Among the factors to be considered in making this determination are the burden on New York courts, the inconvenience to the parties and the court, the nature of the relief sought and the availability of another forum (id. at p. 479). Both public and private interest factors include concerns about the appropriateness of having a court "that is at home with the state law that must govern the case," rather than having a court "in some other forum untangle problems in conflict of laws, and in law foreign to itself." (Gulf Oil Corp. v Gilbert, 330 US 501, 509).

The Court notes that because of the site, specific nature of the claims, the laws of the states where the claims arose will likely be relied upon to resolve the parties' disputes.

- 6 -

MEALEY'S LITIGATION REPORTS
INSURANCE

© COPYRIGHT 1992 MEALEY PUBLICATIONS, INC., WAYNE, PA

Index No.19737/91

(<u>Avnet, Inc.</u> v <u>Aetna Casualty and Surety Company, et al.</u>, 160 AD2d 463, 464; <u>The Flintkote Company</u> v <u>American Mutual Liability Insurance Co.</u>, 103 AD2d 501, aff'd 67 NY2d 857).

The Court in addressing forum non conveniens issues focuses on the location of the waste sites, location of witnesses and documents, and the experience of another forum with toxic waste issues. (<u>Employers Ins. of Wausau, a Mutual Company,</u> v <u>UniDynamics Corp.</u>, NYLJ, June 1, 1992, p.27, col.1, (App.Div., 1st Jud, Dept.)).

It is undisputed that as of the date of this motion, there have been no environmental claims made against AMAX or any of its subsidiaries arising out of New York sites.

AMAX claims that Colorado and California sites have the greatest liability potential out of all its sites throughout the United States.

In support of its cross-motion AMAX submits an affidavit by Howard Roitman, the Section Chief of the Remedial Programs Section of the Colorado Department of Health. Mr. Roitman states that the Department of Health is charged by law to enforce vigorously statutes, regulations and programs to preserve and protect the State's natural resources from contamination by pollution and, when necessary, to provide for the cleanup of contaminated natural resources. Mr. Roitman further states that the insured has a substantial presence in Colorado and that one of the major sites for which coverage is sought is the Lowry landfill, located

Index No.19737/91

in Arapahoe County, Colorado. The cleanup costs at the Lowry site may exceed one-half of one billion dollars for which the parties will be jointly and severally liable. Mr. Roitman asserts that Colorado has a compelling interest in ensuring that the Comprehensive General Liability policies such as those in issue in this case will be enforced and that the insurance companies be required whenever the law permits to indemnify their insureds for response costs necessary to clean up in-state contaminated sites and to prevent any further migration of contamination.

The New York presence of the parties, the execution and negotiation of the policies in New York, and the presence of the broker in New York do not prevent the Court from dismissing the complaint if in the interest of substantial justice and convenience, the action should be heard in another forum. (<u>Atlantic Mutual Insurance Company</u> v <u>Cadillac Fairview US,Inc.</u>, 125 AD2d 181, lv. to app. denied, 69 NY2d 613; <u>Avnet, Inc.</u> v <u>Aetna Casualty and Surety Co.</u>, supra).

Factors to be considered in determining the balance of convenience include the convenience of the parties and witnesses, access to sources of proof, expenses to the parties, the availability of process to compel the testimony of witnesses, whether executives will be interrupted in their functions if required to testify, and the interests of justice. (<u>National Patent</u> Dev. <u>Corp.</u> v <u>American Hospital Supply Corp.</u>, 616 F. Supp. 114, 118-119).

MEALEY'S LITIGATION REPORTS

INSURANCE

© COPYRIGHT 1992 MEALEY PUBLICATIONS, INC., WAYNE, PA

Index No.19737/91

Both parties argue that the balance of convenience weighs in their favor. It appears that convenience of the parties as well as the witnesses does not favor either forum. Since the claims involve sites which are so spread out throughout the United States, witnesses from EPA, regulatory agencies and the facilities themselves including relevant documents will have to be produced from the various sites to whichever forum this action is heard. However, the Court notes that AMAX's undisputed claim that because AMAX Resource, the primary environmental facility for all the AMAX companies, is located in Colorado, necessary witnesses and documents relating to numerous sites across the country are located in Colorado.

Continental's argument that compulsory process is not available in Colorado for certain non-party witnesses who participated in the insurance underwriting and claims is not dispositive of the issue of which forum is more convenient. The provisions of the contracts at issue herein are generally considered to be standard form provisions used in the insurance industry, thus, interpretation of these provisions will likely turn on questions of law. Moreover, as was previously noted, since the sites are so spread out and different insurance companies are involved, witnesses and documents will have to be produced from a variety of states. (see, The Aetna Casualty & Surety Co. v Champion International Corp., et al, No.18054/90 , Sup. Ct. N.Y. County, February 19, 1991).

- 9 -

The fact that Continental filed the first suit is not dispositive of this motion. Although generally, the first suit should have priority, this rule "should not be applied in a mechanical way that disregards other considerations." The balance of convenience or the existence of special circumstances are two factors which the Court should consider. (Continental Insurance Companies v Wickes Companies, Inc., 90 Civ. 8215, 1991 U.S. Dist. LEXIS 12426 [S.D.N.Y. Sept. 6, 1991]; Factors, Etc., Inc. v Pro Arts, Inc., 579 F. 2d 215, 218 [2nd Cir. 1978], cert. den., 440 U.S. 908; Great American Ins. Co. v Houston General Ins. Co., 735 F. Supp. 501, 586).

It is undisputed that prior to the commencement of either action, the parties met to discuss the potential environmental claims of AMAX and its subsidiaries and the coverage issues. AMAX claims it relied on Continental's misrepresentations that it intended to negotiate in good faith out of court, and thus, delayed in commencing its action. Several courts have expressed their concern about the use of a declaratory judgment action to prevent a later filed action to proceed in plaintiff's chosen forum. (see, The Continental Insurance Companies v Wickes Companies, supra; Rokeby-Johnson v Kentucky Agricultural Energy Corp., 108 AD2d 336; Sweetheart Plastics, Inc. v Illinois Tool Works, Inc., 267 F.Supp. 938, 941-42 [S.D.N.Y. 1967]; National Patent Dev. Corp. v American Hosp. Supply, supra).

The Court finds that New York is an inconvenient forum for plaintiff's claim and that Colorado is the preferred forum to

- 10 -

© COPYRIGHT 1992 MEALEY PUBLICATIONS, INC, WAYNE, PA

Index No.19737/91

adjudicate this action. (see, <u>Islamic</u> <u>Republic</u> <u>of</u> <u>Iran</u> <u>v</u> <u>Pahlevi</u>, supra). The Court further finds that the "special circumstances" here favor this Court's dismissal of the New York action in favor of the Colorado action in the interest of discouraging forum shopping.

The Court also notes that the Colorado Court has vacated its dismissal of the Colorado Action, therefore making that jurisdiction an alternative forum to hear this action.

Based upon the foregoing, motion and cross-motion by defendant AMAX, Inc. is granted to the extent of dismissing this action on the ground of forum non conveniens.

That portion of plaintiff's motion for an order correcting and/or modifying the Court's decision is denied as being moot.

Settle order.

DATED: June 26, 1992

_____

J.S.C.

© COPYRIGHT 1993 MEALEY'S PUBLICATIONS, INC., WAYNE, PA

# AMAX

DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO

Case No. 91CV3797, Division 5

ORDER

AMAX RESEARCH & DEVELOPMENT, INC., et al,

Plaintiffs,

v.

THE CONTINENTAL INSURANCE COMPANY, et al,

Defendants.

THIS MATTER comes on for the Court's determination of choice of law issues.  The Court has read the parties' briefs and substantial case law.

At the outset, the Court rejects any implication that the Court's initial forum non conveniens decision controls herein. The factors set forth in PMI Mortgage Insurance Company v. Deseret Federal Savings and Loan, 757 P. 2d 1156 (Colo. App., 1988) are not applicable to the issues which the Court must resolve at this time.

Plaintiffs' Amended Complaint was filed on January 8, 1993. It contains the following claims for relief:

1. Breach of Contract (is., duty to defend various claims, asserted against Defendants in counts one through three);

2. Declaratory judgment (an insurance coverage and duty to defend assertion in count four);

3. Bad faith (against The Continental Insurance Company in count five).

I.

Plaintiffs' bad faith claim sounds in tort.  Travelers Insurance Company v. Savio, 706 P. 2d 1258 (Colo., 1985).  Colorado has adopted the "most significant relationship" test for resolution of choice of law issues in tort claims.  First National Bank in Fort Collins v. Rostek, 182 Colo. 437, 514 P. 2d 314 (1973).

Our Court of Appeals has performed such an analysis in Abdelsamed v. New York Life Insurance Company, 16 Brief Times Reporter 1408 (Colo. App., 1992).  The Court agrees with Plaintiffs' assertion that the ruling in Abdelsamed is controlling precedent herein.  Clearly, the Court of Appeals' ruling is that

Colorado law applies as to tortious bad faith claims.  16 Brief Times Reporter at 1412.

A petition for certiorari is pending in the Abdelsamed case. If our Supreme Court were to reverse the Court of Appeals, this Court will, of course, follow the precedent established by such a ruling.  However, this Court will not attempt to anticipate the Supreme Court's decision nor invent new law where an issue has been resolved.

Accordingly, Colorado law will be applied with respect to Plaintiffs' bad faith claim.

II.

Colorado also applies a "most significant relationship" test in contract cases.  Wood Brothers Homes, Inc. v. Walker Adjustment Bureau, 198 Colo. 444, 601 P. 2d 1369 (1979).  As such, the Court must consider Restatement (Second) of Conflict of Laws, §§188, 6 and 193.

Under the §188 (2) factors, the Court finds:

1. The place of contracting is New York.

2. The place of negotiation is New York.

3. The place of performance is in various states.  Payment of premiums has occured in New York. The policies ostensibly cover twenty-three sites in as many states. A reference in a Continental Insurance Company policy describes world wide territorial significance.  The Court finds that this factor provides no assistance to the Court in its analysis.

4. The location of the subject matter of the contract can be any one of twenty-three sites.  However, this Court has ordered that this case address issues relating to Lowry Landfill only.  The Court stated its inclination in this regard during the early stage of this case.  The Court also notes that Defendants specifically urged the Court to maintain this position in a response to Plaintiffs' motion for clarification (filed July 23, 1992).  Thus, for the purposes of the instant motion, the location of the contract's subject matter is Colorado.

5. The Court previously has found that Plaintiffs are Delaware, Nevada and New York corporations. Continental is a New Hampshire corporation with a principal place of business in New York.  INA is a Pennsylvania corporation; its principal place of business is Pennsylvania. Home is a New Hampshire corporation; its principal place of business is New York.  Lexington Insurance Company appears to be a British corporation with its headquarters in London and an agent's office in Massachusetts.  With the

© COPYRIGHT 1993 MEALEY PUBLICATIONS, INC. WAYNE, PA

exception of Lexington (whose authorization status has not been disclosed to the Court), all of the principals herein are authorized to transact business in Colorado and do so.

6.  For the purposes of this ruling, the Court finds that the place of negotiating and the place of performance of the relevant policies are not the same.

The Court must balance these factors but should not "count" contacts. Instead, the Court must consider which contacts are most significant and determine where these contacts are found. _Diesel Service Co. v. AMBAC International Corporation_, 961 F. 2d 635 (7th Cir., 1992).

The Court now turns to _Restatement (Second) of Conflicts of Law_ §6. The Court finds:

1.  This Court will not establish lasting precedent for interstate or international systems. The Court does not presume to know how any other judge would view this Court's ruling.

2.  New York maintained a strong policy vis-a-vis environmental pollution (_See_: Page 10 of Complaint). The Court will not totally discount Mr. Roitman's affidavit nor close its eyes to the obvious problems of Lowry Landfill. Apparently, Colorado's legislature never enacted similar legislation. New York's legislature repealed its law, allegedly after all of the toxic waste was placed into Lowry Landfill.

At the same time, this case involves who will pay for toxic cleanup. Colorado's citizens clearly have an interest in a complete cleanup. New York's citizens have an interest in the enforcement of New York's public policy, as expressed by the New York legislature.

3.  Both briefs give the protection of justified expectations short shrift. Continental states, "...Continental's justified expectations certainly would be offended if Colorado law was (sic) applied because waste happened to be dumped at a Colorado site...." Plaintiffs skirt this issue. The Court cannot adequately address this factor.

4.  The basic field of law deals both with contracts, in general, and insurance, in particular. In Colorado, contracts must be construed as a whole giving effect to the intention of the parties. _Lawrence Street Partners, Ltd. v. Lawrence Street Ventures_, 786 P. 2d 508 (Colo. App., 1989). The Court surmises that New York's policy in this regard is similar.

In the area of insurance law, the subject matter's location has substantial significance. _See, eg._ _First Federal Savings and_ Loan Association of Fargo, North Dakota v. Transamerica Title Insurance Company, 793 F. Supp. 265 (D. Colo., 1992).

5.  The Court can enter orders with certainty irrespective of the choice of law. Uniformity may be enhanced by applying New York law. The Court elects to remain silent as to predictability.

6.  Colorado law affords ease in determination and applicability.

Finally the Court turns to §193 of the _Restatement (Second)_. Casualty insurance policy cases favor a finding that the principal location of the insured risk during the term of the policy provides the most significant relationship. _Mitchell v. State Farm Fire & Casualty Company_, 902 F. 2d 790 (10th Cir., 1992).

Comment (f) of §193 states that Courts should defer to local law in real property cases. Indeed, the court should apply the substantive law of the state in which an individual risk is located. As a result, cases involving comprehensive policies should be considered as if several different policies were in effect. _Shapiro v. Associated International Insurance Company_, 899 F. 2d 1116 (11th Cir., 1990).

Colorado's federal case law is of two minds. One judge has held that, in multiple risk policy cases, the law of the state governs an insurer's duties is the law of the state where the occurrence giving rise to the claim took place. _City of Northglenn v. Chevron, U.S.A., Inc._, 634 F. Supp. 217 (D. Colo., 1986). Another court has stated that insurance policies are interpreted under the law of the state of issuance. _Telectronics, Inc. v. United National Insurance Co._, 796 F. Supp. 1382 (D. Colo., 1992).

In _Mitchell (Supra)_, the 10th circuit held that the location of the insured property is the single most important factor for choice of law determinations. 902 F. 2d at 794. The fact that either state looks more favorably on a party's claim is not dispositive. 902 F. 2d at 795.

The realities of multistate, multiple risk insurance matters suggest that the parties probably did not consider choice of law issues where policies are silent as to that issue. The Court has not observed any document which specifically refers to Lowry Landfill (at the time any policy was executed).

The Court has balanced all relevant factors and finds:

1.  Payment by some entity will inure to the benefit of Colorado citizens. New York's citizens will receive no appreciable benefit from any aspect of this Court's decision.

3

4

© COPYRIGHT 1993 MEALEY PUBLICATIONS, INC., WAYNE, PA

2.   This case deals with insurance coverage and duty to defend issues.  The Mitchell Court's directive (that location is the single most important factor) is persuasive.

3.   The Court need not ignore the New York Legislature's directive.  Indeed, any insurer may utilize that law to establish that an exemption applies and that any exclusions are not subject to other reasonable interpretations.  Hecla Mining Company v. New Hampshire Insurance Company, 811 P. 2d 1083, 1090 (Colo., 1991).

Accordingly, Colorado law will be applied with respect to Plaintiffs' first four claims for relief.

DONE THIS 24 day of May, 1993.

BY THE COURT:

JOHN P. LEOPOLD
DISTRICT JUDGE

CERTIFICATE OF SERVICE

I certify that on 5-24-93
I Served the foregoing document by hand delivering
mailing same to all counsel.

