UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
CENTURY INDEMNITY COMPANY, AS : 
SUCCESSOR TO CCI INSURANCE :
COMPANY, AS SUCCESSOR TO : Index No. 08 Civ. 02012 (PKL)
INSURANCE COMPANY OF NORTH :
AMERICA and THE CONTINENTAL :
INSURANCE COMPANY, :
: **AFFIDAVIT OF**
: **VICTORIA BELLAMY**
                  Plaintiffs, :
:
              v. :
:
FREEPORT-MCMORAN COPPER & GOLD :
INC., AS THE CLAIMED SUCCESSOR TO :
PHELPS DODGE CORPORATION, AS THE :
CLAIMED SUCCESSOR TO CYPRUS :
AMAX MINERALS COMPANY, AS THE :
CLAIMED SUCCESSOR TO AMAX, INC., :
AS SUCCESSOR TO AMERICAN METAL :
CLIMAX, INC., :
:
              Defendant. :
:
-----------------------------------------------------------x

State of Arizona        )
                        )ss
County of Maricopa      )

      VICTORIA BELLAMY, being duly sworn, deposes and states as follows:

      1.  I submit this Affidavit in support of the motion to dismiss by Freeport-McMoRan Copper & Gold Inc. ("Freeport").  Unless stated upon information and belief, I have personal knowledge of the facts stated herein and affirm that such statements of fact are true and correct to the best of my knowledge.

2. I am employed by Freeport as the Manager, Risk Programs. I have held this position at Freeport since March 2007 at an office located in Phoenix, Arizona. From 1990 to 2007, I worked in the Risk Management Department at Phelps Dodge Corporation ("Phelps Dodge").

3. In my current position, I am responsible for historic insurance coverage issued to or for the benefit of Freeport's corporate subsidiaries and predecessors, including Cyprus Amax Minerals Company ("Cyprus Amax") and Amax Metals Recovery, Inc. ("AMRI").

4. I am in possession of at least the following liability insurance policies issued by The Continental Insurance Company ("Continental") to AMAX Inc. and AMRI or their corporate predecessors (collectively, the "Continental Insurance Policies"):

   a. Policy No. L 3 32 08 62, effective January 1, 1975 to January 1, 1976;

   b. Policy No. L 3 61 88 26, effective January 1, 1976 to January 1, 1977;

   c. Policy No. L 1 18 43 28, effective January 1, 1977 to January 1, 1980;

   d. Policy No. SRL 3 63 59 13, effective January 1, 1980 to January 1, 1981;

   e. Policy No. SRL 3 63 60 99, effective January 1, 1981 to January 1, 1982;

   f. Policy No. SRL 3 63 62 91, effective January 1, 1982 to January 1, 1983;

   g. Policy No. SRL 3 63 66 77, effective January 1, 1983 to January 1, 1984;

   h. Policy No. SRL 3 63 68 59, effective January 1, 1984 to January 1, 1985;

   i. Policy No. SRL 3 34 44 12, effective January 1, 1985 to January 1, 1986;

   j. Policy No. SRL 3 34 74 18, effective January 1, 1986 to April 1, 1986.

5. With the assistance of counsel, I have confirmed that the aforementioned policies issued by Continental all include a Schedule A which includes as a Named Insured either "Amax Nickel Refining Co., Inc" or "AMAX Inc. and any Subsidiary, Affiliated or Related Company and any other Company coming under the Named Insured's control of which it assumes active Management." With the same assistance, I have confirmed that none of the aforementioned policies contain choice of forum or choice of law provisions.

6. I am in possession of at least the following liability insurance policies issued by Insurance Company of North America ("Century") to AMAX Inc. and AMRI or their corporate predecessors (collectively, the "Century Policies"):

    a.    Policy No. LB 39736, effective January 1, 1965 to January 1, 1968;
    b.    Policy No. ALB 47618, effective January 1, 1968 to January 1, 1971;
    c.    Policy No. ALB 47212, effective January 1, 1971 to January 1, 1972;
    d.    Policy No. ALB 47240, effective January 1, 1972 to January 1, 1974;
    e.    Policy No. ALB 47276, effective January 1, 1974 to January 1, 1975;
    f.    Policy No. ALB 47279, effective January 30, 1974 to January 1, 1975.

7. With the assistance of counsel, I have confirmed that the aforementioned policies issued by Century all include the following definition: "Named Insured" means the person or organization named in the declarations of this policy and shall include any of its subsidiaries and any other company of which it assumes active management." With the same assistance, I have confirmed that none of the aforementioned policies contain choice of forum or choice of law provisions.

8. Freeport had no involvement in purchasing the Continental Policies or the Century Policies, which on information and belief were purchased by Cyprus Amax or its subsidiaries and predecessors in or about 1965-1975 (Century) and 1975-1986 (Continental).

9. Lawsuits seeking damages against AMRI (the "AMRI Actions") for alleged bodily

injury related to AMRI's historic operations currently are pending in the State of Louisiana.

10. There is no allegation by any plaintiff in any of the AMRI actions that Freeport is responsible for alleged harms arising out of AMRI's operations nor is Freeport on notice of any potential claims against it relating to AMRI's historic operations.

11. Freeport has not and is not making a claim of any kind under the Continental and Century policies for any of the claims asserted against AMRI or the related document review at the center of this litigation.

12. Continental and Century each began to pay defense costs related to the AMRI Actions beginning in approximately mid-2004.

13. Continental and Century initially made payments toward the costs incurred by Cyprus Amax and AMRI related to the review of Cyprus Amax documents at the center of this litigation. However, Continental and Century eventually stopped making such payments.

14. Once it became clear that Continental and Century were unwilling to continue paying the costs of the document review at issue, discussions with the insurers were initiated in an effort to resolve the matter outside of court.

15. On December 6, 2007, I traveled to Philadelphia to meet with principals from CNA, the parent of Continental, and Resolute Management, a claims management company acting on behalf of Century

16. On December 21, 2007, insurers were provided information requested at the December 6 meeting and were requested by letter to provide "your written commitment to participate in the Cyprus Amax review project no later than 5:00 PM EST on January 31, 2008."

17. On January 11, 2007, Resolute Management (on behalf of Century) sent a letter stating that the information provided to date was "insufficient for us to make a decision

4

regarding our commitment to this project at this time" and requested the opportunity to tour the document review facility in Arizona on January 31, 2008.

18. On January 14, 2008, CNA sent a later stating, "CNA is currently in the process of reviewing all of the information at its disposal with regard to this project ... and will continue to do so ... it is simply not feasible to relay our position at present."

19. We agreed to Century's request, and on January 31, 2008, Century and CNA both sent representatives to Arizona to tour the facility where the document review was ongoing.

20. On February 28, 2008, without warning and to Freeport's complete surprise, Continental and Century filed this lawsuit in lieu of providing a commitment or other response as part of the pending claim discussion.



_____
Victoria Bellamy

Sworn to before me this 22
day of May, 2008

_____
Notary Public