# EXHIBIT 5

AFFIDAVIT OF ALAN P. JACOBUS IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO FREEPORT-MCMORAN COPPER AND GOLD INC.'S MOTION TO DISMISS OR STAY THIS ACTION

*CENTURY INDEM. CO. V. FREEPORT-MCMORAN COPPER & GOLD INC.*

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK NO.:  08 CV 02012 (PKL)

# *Enviro-Tox Loss Services, Inc.*

*2421 Callender Rd. Suite 123*
*Mansfield, TX 76063*
*www.etls.net*

*Larry Poling and Joseph Peters*
*Phone: 817-561-9675*
*Fax: 817-561-9678*
*P.O. Box 172859*
*Arlington, TX 76017*

*Gene Waymon*
*Phone: 508-746-3190*
*Fax: 508-746-4247*
*P.O. Box 3253*
*Plymouth, MA 02361*

December 21, 2007

Margo Dedeyan
Claims Specialist
Resolute Management, Inc.
Mid-Atlantic Division
United Plaza-Suite 700
30 South 17th Street
Philadelphia, Pa   19103

Certified Mail, Return Receipt Requested
7006 0100 0002 2199 9796

Robert Galardi
Claim Specialist
CNA
Law Department
Environmental & Mass Tort Claims
Cranbury Executive Center
1249 South River Road, Suite 300
Cranbury, NJ   08512

Certified Mail, Return Receipt Requested
7006 0100 0002 2199 9789

Re:  Freeport-McMoRan Copper & Gold Inc. Document Review Project (Revlon Project)

Dear Ms. Dedeyan and Mr. Galardi:

Thank you for meeting with us on December 6, 2007 in Philadelphia. At the meeting Freeport-McMoRan Copper & Gold Inc. (FCX) agreed to provide the additional information you requested concerning the review of Cyprus Amax Minerals Company (Cyprus Amax) documents currently housed at the former Revlon facility in Phoenix, Arizona (Revlon).  In accordance with that agreement, enclosed are the following:

- *Revlon Building Floor Plan*
- Agreement for Payment of Revlon Building Lease
- Revised Case List
- Case-specific pro-rata sheets of each Cyprus Amax case on the revised case list
- Email from counsel regarding  the inactive Ohio cases
- Contact List for silica cases insurers
- FCX Insurance Program Chart

The following additional items will be forwarded to you under separate cover:

Page 2
December 21, 2007
Peters to CNA and INA

- Quarterly status reports both on how litigation is going and the status of the document review project for quarter ending December 31, 2007
- Budget for Louisiana litigation (range)

## Project Overview

The Revlon Project was started in April 2005 with the discovery of various pockets of stored documents at various locations through the company. The subsequent discovery of Cyprus Amax documents that had been previously marked for destruction by Cyprus Amax prior to the merger between Cyprus Amax and Phelps Dodge Corporation in December 1999 caused concern that our prior responses to discovery requests may have been flawed. As a result of this discovery, we proceeded to review the document indexes for storage boxes received from Cyprus Amax we received and found an almost 50% error rate. At that time, it was determined that a comprehensive review should be undertaken; so these boxes were included in the Revlon Project.

## Project Details

| | |
|---|---|
| Date Commenced: | April 2005 |
| Total Leased Space (square feet): | 216,300 |
| Lease Costs per Square Foot: | Varies (from $0.72 to $.081) |
| Total Number of Boxes: | 62,712 |
| Reviewing Counsel: | Ryley Carlock, & Applewhite |
| Rate of Review per Month: | 2,000 boxes |
| Estimated Projected Completion: | Summer 2008 |

## Cyprus Amax Document Review

| | |
|---|---|
| Date Commenced: | February 2007 |
| Total Number of Cyprus Amax Boxes: | 23,425 (all collections) |
| Estimated Cyprus Amax Review Cost: | $7.8 mil |
| Total Billed to Date for Cyprus Amax: | $3.9 mil |
| Estimated Remaining Review Cost: | $3.9 mil |

## Cyprus Amax Document Review Justification

There are a number of Amax asbestos and Cyprus clay, talc and silica cases presently in litigation. In each of these cases, discovery has been propounded to the defendants by the plaintiffs. Though these discovery requests may have been previously answered by Cyprus Amax, a continuing obligation exists for Cyprus Amax to examine any newly discovered documents to determine if material relevant to ongoing litigation is contained and, if need be, to supplement their responses to discovery. This obligation is the direct purpose of the Cyprus Amax document review and the sole reason that Cyprus Amax insurers are being asked to participate in the payment of this portion of the Revlon Project. The document review, entry into the database and scanning is being conducted on the first floor of Building B-1 of the former Revlon facility (a copy of the floor plan is included in this package.) There are approximately 18,000 Cyprus Amax boxes that have commingled corporate records from both Cyprus Minerals Company and Amax Inc. are currently being reviewed at the Revlon facility. The review of the other Cyprus Amax collections have been completed and were not charged to the Cyprus Amax insurers. Thus far, roughly 41% to 46% of the boxes reviewed contain information pertaining to and potentially responsive to Cyprus Amax asbestos, silica, and talc litigation.

## Selection of Active Cases

Cases for allocation of the Cyprus Amax document review costs were selected based on whether the case was active and an ongoing discovery obligation existed. The enclosed case list shows the open and active Cyprus Amax cases. As previously discussed, the original list was in error as it contained a number of cases that had previously been resolved. That revised case list will be

Page 3
December 21, 2007
Peters to CNA and INA

used on a going forward basis. As new cases are filed, the list will be modified to include the new cases. Similarly, as cases are resolved, the list will be modified to omit the resolved cases.

**Correction of Prior Invoices**

To date, the Cyprus Amax insurers have been billed $3,852,771.63 (Amax Louisiana asbestos $3,105, 173.61; Cyprus clay, talc and silica $747,598.02). Because of the error noted above, the allocation of these costs will have to be adjusted. We have also included a breakdown of the percentages owed by each insurer as well as Freeport's share. We are unable to share the cost allocation on the silica cases because the percentages are part of a confidential cost sharing agreement. We have included a contact list for these insurers for your convenience.

In summary, your insured has undertaken a review of the Cyprus Amax boxes in order to comply with its ongoing discovery obligations on active cases in which you are participating in the defense. This review is part of that defense and, as such, your insured fully expects you to participate in this project. At this point, your insured has been paying a large share of legal expenses associated with its discovery obligation which rightfully should be paid by you. Therefore, please provide your written commitment to participate in the Cyprus Amax review project no later than 5:00 PM EST on January 15, 2008. Furthermore, the insured requests that your reimbursement payments begin no later than 5:00 PM EST on January 31, 2008.

I thank you in advance for your time and attention to this matter and I look forward to receiving your response at your earliest possible convenience.

Very truly yours,

Joseph A. Peters
Vice-President
Enviro-Tox Loss Services, Inc.

