**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA and THE CONTINENTAL INSURANCE COMPANY, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| versus | : | CIVIL ACTION NO. 08 CV 02012 |
| | : | |
| FREEPORT-MCMORAN COPPER & GOLD INC., AS THE CLAIMED SUCCESSOR TO PHELPS DODGE CORPORATION, AS THE CLAIMED SUCCESSOR TO CYPRUS AMAX MINERALS COMPANY, AS THE CLAIMED SUCCESSOR TO AMAX, INC. AND AMAX METALS RECOVERY, INC., AS SUCCESSOR TO AMERICAN METAL CLIMAX, INC., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF CENTURY INDEMNITY COMPANY'S OPPOSITION TO
DEFENDANT FREEPORT-MCMORAN COPPER AND GOLD'S INC.'S
MOTION TO DISMISS OR STAY THIS ACTION**

**WHITE AND WILLIAMS LLP**
Rafael Vergara (RV-4098)
One Penn Plaza, Suite 1801
New York, NY 10119
Phone: 212-244-9500
-and-
Shane R. Heskin (SH-9984)
1800 One Liberty Place
Philadelphia, PA 19103
Telephone: (215) 864-7000
**Attorneys for Plaintiff
Century Indemnity Company**

Date: June 12, 2008

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

I. PRELIMINARY STATEMENT ..................................................................... 2

II. COUNTERSTATEMENT OF MATERIAL FACTS ...................................... 5

III. ARGUMENT ................................................................................................. 7

   A. Defendant Freeport-McMoRan's Corporate Succession Arguments Are Based
     On Misrepresentations And Demonstrably False Statements. ............................... 7

   B. Defendant Freeport-McMoRan Has Failed To Demonstrate That
     Abstention Is Warranted. ..................................................................................... 11

     1. Freeport's Motion Should Be Denied Based On the First-Filed Rule ............................ 11

       a. The "Balance of Convenience" Exception Does Not Apply. ..................................... 13

       b. The "Special Circumstances" Exception Does Not Apply. ..................................... 15

     2. The *Colorado River* Doctrine Does Not Require Abstention. ...................................... 16

     3. The *Brillhardt/Wilton* Abstention Doctrine Is Inapplicable. ............................................ 19

     4. Even Assuming the *Brillhardt/Wilton* Doctrine is Applicable,
       It Does Not Support Abstention. ................................................................................. 21

     5. Abstention is Not Warranted Because New York Law Applies and Thus New York
       Has the Most Significant Relationship to this Dispute. ................................................. 22

IV. CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

*800-Flowers, Inc. v. Inter'l Florist, Inc.*, 860 F. Supp. 128 (S.D.N.Y. 1994).............14, 15

*ACE Am. Ins. Co. v. XL Ins. Am.*, 2007 N.Y. Misc. LEXIS 8559 (N.Y. Sup. Ct. Nov. 7, 2007) ...................................................................................................... 23

*Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991)................................................. 11

*Bon Jour Group, Ltd. v. Elan-Polo, Inc.*, 1997 WL. 401814 (S.D.N.Y. July 16, 1997)................................................................................................................ 13

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942) ........................................ 10

*Burnett v. Physician's Online, Inc.*, 99 F.3d 72 (2d Cir. 1996) ...................... 15

*Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S.2d 30 (N.Y. Sup. Ct. App. Div. 2006), *aff'd*, 876 N.E.2d 500 (N.Y. 2007)...............22, 23

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).............................................................10, 11, 15, 16, 17, 18, 20

*In re Comverse Tech., Inc. Derivative Litig.*, 2006 WL. 3193709 (E.D.N.Y. Nov. 2, 2006).............................................................................................................. 17

*Dittmer v. County of Suffolk*, 146 F.3d 113 (2d Cir. 1998)........................................15, 16

*Employers Ins. Co. of Wausau v. Duplan Corp.*, 899 F. Supp. 112 (S.D.N.Y. 1995)............................................................................................................... 22

*Employers Ins. of Wausau v. Fox Entmt. Group, Inc.*, 522 F.3d 271 (2d Cir. 2008) ....... 12

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978)................................... 13

*First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) ................ 11

*Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784 (2d Cir. 1986) ........... 11

*General Star Indem. Co. v. Anheuser-Busch Cos., Inc.*, 199 F.3d 1322, 1999 WL. 1024708 (2d Cir. Nov. 8, 1999).........................................................................19, 20

*General Star Intern. Indem. Ltd. v. Chase Manhattan Bank*, 2002 WL. 850012 (S.D.N.Y. May 03, 2002) ...............................................................................18, 20

*Greater New York Metro. Food Council v. McGuire*, 6 F.3d 75 (2d Cir. 1993).............. 10

*Gross v. British Broadcasting Corp.*, 386 F.3d 224 (2d Cir. 2004) ................................ 12

*Gulf Underwriters Ins. Co. v. Verizon Communications, Inc.*, 2007 WL. 2175564 (N.Y. Sup. Ct. June 19, 2007) ................................................................. 23

*Kellen Co. v. Calphalon Corp.*, 54 F. Supp. 2d 218 (S.D.N.Y. 1999) ............................ 11

*Maryland Cas.*, 382 F.3d at 153 ................................................................. 22

*Maryland Cas. Co. v. Continental Cas. Co.*, 332 F.3d 145 (2d Cir. 2003) ..................... 22

*McClellan v. Carland*, 217 U.S. 268 (1910) ................................................ 11

*McGinniss v. Employers Reinsurance Corp.*, 648 F. Supp. 1263 (S.D.N.Y. 1986) .... 23, 24

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ........ 16, 17, 18

*Munzer v. St. Paul Fire & Mar. Ins. Co.*, 610 N.Y.S.2d 389 (N.Y. Sup. Ct. App. Div. 1994) ................................................................................ 23

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. BP Amoco, P.L.C.*, 319 F. Supp. 2d 352 (S.D.N.Y. 2004) ............................................................. 10

*Olin Corp. v. Ins. Co. of N. Am.*, 743 F. Supp. 1044 (S.D.N.Y. 1990), *aff'd*, 929 F.2d 62 (2d Cir. 1991) ..................................................... 22

*Rheem Mfg. Co. v. Home Indem. Co.*, Index No. 6349/89 (N.Y. Sup. Ct. July 20, 1998), *aff'd*, 723 N.Y.S.2d 354 (N.Y. Sup. Ct. App. Div. 2002) ............................ 22

*Schnabel v. Ramsey Quantitative Sys.*, 322 F. Supp. 2d 505 (S.D.N.Y. 2004) ............... 14

*See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ................................... 8, 12

*State Farm Mut. Auto. Ins. Co. v. Schepp*, 2008 WL. 1994856 (E.D.N.Y. May 08, 2008) ................................................................................ 19

*Steadfast Ins. Co. v. Casden Props., Inc.*, 819 N.Y.S.2d 213 (N.Y. Sup. Ct. 2006) (emphasis added) ................................................................. 22

*Steadfast Ins. Co. v. Sentinel Real Estate Corp.*, 727 N.Y.S.2d 393 (N.Y. Sup. Ct. App. Div. 2001) ................................................................. 22

*Travelers Cas. Sur. Co. v. Honeywell Int'l Inc.*, 2007 N.Y. Misc. LEXIS 7758 (N.Y. Sup. Ct. Oct. 2, 2007) ..................................................... 23

*UnitedHealth Group, Inc. v. Lexington Ins. Co.*, 2006 WL. 695523 (D. Minn. Mar. 17, 2006) ..................................................................... 21

*Village of Westfield v. Welch's*, 170 F.3d 116 (2d Cir. 1999) ................... 15, 17, 18

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ..................................... 10, 18

Plaintiff, Century Indemnity Company ("Century"), submits this memorandum of law in opposition to Defendant Freeport-McMoRan Copper & Gold's ("Freeport") Motion to Dismiss or Stay this Action (the "Motion").

## I.    PRELIMINARY STATEMENT

In its vigor to avoid this Court's proper jurisdiction, Defendant Freeport either has failed to conduct any due diligence regarding the allegations of its Motion or has inexplicably turned a blind eye toward reality.    As a consequence, Defendant's Motion is riddled with misrepresentations and demonstrably false statements that wholly defy reason.  For example, Defendant Freeport remarkably claims that it is not a proper party to this action because it is "a virtual stranger" to this dispute and "[p]erhaps most important, Freeport is not…making a claim of any kind under Continental and Century's policies for any of the claims asserted against AMRI."  (Freeport Br. at 9-10.)   This claim is absolutely dumbfounding in the face of the following request to Century's claims handler, Ms. Margo Dedeyan, which plainly seeks reimbursement of underlying defense invoices – **paid directly by Freeport-McMoRan, Copper & Gold**:

```
RE:   Enviro Tox Files:        Multiple AMAX
      Louisiana Asbestos Premises Litigation

Dear Ms. Dedeyan:

Enclosed please find one invoice from the Middleberg Riddle and Gianna
Law Firm for which Resolute Management Inc. (INA) is responsible for
paying a portion as outlined on the spreadsheet identified as
Middleberg Riddle and Gianna Invoice 65385. Also attached are the usual
worksheets indicating the dates of exposure and the share owed by each
carrier involved.  Please issue your check in the amount of $3,121.41
payable to Freeport-McMoran, Copper & Gold, as they have already paid
this invoice, and send directly to our office.  Please refer to the
invoice number and our file number on all correspondence.
```

Enviro-Tox Loss Services, Inc. Invoice, dated Mar. 4, 2007, annexed to the Declaration of Shane R. Heskin, dated June 12, 2007 ("Heskin Decl."), as Ex. A.

In addition, Defendant Freeport makes numerous other demonstrably false statements regarding its role in the document-review project as well as this lawsuit's many significant connections to New York. Most notably, in ridiculing Century for filing this suit in New York, Defendant Freeport ignores the most fundamental nexus of this lawsuit to New York, *i.e.*, the Century policies which were issued to a New York corporation with its principal place of business in New York. At the same time, Defendant Freeport propounds patently false representations by claiming no parties, documents or key witnesses to this lawsuit reside in New York. In doing so, Defendant Freeport strikingly ignores that Phelps Dodge Corporation ("Phelps Dodge"), which Freeport itself claims is a significant party to this lawsuit, **is a New York corporation**. Further, Defendant Freeport inexplicably "misremembers" that its own national coordinating counsel, which is charged with managing the Louisiana litigation and possesses key claims documents on the underlying plaintiffs, has its office right here in New York City. Even more troubling about this "memory lapse" is that Defendant Freeport affirmatively submitted a letter to Century from this very New York law firm only months ago in an attempt to justify the factual basis for the document-review project now at issue.

In addition to these incredulous statements, Defendant Freeport misleads the Court regarding the true nature of its claimed "comprehensive" California suit. Contrary to Defendant Freeport's assertions of convenience and judicial efficiency, the New York and California suits are nothing alike. Defendant Freeport's dispute with its other insurers in the California action relates to the interpretation and purported breach of a "settlement agreement." Thus, unlike here, the contract interpretation at issue in California does not revolve around an insurance policy, but rather a wholly separate and unrelated "settlement agreement" that has nothing to do with the Century policies at issue in this action. For the same reason, Defendant Freeport's claim of

inconsistent verdicts has no basis because the California action is based on a "settlement agreement" and the New York action an "insurance" contract.

Moreover, there cannot be inconsistent verdicts because these two distinct disputes are subject to different laws. The "settlement agreement" provides that California law applies. By contrast, it is clear that New York law applies to the Century policies, which were issued to a New York corporation with its principal place of business located wholly within New York. Although Defendant Freeport may claim that Louisiana law should apply, there is certainly no credible basis to apply the law of California, a state with no ties whatsoever to this dispute. Either way, combining the suits clearly would not simplify the disputes or result in a more convenient forum, because the suits involve different governing instruments, different applicable law, different underlying lawsuits, different named insureds, and involve no California witnesses or parties to this action.

Moreover, it is unknown whether the California action will even be allowed to go forward. Although Defendant Freeport sought an extension of time to respond to the Complaint in this action purportedly to permit it time to mediate with its insurers in the California action, Defendant Freeport did not mediate as it represented to this Court it was required to do. Instead, Defendant Freeport filed suit in California in apparent violation of its contractual obligation. Thus, contrary to its representations that it needed the extension to "mediate" and "sort out" the parties remaining in dispute, no mediation has yet taken place among the parties subject to the California settlement. Due to this failure, Defendant Freeport could effectively hail Century out to California, be ordered by the California court to mediate or mediate on its own, and end up settling with its other insurers. Defendant Freeport then could leave Century alone to litigate

2,500 miles away from Century's home and 2,500 miles away from the principal place of business of its insured at the time the Century policies were issued.

For these same geographic reasons, there is no merit to Defendant Freeport's claim that Century's decision to file in New York is motivated solely by seeking favorable law rather than legitimate convenience of the forum. In addition to the insured's principal place of business being a natural place of suit, New York is fewer than 100 miles from Century's principal place of business. California, however, is over 2,500 miles away. Clearly, New York is a much more convenient and legitimate forum than California.

Similarly, there is no foundation for Freeport's allegations that Century's amended complaint is frivolous and designed solely to preserve venue. Quite to the contrary, Century's amended Complaint seeks reimbursement of approximately $667,000 that Defendant Freeport over-billed Century for improper allocations to policy years when the underlying Braithwaite facility was **dormant**. Century's *pro rata* share of the document-review costs, even if covered in full (which Century staunchly disputes), is approximately $576,000. Thus, the importance of Century's claim for unjust enrichment actually outweighs the current dispute involving the document-review project.

In sum, Century properly filed suit against Defendant Freeport as the ultimate claimed successor-in-interest to the insured on the Century policies, and as the party **actually** seeking coverage under the Century policies. Defendant Freeport's corporate masquerade in seeking dismissal of this action has no merit, and its numerous false representations should not be countenanced. Nevertheless, even if Defendant Freeport is correct that each of its numerous subsidiaries must be named separately as a party (which Century disagrees), the proper relief under Rule 19(a)(2) is joinder, not dismissal of the entire action.

Further, Century respectfully submits that this action should not be stayed in favor of the subsequently filed California action.  The two actions are not remotely related and cannot result in inconsistent judgments.  More importantly, New York has the most significant ties to this dispute, given that (1) the Century policies were issued to a New York corporation with its principal place of business in New York, (2) one of the claimed successors to the Century policies is a New York corporation and (3) Defendant Freeport's own national coordinating counsel resides here in New York City.  Century should not be required to trek 2,500 miles across the country simply because Defendant Freeport voluntarily agreed to subject itself to the jurisdiction of the California court under a settlement agreement to which Century had no part.

## II.    COUNTERSTATEMENT OF MATERIAL FACTS

Spanning the course of a decade, Century issued a series of successive primary general liability insurance policies to Amax, a New York corporation with its principal place of business located wholly within New York.  Phelps Dodge, a claimed successor to these policies and current wholly owned subsidiary of Defendant Freeport, is also a New York corporation.  The law office of Kasowitz, Benson, Torres, & Friedman, Defendant Freeport's national coordinating counsel for the underlying asbestos claims at issue, is also located in New York City.[1] Defendant Freeport now moves to dismiss this action in favor of a subsequently filed California action on the **purported** bases that "[t]his action has little or no connection to New York," and that no parties or witnesses reside in New York.  (Freeport Br. at 20; *see also* letter from Defendant Freeport to Court, dated Apr. 16, 2008, annexed to the Heskin Decl. as Ex. H.)

Defendant Freeport also has submitted claims directing Century to issue payment for the above invoices of its New York counsel, as well as, its underlying Louisiana counsel directly to

---

[1] *See* letter from Kasowitz, Benson, Torres, & Friedman LLP to Freeport-McMoRan Copper & Gold, Inc., dated Jan. 11, 2008, attached to the Heskin Decl. as Ex. B.

"*Freeport-McMoRan, Copper & Gold, as they have already paid this invoice*."[2]   Century has issued payments directly to Defendant Freeport as a result of these requests.[3]   In correspondence, Defendant Freeport's national coordinating counsel expressly states that it is representing Defendant Freeport in the Louisiana litigation, and that local counsel Middleberg, Riddle & Gianna similarly represents Defendant Freeport.[4]   Century has paid these bills at Freeport's direction.[5]   Defendant Freeport now seeks to dismiss this action on the purported bases that it "is a virtual stranger to this dispute . . . ," and that Freeport is not claiming any insurance coverage from Century.  (Freeport Br. at 12.)

In December 2007, representatives of Defendant Freeport met with Century to discuss Freeport's claim of coverage for the document-review project at issue.[6]   At that time, Freeport's representatives advised that all future communications and payments concerning the document-review project should no longer be directed to Phelps Dodge Corporation due to its recent merger, but rather should be directed to Freeport-McMoRan Copper & Gold because Phelps Dodge Corporation was and is now Freeport-McMoran Copper & Gold.[7]   As a follow-up to that meeting, Defendant Freeport's third-party administrator, Enviro-Tox Loss Services, Inc. ("ETLS"), provided Century additional information and specifically referred to the project as the **"Freeport-McMoRan Copper & Gold, Inc. Document Review Project (Revlon Project)**."[8] This information depicted Freeport's insurance program and specifically identified the Century

---

[2] Ex. A.
[3] *See* Payment Statement, dated May 10, 2008, annexed to the Heskin Decl. as Ex. C.
[4] *See* Ex. B.
[5] *See* Ex. C.
[6] *See* Affidavit of Margo Dedeyan, dated June 12, 2008 ("Dedeyan Aff."), ¶4, annexed to the Heskin Decl. as Ex. D.
[7] *See* Freeport-McMoRan 2007 Annual Report, at 5, relevant excerpts annexed to the Heskin Decl. as Ex. E ("The Phelps Dodge acquisition **transformed** Freeport-McMoRan Copper & Gold Inc. into a dynamic industry leader **and combined the assets and technical teams of two great companies**.").
[8] Letter from ETLS to Century, dated Dec. 21, 2007, annexed to the Heskin Decl. as Ex. F.

policies at issue.[9]  Defendant Freeport's Risk Manager also followed-up with Century regarding the information provided by ETLS – on Freeport letterhead.[10]  Defendant Freeport now moves to dismiss claiming no connection to the document-review project.

Defendant Freeport previously asked this Court for an extension of time to respond to Century's Complaint on the purported basis that it was contractually required to mediate with certain other insurers before it could file an action against them.[11]  In its request, Defendant Freeport ridiculed Century for initiating this action in New York on the purported basis that no parties or witnesses resided in New York.[12]  This Court granted a thirty-day extension to respond to the Complaint.  Despite its representation to this Court that is was required to do so, however, Defendant Freeport did not mediate with its other insurers, and commenced suit against Century and its other insurers in California.  But no witness or party to this action resides in California, and none of the underlying transactions leading to this dispute transpired in California.

III.    **ARGUMENT**

A.    **Defendant Freeport-McMoRan's Corporate Succession Arguments Are Based On Misrepresentations And Demonstrably False Statements.**

Defendant Freeport's claim that it has no connection to the present dispute is overwhelmingly belied by its own representations to Century, its own corporate disclosure statements, its own third-party administrator, its own underlying defense counsel, and its own exhibits filed in support of this Motion.  Indeed, contrary to these representations, the record unmistakably demonstrates that Defendant Freeport has in fact submitted claims of insurance to Century for the defense of the underlying Louisiana litigation:

---

[9] *See id.*
[10] *See* letter from Freeport to Resolute, dated Jan. 11, 2008, annexed to the Heskin Decl. as Ex. G.
[11] *See* Ex. H.
[12] *See id.* at 3-4.

```
RE:    Enviro Tox Files:        Multiple AMAX
       Louisiana Asbestos Premises Litigation

Dear Ms. Dedeyan:

Enclosed please find one invoice from the Middleberg Riddle and Gianna
Law Firm for which Resolute Management Inc. (INA) is responsible for
paying a portion as outlined on the spreadsheet identified as
Middleberg Riddle and Gianna Invoice 65385. Also attached are the usual
worksheets indicating the dates of exposure and the share owed by each
carrier involved.  Please issue your check in the amount of $3,121.41
payable to Freeport-McMoran, Copper & Gold, as they have already paid
this invoice, and send directly to our office.  Please refer to the
invoice number and our file number on all correspondence.
```

Ex. A.

