> ➢ The policies Continental and Century issued to Amax and the policies the other insurers issued to Cyprus *were issued years before 1993, when Amax and Cyprus merged.* In fact, the last relevant policy issued to Amax expired on April 1, 1986, seven years before Amax and Cyprus had any corporate relationship whatsoever.[9]

> ➢ Freeport's dispute with the Amax insurers (Continental and Century) in this action is under the insurance policies Continental and Century issued to Amax.[10] Freeport's dispute with the Cyprus insurers is under a 2007 settlement agreement, to which neither Continental nor Century is a party.[11]

> ➢ The underlying liabilities for which Freeport seeks coverage are different. From the Amax insurers, Freeport seeks coverage for asbestos claims.[12] From the Cyprus insurers, Freeport seeks coverage for clay, silica, and talc claims.[13]

**A. Amax and Cyprus Were Separate Companies Until 1993.**

As Figure 1 shows, Amax and Cyprus were separate companies with separate insurance coverage prior to 1993. On June 17, 1887, The American Metal Company (Limited) was incorporated.[14] On December 30, 1957, The American Metal Company (Limited) and Climax Molybdenum Company consolidated into The American Metal Company (Limited), which was then renamed American Metal Climax, Inc. On June 14, 1974, American Metal Climax, Inc. changed its name to Amax, Inc.

Before November 15, 1993, Cyprus Minerals Company had no corporate relationship with Amax. Various insurers, including The American Insurance Company, Continental Casualty Company[15], Old Republic Insurance Company, and Truck Insurance Exchange issued

---

[9] Galardi Aff. at 1-4, ¶¶ 3-12, Ex. A-J (selected Declarations and Daily Report of Continental policies).
[10] Jacobus Aff. at 2, ¶ 8, Ex. 4 (Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. Feb. 28, 2008) *passim*).
[11] Jacobus Aff. at 2, ¶ 6, Ex. 2 (Affidavit of Gregory D. Winfree at 3, ¶ 7).
[12] Jacobus Aff. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007, at 2).
[13] Jacobus Aff. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007, at 2).
[14] For corporate history *see, generally*, Jacobus Aff. at 2, ¶ 7, Ex. 3 (Email from Plumer to Jacobus (Apr. 4, 2008)).
[15] Lehman Aff. at 1-3, ¶¶ 3-13: despite the common name "Continental," The Continental Insurance Company, which issued pre-merger policies to Amax, and Continental Casualty Company, which issued pre-merger policies to Cyprus, had no corporate relationship or affiliation until 1995. Freeport's efforts to conflate and confuse these two different insurers with very different, independent, unrelated histories (until 1995) must be rejected.

coverage to Cyprus Minerals Company before November 15, 1993. On November 15, 1993, Amax, Inc. and Cyprus Minerals Company merged to become Cyprus Amax Minerals Company.

On December 2, 1999, Cyprus Amax Minerals Company merged with Phelps Dodge Corporation to become Cyprus Amax Minerals Company. On March 19, 2007, Freeport-McMoRan Copper and Gold Inc.'s subsidiary merged into Phelps Dodge Corporation. Phelps Dodge Corporation was the surviving company and Cyprus Amax Minerals Company remained a Phelps Dodge Corporation subsidiary. Thus, Freeport owns all of these other entities.

### B. The Amax Insurance Coverage at Issue Here Is Distinct From the Insurance Coverage Issued to Cyprus Mines.

As Figure 1 illustrates, the policies issued to Amax and the policies issued to Cyprus were issued before Amax and Cyprus merged in 1993. They are separate lines of coverage, issued to distinct policyholders with a very different history. In fact, Freeport's current claims against the Amax insurers, Continental and Century, are under the policies, and Freeport's claim against the Cyprus insurers is under a 2007 settlement and defense cost sharing agreement, not the insurers' policies.

#### 1. The Pre-Merger Amax Coverage Is At Issue in This Action.

Century issued primary liability policies to Amax (and its predecessor) from January 1, 1965 to January 1, 1975.[16] Continental issued primary liability policies to Amax from January 1, 1975 to April 1, 1986.[17] These policies are at issue in this action.