MEALEY'S LITIGATION REPORTS
INSURANCE

JUDGE LEISURE

08 CV 02012

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CENTURY INDEMNITY COMPANY, AS
SUCCESSOR TO CCI INSURANCE
COMPANY, AS SUCCESSOR TO
INSURANCE COMPANY OF NORTH
AMERICA and THE CONTINENTAL
INSURANCE COMPANY

:
:
:
:
:
:
:

JURY TRIAL DEMANDED

Plaintiffs,

:
:

**COMPLAINT**

versus

:

CIVIL ACTION NO. _____

FREEPORT-MCMORAN COPPER &
GOLD INC., AS THE CLAIMED
SUCCESSOR TO PHELPS DODGE
CORPORATION, AS THE CLAIMED
SUCCESSOR TO CYPRUS AMAX
MINERALS COMPANY, AS THE
CLAIMED SUCCESSOR TO AMAX,
INC., AS SUCCESSOR TO AMERICAN
METAL CLIMAX, INC.

:
:
:
:
:
:
:
:
:
:



Rec'd
3/4/08
DNCII

RECEIVED
FEB 28 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Defendant.

:
:

## COMPLAINT

Plaintiffs Century Indemnity Company (as successor to CCI Insurance Company, as

successor to Insurance Company of North America) ("Century") and The Continental Insurance

Company ("Continental") invoke the jurisdiction of this court pursuant to 28 U.S.C.A. § 1332

(diversity of citizenship) and plead as their complaint against defendant Freeport-McMoRan

Copper and Gold Inc., as the claimed successor to Phelps Dodge Corporation, as the claimed

successor to Cyprus Amax Minerals Company, as the claimed successor to Amax, Inc., as

successor to American Metal Climax, Inc. ("Freeport McMoRan") as follows:

## INTRODUCTION

1.    In this insurance coverage action, Century and Continental seek a declaratory judgment that the liability insurance policies Century and Continental issued to Amax, Inc. and/or American Metal Climax, Inc. (collectively, "Amax") provide no insurance coverage for the costs Freeport-McMoRan claims it has incurred and continues to incur in its effort to assimilate the corporate records of Amax into Freeport-McMoRan's own corporate records (the "Corporate Records Assimilation Project").

## THE PARTIES

2.    Plaintiff Century is a corporation that is incorporated in the Commonwealth of Pennsylvania and whose principal place of business is in Philadelphia, Pennsylvania.  Century, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Pennsylvania.

3.    Plaintiff Continental is a corporation that is incorporated in the Commonwealth of Pennsylvania and whose principal place of business is in Chicago, Illinois.  Continental, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Pennsylvania and Illinois.

4.    Defendant Freeport-McMoRan is a corporation that is incorporated in the State of Delaware and whose principal place of business is in New Orleans, Louisiana.  Freeport-McMoRan, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Delaware and Louisiana.

## AMOUNT IN CONTROVERSY

5.    Freeport McMoRan claims it has incurred $3,900,000 through December 2007 and that it will incur a total of $7,800,000 by year-end 2008 for the Corporate Records Assimilation Project.  The parties dispute whether (a) Freeport McMoRan is entitled to coverage under the policies that Century and Continental issued to Amax,  and (b) even if Freeport

McMoRan is entitled to coverage, whether Century and Continental are responsible for these costs.

## JURISDICTION

6.      Jurisdiction is proper in this court under 28 U.S.C.A. § 1332 (diversity of citizenship) because this is a civil action between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## VENUE

7.      Venue is proper in this court under 28 U.S.C.A. § 1391 (a) and 28 U.S.C.A. § 1391 (c) because Freeport-McMoRan is a defendant corporation that resides in this judicial district because it is subject to personal jurisdiction in this district at the date of commencement of this action.

8.      Venue is further proper in this court under 28 U.S.C.A. § 1391 (a) and 28 U.S.C.A. § 1391 (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF CENTURY'S AND CONTINENTAL'S CLAIM

9.      On January 1, 1958, Climax Molybdenum Company merged with American Metals Company to form American Metal Climax, Inc.

10.     On or after January 1, 1975, American Metal Climax, Inc. became Amax, Inc.

11.     On or around November 15, 1993, Amax, Inc. merged with Cyprus Minerals Company to form Cyprus Amax Minerals Company.

12.     On December 2, 1999, Phelps Dodge Corporation acquired Cyprus Amax Minerals Company.

13.     On March 19, 2007, Freeport-McMoRan acquired Phelps Dodge Corporation.

14.     Century issued the following liability insurance policies to Amax:

-3-

  (a)  Policy No. LB 39736 for the January 1, 1965 to January 1, 1968 policy period;

  (b)  Policy No. ALB 47168 for the January 1, 1968 to January 1, 1971 policy period;

  (c)  Policy No. ALB 47212 for the January 1, 1971 to January 1, 1972 policy period;

  (d)  Policy No. ALB 47240 for the January 1, 1972 to January 1, 1974 policy period;

  (e)  Policy No. ALB 47276 for the January 1, 1974 to January 1, 1975 policy period; and

  (f)  Policy No. ALB 47279 for the January 30, 1974 to January 1, 1975 policy period.

15.  Continental issued the following primary, occurrence-based, liability insurance policies to Amax:

  (a)  Policy No. L-3 32 08 62 for the January 1, 1975 to January 1, 1976 policy period;

  (b)  Policy No. L-3 61 88 26 for the January 1, 1976 to January 1, 1977 policy period;

  (c)  Policy No. L 1 18 43 28 for the January 1, 1977 to January 1, 1980 policy period;

  (d)  Policy No. SRL-3 63 59 13 for the January 1, 1980 to January 1, 1981 policy period;

      (e)     Policy No. SRL 3 63 60 99 for the January 1, 1981 to January 1, 1982 policy period;

      (f)     Policy No. SRL 3 63 62 91 for the January 1, 1982 to January 1, 1983 policy period;

      (g)     Policy No. SRL 3 63 66 77 for the January 1, 1983 to January 1, 1984 policy period;

      (h)     Policy No. SRL 3 63 68 59 for the January 1, 1984 to January 1, 1985 policy period;

      (i)     Policy No. SRL 3 34 44 12 for the January 1, 1985 to January 1, 1986 policy period;

      (j)     Policy No. SRL 3 34 74 18 for the January 1, 1986 to April 1, 1986 policy period.

16.    Beginning in April 2005, Phelps Dodge Corporation began to ship corporate documents from its locations around the country to Phoenix, Arizona to review the documents and to assimilate those records into its general corporate records.

17.    Beginning in February 2007, Phelps Dodge Corporation undertook the review and corporate assimilation of the documents it obtained from Cyprus Amax Minerals Company when Phelps Dodge Corporation acquired Cyprus Amax Minerals Company in 1999.

18.    Phelps Dodge Corporation neither sought nor obtained the consent of Century or Continental before it began the review and corporate assimilation of the Cyprus Amax Minerals Company records.

19.    Since March 2007, Freeport-McMoRan has continued the review and corporate assimilation of the Cyprus Amax Minerals Company records.

20.    Freeport-McMoRan neither sought nor obtained the consent of Century or Continental before it continued the review and corporate assimilation of the Cyprus Amax Minerals Company records.

21.    Through December 2007, Freeport-McMoRan claims the review and corporate assimilation of the Cyprus Amax Minerals Company records cost $3,900,000.

22.    Through the project's completion, Freeport-McMoRan claims the review and corporate assimilation of the Cyprus Amax Minerals Company records will cost an additional $3,900,000, for a total of $7,800,000.

23.    Freeport-McMoRan claims the insurance policies Century and Continental issued to Amax cover the cost of the assimilation of the Cyprus Amax Minerals Company corporate records into Freeport-McMoRan's corporate records.

24.    Century and Continental deny any obligation for the cost of the Corporate Records Assimilation Project.

25.    An actual controversy exists between Century and Continental, on the one hand, and Freeport-McMoRan, on the other hand, over whether the insurance policies cover the cost of the Corporate Records Assimilation Project.

### COUNT I

26.    Century and Continental seek a declaratory judgment under 28 U.S.C.A. § 2201 that the insurance policies issued to Amax do not provide coverage for the cost of the Corporate Records Assimilation Project on the following grounds:

(a)    The costs incurred are not defense costs within the meaning of the policies;

-6-

(b)    Century and Continental are not responsible for costs Freeport-McMoRan voluntarily incurs;

(c)    Century and Continental are not responsible for costs Freeport-McMoRan incurred without Century's and Continental's consent;

(d)    Century and Continental are not responsible for unreasonable and/or unnecessary costs;

(e)    Freeport-McMoRan is neither the named insured nor a successor entitled to coverage under the liability insurance policies that Century and Continental issued to Amax; and

(f)    Any other grounds stemming from the policies, the law, or otherwise.

### DEMAND FOR JUDGMENT

Wherefore, Century and Continental demand judgment, as follows:

1.    A declaratory judgment that Century and Continental have no obligation to pay for Freeport-McMoRan's Corporate Records Assimilation Project;

2.    Alternatively, should the court determine that Century and Continental have an obligation to pay any portion of the Corporate Records Assimilation Project, a declaratory judgment over the respective rights and obligations of the parties under the Century and Continental policies, and declaratory judgment for the amount of any obligation of Century and/or Continental to pay for the Corporate Records Assimilation Project;

3.    Costs;

4.    All other relief to which Century and Continental are entitled.

-7-

Dated:  February 28, 2008.

WHITE AND WILLIAMS LLP

By: _____

Rafael Vergara (RV-4098)
White and Williams LLP
One Penn Plaza, Suite 1801
New York, NY 10119
Phone: 212-244-9500
-and-
Shane R. Heskin (SH-9984)
White and Williams LLP
1800 One Liberty Place
Philadelphia, Pennsylvania  19103
Telephone:  (215) 864-7000


COLLIAU ELENIUS MURPHY
CARLUCIO KEENER & MORROW

By: _____

Marian S. Hertz (MSH-9644)


40 Wall Street, 7th Floor
New York, New York 10005
Telephone:  (212) 440-2743


and

Gretchen A. Ramos (pro hac vice pending)
Alan P. Jacobus (pro hac vice pending)
CARROLL BURDICK & McDONOUGH
L.L.P.
44 Montgomery Street
San Francisco, California 94104
Telephone:  (415) 989-1900


Attorneys for Plaintiff The Continental
Insurance Company

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA and THE CONTINENTAL INSURANCE COMPANY** | : : : : : : : |
| | : JURY TRIAL DEMANDED |
| | : |
| Plaintiffs, | : **FIRST AMENDED COMPLAINT** |
| | : |
| versus | : CIVIL ACTION NO. 08 CV 02012 |
| | : |
| **FREEPORT-MCMORAN COPPER & GOLD INC., AS THE CLAIMED SUCCESSOR TO PHELPS DODGE CORPORATION, AS THE CLAIMED SUCCESSOR TO CYPRUS AMAX MINERALS COMPANY, AS THE CLAIMED SUCCESSOR TO AMAX, INC. AND AMAX METALS RECOVERY, INC., AS SUCCESSOR TO AMERICAN METAL CLIMAX, INC.** | : : : : : : : : : : **ELECTRONICALLY FILED DOCUMENT** |
| Defendant. | : : |

## <u>COMPLAINT</u>

Plaintiffs Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance Company of North America) ("Century") and The Continental Insurance Company ("Continental") invoke the jurisdiction of this court pursuant to 28 U.S.C.A. § 1332 (diversity of citizenship) and plead as their complaint against defendant Freeport-McMoRan Copper and Gold Inc., as the claimed successor to Phelps Dodge Corporation, as the claimed successor to Cyprus Amax Minerals Company, as the claimed successor to Amax, Inc., as successor to American Metal Climax, Inc. ("Freeport McMoRan") as follows:

## INTRODUCTION

1.      In this insurance coverage action, Century and Continental seek a declaratory judgment that the liability insurance policies Century and Continental issued to Amax, Inc. and/or American Metal Climax, Inc. (collectively, "Amax") provide no insurance coverage for the costs Freeport-McMoRan claims it has incurred and continues to incur in its effort to assimilate the corporate records of Amax into Freeport-McMoRan's own corporate records (the "Corporate Records Assimilation Project").  Century and Continental also seek a declaration of all rights and obligations between the parties under the insurance policies issued by Century and Continental to Freeport-McMoRan with respect to the underlying Louisiana Litigation (defined below).  Century and Continental further seek to recover on the basis of unjust enrichment any past payments made by Century and Continental based on false and/or misleading information provided by Freeport-McMoRan in connection with the Louisiana Litigation, and any payments that were made by Century and Continental for uncovered defense costs submitted by Freeport-McMoRan, which unjustly enrich Freeport-McMoRan.  Finally, Continental seeks to recover damages for Freeport-McMoRan's fraudulent misrepresentations with respect to the Corporate Records Assimilation Project.

## THE PARTIES

2.      Plaintiff Century is a corporation that is incorporated in the Commonwealth of Pennsylvania and whose principal place of business is in Philadelphia, Pennsylvania.  Century, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Pennsylvania.

3.      Plaintiff Continental is a corporation that is incorporated in the Commonwealth of Pennsylvania and whose principal place of business is in Chicago, Illinois.  Continental, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Pennsylvania and Illinois.

-2-

4.      Defendant Freeport-McMoRan is a corporation that is incorporated in the State of Delaware and whose principal place of business is in New Orleans, Louisiana.  Freeport-McMoRan, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Delaware and Louisiana.

### AMOUNT IN CONTROVERSY

5.      Freeport-McMoRan claims it has incurred $3,900,000 through December 2007 and that it will incur a total of $7,800,000 by year-end 2008 for the Corporate Records Assimilation Project.  The parties dispute whether (a) Freeport-McMoRan is entitled to coverage under the policies that Century and Continental issued to Amax, and (b) even if Freeport-McMoRan is entitled to coverage, whether Century and Continental are responsible for these costs.  Freeport-McMoRan further claims that it is entitled to reimbursement of defense costs incurred in connection with the Louisiana Litigation.  Although Century and Continental have in the past paid amounts purported to be their proportionate and equitable share of covered reasonable and necessary defense costs, Century and Continental dispute the amount claimed by Freeport-McMoRan.

### JURISDICTION

6.      Jurisdiction is proper in this court under 28 U.S.C.A. § 1332 (diversity of citizenship) because this is a civil action between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### VENUE

7.      Venue is proper in this court under 28 U.S.C.A. § 1391 (a) and 28 U.S.C.A. § 1391 (c) because Freeport-McMoRan is a defendant corporation that resides in this judicial district because it is subject to personal jurisdiction in this district at the date of commencement of this action.

-3-

8.      Venue is further proper in this court under 28 U.S.C.A. § 1391 (a) and 28 U.S.C.A. § 1391 (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### STATEMENT OF CENTURY'S AND CONTINENTAL'S CLAIM

9.      On January 1, 1958, Climax Molybdenum Company merged with American Metals Company to form American Metal Climax, Inc.

10.     On or after January 1, 1975, American Metal Climax, Inc. became Amax, Inc.

11.     On or around November 15, 1993, Amax, Inc. merged with Cyprus Minerals Company to form Cyprus Amax Minerals Company.

12.     On December 2, 1999, Phelps Dodge Corporation acquired Cyprus Amax Minerals Company.

13.     Amax Minerals Recovery, Inc. ("AMRI") is a wholly owned subsidiary of Cyprus Amax Minerals Company.

14.     On March 19, 2007, Freeport-McMoRan acquired Phelps Dodge Corporation.

15.     Century issued the following liability insurance policies to Amax, which at the time of issuance, had its principal place of business located in New York, New York:

   (a)     Policy No. LB 39736 for the January 1, 1965 to January 1, 1968 policy period;

   (b)     Policy No. ALB 47168 for the January 1, 1968 to January 1, 1971 policy period;

   (c)     Policy No. ALB 47212 for the January 1, 1971 to January 1, 1972 policy period;

-4-

(d)     Policy No. ALB 47240 for the January 1, 1972 to January 1, 1974 policy period;

(e)     Policy No. ALB 47276 for the January 1, 1974 to January 1, 1975 policy period; and

(f)     Policy No. ALB 47279 for the January 30, 1974 to January 1, 1975 policy period.