# EXHIBIT 6

AFFIDAVIT OF ALAN P. JACOBUS IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO FREEPORT-MCMORAN COPPER AND GOLD INC.'S MOTION TO DISMISS OR STAY THIS ACTION

*CENTURY INDEM. CO. v. FREEPORT-MCMORAN COPPER & GOLD INC.*

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK NO.: 08 CV 02012 (PKL)

STEVEN B. BITTER
SBITTER@GORDONREES.COM
DIRECT DIAL: (619) 230-7770

# GORDON & REES LLP

ATTORNEYS AT LAW
101 W. BROADWAY, SUITE 2000
SAN DIEGO, CA 92101
PHONE: (619) 696-6700
FAX: (619) 696-7124
WWW.GORDONREES.COM

May 13, 2008

**VIA EMAIL AND U.S. MAIL**

Mark J. Plumer, Esq.
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C. 20036-3001

Lisa M. Cirando, Esq.
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY 10036-6524

|  | | |
|---|---|---|
| Re: | Companies: | Truck Insurance Company |
|  |  | Fireman's Fund Insurance Company |
|  |  | Old Republic Insurance Company |
|  |  | CNA Insurance Company |
|  | Insured: | Cyprus Mines Corporation |
|  | Policy Nos.: | Various |
|  | Re: | Talc Litigation |

Dear Mr. Plumer and Ms. Cirando:

On behalf of Truck Insurance Company, Fireman's Fund Insurance Company, Old Republic Insurance Company and Continental Casualty Insurance Company (collectively referred to herein as the "Cyprus Mines Insurers"), this correspondence responds to Mr. Plumer's May 6, 2008, letter with respect to an intent to disclose portions of the Cyprus Confidential Settlement Agreement for Defense and Indemnification for Certain Bodily Injury Claims (the "Agreement"), and also responds to Ms. Cirando's letter of the same date with respect to the proposed deposition of Bobby J. Medlin.

1.    The Proposed Disclosure of the Agreement By Cyprus Amax Minerals Company ("Cyprus Amax"). The Cyprus Mines Insurers object to the proposed disclosure by Cyprus Amax or all or any portion of the Agreement at this time. The Cyprus Mines Insurers believe that Cyprus Amax has not complied in good faith with the terms and conditions of the

Mark J. Plumer, Esq.
Lisa M. Cirando, Esq.
May 13, 2008
Page 2

Agreement with respect to mediation (Section IX), and that Cyprus Amax has no present need to disclosure all or any portion of the Agreement.

As we have previously discussed with you, both the letter and spirit of the Agreement compel the parties to submit their disputes as to the interpretation or enforcement of the Agreement *prior* to the initiation of any action based on that Agreement. The mediation requirement unquestionably serves multiple purposes. First, it is a recognition by the parties that mediation of insurance coverage/fee disputes is a potentially effective, expedient and efficient means of resolving disputes among the parties without incurring the exorbitant costs associated with protracted litigation. Second, and related to the first point, the mediation requirement is a recognition by the parties that, given the statistical success of the mediation process, requiring the parties to first submit their disputes to mediation is a means to resolve disputes without placing the confidential terms of the Agreement into the public domain. In other words, the parties can maintain the confidentiality of the Agreement during the mediation process, as opposed to a limited, if not full, disclosure of the terms of the Agreement in litigation.

For at least these reasons, the scheduling and completion of a mediation is a necessary condition precedent to the commencement of litigation. To that end, the Cyprus Mines Insurers again confirm their agreement to participate in a mediation on the terms and conditions set forth in our May 2, 2008, letter.

The Cyprus Mines Insurers understand that Cyprus Amax and you have refused to proceed with a mediation to be scheduled on dates and terms mutually acceptable to both Cyprus Amax and the Cyprus Mines Insurers, principally on the grounds that Cyprus Amax is required to file its coverage lawsuit in California in order to bolster its position in the New York federal action. However, as set forth in your letter of May 6, 2008, Cyprus Amax has now admitted that it has no present, legitimate need to commence litigation against the Cyprus Mines Insurers at this time, as Cyprus Amax will be advising the District Court in New York only of a lawsuit to be filed at some time in the future. Accordingly, it is clear to me that Cyprus Amax and you necessarily concede that although the filing of the lawsuit in California may assist Cyprus Amax in moving to dismiss the New York Action, litigation in California certainly is not a condition precedent to seeking relief in New York.

For these reasons, the Cyprus Mines Insurers object to the intended disclosure of any of the terms of the Agreement. Alternatively, and only if for some reason Cyprus Amax proceeds to commence litigation in California without first exhausting the mediation requirement, Cyprus Amax must file a Complaint without disclosing any of the material terms of the Agreement. Please provide us with the provisions of the Agreement you propose to reveal in advance of disclosure. In that event, the Cyprus Mines Insurers would agree that Cyprus Amax can and will file an Amended Complaint as appropriate following resolution of the issue in New York.

2.    The Proposed Deposition of Bobby J. Medlin. At present, the Cyprus Mines Insurers qualifiedly object to the proposed deposition on the grounds that insufficient information as to Mr. Medlin's medical condition has been provided to permit the Cyprus Mines Insurers, its counsel, and a Court, to make an informed decision as to whether a preservation

Mark J. Plumer, Esq.
Lisa M. Cirando, Esq.
May 13, 2008
Page 3

deposition is appropriate at this time. The Cyprus Mines Insurers and its counsel are entitled to additional information as to Mr. Medlin's condition, including current and future treatments (and the timing of same) and his short and long term prognosis.

Assuming that information is provided, and further assuming that the information confirms that a preservation deposition is appropriate at this time, the Cyprus Mines Insurers would consent to that deposition on terms and conditions similar to those set forth in Mr. Jacobus' letter of May 13, 2008. More specifically, the Cyprus Mines Insurers would agree to the proposed deposition on the following terms and conditions:

a.  Cyprus Amax will meet and confer with the Cyprus Mines Insurers and other interested parties as to a mutually convenient date for the deposition. On a related point, please be advised that May 20, 2008, is not an acceptable date for the deposition.

b.  Cyprus Amax and all related parties, including but not necessarily limited to Freeport-McMoRan Copper and Gold, Inc., Phelps Dodge Corporation, Amax, Inc. and American Metal Climax, Inc. will produce all of the following documents at least ten (10) days in advance of the deposition:

(i)  All documents previously requested by the Cyprus Mines Insurers, including but not limited to those identified most recently in our letter of April 16, 2008;

(ii)  All documents that relate to the project from its inception in 2005 to the present, including all budgets, projections, reports, correspondence, bids and leases; and

(iii)  A privilege log with sufficient particularity to permit the Cyprus Mines Insurers to assess any assertion of privilege of any document withheld from the production.

If, for any reason, these terms and conditions are not acceptable to Cyprus Amax, we remain willing and available to further meet and confer with you.

Very truly yours,

Steven B. Bitter

cc:  Gary J. Lorch, Esq.
     Jerry Pizzo, Truck Insurance Exchange (via electronic mail)
     Amanda Webber, Fireman's Fund Insurance Company (via electronic mail)
     Jeff Emory, Old Republic Insurance Company (via electronic mail)
     John Kotte, CNA Insurance Company (via electronic mail)

# EXHIBIT 7

AFFIDAVIT OF ALAN P. JACOBUS IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO FREEPORT-MCMORAN COPPER AND GOLD INC.'S MOTION TO DISMISS OR STAY THIS ACTION

CENTURY INDEM. CO. V. FREEPORT-MCMORAN COPPER & GOLD INC.

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK NO.: 08 CV 02012 (PKL)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CENTURY INDEMNITY COMPANY, AS
SUCCESSOR TO CCI INSURANCE
COMPANY, AS SUCCESSOR TO
INSURANCE COMPANY OF NORTH
AMERICA and THE CONTINENTAL
INSURANCE COMPANY

           Plaintiffs,

versus

FREEPORT-MCMORAN COPPER &
GOLD INC., AS THE CLAIMED
SUCCESSOR TO PHELPS DODGE
CORPORATION, AS THE CLAIMED
SUCCESSOR TO CYPRUS AMAX
MINERALS COMPANY, AS THE
CLAIMED SUCCESSOR TO AMAX,
INC. AND AMAX METALS RECOVERY,
INC., AS SUCCESSOR TO AMERICAN
METAL CLIMAX, INC.

           Defendant.