As the above demonstrates, Defendant Freeport's representation that it has not claimed insurance proceeds from Century for the underlying Louisiana litigation is plainly false. Similarly false is Defendant Freeport's claim that it is not undertaking the document-review project. Again, contrary to these representations, Defendant's own third-party administrator specifically refers to the project as the "**Freeport-McMoRan Copper & Gold, Inc. Document Review Project (Revlon Project).**"  Moreover, the below correspondence, attached as Freeport's own exhibit A to the Affidavit of Chelsea J. Walsh in purported support of its Motion, makes abundantly clear that Defendant Freeport-McMoRan is making this insurance claim:

> Re: Freeport-McMoRan Copper & Gold Inc. Document Review Project (Revlon Project)
>
> Dear Ms. Dedeyan and Mr. Galardi:
>
> Thank you for meeting with us on December 6, 2007 in Philadelphia. At the meeting Freeport-McMoRan Copper & Gold Inc. (FCX) agreed to provide the additional information you requested concerning the review of Cyprus Amax Minerals Company (Cyprus Amax) documents currently housed at the former Revlon facility in Phoenix, Arizona (Revlon).  In accordance with that agreement, enclosed are the following:
>
> - Revlon Building Floor Plan
> - Agreement for Payment of Revlon Building Lease
> - Revised Case List
> - Case-specific pro-rata sheets of each Cyprus Amax case on the revised case list
> - Email from counsel regarding the inactive Ohio cases
> - Contact List for silica cases insurers
> - FCX Insurance Program Chart

ETLS Invoice, dated Dec. 21, 2007, annexed to the Heskin Decl. as Ex. F.

Notably, Defendant's third-party administrator refers to Defendant's insurance program under which it is seeking insurance as the "FCX Insurance Program." FCX is defined above as "Freeport-McMoRan Copper & Gold Inc." Indeed, as a direct result of these claims, Century has issued payment directly to Freeport:

```
                                                            05/10/08

                                        VOID   VOID   VOID
                                                      *****10,598.39
 **TEN THOUSAND FIVE HUNDRED NINETY EIGHT DOLLARS AND 39 CENTS**

 1/08 & 3/08(VARIOUS SHARES)AMAX INC    VOID   VOID   VOID

                                        Francis W. McDonnell

 FREEPORT-MCMORAN,COOPER & GOLD
 P.O.BOX 172859                         MAJOR CLAIMS MANAGEMENT      02
 ARLINGTON TX 76003-2859                MULTI-FILES PAYMENT
```

Ex. C.

Moreover, Defendant Freeport-McMoRan admits that Phelps Dodge is a proper party to this suit. *See* E-mail from Mark Plumer, dated April 4, 2008, annexed to the Heskin Decl. as I ("[W]e do not propose to dismiss Phelps Dodge Corporation, whom we have determined played an active role in the facts and circumstances underlying plaintiffs' Complaint as Cyprus Amax Minerals Company's immediate parent."). Phelps Dodge, however, *is Freeport-McMoRan*. It cannot be disputed based on Defendant Freeport's own corporate disclosure statements that Phelps Dodge *merged* into Defendant Freeport-McMoRan to create a **single** combined company. *See* Ex. E at 5 ("The Phelps Dodge acquisition **transformed** Freeport-McMoRan Copper & Gold Inc. into a dynamic industry leader and **combined the assets** and technical teams **of two great companies**."); *id.* ("The process to consummate the **merger** proceeded very well…"); *id.* ("On March 19, 2007, we completed the $26 billion acquisition of Phelps Dodge Corporation, **creating the world's largest publicly traded copper company**…"); *id.* at 7 ("The acquisition of Phelps Dodge Corporation **combined two companies** with strong core values…"); *id.* at 9 ("Freeport-McMoRan Copper & Gold Inc. (FCX), through its successful 2007 acquisition and

**integration of Phelps Dodge**…"); *id.* at 21 ("The acquisition of Phelps Dodge Corporation **combined not only our businesses**, but also our respective commitments to our employees, neighbors, communities and the environment.") (all emphasis Century's).  To be further certain that Defendant Freeport-McMoRan is the correct party, its own annual report defines itself as "Freeport-McMoRan Copper & Gold Inc (FCX) and its consolidated subsidiaries, **including**, except as otherwise stated, **Phelps Dodge Corporation (Phelps Dodge) and its subsidiaries, which we acquired on March 19, 2007.**" *Id.* at 29.

Similarly inaccurate is Defendant Freeport McMoRan's claim that its wholly owned subsidiary AMRI is a necessary party not already included within Century's naming of Defendant Freeport-McMoRan as a party to this action.  In correspondence sent to Century before this Motion was filed, Defendant Freeport-McMoRan's own counsel not only admitted, but affirmatively represented, that Century had indeed named all **necessary** parties:

> Plaintiffs' claim is based solely on policies issued Amax Inc. or its predecessors and historic records generated by  Amax, Inc. and/or Cyprus Minerals Company or its predecessors.  It is undisputed that Amax, Inc. merged into Cyprus Minerals Company and immediately changed its name to Cyprus Amax Minerals Company.  It is also undisputed that Cyprus Amax Minerals Company thereafter merged with a subsidiary of Phelps Dodge, but kept the name Cyprus Amax Minerals Company.  Thus, Cyprus Amax Minerals Company, a currently existing corporation, is the corporate successor to the Amax, Inc and predecessor coverage and is therefore entitled to any coverage available under the Amax policies. **Moreover, any documents implicated by plaintiffs' claims arise out of the operations of Cyprus Amax Minerals Company or its corporate predecessors.  No other members of the Freeport McMoRan corporate family are necessary for plaintiffs to obtain complete relief regarding the declaratory judgment sought in this action regarding the Amax policies.**[13]

Based on these unambiguous admissions and affirmative representations, Defendant Freeport should not now be allowed to reverse course simply to suit the exigencies of the moment.  Moreover, its claim that AMRI is not subject to this Court's jurisdiction has no legal

---

[13] Ex. I (emphasis added).

basis.  To the extent that AMRI claims it is entitled to coverage under policies issued to a New York corporation with its principal place of business located wholly within New York at the time of issuance, personal jurisdiction clearly exists.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. BP Amoco, P.L.C.*, 319 F. Supp. 2d 352, 358-367 (S.D.N.Y. 2004) (confirming where an entity subject to personal jurisdiction in New York procures insurance for another entity, the second entity is subject to personal jurisdiction in New York).

**B.    Defendant Freeport-McMoRan Has Failed To Demonstrate That Abstention Is Warranted.**

Four factors make certain that Defendant Freeport-McMoRan has not met its burden of demonstrating that this Court should abstain in favor of the California action.  First, the first-filed rule supports denial of Freeport's motion.  Second, the *Brillhardt*[14]/*Wilton*[15] abstention doctrine is inapplicable.  Third, even if the *Brillhardt/Wilton* doctrine were applicable, it does not support abstention.  Finally, abstention is not warranted under the *Colorado River* doctrine.[16]

**1.    Freeport's Motion Should Be Denied Based On the First-Filed Rule .**

"Federal district courts have an unflagging duty to adjudicate matters properly within their jurisdiction."  *Greater New York Metro. Food Council v. McGuire*, 6 F.3d 75, 77 (2d Cir. 1993) (citing *Colorado River*, 424 U.S. at 813-14).  This Court is not to decline jurisdiction simply because, as Freeport claims, the issues presented in this case may be decided in another forum.  *See id.*  "The obligation to shoulder the jurisdictional burden is not one lightly to be renounced.  A district court may abdicate its duty *only in exceptional circumstances*."  *Id.* (emphasis added).  Accordingly, "as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in

---

[14] *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942).
[15] *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).
[16] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

the Federal court having jurisdiction . . . .'" *Colorado River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Thus, abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813. Indeed, "*[o]nly the clearest of justifications will warrant dismissal.*" *Id.* at 181-19 (emphasis added).

With these principles as a backdrop, this Court should deny Defendant Freeport-McMoRan's Motion on the simple basis that this action was filed first. Notwithstanding Freeport's contention that the first-filed rule essentially is irrelevant, "[t]he Second Circuit has long adhered to the first-filed doctrine in deciding which case to dismiss where there are competing litigations." *Kellen Co. v. Calphalon Corp.*, 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999) (citing, *inter alia*, *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir. 1986)). "'[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second.'" *Id.* (quoting *Adam v. Jacobs*, 950 F.2d 89, 91 (2d Cir. 1991)). "The first-filed rule seeks to advance judicial economy, protect the plaintiff's choice of forum and to avoid duplicative litigation." *Id.* (citing, *inter alia*, *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79-80 (2d Cir. 1989)). "It also protects parties from the considerable expense and potential for inconsistent judgments that duplicate litigation entails." *Id.* (citation omitted).

Defendant Freeport-McMoRan cannot dispute that this action was filed before the California action was filed. Thus, the first-filed rule governs, and Freeport cannot prove that either the "balance of convenience" or the "special circumstances" exception applies. Therefore, this Court should deny Freeport's request to abstain in favor of the California action.

### a.    The "Balance of Convenience" Exception Does Not Apply.

In applying the "'balance of convenience' exception, [the Second Circuit has] considered the ties between the litigation and the forum of the first-filed action. . . . [T]he factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Employers Ins. of Wausau v. Fox Entmt. Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (internal quotation marks and citations omitted).  The factors include

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.[17]

Freeport has not—and cannot—demonstrate that California is a more convenient forum. First, Century's "choice of forum is presumptively entitled to substantial deference." *Gross v. British Broadcasting Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); *see also See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("Unless the balance [of convenience] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

Second, Freeport has failed to demonstrate that California is a more convenient forum for the relevant witnesses.  The individuals who participated in the document review reside in Arizona and are not parties to this litigation or the California action.  Thus, Century would be required to subpoena and to depose these individuals in Arizona regardless of where this action is venued.  In addition, the office of Freeport's national coordinating counsel is located right here in New York City.  Thus, California clearly is not more convenient for the witnesses.

Moreover, Freeport, as the "'party asserting that a given forum is inconvenient for the witnesses[,] must clearly specify the key witnesses to be called and must make a general

---

[17] *Id.*

statement of what the witnesses' testimony will cover.'" *Bon Jour Group, Ltd. v. Elan-Polo, Inc.*, 1997 WL 401814, at *3 (S.D.N.Y. July 16, 1997) (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978)). Instead, in its brief, Freeport flatly asserts that "[t]he principal witnesses related to this dispute – the Document Review project – are located in Phoenix[,] Arizona . . . ." (Freeport Br. at 23.) Put another way, Freeport "merely asserts a general allegation that a significant number of witnesses will be necessary, without identifying them or indicating the expected content of their relevant testimonies." *Bon Jour*, 1997 WL 401814, at *3. Freeport's failure to comply with this requirement cannot be excused.

Third, Century will bear the burden and costs of traveling to and reviewing the relevant documents, which are located in Arizona, where the document review took place, and New York, where Freeport's national coordinating counsel maintains offices. Thus, Freeport is in no position to complain about the location of the documents or the relative ease of access to sources of proof. Fourth, traveling to New York would be neither unduly inconvenient for nor beyond the means of a company the size of Freeport, which has subsidiaries incorporated in New York even today, and has national coordinating counsel located in New York.

Finally, the operative facts principally took place in New York, where Defendant Freeport McMoRan's own national coordinating counsel has its office and where the Century policies were issued to a New York corporation with its principal place of business within New York. The only other operative facts took place in Arizona, where the document review occurred, and Louisiana where the underlying litigation resides. By contrast, there is absolutely no factual nexus between California and the coverage dispute between Freeport and Century. Indeed, in its brief, Freeport argues that "[t]his action has little or no connection to New York" (Freeport Br. 20), but fails to illustrate any nexus with California whatsoever. Rather, Freeport is

merely attempting to bootstrap the dispute under the Century policies with the California action, which concerns not the Century policies but a settlement agreement to which Century is not even a party. Thus, this factor certainly does not favor Freeport. Therefore, Freeport has not—and cannot—show that the "balance of convenience" exception applies.

        **b.**    **The "Special Circumstances" Exception Does Not Apply.**

Similarly, Freeport cannot show that the "special circumstances" exception requires departure from the first filed rule. "Generally, a 'special circumstances' exception to the first filed rule exists where forum shopping alone motivated the choice of the situs for the first suit." *800-Flowers, Inc. v. Inter'l Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1994).

> Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of [the litigant's] action, or where forum shopping alone motivated the choice. A party who appropriately files a declaratory judgment action in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping.[18]

Freeport cannot tenably argue that Century has engaged in any form of forum shopping. Among other things, the Century policies were issued in New York, the insured's principal place of business was located wholly in New York at the time the policies were issued and, as discussed below, New York law governs the coverage dispute. Thus, New York certainly has much more than "a slight connection to the factual circumstances of [Century's] action . . . ." *Id.* This sharply contrasts with California, which, as noted above, has absolutely no factual connection with the instant dispute and the current parties.

Nor could Defendant Freeport-McMoRan reasonably claim that Century filed this action because Freeport threatened litigation. To begin, before Century commenced this action, Freeport never threatened Century with litigation. Moreover, Freeport concedes that it was

---

[18] *Schnabel v. Ramsey Quantitative Sys.*, 322 F. Supp. 2d 505, 513-514 (S.D.N.Y. 2004) (internal quotation marks and citations omitted).

"complete[ly] surprised" by the initiation of this suit.  Freeport Br. at 8.  Surely, if Freeport had threatened to sue Century, Freeport would not have been surprised by litigation, even if it was initiated by another party in another forum.

Rather, all Century did was exercise the right any party has "to seek declaratory judgment where a reasonable apprehension exists that if it continues an activity it will be sued by another party."  *800-Flowers*, 860 F. Supp. at 132.  As the *800-Flowers* Court explained:

> Such an exercise of a party's right to declaratory relief does not necessarily constitute an anticipatory filing for purposes of an exception to the first filed rule. A party's reasonable apprehension of a legal controversy may be sufficient to satisfy the requirements of a justiciable controversy without rising to the level of a direct threat of imminent litigation. Were this not the case, each time a party sought declaratory judgement [*sic*] in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail under the anticipatory filing exception.[19]

Thus, Freeport has not—and cannot—show that the "special circumstances" exception applies.  Therefore, Freeport's motion should be denied, and litigation in New York should proceed.

### 2.    The *Colorado River* Doctrine Does Not Require Abstention.

Though Freeport cites *Brillhart/Wilton*, that abstention doctrine, as demonstrated below, is inapplicable.  Instead, the only relevant abstention doctrine is *Colorado River*.  "Abstention under *Colorado River* applies where . . . 'state and federal courts exercise concurrent jurisdiction simultaneously.'"  *Village of Westfield v. Welch's*, 170 F.3d 116, 120 (2d Cir. 1999) (quoting *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996)).[20]  In other words, "a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River."  *Id.* at 118.

---

[19] *Id.*

[20] *See also Dittmer v. County of Suffolk*, 146 F.3d 113, 117-18 (2d Cir. 1998) ("The principles of *Colorado River* are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions.'") (quoting *Kirkbride v. Contiental Cas. Co.*, 933 F.2d 729, 734 (9th Cir. 1991)).

As demonstrated above, this action and the California litigation are not parallel. Nevertheless, even assuming further analysis under the *Colorado River* factors is necessary, abstention is not warranted. "To determine whether abstention under *Colorado River* is appropriate, a district court is required to weigh six factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* at 121 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). The factors are:

> (1) the assumption of jurisdiction by either [state or federal] court over any *res* or property;
> (2) the inconvenience of the federal forum;
> (3) the avoidance of piecemeal litigation;
> (4) the order in which jurisdiction was obtained;
> (5) whether state or federal law supplies the rule of decision; and
> (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.[21]

Abstention under *Colorado River* would be inappropriate. First, no *res* or property is at issue; therefore, the first *Colorado River* factor is irrelevant. Second, Century has demonstrated above that this forum is not inconvenient.

Third, allowing this suit to proceed will not result in piecemeal litigation. As the above evidences, the California action is based on a settlement agreement between Freeport and its other insurers, not Century. Only Freeport and Century are parties to the contracts at issue in this action, the Century policies. Thus, the two actions involve entirely separate issues, and permitting litigation of this action to go forward will not cause piecemeal litigation. Further, even if there were a potential for piecemeal litigation:

> That is not enough . . . to warrant abstention in light of the fact that all other factors weigh heavily in favor of the retention of jurisdiction. In addition, . . . the potential for piecemeal litigation is always present in potentially parallel

---

[21] *Id.*

litigations, and the courts must look beyond this factor to ascertain whether abstention is appropriate.[22]

Fourth, as shown *supra*, this action was filed first.  Moreover, as Freeport concedes, the California action has not advanced any more than this action.  (*See* Freeport Br. at 23 ("[T]here has been no Answer filed in either action and no discovery has taken place in either court.").)  Indeed, as discussed below, it is even questionable if the California action will even get off the ground due to Freeport's failure to honor its contractual obligation to mediate prior to filing suit.

Fifth, state law supplies the rule of decision, but the coverage issues will be determined under the law of New York, where the Century policies were negotiated and issued, not the law of California, which has absolutely no interest in the resolution of a dispute under policies issued in another state to a non-resident.  Certainly, this Court is just as capable as a California state court of applying New York law to this coverage dispute.   Moreover, "although the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Village of Westfield*, 170 F.3d at 124 (citations omitted).  Compared with the typical insurance coverage action, this dispute poses issues that are neither novel nor particularly complex.

Finally, the California action will not adequately protect Century's rights.  As the Second Circuit explained in *Village of Westfield*:

> In analyzing the sixth factor in the special circumstances test, federal courts are to determine whether the "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28, 103 S.Ct. 927.  The Supreme Court has stated that "[i]f there is any substantial doubt as to this, it would be a serious

---

[22] *In re Comverse Tech., Inc. Derivative Litig.*, 2006 WL 3193709, at *6 (E.D.N.Y. Nov. 2, 2006); *see also Colorado River*, 424 U.S. at 816 ("[M]ere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction.").

abuse of discretion to grant the stay or dismissal at all." *Id.* This factor is "more important when it weighs in favor of federal jurisdiction." [citation].[23]

Even if it is deemed parallel with this action (which it is not), the California action may not adequately Century's rights. It is unclear whether the California action will even be permitted to go forward. Freeport sought an extension of time to respond to the Complaint in this action to purportedly allow it time to mediate with its insurers in the California action, but Freeport did not mediate as it represented to the Court it was required to do. Instead, Freeport filed suit in California in apparent violation of its contractual obligation. It is, therefore, unknown whether the California court will even permit the action to go forward, or instead will require Freeport to honor is contractual obligation and order mediation. If the California action proceeds to mediation, Century, which is not a party to the mediation agreement, will be no more than a bystander. And more importantly, if mediation proves successful, only the claims now pending here in New York would remain, which as stated exhaustively above have absolutely no tie to California whatsoever. Thus, *Colorado River* also does not support abstention. Consequently, Freeport's motion should be denied.

### 3.    The *Brillhardt/Wilton* Abstention Doctrine Is Inapplicable.

The *Brillhardt/Wilton* abstention doctrine clearly does not even apply in this case. As this Court has recognized, "the Second Circuit Court of Appeals has made it clear that it believes [*Brillhardt/*]*Wilton* is inapposite where declaratory relief is sought in addition to damages. Specifically, the Court of Appeals held that *Wilton* does not apply where a plaintiff does not seek '*purely* declaratory relief.'" *General Star Intern. Indem. Ltd. v. Chase Manhattan Bank*, 2002 WL 850012, at *5 (S.D.N.Y. May 03, 2002) (quoting *Village of Westfield*, 170 F.3d at 124-25 n.

---

[23] *Id.*

5).[24]  Century's amended complaint seeks not only declaratory relief but also money damages under a *quantum meruit*/unjust enrichment theory.  Therefore, the *Brillhardt/Wilton* abstention doctrine is inapplicable.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Schepp*, 2008 WL 1994856, at *4 (E.D.N.Y. May 08, 2008).