---

[16] Jacobus Aff. at 1, ¶ 4, Ex. 1 (Complaint for Breach of Contract and Declaratory Relief, *Cyprus Amax Minerals Co v. Cont'l Cas. Co.*, No. BC391068 (Cal. Super. Ct., Los Angeles County May 16, 2008) at 6-7, ¶¶ 29-30).

[17] Galardi Aff. at 1-4, ¶¶ 3-12, Ex. A-J (selected Declarations and Daily Report of Continental policies).

2.  **Freeport's Dispute With the Cyprus Insurers Concerns the Interpretation of the 2007 Cost Sharing Agreement, Which Is Completely Unrelated to the Amax Coverage.**

Before the merger of Amax and Cyprus in 1993, various insurers issued liability coverage to Cyprus.[18] In 2007, those insurers entered into a cost sharing agreement with Cyprus Amax[19], which (1) required meditation of any dispute before beginning litigation[20], and (2) required any litigation over the disputes concerning that agreement to be heard in California state court in Los Angeles, with California law applying to any dispute over the 2007 agreement.[21]

### C. The Subject Matter of this Action: the Revlon Dispute.

According to Freeport, in 2005, its predecessor in interest Phelps Dodge began reviewing and cataloging its corporate records from sites all over the country, as part of its demolition, environmental reserve, and asset retirement obligation projects.[22] In February 2007, Phelps Dodge (and later its successor, Freeport) began reviewing and cataloging another set of historical corporate records, those of Cyprus Amax Minerals Company.[23] Although Freeport claims it gave notice of this project to Continental and Century before the project began, which Continental and Century contest, it appears the first notice of the project to Continental was when Freeport sent approximately $211,000 worth of bills to Continental.[24] When Continental inquired about the bills through Freeport's agent Enviro-Tox Loss Services, Inc., Freeport fraudulently induced Continental to pay the bills by claiming the document review costs were

---

[18] Jacobus Aff. at 1, ¶ 4, Ex. 1 (Complaint for Breach of Contract and Declaratory Relief, *Cyprus Amax Minerals Co v. Cont'l Cas. Co.*, No. BC391068 (Cal. Super. Ct., Los Angeles County May 16, 2008) at 5-6, ¶¶ 19-26).
[19] Jacobus Aff. at 2, ¶ 6, Ex. 2 (Affidavit of Gregory D. Winfree at 3, ¶ 7).
[20] Jacobus Aff. at 2, ¶ 10, Ex. 6 (Letter from Bitter to Plumer (May 13, 2008) at 1-2).
[21] Jacobus Aff. at 2, ¶ 6, Ex. 2 (Affidavit of Gregory D. Winfree at 3, ¶ 7).
[22] Jacobus Aff. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007) *passim*).
[23] Jacobus Aff. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007) *passim*).
[24] Jacobus Aff. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) *passim*).

related to the defense of underlying tort cases, when, in fact, the document review costs were corporate record management costs incurred in the ordinary course of Freeport's business.[25]

It was only in December 2007 that Freeport came clean about the nature, scope, and cost of the project: it turned out Freeport was reviewing approximately 18,000 boxes of old corporate records, unrelated to defense of underlying tort claims, with total projected costs of $7,800,000[26], something never before revealed to Continental.[27]

Since the document review projects were plainly not covered defense costs under the Continental and Century policies, Continental informed Freeport that the costs were not covered under the policy,[28] and filed this action.[29] When further investigation revealed that Freeport was not only making a bogus claim for coverage, but had, in fact, defrauded Continental into paying an estimated $211,000 for the cost of the project, Continental amended the complaint (the "Amended Complaint") to include a fraud and unjust enrichment count to recover amounts Continental paid.[30]

### III. Procedural History.

On February 28, 2008, Continental filed this action in this Court for a determination of whether its decision to deny coverage for the Cyprus Amax document review costs was proper.