16.     Continental issued the following primary, occurrence-based, liability insurance policies to Amax, which at the time of issuance of at least the first policy at issue, had its principal place of business located in New York, New York:

(a)     Policy No. L-3 32 08 62 for the January 1, 1975 to January 1, 1976 policy period;

(b)     Policy No. L-3 61 88 26 for the January 1, 1976 to January 1, 1977 policy period;

(c)     Policy No. L 1 18 43 28 for the January 1, 1977 to January 1, 1980 policy period;

(d)     Policy No. SRL-3 63 59 13 for the January 1, 1980 to January 1, 1981 policy period;

(e)     Policy No. SRL 3 63 60 99 for the January 1, 1981 to January 1, 1982 policy period;

(f)     Policy No. SRL 3 63 62 91 for the January 1, 1982 to January 1, 1983 policy period;

(g)     Policy No. SRL 3 63 66 77 for the January 1, 1983 to January 1, 1984 policy period;

-5-

(h)     Policy No. SRL 3 63 68 59 for the January 1, 1984 to January 1, 1985 policy period;

(i)     Policy No. SRL 3 34 44 12 for the January 1, 1985 to January 1, 1986 policy period;

(j)     Policy No. SRL 3 34 74 18 for the January 1, 1986 to April 1, 1986 policy period.

### ALLOCATION OF PAST COSTS AND OTHER ORDINARY BUSINESS EXPENSES

17.     AMRI, a wholly owned subsidiary of Freeport-McMoRan, has been sued by underlying claimants in connection with alleged asbestos exposure at its former facility in Braithwaite, Louisiana (the "Louisiana Litigation").

18.     AMRI has sought and continues to seek reimbursement of certain claimed costs of defending itself in the Louisiana Litigation under the Century and Continental policies.

19.     Century and Continental have in the past reimbursed AMRI for their claimed proportionate and equitable share of AMRI's purported reasonable and necessary covered defense costs under an express reservation of rights.

20.     The Century and Continental policies only pay for damages and defense costs attributable to bodily injury that occurs *during the policy period*.

21.     Freeport-McMoRan's other insurers are responsible for damages and defense costs attributable to bodily injury occurring during their respective policy periods, and Freeport-McMoRan is responsible for any damages and defense costs attributable to bodily injury occurring during uninsured periods.

-6-

22.    Freeport-McMoRan has improperly allocated and billed to Century and Continental defense costs attributable to bodily injury occurring outside of Century's and Continental's respective policy periods.

23.    Freeport-McMoRan has also improperly billed Century and Continental for the cost of National Coordinating Counsel ("NCC") in a disproportionate amount to the actual amount of services NCC has provided in connection with the Louisiana Litigation.

24.    Freeport-McMoRan has further improperly billed Century and Continental for the document storage costs of corporate and historical documents related to the Braithwaite facility. These are ordinary business costs that should be borne by Freeport-McMoRan.

25.    Century and Continental in good faith and under an express reservation of rights have paid Freeport-McMoRan certain amounts improperly billed to Century and Continental.

26.    Freeport-McMoRan was not entitled to the above amounts improperly billed to and paid by Century and Continental.

### CORPORATE RECORDS ASSIMILATION PROJECT

27.    Beginning in April 2005, Phelps Dodge Corporation began to ship corporate documents from its locations around the country to Phoenix, Arizona to review the documents and to assimilate those records into its general corporate records.

28.    Beginning in February 2007, Phelps Dodge Corporation undertook the review and corporate assimilation of the documents it obtained from Cyprus Amax Minerals Company when Phelps Dodge Corporation acquired Cyprus Amax Minerals Company in 1999.

29.    Phelps Dodge Corporation neither sought nor obtained the consent of Century or Continental before it began the review and corporate assimilation of the Cyprus Amax Minerals Company records.

-7-

30. Since February or March 2007, Freeport-McMoRan has continued the review and corporate assimilation of the Cyprus Amax Minerals Company records.

31. Freeport-McMoRan neither sought nor obtained the consent of Century or Continental before it continued the review and corporate assimilation of the Cyprus Amax Minerals Company records.

32. Through December 2007, Freeport-McMoRan claims the review and corporate assimilation of the Cyprus Amax Minerals Company records cost $3,900,000.

33. Through the project's completion, Freeport-McMoRan claims the review and corporate assimilation of the Cyprus Amax Minerals Company records will cost an additional $3,900,000, for a total of $7,800,000.

34. Freeport-McMoRan claims the insurance policies Century and Continental issued to Amax cover the cost of the assimilation of the Cyprus Amax Minerals Company corporate records into Freeport-McMoRan's corporate records.

35. Century and Continental deny any obligation for the cost of the Corporate Records Assimilation Project.

36. An actual controversy exists between Century and Continental, on the one hand, and Freeport-McMoRan, on the other hand, over whether the insurance policies cover the cost of the Corporate Records Assimilation Project.

## COUNT I

### CENTURY AND CONTINENTAL VERSUS FREEPORT-MCMORAN
### *DECLARATORY JUDGMENT*

37. Century and Continental seek a declaratory judgment under 28 U.S.C.A. § 2201 that Century and Continental are only obligated to pay their share of indemnity and defense costs

-8-

attributable to bodily injury occurring during the policy period under the Century and Continental policies.

38.     Century and Continental seek a declaratory judgment under 28 U.S.C.A. § 2201 that Century and Continental are only obligated to pay their share of indemnity and defense costs attributable to bodily injury occurring during the policy period under the Century and Continental policies.

39.     Century and Continental further seek a declaratory judgment under 28 U.S.C.A. § 2201 declaring the rights and obligations of Century and Continental to reimburse Freeport-McMoRan for NCC and document storage costs currently being billed to Century and Continental purportedly in connection with the Louisiana Litigation.

40.     Century and Continental similarly seek a declaratory judgment under 28 U.S.C.A. § 2201 declaring that the insurance policies issued to Amax do not provide coverage for the cost of the Corporate Records Assimilation Project on the following grounds:

      (a)     The costs incurred are not defense costs within the meaning of the policies;

      (b)     Century and Continental are not responsible for costs Freeport-McMoRan voluntarily incurs;

      (c)     Century and Continental are not responsible for costs Freeport-McMoRan incurred without Century's and Continental's consent;

      (d)     Century and Continental are not responsible for unreasonable and/or unnecessary costs;

-9-

(e)     Freeport-McMoRan is neither the named insured nor a successor entitled to coverage under the liability insurance policies that Century and Continental issued to Amax;

(f)     Freeport-McMoRan failed to cooperate with Century and Continental, as the policies require; and

(g)     Any other grounds stemming from the policies, the law, or otherwise.

## DEMAND FOR JUDGMENT

Wherefore, Century and Continental demand judgment, as follows:

i.      A declaratory judgment that Century and Continental have no obligation to pay for Freeport-McMoRan's Corporate Records Assimilation Project;

ii.     Alternatively, should the court determine that Century and Continental have an obligation to pay any portion of the Corporate Records Assimilation Project, a declaratory judgment over the respective rights and obligations of the parties under the Century and Continental policies, and declaratory judgment for the amount of any obligation of Century and/or Continental to pay for the Corporate Records Assimilation Project;

iii.    A declaration of the rights of all parties under the Century and Continental Policies regarding the Louisiana Litigation;

iv.     Costs; and

v.      All other relief to which Century and Continental are entitled.

-10-

## COUNT II

### CENTURY AND CONTINENTAL VERSUS FREEPORT-McMoRan

#### *UNJUST ENRICHMENT*

41.     Century and Continental restate the allegations set forth in paragraphs 1 through 40 of this complaint and incorporate them by reference herein.

42.     Freeport-McMoRan was unjustly enriched by payments made by Century and Continental to Freeport-McMoRan based on Freeport-McMoRan's improper allocation and billing.

43.     Freeport-McMoRan's unjust enrichment was made at the expense of Century and Continental.

44.     Equity and good conscience require Freeport-McMoRan to make restitution to Century and Continental.

Wherefore, Century and Continental demand judgment, as follows:

i.      Compensatory damages for all amounts billed to and paid by Century and Continental for uncovered defense costs purportedly related to the Louisiana Litigation.

ii.     Costs;

iii.    All other relief to which Century and Continental are entitled.

## COUNT III

## CONTINENTAL VERSUS FREEPORT-MCMORAN

### FRAUD

59.     Since at least as early as January 1, 2007, Enviro-Tox Loss Services, Inc. has been an agent of Cyprus Amax Minerals Company and/or Phelps Dodge Corporation.

60.     At all times from January 1, 2007 to the present, Cyprus Amax Minerals Company and/or Phelps Dodge Corporation has authorized Enviro-Tox Loss Services, Inc. to attempt to get Continental to pay for the costs of the Corporate Records Assimilation Project.

61.     Since at least as early as January 1, 2007, Enviro-Tox Loss Services, Inc. has helped manage the Corporate Records Assimilation Project for Cyprus Amax Minerals Company and Phelps Dodge Corporation.

62.     Neither Enviro-Tox Loss Services, Inc. nor Cyprus Amax Minerals Company nor Phelps Dodge Corporation informed Continental of the existence of the Corporate Records Assimilation Project before May 8, 2007.

63.     Neither Enviro-Tox Loss Services, Inc. nor Cyprus Amax Minerals Company nor Phelps Dodge Corporation informed Continental that Cyprus Amax Minerals Company and/or Phelps Dodge Corporation had hired a new law firm, Ryley Carlock & Applewhite, to review the Cyprus Amax Minerals Company documents before May 8, 2007.

64.     When the Corporate Records Assimilation Project was begun in February 2007, Cyprus Amax Minerals Company and Phelps Dodge Corporation knew there were over 10,000 boxes of Cyprus Amax Minerals Company documents Phelps Dodge Corporation and Cyprus Amax Minerals Company intended to review.

-12-

65.     When the Corporate Records Assimilation Project was begun in February 2007, Cyprus Amax Minerals Company and Phelps Dodge Corporation knew the project would cost millions of dollars.

66.     On or about May 8, 2007, Cyprus Amax Minerals Company and Phelps Dodge Corporation delivered to Continental bills for an Amax records review.

67.     On or about May 8, 2007, Yvonne Prater of Continental called Cyprus Amax Minerals Company's and Phelps Dodge Corporation's agent Enviro-Tox Loss Services, Inc. to inquire about the bills.

68.     On or about May 8, 2007, Robert Medlin, an employee of Enviro-Tox Loss Services, Inc., acting on behalf of Cyprus Amax Minerals Company and/or Phelps Dodge, told Ms. Prater that the bills were for new documents found in Arizona.

69.     On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental that the documents were not found in Arizona, though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the documents were not from Arizona.

70.     On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental that the documents were unrelated to underlying tort litigation but were instead a corporate records management project, though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the project was a corporate records assimilation effort.

71.     On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental the scope of the project, though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the project involved well over 10,000 boxes of documents.

-13-

72.     On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental the cost of the project, even though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the project would cost millions of dollars to complete.

73.     Mr. Medlin, through his misrepresentations and failure to disclose the true nature of the project to Ms. Prater, deceived Continental into believing the bills were legitimate defense costs.

74.     By reason of Cyprus Amax Minerals Company's and Phelps Dodge Corporation's agent Enviro-Tox Loss Services, Inc.'s knowing misrepresentations and failure to disclose to Continental the true nature of the Corporate Records Assimilation Project, Cyprus Amax Minerals Company and Phelps Dodge Corporation fraudulently caused Continental to pay approximately $211,000 of the costs of the Corporate Records Assimilation Project.

### DEMAND FOR JUDGMENT

Wherefore, Continental demands judgment, as follows:

i.      Judgment in the amount of $211,000 or in accordance with the proof at trial;

ii.     Costs;

iii.    Interest; and

iv.     All other relief to which Continental is entitled.

-14-

Dated:  May 9, 2008

**WHITE AND WILLIAMS LLP**

By:   s/ Rafael Vergara
          Rafael Vergara (RV-4098)
          White and Williams LLP
          One Penn Plaza, Suite 1801
          New York, NY 10119
          Phone: 212-244-9500
               -and-
          Shane R. Heskin (SH-9984)
          White and Williams LLP
          1800 One Liberty Place
          Philadelphia, Pennsylvania  19103
          Telephone:  (215) 864-7000
          *Attorneys for plaintiff Century Indemnity Company*

**CARROLL BURDICK & McDONOUGH L.L.P.**

By:    s/ Alan P. Jacobus
          Alan P. Jacobus (admitted *pro hac vice*)
          Carroll Burdick & McDonough L.L.P.
          44 Montgomery Street
          San Francisco, California 94104
          Telephone:  (415) 989-1900
          *Attorneys for plaintiff The Continental Insurance Company*

-15-

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA and THE CONTINENTAL INSURANCE COMPANY | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : **DEMAND FOR TRIAL BY JURY** <br> : |
| versus | : CIVIL ACTION NO. <br> : |
| FREEPORT-MCMORAN COPPER & GOLD INC., AS THE CLAIMED SUCCESSOR TO PHELPS DODGE CORPORATION, AS THE CLAIMED SUCCESSOR TO CYPRUS AMAX MINERALS COMPANY, AS THE CLAIMED SUCCESSOR TO AMAX, INC., AS THE CLAIMED SUCCESSOR TO AMERICAN METAL CLIMAX, INC. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendant. | : |

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to FED. R. CIV. P. 38 (b) plaintiffs Century Indemnity Company and The

Continental Insurance Company hereby demand a trial by jury of issues so triable.

Dated:  May 9, 2008

**WHITE AND WILLIAMS LLP**

By:   s/ Rafael Vergara
       Rafael Vergara (RV-4098)
       White and Williams LLP
       One Penn Plaza, Suite 1801
       New York, NY 10119
       Phone: 212-244-9500
           -and-
       Shane R. Heskin (SH-9984)
       White and Williams LLP
       1800 One Liberty Place
       Philadelphia, Pennsylvania  19103
       Telephone:  (215) 864-7000
       *Attorneys for plaintiff Century Indemnity*
       *Company*


**CARROLL BURDICK & McDONOUGH L.L.P.**

By:   s/ Alan P. Jacobus
       Alan P. Jacobus (admitted *pro hac vice*)
       Carroll Burdick & McDonough L.L.P.
       44 Montgomery Street
       San Francisco, California 94104
       Telephone:  (415) 989-1900
       *Attorneys for plaintiff The Continental*
       *Insurance Company*

-2-

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 1 6 2008

John A. Clarke, Executive Officer/Clerk

By_____, Deputy
            D.M. SWAIN

1  LAWRENCE A. HOBEL (Bar No. 73364)
   Lawrence.Hobel@hellerehrman.com
2  HELLER EHRMAN LLP
   333 Bush Street
3  San Francisco, California 94104-2878
   Telephone: (415) 772-6000
4  Facsimile: (415) 772-6268

5  Attorney for Plaintiffs
   CYPRUS AMAX MINERALS COMPANY,
6  PHELPS DODGE CORPORATION, and AMAX
   METALS RECOVERY INC.