JURY TRIAL DEMANDED

**FIRST AMENDED COMPLAINT**

CIVIL ACTION NO. 08 CV 02012

**ELECTRONICALLY FILED
DOCUMENT**

## COMPLAINT

Plaintiffs Century Indemnity Company (as successor to CCI Insurance Company, as

successor to Insurance Company of North America) ("Century") and The Continental Insurance

Company ("Continental") invoke the jurisdiction of this court pursuant to 28 U.S.C.A. § 1332

(diversity of citizenship) and plead as their complaint against defendant Freeport-McMoRan

Copper and Gold Inc., as the claimed successor to Phelps Dodge Corporation, as the claimed

successor to Cyprus Amax Minerals Company, as the claimed successor to Amax, Inc., as

successor to American Metal Climax, Inc. ("Freeport McMoRan") as follows:

### INTRODUCTION

1.       In this insurance coverage action, Century and Continental seek a declaratory judgment that the liability insurance policies Century and Continental issued to Amax, Inc. and/or American Metal Climax, Inc. (collectively, "Amax") provide no insurance coverage for the costs Freeport-McMoRan claims it has incurred and continues to incur in its effort to assimilate the corporate records of Amax into Freeport-McMoRan's own corporate records (the "Corporate Records Assimilation Project"). Century and Continental also seek a declaration of all rights and obligations between the parties under the insurance policies issued by Century and Continental to Freeport-McMoRan with respect to the underlying Louisiana Litigation (defined below). Century and Continental further seek to recover on the basis of unjust enrichment any past payments made by Century and Continental based on false and/or misleading information provided by Freeport-McMoRan in connection with the Louisiana Litigation, and any payments that were made by Century and Continental for uncovered defense costs submitted by Freeport-McMoRan, which unjustly enrich Freeport-McMoRan. Finally, Continental seeks to recover damages for Freeport-McMoRan's fraudulent misrepresentations with respect to the Corporate Records Assimilation Project.

### THE PARTIES

2.       Plaintiff Century is a corporation that is incorporated in the Commonwealth of Pennsylvania and whose principal place of business is in Philadelphia, Pennsylvania. Century, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Pennsylvania.

3.       Plaintiff Continental is a corporation that is incorporated in the Commonwealth of Pennsylvania and whose principal place of business is in Chicago, Illinois. Continental, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Pennsylvania and Illinois.

-2-

4.    Defendant Freeport-McMoRan is a corporation that is incorporated in the State of Delaware and whose principal place of business is in New Orleans, Louisiana. Freeport-McMoRan, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Delaware and Louisiana.

### AMOUNT IN CONTROVERSY

5.    Freeport-McMoRan claims it has incurred $3,900,000 through December 2007 and that it will incur a total of $7,800,000 by year-end 2008 for the Corporate Records Assimilation Project. The parties dispute whether (a) Freeport-McMoRan is entitled to coverage under the policies that Century and Continental issued to Amax, and (b) even if Freeport-McMoRan is entitled to coverage, whether Century and Continental are responsible for these costs. Freeport-McMoRan further claims that it is entitled to reimbursement of defense costs incurred in connection with the Louisiana Litigation. Although Century and Continental have in the past paid amounts purported to be their proportionate and equitable share of covered reasonable and necessary defense costs, Century and Continental dispute the amount claimed by Freeport-McMoRan.

### JURISDICTION

6.    Jurisdiction is proper in this court under 28 U.S.C.A. § 1332 (diversity of citizenship) because this is a civil action between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### VENUE

7.    Venue is proper in this court under 28 U.S.C.A. § 1391 (a) and 28 U.S.C.A. § 1391 (c) because Freeport-McMoRan is a defendant corporation that resides in this judicial district because it is subject to personal jurisdiction in this district at the date of commencement of this action.

-3-

8.      Venue is further proper in this court under 28 U.S.C.A. § 1391 (a) and 28 U.S.C.A. § 1391 (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### STATEMENT OF CENTURY'S AND CONTINENTAL'S CLAIM

9.      On January 1, 1958, Climax Molybdenum Company merged with American Metals Company to form American Metal Climax, Inc.

10.     On or after January 1, 1975, American Metal Climax, Inc. became Amax, Inc.

11.     On or around November 15, 1993, Amax, Inc. merged with Cyprus Minerals Company to form Cyprus Amax Minerals Company.

12.     On December 2, 1999, Phelps Dodge Corporation acquired Cyprus Amax Minerals Company.

13.     Amax Minerals Recovery, Inc. ("AMRI") is a wholly owned subsidiary of Cyprus Amax Minerals Company.

14.     On March 19, 2007, Freeport-McMoRan acquired Phelps Dodge Corporation.

15.     Century issued the following liability insurance policies to Amax, which at the time of issuance, had its principal place of business located in New York, New York:

(a)     Policy No. LB 39736 for the January 1, 1965 to January 1, 1968 policy period;

(b)     Policy No. ALB 47168 for the January 1, 1968 to January 1, 1971 policy period;

(c)     Policy No. ALB 47212 for the January 1, 1971 to January 1, 1972 policy period;

-4-

(d)     Policy No. ALB 47240 for the January 1, 1972 to January 1, 1974 policy period;

(e)     Policy No. ALB 47276 for the January 1, 1974 to January 1, 1975 policy period; and

(f)     Policy No. ALB 47279 for the January 30, 1974 to January 1, 1975 policy period.

16.     Continental issued the following primary, occurrence-based, liability insurance policies to Amax, which at the time of issuance of at least the first policy at issue, had its principal place of business located in New York, New York:

(a)     Policy No. L-3 32 08 62 for the January 1, 1975 to January 1, 1976 policy period;

(b)     Policy No. L-3 61 88 26 for the January 1, 1976 to January 1, 1977 policy period;

(c)     Policy No. L 1 18 43 28 for the January 1, 1977 to January 1, 1980 policy period;

(d)     Policy No. SRL-3 63 59 13 for the January 1, 1980 to January 1, 1981 policy period;

(e)     Policy No. SRL 3 63 60 99 for the January 1, 1981 to January 1, 1982 policy period;

(f)     Policy No. SRL 3 63 62 91 for the January 1, 1982 to January 1, 1983 policy period;

(g)     Policy No. SRL 3 63 66 77 for the January 1, 1983 to January 1, 1984 policy period;

-5-

(h)     Policy No. SRL 3 63 68 59 for the January 1, 1984 to January 1, 1985 policy period;

(i)     Policy No. SRL 3 34 44 12 for the January 1, 1985 to January 1, 1986 policy period;

(j)     Policy No. SRL 3 34 74 18 for the January 1, 1986 to April 1, 1986 policy period.

### ALLOCATION OF PAST COSTS AND OTHER ORDINARY BUSINESS EXPENSES

17.     AMRI, a wholly owned subsidiary of Freeport-McMoRan, has been sued by underlying claimants in connection with alleged asbestos exposure at its former facility in Braithwaite, Louisiana (the "Louisiana Litigation").

18.     AMRI has sought and continues to seek reimbursement of certain claimed costs of defending itself in the Louisiana Litigation under the Century and Continental policies.

19.     Century and Continental have in the past reimbursed AMRI for their claimed proportionate and equitable share of AMRI's purported reasonable and necessary covered defense costs under an express reservation of rights.

20.     The Century and Continental policies only pay for damages and defense costs attributable to bodily injury that occurs *during the policy period*.

21.     Freeport-McMoRan's other insurers are responsible for damages and defense costs attributable to bodily injury occurring during their respective policy periods, and Freeport-McMoRan is responsible for any damages and defense costs attributable to bodily injury occurring during uninsured periods.