There is also no merit to Freeport's argument that Century amended its complaint in this action to add a claim of unjust enrichment solely to avoid *Brillhart/Wilton*.  Through its Amended Complaint, Century seeks a declaration regarding its rights and responsibilities regarding the entire underlying defense, as well as, reimbursement of approximately $667,000 in past defense costs improperly billed to Century.  Significantly, Century recently discovered that Defendant Freeport-McMoRan has improperly allocated defense costs to Century for years when the underlying Braithwaite, Louisiana facility was – **dormant**.  This resulted in an approximate 50% overcharge to Century out of almost $1.4 million paid to date.  Thus, contrary to Freeport's conclusory assertions, Century's unjust enrichment claim actually outweighs Defendant Freeport's claim for the document review costs.

Additionally, Century seeks reimbursement of past defense costs improperly allocated to Century that had nothing to do with the Louisiana litigation or any claimant alleging exposure during a Century policy period.  In particular, Century has recently discovered invoices allocated predominately to Century, yet most of the work on the invoice relates to other non-Braithwaite claimants.  As an example, Century was billed over 57% of a March 4, 2007 invoice purportedly relating to an alleged Braithwaite claimant, Mr. Abadie Albert.[25]  Although Century was billed for the majority of this invoice, the work described therein has little, if anything, to do with Mr.

---

[24] *See also General Star Indem. Co. v. Anheuser-Busch Cos., Inc.*, 199 F.3d 1322, 1999 WL 1024708, at *1 (2d Cir. Nov. 8, 1999) ("It is well-established . . . that a district court may not invoke *Brillhart*[*/Wilton*] abstention if the suit before it involves claims for damages as well as a request for declaratory relief.").
[25] *See* Enviro-Tox Loss Services Invoice, dated Mar. 4, 2007, annexed to the Heskin Decl. as Ex. A.

Albert's claim.   Rather, the bulk of the invoice relates to the deposition of a Mr. Ronald Woessner, whose exposure period is April 1, 1966 to September 1, 1966 and has no possible relation to the Braithwaite facility, which did not even begin operations until 1973.   Indeed, at least $3,000 out of this $5,000 invoice directly relates to entries involving Mr. Woessner's claim and not Mr. Albert's claim.   Yet, Century has been billed for more than half of this invoice. These claims are not remotely trivial and are clearly not motivated solely to preserve forum as Defendant Freeport contends.

Further, Freeport's position is not supported by *General Star Int'l Indem. Ltd. v. Chase Manhattan Bank*, 2002 WL 850012 (S.D.N.Y. May 3, 2002).   The *General Star* held that abstention was warranted under *Colorado River*, reasoning that the state and federal actions at issue were parallel, even though the state action did not specifically include the federal plaintiffs' RICO claim.   The *General Star* Court explained that the federal plaintiffs' RICO claim was duplicative of certain of their other claims, including fraud, and that the addition of the RICO claim was "pretextual, designed to manufacture jurisdiction." *Id.* at *10.

*General Star* is distinguishable.   First, Century's unjust enrichment claim is not duplicative of its declaratory judgment claims.   Century has not plead them in the alternative, because each seeks different relief and relies on different theories.   Second, Century did not add the unjust enrichment claim to create federal jurisdiction.   Century does not contend that this case involves a federal question, and does not assert that any federal claim should factor into the Court's abstention analysis.   Thus, *General Star* also does not support abstention.

> **4.      Even Assuming the *Brillhardt/Wilton* Doctrine is Applicable, It Does Not Support Abstention.**

Even assuming the *Brillhardt/Wilton* doctrine applies, it does not require abstention in this instance.   Like *Colorado River*, the threshold issue under *Brillhardt/Wilton* "is whether a

parallel proceeding was pending in state court at the time the plaintiff filed the declaratory judgment action." *UnitedHealth Group, Inc. v. Lexington Ins. Co.*, 2006 WL 695523, at *6 (D. Minn. Mar. 17, 2006). The California action is not a parallel proceeding that commands deference. Unlike the instant dispute under the Century policies, the dispute involving Freeport and its other insurers in the California action revolves around the alleged breach of a *settlement agreement* to which Century is not a party. Thus, whether an obligation exists will be governed by the express terms of the *settlement agreement*, not the terms, conditions or exclusions of an *insurance policy*. Thus, the California action and this action do not involve the same issues under the same contracts. Therefore, there is no parallelism. Consequently, abstaining under *Brillhardt/Wilton* would be inappropriate.

**5.    Abstention is Not Warranted Because New York Law Applies and Thus New York Has the Most Significant Relationship to this Dispute.**

It is well-settled law that under New York choice-of-law principles, a New York court will apply the law of only one state's law to an insurance policy and that state's law is the domicile of the insured at the time of issuance. In Defendant Freeport's apparent attempt to argue that Louisiana law applies to this dispute, Freeport wrongly suggests that choice-of-law is determined by the happenstance of the particular subsidiary or other insured interest claiming coverage at the time. Contrary to its apparent belief, however, choice-of-law is determined by the interests and contacts of **only** the "Named Insured."

To be sure, a fundamental axiom of New York choice-of-law principles is that only **one** state's law applies to an insurance contract and that state's law is determined by the principal location of the insured risk. Significantly, the principal location of the insured risk is determined by the "Named Insured" and not the potentially countless number of subsidiaries or other insured interests. Thus, where as here, a single policy of insurance covers numerous risks and

22

"additional interests" blanketed throughout the country, New York courts consistently deem the risk insured to be located principally in **one** state and apply only **one** state's law to the contract. And, that **one** state's law is determined by those interests and contacts of the "Named Insured."

They do not, as Freeport apparently argues, apply the law of **multiple** states in which every "additional interest" may reside. *See Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S.2d 30, 36 (N.Y. Sup. Ct. App. Div. 2006), *aff'd*, 876 N.E.2d 500 (N.Y. 2007) ("'[W]here the insured risk is scattered throughout multiple states, courts still deem the risk to be located principally in one state [], namely, in the state of the insured's domicile at the time the policy was issued.'") (quoting *Maryland Cas. Co. v. Continental Cas. Co.*, 332 F.3d 145, 153 (2d Cir. 2003)).[26]

Indeed, in echoing the fundamental principle that only **one** state's law applies to an insurance contract, the First Department flatly rejected a **multiple** law of the site theory on the basis that "the court eventually would be forced to apply the law of many states to the same issues and contracts. Such an approach would violate the principles underlying New York's choice of law rules which promote, inter alia, predictability and uniformity of results and ease of determination of law." *Rheem Mfg. Co. v. Home Indem. Co.*, Index No. 6349/89, slip. op. (N.Y. Sup. Ct. July 20, 1998), *aff'd*, 723 N.Y.S.2d 354 (N.Y. Sup. Ct. App. Div. 2002).[27]

---

[26] *See also Steadfast Ins. Co. v. Sentinel Real Estate Corp.*, 727 N.Y.S.2d 393, 398 (N.Y. Sup. Ct. App. Div. 2001) (where policy covers risks arising from the "nationwide scope of [the insured's] operations, the principal location of the insured risk should be deemed to be the state where [the] insured is incorporated and has its principal place of business"); *Maryland Cas.*, 382 F.3d at 153 (rejecting nearly identical argument that the laws of multiple states ought to be applied to a single insurance policy because the argument is irreconcilable with New York law and traditional concerns of judicial economy and uniformity).

[27] *Accord Steadfast Ins. Co. v. Casden Props., Inc.*, 819 N.Y.S.2d 213 (N.Y. Sup. Ct. 2006) ("'**The drafters of the Restatement did not intend for courts to apply the laws of more than one state to an insurance policy** . . . the Restatement intended that 'where the insured risk is located in more than one state, courts should apply the law of the **one** state in which the parties understood the risk to be **principally** located.'") (quoting *Maryland Cas.*, 332 F.3d at 152) (emphasis added); *Olin Corp. v. Ins. Co. of N. Am.*, 743 F. Supp. 1044, 1049 (S.D.N.Y. 1990), *aff'd*, 929 F.2d 62 (2d Cir. 1991) (applying New York choice of law rules to determine governing law concerning insurance coverage for pollution claims and rejecting a law of the site approach because "the risks covered by the insurance

23

The **one** state's law that New York courts have determined to be the paramount factor in selecting the law controlling insurance contracts covering multi-state risks is the state of the "Named Insured's" domicile.  As the First Department reasoned in *Foster Wheeler*:

> The state of the insured's domicile is a fact known to the parties at the time of contracting, and (in the absence of a contractual choice-of-law provision) application of the law of that state is most likely to conform to their expectations . . . .  Moreover, the state of the insured's domicile can be ascertained in any subsequent litigation without fact-intensive inquiry or unguided weighing of different contacts, and making the insured's domicile the primary factor in selecting applicable law minimizes the likelihood that contemporaneous policies will be deemed governed by the laws of different states.  Thus, in addition to rendering the resolution of the choice-of-law issues less difficult, adoption of a rule to apply the law of the insured's domicile makes it more likely that consistent and uniform results will be reached in different cases.[28]

Obviously, the **one** state with the most significant interest here is New York, the principal place of business of the "Named Insured," as well as, the place of issue.  Freeport's argument that Louisiana somehow has the most significant interest to these policies is clearly erroneous.  Moreover, although common sense dictates that the principal location of the insured risk is determined by the "Named Insured" rather than the happenstance of whichever subsidiary or other insured interest may be seeking coverage at the time, Freeport's argument to the contrary is also silenced by *McGinniss v. Employers Reinsurance Corp.*, 648 F. Supp. 1263 (S.D.N.Y.

---

policies were not confined to any one particular place"); *Employers Ins. Co. of Wausau v. Duplan Corp.*, 899 F. Supp. 112, 117 (S.D.N.Y. 1995) (same).

[28] 822 N.Y.S.2d at 34; *see also Gulf Underwriters Ins. Co. v. Verizon Communications, Inc.,* 2007 WL 2175564 (N.Y. Sup. Ct. June 19, 2007) (citing *Foster Wheeler* for proposition that in cases involving liability insurance covering multi-state risks, the state of the insured's domicile is the principal location of the insured risk, which, under New York law, "is the controlling factor in determining the law applicable to a liability insurance policy"); *Munzer v. St. Paul Fire & Mar. Ins. Co.*, 610 N.Y.S.2d 389, 391 (N.Y. Sup. Ct. App. Div. 1994) (holding insured's home state was "primary factor" in ascertaining the law governing a liability policy covering risks in multiple states); *Travelers Cas. Sur. Co. v. Honeywell Int'l Inc.*, 2007 N.Y. Misc. LEXIS 7758, at *9 (N.Y. Sup. Ct. Oct. 2, 2007) ("[W]here the policies at issue cover risks in numerous states, however, New York law presently holds that the controlling law to be applied belongs to the jurisdiction of the policyholder's principal place of business, that location being the 'principal location of the insured risk' and the place having the most significant relationship for purposes of analysis under §193") (citing *Foster Wheeler*); *ACE Am. Ins. Co. v. XL Ins. Am.*, 2007 N.Y. Misc LEXIS 8559, at *3 (N.Y. Sup. Ct. Nov. 7, 2007) ("[I]n addition to rendering the resolution of choice-of-law issues less difficult, adoption of a rule to apply the law of the insured's domicile makes it more likely that consistent and uniform results will be reached in different cases.").

1986).  In *McGinniss*, an author residing in Massachusetts sought coverage as an "Additional Insured" under a general liability policy issued to its publisher.  The insurer was a Missouri company and the publisher was a New York resident.  Notably, the publisher was not even a party to the action.  Nevertheless, the court held that New York had the most significant interest in the outcome of the coverage dispute because choice-of-law is determined by the interests of the "Named Insured" and not the interests of some random "Additional Insured."  New York law thus applied because the publisher was the actual "Named Insured" on the policy and its residence was New York (as well as the policies having been issued in New York).  *See id.* at 1267.  Here, Amax is indisputably the "Named Insured" on the Century policies.  It is a New York corporation with its principal place of business located in New York.

## IV.  <u>CONCLUSION</u>

This litigation should proceed in New York.  By no means is Defendant Freeport a "stranger" to this action.  Freeport has unquestionably sought insurance coverage directly from Century and as a result Century has issued payment directly to Defendant Freeport.  Century now seeks to get that money back based on significant improper past allocations.  New York also has the most significant contacts to this dispute.  The policies were issued to a New York corporation with its principal place of business in New York.  Freeport's own national coordinating counsel also resides right here in New York City.  Conversely, California has absolutely no nexus to this dispute at all.  Moreover, none of the abstention doctrines that Defendant Freeport clings to requires deference to the California state court action, which is premised on a dispute between Freeport and its *other insurers* under a *settlement agreement* to which Century is not even a party and is governed by California law.  Finally, given that its law applies to the Century policies, New York undeniably has the most significant relationship to the dispute between Defendant Freeport and Century.   Therefore, Defendant Freeport's Motion should be denied.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

Dated:  June 12, 2008

By:  \_\_\_\_/s/ Rafael Vergara_____
Rafael Vergara (RV-4098)
One Penn Plaza, Suite 1801
New York, NY 10119
Phone: 212-244-9500
-and-
Shane R. Heskin (SH-9984)
1800 One Liberty Place
Philadelphia, PA 19103
Phone:  215-864-7000
*Attorneys for Plaintiff,*
*Century Indemnity Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA and THE CONTINENTAL INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> versus <br><br> FREEPORT-MCMORAN COPPER & GOLD INC., AS THE CLAIMED SUCCESSOR TO PHELPS DODGE CORPORATION, AS THE CLAIMED SUCCESSOR TO CYPRUS AMAX MINERALS COMPANY, AS THE CLAIMED SUCCESSOR TO AMAX, INC. AND AMAX METALS RECOVERY, INC., AS SUCCESSOR TO AMERICAN METAL CLIMAX, INC., <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : **CIVIL ACTION NO. 08 CV 02012** <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## CERTIFICATION OF SHANE R. HESKIN

I, Shane R. Heskin, certify as follows:

1.      I am a partner with the law firm of White and Williams, LLP, counsel to plaintiff Century Indemnity Company ("Century") in this matter.

2.      I submit this Affidavit in support of Century's Opposition to the Motion to Dismiss or Stay This Action of Defendant Freeport-McMoRan Copper & Gold Inc. (sometimes referred to below as "Freeport").

3.      Annexed hereto as Exhibit A is a true and correct copy of an Enviro-Tox Loss Services, Inc. ("ETLS") invoice, dated March 4, 2007.

4.      Annexed hereto as Exhibit B is letter from Kasowitz, Benson, Torres, & Friedman LLP to Freeport-McMoRan Copper & Gold, Inc., dated January 11, 2008.

5.      Annexed hereto as Exhibit C is a true and correct copy of a payment statement, dated May 10, 2008.

6.      Annexed hereto as Exhibit D is a true and correct copy of the Affidavit of Margo Dedeyan, dated June 12, 2008.

7.      Annexed hereto as Exhibit E is a true and correct copy of excerpts from Freeport's 2007 Annual Report.

8.      Annexed hereto as Exhibit F is a true and correct copy of a letter from ETLS to Resolute Management, Inc.-Mid-Atlantic Division ("Resolute"), dated December 21, 2007.

9.      Annexed hereto as Exhibit G is a true and correct copy of a letter from Freeport to Resolute, dated January 11, 2008.

10.      Annexed hereto as Exhibit H is a true and correct copy of a letter from Freeport to the Court, dated April 16, 2008.

11.      Annexed hereto as Exhibit I is a true and correct copy of an e-mail from Mark Plumer to me, dated April 4, 2008

Pursuant to 28 U.S.C. §1746, I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Dated: June 12, 2008                                      _Shane R. Heskin_____

                                                          Shane R. Heskin

# EXHIBIT A

*Enviro-Tox Loss Services, Inc.*

*P.O. Box 172859*
*Arlington, Texas 76003-2859*
*2421 Callender Road Suite 123*
*Mansfield, TX 76063*
*www.etls.net*

*Larry Poling and Joseph Peters*
*Phone: 817-561-9675*
*Fax: 817-561-9678*
*P.O. Box 172859*
*Arlington, TX 76017*

*Gene Waymon*
*Phone: 508-746-3190*
*Fax: 508-746-4247*
*P.O. Box 3253*
*Plymouth, MA 02361*

March 4, 2008

Ms. Margo Dedeyan
Claims Specialist
Resolute Management Inc.
Mid-Atlantic Division
United Plaza Suite 700
30 South 17th Street
Philadelphia, PA  19103

RE:   Enviro Tox Files:        Multiple AMAX
      Louisiana Asbestos Premises Litigation

Dear Ms. Dedeyan:

Enclosed please find one invoice from the Middleberg Riddle and Gianna
Law Firm for which Resolute Management Inc. (INA) is responsible for
paying a portion as outlined on the spreadsheet identified as
Middleberg Riddle and Gianna Invoice 65385. Also attached are the usual
worksheets indicating the dates of exposure and the share owed by each
carrier involved.  Please issue your check in the amount of **$3,121.41**
payable to **Freeport-McMoran, Copper & Gold**, as they have already paid
this invoice, and send directly to our office.  Please refer to the
invoice number and our file number on all correspondence.

I thank you in advance for your assistance and cooperation in this
matter.  Should you have any questions in this matter, please do not
hesitate to call me.