---

[25] Jacobus Aff. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) *passim*).
[26] Jacobus Aff. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007) *passim*).
[27] Jacobus Aff. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) *passim*).
[28] Jacobus Aff. at 2, ¶ 12, Ex. 8 (Letter from Galardi to Peters (Feb. 28, 2008) *passim*).
[29] Jacobus Aff. at 2, ¶ 8, Ex. 4 (Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. Feb. 28, 2008) *passim*).
[30] Jacobus Aff. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008)).

Seeking declaratory relief is an appropriate means of determining insurance coverage obligations under New York law.[31]

As a courtesy to Freeport, when it sought an extension to respond to Continental and Century's complaint, the insurers assented to that extension.[32] When Freeport requested another extension from the insurers, this time so that it could file another action in state court in Los Angeles, California and so that it could file the motion that is currently before this Court[33], the insurers opposed a further extension[34], but the Court granted Freeport an extension[35].

On May 9, 2008, after Continental's investigation revealed that Freeport had fraudulently induced Continental to pay an estimated $211,000 of the document review project costs, Continental filed its Amended Complaint to add counts for unjust enrichment and common law fraud.[36] Freeport filed a complaint in the Los Angeles Superior Court on May 16, 2008, against not only Continental and Century, but all of the Cyprus insurers that had entered into a cost sharing agreement with Cyprus Amax in 2007.[37] Continental's response to the California

---

[31] *See Prashker v. United States Guar. Co.*, 1 N.Y.2d 584, 591-592, 136 N.E.2d 871, 875, 154 N.Y.S.2d 910, 916 (1956) (declaratory judgment action is a proper vehicle for determining whether a coverage obligation exists); *Velleman v. Cont'l Ins. Co., Inc.*, 162 Misc. 2d 95, 616 N.Y.S.2d 146 (Supreme Ct., Tompkins County 1994) (same).

[32] Jacobus Aff. at 2, ¶ 13, Ex. 9 (Stipulation Extending Time To Respond to Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. Mar. 20, 2008)).

[33] Jacobus Aff. at 3, ¶ 14, Ex. 10 (Email from Plumer to Heskin (Apr. 14, 2008)); Jacobus Aff. at 3, ¶ 16, Ex. 12 (Email from Plumer to Heskin (Apr. 14, 2008)); Jacobus Aff. at 3, ¶ 17, Ex. 13 (Letter from Plumer to the Hon. Peter K. Leisure (Apr. 16, 2008)); Jacobus Aff. at 3, ¶ 19, Ex. 15 (Letter from Plumer to the Hon. Peter K. Leisure (Apr. 21, 2008)).

[34] Jacobus Aff. at 3, ¶ 15, Ex. 11 (Email from Heskin to Plumer (Apr. 14, 2008)); Jacobus Aff. at 3, ¶ 18, Ex. 14 (Letter from Heskin to The Honorable Peter K. Leisure (Apr. 17, 2008)); Jacobus Aff. at 3, ¶ 20, Ex. 16 (Letter from Jacobus to The Honorable Peter K. Leisure (Apr. 21, 2008)).

[35] Jacobus Aff. at 3, ¶ 21, Ex. 17 (Order, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, No. 08 Civ. 02012 (PKL) (S.D.N.Y. Apr. 21, 2008)).

[36] Jacobus Aff. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008)).

[37] Jacobus Aff. at 1, ¶ 4, Ex. 1 (Complaint for Breach of Contract and Declaratory Relief, *Cyprus Amax Minerals Co v. Cont'l Cas. Co.*, No. BC391068 (Cal. Super. Ct., Los Angeles County May 16, 2008)).

complaint is due on June 19, 2008, and it will be filing a motion to dismiss or stay the California action. On May 23, 2008, Freeport filed its Motion To Dismiss this action.

IV. **THE COURT SHOULD NOT CONSIDER THE MATTERS OUTSIDE THE AMENDED COMPLAINT AND SHOULD DECIDE AND DENY FREEPORT'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12 (b).**

Since Freeport's Motion To Dismiss asks the Court to decide the motion on affidavits and other matters not in Continental and Century's Amended Complaint, it is not a proper FED. R. CIV. P. 12 motion. The Motion To Dismiss should be decided on the face of Continental and Century's Amended Complaint or should be converted to a FED. R. CIV. P. 56 motion for summary judgment.[38]

If a defendant makes a motion under FED. R. CIV. P. 12 and asks the court to decide the motion based on matters outside the pleadings, the court must either exclude the matters outside the pleadings or convert the motion to a FED. R. CIV. P. 56 motion for summary judgment. FED. R. CIV. P. 12 (d); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). It is axiomatic where, as here, there has been no jurisdictional discovery, allegations of jurisdictional fact must be construed in the light most favorable to the plaintiff (Continental) (*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)), and the motion to dismiss must be denied if the jurisdictional allegations are sufficient as a matter of law. *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003).