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF LOS ANGELES

10 CYPRUS AMAX MINERALS            Case No.:
   COMPANY, a Delaware corporation,          BC391068  BY FAX
11 PHELPS DODGE CORPORATION, a
   New York corporation, and AMAX
12 METALS RECOVERY INC., a         COMPLAINT FOR BREACH OF
   Delaware Corporation,           CONTRACT AND DECLARATORY
13                                 RELIEF
                Plaintiffs,
14                                 DEMAND FOR TRIAL BY JURY
        v.
15
   CONTINENTAL CASUALTY
16 COMPANY, an Illinois Corporation,
   THE AMERICAN INSURANCE
17 COMPANY, a Nebraska Corporation,
   OLD REPUBLIC INSURANCE
18 COMPANY, a Pennsylvania
   Corporation, TRUCK INSURANCE
19 EXCHANGE, a California corporation,
   THE CONTINENTAL INSURANCE
20 COMPANY, a Pennsylvania
   Corporation, and CENTURY
21 INDEMNITY COMPANY, AS
   SUCCESSOR TO INSURANCE
22 COMPANY OF NORTH AMERICA, a
   Pennsylvania corporation,
23
                Defendants.
24

25      Plaintiffs Cyprus Amax Minerals Company ("Cyprus Amax"), Phelps Dodge

26 Corporation ("Phelps Dodge"), and Amax Metals Recovery Inc. ("AMRI") (collectively,

27 "Plaintiffs" or "Cyprus Amax") complain of defendants Continental Casualty Company

28 ("Continental Casualty"), The American Insurance Company ("American"), Old Republic

Heller
Ehrman LLP

COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT; DEMAND FOR TRIAL BY
JURY

Insurance Company ("Old Republic"), Truck Insurance Exchange ("Truck"), The Continental Insurance Company ("Continental Insurance"), Century Indemnity Company ("Century") (collectively, "Defendants") and allege as follows:

## NATURE OF THE ACTION

1.    This civil action arises out of Defendants' refusal and failure to reimburse Plaintiffs for certain defense costs and/or indemnity costs incurred in lawsuits alleging bodily injury and resultant damages caused by exposure to talc, asbestos, and other materials allegedly used on the premises, manufactured, sold, handled, trademarked, installed, licensed or distributed by Cyprus Amax and certain of its predecessors (collectively, the "Underlying Actions").

2.    Defendants are insurers that sold primary insurance policies (the "Policies") to Plaintiffs, all of which include a duty to defend and to indemnify.  Defendants previously have provided coverage to Plaintiffs for the costs of defense and indemnity for the Underlying Actions and each of the Defendants currently are defending the Underlying Actions and, as appropriate, providing indemnity.

3.    This action seeks damages arising from all Defendants for breach of either their contractual duties under their Policies or a 2007 Confidential Settlement and Defense Cost Sharing Agreement between Cyprus Amax and certain Defendants (the "2007 Agreement") for certain disputed defense costs.

4.    This action also seeks a declaration, pursuant to California Code of Civil Procedure Section 1060, of the contractual rights, duties and responsibilities of certain of the Defendants under their Policies as to the scope of their coverage for defense and indemnity incurred in relation to certain of the Underlying Actions that these Defendants recently have wrongfully asserted they have no obligation to pay in full.

## THE PARTIES

5.    Plaintiff Cyprus Amax Minerals Company is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in

Heller
Ehrman LLP

2

Phoenix, Arizona. Prior to the 1993 merger that created Cyprus Amax Minerals Company, there were two separate companies: (a) AMAX Inc. and (b) Cyprus Minerals Company. In 1999, Cyprus Amax merged with a subsidiary of Phelps Dodge, but kept the name Cyprus Amax Minerals Company.

6.    Plaintiff Amax Metals Recovery Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business in Braithwaite, Louisiana. AMRI is a subsidiary of Cyprus Amax.

7.    Plaintiff Phelps Dodge Corporation is a corporation organized and existing under the laws of the State of New York with its principal place of business in Phoenix, Arizona. Phelps Dodge is the direct parent of Cyprus Amax and the indirect parent of AMRI.

8.    Cyprus Amax is informed and believes, and thereon alleges, that defendant Continental Casualty is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. Continental Casualty has consented to the jurisdiction and venue of this Court.

9.    Cyprus Amax is informed and believes, and thereon alleges, that defendant American is a corporation organized and existing under the laws of the State of Nebraska with its principal place of business in Novato, California. American is authorized to do business, and does business, in the State of California. American has consented to the jurisdiction and venue of this Court.

10.   Cyprus Amax is informed and believes, and thereon alleges, that defendant Old Republic is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Greensburg, Pennsylvania. Old Republic is authorized to do business, and does business, in the State of California. Old Republic has consented to the jurisdiction and venue of this Court.

11.   Cyprus Amax is informed and believes, and thereon alleges, that defendant Truck is a corporation organized and existing under the laws of the State of California with

Heller
Ehrman LLP

3

its principal place of business in Los Angeles, California. Truck is authorized to do business, and does business, in the State of California. Truck has consented to the jurisdiction and venue of this Court.

12.    Cyprus Amax is informed and believes, and thereon alleges, that defendant Continental Insurance is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Chicago, Illinois. Continental Insurance is authorized to do business, and does business, in the State of California.

13.    Cyprus Amax is informed and believes, and thereon alleges, that defendant Century is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. Century is authorized to do business, and does business, in the State of California. Century is the successor to CCI Insurance Company, as successor to Insurance Company of North America (collectively, "Century").

### VENUE

14.    Venue is proper in this Court pursuant to the California Code of Civil Practice § 395 because at least one of the Defendants resides in Los Angeles County. In addition, Defendants Continental Casualty, American, Truck and Old Republic have consented to venue in this Court.

### THE INSURANCE POLICIES

15.    Each of the Defendants issued liability insurance policies, as alleged below.

16.    The Policies obligate each of the Defendants to defend and indemnify Plaintiffs in certain of the Underlying Actions.

17.    The Policies are valid and binding contracts of insurance.

18.    Plaintiffs have complied with all the terms and conditions precedent of the Policies, and are entitled to the benefit of insurance provided by them.

Heller
Ehrman LLP

COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT; DEMAND FOR TRIAL BY JURY

**The Continental Casualty Policies**

19.    Continental Casualty sold, inter alia, the following liability insurance policies (collectively, the "Continental Casualty Policies") to Cyprus Minerals Company, as well as its predecessors and subsidiaries including Sierra Talc Company, United Sierra Corporation and Cyprus Industrial Minerals Company (collectively, "Cyprus") :

    a.    Policy No. CL 4234386, effective October 15, 1964 to January 1, 1965;

    b.    Policy No. CCP 240 505-10-90 R, effective November 1, 1969 to January 1, 1972

    c.    Policy No. CCP 967-72-15 R, effective November 1, 1972 to November 1, 1974.

20.    Cyprus Amax is the corporate successor to Cyprus and is entitled to coverage under the Continental Casualty Policies.

**The American Insurance Policies**

21.    American sold the following liability insurance policies to Cyprus (collectively, the "American Policies"):

    a.    Policy No. K2238871, effective May 23, 1961 to May 23, 1962;

    b.    Policy No. K2257131, effective May 23, 1962 to May 23, 1963;

    c.    Policy No. K2276210, effective May 23, 1963 to May 23, 1964;

    d.    Policy No. K2290639, effective May 23, 1964 to October 15, 1964.

22.    Cyprus Amax is the corporate successor to Cyprus and is entitled to coverage under the American Policies.

**The Old Republic Insurance Policies**

23.    Old Republic sold the following liability insurance policies to Cyprus (collectively, the "Old Republic Policies"):

    a.    Policy No. ZC-46316, effective July 1, 1985 to July 1, 1986;

    b.    Policy No. ZC-46784, effective July 1, 1986 to July 1, 1987;

    c.    Policy No. ZC-50105, effective July 1, 1988 to July 1, 1988.

24.    Cyprus Amax is the corporate successors to Cyprus and entitled to coverage under the Old Republic Policies.

Heller
Ehrman LLP

5

**The Truck Insurance Policies**

25.     Truck sold the following liability insurance policies to Cyprus (collectively, the "Truck Policies"):

       a.     Policy No. 350-41-34, effective October 1, 1974 to July 1, 1980.

26.     Cyprus Amax is the corporate successor to Cyprus and entitled to coverage under the Truck Policies.

**The Continental Insurance Policies**

27.     Continental Insurance sold the following liability insurance policies to AMAX, Inc. and AMRI (collectively, the "Continental Insurance Policies"):

       a.     Policy No. L 3 32 08 62, effective January 1, 1975 to January 1, 1976;

       b.     Policy No. L 3 61 88 26, effective January 1, 1976 to January 1, 1977;

       c.     Policy No. L 1 18 43 28, effective January 1, 1977 to January 1, 1980;

       d.     Policy No. SRL 3 63 59 13, effective January 1, 1980 to January 1, 1981;

       e.     Policy No. SRL 3 63 60 99, effective January 1, 1981 to January 1, 1982;

       f.     Policy No. SRL 3 63 62 91, effective January 1, 1982 to January 1, 1983;

       g.     Policy No. SRL 3 63 66 77, effective January 1, 1983 to January 1, 1984;

       h.     Policy No. SRL 3 63 68 59, effective January 1, 1984 to January 1, 1985;

       i.     Policy No. SRL 3 34 44 12, effective January 1, 1985 to January 1, 1986;

       j.     Policy No. SRL 3 34 74 18, effective January 1, 1986 to April 1, 1986.

28.     Amax Nickel Refining Company, Inc., was a named insured under the Continental Insurance policies sold to AMAX, Inc.  AMRI is the corporate successor to Amax Nickel Refining Company, Inc. and is entitled to coverage under the Continental Insurance Policies.

**The Century Indemnity Policies**

29.     Century sold the following liability policies to American Metal Climax, Inc. and/or to AMAX Inc. and AMRI (collectively, the "Century Policies"):

COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT; DEMAND FOR TRIAL BY JURY

Heller
Ehrman LLP

a.    Policy No. LB 39736, effective January 1, 1965 to January 1, 1968;

b.    Policy No. ALB 47618, effective January 1, 1968 to January 1, 1971;

c.    Policy No. ALB 47212, effective January 1, 1971 to January 1, 1972;

d.    Policy No. ALB 47240, effective January 1, 1972 to January 1, 1974;

e.    Policy No. ALB 47276, effective January 1, 1974 to January 1, 1975;

f.    Policy No. ALB 47279, effective January 30, 1974 to January 1, 1975.

30.    Amax Nickel Refining Company, Inc., was insured under the Century policies as a subsidiary of American Metal Climax, Inc and/or AMAX, Inc. AMRI is the corporate successor to Amax Nickel Refining Company, Inc. and is entitled to coverage under the Century Policies.

## THE 2007 AGREEMENT

31.    Cyprus Amax, as successor to Cyprus, entered into the 2007 Agreement with Defendants Continental Casualty, American, Old Republic and Truck to settle a dispute over coverage for certain talc-related and other claims, including settlement of a lawsuit over coverage for such claims pending in the Los Angeles Superior Court.

32.    The 2007 Agreement sets out the settling parties' respective duties and responsibilities toward one another, including the payment of defense costs, related to the claims covered by the Agreement, which claims include certain of the Underlying Actions described below.

33.    The 2007 Agreement provides that any breach shall be enforced in an action in the Los Angeles Superior Court and shall be controlled and interpreted according to the laws of the State of California.

34.    The 2007 Agreement is a valid and binding contract.

35.    Cyprus Amax has complied with all the terms and conditions precedent of the 2007 Agreement and is entitled to the benefits provided by it.

## THE UNDERLYING ACTIONS

36.    The Underlying Actions seek damages from AMRI directly or Cyprus Amax (i) as successor to AMAX, Inc. ("AMAX"); and (ii) as successor to Cyprus Minerals

Heller
Ehrman LLP

7

Company ("Cyprus") or its subsidiaries or predecessors.  AMAX and Cyprus each separately purchased insurance prior to their merger in 1993.  Certain of the Underlying Actions at issue exclusively arise out of claims for bodily injury asserted against AMAX and/or AMRI related to AMRI's operations of a nickel refinery in Braithwaite, Louisiana (the "AMAX Actions").  Certain of the Underlying Actions at issue arise out of claims for bodily injury asserted against Cyprus and/or its subsidiaries or predecessors, including Sierra Talc (the "Cyprus Actions").

### A.    The Defense Costs Dispute (All Defendants)

37.    Pursuant to either the Policies and/or the 2007 Agreement, the Underlying Actions obligate the Defendants to pay defense costs incurred by Cyprus Amax.

38.    Defendants previously have acknowledged a duty and obligation under the Policies and/or the 2007 Agreement to defend Cyprus Amax in the Underlying Actions.

39.    Continental Casualty, American, Old Republic, and Truck have defended the Cyprus Actions pending, inter alia, in California and Ohio against Plaintiff Cyprus Amax as successor to Cyprus.

40.    Century and Continental Insurance have defended the AMAX Actions pending exclusively in Louisiana against Plaintiff AMRI and/or Cyprus Amax as successor to AMAX, Inc.

41.    Beginning in February 2007, Cyprus Amax commenced the review of commingled AMAX and Cyprus documents potentially responsive to outstanding discovery requests in both the Cyprus Actions and the AMAX Actions (the "Document Review").

42.    The Document Review was undertaken by Cyprus Amax as part of its defense of the Cyprus Actions and the AMAX Actions, specifically those actions where pending discovery requests potentially required production of certain historic records.

43.    On behalf of Cyprus Amax, Enviro-Tox Loss Services, Inc. ("ETLS") provided notice and information regarding the Document Review to Defendants and to

Heller
Ehrman LLP

8

National Coordinating Counsel for the Cyprus Actions and the AMAX Actions before or shortly after the Document Review commenced.

44.    Upon receipt of invoices for the Document Review, all of the Defendants except Truck initially made payments of defense costs incurred by Cyprus Amax related to the Document Review.

45.    The total costs of the Document Review is $6.8 million.

46.    According to the terms of the Policies and the 2007 Agreement, Defendants have a duty and obligation to reimburse Cyprus Amax for the costs of the Document Review as defense costs.

47.    Each of the Defendants currently dispute their obligation to pay for the costs of the Document Review.

**B.    The Allocation Dispute (AMAX Defendants Only)**

48.    Pursuant to the Policies issued by Continental Insurance and Century (the "AMAX Defendants") to AMAX and AMRI, the AMAX Defendants are obligated to defend and to pay indemnity incurred by AMAX and AMRI in the AMAX Actions.

49.    The AMAX Defendants previously have acknowledged a duty and obligation to pay defense and indemnity under the Policies for the AMAX Actions.

50.    Beginning in May 2008, the AMAX Defendants have taken the position that the amounts they have paid and may be forced to pay in the future as defense and/or indemnity in the AMAX Actions are not wholly attributable to bodily injury occurring during the period of coverage provided by the Century and Continental Insurance Policies.

51.    A present controversy exists with respect to the rights of AMAX and AMRI against the AMAX Defendants as to the parties rights, duties and obligations under the Policies related to the scope of defense and indemnity for the claims stated in the AMAX Actions.

COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT; DEMAND FOR TRIAL BY JURY

Heller
Ehrman LLP

## FIRST CAUSE OF ACTION

### (Breach of Contract Against All Defendants)

52.    Cyprus Amax repeats and incorporates by reference the allegations of Paragraphs 1 to 51 as though fully set forth herein.

53.    Defendants sold written insurance contracts to Cyprus Amax.

54.    Certain Defendants entered into the 2007 Agreement with Cyprus Amax.

55.    Each of the Defendants have breached their contracts of insurance and/or the 2007 Agreement by refusing and failing to pay fully the defense costs associated with the Document Review.

56.    As a direct result of the breach, Cyprus Amax has been deprived of the benefits of the insurance coverage and the 2007 Agreement.  Cyprus Amax has been forced to pay substantial sums as defense costs arising from the Underlying Actions and Cyprus Amax has incurred damages as a result.  Cyprus Amax is entitled to recover those damages plus interest.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment Against AMAX Defendants)

57.    Cyprus Amax repeats and incorporates by reference the allegations of Paragraphs 1 to 55 as though fully set forth herein.