-6-

22.     Freeport-McMoRan has improperly allocated and billed to Century and Continental defense costs attributable to bodily injury occurring outside of Century's and Continental's respective policy periods.

23.     Freeport-McMoRan has also improperly billed Century and Continental for the cost of National Coordinating Counsel ("NCC") in a disproportionate amount to the actual amount of services NCC has provided in connection with the Louisiana Litigation.

24.     Freeport-McMoRan has further improperly billed Century and Continental for the document storage costs of corporate and historical documents related to the Braithwaite facility. These are ordinary business costs that should be borne by Freeport-McMoRan.

25.     Century and Continental in good faith and under an express reservation of rights have paid Freeport-McMoRan certain amounts improperly billed to Century and Continental.

26.     Freeport-McMoRan was not entitled to the above amounts improperly billed to and paid by Century and Continental.

### CORPORATE RECORDS ASSIMILATION PROJECT

27.     Beginning in April 2005, Phelps Dodge Corporation began to ship corporate documents from its locations around the country to Phoenix, Arizona to review the documents and to assimilate those records into its general corporate records.

28.     Beginning in February 2007, Phelps Dodge Corporation undertook the review and corporate assimilation of the documents it obtained from Cyprus Amax Minerals Company when Phelps Dodge Corporation acquired Cyprus Amax Minerals Company in 1999.

29.     Phelps Dodge Corporation neither sought nor obtained the consent of Century or Continental before it began the review and corporate assimilation of the Cyprus Amax Minerals Company records.

-7-

30.    Since February or March 2007, Freeport-McMoRan has continued the review and corporate assimilation of the Cyprus Amax Minerals Company records.

31.    Freeport-McMoRan neither sought nor obtained the consent of Century or Continental before it continued the review and corporate assimilation of the Cyprus Amax Minerals Company records.

32.    Through December 2007, Freeport-McMoRan claims the review and corporate assimilation of the Cyprus Amax Minerals Company records cost $3,900,000.

33.    Through the project's completion, Freeport-McMoRan claims the review and corporate assimilation of the Cyprus Amax Minerals Company records will cost an additional $3,900,000, for a total of $7,800,000.

34.    Freeport-McMoRan claims the insurance policies Century and Continental issued to Amax cover the cost of the assimilation of the Cyprus Amax Minerals Company corporate records into Freeport-McMoRan's corporate records.

35.    Century and Continental deny any obligation for the cost of the Corporate Records Assimilation Project.

36.    An actual controversy exists between Century and Continental, on the one hand, and Freeport-McMoRan, on the other hand, over whether the insurance policies cover the cost of the Corporate Records Assimilation Project.

## COUNT I

### CENTURY AND CONTINENTAL VERSUS FREEPORT-MCMORAN
### *DECLARATORY JUDGMENT*

37.    Century and Continental seek a declaratory judgment under 28 U.S.C.A. § 2201 that Century and Continental are only obligated to pay their share of indemnity and defense costs

-8-

attributable to bodily injury occurring during the policy period under the Century and Continental policies.

38.     Century and Continental seek a declaratory judgment under 28 U.S.C.A. § 2201 that Century and Continental are only obligated to pay their share of indemnity and defense costs attributable to bodily injury occurring during the policy period under the Century and Continental policies.

39.     Century and Continental further seek a declaratory judgment under 28 U.S.C.A. § 2201 declaring the rights and obligations of Century and Continental to reimburse Freeport-McMoRan for NCC and document storage costs currently being billed to Century and Continental purportedly in connection with the Louisiana Litigation.

40.     Century and Continental similarly seek a declaratory judgment under 28 U.S.C.A. § 2201 declaring that the insurance policies issued to Amax do not provide coverage for the cost of the Corporate Records Assimilation Project on the following grounds:

> (a)     The costs incurred are not defense costs within the meaning of the policies;
>
> (b)     Century and Continental are not responsible for costs Freeport-McMoRan voluntarily incurs;
>
> (c)     Century and Continental are not responsible for costs Freeport-McMoRan incurred without Century's and Continental's consent;
>
> (d)     Century and Continental are not responsible for unreasonable and/or unnecessary costs;

-9-

(e)     Freeport-McMoRan is neither the named insured nor a successor entitled to coverage under the liability insurance policies that Century and Continental issued to Amax;

(f)     Freeport-McMoRan failed to cooperate with Century and Continental, as the policies require; and

(g)     Any other grounds stemming from the policies, the law, or otherwise.

### DEMAND FOR JUDGMENT

Wherefore, Century and Continental demand judgment, as follows:

i.     A declaratory judgment that Century and Continental have no obligation to pay for Freeport-McMoRan's Corporate Records Assimilation Project;

ii.     Alternatively, should the court determine that Century and Continental have an obligation to pay any portion of the Corporate Records Assimilation Project, a declaratory judgment over the respective rights and obligations of the parties under the Century and Continental policies, and declaratory judgment for the amount of any obligation of Century and/or Continental to pay for the Corporate Records Assimilation Project;

iii.     A declaration of the rights of all parties under the Century and Continental Policies regarding the Louisiana Litigation;

iv.     Costs; and

v.     All other relief to which Century and Continental are entitled.

-10-

PHLDMS1 4195826v.6

## COUNT II

### CENTURY AND CONTINENTAL VERSUS FREEPORT-MCMORAN

*UNJUST ENRICHMENT*

41.    Century and Continental restate the allegations set forth in paragraphs 1 through 40 of this complaint and incorporate them by reference herein.

42.    Freeport-McMoRan was unjustly enriched by payments made by Century and Continental to Freeport-McMoRan based on Freeport-McMoRan's improper allocation and billing.

43.    Freeport-McMoRan's unjust enrichment was made at the expense of Century and Continental.

44.    Equity and good conscience require Freeport-McMoRan to make restitution to Century and Continental.

Wherefore, Century and Continental demand judgment, as follows:

i.    Compensatory damages for all amounts billed to and paid by Century and Continental for uncovered defense costs purportedly related to the Louisiana Litigation.

ii.    Costs;

iii.    All other relief to which Century and Continental are entitled.

-11-

COUNT III

CONTINENTAL VERSUS FREEPORT-McMoRan

*FRAUD*

59.    Since at least as early as January 1, 2007, Enviro-Tox Loss Services, Inc. has been an agent of Cyprus Amax Minerals Company and/or Phelps Dodge Corporation.

60.    At all times from January 1, 2007 to the present, Cyprus Amax Minerals Company and/or Phelps Dodge Corporation has authorized Enviro-Tox Loss Services, Inc. to attempt to get Continental to pay for the costs of the Corporate Records Assimilation Project.

61.    Since at least as early as January 1, 2007, Enviro-Tox Loss Services, Inc. has helped manage the Corporate Records Assimilation Project for Cyprus Amax Minerals Company and Phelps Dodge Corporation.

62.    Neither Enviro-Tox Loss Services, Inc. nor Cyprus Amax Minerals Company nor Phelps Dodge Corporation informed Continental of the existence of the Corporate Records Assimilation Project before May 8, 2007.

63.    Neither Enviro-Tox Loss Services, Inc. nor Cyprus Amax Minerals Company nor Phelps Dodge Corporation informed Continental that Cyprus Amax Minerals Company and/or Phelps Dodge Corporation had hired a new law firm, Ryley Carlock & Applewhite, to review the Cyprus Amax Minerals Company documents before May 8, 2007.

64.    When the Corporate Records Assimilation Project was begun in February 2007, Cyprus Amax Minerals Company and Phelps Dodge Corporation knew there were over 10,000 boxes of Cyprus Amax Minerals Company documents Phelps Dodge Corporation and Cyprus Amax Minerals Company intended to review.