Sincerely,

*Wendy McGill*

Wendy McGill
Enviro-Tox Loss Services

Enclosures- Invoice 65385

Middleberg, Riddle, & Gianna
Invoices submitted for services rendered through the month of: January 2008

Dated: 02/01/08
Invoice No. 65385
E-Counsel No: 2006-1614

| Case Name | ETLS Claim # | Tab # | Invoice # | INA Share | Cont'l Share | Phelps Share | Indemnity | Fee to File | Expense to File | Misc Fee to File | Phelps Dodge Total Owed | Expected Future Reimbursements |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Abadie, Albert | 50003 | 216 | 65385 | $3,121.41 | $2,311.84 | $ - | | $ 5,231.50 | $ 201.75 | | $ 5,433.25 | $ 5,433.25 |
| TOTAL | | | | $3,121.41 | $2,311.84 | $ - | | $ 5,231.50 | $ 201.75 | | $ 5,433.25 | $ 5,433.25 |

PDI
Asbestos Legal Fees

Amount Paid:
Company:
Description:
Resp. Corp:
Cost Center:
Account #:
Project #:
Date:

PHELPS DODGE PAYS 100% OF INVOICES AND ETLS BILLS CARRIERS FOR THEIR PORTION

Created at ETLS

1
3/3/2008

LA Amax Invoice Pro-Ration Form

Tab No.: 216 ETLS File #: 50003    Case Name: **Abadie, Albert**

Matter #: **2006-1614**    Invoice #: **65385**    Inv. Date: **2/1/08**

Dates of Service: **1/2/08-1/31/08**

Vendor Name: **Middleberg, Riddle & Gianna**

TIN #: **72-0894859**

Vendor Address:    **717 North Harwood**
                   **Suite 2400**
                   **Dallas, TX  75201**

Invoice Fee:  **$5,231.50**    Adjusted Fee:    **$5,231.50**

Invoice Exp.: **$201.75**  Adjusted Exp.:    **$201.75**

Total Invoice: **$5,433.25**   Adjusted Total:    **$5,433.25**

Reason for Adjustment:

Total Months Exposure: **47**

Months INA(ACE) Exposure: **27;**  Share Owed: **57.45%**

Months Cont'l Exposure: **20;**   Share Owed: **42.55%**

Months Phelps Exposure: **0;**    Share Owed: **0%**

Plaintiff: **Louis E. Fiegenschue**      Exposure Dates: **10/1/72 to 9/1/76**
Plaintiff: **Marshall V. Holloway**      Exposure Dates: **7/1/74 to 12/1/74**
Plaintiff: **Ronald A. Woessner**        Exposure Dates: **4/1/66 to 9/1/66**
Plaintiff:               Exposure Dates:
Plaintiff:               Exposure Dates:
Plaintiff:               Exposure Dates:
Plaintiff:               Exposure Dates:
Plaintiff:               Exposure Dates:
Plaintiff:               Exposure Dates:

| CARRIER | INA(ACE) Share | CONTINENTAL | PHELPS | TOTAL |
|---------|---------|---------|--------|-------|
| FEE | $3,005.50 | $2,226.00 | $0.00 | $5,231.50 |
| EXPENSE | $115.91 | $85.84 | $0.00 | $201.75 |
| TOTAL | $3,121.41 | $2,311.84 | $0.00 | $5,433.25 |

ETLS File No.: **50003** Case Name: **Abadie, Albert**
**Overall Litigation Exposure Periods: 4/1/66 - 9/1/76**

| Carrier | Policy Number | Effective Date | Expiration Date | Months included | * Months Exposure Per Policy Period |
|---|---|---|---|---|---|
| INA (ACE) | LB29077 | 1/1/1959 | 1/1/1965 | 72 | |
| INA (ACE) | LB39736 | 1/1/1965 | 1/1/1968 | 36 | |
| INA (ACE) | ALB47168 | 1/1/1968 | 1/1/1971 | 36 | |
| INA (ACE) | ALB47212 | 1/1/1971 | 1/1/1972 | 12 | |
| INA (ACE) | ALB47240 | 1/1/1972 | 1/1/1974 | 24 | 15 |
| INA (ACE) | ALB47276 | 1/1/1974 | 1/1/1975 | 12 | 12 |
| INA (ACE) Total | | | | 192 | 27 |
| | | | | | |
| Continental | L3320862 | 1/1/1975 | 1/1/1976 | 12 | 12 |
| Continental | L3618826 | 1/1/1976 | 1/1/1977 | 12 | 8 |
| Continental | L1184328 | 1/1/1977 | 1/1/1980 | 36 | |
| Continental | SRL3635913 | 1/1/1980 | 1/1/1981 | 12 | |
| Continental | SRL3636099 | 1/1/1981 | 1/1/1982 | 12 | |
| Continental | SRL3636291 | 1/1/1982 | 1/1/1983 | 12 | |
| Continental | SRL3636677 | 1/1/1983 | 1/1/1984 | 12 | |
| Continental | SRL3636859 | 1/1/1984 | 1/1/1985 | 12 | |
| Continental | SRL3344412 | 1/1/1985 | 4/1/1986 | 15 | |
| | | | | | |
| Continental Total | | | | 135 | 20 |
| | | | | | |
| Claim Made Phelps | | 4/1/1986 | forward | , | 0 |
| Phelps Prior to 1959 | | | | | 0 |
| Phelps Total | | | | | 0 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Plant Purchased 1/25/71

*Plant Dormant 1960 - 1971

*Middleberg Riddle & Gianna*

Attorneys and Counselors

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

TAXPAYER I. D. NO 72-0894859

February 1, 2008

Bill Number  65385
File Number 04851-0005

AMAX METALS RECOVERY, INC.
C/O ENVIRO-TOX LOSS SERVICES, INC.
2421 CALLENDER ROAD, SUITE 123
MANSFIELD, TX  76063
ATTN:  BOB MEDLIN

RECEIVED

FEB 08 2008

Enviro-Tox Loss
Services

**FOR PROFESSIONAL SERVICES**

Through January 31, 2008

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

    PHELPS DODGE MATTER: 2003-0304

**LEGAL SERVICES**

| Date | Init. | Description | Hrs | Rate | Amount |
|------|-------|-------------|-----|------|--------|
| 01/02/08 | JDP | Revised language for updated quarterly report. | 0.20 Hrs | 225/hr | $45.00 |
| 01/04/08 | BCB | Revised the December 2007 Abadie Quarterly Report per revisions of Dawn Palmisano and John Person relative to the language concerning the pace of asbestos cases filed by LeBlanc Waddell/Baron & Budd. | 0.20 Hrs | 65/hr | $13.00 |
| 01/04/08 | MH | 1/2 - Receipt/review Motion to Substitute Counsel and Request for Notice filed on behalf of Olin Corporation; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/07/08 | BCB | Finalized December 2007 Quarterly Report in order to send to client on this date. | 0.10 Hrs | 65/hr | $6.50 |
| 01/07/08 | BCB | Burned CD's of AMRI and CCC December 2007 Quarterly Reports in order to send via Federal Express to Michael Hutchins and Bob Medlin on this date. (time apportioned) | 0.10 Hrs | 65/hr | $6.50 |
| 01/10/08 | SAL | Apportioned time 1/2 to receipt and review plaintiff's Motion for Order to set Pre-Trial conference. | 0.10 Hrs | 225/hr | $22.50 |

**If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200**

**NET DUE 30 DAYS**

*Middleberg Riddle & Gianna*                                      **Attorneys and Counselors**

TAXPAYER I. D. NO 72-0894859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

AMAX METALS RECOVERY, INC.

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

PHELPS DODGE MATTER: 2003-0304

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 01/12/08 | MH | 1/2 -Receipt/review Order setting Initial Pre-Trial Conference; confirm plaintiff named has claim against client; update docket for attorney attendance; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/16/08 | MH | Receipt/review deposition offers from LeBlanc & Waddell; determine if claims filed against client; update dockets to reflect for attorney monitoring; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/16/08 | SAL | Apportioned time (1/2) to receipt and review revised deposition notices for various plaintiffs' for January/February 2008. | 0.10 Hrs | 225/hr | $22.50 |
| 01/17/08 | MH | Receipt/review correspondence from LeBlanc & Waddell confirming deposition schedule from 1/17 - 2/12/2008; confirm docketed; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/18/08 | MH | 1/2 - Receipt/review deposition offer for plaintiff Ronald Woessner; confirm claim filed against client; update docket to reflect tentative date and time; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/18/08 | SAL | Apportioned time (1/2) to receipt and review from Deutsch, Kerrigan & Stiles deposition notice for plaintiff Larry Brown. | 0.10 Hrs | 225/hr | $22.50 |
| 01/18/08 | SAL | Apportioned time (1/2) to receipt and review deposition notice for plaintiff Ronald Woesher. | 0.10 Hrs | 225/hr | $22.50 |
| 01/21/08 | MH | Issue reminder of upcoming case events and deadlines for attorney and paralegal compliance. | 0.10 Hrs | 65/hr | $6.50 |
| 01/22/08 | DP | Analyze calendar regarding upcoming pre-trial conference. | 0.20 Hrs | 195/hr | $39.00 |
| 01/24/08 | JDP | Receipt and review of updated deposition calendar through mid-February from plaintiff counsel. | 0.20 Hrs | 225/hr | $45.00 |
| 01/24/08 | JDP | Telephone conference with Marie Horne re: assignment for deposition of plaintiff Ronald Woessner 1/31/08. | 0.20 Hrs | 225/hr | $45.00 |

**If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200**

**NET DUE 30 DAYS**

*Middleberg Riddle & Gianna*                                        **Attorneys and Counselors**

TAXPAYER I. D. NO 72-0894859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

AMAX METALS RECOVERY, INC.

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

PHELPS DODGE MATTER: 2003-0304

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 01/24/08 | MH | Receipt/review correspondence from LeBlanc & Waddell containing deposition schedule for 1/24 - 2/19/08; confirm docketed for attorney attendance and/or monitoring; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/24/08 | MH | Follow up with attorneys Person and Moser regarding deposition assignment for Ronald Woessner; update dockets to reflect. | 0.20 Hrs | 65/hr | $13.00 |
| 01/25/08 | MH | 1/2 - Receipt/review correspondence from LeBlanc & Waddell advising of date change of case status conference; update docket to reflect; follow up with attorneys Person and Palmisano and compile and provide documents for her reference at the conference; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/25/08 | MH | Receipt/review deposition transcript of plaintiff Ronald Woessner taken 5/28/02 in another case from co-defendant; forward to attorneys Person, Moser and Palmisano; save into case systems; code and route for filing. | 0.20 Hrs | 65/hr | $13.00 |
| 01/26/08 | JDP | Receipt and review of emails re: location of prior deposition of plaintiff Ronald Woessner from other cases. | 0.20 Hrs | 225/hr | $45.00 |
| 01/27/08 | DP | Prepare for status conference with Judge Burns including analyze AMRI deposition testimony of Louis Fiegenschue and assess claims of plaintiff Fiegenschue. | 2.30 Hrs | 195/hr | $448.50 |
| 01/28/08 | DP | Attend status conference with Judge Burns at 19th JDC including travel to and from Court in Baton Rouge, LA. (apportioned time ½; 4.20 total) | 2.10 Hrs | 195/hr | $409.50 |
| 01/28/08 | JDP | Apportioned time (1/3) for receipt and review of updated deposition calendar from plaintiff counsel through 2/19/08 (no plaintiffs suing AMRI). | 0.20 Hrs | 225/hr | $45.00 |
| 01/29/08 | LPM | Prepare for the continuation deposition of plaintiff, Ronald Woessner, including analysis of his lengthy social security printout, work history sheets, medical diagnosing report, discovery responses and other materials provided by plaintiffs; begin outlining potential questions. | 3.10 Hrs | 195/hr | $604.50 |

**If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200**

**NET DUE 30 DAYS**

*Middleberg Riddle & Gianna*                              **Attorneys and Counselors**

TAXPAYER I. D. NO 72-0894859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

AMAX METALS RECOVERY, INC.

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

PHELPS DODGE MATTER: 2003-0304

| | | | | | |
|---|---|---|---|---|---|
| 01/30/08 | DP | Conference with John Person regarding 1/28/08 status conference and assignment of trial date regarding plaintiff, Louis Fiegenschue. | 0.30 Hrs | 195/hr | $58.50 |
| 01/30/08 | JDP | Telephone conference with Dawn Palmisano re: status conference with court and selection of 4/22/08 trial date re: plaintiff, Fiegenschue. | 0.30 Hrs | 225/hr | $67.50 |
| 01/30/08 | LPM | Study the 63 page deposition transcript of plaintiff, Ronald Woessner, given as a co-worker witness in another case on 5/28/2002, in preparation for the continuation of his own deposition tomorrow. | 1.70 Hrs | 195/hr | $331.50 |
| 01/30/08 | LPM | Study the 177-page transcript of Ronald Woessner, which testimony was given on 6/3/2005, with particular attention to his testimony about working at a nickel plant in the 1970's, in preparation for his continuation deposition tomorrow. | 3.60 Hrs | 195/hr | $702.00 |
| 01/30/08 | LPM | Study updated work history charts and new medical diagnosing reports from 2006 and 2007, in preparation for Ronald Woessner's continuation deposition tomorrow. | 0.90 Hrs | 195/hr | $175.50 |
| 01/30/08 | LPM | Study deposition summary from day #1 of Ronald Woessner's deposition, and begin drafting updated summary for his continuation deposition tomorrow. | 1.00 Hrs | 195/hr | $195.00 |
| 01/30/08 | LPM | Cross-reference work history charts with social security printout, noting 16 year gap in employers on his social security printout; outline additional questions to ask Ronald Woessner tomorrow. | 1.90 Hrs | 195/hr | $370.50 |
| 01/30/08 | MH | Receipt/review Jury Trial Order; calculate date jury bond due; update dockets to reflect trial date, Pre-Trial Order date and jury bond date; create trial group in case systems; code and route for filing. | 0.40 Hrs | 65/hr | $26.00 |
| 01/31/08 | DP | E-mail exchange with Mike Hutchins regarding status conference with Judge Burns, trial date assignment, deposition testimony of Louis Fiegenschue, status of case and independent medical examination of Fiegenschue. | 1.20 Hrs | 195/hr | $234.00 |

**If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200**

**NET DUE 30 DAYS**

## *Middleberg Riddle & Gianna*

Attorneys and Counselors

TAXPAYER I. D. NO 72-0894859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

AMAX METALS RECOVERY, INC.

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

PHELPS DODGE MATTER: 2003-0304

| Date | Initials | Description | Hrs | Rate | Amount |
|------|----------|-------------|-----|------|--------|
| 01/31/08 | DP | Draft and send e-mail to Marie Horne and Marissa Iannazzo regarding independent medical examination of plaintiff, Louis Fiegenschue. | 0.10 Hrs | 195/hr | $19.50 |
| 01/31/08 | DP | Revise summary of deposition of plaintiff Louis Fiegenschue. | 0.40 Hrs | 195/hr | $78.00 |
| 01/31/08 | LPM | Travel to Baton Rouge and attend day #2 of the discovery depo of plaintiff, Ronald Woessner, which depo was not completed once it became apparent he has an updated Social Security Print Out that includes 13 more years of employment; Return travel following same. | 5.40 Hrs | 195/hr | $1,053.00 |

|  |  |  |
|--|--|--|
| | TOTAL LEGAL SERVICES | $5,231.50 |

**LEGAL SERVICES SUMMARY**

| Name | Hrs | Rate | Amount |
|------|-----|------|--------|
| BRYAN C. BAGNETTO | 0.40 Hrs | 65/hr | $26.00 |
| DAWN PALMISANO | 6.60 Hrs | 195/hr | $1,287.00 |
| JOHN D. PERSON | 1.30 Hrs | 225/hr | $292.50 |
| LORI P. MOSER | 17.60 Hrs | 195/hr | $3,432.00 |
| MARIE HORNE | 1.60 Hrs | 65/hr | $104.00 |
| SARAH ANN LOWMAN | 0.40 Hrs | 225/hr | $90.00 |
| | 27.90 Hrs | | $5,231.50 |

**DISBURSEMENTS**

COPIES

| Date | Description | Amount |
|------|-------------|--------|
| 01/03/08 | 14 copies are $.10 cents each. | 1.40 |
| 01/16/08 | 18 copies are $0.10 cents each. | 1.80 |
| | | $3.20 |

DEPOSITIONS

**If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200**

## *Middleberg Riddle & Gianna*

Attorneys and Counselors

TAXPAYER I. D. NO 72-0894859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

AMAX METALS RECOVERY, INC.

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

    PHELPS DODGE MATTER: 2003-0304

**DISBURSEMENTS**

DEPOSITIONS

| | | |
|---|---|---|
| 01/09/08 | Williams and Jankowski.  One copy of deposition of Timothy Hickey taken 12/10/07.  Invoice No. 49628 dated 1/3/08 split with file 1881-0247. | 175.83 |
| | | $175.83 |

TRAVEL EXPENSES

| | | |
|---|---|---|
| 01/24/08 | Travel expenses incurred by Dawn Palmisano Re: Travel to and from Baton Rouge, LA to attend status conference with Judge Burns at 19th JDC in 4 cases.  165 miles at 0.505 cents per mile, parking $2.00 and meals $5.55. ($90.88 split between 4851-0005, 1881-0086, 1881-0226 and 1881-0247). | 22.72 |
| | | $22.72 |

|  |  |
|---|---|
| TOTAL DISBURSEMENTS | $201.75 |
| TOTAL THIS BILL | $5,433.25 |

If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200

**NET DUE 30 DAYS**

# Williams and Jankowski, L.L.C.

Certified Court Reporters
Two Lakeway
3850 N. Causeway Blvd. Suite 108
Metairie, LA 70002
(504) 832-0937
Fax: (504) 834-6629

Federal Tax Identification 72-1411123

*Dept. 65*
*Lori P. Moser*
*# 1881-0247*
*4851-0005*
*# 175.83 / file*

**BILL TO:**

Middleberg, Riddle & Gianna
450 Laurel Street
Suite 1101
Baton Rouge, LA 70801
Lori Moser, Esq.

**RE:**

Albert Abadie, et al vs
ANCO Insulations, Inc., et al

PROVED BY: *Eleonore*
DATE:
G.L. CODES: *1.7.08*
*095165*

| REPORTER | INVOICE DATE: | INVOICE # | DUE DATE | TERMS |
|----------|---------------|-----------|----------|-------|
| LJ | 1/3/2008 | 49628 | 2/2/2008 | Net 30 |

**DESCRIPTION**

For furnishing 1 copy of the deposition of Timothy Hickey taken 12/10/07

For furnishing an ASCII disk at No Charge!

| | |
|--|--|
| **Total** | **$351.65** |

| **Balance Due** | **$351.65** |
|-----------------|-------------|

**Computer Transcripts - Full Litigation Support Services-Conference Room**

# EXHIBIT B

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1360 PEACHTREE STREET, N.E., SUITE 1150

ATLANTA, GEORGIA 30309

404-260-6080

FACSIMILE: 404-260-6081

MICHAEL E. HUTCHINS
404-260-6100

NEW YORK
HOUSTON
NEWARK

January 11, 2008

Gregory D. Winfree, Esq.
FREEPORT-McMoRan Copper & Gold Inc.
One North Central
Phoenix, AZ  85004-2306

Re:    Louisiana Asbestos Litigation

Dear Greg:

At your request, the following is a brief summary of Freeport's national asbestos litigation, the status of its current asbestos docket in Louisiana, and the role played by Kasowitz, Benson, Torres & Friedman LLP ("KBT&F") in both the national and Louisiana litigations. As you directed, this letter will conclude with a projection of anticipated docket activity in Louisiana and a projection of legal fees and expenses expected to be incurred in that jurisdiction during 2008.

Since mid-2003, I and this firm have served as Freeport's national coordinating and trial counsel in its asbestos premises liability litigation. In that capacity, we have assisted the company in formulating appropriate national and jurisdiction-specific strategies, and we are also asked to provide advice on the handling and disposition of individual cases within those jurisdictions. KBT&F has also been given the responsibility of selecting and supervising local counsel in each of the various venues around the country where Freeport and its subsidiaries are named as defendants in asbestos premises liability litigation. Finally, we were asked by the company to assist it in compiling, organizing and reporting the large volume of statistics and other data that are an inevitable component of a litigation of this scale and duration.

The role of national counsel is essential in national-scale litigation. The national asbestos plaintiffs' bar routinely exchanges information and reports on developments around the country. What happens in Louisiana will soon be known by plaintiffs' counsel in California, and vice-versa. This means that consistency and coordination are key, particularly when responding to written discovery and the production of company documents. Moreover, the same cadre of plaintiffs' experts are used around the country together with the same volumes of medical and "state-of-the-art" literature. An intimate familiarity with those experts, with that literature and with the company's own story produces economies of scale and actually reduces litigation costs both in the near term and the long run.

5043772

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Gregory D. Winfree, Esq.
January 11. 2008
Page - 2 –

_____

These are not hypothetical concerns for Freeport. At the present time, the company has asbestos premises litigation pending in Texas, Louisiana, West Virginia, Illinois, California, Indiana and Delaware. Amax, the predecessor of a current Freeport subsidiary and the one-time owner of the premises at issue in the Louisiana litigation, has been sued in asbestos cases in Illinois as well as Louisiana. Documents produced by the company in the Louisiana litigation have appeared in the possession of plaintiffs' counsel in Illinois.

Freeport's local counsel in Louisiana is the firm of Middleberg, Riddle & Gianna ("MR&G"). MR&G handles all local tasks associated with the Louisiana docket including preparing answers to the plaintiff's petitions, the filing of other routine papers, attendance at all hearings, and attending depositions of the plaintiffs and local treating physicians. KBT&F's involvement in the Louisiana litigation includes preparing written discovery responses to insure consistency, assembling and reviewing corporate documents for production when necessary, reviewing drafts of significant pleadings such as motions for summary judgment, developing the "company story" for use in defense of the Louisiana litigation, and serving as a liaison between local counsel and Freeport. Based on our long experience in the national litigation and our access to them, we also select and retain appropriate expert witnesses for use in the Louisiana cases. There is virtually no overlap or duplication between the roles played by MR&G and KBT&F in handling the Louisiana docket. MR&G handles all day-to-day and local tasks while this firm is involved in strategic issues.

As of 12/31/07, there were approximately 39 pending cases involving 85 individual plaintiff's claims pending in Louisiana. These are premises liability claims brought by independent contractors who allegedly suffered injurious exposure to asbestos while employed at the Amax Nickel Refining, Inc. facility located in Braithwaite, Louisiana. The plant, which processed nickel and other minerals, was operated between 1973 through the late 1990s when it was mothballed. Amax Nickel Refining, Inc. was a subsidiary of Amax, Inc., a predecessor of Cyprus Amax which is today a wholly-owned subsidiary of Freeport.