In support of its Motion To Dismiss, Freeport submitted no less than *four* affidavits, *three* hearsay letters, what purport to be *two* unpublished decisions, its pleading in the California state

---

[38] If the motion is converted to a Rule 56 motion, the insurers must have an opportunity to take discovery into the factual matters outside the pleadings that Freeport has raised in the Motion To Dismiss. *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 597 (2d Cir. 1988) ("Before dismissing a case for want of jurisdiction, a court should permit the party seeking the court's intervention to engage in discovery of facts supporting jurisdiction. [Citations omitted.]").

court action it filed, and what purport to be a motion and a joinder from an earlier, unrelated action between the parties to this action. Continental requests that the Court disregard any matters outside of the Amended Complaint, as the Court has the inherent power to do under FED. R. CIV. P. 12 (d) (*Chambers*, 282 F.3d at 154), and deny Freeport's motion under FED. R. CIV. P. 12.

V.  **DISMISSAL OR STAY OF THIS ACTION IS NOT WARRANTED UNDER APPLICABLE LAW.**

### A. The Proper Parties Are Joined To This Action.

Despite previously admitting that the proper parties were joined, Freeport now argues that Continental and Century should have named several other parties that Freeport now owns and controls as defendants in this action (Phelps Dodge, Cyprus Amax, Amax, and AMRI), and that this is grounds for dismissal under FED. R. CIV. P. 19. When Freeport demanded coverage for the document review project from Continental and Century, it did so in its own name, not the names of any of the other entities it now says should have been named as defendants in this action.[39] When Freeport requested that Continental and Century voluntarily dismiss it from this action, its counsel admitted the proper parties were joined:

> Plaintiffs' claim is based solely on policies issued Amax Inc. or its predecessors and historic records generated by Amax, Inc. and/or Cyprus Minerals Company or its predecessors. It is undisputed that Amax, Inc. merged into Cyprus Minerals Company and immediately changed its name to Cyprus Amax Minerals Company. It is also undisputed that Cyprus Amax Minerals Company thereafter merged with a subsidiary of Phelps Dodge, but kept the name Cyprus Amax Minerals Company. Thus, Cyprus Amax Minerals Company, a currently existing corporation, is the corporate successor to the Amax, Inc and predecessor coverage and is therefore entitled to any coverage available under the Amax policies. Moreover, any documents implicated by plaintiffs' claims arise out of the operations of Cyprus Amax Minerals Company or its corporate predecessors. **No other members of the**

---

[39] Jacobus Aff. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007) *passim*).

> Freeport McMoRan corporate family are necessary for plaintiffs to obtain complete relief regarding the declaratory judgment sought in this action regarding the Amax policies.

(E-mail from Plumer to Jacobus (Apr. 4, 2008) (emphasis added).)[40]

Moreover, in reporting to the Securities and Exchange Commission, Freeport made sworn statements to the commission that on March 19, 2007, Freeport "acquired Phelps Dodge . . . ,"[41] which was then the successor to Cyprus Amax[42]. It also submitted a diagram, showing that Freeport owns 100% of Phelps Dodge.[43]



Freeport further acknowledged that it is responsible for the environmental liabilities of Phelps Dodge and others.[44] It defines the terms "we," "us," and "our" in the Form 10-K to be "Freeport-McMoRan Copper & Gold Inc. (FCX) and its consolidated subsidiaries, including . . .