58.    The AMAX Defendants have a duty under the terms of their respective insurance policies to defend and to pay indemnity incurred in connection with the AMAX Actions.

59.    Century and Continental Insurance dispute their obligations to pay in full defense and indemnity owed by Cyprus Amax and AMRI as a result of the AMAX Actions.

60.    Cyprus Amax seeks a declaration of rights concerning the scope of coverage owed by Century and Continental Insurance in respect to the Policies issued to AMAX and AMRI related to the AMAX Actions.

61.    By reason of the foregoing, an actual and justiciable controversy exists

10

Heller
Ehrman LLP

between Cyprus Amax and the AMAX Defendants concerning the contractual rights, duties and obligations of the parties relating to the scope of coverage for defense and indemnity for the AMAX Actions.

62.     A judicial declaration is necessary and appropriate, under California Code of Civil Procedure section 1060, so that Cyprus Amax may ascertain its rights in light of its existing and imminent obligations to pay sums for defense and indemnity in the AMAX Actions. The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

WHEREFORE, Cyprus Amax prays for relief as set forth below.

## PRAYER FOR RELIEF

Plaintiffs requests that the Court enter judgment as follows:

1.     With respect to the First Cause of Action, judgment against Defendants and an award of damages according to proof at trial, plus interest thereon at the maximum legal rate;

2.     With respect to the Second Cause of Action, for a declaration that:

a.     Each of the AMAX Defendants, pursuant to all the terms of its respective policies, is jointly and severally liable for all sums that Cyprus Amax becomes obligated to pay, through judgment, settlement, or otherwise, with respect to:

(i)     Each asbestos-related personal injury claim in which any part of the claimant's injury is alleged or shown to have occurred during the policy period of that policy; and

(ii)     Each asbestos-related personal injury claim in which no specific period of injury has been alleged or established before the termination of the claim.

Such obligation of each defendant to make full payment on behalf of Cyprus Amax is subject only to underlying and upper limits of liability and percentage participation limits, if any, expressly and unambiguously stated in its respective Policies.

b.     Each of the AMAX Defendants, pursuant to all the terms of its

Heller
Ehrman LLP

11

COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT; DEMAND FOR TRIAL BY JURY

respective Policies, is jointly and severally obligated to defend Cyprus Amax unless the allegations of the claimant clearly preclude the possibility that any part of the claimant's injury could have occurred during any one of that defendant's policy periods. Such obligation under each of the Policies to defend in full is subject only to underlying and upper limits of liability or percentage participation limits, if any, that expressly and unambiguously apply to the duty to defend, or to policy provisions that otherwise expressly and unambiguously limit the duty to defend.

(c)     For purposes of insurance policy coverage, a claimant's asbestos-related personal injury is deemed to begin on the date of the claimant's first exposure to asbestos and to continue to occur until the date of the claimant's death.

3.     With respect to all Claims for Relief:

a.     For Plaintiff's attorneys' fees and costs of suit incurred herein; and

b.     For such other, further, and/or different relief as the Court may deem just and proper.

DATED: May 16, 2008

HELLER EHRMAN LLP

By _____
   Lawrence A. Hobel
   Attorneys for Plaintiffs
   CYPRUS AMAX MINERALS COMPANY,
   PHELPS DODGE CORPORATION, and
   AMAX METALS RECOVERY INC.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for those claims that may be tried by a jury under the law.

Heller
Ehrman LLP

COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT; DEMAND FOR TRIAL BY JURY

1  DATED: May 16, 2008

HELLER EHRMAN LLP

2

By _____

3          Lawrence A. Hobel
            Attorneys for Plaintiffs
4          CYPRUS AMAX MINERALS COMPANY,
            PHELPS DODGE CORPORATION, and
5          AMAX METALS RECOVERY INC.

6

7  ()

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Heller
Ehrman LLP

COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT; DEMAND FOR TRIAL BY JURY

296

MEMORANDUM OF LAW OF CONTINENTAL IN OPPOSITION TO MOTION TO
DISMISS OR STAY (Pages 296-330).

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------x
THE CONTINENTAL INSURANCE COMPANY,

                Plaintiff,

        -against-              Index No:
                           19737/91

AMAX, INC., INSURANCE COMPANY OF NORTH  IAS Part 55
AMERICA, THE HOME INSURANCE COMPANY
AND UNDERWRITERS AT LLOYD'S LONDON,    Hon. Peter Tom

              Defendants.
-----------------------------------------x

MEMORANDUM OF LAW OF PLAINTIFF
CONTINENTAL INSURANCE COMPANY IN
OPPOSITION TO AMAX INC.'S MOTION
TO DISMISS OR STAY THIS ACTION

                          BOWER & GARDNER
                          Attorneys for Plaintiff
                          Continental Insurance Company
                          Office & P.O. Address
                          110 East 59th Street
                          New York, New York  10022
                          (212) 751-2900

297

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

- - - - - - - - - - -- - - - - - - - - X
THE CONTINENTAL INSURANCE COMPANY,          :

            Plaintiff,                :

     - against -                                    Index No.
                          :    19737/91
AMAX INC., INSURANCE COMPANY OF NORTH            IAS Part 55
AMERICA, THE HOME INSURANCE COMPANY             Hon. Peter Tom
AND UNDERWRITERS AT LLOYD'S LONDON,         :

           Defendants,              :

- - - - - - - - - - - - - - - - - - - - X


### MEMORANDUM OF LAW OF PLAINTIFF CONTINENTAL INSURANCE COMPANY IN OPPOSITION TO AMAX INC.'S MOTION TO DISMISS OR STAY THIS ACTION

Plaintiff    Continental    Insurance    Co.    ("Continental")
respectfully submits this Memorandum of Law in opposition to Amax
Inc.'s ("Amax") motion to dismiss or stay this action pursuant to
CPLR § 3211 (a)(4) and CPLR § 3211(a)(10).

1

298

## PRELIMINARY STATEMENT

This is an action for declaratory judgment involving the interpretation of insurance policies which were negotiated, issued, delivered and paid for in New York over a period of 16 years. This action was properly commenced by Continental in New York based upon the fact that this forum has multiple significant contacts to the parties and their disputes. As will be discussed more fully below, Amax's motion to dismiss or stay this action in favor of its subsequently-commenced Colorado action should be denied in its entirety because:

1.  The Amax subsidiaries are not indispensable or necessary parties to this action as they are nothing more than wholly-owned and controlled divisions of Amax whose interests are united with those of Amax and will be fully protected by Amax;

2.  New York is undoubtedly the forum with the most significant contacts with and interest in this action where the parties are located here, the insurance policies in issue are New York contracts, and where New York's substantive law will apply in interpreting these policies. New York is also the proper forum because it is convenient for all parties given the extensive evidence and many witnesses already present here as well as the ease of accessibility of New York as a travel and communications center for witnesses and evidence located in other states; and

3.  All the disputes between the parties will be resolved in this action, which was commenced prior to Amax's Colorado action, whereas the dismissal or staying of this action would reward Amax for forum shopping and delaying this action.

2

299

## FACTUAL BACKGROUND

Amax, a corporation organized under the laws of the State of New York and maintaining its principal place of business in New York, through its divisions or wholly-owned subsidiaries, is the nation's third-largest integrated aluminum producer, the third-largest coal producer in the United States and the leading primary producer of molybdenum in the world.

Since 1975 and continuing to date, Continental issued primary general liability insurance policies to Amax for its diverse and complex operations. The Continental policies constitute an integral part of the insurance program formulated by Amax and its broker in New York, Frenkel & Company ("Frenkel"), covering Amax and its divisions. Each of these policies were negotiated by Continental from its principal place of business in New York, with Amax on behalf of Amax and its divisions.[1]

Each of the Continental policies were also issued by Continental from its home office in New York and delivered to Frenkel in New York. See Wassmer Aff. at ¶ 5. Over the years all premium notices have been sent by Continental to Frenkel's New York office and payment has been made by Amax to Continental's branch

---

[1]Raymond J. Wassmer, a Regional Vice President and Manager in Continental Special Risk Underwriters at 180 Maiden Lane, New York, New York, has sworn that Amax's broker, Frenkel, located in New York, and Amax's Vice President and Director of Insurance, Robert Ryan, negotiated with Continental regarding Amax's policies of insurance in New York from 1975 to 1991, at either Continental's New York office or at Frenkel's New York office, but not elsewhere. See Affidavit of Raymond J. Wassmer ("Wassmer Aff.") at ¶ 2. (Copy attached at Tab A)

3

300

office located in New York City.  Id.

The issuance of the Continental policies were the result of arms-length bargaining between Amax and Continental.  Amax, as a large, sophisticated corporate insured with extensive and diversified operations conducted careful and painstaking negotiations with Continental.  These negotiations were complex and lengthy, taking place over several months during each of the 16 years in which the Continental policies were issued or renewed.  See Wassmer Aff. at ¶ 4.    The issuance of each policy also necessitated detailed financial review of Amax's operations by Continental's Financial Analysis Department.    Id. at ¶ 3.    In addition, the issuance or renewal of each of these policies required submissions by Amax, through Frenkel, of detailed descriptions of its operations and insurance needs.  In addition, given Amax's enormous bargaining power, Amax and its broker proposed much of the pertinent policy language eventually incorporated into the policies issued.  Id.

The relationship of Continental and Amax concerning claims under the Continental policies has also historically been centered in New York.    Throughout the course of Amax's relationship with Continental, all claims and notices tendered by Amax on behalf of itself and its divisions have been made through Frenkel in New York.    Frenkel then tendered these claims to Continental's claims office located in Cranbury, New Jersey.    Continental, in turn, communicated with Amax's insurance administrator in Greenwich,

4

301

Connecticut.[2]

Coverage is disputed in this action for claims of pollution and environmental contamination at approximately 33 sites located throughout the United States. These claims were presented by Amax to Continental, together with specific demands for the payment of legal expenses in approximately early-1991. These claims were not covered under the Continental policies because, for example, a number of these claims were submitted under claims-made policies after the expiration of the respective policies' reporting periods and many of the policies contain absolute pollution exclusions.

In addition to acting on behalf of its subsidiaries in the procurement of the Continental policies in issue, Amax has also handled all claims on their behalf. The fact is that Continental has never had any direct dealing with any of the Amax subsidiaries with respect to the policies. That Amax controls all facets of liability and insurance coverage for its subsidiaries is consistent with the fact that the subsidiaries are not even referred to by Amax as additional insureds after 1981 in the Continental policies. See Affidavit of Bridge L. Kyle ("Kyle Aff.") at ¶'s 5-7 (copy attached at Tab B).

In June 1991, Amax made additional demands for reimbursement

---

[2]Claire M. Louis, a Senior Technical Specialist for Continental at the Corporate Claims Division, One Continental Drive, Cranbury, New Jersey, has sworn that for all of the claims tendered under the Continental policies in issue, she dealt exclusively with Amax's insurance administrator located in Greenwich, Connecticut, and never dealt with any representative of any Amax subsidiary. See Affidavit of Claire M. Louis ("Louis Aff.") at ¶ 3. (Copy attached at Tab C).

5

302

of certain monies spent in connection with several of the sites at issue. This presented a clear dispute between the parties and Continental commenced this action on August 21, 1991 requesting that this Court adjudge and declare that the Continental policies do not provide coverage for the 33 nationwide sites in issue. Continental logically and properly chose to file this action in this Court because it is the forum with the most significant contacts with this dispute and is the most convenient forum to try this action given New York's close relationship to all of the activities involved with the negotiation, procurement and renewal of the Continental policies, the maintenance of business headquarters by the principal players in New York, the fact that New York substantive law will apply to the interpretation of the Continental policies and given the fact that the diverse locations of the various claim sites warrant that this litigation be maintained in a centralized location that is also a transportation and communications center.

After the commencement of this action shortly before Amax's answer was due, Continental, in good faith and at Amax's request, granted Amax an extension of time to file an answer through and including October 9, 1991. However, on that date Amax commenced a clearly duplicative action in Colorado state court (copy of complaint attached at Tab D) (the "Colorado action"), seeking a declaration that the Continental policies in issue in this action provide coverage for the sites in issue in this action, and also filed a motion to dismiss this action based upon the pendency of

6

303

the Colorado action.

Since Amax commenced the Colorado action -- seven weeks after this action was started -- the progress of this action has been stalled by the pendency of Amax's motion to dismiss. However, Amax, in an attempt to push the Colorado action ahead of this action, has served various requests for documentary production in that action.[3]

Upon the commencement of the Colorado action by Amax, Continental learned the identity of other insurers from whom Amax had sought coverage for the claims in issue. Immediately upon receipt of this information Continental amended its complaint in this action as a matter of right to include the Insurance Company of North America ("INA"), the Home Insurance Company ("the Home") and Underwriters at Lloyds, London ("London") as parties. To date, issue has been joined by INA and the Home who, notably, have asserted cross-claims against Amax asserting defenses to coverage for the claims in issue under the policies they issued to Amax.

Amax withdrew its initial motion to dismiss this action and reserved it in its current form. The Court should also be aware that Continental has filed a motion to dismiss the Colorado action which has been joined by INA and the Home. London has also filed a motion requesting dismissal of the Colorado action.

---

[3]Because Colorado Rules of Civil Procedure differ from the CPLR, in that the filing of a motion to dismiss does not stay discovery requests, Amax's discovery requests are the subject of motions for a protective order by Continental and all other defendant insurance carriers in that action, and Amax has moved to compel the discovery.

7

304

## POINT I

### THE AMAX SUBSIDIARIES ARE NOT NECESSARY PARTIES TO THIS ACTION

The courts are vested with broad discretion to equitably resolve issues involving the joinder of parties under Article 10 of the CPLR. Staten Island Hospital v. Alliance Brokerage, 166 A.D.2d 574, 560 N.Y.S.2d 859, 861 (2d Dep't 1990). A party generally will be deemed necessary only where its interests would be materially prejudiced by its non-participation in the action and where its absence potentially could give rise to subsequent or other litigation of the same issues between the absent party and the parties to the pending suit. Joanne S. v. Carey, 115 A.D.2d 84, 498 N.Y.S.2d 817, 819 (1st Dep't 1986). However, an action may proceed in the absence of an otherwise necessary party where its interests will be protected adequately by the parties to the lawsuit. Autobody Federation of Empire State, Inc. v. Lewis, 80 A.D.2d 593, 436 N.Y.S.2d 32, 34 (2d Dep't 1981) ; Davis Construction Corp. v. County of Suffolk, 112 Misc.2d 652, 447 N.Y.S.2d 355, 360 (Sup.Ct. Suffolk Co. 1982), aff'd, 95 A.D.2d 819 464 N.Y.S.2d 519 (2d Dep't 1983).

Amax's motion to dismiss should be denied because the Amax subsidiaries are not indispensable or necessary parties to this action. The Amax subsidiaries are owned and controlled by Amax and are united in interest with Amax with respect to the issues in this action. As such, the Amax subsidiaries are more akin to divisions of Amax rather than independent entities. Accordingly, the

8

305

interests of the Amax subsidiaries will be fully represented and defended by Amax's presence in this action.    In addition, there will be no threat of a subsequent multiplicity of suits because the Amax subsidiaries are in privity with Amax.

That the Amax subsidiaries are united in interest and in privity with Amax with respect to the coverage issues in this action is clear upon consideration of Amax's complete ownership and control of these companies, Amax's procurement of insurance coverage on behalf of itself and its subsidiaries, and Amax's control over the handling of environmental claims and coverage issues on behalf of its subsidiaries.    See Wassmer Aff. at ¶ 6, and Louis Aff. at ¶'s 2-3.