-12-

65.    When the Corporate Records Assimilation Project was begun in February 2007, Cyprus Amax Minerals Company and Phelps Dodge Corporation knew the project would cost millions of dollars.

66.    On or about May 8, 2007, Cyprus Amax Minerals Company and Phelps Dodge Corporation delivered to Continental bills for an Amax records review.

67.    On or about May 8, 2007, Yvonne Prater of Continental called Cyprus Amax Minerals Company's and Phelps Dodge Corporation's agent Enviro-Tox Loss Services, Inc. to inquire about the bills.

68.    On or about May 8, 2007, Robert Medlin, an employee of Enviro-Tox Loss Services, Inc., acting on behalf of Cyprus Amax Minerals Company and/or Phelps Dodge, told Ms. Prater that the bills were for new documents found in Arizona.

69.    On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental that the documents were not found in Arizona, though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the documents were not from Arizona.

70.    On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental that the documents were unrelated to underlying tort litigation but were instead a corporate records management project, though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the project was a corporate records assimilation effort.

71.    On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental the scope of the project, though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the project involved well over 10,000 boxes of documents.

-13-

72.     On or about May 8, 2007, Mr. Medlin misrepresented and/or failed to disclose to Continental the cost of the project, even though Mr. Medlin, Cyprus Amax Minerals Company, and Phelps Dodge Corporation knew the project would cost millions of dollars to complete.

73.     Mr. Medlin, through his misrepresentations and failure to disclose the true nature of the project to Ms. Prater, deceived Continental into believing the bills were legitimate defense costs.

74.     By reason of Cyprus Amax Minerals Company's and Phelps Dodge Corporation's agent Enviro-Tox Loss Services, Inc.'s knowing misrepresentations and failure to disclose to Continental the true nature of the Corporate Records Assimilation Project, Cyprus Amax Minerals Company and Phelps Dodge Corporation fraudulently caused Continental to pay approximately $211,000 of the costs of the Corporate Records Assimilation Project.

### DEMAND FOR JUDGMENT

Wherefore, Continental demands judgment, as follows:

i.      Judgment in the amount of $211,000 or in accordance with the proof at trial;

ii.     Costs;

iii.    Interest; and

iv.     All other relief to which Continental is entitled.

-14-

Dated:  May 9, 2008

WHITE AND WILLIAMS LLP

By:  _s/ Rafael Vergara_____
      Rafael Vergara (RV-4098)
      White and Williams LLP
      One Penn Plaza, Suite 1801
      New York, NY 10119
      Phone: 212-244-9500
          -and-
      Shane R. Heskin (SH-9984)
      White and Williams LLP
      1800 One Liberty Place
      Philadelphia, Pennsylvania  19103
      Telephone:  (215) 864-7000
      *Attorneys for plaintiff Century Indemnity*
      *Company*


CARROLL BURDICK & McDONOUGH
L.L.P.

By:  __s/ Alan P. Jacobus_____
      Alan P. Jacobus (admitted *pro hac vice*)
      Carroll Burdick & McDonough L.L.P.
      44 Montgomery Street
      San Francisco, California 94104
      Telephone:  (415) 989-1900
      *Attorneys for plaintiff The Continental*
      *Insurance Company*

-15-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA and THE CONTINENTAL INSURANCE COMPANY | : | |
| | : | |
| Plaintiffs, | : | DEMAND FOR TRIAL BY JURY |
| | : | CIVIL ACTION NO. |
| versus | : | |
| FREEPORT-MCMORAN COPPER & GOLD INC., AS THE CLAIMED SUCCESSOR TO PHELPS DODGE CORPORATION, AS THE CLAIMED SUCCESSOR TO CYPRUS AMAX MINERALS COMPANY, AS THE CLAIMED SUCCESSOR TO AMAX, INC., AS THE CLAIMED SUCCESSOR TO AMERICAN METAL CLIMAX, INC. | : | |
| Defendant. | : | |

## DEMAND FOR TRIAL BY JURY

Pursuant to FED. R. CIV. P. 38 (b) plaintiffs Century Indemnity Company and The Continental Insurance Company hereby demand a trial by jury of issues so triable.

Dated:  May 9, 2008

**WHITE AND WILLIAMS LLP**

By:  s/ Rafael Vergara
      Rafael Vergara (RV-4098)
      White and Williams LLP
      One Penn Plaza, Suite 1801
      New York, NY 10119
      Phone: 212-244-9500
            -and-
      Shane R. Heskin (SH-9984)
      White and Williams LLP
      1800 One Liberty Place
      Philadelphia, Pennsylvania  19103
      Telephone:  (215) 864-7000
      *Attorneys for plaintiff Century Indemnity*
      *Company*


**CARROLL BURDICK & McDONOUGH
L.L.P.**

By:  s/ Alan P. Jacobus
      Alan P. Jacobus (admitted *pro hac vice*)
      Carroll Burdick & McDonough L.L.P.
      44 Montgomery Street
      San Francisco, California 94104
      Telephone:  (415) 989-1900
      *Attorneys for plaintiff The Continental*
      *Insurance Company*

-2-

# EXHIBIT 8

AFFIDAVIT OF ALAN P. JACOBUS IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO FREEPORT-MCMORAN COPPER AND GOLD INC.'S MOTION TO DISMISS OR STAY THIS ACTION

*CENTURY INDEM. CO. V. FREEPORT-MCMORAN COPPER & GOLD INC.*

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK NO.: 08 CV 02012 (PKL)



**Cranbury Executive Center**
**1249 South River Road, Suite 300**
**Cranbury, New Jersey 08512**

Robert Galardi
Claims Specialist
Law Department
Environmental and Mass Tort Claims
Telephone   609-860-2198
Facsimile     609-655-6609/6610
Toll Free     800-266-7035
robert.galardi@cna.com

February 28, 2008

**By United States Mail, Return Receipt Requested**

Joseph A. Peters
Vice-President
Enviro-Tox Loss Services, Inc.
2421 Callender Road
Suite 123
Mansfield, Texas 76063

Re:   Your December 21, 2007 Letter Concerning the Revlon Project

Dear Mr. Peters:

I write in response to your December 21, 2007 letter to me, demanding that The Continental Insurance Company "participate" in what you term the Revlon Project. For the reasons that follow, Continental disclaims any obligation to pay for any fees or expenses allegedly incurred in the project. In your letter, you state you are acting on behalf of Freeport-McMoRan Copper & Gold Inc. and Cyprus Amax Minerals Company (for sake of convenience here "Freeport/Cyprus Amax"). Continental reserves all rights with respect to any coverage Freeport claims under the Continental policies until it is plain Freeport is making a claim and, if so, what the nature of the claim is. We presume you will forward this letter to the appropriate persons for Freeport and Cyprus Amax. If you do not intend to do so, we request immediate written confirmation.

As a preliminary matter, Continental has investigated Freeport/Cyprus Amax's claim thoroughly. I attended the December 6, 2007 meeting in Philadelphia, we have evaluated your December 21, 2007 letter and the materials enclosed with it, and Continental's coverage counsel attended the Revlon Facility inspection in Phoenix on January 31, 2008. If there is

other information or documents you would like Continental to consider, I would ask that you please send them to me at your earliest convenience. We would also request that Freeport/Cyprus Amax enclose all documents relating to document retention and storage of the Cyprus Amax documents from 1999 to the present, including all documents and reports relating to the Revlon Project itself. We also ask that you clarify under which policies Freeport/Cyprus Amax seek coverage for the Revlon Project. Also, please provide all corporate documents relating to: (1) Freeport's acquisition of Phelps Dodge; (2) Phelps Dodge acquisition of Cyprus Amax; and (3) Amax's merger with Cyprus Minerals Company.