The Braithwaite facility was a comparatively small operation and, in the overall scheme of things, Freeport is a small player in the Louisiana asbestos litigation. Although progress in the overcrowded Louisiana asbestos docket can be characterized as glacial at best, we are eventually dismissed without payment in most cases. Since KBT&F's involvement began in mid-2003, I can only recall two minor settlements, both of which were less than $3,000.00. A judiciously aggressive motions practice has also helped us gain dismissals in cases, to include a number of potentially serious malignancy claims which might otherwise have proven problematic.

5043772

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Gregory D. Winfree, Esq.
January 11, 2008
Page - 3 –

As in prior years, I expect Freeport's Louisiana docket in 2008 to remain fairly quiet with most activity focused on processing and responding to new petitions, attending depositions and participating in status conferences. Most of these activities will be handled by MR&G. However, an exception in 2008 will be the *Johnny Gallardo* mesothelioma case which is presently scheduled to begin trial in New Orleans state court on 4/8/08. Gallardo was employed at the Braithwaite plant as a contract boilermaker for Brown & Root between 1975-1982 and we have a higher than normal profile in this malignancy action. Brown & Root was the long-term maintenance contractor at the site and there is an extremely large volume of Brown & Root documents for Braithwaite which we are in the process of analyzing and organizing for eventual production and to prepare an effective defense. There is likely to be significant expert discovery in the case involving both the liability and medical experts hired by plaintiff's counsel and the experts we retain. Although I expect the 4/8/08 date to slip and trial to be continued until some time later in the year, I believe *Gallardo* will be a significant matter for Freeport and a potential risk for trial.

Between MR&G and KBT&F, legal fees and expenses incurred in the defense of Freeport's Louisiana litigation in 2006 totaled approximately $1.5 million. Although significant layoffs at the LeBlanc & Waddell and Baron & Budd firms resulted in a slight decrease in activity during 2007, I expect the aggregate legal fees and expenses incurred by MR&G and KBT&F in 2007 to also total approximately $1.5 million because of significant document discovery costs associated with *Gallardo*. Looking forward, I believe aggregate legal fees associated with the Louisiana litigation during 2008 will decrease to something in the $1 million range, based on the disorganization in the plaintiffs' bar referenced earlier but offset to some extent by ongoing significant expenses associated with the *Gallardo* case. Of course, asbestos litigation in any jurisdiction is volatile and this estimate is subject to upward revision if presently unforeseen developments, such as the emergence of additional malignancy cases significantly involving the Braithwaite plant, occur during 2008.

I hope this adequately addresses the issues you raised. If you need additional information or if you would like to discuss these matters further, please let me know.

5043772

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Gregory D. Winfree, Esq.
January 11. 2008
Page - 4 –

_____

     With best regards, I am

                                 Very truly yours,

                                 KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

                                 Michael E. Hutchins

MEH/jh

5043772

# EXHIBIT C

05/29/2008 11:09 FAX 7639836303                                                    @001/001

CENTURY INDEMNITY COMPANY
120 NORTH 9TH STREET - MAJOR CLMS
RICHMOND IN 47374

DATE 05/10/08
CHECK NO.  MZ71580059

## STATEMENT

5900R39XX 99 RCR 00007 MZ71580059
ENVIRO-TOX LOSS SERVICES,INC.
ATTN:WENDY MCGILL
P.O.BOX 172859
ARLINGTON TX 76003-2859

| FILE ID | DOLLARS |
|---|---|
| | $*****10,598.39 |

**\* NOT NEGOTIABLE \***

FOR
1/08 & 3/08(VARIOUS SHARES)AMAX INC

CLAIMANT
MULTI-FILES PAYMENT

DATE OF EVENT
05/10/08

Questions with regard to this payment should be referred to your agent or the Customer
Service Unit of the Claim Office whose address appears above.

*attn. Eugene Collins*

P2094Y (10/2007) CHEXC1

THIS MULTI-TONE AREA OF THE DOCUMENT CHANGES COLOR GRADUALLY AND EVENLY FROM DARK TO LIGHT WITH DARKER AREAS TOP LEFT AND BOTTOM

COPY  VOID  COPY  VOID  COPY  VOID  COPY  VOID  COPY  VOID  COPY  VOID  COPY

MZ71580059

05/10/08

VOID   VOID   VOID
*****10,598.39

**\*TEN THOUSAND FIVE HUNDRED NINETY EIGHT DOLLARS AND 39 CENTS**

1/08 & 3/08(VARIOUS SHARES)AMAX INC

VOID   VOID   VOID

*Francis W. McDonnell*

FREEPORT-MCMORAN,COOPER & GOLD
P.O.BOX 172859
ARLINGTON TX 76003-2859

MAJOR CLAIMS MANAGEMENT        02
MULTI-FILES PAYMENT

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA and THE CONTINENTAL INSURANCE COMPANY, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| versus | : | CIVIL ACTION NO. 08 CV 02012 |
| | : | |
| FREEPORT-MCMORAN COPPER & GOLD INC., AS THE CLAIMED SUCCESSOR TO PHELPS DODGE CORPORATION, AS THE CLAIMED SUCCESSOR TO CYPRUS AMAX MINERALS COMPANY, AS THE CLAIMED SUCCESSOR TO AMAX, INC. AND AMAX METALS RECOVERY, INC., AS SUCCESSOR TO AMERICAN METAL CLIMAX, INC., | : | |
| | : | |
| Defendant. | : | |

**AFFIDAVIT OF MARGO DEDEYAN**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) |
| | ) ss.: |
| COUNTY OF PHILADELPHIA | ) |

I, Margo Dedeyan, of full age, being duly sworn according to law, depose and say:

1.      I am employed as a Claims Specialist at Resolute Management, Inc.-Mid-Atlantic Division ("Resolute").  Resolute performs claims management services for Century Indemnity Company ("Century").

2.      My responsibilities include the handling of claims submitted to Century by Defendant Freeport-McMoRan Copper & Gold (sometimes referred to below as "Freeport").

3.      I submit this Affidavit in support of Century's Opposition to Freeport's Motion

to Dismiss or Stay This Action.

4.      In December 2007, I, on Century's behalf, met with representatives of Freeport met to discuss Freeport's claim of coverage for the document-review project at issue.

5.      At the December 2007 meeting, Freeport's representatives advised that all future communications and payments concerning the document-review project should no longer be directed to Phelps Dodge Corporation due to its recent merger, but rather should be directed to Freeport-McMoRan Copper & Gold because Phelps Dodge Corporation was and is now Freeport-McMoran Copper & Gold.

6.      After the December 2007 meeting, I received claim requests under the Century policies which were to be paid directly to Freeport-McMoran Copper and Gold.  I also sent responsive correspondence directly to Freeport-McMoran Copper & Gold regarding such claim requests as discussed at the December 2007 meeting.

7.      As a result of receiving these claim requests, Resolute, on behalf of Century, issued checks directly to Freeport-McMoran Copper & Gold as discussed at the December 2007 meeting.

8.      Annexed hereto as Exhibit A is an example of such a claim request under the Century policies to be paid directly to Freeport-McMoran Copper & Gold.

9.      Annexed hereto as Exhibit B is a record of payment made by Resolute to Freeport-McMoran Copper & Gold in connection with such a claim request.

_____
Margo Dedeyan

Sworn to and subscribed before me this
12th day of July 2008

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
BARBARA A. BROUGH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires January 23, 2011

-2-

# EXHIBIT A

*Enviro-Tox Loss Services, Inc.*

P.O. Box 172859
Arlington, Texas 76003-2859
2421 Callender Road Suite 123
Mansfield, TX 76063
www.etls.net

Larry Poling and Joseph Peters
Phone: 817-561-9675
Fax: 817-561-9678
P.O. Box 172859
Arlington, TX 76017

Gene Waymon
Phone: 508-746-3190
Fax: 508-746-4247
P.O. Box 3253
Plymouth, MA 02361

March 4, 2008

Ms. Margo Dedeyan
Claims Specialist
Resolute Management Inc.
Mid-Atlantic Division
United Plaza Suite 700
30 South 17th Street
Philadelphia, PA  19103

RE:   Enviro Tox Files:       Multiple AMAX
      Louisiana Asbestos Premises Litigation

Dear Ms. Dedeyan:

Enclosed please find one invoice from the Middleberg Riddle and Gianna
Law Firm for which Resolute Management Inc. (INA) is responsible for
paying a portion as outlined on the spreadsheet identified as
Middleberg Riddle and Gianna Invoice 65385. Also attached are the usual
worksheets indicating the dates of exposure and the share owed by each
carrier involved.  Please issue your check in the amount of **$3,121.41**
payable to **Freeport-McMoran, Copper & Gold**, as they have already paid
this invoice, and send directly to our office.  Please refer to the
invoice number and our file number on all correspondence.

I thank you in advance for your assistance and cooperation in this
matter.  Should you have any questions in this matter, please do not
hesitate to call me.

Sincerely,

*Wendy McGill*

Wendy McGill
Enviro-Tox Loss Services

Enclosures- Invoice 65385

**Middleberry, Riddle, & Gianna**
Invoices submitted for services through the month of: January 2008

Dated: 02/01/08
Invoice No. 65385
E-Counsel No: 2006-1614

| Case Name | EYLS Claim # | Tab # | Invoice # | INA Share | Cont'l Share | Phelps Share | Indemnity | Fee to File | Expense to File | Misc Fee to File | Phelps Dodge Total Owed | Expected Future Reimbursements |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Abadie, Albert | 50003 | 216 | 65385 | $3,121.41 | $2,311.84 | $ - | | $ 5,231.50 | $ 201.75 | | $ 5,433.25 | $ 5,433.25 |
| TOTAL | | | | $3,121.41 | $2,311.84 | $ - | | $ 5,231.50 | $ 201.75 | | $ 5,433.25 | $ 5,433.25 |

Amount Paid:
Company: PDY
Description: Asbestos Legal Fees
Resp. Corp:
Cost Center:
Account #:
Project #:
Date:

LA Amax Invoice Pro-Ration Form

Tab No.: 216 ETLS File #: 50003      Case Name: **Abadie, Albert**

Matter #: **2006-1614**    Invoice #:  **65385**      Inv. Date: **2/1/08**

Dates of Service: **1/2/08-1/31/08**

Vendor Name: **Middleberg, Riddle & Gianna**

TIN #: **72-0894859**

Vendor Address:    **717 North Harwood**
                   **Suite 2400**
                   **Dallas, TX  75201**

Invoice Fee:  **$5,231.50**      Adjusted Fee:    **$5,231.50**

Invoice Exp.: **$201.75**  Adjusted Exp.:    **$201.75**

Total Invoice: **$5,433.25**   Adjusted Total:      **$5,433.25**

Reason for Adjustment:

Total Months Exposure: **47**

Months INA(ACE) Exposure: **27**; Share Owed: **57.45%**

Months Cont'l Exposure: **20**;   Share Owed: **42.55%**

Months Phelps Exposure: **0**;   Share Owed: **0%**

Plaintiff: **Louis E. Fiegenschue**    Exposure Dates: **10/1/72 to 9/1/76**
Plaintiff: **Marshall V. Holloway**    Exposure Dates: **7/1/74 to 12/1/74**
Plaintiff: **Ronald A. Woessner**      Exposure Dates: **4/1/66 to 9/1/66**
Plaintiff:              Exposure Dates:
Plaintiff:              Exposure Dates:
Plaintiff:              Exposure Dates:
Plaintiff:              Exposure Dates:
Plaintiff:              Exposure Dates:
Plaintiff:              Exposure Dates:

| CARRIER | INA(ACE) Share | CONTINENTAL | PHELPS | TOTAL |
|---------|---------|---------|---------|---------|
| FEE | $3,005.50 | $2,226.00 | $0.00 | $5,231.50 |
| EXPENSE | $115.91 | $85.84 | $0.00 | $201.75 |
| TOTAL | $3,121.41 | $2,311.84 | $0.00 | $5,433.25 |

ETLS File No.: **50003** Case Name: **Abadie, Albert**
Overall Litigation Exposure Periods: 4/1/66 - 9/1/76

| Carrier | Policy Number | Effective Date | Expiration Date | Months included | * Months Exposure Per Policy Period |
|---|---|---|---|---|---|
| INA (ACE) | LB29077 | 1/1/1959 | 1/1/1965 | 72 | |
| INA (ACE) | LB39736 | 1/1/1965 | 1/1/1968 | 36 | |
| INA (ACE) | ALB47168 | 1/1/1968 | 1/1/1971 | 36 | |
| INA (ACE) | ALB47212 | 1/1/1971 | 1/1/1972 | 12 | |
| INA (ACE) | ALB47240 | 1/1/1972 | 1/1/1974 | 24 | 15 |
| INA (ACE) | ALB47276 | 1/1/1974 | 1/1/1975 | 12 | 12 |
| INA (ACE) Total | | | | 192 | 27 |
| | | | | | |
| Continental | L3320862 | 1/1/1975 | 1/1/1976 | 12 | 12 |
| Continental | L3618826 | 1/1/1976 | 1/1/1977 | 12 | 8 |
| Continental | L1184328 | 1/1/1977 | 1/1/1980 | 36 | |
| Continental | SRL3635913 | 1/1/1980 | 1/1/1981 | 12 | |
| Continental | SRL3636099 | 1/1/1981 | 1/1/1982 | 12 | |
| Continental | SRL3636291 | 1/1/1982 | 1/1/1983 | 12 | |
| Continental | SRL3636677 | 1/1/1983 | 1/1/1984 | 12 | |
| Continental | SRL3636859 | 1/1/1984 | 1/1/1985 | 12 | |
| Continental | SRL3344412 | 1/1/1985 | 4/1/1986 | 15 | |
| | | | | | |
| Continental Total | | | | 135 | 20 |
| | | | | | |
| Claim Made Phelps | | 4/1/1986 | forward | | 0 |
| Phelps Prior to 1959 | | | | | 0 |
| Phelps Total | | | | | 0 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Plant Purchased 1/25/71

*Plant Dormant 1960 - 1971

*Middleberg Riddle & Gianna*                           Attorneys and Counselors

TAXPAYER I. D. NO 72-0894859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

February 1, 2008

Bill Number  65385
File Number 04851-0005

AMAX METALS RECOVERY, INC.
C/O ENVIRO-TOX LOSS SERVICES, INC.
2421 CALLENDER ROAD, SUITE 123
MANSFIELD, TX 76063
ATTN:  BOB MEDLIN

**RECEIVED**

FEB 08 2008

Enviro-Tox Loss
Services

**FOR PROFESSIONAL SERVICES**

Through January 31, 2008

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

   PHELPS DODGE MATTER: 2003-0304

**LEGAL SERVICES**

| | | | | | |
|---|---|---|---|---|---|
| 01/02/08 | JDP | Revised language for updated quarterly report. | 0.20 Hrs | 225/hr | $45.00 |
| 01/04/08 | BCB | Revised the December 2007 Abadie Quarterly Report per revisions of Dawn Palmisano and John Person relative to the language concerning the pace of asbestos cases filed by LeBlanc Waddell/Baron & Budd. | 0.20 Hrs | 65/hr | $13.00 |
| 01/04/08 | MH | 1/2 - Receipt/review Motion to Substitute Counsel and Request for Notice filed on behalf of Olin Corporation; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/07/08 | BCB | Finalized December 2007 Quarterly Report in order to send to client on this date. | 0.10 Hrs | 65/hr | $6.50 |
| 01/07/08 | BCB | Burned CD's of AMRI and CCC December 2007 Quarterly Reports in order to send via Federal Express to Michael Hutchins and Bob Medlin on this date. (time apportioned) | 0.10 Hrs | 65/hr | $6.50 |
| 01/10/08 | SAL | Apportioned time 1/2 to receipt and review plaintiff's Motion for Order to set Pre-Trial conference. | 0.10 Hrs | 225/hr | $22.50 |

**If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200**

## Middleberg Riddle & Gianna

**Attorneys and Counselors**

TAXPAYER I. D. NO 72-0994859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

AMAX METALS RECOVERY, INC.

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

PHELPS DODGE MATTER: 2003-0304

| Date | Init | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 01/12/08 | MH | 1/2 -Receipt/review Order setting Initial Pre-Trial Conference; confirm plaintiff named has claim against client; update docket for attorney attendance; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/16/08 | MH | Receipt/review deposition offers from LeBlanc & Waddell; determine if claims filed against client; update dockets to reflect for attorney monitoring; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/16/08 | SAL | Apportioned time (1/2) to receipt and review revised deposition notices for various plaintiffs' for January/February 2008. | 0.10 Hrs | 225/hr | $22.50 |
| 01/17/08 | MH | Receipt/review correspondence from LeBlanc & Waddell confirming deposition schedule from 1/17 - 2/12/2008; confirm docketed; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/18/08 | MH | 1/2 - Receipt/review deposition offer for plaintiff Ronald Woessner; confirm claim filed against client; update docket to reflect tentative date and time; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/18/08 | SAL | Apportioned time (1/2) to receipt and review from Deutsch, Kerrigan & Stiles deposition notice for plaintiff Larry Brown. | 0.10 Hrs | 225/hr | $22.50 |
| 01/18/08 | SAL | Apportioned time (1/2) to receipt and review deposition notice for plaintiff Ronald Woesher. | 0.10 Hrs | 225/hr | $22.50 |
| 01/21/08 | MH | Issue reminder of upcoming case events and deadlines for attorney and paralegal compliance. | 0.10 Hrs | 65/hr | $6.50 |
| 01/22/08 | DP | Analyze calendar regarding upcoming pre-trial conference. | 0.20 Hrs | 195/hr | $39.00 |
| 01/24/08 | JDP | Receipt and review of updated deposition calendar through mid-February from plaintiff counsel. | 0.20 Hrs | 225/hr | $45.00 |
| 01/24/08 | JDP | Telephone conference with Marie Horne re: assignment for deposition of plaintiff Ronald Woessner 1/31/08. | 0.20 Hrs | 225/hr | $45.00 |

**If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200**

**NET DUE 30 DAYS**

*Middleberg Riddle & Gianna*                                        **Attorneys and Counselors**

TAXPAYER I. D. NO 72-0894859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

AMAX METALS RECOVERY, INC.

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

PHELPS DODGE MATTER: 2003-0304

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 01/24/08 | MH | Receipt/review correspondence from LeBlanc & Waddell containing deposition schedule for 1/24 - 2/19/08; confirm docketed for attorney attendance and/or monitoring; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/24/08 | MH | Follow up with attorneys Person and Moser regarding deposition assignment for Ronald Woessner; update dockets to reflect. | 0.20 Hrs | 65/hr | $13.00 |
| 01/25/08 | MH | 1/2 - Receipt/review correspondence from LeBlanc & Waddell advising of date change of case status conference; update docket to reflect; follow up with attorneys Person and Palmisano and compile and provide documents for her reference at the conference; code and route for filing. | 0.10 Hrs | 65/hr | $6.50 |
| 01/25/08 | MH | Receipt/review deposition transcript of plaintiff Ronald Woessner taken 5/28/02 in another case from co-defendant; forward to attorneys Person, Moser and Palmisano; save into case systems; code and route for filing. | 0.20 Hrs | 65/hr | $13.00 |
| 01/26/08 | JDP | Receipt and review of emails re: location of prior deposition of plaintiff Ronald Woessner from other cases. | 0.20 Hrs | 225/hr | $45.00 |
| 01/27/08 | DP | Prepare for status conference with Judge Burns including analyze AMRI deposition testimony of Louis Fiegenschue and assess claims of plaintiff Fiegenschue. | 2.30 Hrs | 195/hr | $448.50 |
| 01/28/08 | DP | Attend status conference with Judge Burns at 19th JDC including travel to and from Court in Baton Rouge, LA. (apportioned time 1/2; 4.20 total) | 2.10 Hrs | 195/hr | $409.50 |
| 01/28/08 | JDP | Apportioned time (1/3) for receipt and review of updated deposition calendar from plaintiff counsel through 2/19/08 (no plaintiffs suing AMRI). | 0.20 Hrs | 225/hr | $45.00 |
| 01/29/08 | LPM | Prepare for the continuation deposition of plaintiff, Ronald Woessner, including analysis of his lengthy social security printout, work history sheets, medical diagnosing report, discovery responses and other materials provided by plaintiffs; begin outlining potential questions. | 3.10 Hrs | 195/hr | $604.50 |

If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200

**NET DUE 30 DAYS**
Page 3

*Middleberg Riddle & Gianna*                               **Attorneys and Counselors**

TAXPAYER I. D. NO 72-0894859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

AMAX METALS RECOVERY, INC.