---

[40] Jacobus Aff. at 2, ¶ 7, Ex. 3 (Email from Plumer to Jacobus (Apr. 4, 2008)).
[41] Jacobus Aff. at 4, ¶ 22, Ex. 18 (excepts from Form 10-K (Dec. 31, 2007) at 1).
[42] Jacobus Aff. at 2, ¶ 7, Ex. 3 (Email from Plumer to Jacobus (Apr. 4, 2008)).
[43] Jacobus Aff. at 4, ¶ 22, Ex. 18 (excepts from Form 10-K (Dec. 31, 2007) at 2).
[44] Jacobus Aff. at 4, ¶ 22, Ex. 18 (excepts from Form 10-K (Dec. 31, 2007) at 44).

Phelps Dodge Corporation (Phelps Dodge) and its subsidiaries, which we acquired on March 19, 2007."[45]  Freeport also claimed that it handles the insurance affairs for Phelps Dodge.[46]

Where a party to an action is a 100% owner of an entity that is not joined in the action, the non-joined entity is not a necessary party, under FED. R. CIV. P. 19 (a), because the owner can adequately represent the interests of the non-joined entity that the party owns, controls, and represents. *Wilshire, Ltd. v. Rajaei*, 2007 WL 2457410, at *5 (S.D.N.Y. Aug. 22, 2007); *BMG Music v. Vanxy, Inc.*, 1999 WL 493345, at *2 (S.D.N.Y. July 12, 1999); *Rose v. Simms*, 1995 WL 702307, at *6 (S.D.N.Y. Nov. 29 1995); *Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 61-62 (S.D.N.Y. 1992).  Where here, as the graphic in Freeport's 2007 10-K so convincingly illustrates, Freeport owns and controls Phelps Dodge and the other entities[47], those other parties do not even qualify as necessary parties under FED. R. CIV. P. 19 (a). *Wilshire*, 2007 WL 2457410, at *5; *BMG Music*, 1999 WL 493345, at *2; *Rose*, 1995 WL 702307, at *6; *Namrod*, 140 B.R. at 61-62.

Freeport's argument that the proper parties are not joined in this action contradicts what it previously represented to Continental,[48] and is inconsistent with its sworn submission to the SEC.[49]  Freeport's newfound argument is simply an attempt to have this dispute heard in California, a forum that has nothing to do with these parties or their corporate relationships. Freeport, which owns and controls the entities Freeport claims should be joined to this action, is the proper party to this action.  Those other entities do not even qualify as necessary parties (much less indispensable parties for the reasons explained below) under FED. R. CIV. P. 19.

---

[45] Jacobus Aff. at 4, ¶ 22, Ex. 18 (excepts from Form 10-K (Dec. 31, 2007) at 69).
[46] Jacobus Aff. at 4, ¶ 22, Ex. 18 (excepts from Form 10-K (Dec. 31, 2007) at 172).
[47] Jacobus Aff. at 4, ¶ 22, Ex. 18 (excepts from Form 10-K (Dec. 31, 2007) at 2).
[48] Jacobus Aff. at 2, ¶ 7, Ex. 3 (Email from Plumer to Jacobus (Apr. 4, 2008)).
[49] Jacobus Aff. at 4, ¶ 22, Ex. 18 (excepts from Form 10-K (Dec. 31, 2007) *passim*).

### B. Even If Other Entities Should Be Joined, FED. R. CIV. P. 19 Provides that Those Entities "Must" Be Joined and Dismissal Is Not Warranted.

Should the Court determine that one or more of the entities Freeport claims ought to have been named defendants in this action should be joined, because each of those entities is subject to personal jurisdiction in this Court, the Court "must" order those parties joined. FED. R. CIV. P. 19 (a) (2).[50] There are no grounds for proceeding, as Freeport wrongly argues, under FED. R. CIV. P. 19 (b), because each of the entities Freeport claims ought to be parties to this action are subject to personal jurisdiction in this Court and can be joined to this action.

For the reasons discussed in the previous section, Freeport is the proper party and none of the other entities Freeport claims should be joined is necessary, because Freeport controls 100% of the assets of those entities and because Freeport handles those entities' insurance affairs. There is, therefore, no reason to join those entities under FED. R. CIV. P. 19 (a): they are not even necessary parties. *Wilshire*, 2007 WL 2457410, at *5; *BMG Music*, 1999 WL 493345, at *2; *Rose*, 1995 WL 702307, at *6; *Namrod*, 140 B.R. at 61-62.