Amax's control over its subsidiaries is most clearly evidenced by the fact that each of these companies is either wholly-owned by Amax or wholly-owned by a subsidiary of Amax which Amax wholly owns.[4]

The close inter-relationship among Amax and its subsidiaries is also evidenced by the companies' numerous interlocking directorates and officers, many of whom work simultaneously for or

---

[4]Amax Research and Development, Inc. , Amax Copper, Blackwell Zinc, **Amax Specialty Metals**, Climax Molybdenum Co.  are all wholly-owned subsidiaries of Amax.  Climax Performance Materials Corp. is a wholly-owned subsidiary of Climax Metals Co., Inc. which is wholly-owned by Amax.  Amax Coal Company is a wholly-owned subsidiary of Amax Coal Industries, Inc. which is a wholly-owned subsidiary of Alumax, Inc. which is a wholly-owned subsidiary of Amax.  Amax Arizona is a wholly-owned subsidiary of Amax Pacific which is a wholly-owned subsidiary of Amax.

9

306

transfer between the parent corporation and various subsidiaries.[5]

Amax maintained exclusive control over the negotiation, procurement and premium payment for the Continental policies for sixteen years. See Wassmer Aff. at ¶ 6. It has constructed an insurance program for its diverse operations. Further proof that Amax exercised central control with regard to the insurance policies is found in the Continental policies themselves which name Amax as the principal named insured and provide coverage only to other entities which are under Amax's control.

Amax and the Amax subsidiaries also possess a united and shared interest in defending the environmental claims and securing insurance coverage for these claims. Since 1975, only Amax has presented claims regarding the Continental insurance policies. Amax has, in fact, commenced environmental litigation in its own name on behalf of its wholly-owned subsidiaries.[6] The degree of Amax's control over these matters is further shown by Amax's maintenance of centralized environmental/legal claims offices and attorneys (see Marucheau Aff. at ¶ 30 – "I am the principal environmental attorney for Amax and its subsidiaries" (copy

---

[5] For example, Allen Born, the Board Chairman, Chief Executive Officer and President of the Amax parent corporation is also the chairman, president and a director of Climax Molybdenum, Helen Feeney, Secretary of Amax is also a vice president in Climax Performance, and Thomas McKeever, Executive and President of Amax previously was an officer of Amax Coal.

[6] For example, in Amax, Inc. v. Sohio Industrial Products Co., Supreme Court, New York County, Amax commenced an action in its own name on behalf of its wholly-owned subsidiary Climax Molybdenum, arising out of an environmental contamination claim for a site that was located in Parkersburg, West Virginia. (Copy attached at Tab E).

307

attached to Amax's Motion to Dismiss)) on behalf of all of its companies, its central handling of all claims for all companies, Amax's representation of all of its companies in negotiations with Continental, the sharing of common counsel and the assertion of common coverage positions by Amax and the Amax subsidiaries as co-plaintiffs in the Colorado action, as well as the free exchange and access to information and documents related to the activities of the Amax subsidiaries by Amax and its counsel which has been reflected in opposing counsel's papers in this action.

It is evident then that the Amax subsidiaries are under Amax's control and are united in interest with Amax with respect to the issues in this action and that they are not necessary parties because their interests will be adequately represented and defended by Amax. Blaustein v. Pan American Petroleum & Transport Co., 293 N.Y. 281, 305 (1944), reh'g denied, 293 N.Y. 763 (1944) (subsidiary of corporate defendants held not necessary party), Castle Hill Beach Club Inc. v. Arbury, 208 Misc. 35, 142 N.Y.S.2d 432 (Sup.Ct. Bronx Co. 1955), modified on other grnds., 1 A.D. 2d 950, 150 N.Y.S.2d 950 (1st Dep't 1956), aff'd, 2 N.Y.2d 596, 162 N.Y.S. 2d 1 (1957), see China Sugar Refining Co. v. Andersen, Meyer & Co., 6 Misc.2d 184, 152 N.Y.S.2d 507 (Sup.Ct. New York Co. 1956), see also Taran Furs, Inc. v. Champagne Bridals, Inc., 116 A.D.2d 970, 498 N.Y.S.2d 595 (4th Dept 1986).

Nor will the absence of the Amax subsidiaries result in a multiplicity of subsequent litigation or inconsistent findings because the Amax subsidiaries are clearly in privity with Amax with

11

308

respect to the issues presented in this action. Green v. Santa Fe Industries, Inc., 70 N.Y.2d 284, 519 N.Y.S.2d 793 (1987); In Re Teletronics Services, Inc., 762 F.2d 185, 191 (2d Cir. 1985) (related and subsidiary corporations held to be in privity for purposes of applying doctrines of collateral estoppel and res judicata); Raitport v.  Commercial Banks Located Within This District As A Class, 391 F.Supp. 584, 587 (S.D.N.Y. 1975) (wholly-owned subsidiary of Citibank permitted to assert collateral estoppel as a defense); In The Matter of the Petition of Allied Maintenance Corp. for Revision of a Determination or for Refund of Sales And Use Taxes, State of New York – State Tax Commission 1984 New York Tax LEXIS 297 (June 5, 1984) (defendant collaterally estopped by prior decision of Appellate Division Third Department finding wholly-owned subsidiary of petitioner corporation responsible for subject taxes).

Accordingly, because the interests of both Amax and the Amax subsidiaries will be fully represented and all the issues between Amax and its insurers may be resolved in this action and Amax cannot legally or factually support its claims to the contrary, Amax's motion to dismiss should be denied.[7]

---

[7]The single case relied upon by Amax to support its contention that the Amax subsidiaries are necessary parties to this action, National Grange Mutual Insurance v. Ogassian, 45 Misc.2d 729, 257 N.Y.S.2d 451 (Sup.Ct. Bronx Co. 1965) has no application to the case at bar. While National Grange stands for the general proposition that a declaratory judgment action should include all necessary parties, it is factually distinct and thus irrelevant to the issues before this Court. The Court in National Grange held that the New York Motor Vehicle Accident and Indemnification Corporation ("MVAIC") was a necessary party to the declaratory judgment action before it based upon the fact that if the insurer

12

309

## POINT II

### THIS ACTION SHOULD REMAIN IN NEW YORK -- THE FORUM WITH THE MOST SIGNIFICANT CONTACTS WITH THE PARTIES AND THEIR DISPUTE

A party moving for dismissal on the grounds of forum non conveniens must bear "the heavy burden of demonstrating that the forum chosen is an inappropriate one." Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust, Ltd., 62 N.Y.2d 65, 74, 476 N.Y.S.2d 64, 68 (1984).

Courts determining motions to dismiss on the ground of forum non conveniens consider various private and public interest factors in order to evaluate the relationship of the parties and their dispute to New York including, the parties' presence in New York, the nexus of the disputed transaction to New York, the applicability of New York law and the accessibility of witnesses and necessary evidence in New York.

Dismissal should be denied and the plaintiff's choice of forum should be preserved where, as here, the relationship of the parties and the insurance coverage dispute at issue is more significantly related to New York than to any other forum and, in particular, the Colorado forum suggested by Amax. See Islamic Republic of Iran v. Pahlavi, 62 N.Y.2d 474, 479, 478 N.Y.S.2d 597, 600 (1984), cert.

---

succeeded in denying coverage for the auto accident at issue, the claimant would be able to pursue an uninsured motorists benefits claim against MVAIC. National Grange clearly has no application in this case where, unlike the MVAIC whose interests were unprotected, Amax will be vigorously protecting the mutual interests of its subsidiaries.

13

310

denied, 469 U.S. 1108 (1985); Gulf Oil Corp. v. Gilbert, 330 U.S.
501, 508 (1946). See also Insurance Co. of the State of Penn. v.
CIGNA Property & Casualty Co., 162 A.D.2d 390, 557 N.Y.S.2d 43, 44
(1st Dep't 1990); Temple v. Temple, 97 A.D.2d 757, 758, 468
N.Y.S.2d 388, 389 (2d Dep't 1983); Unigraphic, Inc. v. Star Wars
Corp., 79 A.D.2d 944, 435 N.Y.S.2d 19, 20 (1st Dep't 1981); Bata
v. Bata, 304 N.Y. 51 (1952).

That New York has the most significant relationship to the
parties and this action is undeniable considering that the parties
are present in New York, that the policies at issue were negotiated
and issued in New York for sixteen years, that all necessary
witnesses and evidence is either located in, or easily accessible
to, New York, and that New York substantive law will govern this
dispute.

## A.    The Parties Are In New York

Contacts with New York which are significant enough to render
a party present in New York for purposes of a forum non conveniens
determination include: whether the parties have their principal
place of business in New York; whether the parties are incorporated
in New York; and whether the parties have employed agents or
brokers in New York. See, e.g., Insurance Co. of State of Penn.,
supra, 557 N.Y.S.2d at 44 (two insurance companies with offices in
New York); Manhattan Film Inc. v. Entertainment Guarantees, Ltd.,
156 A.D.2d 152, 548 N.Y.S.2d 200, 201-02 (1st Dep't 1989)

14

311

(plaintiff was a New York corporation); Islamic Republic of Iran, supra, 478 N.Y.S.2d at 600 (both parties were non-residents); Irrigation & Industrial Development Corp. v. Indag S.A., 37 N.Y.2d 522, 525, 375 N.Y.S.2d 296, 299 (1975) (defendant transacted no business in New York); Iselin-Jefferson Financial Co., Inc. v. Ward, 34 A.D.2d 919, 311 N.Y.S.2d 427, 428 (1st Dep't 1970) (plaintiff had principal place of business in New York and defendant was resident of New York); Intercontinental Packaging Co. v. China National Cereals, Oils & Foodstuffs Import & Export Corp., 159 A.D.2d 190, 559 N.Y.S.2d 302, 306 (1st Dep't 1990) (parties' agent in New York).

In this case, both Amax and Continental have their principal places of business in New York City and Amax is incorporated under the laws of the State of New York.  Amax's broker, Frenkel, is also located in New York City.  Given the presence of Amax and its broker in New York, Amax's assertion that New York is an improper or inconvenient forum is plainly unfounded.

## B.   The Continental Policies Are New York Contracts

This action should also remain in New York because the Continental policies in issue were negotiated, issued, delivered and paid for in New York.  See Intercontinental Packaging Co., supra, 559 N.Y.S.2d at 306 (the contract was executed in New York); Insurance Co. of State of Penn., supra, 557 N.Y.S.2d at 44 (the insurance policy was issued in New York); Manhattan Film, Inc.,

15

312

supra, 548 N.Y.S.2d at 201-02 (nearly all relevant transactions occurred in New York, namely, the guarantee and refund agreement was primarily negotiated and executed in New York, and the premium was delivered and cashed in New York); Islamic Republic of Iran, supra, 478 N.Y.2d at 600 (the transactions occurred outside New York); Indag S.A., supra, 37 N.Y.2d at 525 (the agreement was negotiated and executed in Switzerland).

New York's close relationship to the Continental poliices is further highlighted by the fact that Amax and its broker pursued pre-litigation claims under these policies in New York and the parties attempted negotiation and resolution of their differences in New York before the institution of this action. See Intercontinental Packaging Co., supra, 559 N.Y.S.2d at 306 (attempts at resolution were made through efforts of parties' agent in New York). As all of these relevant transactions occurred in New York, the insurance contracts are most significantly related to New York.

## C. **New York Law Will Apply To Resolve This Dispute**

This motion to dismiss for forum non conveniens should be denied because New York law will apply to resolve the parties' dispute and a New York court is better-equipped to apply New York law to the disputes in this action which may involve the determination of unsettled questions of New York insurance law. See Intercontinental Packaging Co., supra, 559 N.Y.S.2d at 306; Don

16

313

King Productions, Inc. v. Douglas, 735 F.Supp. 522, 535 (S.D.N.Y. 1990); Filmline (Cross-Country) Productions, Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989); American Re-Insurance Co. v. SGB Universal Builders Supply Inc., 141 Misc. 2d 375, 532 N.Y.S.2d 712, 715 (Sup. Ct. New York Co. 1988); and Gulf Oil Corp., supra, 330 U.S. at 509 (the proper forum is one "that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself").

That New York law will apply is obvious. In cases involving insurance contracts, New York applies "the law of the jurisdiction which has the most significant contacts with the matter in dispute." Golotrade Shipping & Chartering, Inc. v. Travelers Indemnity Co., 706 F.Supp. 214, 218 (S.D.N.Y. 1989). The seminal case in this regard is Olin Corp. v. Insurance Co. of North America, 743 F.Supp. 1044 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991). Olin Corp. states that:

> New York courts have looked principally to the following factors: the location of the insured risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business. 743 F.Supp at 1049.

See also Avondale Industries, Inc. v. Travelers Indemnity Co., 774 F.Supp. 1416, 1422 (S.D.N.Y. 1991); Munzer v. St. Paul Fire & Marine Ins. Co., 145 A.D.2d 193, 200-01, 538 N.Y.S.2d 633, 637 (3d Dep't 1989); and Ethicon, Inc. v. Aetna Casualty & Surety Co., 688 F.Supp. 119, 123-24 (S.D.N.Y. 1988); American Re-Insurance Co.,

17

314

supra, 532 N.Y.S.2d at 715.

The location of the insured risk is only significant in a choice of law determination when the risk can be located in a single state; when the insured's operations and insured interests are located in a wide geographic range, and when the policy provides coverage nationwide or worldwide, there really is no principal location of the insured risk. See Avondale Industries, Inc., supra, 774 F.Supp. at 1423 ("operations and insured interests located in a wide geographic range" makes this factor insignificant); Olin Corp., supra, 743 F.Supp. at 1049 (risks not confined to any one location); Golotrade Shipping & Chartering, Inc., supra, 706 F.Supp. at 218 (the fact that "the risk covered by an accident policy occurred in a certain state does not make the contract one of that state"); American Re-Insurance Co., supra, 532 N.Y.S.2d at 715 (because the risk insured was worldwide, this factor is not significant). See also Restatement (Second) of Conflict of Law § 193, Comment b, at 611-12 (1971); Couch on Insurance, 2d (Rev. Ed. 1984) § 16:13. The risks covered by the Continental insurance policies in issue were not confined to any one principal location, rather the policy territory is the United States and Canada. See Kyle Aff. at ¶ 6. In fact, Amax, through its wholly-owned subsidiaries, is the nation's third largest intergrated aluminum producer, the third largest coal producer in the United States and the leading primary producer of molybdenum in the world. Amax's Colorado Complaint indicates that there are at least 22 pollution contamination sites in 16 states. Amax has

315

operations all across the United States, including New York. Thus, there is no principal location of the insured risk.

On the other hand, the insurance policy was issued and delivered in New York. See Wassmer Aff. at ¶ 5. New York is the location of the broker, Frenkel, which placed the policies. Id. at ¶ 2. Premiums were paid in New York. Id. at ¶ 5. Continental's principal place of business, and the place of business responsible for negotiating the insurance policies in issue, and for servicing the account is located in New York City. Thus, under New York choice of law rules, because New York has the most significant contacts with the parties and their dispute, New York law will undoubtedly apply.

Moreover, even under Colorado choice of law rules, New York law will apply. Colorado applies the most significant contacts test - the very same analysis adopted by the New York courts. See Power Motive Corporation v. Mannesmann Demag Corporation, 617 F.Supp. 1048 (D. Colo. 1985); Wood Bros. Home, Inc. v. Walker Adjustment Bureau, 601 P.2d 1369 (Colo. 1979).