With respect to Continental's coverage disclaimer, first, Freeport/Cyprus Amax apparently undertook the Revlon Project as a result of the merger between Cyprus Amax and Phelps Dodge Corporation in December 1999. According to your letter, the project began in April 2005 and continued through December 2007, with the expectation that it will continue into the future. Continental had no notice whatsoever of the Revlon Project until late 2007, after Freeport had hired outside counsel (Ryley Carlock & Applewhite) and incurred $3.9 million (with an estimated additional $3.9 million needed to complete the project). As such, Freeport/Cyprus Amax voluntarily assumed the obligation to the Ryley firm and voluntarily incurred $7.8 million in expenses for the project. As you know, any obligation or expense Freeport/Cyprus Amax assume is at Freeport/Cyprus Amax's own cost under the Continental policies. For this reason, Continental denies coverage for the fees and costs associated with the Revlon Project.

Second, the fees and expenses associated with the Revlon Project are not defense costs at all, but instead an ordinary business expense (document retention and storage) that companies incur in the ordinary course of their business. As such, the Continental policies provide no coverage for the fees and costs associated with the project. This is even more the case because, as Continental understands it, many of the underlying Ohio tort claims are administratively stayed or dismissed and the indemnity paid on the Louisiana claims totals less than $25,000 to date. We also understand that not a single document reviewed as part of the Revlon Project has ever been produced in the underlying litigation. As such, the project is neither reasonable nor necessary given the limited nature of the underlying litigation and Continental denies coverage on this ground as well.

Third, Continental did not request Freeport/Cyprus Amax to undertake the project. The Continental policies do not provide coverage for expenses Freeport/Cyprus Amax unilaterally incur and for this reason too there is no coverage for those fees or expenses under the Continental policies. Moreover, even if the fees and/or expenses qualified as reimbursable under the Continental policies, the policies' per diem caps apply.

Fourth, based upon the limited information that we have about the corporate history of Amax, it is unclear whether Freeport is entitled to any coverage under the policies Continental issued to Amax.

Continental further asserts the following as a bar, in whole or in part, to coverage.

- Freeport/Cyprus Amax provided late and otherwise insufficient notice.

- Continental does not provide coverage for any pre-tender obligations Freeport/Cyprus Amax incurred or, as noted above, for any obligations Freeport/Cyprus Amax voluntarily assumed.

- Continental's obligations, if any, with respect to the claim are limited by the applicable other insurance conditions of the policies.

- Continental's obligations, if any, with respect to the claim are limited by any prior insurance and non-cumulation of liability, and subrogation conditions applicable to the Continental policies and are otherwise limited by Continental's rights of contribution or subrogation.

- Continental's obligation, if any, with respect to the claims are limited to the extent Freeport seeks coverage under rights purportedly assigned to it in violation of the anti-assignment provisions of the policies.

- The policies insure Amax. To the extent the claims do not involve insured entities, there may be no coverage under the policies.

- All applicable limits of liability apply to limit or bar coverage for the claim.

- Cyprus Amax remains responsible for all retrospective premium obligations.

If you believe Continental has misunderstood Freeport/Cyprus Amax's request for coverage for the Revlon Project, we invite Freeport/Cyprus Amax to respond in writing. Also, as previously noted, if there is additional information or documents Freeport/Cyprus Amax would like Continental to consider, please send them to my attention and we will evaluate the information or documents to determine whether a change in Continental's coverage position is warranted or necessary.

Finally, this letter supplements all previous claims correspondence Continental has sent. Nothing in this letter is intended to waive or alter in any way any of Continental's previous coverage positions. Nothing in the defense or investigation of these matters shall constitute an estoppel of any of Continental's rights under the policies. Continental expressly reserves the right to rely on all terms, conditions, or exclusions in determining whether or not coverage is afforded under the policies. Further, Continental reserves the right to rely on any additional terms, conditions, exclusions, or limitations to coverage contained within or incorporated in the policies. Likewise, Continental reserves the right to rely on any new factual information that becomes available in the future. Any action that Continental may take in the investigation of this matter is not to be construed as a waiver of any of the terms and conditions of the policies.

Respectfully,

ROBERT GALARDI – Claims Specialist
The Continental Insurance Company

02/28/2008 13:05 IFAX FAX
FEB. 28. 2008 2:59PM CNA
Case 1:08-cv-02012-RKL-DCF Document 32 Filed 06/12/2008 Page 31 of 44
FAXSERVER
NO. 899 P. 6
Ø 006/006

CC. Gregory D. Winfree, Esq.

# EXHIBIT 9

AFFIDAVIT OF ALAN P. JACOBUS IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S MEMORANDUM
OF LAW IN OPPOSITION TO FREEPORT-MCMORAN COPPER AND GOLD INC.'S MOTION TO DISMISS OR STAY
THIS ACTION

CENTURY INDEM. CO. V. FREEPORT-MCMORAN COPPER & GOLD INC.

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK NO.: 08 CV 02012 (PKL)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3 20 08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CENTURY INDEMNITY COMPANY, AS        :
SUCCESSOR TO CCl INSURANCE           :        2012
COMPANY, AS SUCCESSOR TO             :   08 Civ. 1212 (PKL)
INSURANCE COMPANY OF NORTH           :
AMERICA and THE CONTINENTAL          :   **STIPULATION**
INSURANCE COMPANY,                   :   **EXTENDING TIME TO**
                                     :   **RESPOND TO COMPLAINT**
                     Plaintiffs,     :
                                     :
                                     :
            v.                       :
                                     :
FREEPORT-MCMORAN COPPER & GOLD       :
INC., AS THE CLAIMED SUCCESSOR TO    :
PHELPS DODGE CORPORATION, AS THE     :
CLAIMED SUCCESSOR TO CYPRUS          :
AMAX MINERALS COMPANY, AS THE        :
CLAIMED SUCCESSOR TO AMAX, INC.,     :
AS SUCCESSOR TO AMERICAN METAL       :
CLIMAX, INC.,                        :
                                     :
                     Defendant.      :
                                     :
--------------------------------------------------------x

        IT IS HEREBY STIPULATED by and between the undersigned counsel that Defendant's

time to answer, move or otherwise respond to the Complaint now due on March 24, 2008 has

been extended until and including April 23, 2008.  No previous extensions have been requested

by the Defendant or granted by the Court.

        It is further stipulated and agreed that facsimile signatures may be deemed as originals.

Dated: New York, New York
     March 17, 2008

WHITE AND WILLIAMS LLP

By: *Shane K. Heskin*
     Shane R. Heskin, Esq. (SH-9984)

1800 One Liberty Place
Philadelphia, Pennsylvania 19103
(215) 864-7000
heskins@whiteandwilliams.com
Attorneys for Plaintiff Century Indemnity
Company

HELLER EHRMAN LLP

By
     Lisa M. Cirando, Esq. (LC-1916)

7 Times Square
New York, New York 10036
(212) 832-8300
lisa.cirando@hellerehrman.com
Attorneys for Defendant Freeport-McMoRan
Copper & Gold Inc.