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

PHELPS DODGE MATTER: 2003-0304

| 01/30/08 | DP | Conference with John Person regarding 1/28/08 status conference and assignment of trial date regarding plaintiff, Louis Fiegenschue. | 0.30 Hrs | 195/hr | $58.50 |
| 01/30/08 | JDP | Telephone conference with Dawn Palmisano re: status conference with court and selection of 4/22/08 trial date re: plaintiff, Fiegenschue. | 0.30 Hrs | 225/hr | $67.50 |
| 01/30/08 | LPM | Study the 63 page deposition transcript of plaintiff, Ronald Woessner, given as a co-worker witness in another case on 5/28/2002, in preparation for the continuation of his own deposition tomorrow. | 1.70 Hrs | 195/hr | $331.50 |
| 01/30/08 | LPM | Study the 177-page deposition transcript of Ronald Woessner, which testimony was given on 6/3/2005, with particular attention to his testimony about working at a nickel plant in the 1970's, in preparation for his continuation deposition tomorrow. | 3.60 Hrs | 195/hr | $702.00 |
| 01/30/08 | LPM | Study updated work history charts and new medical diagnosing reports from 2006 and 2007, in preparation for Ronald Woessner's continuation deposition tomorrow. | 0.90 Hrs | 195/hr | $175.50 |
| 01/30/08 | LPM | Study deposition summary from day #1 of Ronald Woessner's deposition, and begin drafting updated summary for his continuation deposition tomorrow. | 1.00 Hrs | 195/hr | $195.00 |
| 01/30/08 | LPM | Cross-reference work history charts with social security printout, noting 16 year gap in employers on his social security printout; outline additional questions to ask Ronald Woessner tomorrow. | 1.90 Hrs | 195/hr | $370.50 |
| 01/30/08 | MH | Receipt/review Jury Trial Order; calculate date jury bond due; update dockets to reflect trial date, Pre-Trial Order date and jury bond date; create trial group in case systems; code and route for filing. | 0.40 Hrs | 65/hr | $26.00 |
| 01/31/08 | DP | E-mail exchange with Mike Hutchins regarding status conference with Judge Burns, trial date assignment, deposition testimony of Louis Fiegenschue, status of case and independent medical examination of Fiegenschue. | 1.20 Hrs | 195/hr | $234.00 |

**If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200**

*Middleberg Riddle & Gianna*                                    **Attorneys and Counselors**

TAXPAYER I. D. NO 72-0894859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

AMAX METALS RECOVERY, INC.

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

PHELPS DODGE MATTER: 2003-0304

| | | | | | | |
|---|---|---|---|---|---|---|
| 01/31/08 | DP | Draft and send e-mail to Marie Horne and Marissa Iannazzo regarding independent medical examination of plaintiff, Louis Fiegenschue. | 0.10 Hrs | 195/hr | $19.50 |
| 01/31/08 | DP | Revise summary of deposition of plaintiff Louis Fiegenschue. | 0.40 Hrs | 195/hr | $78.00 |
| 01/31/08 | LPM | Travel to Baton Rouge and attend day #2 of the discovery depo of plaintiff, Ronald Woessner, which depo was not completed once it became apparent he has an updated Social Security Print Out that includes 13 more years of employment; Return travel following same. | 5.40 Hrs | 195/hr | $1,053.00 |

TOTAL LEGAL SERVICES                                $5,231.50

**LEGAL SERVICES SUMMARY**

| | | | |
|---|---|---|---|
| BRYAN C. BAGNETTO | 0.40 Hrs | 65/hr | $26.00 |
| DAWN PALMISANO | 6.60 Hrs | 195/hr | $1,287.00 |
| JOHN D. PERSON | 1.30 Hrs | 225/hr | $292.50 |
| LORI P. MOSER | 17.60 Hrs | 195/hr | $3,432.00 |
| MARIE HORNE | 1.60 Hrs | 65/hr | $104.00 |
| SARAH ANN LOWMAN | 0.40 Hrs | 225/hr | $90.00 |
| | 27.90 Hrs | | $5,231.50 |

**DISBURSEMENTS**

COPIES

| | | |
|---|---|---|
| 01/03/08 | 14 copies are $.10 cents each. | 1.40 |
| 01/16/08 | 18 copies are $0.10 cents each. | 1.80 |
| | | $3.20 |

DEPOSITIONS

**If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200**

## Middleberg Riddle & Gianna

**Attorneys and Counselors**

TAXPAYER I. D. NO 72-0894859

Suite 2400
717 North Harwood
Dallas, Texas 75201
(214) 220-6500
(214) 220-2785 (Telecopier)

AMAX METALS RECOVERY, INC.

Re: ALBERT T. ABADIE, ET AL V. ANCO INSULATIONS

   PHELPS DODGE MATTER: 2003-0304

**DISBURSEMENTS**

**DEPOSITIONS**

| | | |
|---|---|---|
| 01/09/08 | Williams and Jankowski. One copy of deposition of Timothy Hickey taken 12/10/07. Invoice No. 49628 dated 1/3/08 split with file 1881-0247. | 175.83 |
| | | $175.83 |

**TRAVEL EXPENSES**

| | | |
|---|---|---|
| 01/24/08 | Travel expenses incurred by Dawn Palmisano Re: Travel to and from Baton Rouge, LA to attend status conference with Judge Burns at 19th JDC in 4 cases. 165 miles at 0.505 cents per mile, parking $2.00 and meals $5.55. ($90.88 split between 4851-0005, 1881-0086, 1881-0226 and 1881-0247). | 22.72 |
| | | $22.72 |

| | |
|---|---|
| TOTAL DISBURSEMENTS | $201.75 |
| TOTAL THIS BILL | $5,433.25 |

If you have any questions regarding this invoice, please call Edie Koonce or Trey Tramell at 504-525-7200

NET DUE 30 DAYS

# Williams and Jankowski, L.L.C.

Certified Court Reporters
Two Lakeway
3850 N. Causeway Blvd. Suite 108
Metairie, LA  70002
(504) 832-0937
Fax: (504) 834-6629

Federal Tax Identification 72-1411123

*Dept. 65*
*Lori P. Moser*
*# 1881-0247*
*4851-0005*
*$175.83 / file*

**BILL TO:**

Middleberg, Riddle & Gianna
450 Laurel Street
Suite 1101
Baton Rouge, LA 70801
Lori Moser, Esq.

**RE:**

Albert Abadie, et al vs
ANCO Insulations, Inc., et al

APPROVED BY: *Moore*
DATE: *1.7.08*
G.L. CODES:
*095165*

| REPORTER | INVOICE DATE: | INVOICE # | DUE DATE | TERMS |
|----------|---------------|-----------|----------|-------|
| LJ | 1/3/2008 | 49628 | 2/2/2008 | Net 30 |

| DESCRIPTION |
|-------------|
| For furnishing 1 copy of the deposition of Timothy Hickey taken 12/10/07 |
| |
| For furnishing an ASCII disk at No Charge! |

| | |
|---|---|
| **Total** | **$351.65** |

| **Balance Due** | **$351.65** |

**Computer Transcripts - Full Litigation Support Services-Conference Room**

# EXHIBIT B

05/29/2008 11:09 FAX  7659836303                                                    ☑001/001

CENTURY INDEMNITY COMPANY
120 NORTH 9TH STREET - MAJOR CLMS
RICHMOND IN 47374                                          DATE 05/10/08
                                                    CHECK NO.  MZ71580059

*STATEMENT*

5900R39XX 99 RCR 00007 MZ71580059           | FILE ID |      | DOLLARS |
ENVIRO-TOX LOSS SERVICES,INC.                                $*****10,598.39
ATTN:WENDY MCGILL
P.O.BOX 172859
ARLINGTON TX 76003-2859                                 * NOT NEGOTIABLE *

FOR
1/08 & 3/08(VARIOUS SHARES)AMAX INC

CLAIMANT                               DATE OF EVENT
MULTI-FILES PAYMENT                    05/10/08

Questions with regard to this payment should be referred to your agent or the Customer
Service Unit of the Claim Office whose address appears above.

*Attn: Eugene Collins*

P2054Y (10/2007) CHEKC1

THIS MULTI-TONE AREA OF THE DOCUMENT CHANGES COLOR GRADUALLY AND EVENLY FROM DARK TO LIGHT WITH DARKER AREAS BOTH TOP AND BOTTOM

COPY  VOID  COPY  VOID  COPY  VOID  COPY  VOID  COPY  VOID  COPY  VOID  COPY
                                                                    MZ71580059

                                                          05/10/08

                                            VOID    VOID    VOID
                                                        *****10,598.39

**TEN THOUSAND FIVE HUNDRED NINETY EIGHT DOLLARS AND 39 CENTS**

1/08 & 3/08(VARIOUS SHARES)AMAX INC         VOID    VOID    VOID

                                            *Francis W. McDonnell*

FREEPORT-MCMORAN,COOPER & GOLD
P.O.BOX 172859                        MAJOR CLAIMS MANAGEMENT      02
ARLINGTON TX 76003-2859              MULTI-FILES PAYMENT

NES-IGS-12

# EXHIBIT E



# World Class Operations

The Phelps Dodge acquisition transformed Freeport-McMoRan Copper & Gold Inc. into a dynamic industry leader and combined the assets and technical teams of two great companies. These assets will deliver significant copper volumes to an attractive market, providing substantial cash flows that will enable us to invest in growth projects and build value for shareholders.

## TO OUR SHAREHOLDERS:

The year 2007 was special for Freeport-McMoRan Copper & Gold Inc. On March 19, 2007, we completed the $26 billion acquisition of Phelps Dodge Corporation, creating the world's largest publicly traded copper company, the world's largest producer of molybdenum and a significant gold producer. In so many ways, it was a perfect match — the combination of a company with a world-class asset, the Grasberg mine in Indonesia, and a company with geographically diverse assets in search of a world-class mine to complement them.

The acquisition transformed Freeport-McMoRan Copper & Gold Inc. into a dynamic industry leader and combined the assets and technical teams of two great companies. These assets will deliver significant copper volumes to an attractive market, providing substantial cash flows that will enable us to invest in attractive growth projects and build value for shareholders.

The process to consummate the merger proceeded very well, and we were very pleased by the response to this business combination from our shareholders, the investment community and the financial markets that allowed us to complete this exciting and large transaction.

To complete the transaction and integrate the two companies, we borrowed $16 billion, which was comprised of $6 billion in long-term notes and $10 billion in term loans.

Immediately following the acquisition, we completed $5.8 billion of equity offerings. Through the combination of equity proceeds and cash flows from operations, we reduced acquisition debt by more than $10 billion by year-end 2007, achieving our debt reduction objectives two to three years sooner than initially targeted.

Our financial strength and strong cash flows are enabling us to pursue aggressively our attractive development projects and increase cash returns to shareholders. In December 2007, our Board of Directors authorized a 40 percent increase in our annual common stock dividend from $1.25 to $1.75 per share and a new 20-million-share open market share purchase program.

The new Freeport-McMoRan, with operations and projects in the Americas, Indonesia and Africa, has one of the most exciting portfolios of operating, expansion and growth projects in the copper mining industry.

This globally diverse portfolio of properties is the basis for the first part of the theme for this annual report, "A World of Assets." The second part of our theme, "A World of Opportunities," is inspired by the significant exploration and development activities we have initiated to expand production capacity, extend the lives of our mines and develop new ore bodies.

### FCX Stock Performance





MORENCI MINE, ARIZONA, with a long history of successful operations, is our largest-producing copper mine in North America, and where we continue to pioneer through technology advances in copper extraction.

These constraints on supply development are what led us to a view that the outlook for copper is positive and our company is well positioned to benefit from these favorable conditions.

The acquisition of Phelps Dodge Corporation combined two companies with strong core values concerning environmental protection and impact mitigation and the support of local communities where we operate. We have well established Environmental and Social, Employment and Human Rights policies and are taking steps to ensure that our commitments detailed in these policies are fully implemented throughout our worldwide operations.

The year 2008 will be an exciting one for our company. We want to express our deepest appreciation to our employees, who have made our past success possible through their hard work and dedication. We especially would like to thank Tim Snider, our Chief Operating Officer, for his 37 years of dedicated service to Phelps Dodge and his efforts to ensure the success of the integration of the two companies. Tim is retiring effective April 1, 2008.

We also want to extend our sincerest gratitude to our Board of Directors for their wisdom, judgment and advice which led to our successful business combination and will guide us as we work to achieve continued success in the future.

Respectfully yours,

**James R. Moffett**
Chairman
of the Board

**Richard C. Adkerson**
President and
Chief Executive Officer

March 17, 2008

# Positioned for Success

A series of incremental expansion projects at various sites in North America will add to an expanding copper production profile. Our standing as the world's largest producer of molybdenum will grow stronger as we proceed with the restart of the Climax mine in Colorado.



## NORTH AMERICA

### OPERATIONS

Freeport-McMoRan Copper & Gold Inc. (FCX), through its successful 2007 acquisition and integration of Phelps Dodge, is a leader in North American copper production and is working to optimize and expand production at its mines in the southwestern United States (U.S.). The company operates six copper mines in two states — Morenci, Bagdad, Sierrita and Safford in Arizona and Chino and Tyrone in New Mexico. All of these mines are wholly owned, except for Morenci, in which FCX holds an 85-percent joint venture interest. Consolidated pro forma copper sales from North American operations totaled 1.3 billion pounds in 2007 and 2006 at average realized prices of $3.12 per pound in 2007 and $2.26 per pound in 2006, which is net of a $0.14 per pound impact on 2007 and a $0.77 impact on 2006 for hedging losses related to copper price protection programs. Our North American mines have long-lived reserves and substantial additional development potential.

FCX is the world's largest producer of molybdenum through its wholly owned Henderson molybdenum mine in Colorado and as a by-product at the Sierrita, Bagdad, Chino and Morenci operations in the U.S. and at the Cerro Verde mine in Peru. The Henderson block-cave underground mining complex produces high-purity, chemical-grade molybdenum concentrates, which are further processed into value-added molybdenum chemical products. Consolidated pro forma molybdenum sales from the Henderson and by-product mines totaled 69 million pounds in 2007 and 2006 at average realized prices of $25.87 per pound in 2007 and $21.87 in 2006.

### DEVELOPMENT PROJECTS

The Safford mine in Arizona, where production commenced in late 2007, is the first new copper mine in North America in decades. The Safford operation will produce ore from two open-pit mines and includes a solution extraction/electrowinning (SX/EW) facility. Ramp up to full production of 240 million pounds of copper per year is expected in the first half of 2008. The total capital investment for the Safford project is approximately $675 million.

A concentrate-leach, direct electrowinning facility at the Morenci mine in Arizona was commissioned in 2007. The project uses the company's proprietary medium-temperature, pressure-leaching and direct electrowinning technology, which will enhance cost savings by processing concentrate on-site instead of shipping the product to smelters for treatment. This project also included the restart of a mill. Mill throughput adds 115 million pounds of copper per year and is operating near capacity of 49,000 metric tons per day. The capital investment for these projects at Morenci was approximately $250 million.

We are pursuing a project to restart the Climax molybdenum mine near Leadville,



FCX is the world's largest producer of molybdenum through its wholly owned Henderson molybdenum mine in Colorado and as a by-product at several operations in the U.S. and Cerro Verde in Peru.

*Photo: Henderson molybdenum mine in Colorado*

# Far-Reaching Sustainability

At every community where we operate, we work hard to minimize, mitigate and remediate our environmental impacts. We implement development initiatives globally to protect human rights and to support social development in local communities to provide improved healthcare, education, housing, employment and business development opportunities.

## SUSTAINABILITY

FCX is committed to promoting sustainable development throughout its operations. The world depends on the metals we produce to sustain and expand economic opportunity and growth. Our obligation is to provide these metals in a responsible manner — from the time of exploration to site closure and remediation.

The acquisition of Phelps Dodge Corporation combined not only our businesses, but also our respective commitments to our employees, neighbors, communities and the environment. Through the integration of our companies, we adopted new environmental, health and safety policies — drawn from each company's strengths — and are applying these policies across our entire organization. We have renewed our Business Conduct Principles, embracing integrity and ethical business practices as the foundation of our operations around the world. As a proud member of the International Council on Mining and Metals (ICMM), we endorse the ICMM Sustainable Development Framework and 10 Sustainable Development Principles. For several years, we have published our Working Toward Sustainable Development (WTSD) Report, which is a companion document to this annual report and describes our progress in these areas:

## ECONOMIC DEVELOPMENT

Our mining operations provide economic benefits to the communities in which we operate. These include direct benefits through the payment of taxes and royalties and for voluntary programs as well as indirect benefits through wages, the purchase of goods and services, and infrastructure investments.

## SOCIAL DEVELOPMENT

We can best ensure the long-term viability and success of the communities near our operations by working closely with the communities themselves. Our efforts are focused on understanding community needs, providing appropriate financial support, offering our expertise and energizing employee involvement and volunteerism.

## ENVIRONMENTAL MANAGEMENT

We focus on minimizing environmental impacts, protecting and enhancing the quality of the environment, and continuously improving our performance in this area. We operate in areas of the world rich in biodiversity, and we work hard to preserve valuable habitat and species.

## SAFETY

We strive for continuous safety improvement to achieve our vision of a workplace free of injuries and occupational illness. Injury and lost-time rates at FCX operations worldwide are well below the U.S. mining industry averages.



Building and sustaining strong communities and robust, diverse economies in communities near our operations sites is a responsibility we share and communicate with local governments, civic groups, business leaders and community members.

*Photo: Community school near Cerro Verde mine in Peru.*

# EXHIBIT F

# *Enviro-Tox Loss Services, Inc.*

*2421 Callender Rd. Suite 123*
*Mansfield, TX 76063*
*www.etls.net*

*Larry Poling and Joseph Peters*
*Phone: 817-561-9675*
*Fax: 817-561-9678*
*P.O. Box 172859*
*Arlington, TX 76017*

*Gene Waymon*
*Phone: 508-746-3190*
*Fax: 508-746-4247*
*P.O. Box 3253*
*Plymouth, MA 02361*

December 21, 2007

Margo Dedeyan
Claims Specialist                        Certified Mail, Return Receipt Requested
Resolute Management, Inc.                7006 0100 0002 2199 9796
Mid-Atlantic Division
United Plaza-Suite 700
30 South 17th Street
Philadelphia, Pa   19103

Robert Galardi
Claim Specialist                         Certified Mail, Return Receipt Requested
CNA                                      7006 0100 0002 2199 9789
Law Department
Environmental & Mass Tort Claims
Cranbury Executive Center
1249 South River Road, Suite 300
Cranbury, NJ   08512

Re:  Freeport-McMoRan Copper & Gold Inc. Document Review Project (Revlon Project)

Dear Ms. Dedeyan and Mr. Galardi:

Thank you for meeting with us on December 6, 2007 in Philadelphia. At the meeting Freeport-McMoRan Copper & Gold Inc. (FCX) agreed to provide the additional information you requested concerning the review of Cyprus Amax Minerals Company (Cyprus Amax) documents currently housed at the former Revlon facility in Phoenix, Arizona (Revlon).  In accordance with that agreement, enclosed are the following:

- Revlon Building Floor Plan
- Agreement for Payment of Revlon Building Lease
- Revised Case List
- Case-specific pro-rata sheets of each Cyprus Amax case on the revised case list
- Email from counsel regarding  the inactive Ohio cases
- Contact List for silica cases insurers
- FCX Insurance Program Chart

The following additional items will be forwarded to you under separate cover:

Page 2
December 21, 2007
Peters to CNA and INA
- Quarterly status reports both on how litigation is going and the status of the document review project for quarter ending December 31, 2007
- Budget for Louisiana litigation (range)

## Project Overview

The Revlon Project was started in April 2005 with the discovery of various pockets of stored documents at various locations through the company. The subsequent discovery of Cyprus Amax documents that had been previously marked for destruction by Cyprus Amax prior to the merger between Cyprus Amax and Phelps Dodge Corporation in December 1999 caused concern that our prior responses to discovery requests may have been flawed. As a result of this discovery, we proceeded to review the document indexes for storage boxes received from Cyprus Amax we received and found an almost 50% error rate. At that time, it was determined that a comprehensive review should be undertaken; so these boxes were included in the Revlon Project.