---

[50] FED. R. CIV. P. 19 (a) provides in relevant part:
**(a) Persons Required to Be Joined if Feasible.**
(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
  (A)   in that person's absence, the court cannot accord complete relief among existing parties; or
  (B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
    (i)   as a practical matter impair or impede the person's ability to protect the interest; or
    (ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
(2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. [. . . .]

Yet, if the Court determines, for whatever reason, that those parties should be joined, each is subject to personal jurisdiction in this Court, so "the court must order that the person be made a party." FED. R. CIV. P. 19 (a) (2). Amax is subject to personal jurisdiction because it transacted business within New York by negotiating and purchasing insurance policies from Continental and Century in New York. N.Y. C.P.L.R. § 302 (a) (1)[51]. Cyprus Amax, Phelps Dodge, and Freeport are all successors by corporate merger to Amax[52], over which the Court has personal jurisdiction, and therefore each of the successor entities by merger is also subject to personal jurisdiction in this Court. *Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 301 (S.D.N.Y. 2006) (holding that when predecessor corporation is subject to personal jurisdiction in New York, successor corporations are subject to personal jurisdiction by virtue of the merger alone).[53] AMRI, by allowing Amax to purchase insurance for it in New York, is also subject to personal jurisdiction in this Court. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, P.L.C.*, 319 F. Supp. 2d 352, 358-367 (S.D.N.Y. 2004) (holding that where an entity subject to personal jurisdiction in New York procures insurance for another entity, the second entity is subject to personal jurisdiction in New York).

Freeport's argument that dismissal is proper under FED. R. CIV. P. 19 (b) is without merit because every entity Freeport argues should be joined can be joined. Even if FED. R. CIV. P. 19 (b) applied, and it does not, the Court's decision to proceed is based on several factors and dismissal should be granted only when "nonjoinder makes just resolution of the action impossible" (*Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir.

---

[51] In diversity actions, a United States District Court may exercise jurisdiction over a foreign defendant if the defendant is amenable to personal jurisdiction under the law of the forum state. *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105, 108 S. Ct. 404, 410, 98 L. Ed. 2d 415 (1987).
[52] Jacobus Aff. at 2, ¶ 7, Ex. 3 (Email from Plumer to Jacobus (Apr. 4, 2008)).
[53] *See* Jacobus Aff. at 2, ¶ 7, Ex. 3 (Email from Plumer to Jacobus (Apr. 4, 2008)).

1987)), which is plainly not the case here because Freeport owns, controls, and manages the insurance affairs for all of these entities.

Freeport's request for dismissal of the action should be denied because: (1) Freeport is the correct party defendant; (2) any of the other entities Freeport wants to join to this action can be joined because each is subject to personal jurisdiction in this Court; and (3) FED. R. CIV. P. 19 (b) cannot apply because each of those entities is subject to jurisdiction in this Court, if the Court orders their joinder.

Continental, therefore, requests that the Court not order any of the other entities joined to this action, but, if the Court determines any of those entities should be joined as necessary parties, Continental moves for leave to amend its pleadings to join those entities as parties to this action. FED. R. CIV. P. 19 (a) (2) (new entity "must" be ordered joined); FED. R. CIV. P. 15; *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 24-25 (6th Cir. 1980) (holding that proper remedy is amendment of pleadings to join any parties the Court determines should be joined under FED. R. CIV. P. 19).

### C. Abstention Is Not Proper.

Freeport's argument that this Court should dismiss or stay this action under abstention doctrine in favor of the later-filed California state court action (which Continental will move to dismiss), is similarly flawed[54]. Freeport nearly concedes, as it must, that its Motion To Dismiss is properly decided under *Colorado River* as opposed to *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995), because the insurers' Amended Complaint pleads counts for unjust enrichment and fraud.[55] Where an action pending in a United States District

---

[54] Jacobus Aff. at 2, ¶ 5.
[55] Jacobus Aff. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) *passim*).

-16-