**D.    All Relevant Witnesses and Evidence
         Are Accessible In New York**

New York is clearly the most convenient forum because the principals of all parties involved with the negotiation and renewal of the policies in issue are here. Similarly, given the Amax parent's presence in New York, lines of transport, communication and accommodation are available for any Amax controlled witnesses,

19

316

documents or other evidence not already present in New York. <u>See</u>
<u>Unigraphic, Inc.</u>, <u>supra</u>, 435 N.Y.S.2d at 20 (there were third-party
witnesses to be called and "New York, as the advertising center of
the country, is convenient for these witnesses"); and <u>Gulf Oil</u>
<u>Corp.</u>, <u>supra</u>, 330 U.S. at 508 (the availability of compulsory
process for unwilling witnesses and the cost of obtaining
attendance of willing witnesses is to be considered). Virtually
all of Amax's witnesses, Amax's broker representatives, and
Continental's witnesses to the insurance underwriting and claims
tendering transactions for the past 16 years are located in New
York, Connecticut or New Jersey. <u>See</u> Wassmer Aff. at ¶'s 2 and 7,
and Louis Aff. at ¶'s 2-4. With respect to witnesses and documents
regarding the sites at issue in the case, it could only be said
that such evidence is scattered throughout the country in states
such as Pennsylvania, Kentucky, South Carolina, Illinois, New
Jersey, Florida, Mississippi, New York, <u>et al.</u> <u>See</u> <u>infra</u> at 23-24
n.10. Compulsory process is available in New York against non-
party witnesses, such as Frenkel employees, and former Continental
employees, who participated in the insurance underwriting and
claims tendering tranactions. However, compulsory process is not
available in Colorado for these witnesses. The cost of obtaining
the attendance of willing witnesses in New York is minimal as
compared to the great expense and burden in obtaining the
attendance of these witnesses in Colorado.

For all of the foregoing reasons, New York is the most proper
and convenient forum within which to adjudicate this action for

317

declaratory judgment.    Newark Insurance Company v. Edo
Corporation, No. 25240/90, slip. op. at 2 (Sup. Ct. New York Co.
Feb. 4, 1991) (attached at Tab F).    In Edo, the Court correctly
held that the place of the contract is more central to a forum non
conveniens determination than the location of the environmental
claims.    The court stated:

> Defendant Edo devotes ample argument to the underlying
> claims of environmental violations and the witnesses who
> would be necessary as to those events; however, it must
> be remembered that while the environmental issues are
> underlying this case, this is an action about a contract
> of insurance between Newark and Edo and Aetna.

Similarly, various state and federal courts have recognized that
the state in which the contracts were created has a strong interest
in resolving disputes involving those contracts.    American Home
Products Corp. v. Adriatic Insurance Co., C.A. No. 91C-04-119, slip
op. at 15, Del. Super. Ct. (November 5, 1991) (granting motion to
dismiss for forum non conveniens, in part, because "New York has an
interest in resolving disputes involving contracts created in New
York and involving parties that are headquartered and do business
in New York") (copy attached at Tab G).[8]

---

[8] See, e.g., W.R. Grace & Co. v. Continental Casualty Co., 896
F.2d 865, 872 (5th Cir. 1990) (holding it an abuse of discretion
not to dismiss the claim where "the action was reduced to a dispute
between a New York company and its New York insurers, where the
governing law would be the law of New York"); W.R. Grace & Co. v.
Hartford Accident & Indemnity Co., 407 Mass. 572, 555 N.E.2d 214
(1990) (affirming dismissal for forum non conveniens where:
plaintiff was a Connecticut corporation with its principal place of
business in New York City; plaintiff's New York-based insurance
broker obtained coverage in New York from various insurers whose

21

318

**E.    Amax Has Mischaracterized The Contact**
**Which This Dispute Has With Colorado**

In an effort to lend credence to its contention that Colorado is more convenient than New York for the resolution of this dispute, Amax very shrewdly mischaracterizes the true nature of its dispute with Continental. Rather than discuss the 33 claims which premise Continental's complaint or the 22 claims which are the subject of its Colorado action, Amax only discusses four claims in its Motion to Dismiss. In addition, Amax uses different ways of comparing its potential liability in the four claims which it discusses, in order to purposefully inflate its estimation of liability for the Colorado claim. As discussed below, Amax's representations in its brief to this Court are not factually supported and moreover, are inconsistent with Amax's previous

offices were in New York; the subject insurance policies were negotiated, executed and delivered in New York; premiums were paid in New York; relevant insurance policies and other documents would likely be located in New York; and New York law governed the policies); Lac d'Amiante du Quebec, Ltee. v. California Union Ins. Co., No. W-17351-87E, N.J. Super. Ct. (November 3, 1988) (granting motion to dismiss for forum non conveniens where: insured's principal place of business, agent, and broker were all in New York; policies were negotiated by insured's broker in New York; the policies were issued in New York; key witnesses, i.e., those responsible for obtaining insurance coverage for plaintiff were not amenable to service in New Jersey, but they were in New York; and principal sources of non-testimonial proof, including insurance records, memoranda and correspondence were located in New York with parent corporation, insured's broker and agent, and the insurers) (copy attached at Tab H); Texas Eastern Transmission Corp. v. Fidelity and Casualty Co. of New York, No. W-30605-87, Transcript of Oral Opinion, N.J. Super. Ct. (March 17, 1988) (granting motion to dismiss for forum non conveniens where: insurance was negotiated and issued in Texas; there was ongoing litigation elsewhere prior to the commencement of the action; the vast majority of proofs, including documents about insurance and plaintiff's operations, was not in New Jersey; and Texas law would apply because it was the place of the contract) (copy attached at Tab I.)

22

· 319

representations to Continental that other claims were more serious than any in Colorado.

When Amax states that the claims against it at the Lowry Landfill "far exceed" the claims at the other sites, it is only comparing this claim to the other three claims discussed in its motion: Paco Terminals, San Diego, California; Hardage-Criner Landfill, Criner, Oklahoma; and Kin-Buc Landfill, Edison, New Jersey.  See Marucheau Aff. at ¶ 13.[9]  However, the dispute between Continental and Amax involves more than these four sites, in fact at least 18 other sites are involved. When compared to the amounts expended to date as related in Amax's own complaint in the Colorado action (copy attached at Tab D), it is clear that the Lowry Landfill claim does not "far exceed" all other claims for which coverage is sought from Continental and the other carriers.[10]

---

[9]  Amax also compares two different measures of damages – "anticipated expenditures" at Lowry versus "currently quantifiable costs" elsewhere.  See Marucheau Aff. at ¶ 12.

[10]  Amax states that the following costs have been incurred to date and are claims for which it seeks coverage:

1. Metcoa Plant, Pulaski, PA ($210,000 and counting)
2. Maxey Flats Landfill, Moorehead, KY ($10,000 and counting)
3. Bluff Road, Columbia, S.C. ($34,000 and counting).
4. N.L. Industries, Granite City, IL (no estimate provided)
5. Blackwell Zinc Smelter, Blackwell, OK ($218,000 and counting)
6. Amax Zinc Plant, Sauget, IL (estimates $700,000)
7. PMC, Inc. Site, Newark, NJ (estimates $550,000)
8. Brown Wood, Live Oak, FL ($936,000 and counting)
9. Sago case, Sauget, IL (no estimate provided)
10. Rawhide Village, Campbell Cty, WY ($1,000,000 and counting)
11. Cherokee Cty, KS ($200,000 and counting)
12. Dead Creek, Sauget, IL (no estimate)
13. Eagle-Picher Tailing, Sahuarita, AZ (estimates $100,000)
14. El Molino Mill, Pecos, NM ($486,000 and counting)
15. Pecos Mines Site, Pecos, NM ($140,000 and counting)

23

320

In addition, when Amax presented the claims in issue to Continental before the institution of this action, Amax represented that the site which posed the most serious potential for liability was the Paco Terminal in San Diego, California. See Kyle Aff. at ¶ 9. This is the opposite of what Amax now contends.[11]

Amax also contends that the United States Environmental Protection Agency ("the EPA") estimate of remediation cost associated with the Lowry Landfill has been as high as $4.5 billion. See Marucheau Aff. at ¶ 13. However, much more recently, the EPA has estimated the cleanup costs at Lowry Landfill to be $500 million, plus or minus one million, for which Amax would be responsible for only 4.34%. See Kyle Aff. at ¶ 8. Such current EPA estimates are regularly relied upon by courts and given much more credence than estimates by interested parties. See Associated Indemnity Corp. v. Fairchild Industries Inc., 90 Civ 4238, Opinion and Order at 10 (S.D.N.Y. August 23, 1991) (copy attached at Tab J).

---

16. Florham Park Plant, East Hanover, NJ (no estimate)
17. Port of Pascagoula, MS (no estimate)
18. Petrochem/Ekotek, Salt Lake City, UT (no estimate)

Amax does not state that these are the only claims for which it seeks coverage, rather it reserves its right to amend the Colorado Complaint to include future claims. Thus, although Amax has submitted claims to Continental for many other sites, including sites in New York, Amax has reserved the right to include these after the instant forum motion is decided.

[11] In Marucheau's affidavit, Amax states that its cost of cleaning up the Paco Terminal will be $300,000. Id. at ¶ 15. While exact figures for cleanup of this site remain unavailable, Amax represented to Continental that the cleanup costs could range between $2 million to $175 million, and that Amax would be responsible for 9.5% of the total cost based on an allocation of liability during settlement discussions between the responsible mining companies and the relevant authorities.

24

321

In addition to exaggerating the importance of the Colorado
site, the caselaw relied upon by Amax does not support its
contention that this action should proceed in Colorado rather than
New York. A review of these cases reveals that, unlike this action
they involved parties having little or no contact with New
York,[12] or involved far fewer sites or less diverse locations of
pollution contamination than are present in this case.[13]

---

[12] See, e.g., Flintkote Co. v. American Mutual Liability Ins.
Co., 103 A.D.2d 501, 505, 480 N.Y.S.2d 742, 746 (2nd Dep't 1984),
aff'd, 67 N.Y.2d 857, 501 N.Y.S.2d 662 (1987) ("New York contact
with the parties to the asbestos litigation and with the litigation
itself is comparatively small.  Neither Flintkote nor its primary
insurers are New York corporations nor do they have their principal
place of business in this State."); General Reinsurance Corp. v.
CIBA-Geigy Corp., 853 F.2d 78, 82 (2d Cir. 1988) ("many of the
insurance companies are incorporated or have their principal place
of business in New Jersey"); American Motorists Ins. Co. v. Philip
Carey Corp., 482 F.Supp 711, 716 (S.D.N.Y. 1980) ("New York State
has little or no contact with the parties or their litigation.");
Hertz Corp. v. Luken, 126 A.D.2d 446, 510 N.Y.S.2d 590 (1st Dep't
1987) (first-filed Florida action disregarded where Luken's only
basis for maintaining an action in Flordia was that it was his
residence); Avnet, Inc. v. Aetna Casualty & Surety Co., 160 A.D.2d
463, 554 N.Y.S.2d 134 (1st Dep't 1990) (the insurance carriers were
merely authorized to do business in New York); Aetna Casualty &
Surety Co. v. Champion Int'l Corp., No. 18054/90, slip op. at 15
(Sup. Ct. New York Co. Feb. 19, 1991) (most insurers called
California "home").

[13] See, e.g., General Ins. Co. of Trieste & Venice - U.S.
Branch v. Millenium III Real Estate Corp., No. 8248/91 (Sup. Ct.
New York Co. Aug. 14, 1991) (only one site which was located in
Texas); General Reinsurance Corp. v. CIBA-Geigy Corp., 853 F.2d 78,
81 (2d Cir. 1988) ("no claim involves New York sites or
operations"); Atlantic Mutual Ins. Co. v. Cadillac Fairview U.S.,
Inc., 125 A.D.2d 181, 508 N.Y.S.2d 445 (2nd Dep't 1986), leave to
appeal denied, 69 N.Y.2d 613, 517 N.Y.S.2d 1028 (1987) (only one
site which was located in California); Avnet, Inc. v. Aetna
Casualty & Surety Co., 160 A.D.2d 463, 554 N.Y.S.2d 134 (1st Dep't
1990) (only three sites).  See also G. Heileman Brewing Co. v.
Royal Group, Inc., 88 Civ 1041, 1991 WL 120366 (S.D.N.Y. June 21,
1991) (only one site located in Michigan).

25

322

**F.    Amax's Past Actions Confirm That New York Is
       The Most Convenient Forum for This Litigation**

Amax's contention that New York is an inconvenient forum is belied by its resort in the past to the New York courts to resolve contractual disputes involving claims for out-of-state environmental contamination.    See Amax Inc. v. Sohio Industrial Products Co., Complaint (Sup. Ct. New York Co.) (attached at Tab E).    In that case, Amax brought suit on behalf of one of its wholly-owned subsidiaries in the Supreme Court for New York County seeking contractual indemnification for the clean-up of out-of-state environmental contamination.    It thus appears that Amax's views about the convenience of the New York courts depends upon whether it is in Amax's interest to litigate in New York, rather than on well-founded assertions of inconvenience.

In sum, because New York has the most significant contacts with the parties and their dispute and New York law will apply to the insurance coverage dispute between the parties,   New York is the most convenient forum within which to conduct this litigation.

Accordingly, not only has Amax failed to meet its heavy burden to demonstrate that New York is an inconvenient forum, such that Continental's choice of forum should not be disturbed, it is obvious that New York is the single most convenient forum for resolution of this dispute.

**26**

323

## POINT III

**THIS ACTION WAS PROPERLY COMMENCED AND WILL AFFORD THE PARTIES COMPLETE RELIEF AND SHOULD NOT BE DISMISSED BECAUSE AMAX FILED ANOTHER ACTION SEVEN WEEKS LATER**

A.   This Action Was Properly Commenced Under The New York State Declaratory Judgment Act And There Has Been No Misalignment of the Parties

Amax's contention that it is improper for an insurer to sue an insured is not legally supportable. Under New York law, there is no such thing as a "functional defendant." See Amax's Motion to Dismiss at 10-11.

New York's declaratory judgment act, CPLR § 3001, is available to virtually all litigants, insurers and insureds alike. Morgenthau v. Erlbaum, 59 N.Y. 143, 147-48, 464 N.Y.S.2d 392, 395, cert. denied, 464 U.S. 993 (1983); New York Post Corp. v. Kelley, 296 N.Y. 178 (1947). The purpose of the New York Declaratory Judgment Act is to permit a party contemplating taking certain action, prior to a breach or violation occurring, to submit a genuine dispute to the courts to declare the rights and obligations of the parties so they may act accordingly. New York Public Interest Research Group v. Carey, 42 N.Y.2d 527, 530, 399 N.Y.S.2d 621, 623 (1977). This is precisely what Continental seeks to do in this action.

For Amax to suggest that the mere filing of a declaratory judgment action against an insured in the Supreme Court of New York should be grounds for dismissal is specious and plainly unsupported

27

324

by any relevant authority.[14]   It has well and long been the rule

in New York that, "[s]ince an assured may assert a cause of action

for a declaratory judgment action against an indemnity insurer ...

[there is] no basis for denying the same right to bring such a

motion to an indemnity insurer such as plaintiff."   General

Accident, Fire and Life Assurance Corp. v. Skow, 149 N.Y.S.2d 520,

521 (Sup. Ct. Queens Co. 1955).   See Siegel's Commentary to CPLR §

3001, C3001: 10, at p. 439 (a declaratory judgment action "may be

brought by the insurer or by the insured.")[15]

---

[14]  Amax cites several federal court cases, each involving the
federal Declaratory Judgment Act, 28 U.S.C. § 2201 - not the New
York Declaratory Judgment Act.   These cases rely on a basic premise
that, "[w]hen the federal action is one for declaratory judgment
the court is under no compulsion to exercise its jurisdiction."
Hartford Accident & Indemnity Co. v. Hop-On International Corp.,
568 F.Supp. 1569, 1571 (S.D.N.Y. 1983).   See also United States
Fidelity and Guaranty Co. v. Murphy Oil USA, Inc., No. 91-0283-B-M,
slip op. at 4 n. 2 (S.D.Ala. Nov. 14, 1991) (copy attached at Tab
K) ("In a declaratory judgment action, Congress gave the district
courts discretionary jurisdiction.")   In Continental Insurance
Companies v. Wickes Co., Inc., 90 Civ 8215, 1991 U.S. Dist. LEXIS
12426 (S.D.N.Y. Sept. 6, 1991), it was held that the mere filing of
such an action against an insured was a sufficient reason to
dismiss the case, on this premise that the decision to hear federal
declaratory judgment actions is discretionary.   This conception of
the federal Declaratory Judgment Act is foreign to New York
jurisprudence.   See, infra at 27 n. 15.   Another reason federal
declaratory judgment actions have been dismissed -in favor of
subsequently filed actions was that the subsequent actions were
filed in state court and the cases involved issues of state law.
See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460
U.S. 1, 23 n.29 (1983); and General Reinsurance Corp. v. CIBA-Geigy
Corp., 853 F.2d 78, 82 (2d Cir. 1988).   The Court is asked by Amax
to dismiss a first-filed New York state action for a Colorado state
action, so these cases, too, are irrelevant.