CARROLL BURDICK & McDONOUGH LLP

By:
     Alan P. Jacobus, Esq.
          (*pro hac vice* pending)

44 Montgomery Street
San Francisco, California 94104
(415) 989-1900
ajacobus@cbmlaw.com
Attorneys for Plaintiff The Continental Insurance
Company

SO ORDERED:                    3/20/08

Hon. Peter K. Leisure
United States District Court

2

# EXHIBIT 10

AFFIDAVIT OF ALAN P. JACOBUS IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO FREEPORT-MCMORAN COPPER AND GOLD INC.'S MOTION TO DISMISS OR STAY THIS ACTION

*CENTURY INDEM. CO. V. FREEPORT-MCMORAN COPPER & GOLD INC.*

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK NO.: 08 CV 02012 (PKL)

**Leadford, Hayden**

| | |
|---|---|
| **From:** | Jacobus, Alan |
| **Sent:** | Monday, April 14, 2008 1:04 PM |
| **To:** | CNA - Alan Jacobus |
| **Subject:** | FW: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY) |

**Attachments:** 793306_1.DOC



793306_1.DOC

------------------------------------------

From: Plumer, Mark J.[SMTP:MARK.PLUMER@HELLEREHRMAN.COM]
Sent: Monday, April 14, 2008 1:03:54 PM
To: Heskins@whiteandwilliams.com; Jacobus, Alan
Cc: Cirando, Lisa M.
Subject: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY) Auto forwarded by a Rule

Counsel:

On behalf of defendants Freeport-McMoRan Copper & Gold, Inc., Phelps Dodge Corporation and Cyrus Amax Minerals Company ("Cyrus Amax"), we write to request an additional extension of 45 days from the current deadline of April 23 to answer, move or otherwise respond to the Complaint and, in addition, your agreement to extend by the same time the court-ordered conference currently scheduled fo <<793306_1.DOC>> r May 22.  With your approval, we will file the attached stipulation with the court on Wednesday April 16.  We recognize that the parties cannot extend a Court ordered deadline but the parties can at least consent to adjourn it.  If plaintiffs are unwilling to agree to a further extension, defendants plan to seek either a 45-day extension of all deadlines or a 45-day stay of this litigation.

This brief extension or stay is necessary.  First, it will allow certain of the parties to the current lawsuit to continue ongoing settlement discussions and, we hope, will enable the remaining parties to begin such discussions.  It obviously would be ideal if the current dispute could be settled (in whole or in part) and further litigation could be averted or streamlined.  Second, the requested extension will begin a process designed to resolve this entire dispute efficiently by including all of the correct parties and resolving the entire dispute in the correct forum.  What plaintiffs' Complaint refers to as the  "Corporate Records Assimilation Project" was undertaken by Cyrus Amax Minerals Company ("Cyrus Amax") to defend certain lawsuits pending against certain of its predecessors.  Prior to the merger that created Cyrus Amax in 1993, there were two separate companies, AMAX Inc and Cyrus Minerals Company, each with separate identities and records.  After the merger, the records of these two companies were combined.  The current defense of later-filed claims now pending against an AMAX Inc and Cyrus Minerals Company predecessors or subsidiaries has necessitated the review and segregation of commingled and un-indexed records.  Indeed, the plaintiffs were advised before this litigation commenced that the $7.8 million estimate identified in the Complaint was the cost of segregating, indexing and privilege reviewing the commingled documents of these two former entities.  What is in part at issue therefore is defense costs assignable to AMAX Inc's primary insurers in this lawsuit (Century and Continental) and Cyrus Minerals Company's primary insurers (Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic Insurance Company and Continental Insurance Company).  The historic Cyrus Minerals Company insurers likewise have been tendered this claim and, like Century and Continental in this case, have thus far refused to pay the requested defense costs.  This entire dispute should be adjudicated, if necessary, in one lawsuit.  Because Cyrus Amax is required to mediate with the Cyrus Minerals Company insurers before filing any lawsuit, it has sent a letter to them demanding mediation within 30 days.

Within 45 days, Cyprus Amax should know whether the Cyprus Minerals Company insurers are or are not necessary to resolve this dispute and can so answer or otherwise plead.  If one or both of the current plaintiffs are unwilling to provide the requested 45-day extension, we request that each of you let us know promptly, as we plan to request an extension or stay from Judge Leisure by the close of business on Wednesday April 16, 2008.

Thank you for your assistance.  Please contact me if you have any questions or concerns. Thank you.

Mark J. Plumer | Attorney | HellerEhrmanLLP | 1717 Rhode Island Avenue, NW | Washington, DC 20036
tel: +1.202.912.2021 | fax: +1.202.912.2202 | email: mark.plumer@hellerehrman.com | web: www.hellerehrman.com

==================================================

This email is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the email and notify us immediately.

==================================================

# EXHIBIT 11

AFFIDAVIT OF ALAN P. JACOBUS IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S MEMORANDUM
OF LAW IN OPPOSITION TO FREEPORT-MCMORAN COPPER AND GOLD INC.'S MOTION TO DISMISS OR STAY
THIS ACTION

*CENTURY INDEM. CO. v. FREEPORT-MCMORAN COPPER & GOLD INC.*

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK NO.: 08 CV 02012 (PKL)

**Leadford, Hayden**

| | |
|---|---|
| **From:** | Jacobus, Alan |
| **Sent:** | Monday, April 14, 2008 1:27 PM |
| **To:** | CNA - Alan Jacobus |
| **Subject:** | FW: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY) |

---------------------------------------------

From: Heskin, Shane[SMTP:HESKINS@WHITEANDWILLIAMS.COM]
Sent: Monday, April 14, 2008 1:25:01 PM
To: Plumer, Mark J.
Cc: Cirando, Lisa M.; Cellucci, Guy; Jacobus, Alan
Subject: RE: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY) Auto forwarded by a Rule

Mark:

Century will agree to the 45 day-extension of time to answer the complaint on the condition that Freeport/Amax stipulate that it will not seek to remove the NY action in favor of another jurisdiction or court.
If Freeport/Amax needs in good-faith additional time to answer for reasons other than resolving its Cyprus obligations, we are happy to consider a reasonable extension of time not to exceed 14 days. We also do not feel an adjournment of the Rule 16 conference is appropriate at this time.

Regards,
-Shane

-----Original Message-----
From: Plumer, Mark J. [mailto:Mark.Plumer@hellerehrman.com]
Sent: Monday, April 14, 2008 4:04 PM
To: Heskin, Shane; ajacobus@cbmlaw.com
Cc: Cirando, Lisa M.
Subject: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY)

Counsel:

On behalf of defendants Freeport-McMoRan Copper & Gold, Inc., Phelps Dodge Corporation and Cyprus Amax Minerals Company ("Cyprus Amax"), we write to request an additional extension of 45 days from the current deadline of April 23 to answer, move or otherwise respond to the Complaint and, in addition, your agreement to extend by the same time the court-ordered conference currently scheduled fo <<793306_1.DOC>> r May 22. With your approval, we will file the attached stipulation with the court on Wednesday April 16. We recognize that the parties cannot extend a Court ordered deadline but the parties can at least consent to adjourn it. If plaintiffs are unwilling to agree to a further extension, defendants plan to seek either a 45-day extension of all deadlines or a 45-day stay of this litigation.

This brief extension or stay is necessary. First, it will allow certain of the parties to the current lawsuit to continue ongoing settlement discussions and, we hope, will enable the remaining parties to begin such discussions. It obviously would be ideal if the current dispute could be settled (in whole or in part) and further litigation could be averted or streamlined. Second, the requested extension will begin a process designed to resolve this entire dispute efficiently by including all of the correct parties and resolving the entire dispute in the correct forum. What plaintiffs' Complaint refers to as the "Corporate Records Assimilation Project" was undertaken by Cyprus Amax Minerals Company ("Cyprus Amax") to defend certain lawsuits pending against certain of its predecessors. Prior to the merger that created Cyprus Amax in 1993, there were two separate companies, AMAX Inc and Cyprus Minerals Company, each with separate identities and records. After the merger, the records of these two companies were combined. The current defense of later-filed claims now pending against an AMAX Inc and Cyprus Minerals

1

Company predecessors or subsidiaries has necessitated the review and segregation of commingled and un-indexed records. Indeed, the plaintiffs were advised before this litigation commenced that the $7.8 million estimate identified in the Complaint was the cost of segregating, indexing and privilege reviewing the commingled documents of these two former entities. What is in part at issue therefore is defense costs assignable to AMAX Inc's primary insurers in this lawsuit (Century and Continental) and Cyprus Minerals Company's primary insurers (Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic Insurance Company and Continental Insurance Company). The historic Cyprus Minerals Company insurers likewise have been tendered this claim and, like Century and Continental in this case, have thus far refused to pay the requested defense costs. This entire dispute should be adjudicated, if necessary, in one lawsuit. Because Cyprus Amax is required to mediate with the Cyprus Minerals Company insurers before filing any lawsuit, it has sent a letter to them demanding mediation within 30 days.