## Project Details

| | |
|---|---|
| Date Commenced: | April 2005 |
| Total Leased Space (square feet): | 216,300 |
| Lease Costs per Square Foot: | Varies (from $0.72 to $.081) |
| Total Number of Boxes: | 62,712 |
| Reviewing Counsel: | Ryley Carlock, & Applewhite |
| Rate of Review per Month: | 2,000 boxes |
| Estimated Projected Completion: | Summer 2008 |

## Cyprus Amax Document Review

| | |
|---|---|
| Date Commenced: | February 2007 |
| Total Number of Cyprus Amax Boxes: | 23,425 (all collections) |
| Estimated Cyprus Amax Review Cost: | $7.8 mil |
| Total Billed to Date for Cyprus Amax: | $3.9 mil |
| Estimated Remaining Review Cost: | $3.9 mil |

## Cyprus Amax Document Review Justification

There are a number of Amax asbestos and Cyprus clay, talc and silica cases presently in litigation. In each of these cases, discovery has been propounded to the defendants by the plaintiffs. Though these discovery requests may have been previously answered by Cyprus Amax, a continuing obligation exists for Cyprus Amax to examine any newly discovered documents to determine if material relevant to ongoing litigation is contained and, if need be, to supplement their responses to discovery. This obligation is the direct purpose of the Cyprus Amax document review and the sole reason that Cyprus Amax insurers are being asked to participate in the payment of this portion of the Revlon Project. The document review, entry into the database and scanning is being conducted on the first floor of Building B-1 of the former Revlon facility (a copy of the floor plan is included in this package.) There are approximately 18,000 Cyprus Amax boxes that have commingled corporate records from both Cyprus Minerals Company and Amax Inc. are currently being reviewed at the Revlon facility. The review of the other Cyprus Amax collections have been completed and were not charged to the Cyprus Amax insurers. Thus far, roughly 41% to 46% of the boxes reviewed contain information pertaining to and potentially responsive to Cyprus Amax asbestos, silica, and talc litigation.

## Selection of Active Cases

Cases for allocation of the Cyprus Amax document review costs were selected based on whether the case was active and an ongoing discovery obligation existed. The enclosed case list shows the open and active Cyprus Amax cases. As previously discussed, the original list was in error as it contained a number of cases that had previously been resolved. That revised case list will be

Page 3
December 21, 2007
Peters to CNA and INA

used on a going forward basis. As new cases are filed, the list will be modified to include the new cases. Similarly, as cases are resolved, the list will be modified to omit the resolved cases.

**Correction of Prior Invoices**

To date, the Cyprus Amax insurers have been billed $3,852,771.63 (Amax Louisiana asbestos $3,105,173.61; Cyprus clay, talc and silica $747,598.02). Because of the error noted above, the allocation of these costs will have to be adjusted. We have also included a breakdown of the percentages owed by each insurer as well as Freeport's share. We are unable to share the cost allocation on the silica cases because the percentages are part of a confidential cost sharing agreement. We have included a contact list for these insurers for your convenience.

In summary, your insured has undertaken a review of the Cyprus Amax boxes in order to comply with its ongoing discovery obligations on active cases in which you are participating in the defense. This review is part of that defense and, as such, your insured fully expects you to participate in this project. At this point, your insured has been paying a large share of legal *expenses associated with its discovery obligation which rightfully should be paid by you.* Therefore, please provide your written commitment to participate in the Cyprus Amax review project no later than 5:00 PM EST on January 15, 2008. Furthermore, the insured requests that your reimbursement payments begin no later than 5:00 PM EST on January 31, 2008.

I thank you in advance for your time and attention to this matter and I look forward to receiving your response at your earliest possible convenience.

Very truly yours,

Joseph A. Peters
Vice-President
Enviro-Tox Loss Services, Inc.

# FREEPORT-McMoRAN COPPER & GOLD INC. INSURANCE PROGRAM
## PHELPS DODGE CORPORATION INSURANCE PROGRAM

| KEY DATES | FREEPORT-McMoRAN COPPER & GOLD INC. | CYPRUS AMAX MINERALS COMPANY | | COLUMBIAN CHEMICALS INSURANCE PROGRAM |
|---|---|---|---|---|
| | | CYPRUS AMAX MINERALS INSURANCE PROGRAM | Amax Inc. Insurance Program | |
| 12/31/2007 | | | | |
| 10/31/2007 | | | | |
| 3/31/2007 | Phelps Dodge Corporation | | | |
| | | | | |
| 9/30/2007 | | | | |
| 10/31/2006 | | | | |
| 3/31/2006 | Acquired by Freeport-McMoRan 3/19/07 | | | Phelps Dodge High-Performance Conductors |
| 7/1/2006 | | | | |
| 1/1/2006 | | | | |
| 9/30/2005 | | | | |
| 3/1/1999 | Heritage Freeport-McMoRan Insurance Program | | | |
| | | | | |
| | Sold off from FMI 1995 | | | |
| 1/1/1996 | | | | |
| | INCORPORATED 11/10/87 | | | |
| 4/1/1985 | | | | |
| | INCORPORATED 8/18/1885 | | | |

Ansac Inc. Insurance Program

INCORPORATED 6/01/77

INCORPORATED 6/24/71

# EXHIBIT G


**FREEPORT-McMoRan COPPER & GOLD INC.**

Freeport-McMoRan Copper & Gold Inc.
One North Central Avenue
Phoenix, Arizona 85004-4415

602-366-8053
602-366-7311, Fax

**Victoria Bellamy**
Manager, Risk Programs

January 11, 2008

Margo Dedeyan
Claims Specialist
Resolute Management Inc.
Mid-Atlantic Division
United Plaza – Suite 700
30 South 17th Street
Philadelphia, PA 19103

RE:    Amax Asbestos Litigation

Dear Ms. Dedeyan:

Please reference your letter dated December 20, 2007 to Gregory D. Winfree regarding information related to the Amax Asbestos Litigation. I have conferred with Mr. Winfree regarding my response to your letter.  By now you should be in receipt of a package dated December 21, 2007, both e-mailed and sent by certified mail to you by Joseph A. Peters of Enviro-Tox Loss Services, containing the information initially requested in our meeting on December 6, 2007. Incidentally, most of the information requested in your December 20, 2007 letter was also addressed in that package, including:

- Corporate chart depicting lines of insurance coverage for each related entity

- Coverage chart applicable to the Amax asbestos litigation

- Budgets provided for the document review and database project

- Breakdown of cases/claim types over which costs of the document review project are being allocated

- List of Amax asbestos claims for which the document review is being done, along with an explanation of the nature of any purported outstanding discovery

- Numbers of pending claims involving: Amax asbestos; Cyprus-Amax lead ore; Cyprus talc, Cyprus clay; Cyprus environmental; and any other type of claim or litigation for which this document review would be relevant

- The document review protocol was already discussed at length at the meeting. Following is the brief overview provided both by Mr. Winfree at our December 6 meeting and restated in Mr. Peter's letter:  There are a number of Amax asbestos and Cyprus clay, talc and silica cases presently in litigation.  In each of these cases, discovery has been propounded to the defendants by the plaintiffs.  Though these discovery requests may have been previously answered by Cyprus Amax, a continuing obligation exists for Cyprus Amax to examine any newly discovered documents to determine if material relevant to ongoing litigation is contained and, if need be, to supplement their responses to discovery.  This obligation is the direct purpose of the Cyprus Amax document review and the sole reason that Cyprus Amax insurers are being asked to participate in the payment of this portion of the Revlon Project.  The document review, entry into the database and scanning is being

Amax Asbestos Litigation
Ms. Dedeyan
Page 2

conducted on the first floor of Building B-1 of the former Revlon facility (a copy of the floor plan is included in this package.) There are approximately 18,000 Cyprus Amax boxes that have commingled corporate records from both Cyprus Minerals Company and Amax Inc. are currently being reviewed at the Revlon facility. The review of the other Cyprus Amax collections have been completed and were not charged to the Cyprus Amax insurers.

- Identification by way of index or spreadsheet of documents already reviewed: Please be advised that we cannot provide the index of documents you've requested in light of our need to protect attorney/client privilege. As we've mentioned earlier, however, thus far between 41% to 46% of the Cyprus Amax boxes reviewed have contained documents or information relevant and potentially responsive to the asbestos, talc and clay litigation.

  Regarding the footnote included in your letter referencing the prior review of Braithwaite documents by the Kasowitz firm, please be advised that it was our intent to put the Braithwaite documents through the Revlon process but pending discovery deadlines in the Gallardo case necessitated an immediate litigation review for responsive documents for the purposes of that case. This underscores the necessity of the Revlon project since our intent is to have the documents reviewed once with an eye toward addressing all outstanding asbestos, talc and clay issues as opposed to litigation-specific searches on a case-by-case basis. Unfortunately, in this instance, it could not be avoided.

Regarding the other items requested:

- Comprehensive report from defense counsel: To reiterate what was stated in Mr. Peters' letter, the 2007 fourth quarter reports will be forwarded to you as soon as they are received from counsel. In addition to these reports, national coverage counsel will also provide a letter that provides a brief overview of the current status of the Amax asbestos litigation. Nonetheless, it is our thought that this information is not directly germane to the reimbursement of fees on the document review project and should not hold up your expected response by January 15.

- Budget from defense counsel for 2008 Amax asbestos litigation (anticipated costs and fees): We anticipate having this information available to you by January 18. Again, it is our thought that this information is not directly germane to the reimbursement of fees on the document review project and should not hold up your expected response by January 15.

- Upcoming trial list for 2008 from defense counsel: Currently there is only one case set for trial in 2007, Gallardo v Sank set for April 7, 2008.

We trust that the information received thus far will enable you to appropriately evaluate the Revlon Project expenses and respond as outlined in Mr. Peter's letter. We look forward to initiating regular conference calls in order to provide you with up-to-date information and address any concerns you may have as they arise.

Sincerely,

*Victoria Bellamy*

cc:     Greg Winfree
        Larry Poling, ETLS
        Joe Peters, ETLS

# EXHIBIT H

# HellerEhrman LLP

April 16, 2008

Mark J. Plumer
Shareholder
Mark.Plumer@hellerehrman.com
Direct +1 (202) 912-2021
Direct Fax +1 (202) 912-2202
Main +1 (202) 912-2000
Fax +1 (202) 912-2020

41196.0003

*Via Hand Delivery*

The Honorable Peter K. Leisure
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1910
New York, New York  10007

**Re:**    ***Century Indemnity Company, et al. v. Freeport-McMoRan Copper & Gold Inc., et al.,* Case No. O8 CV 02012 (PKL) (S.D.N.Y.)**

Dear Judge Leisure:

We represent defendants Freeport-McMoRan Copper & Gold Inc., Phelps Dodge Corporation and Cyprus Amax Minerals Company (collectively, "Cyprus Amax").[1]  This letter serves as a request, pursuant to Federal Rule of Civil Procedure 6(b)(1) and Rule 1.E. of this Court's individual practices, for a 45 day extension of the current deadline of April 23, 2008 to answer, move or otherwise respond to the Complaint or, in the alternative, for a 45 day stay of the litigation.  Should the Court grant Cyprus Amax additional time to answer, we respectfully request, in addition, that the preliminary pre-trial conference, currently scheduled for May 22, 2008, be adjourned 45 days as well, until June 6, 2008 or the next available date on the Court's calendar.  Consistent with Rule 1.E of this Court's individual practices, we have enclosed a proposed order rescheduling the date of the preliminary pre-trial conference, a copy of which has been electronically mailed to the Orders and Judgment Clerk pursuant to the Guidelines for Electronic Case Filing in the Southern District of New York.

Cyprus Amax previously requested and plaintiffs consented to a 30-day extension, and this Court "so ordered" the parties' stipulation on March 20, 2008.  On Monday, April 14, 2008, Cyprus Amax requested consent for an additional 45 day extension from plaintiffs' counsel.  *See* Exhibit A.  Counsel for Century Indemnity Company ("Century") replied that it

---

[1] This dispute involves Cyprus Amax Minerals Company and its predecessors and subsidiaries. Accordingly, Cyprus Amax has met and conferred with plaintiff-insurers and requested that they agree to dismiss Freeport McMoRan Copper & Gold Inc., which is not necessary to a resolution of insurers' claims and is not properly named as a defendant.  Insurers have refused, and Cyprus Amax intends to file, at the appropriate time, a motion to dismiss Freeport McMoRan Copper & Gold Inc. from this lawsuit.

Heller Ehrman LLP  1717 Rhode Island Avenue, NW,  Washington, D.C.  20036-3001  www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Shanghai   Silicon Valley   Singapore   Washington, D.C.

HellerEhrman_LLP

would agree to the extension but only if Cyprus Amax stipulated that it would not seek to transfer the action to another jurisdiction or court. *See* Exhibit B. Continental has not yet provided its final position. Cyprus Amax has informed Century that it cannot agree to Century's demand; such a stipulation would not "secure the just, speedy, and inexpensive determination of this action." Fed. R. Civ. P. 1. Therefore, Cyprus Amax is compelled to seek relief directly from the Court.

<u>Factual Background</u>

A brief review of the facts will assist the Court in understanding the basis for Cyprus Amax's request.

The current dispute is over an alleged $7.8 million to be spent by Cyprus Amax segregating, indexing and privilege reviewing some 18,000 boxes of documents in defense of multiple lawsuits now pending in various jurisdictions against Cyprus Amax. Prior to a 1993 merger that created Cyprus Amax, there were two separate companies: (1) AMAX Inc. and (2) Cyprus Minerals Company. Prior to the merger, each of these companies had separate identities (and subsidiaries) and separately maintained their records in separate locations. After the merger, the records of these two companies were transferred to a single location and combined. Later-filed asbestos, silica, talc and clay lawsuits against these entities and their subsidiaries have necessitated the current review and segregation of the commingled records, which unfortunately were not reliably indexed. Until recently, Cyprus Amax believed that many of these documents had long-ago been destroyed. Upon learning some had not and that the existing indices were not reliable, Cyprus Amax commenced the disputed review.

The insurer-plaintiffs in this lawsuit issued primary insurance to AMAX Inc. and its subsidiaries. The current case seeks a declaratory judgment (only) that Century and Continental have no obligation to pay the costs of reviewing the newly discovered and commingled documents in defense of their insured, despite that outstanding discovery requests in the pending litigations may call for production of certain of the documents.

Thus, what plaintiffs' Complaint refers to as the "Corporate Records Assimilation Project" of Phelps Dodge Corporation is, rather, a project undertaken by Cyprus Amax in order to defend itself in lawsuits pending against certain of its predecessors. Plaintiffs have acknowledged that they have a duty and obligation to pay the defense costs for these actions and, in fact, both Century and Continental are defending several lawsuits pending against Amax Metals Recovery, Inc. ("AMRI"), a current Cyprus Amax subsidiary (and former AMAX Inc. subsidiary), with asbestos claims against it. However, both Century and Continental have reneged on their duty to defend and refused to pay for the litigation driven document review at the center of this case. In December 2007 and January 2008, Cyprus Amax met face-to-face with Continental and Century to discuss the project and related costs

HellerEhrman<sub>LLP</sub>

and to answer its insurers' questions. At these meetings, Cyprus Amax requested the insurers to provide their commitment to provide coverage for these costs. In lieu of providing such a commitment, Century and Continental filed this lawsuit terminating the ongoing claims discussion.[2]

Although it is not reflected in the Complaint, the present defense costs dispute is not properly limited to AMAX Inc.'s primary insurers (plaintiffs Century and Continental ("AMAX insurers")). The dispute also involves Cyprus Minerals Company's primary insurers (Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic Insurance Company and Continental Insurance Company ("Cyprus insurers")). Like the AMAX insurers, the historic Cyprus insurers have refused to pay the requested defense costs related to the review of commingled AMAX Inc. and Cyprus Minerals Company documents. However, there is a requirement that Cyprus Amax engage in non-binding mediation with the Cyprus insurers before commencing any lawsuit against them. Co-plaintiff in this lawsuit, Continental, is well aware of this requirement, because it insured both AMAX Inc. and Cyprus Minerals Company. Cyprus Amax last week sent a letter to the Cyprus insurers demanding mediation within 30 days.

Importantly, the Complaint filed by Century and Continental in this Court does not name AMRI as a party, despite that all of the underlying lawsuits for which the AMAX insurers owe defense costs have been filed against AMRI. AMRI, a wholly owned subsidiary of Cyprus Amax, is incorporated in Delaware and has its principal place of business in Louisiana. AMRI is not authorized to do business in New York and is not subject to this Court's jurisdiction.

Finally, since the Complaint was filed, Cyprus Amax and Continental have met to discuss the potential settlement of this dispute. While the outcome of these discussions remains uncertain, there is at least a chance that a settlement may be accomplished between these parties. It is Cyprus Amax's hope that a similar meeting will be held with Century within the next few weeks.

---

[2] This is not the first time that Continental has filed a lawsuit during ongoing claims negotiations with AMAX Inc. and its subsidiaries. For example, in 1993, Continental filed a lawsuit against AMAX Inc., which was dismissed in favor of a later lawsuit filed in Colorado by AMAX Inc. and its relevant subsidiaries. New York's Appellate Division, First Department recognized on an appeal taken by Continental and Century – the same plaintiffs here – that "[s]ince [Continental] commenced this action at a time when negotiations for settlement of these claims were taking place, we afford plaintiff no benefit from having commenced this action before defendant Amax commenced its similar Colorado action." *Cont'l Ins. Co. v. Amax Inc.*, 192 A.D.2d 391, 391, 596 N.Y.S.2d 370, 370-71(1st Dept. 1993).

HellerEhrman LLP

<u>Reasons for Defendants' Request</u>

Upon this factual backdrop, defendants respectfully request that there is good cause for the Court to order a 45-day extension, or stay, for the following reasons:

This is a lawsuit that never should have been filed in this forum and insurers' decision to seek a coverage determination in this Court is exactly the kind of forum shopping that they engaged in against AMAX Inc. previously and for which their conduct previously was condemned by the New York courts. *See* note 1. Based on information currently available to Cyprus Amax, the basis for filing the current lawsuit in New York is far weaker than the last time, as none of the parties are currently based in New York, there is no dispute about the existence or wording of the relevant policies and none of the key witnesses or documents are located in New York.

Moreover, this entire dispute over the scope of its insurers' duty to defend should be adjudicated, if necessary, in a single lawsuit that includes both the AMAX insurers and the Cyprus insurers. It is possible that mediation with the Cyprus insurers will resolve part of the dispute, although these insurers have identified numerous reasons why they believe the disputed defense costs are not covered. The requested extension will provide the time necessary for Cyprus Amax to complete the required mediation process. Thus, within 45 days, Cyprus Amax will know which parties are or are not necessary to resolve this entire dispute and can answer, move or otherwise respond to the Complaint without further delay. It is within this Court's inherent power to extend the time to answer or to issue a stay on these facts. *See, e.g., Don King Prod., Inc. v. Hopkins,* No. 04 Civ. 9705, 2004 U.S. Dist. LEXIS 25917, *8 (S.D.N.Y. Dec. 23, 2004) ("Rule 6 of the Federal Rules of Civil Procedure provides a district court with wide discretion to grant a request for an extension of time made prior to the expiration of the period prescribed. Indeed, courts will normally grant such applications in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party.") (internal citations omitted); *Kernisant v. City of New York,* 225 F.R.D. 422, 431 (E.D.N.Y. 2005) (explaining that an application for the enlargement of time under Rule 6(b)(1) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1360 (3d ed. 2008) (recognizing that federal courts "rely[] on their inherent power . . . in an effort to maximize the effective utilization of judicial resources and to minimize the possibility of conflicts between different courts").