[15]  See also American Re-Insurance Co. v. SGB Universal
Builders Supply Inc. 141 Misc.2d 375, 532 N.Y.S.2d 712, 715 (Sup.
Ct. New York Co. 1988);   State Farm Fire and Casualty Co. v.
Wolford, 116 A.D.2d 1011, 498 N.Y.S.2d 631, 632 (4th Dep't 1986)
("[a] declaratory judgment action is an appropriate remedy where
resolution of the matter in dispute is determinative of the

28

325

Of the "numerous courts" to which Amax cites to support its position, only one is a New York State court opinion and it is so readily distinguishable from the instant case that it has no relevance whatever. Rokeby-Johnson v. Kentucky Agr. Energy Corp., 108 A.D.2d 336, 489 N.Y.S.2d 69 (1st Dep't 1985).   In Rokeby-Johnson, the Appellate Division First Department concluded that by filing an action against its insured, Underwriters at Lloyd's, London ("London") had breached the "service of suit" provision in its insurance contract.  The Court construed this "service of suit" clause as a forum selection clause which forbade London from filing the first action.  That Rokeby-Johnson should not be controlling in this action is clear because Continental's policies do not contain such a clause or any other language which may be interpreted as providing the insured with the right to choose the forum for litigation of coverage, and London has not filed this action — it is a defendant.

By asking this Court to forbid insurers from resorting to declaratory relief, Amax has in effect asked this Court to re-write

insurer's liability to defend and indemnify its insured for potential judgments."); Empire Mutual Insurance Co. v. McLaughlin, 35 A.D.2d 1074, 316 N.Y.S.2d 395, 397 (4th Dep't 1970); Allstate Insurance Co. v. Passick, 2 A.D.2d 391, 157 N.Y.S.2d 24, 25 (3d Dep't 1956) ("The question of coverage in a controversy between an insurer and an insured is a proper subject for a declaratory judgment."); Hartford Accident & Indemnity Co. v. Breen, 2 A.D.2d 271, 153 N.Y.S.2d 732, 735 (3d Dep't 1956) ("It seems hardly necessary to spend much time on this point for there are many cases where declaratory judgments have been granted in connection with the construction of policies of liability insurance where the same matter could have been pleaded as an affirmative defense if an action had been brought on the policy").

29

its contracts and make it a gift of a forum selection clause.
Forum selection clauses must be bargained for, and the parties have
not done so here. Accordingly, the Court should not "add or exise
terms, ... and thereby make a new contract for the parties under
the guise of interpreting the writing.'" Morlee Sales Corp. v.
Manufacturers Trust Co., 9 N.Y.2d 16, 210 N.Y.S.2d 516, 518 (1961)
(citation omitted).

Amax's assertion that the parties to this action are
"misaligned" is similarly unavailing. New York's liberal pleading
rules permit complete adjudication of disputes among parties to an
action irrespective of where their names appear in the caption.
Because all of Amax's relevant insurers are parties to this action,
and each may assert cross-claims, all coverage disputes can be
adjudicated in this action. The Insurance Company of North America
and the Home Insurance Company have already answered and cross-
claimed in this action.

Nor may Amax avoid complete adjudication among the parties in
the forum with the most significant contacts by reliance upon the
"service of suit" clause contained in some of its excess policies.
The "service of suit" clause referred to by Amax is contained in
the policies issued to Amax by London. However, this clause is not
a forum selection clause at all, it is a forum acceptance clause.
See W.R. Grace & Co. v. Hartford Accident & Indemnity Co., 407
Mass. 572, 582, 555 N.E.2d 214, 219 (1990) ("We reject any notion
that a service of suit clause should be read as an unchallengeable

30

327

authorization to forum shop.")[16] Moreover, it would be inequitable and unjust to have the terms of the excess policies bind the primary insurers whose policies do not contain those terms.[17]

### B. The First-Filed Rule Dictates That This Motion Be Denied

It is well-settled that for an action to qualify for dismissal, based on the pendency of another action, the other action must have been commenced first. GSL Enterprises, Inc. v. Citibank, N.A., 155 A.D.2d 247, 546 N.Y.S.2d 857 (1st Dep't 1989).[18] The purpose behind this rule, "is to preclude the

---

[16] Rokeby - Johnson, supra, 108 A.D.2d 336, 489 N.Y.S.2d 69, is distinguishable because it involved a suit by London as plaintiff; this is a suit by a primary carrier whose policies do not contain a "service of suit" clause. London did not sue Amax in this action, and there is no compelling reason why the other insurance companies, London included, cannot fully participate in this New York action after having been joined by Continental.

[17] The reason that excess policies contain "follow form" provisions is because "[e]xcess liability insurance is a low cost method of providing extended protection where primary (and secondary) insurance leaves off." American Re-Insurance Co. v. SGB Universal Builders Supply, Inc., 141 Misc.2d 375, 532 N.Y.S.2d 712, 715 (Sup. Ct. New York Co. 1988). Excess insurance is "last resort coverage, clearly purporting to be subordinate to every other type of insurance." State Farm Fire and Casualty Co. v. LiMauro, 103 A.D.2d 514, 481 N.Y.S.2d 90, 94 (2d Dep't 1984), aff'd, 65 N.Y.2d 369, 492 N.Y.S.2d 534 (1985).

[18] Accord, American Re-Insurance Co. v. SGB Builders Supply, Inc., 141 Misc.2d 375, 532 N.Y.S.2d 712 (Sup. Ct. New York Co. 1988); Matter of Wallach, 130 A.D.2d 495, 515 N.Y.S.2d 79 (2d Dep't 1987); J & B Schoenfeld, Fur Merchants, Inc. v. Albany Insurance Co., 109 A.D.2d 370, 492 N.Y.S.2d 38 (1st Dep't 1985); Michael v. S.H. Galleries, Ltd., 101 A.D.2d 755, 475 N.Y.S.2d 71 (1st Dep't 1984); Gorman v. Gorman, 92 A.D.2d 709, 460 N.Y.S.2d 629, 630 (3d Dep't 1983); Reliance Insurance Co. v. Tiger International, Inc., 91 A.D.2d 925, 457 N.Y.S.2d 813, 814 (1st Dep't 1983); John J.

31

328

possibility of conflicting results in various courts, which would only lead to chaos and confusion." E.B. Latham & Co. v. Mayflower Industries, 278 A.D. 90, 103 N.Y.S.2d 279, 284 (1st Dep't 1951).

The first-filed rule has particular significance in this case. Continental commenced this action against Amax on August 21, 1991 at a point when it appeared that further settlement negotiation with Amax would not be fruitful. On September 9, 1991, shortly before Amax's response was due in this action, upon Amax's request Continental agreed to extend the time in which Amax was to respond through and including October 10, 1991. Amax apparently requested this extension for the sole purpose of engaging in a forum shopping expedition, and on October 9, 1991, Amax filed this duplicative Colorado action and moved to dismiss this action. It is patently obvious that Amax commenced the Colorado action for the sole purpose of avoiding or at least delaying the adjudication of the disputes between the parties in the forum with the most significant contacts to this action -- New York.

Under these circumstances, where Amax is requesting that the Court employ its equitable discretion with unclean hands, the priority in time of Continental's action must not be disregarded. The priority rule should thus be followed where, as here, the relief sought in both actions is the same. See, e.g., GSL Enterprises, Inc., supra; American Re-Insurance Co., supra;

---

Campagna, Jr., Inc. v. Dune Alpin Farm Associates, 81 A.D.2d 633, 438 N.Y.S.2d 132, 133 (2d Dep't 1981).

32

329

Reliance Insurance Co., supra.[19]  The caselaw relied upon by Amax
is not to the contrary.[20]

Based upon the foregoing, this action should not be dismissed
in favor of an action commenced by Amax in Colorado seven weeks
after this action.  This is particularly so because this action was
properly commenced in New York – the forum with the most
significant contacts with the parties and their dispute – and where
all of the disputed issues between the relevant and necessary
parties can be resolved.

---

[19]While courts have noted that the first-filed rule should not
be applied in a tortured manner, deviation from that rule is
consistently limited to instances where actions were commenced very
close together in time or almost simultaneously, such that priority
was merely technical.  See, e.g., Hertz Corp. v. Luken, 126 A.D.2d
446, 510 N.Y.S.2d 590, 594 (1st Dep't 1987) (12 days – "virtually
simultaneous"); Seaboard Surety Co. v. Gillette Co., 75 A.D.2d 525,
426 N.Y.S.2d 762, 763 (1st Dep't 1980) (a couple of hours – "almost
simultaneously"); Nacional Financiera, S.A. v. Banco De Ponce, 85
N.Y.S.2d 277, 278 (Sup. Ct. New York Co. 1948) (same day), aff'd,
275 A.D. 832, 90 N.Y.S.2d 128 (1st Dep't 1949); Avery v. Title
Guarantee & Trust Co., 230 A.D. 519, 245 N.Y.S. 362, 364 (1st Dep't
1930) (same day).  In contrast, the seven week priority that
Continental's present action has over Amax's Colorado action is
hardly a mere technicality.  Continental did not win a race to the
courthouse; Amax could well have walked from New York to Colorado
in the seven weeks which followed Continental's commencement of
this action.

[20] Amax relies upon caselaw in which the second-filing party
was coerced either by a no-suit agreement or a temporary
restraining order and thus prevented from achieving a priority
filing – situations markedly different from the circumstances in
this case.  See, e.g., Flintkote Co. v. American Mutual Liability
Ins. Co., 103 A.D.2d 501, 505, 480 N.Y.S.2d 742, 745 (2nd Dep't
1984), aff'd, 67 N.Y.2d 857, 501 N.Y.S.2d 662 (1987); Great
American Ins. Co. v. Houston General Ins. Co., 735 F.Supp. 581, 586
(S.D.N.Y. 1990).

33

330

## CONCLUSION

For the foregoing reasons, Amax's motion should be denied in its entirety.

Respectfully submitted,

BOWER & GARDNER
110 East 59th Street
New York, New York 10022
(212) 751-2900

OF COUNSEL:

Allen L. Sheridan
BOWER & GARDNER

Lawrence E. Carr, Jr.
Margaret H. Warner
Catherine A. Hanrahan
Michael A. Kotula
CARR, GOODSON & LEE, P.C.
1919 Pennsylvania Avenue, N.W.
Suite 700
Washington, D.C.   20006
(202) 463-6063

331

AFFIDAVIT OF PAUL R. KOPFF, ESQ. ON BEHALF OF INA IN OPPOSITION TO
MOTION TO DISMISS OR STAY (Pages 331-334).

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

-------------------------------------------x
                                           :
THE CONTINENTAL INSURANCE COMPANY          :
                                           :
                    Plaintiff,             :       Index No. 19737/91
                                           :
                                           :       Hon. Peter Tom
       -against-                           :
                                           :       AFFIDAVIT OF PAUL
AMAX, INC., INSURANCE COMPANY OF           :       R. KOEPFF
NORTH AMERICA, THE HOME INSURANCE          :
COMPANY, and UNDERWRITERS AT               :
LLOYD'S LONDON,                            :
                                           :
                    Defendants.            :
                                           :
-------------------------------------------x

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

        PAUL R. KOEPFF, being duly sworn, deposes and says:

        1.  I am a member of the bar of the State of New York and

the firm of Mudge Rose Guthrie Alexander & Ferdon, counsel for

defendant Insurance Company of North America ("INA"), sued herein

as the alleged successor in interest to Indemnity Insurance Company

of North America ("IINA") and in its own capacity.  This affidavit

is submitted in opposition to the motion of AMAX, Inc. ("Amax") to

dismiss this coverage action on the ground of forum nonconveniens.[1]

        2.  This affidavit is based upon documents and other

information provided to me by INA.  This affidavit is also based

_____

        [1] INA joins in the legal arguments submitted by Continental
Insurance Company in opposition to the motion to dismiss this
coverage litigation.

NYPKPORU.AFF

upon the INA insurance policies at issue in this coverage litiga-
tion and the underwriting files for those policies.

3.   As explained in greater detail below, Amax's motion
should be denied.   This action has a substantial nexus with New
York, and not with the State of Colorado.   The Continental
Insurance Company ("Continental") originally commenced this
litigation in New York on or about August 21, 1991.   The IINA and
INA policies allegedly issued to Amax and/or its predecessors or
affiliated companies are New York contracts, and New York has a
strong interest in protecting New York contracts.   In any event,
none of the IINA or INA policies are Colorado contracts.

The Prior Coverage Litigation In New York

4.   Continental instituted this coverage litigation on
August 21, 1991; it filed the action in the Supreme Court of the
State of New York, County of New York.   On or about October 21,
1991, Continental filed in the same court an amended complaint
adding as defendants INA, The Home Insurance Company, and
Underwriters at Lloyd's London.   INA has answered the amended
complaint and has asserted cross-claims against Amax and counter-
claims.   Thus, a comprehensive declaratory judgment action,
originally filed in New York in August 1991, is now pending before
this Court, and all parties have a convenient forum for the
resolution of this dispute.

The IINA And INA Policies Are New York Contracts

5.   Amax seeks coverage under one alleged primary policy
issued to it and/or its predecessors or affiliated companies by
IINA (LB 29061), and six alleged primary policies issued by INA (LB

29077, LB 39736, ALB 47168, ALB 47212, ALB 47240 and ALB 47279).
These are New York insurance contracts; they were issued and
delivered in New York. Amax's insurance broker was Frenkel & Co.
Inc., which was and is located in New York, New York.

<u>No Contacts With Colorado</u>

6. There are other reasons why New York is the most
appropriate forum to litigate this dispute and why Colorado is an
inappropriate and improper forum. The alleged IINA and INA
policies are not Colorado contracts. Upon information and belief,
no negotiations over the policies took place in Colorado. Upon
information and belief, no Colorado office of IINA or INA was
involved in the underwriting, issuance or delivery of any policy
issued to Amax or any of the environmental claims at issue in this
action for which IINA and INA allegedly provided coverage.

The Convenience Of The Parties And
<u>Witnesses Favor The New York Action</u>

7. New York is the most convenient location for this
litigation. Witnesses are employed by Amax at its New York
headquarters, and the witnesses for the insurers are employed in
the New York metropolitan area. Moreover, Amax's corporate and
other records presumably are located at its New York headquarters.
Similarly, the records associated with the carriers' New York
witnesses also presumably are located in New York. Simply stated,
no other forum is as centrally located or as convenient.[2]

---

[2] New York is also the most convenient forum for out of town
witnesses who would enjoy the benefit of a major metropolitan area
and international transportation center.

334

Based upon the foregoing, it is clear that no other forum's interests in the litigation is sufficient to overcome the deference accorded Continental's choice of New York as the forum for this litigation, and thus, Amax's motion should be denied.

_____
PAUL R. KOEPFF

Sworn to and subscribed to
before me this _7th_ day of
December, 1991.

_____
Notary Public

THOMAS E. BOHAN
Notary Public, State of New York
No. 03-4995119
Qualified in Bronx County
Commission Expires Aug. 5, 19_93_