Within 45 days, Cyprus Amax should know whether the Cyprus Minerals Company insurers are or are not necessary to resolve this dispute and can so answer or otherwise plead. If one or both of the current plaintiffs are unwilling to provide the requested 45-day extension, we request that each of you let us know promptly, as we plan to request an extension or stay from Judge Leisure by the close of business on Wednesday April 16, 2008.

Thank you for your assistance. Please contact me if you have any questions or concerns. Thank you.

Mark J. Plumer | Attorney | HellerEhrmanLLP | 1717 Rhode Island Avenue, NW | Washington, DC 20036
tel: +1.202.912.2021 | fax: +1.202.912.2202 | email: mark.plumer@hellerehrman.com | web: www.hellerehrman.com

==================================================

This email is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the email and notify us immediately.

==================================================

2

# EXHIBIT 12

AFFIDAVIT OF ALAN P. JACOBUS IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S MEMORANDUM
OF LAW IN OPPOSITION TO FREEPORT-McMoRan COPPER AND GOLD INC.'S MOTION TO DISMISS OR STAY
THIS ACTION

*CENTURY INDEM. CO. V. FREEPORT-McMoRan COPPER & GOLD INC.*

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK NO.: 08 CV 02012 (PKL)

**Leadford, Hayden**

| | |
|---|---|
| **From:** | Jacobus, Alan |
| **Sent:** | Monday, April 14, 2008 2:45 PM |
| **To:** | CNA - Alan Jacobus |
| **Subject:** | FW: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY) |

---------------------------------------------
From: Plumer, Mark J. [SMTP:MARK.PLUMER@HELLEREHRMAN.COM]
Sent: Monday, April 14, 2008 2:45:12 PM
To: Heskin, Shane
Cc: Cirando, Lisa M.; Cellucci, Guy; Jacobus, Alan
Subject: RE: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY) Auto forwarded by a Rule

Shane,

Thanks for your prompt response.  I don't think we can provide you the assurance you require.  Accordingly, unless we hear otherwise from you, I am going to assume that Century objects to our request.


Mark J. Plumer | Attorney | HellerEhrmanLLP | 1717 Rhode Island Avenue, NW | Washington, DC 20036
tel: +1.202.912.2021 | fax: +1.202.912.2202 | email: mark.plumer@hellerehrman.com | web: www.hellerehrman.com

-----Original Message-----
From: Heskin, Shane [mailto:heskins@whiteandwilliams.com]
Sent: Monday, April 14, 2008 4:25 PM
To: Plumer, Mark J.
Cc: Cirando, Lisa M.; Cellucci, Guy; ajacobus@cbmlaw.com
Subject: RE: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY)

Mark:

Century will agree to the 45 day-extension of time to answer the complaint on the condition that Freeport/Amax stipulate that it will not seek to remove the NY action in favor of another jurisdiction or court.
If Freeport/Amax needs in good-faith additional time to answer for reasons other than resolving its Cyprus obligations, we are happy to consider a reasonable extension of time not to exceed 14 days.  We also do not feel an adjournment of the Rule 16 conference is appropriate at this time.

Regards,
-Shane

-----Original Message-----
From: Plumer, Mark J. [mailto:Mark.Plumer@hellerehrman.com]
Sent: Monday, April 14, 2008 4:04 PM
To: Heskin, Shane; ajacobus@cbmlaw.com
Cc: Cirando, Lisa M.
Subject: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY)

Counsel:

On behalf of defendants Freeport-McMoRan Copper & Gold, Inc., Phelps Dodge Corporation and Cyprus Amax Minerals Company ("Cyprus Amax"), we write to request an additional extension of 45 days from the current deadline of April 23 to answer, move or otherwise respond to the Complaint and, in addition, your agreement to extend by the same time the court-

1

ordered conference currently scheduled fo <<793306_1.DOC>> r May 22.  With your approval, we will file the attached stipulation with the court on Wednesday April 16.  We recognize that the parties cannot extend a Court ordered deadline but the parties can at least consent to adjourn it.  If plaintiffs are unwilling to agree to a further extension, defendants plan to seek either a 45-day extension of all deadlines or a 45-day stay of this litigation.

This brief extension or stay is necessary.  First, it will allow certain of the parties to the current lawsuit to continue ongoing settlement discussions and, we hope, will enable the remaining parties to begin such discussions.  It obviously would be ideal if the current dispute could be settled (in whole or in part) and further litigation could be averted or streamlined.  Second, the requested extension will begin a process designed to resolve this entire dispute efficiently by including all of the correct parties and resolving the entire dispute in the correct forum.  What plaintiffs' Complaint refers to as the  "Corporate Records Assimilation Project" was undertaken by Cyprus Amax Minerals Company ("Cyprus Amax") to defend certain lawsuits pending against certain of its predecessors.  Prior to the merger that created Cyprus Amax in 1993, there were two separate companies, AMAX Inc and Cyprus Minerals Company, each with separate identities and records.  After the merger, the records of these two companies were combined.  The current defense of later-filed claims now pending against an AMAX Inc and Cyprus Minerals Company predecessors or subsidiaries has necessitated the review and segregation of commingled and un-indexed records.  Indeed, the plaintiffs were advised before this litigation commenced that the
$7.8 million estimate identified in the Complaint was the cost of segregating, indexing and privilege reviewing the commingled documents of these two former entities.  What is in part at issue therefore is defense costs assignable to AMAX Inc's primary insurers in this lawsuit (Century and Continental) and Cyprus Minerals Company's primary insurers (Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic Insurance Company and Continental Insurance Company).  The historic Cyprus Minerals Company insurers likewise have been tendered this claim and, like Century and Continental in this case, have thus far refused to pay the requested defense costs.  This entire dispute should be adjudicated, if necessary, in one lawsuit.  Because Cyprus Amax is required to mediate with the Cyprus Minerals Company insurers before filing any lawsuit, it has sent a letter to them demanding mediation within 30 days.

Within 45 days, Cyprus Amax should know whether the Cyprus Minerals Company insurers are or are not necessary to resolve this dispute and can so answer or otherwise plead.  If one or both of the current plaintiffs are unwilling to provide the requested 45-day extension, we request that each of you let us know promptly, as we plan to request an extension or stay from Judge Leisure by the close of business on Wednesday April 16, 2008.

Thank you for your assistance.  Please contact me if you have any questions or concerns. Thank you.

Mark J. Plumer | Attorney | HellerEhrmanLLP | 1717 Rhode Island Avenue, NW | Washington, DC 20036
tel: +1.202.912.2021 | fax: +1.202.912.2202 | email:
mark.plumer@hellerehrman.com | web: www.hellerehrman.com

==================================================

This email is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the email and notify us immediately.

==================================================

=================================================

This email is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the email and notify us immediately.

=================================================