If Cyprus Amax's efforts to resolve this entire dispute outside of litigation should prove unsuccessful, Cyprus Amax intends to move this Court to dismiss the current lawsuit in favor of a more comprehensive action to be filed in a more appropriate forum where all of the necessary parties may be sued. The alternative action will include additional necessary claims and parties. Importantly, neither AMRI nor the Cyprus insurers may be sued in this

HellerEhrman LLP

Court. Under such circumstances, the Court has ample discretion to dismiss or stay this diversity action seeking a declaratory judgment in favor of a more appropriate forum pursuant to the United States Supreme Court's decision in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) and, also, pursuant to Federal Rule of Civil Procedure 12(b)(7) in view of the fact that AMRI, a necessary and indispensable party to this action, cannot be joined in this proceeding.

Finally, an extension or stay will allow Cyprus Amax and Continental to continue ongoing settlement discussions and, we hope, will enable Cyprus Amax and Century to begin such discussions. Of course, it would be preferable if this dispute could be settled (in whole or in part), averting further litigation in this Court.[3]

\* \* \* \* \*

Cyprus Amax has and intends to continue to act with urgency to resolve this entire dispute in the most efficient manner, with a view toward including all of the correct parties in the correct forum should litigation be necessary. A 45-day extension or stay would promote efficiency by averting premature and potentially unnecessary motion practice. The requested relief will not in any way prejudice plaintiffs' rights. Indeed, plaintiff insurers' goal is to avoid payment of monies due and owing to Cyprus Amax and no harm can be worked upon them by delaying their payment obligation for an additional 45 days. There is good cause to grant the requested relief, and the requested extension or stay is well within the Court's discretion and is necessary to ensure the "just, speedy, and inexpensive determination of this action." Fed. R. Civ. P. 1.

Respectfully submitted,

*Mark J. Plumer / emc*

Mark J. Plumer

Enclosures

cc:   Shane R. Heskin, Esq. (via facsimile and overnight mail)
      Alan P. Jacobus, Esq. (via facsimile and overnight mail)

---

[3] Cyprus Amax is cognizant of the Court's individual practices which require a pre-motion letter for motions other than discovery motions and motions to dismiss in lieu of an answer (Rule 2.A), and Cyprus Amax will file any such letter at an appropriate time.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

CENTURY INDEMNITY COMPANY,           :
AS SUCCESSOR TO CCI INSURANCE        :
COMPANY, AS SUCCESSOR TO             :    08 Civ. 02012 (PKL)
INSURANCE COMPANY OF NORTH           :
AMERICA and THE CONTINENTAL          :    **[PROPOSED]**
INSURANCE COMPANY,                   :    **REVISED SCHEDULING ORDER**
                                     :
                 Plaintiffs,         :
                                     :
                                     :
            v.                       :
                                     :
FREEPORT-MCMORAN COPPER &            :
GOLD INC., AS THE CLAIMED            :
SUCCESSOR TO PHELPS DODGE            :
CORPORATION, AS THE CLAIMED          :
SUCCESSOR TO CYPRUS AMAX             :
MINERALS COMPANY, AS THE             :
CLAIMED SUCCESSOR TO AMAX,           :
INC., AS SUCCESSOR TO AMERICAN       :
METAL CLIMAX, INC.,                  :
                                     :
                 Defendants.         :
---------------------------------------------------------x

The Court hereby ORDERS that Defendants' time to answer, move or otherwise respond to the Complaint now due on April 23, 2008 is extended for 45 days.

The Court hereby ORDERS that the preliminary pre-trial conference currently scheduled for May 22, 2008 is adjourned until July 6, 2008, or the next available date on the Court's calendar.

Dated: _____, 2008          **SO ORDERED:**
        New York, New York

                                    _____
                                        Hon. Peter K. Leisure
                                        United States District Court

**Cirando, Lisa M.**

| | |
|---|---|
| **From:** | Plumer, Mark J. |
| **Sent:** | Monday, April 14, 2008 4:04 PM |
| **To:** | Heskins@whiteandwilliams.com; Alan P. Jacobus (ajacobus@cbmlaw.com) |
| **Cc:** | Cirando, Lisa M. |
| **Subject:** | Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY) |

**Attachments:** 793306_1.DOC

Counsel:

On behalf of defendants Freeport-McMoRan Copper & Gold, Inc., Phelps Dodge Corporation and Cyprus Amax Minerals Company ("Cyprus Amax"), we write to request an additional extension of 45 days from the current deadline of April 23 to answer, move or otherwise respond to the Complaint and, in addition, your

793306_1.DOC (49 KB)

agreement to extend by the same time the court-ordered conference currently scheduled for           ay 22. With your approval, we will file the attached stipulation with the court on Wednesday April 16. We recognize that the parties cannot extend a Court ordered deadline but the parties can at least consent to adjourn it. If plaintiffs are unwilling to agree to a further extension, defendants plan to seek either a 45-day extension of all deadlines or a 45-day stay of this litigation.

This brief extension or stay is necessary. First, it will allow certain of the parties to the current lawsuit to continue ongoing settlement discussions and, we hope, will enable the remaining parties to begin such discussions. It obviously would be ideal if the current dispute could be settled (in whole or in part) and further litigation could be averted or streamlined. Second, the requested extension will begin a process designed to resolve this entire dispute efficiently by including all of the correct parties and resolving the entire dispute in the correct forum. What plaintiffs' Complaint refers to as the "Corporate Records Assimilation Project" was undertaken by Cyprus Amax Minerals Company ("Cyprus Amax") to defend certain lawsuits pending against certain of its predecessors. Prior to the merger that created Cyprus Amax in 1993, there were two separate companies, AMAX Inc and Cyprus Minerals Company, each with separate identities and records. After the merger, the records of these two companies were combined. The current defense of later-filed claims now pending against an AMAX Inc and Cyprus Minerals Company predecessors or subsidiaries has necessitated the review and segregation of commingled and un-indexed records. Indeed, the plaintiffs were advised before this litigation commenced that the $7.8 million estimate identified in the Complaint was the cost of segregating, indexing and privilege reviewing the commingled documents of these two former entities. What is in part at issue therefore is defense costs assignable to AMAX Inc's primary insurers in this lawsuit (Century and Continental) and Cyprus Minerals Company's primary insurers (Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic Insurance Company and Continental Insurance Company). The historic Cyprus Minerals Company insurers likewise have been tendered this claim and, like Century and Continental in this case, have thus far refused to pay the requested defense costs. This entire dispute should be adjudicated, if necessary, in one lawsuit. Because Cyprus Amax is required to mediate with the Cyprus Minerals Company insurers before filing any lawsuit, it has sent a letter to them demanding mediation within 30 days.

Within 45 days, Cyprus Amax should know whether the Cyprus Minerals Company insurers are or are not necessary to resolve this dispute and can so answer or otherwise plead. If one or both of the current plaintiffs are unwilling to provide the requested 45-day extension, we request that each of you let us know promptly, as we plan to request an extension or stay from Judge Leisure by the close of business on Wednesday April 16, 2008.

Thank you for your assistance. Please contact me if you have any questions or concerns. Thank you.

1

Mark J. Plumer | Attorney | HellerEhrmanLLP | 1717 Rhode Island Avenue, NW | Washington, DC 20036
tel: +1.202.912.2021 | fax: +1.202.912.2202 | email: mark.plumer@hellerehrman.com | web:
www.hellerehrman.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CENTURY INDEMNITY COMPANY, AS       :
SUCCESSOR TO CCI INSURANCE          :
COMPANY, AS SUCCESSOR TO            :     08 Civ. 0212 (PKL)
INSURANCE COMPANY OF NORTH     :
AMERICA and THE CONTINENTAL    :    **STIPULATION**
INSURANCE COMPANY,                  :    **EXTENDING TIME TO**
                                :    **RESPOND TO COMPLAINT**

             Plaintiffs,       :

                            :

           v.               :

FREEPORT-MCMORAN COPPER & GOLD   :
INC., AS THE CLAIMED SUCCESSOR TO  :
PHELPS DODGE CORPORATION, AS THE  :
CLAIMED SUCCESSOR TO CYPRUS      :
AMAX MINERALS COMPANY, AS THE    :
CLAIMED SUCCESSOR TO AMAX, INC.,   :
AS SUCCESSOR TO AMERICAN METAL  :
CLIMAX, INC.,                   :
                            :
             Defendants.     :
                            :
-------------------------------------------------------x

IT IS HEREBY STIPULATED by and between the undersigned counsel that Defendants'

time to answer, move or otherwise respond to the Complaint now due on April 23, 2008 has been

extended for 45 days. One previous extension was agreed by all parties and so ordered by the

Court on March 20, 2008.

It is further stipulated and agreed by all parties, subject to court approval, that the court-

ordered preliminary pre-trial conference currently scheduled for May 22, 2008 be postponed to a

date after the Defendants' extended time to answer, move or otherwise respond to the Complaint.

It is further stipulated and agreed that facsimile signatures may be deemed as originals.

Dated: New York, New York
        April 14, 2008

WHITE AND WILLIAMS LLP

By:_____
    Shane R. Heskin, Esq.  (SH-9984)

1800 One Liberty Place
Philadelphia, Pennsylvania  19103
(215) 864-7000

Attorneys for Plaintiff Century Indemnity
Company


HELLER EHRMAN LLP

By:_____
    Lisa M. Cirando, Esq.  (LC-1916)

7 Times Square
New York, New York 10036
(212) 832-8300

Attorneys for Defendants Freeport-McMoRan
Copper & Gold Inc., Phelps Dodge
Corporation, Cyprus Amax Minerals Company


CARROLL BURDICK & McDONOUGH LLP

By:_____
    Alan P. Jacobus, Esq.
    (*pro hac vice* pending)

44 Montgomery Street
San Francisco, California  94104
(415) 989-1900

Attorneys for Plaintiff The Continental
Insurance Company


SO ORDERED:


_____
Hon. Peter K. Leisure
United States District Court

**Cirando, Lisa M.**

| | |
|---|---|
| **From:** | Heskin, Shane [heskins@whiteandwilliams.com] |
| **Sent:** | Monday, April 14, 2008 4:25 PM |
| **To:** | Plumer, Mark J. |
| **Cc:** | Cirando, Lisa M.; Cellucci, Guy; ajacobus@cbmlaw.com |
| **Subject:** | RE: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY) |

Mark:

Century will agree to the 45 day-extension of time to answer the complaint on the condition that Freeport/Amax stipulate that it will not seek to remove the NY action in favor of another jurisdiction or court. If Freeport/Amax needs in good-faith additional time to answer for reasons other than resolving its Cyprus obligations, we are happy to consider a reasonable extension of time not to exceed 14 days. We also do not feel an adjournment of the Rule 16 conference is appropriate at this time.

Regards,
-Shane

-----Original Message-----
From: Plumer, Mark J. [mailto:Mark.Plumer@hellerehrman.com]
Sent: Monday, April 14, 2008 4:04 PM
To: Heskin, Shane; ajacobus@cbmlaw.com
Cc: Cirando, Lisa M.
Subject: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY)

Counsel:

On behalf of defendants Freeport-McMoRan Copper & Gold, Inc., Phelps Dodge Corporation and Cyprus Amax Minerals Company ("Cyprus Amax"), we write to request an additional extension of 45 days from the current deadline of April 23 to answer, move or otherwise respond to the Complaint and, in addition, your agreement to extend by the same time the court-ordered conference currently scheduled fo <<793306_ 1.DOC>> r May 22. With your approval, we will file the attached stipulation with the court on Wednesday April 16. We recognize that the parties cannot extend a Court ordered deadline but the parties can at least consent to adjourn it. If plaintiffs are unwilling to agree to a further extension, defendants plan to seek either a 45-day extension of all deadlines or a 45-day stay of this litigation.

This brief extension or stay is necessary. First, it will allow certain of the parties to the current lawsuit to continue ongoing settlement discussions and, we hope, will enable the remaining parties to begin such discussions. It obviously would be ideal if the current dispute could be settled (in whole or in part) and further litigation could be averted or streamlined. Second, the requested extension will begin a process designed to resolve this entire dispute efficiently by including all of the correct parties and resolving the entire dispute in the correct forum. What plaintiffs' Complaint refers to as the "Corporate Records Assimilation Project" was undertaken by Cyprus Amax Minerals Company ("Cyprus Amax") to defend certain lawsuits pending against certain of its predecessors. Prior to the merger that created Cyprus Amax in 1993, there were two separate companies, AMAX Inc and Cyprus Minerals Company, each with separate identities and records. After the merger, the records of these two companies were combined. The current defense of later-filed claims now pending against an AMAX Inc and Cyprus Minerals Company predecessors or subsidiaries has necessitated the review and segregation of commingled and un-indexed records. Indeed, the plaintiffs were advised before this litigation commenced that the $7.8 million estimate identified in the Complaint was the cost of segregating, indexing and privilege reviewing the commingled documents of these two former entities. What is in part at issue therefore is defense costs assignable to AMAX Inc's primary insurers in this lawsuit (Century and Continental) and Cyprus Minerals Company's primary insurers (Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic

1

Insurance Company and Continental Insurance Company). The historic Cyprus Minerals Company insurers likewise have been tendered this claim and, like Century and Continental in this case, have thus far refused to pay the requested defense costs. This entire dispute should be adjudicated, if necessary, in one lawsuit. Because Cyprus Amax is required to mediate with the Cyprus Minerals Company insurers before filing any lawsuit, it has sent a letter to them demanding mediation within 30 days.

Within 45 days, Cyprus Amax should know whether the Cyprus Minerals Company insurers are or are not necessary to resolve this dispute and can so answer or otherwise plead. If one or both of the current plaintiffs are unwilling to provide the requested 45-day extension, we request that each of you let us know promptly, as we plan to request an extension or stay from Judge Leisure by the close of business on Wednesday April 16, 2008.

Thank you for your assistance. Please contact me if you have any questions or concerns. Thank you.

Mark J. Plumer | Attorney | HellerEhrmanLLP | 1717 Rhode Island Avenue, NW | Washington, DC 20036
tel: +1.202.912.2021 | fax: +1.202.912.2202 | email:
mark.plumer@hellerehrman.com | web: www.hellerehrman.com

==============================================

This email is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the email and notify us immediately.

==============================================

# EXHIBIT I

**From:**       Plumer, Mark J. [Mark.Plumer@hellerehrman.com]
**Sent:**       Friday, April 04, 2008 9:28 AM
**To:**         ajacobus@cbmlaw.com; Heskin, Shane
**Cc:**         Cirando, Lisa M.
**Subject:**    Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212
                (PKL) (SDNY)

**Attachments:**    791570_1.DOC



791570_1.DOC
  (34 KB)
            Ian and Shane,

We appreciate Century and Continental's ("plaintiffs'") willingness to consider
stipulating to the dismissal of Freeport-McMoRan Copper & Gold Inc. without prejudice from
the lawsuit in an effort to avoid unnecessary motion practice.  This email responds to
your request that we explain the reason for the dismissal and that we provide adequate
assurances that a complete resolution of this disput <<791570_1.DOC>> e may be had as
against the remaining parties alone.

Plaintiffs' claim is based solely on policies issued Amax Inc. or its predecessors and
historic records generated by  Amax, Inc. and/or Cyprus Minerals Company or its
predecessors.  It is undisputed that Amax, Inc. merged into Cyprus Minerals Company and
immediately changed its name to Cyprus Amax Minerals Company.  It is also undisputed that
Cyprus Amax Minerals Company thereafter merged with a subsidiary of Phelps Dodge, but kept
the name Cyprus Amax Minerals Company.  Thus, Cyprus Amax Minerals Company, a currently
existing corporation, is the corporate successor to the Amax, Inc and predecessor coverage
and is therefore entitled to any coverage available under the Amax policies.  Moreover,
any documents implicated by plaintiffs' claims arise out of the operations of Cyprus Amax
Minerals Company or its corporate predecessors.  No other members of the Freeport McMoRan
corporate family are necessary for plaintiffs to obtain complete relief regarding the
declaratory judgment sought in this action regarding the Amax policies.  This said, we do
not propose to dismiss Phelps Dodge Corporation, whom we have determined played an active
role in the facts and circumstances underlying plaintiffs' Complaint as Cyprus Amax
Minerals Company's immediate parent.  Freeport McMoRan Copper & Gold Inc., as the ultimate
parent of Cyprus Amax Minerals Company and Phelps Dodge Corporation is too far removed
from the facts, is unnecessary and therefore should be dismissed from the case.

In return for the plaintiffs' agreement to dismiss Freeport-McMoRan Copper & Gold Inc.
without prejudice, Freeport-McMoRan Copper & Gold Inc will agree to provide any discovery
relevant to the litigation.  A dismissal without prejudice also will not bar Plaintiffs
from seeking to re-name Freeport-McMoRan Copper & Gold Inc. should the need arise.

Please confirm by reply email that you will stipulate to the Rule 41(a)(1)(A)(ii)
dismissal of Freeport-McMoRan without prejudice and the attached draft stipulation is
acceptable.  Thank you.

Mark J. Plumer | Attorney | HellerEhrmanLLP | 1717 Rhode Island Avenue, NW | Washington,
DC 20036
tel: +1.202.912.2021 | fax: +1.202.912.2202 | email: mark.plumer@hellerehrman.com | web:
www.hellerehrman.com

================================================================

This email is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the email and notify us immediately.

================================================

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CENTURY INDEMNITY COMPANY, AS            :
SUCCESSOR TO CCI INSURANCE               :
COMPANY, AS SUCCESSOR TO                 :    08 Civ. 0212 (PKL)
INSURANCE COMPANY OF NORTH               :
AMERICA and THE CONTINENTAL              :    **RULE 41(a)(1)(A)(ii) STIPULATION**
INSURANCE COMPANY,                       :    **OF DISMISSAL OF**
                                         :    **DEFENDANT FREEPORT-**
                    Plaintiffs,          :    **MCMORAN COPPER & GOLD INC.**
                                         :
                                         :
            v.                           :
                                         :
                                         :
FREEPORT-MCMORAN COPPER & GOLD           :
INC., AS THE CLAIMED SUCCESSOR TO        :
PHELPS DODGE CORPORATION, AS THE         :
CLAIMED SUCCESSOR TO CYPRUS              :
AMAX MINERALS COMPANY, AS THE            :
CLAIMED SUCCESSOR TO AMAX, INC.,         :
AS SUCCESSOR TO AMERICAN METAL           :
CLIMAX, INC.,                            :
                                         :
                    Defendant.           :
                                         :
-------------------------------------------------------x

IT IS HEREBY STIPULATED AND AGREED, by and between plaintiffs Century

Indemnity Company ("Century") and The Continental Insurance Company ("Continental"), and

defendant Freeport-McMoRan Copper & Gold, Inc. ("Freeport"), through their undersigned

counsel, that all claims asserted against Freeport in the above-captioned action are discontinued

without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

It is further stipulated and agreed that facsimile signatures may be deemed as originals.

Dated: New York, New York
        April ____, 2008


WHITE AND WILLIAMS LLP                    HELLER EHRMAN LLP

By:_____              By:_____
    Shane R. Heskin, Esq.  (SH-9984)          Lisa M. Cirando, Esq.  (LC-1916)

1800 One Liberty Place                    7 Times Square
Philadelphia, Pennsylvania  19103         New York, New York 10036
(215) 864-7000                            (212) 832-8300

Attorneys for Plaintiff Century Indemnity Attorneys for Defendant Freeport-McMoRan
Company                                   Copper & Gold Inc.



CARROLL BURDICK & McDONOUGH LLP

By:_____
    Alan P. Jacobus, Esq.
    (*pro hac vice* pending)

44 Montgomery Street
San Francisco, California  94104
(415) 989-1900

Attorneys for Plaintiff The Continental
Insurance Company