## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **CENTURY INDEMNITY COMPANY, ET AL.** | : | **ELECTRONICALLY FILED** |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION NO.:  08 CV 02012** |
| | : | |
| **Versus** | : | **PKL/DCF** |
| | : | |
| **FREEPORT-MCMORAN COPPER & GOLD INC., ETC.** | : | |
| | : | |
| **Defendant.** | : | |

---

### AFFIDAVIT OF VANCE A. WOODWARD SUBMITTING NEWLY DISCOVERED EVIDENCE IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO FREEPORT-MCMORAN COPPER AND GOLD INC.'S MOTION TO DISMISS OR STAY THIS ACTION

I, Vance A. Woodward, swear that the following is true, upon personal knowledge, under penalties of perjury.

1.      I am an associate at the Carroll, Burdick & McDonough, LLP law firm in San Francisco, California.

2.      I am a member in good standing of the bars of California and New York.

3.      I submit this affidavit to present newly discovered evidence in support of The Continental Insurance Company's Memorandum of Law in Opposition to Freeport-McMoRan Copper and Gold Inc.'s Motion to Dismiss or Stay This Action.

4.      Attached hereto as **Exhibit A** is a true and correct copy of the motion to dismiss and supporting documents filed by The Continental Insurance Company and Century Indemnity Company in *Cyprus Amax Minerals Co v. Cont'l Cas. Co.*, No. BC391068 (Cal. Super. Ct., Los Angeles County, complaint filed May 16, 2008).  Specifically, **Exhibit A** includes the following:

CBM-IPG\SF409232.1

> Notice of Motion and The Continental Insurance Company's and Century Indemnity Company's Joint Motion to Dismiss or Stay the Action Based on *Forum Non Conveniens*

> Memorandum of Points and Authorities in Support of The Continental Insurance Company's and Century Indemnity Company's Joint Motion to Dismiss or Stay the Action Based on *Forum Non Conveniens*

> Request for Judicial Notice in Connection with The Continental Insurance Company's and Century Indemnity Company's Joint Motion to Dismiss or Stay the Action Based on *Forum Non Conveniens*

> Non-California Authorities Supporting The Continental Insurance Company's and Century Indemnity Company's Joint Motion to Dismiss or Stay the Action Based on *Forum Non Conveniens*

> Declaration of Vance Woodward in Support of The Continental Insurance Company's and Century Indemnity Company's Joint Motion to Dismiss or Stay the Action Based on *Forum Non Conveniens*

> Declaration of Robert Galardi in Support of The Continental Insurance Company's Motion to Dismiss or Stay the Action Based on *Forum Non Conveniens*

> Declaration of David Lehman in support of The Continental Insurance Company's Motion To Dismiss or Stay the Action Based On *Forum Non Conveniens*

> Declaration of Margo Dedeyan in Support of The Continental Insurance Company's and Century Indemnity Company's Motion to Dismiss or Stay the Action Based on *Forum Non Conveniens*

5.      Attached hereto as **Exhibit B** is a true and correct copy of excerpts from the "Realtime Rough Draft" deposition transcript of the deposition of Mr. Bobby Medlin, taken on June 23 and June 24, 2008.

6.      Mr. Medlin currently works at Enviro-Tox Loss Services ("ETLS") and has worked at ETLS since August 2003. Ex. B, Medlin Dep. Tr., 11:20 – 13:18.

7.    During his employment with ETLS, defendant Freeport-McMoRan has been a client of ETLS and Mr. Medlin has worked on the Freeport-McMoRan account.  Ex. B, Medlin Dep. Tr., 11:19 – 12:15; 18:14 – 20; 20:9 – 21:12.

_____
Vance A. Woodward, affiant

STATE OF CALIFORNIA                    )
                                                          )  ss
COUNTY OF SAN FRANCISCO      )

Subscribed and sworn to before me on this 1st day of July 2008, by Vance A. Woodward, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Notary Public

JANINE OLIKER
Commission # 1578466
Notary Public - California
San Francisco County
My Comm. Expires Jun 10, 2009

1  Alison V. Lippa, No. 160807
   Alan P. Jacobus, No. 206954
2  Vance A. Woodward, No. 231730
   **CARROLL, BURDICK & McDONOUGH** LLP
3  Attorneys at Law
   44 Montgomery Street, Suite 400
4  San Francisco, CA 94104
   Telephone:    415.989.5900
5  Facsimile:    415.989.0932
   Email:        alippa@cbmlaw.com
6                ajacobus@cbmlaw.com
                 vwoodward@cbmlaw.com
7  Attorneys for Defendant The Continental Insurance Company

8  Deborah A. Aiwasian, No. 125490
   **BERMAN AIWASIAN**
9  725 South Figueroa Street, Suite 1050
   Los Angeles, CA 90017
10 Telephone:    213.833.3200
   Facsimile:    213.833.3230
11 Email:        deborah.aiwasian@mclolaw.com
   Attorneys for Defendant Century Indemnity Company

12

13                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                             COUNTY OF LOS ANGELES

15

16 CYPRUS AMAX MINERALS                      No. BC 391068
   COMPANY, et al.,
17                                           **NOTICE OF MOTION AND THE**
                    Plaintiffs,              **CONTINENTAL INSURANCE COMPANY'S**
18                                           **AND CENTURY INDEMNITY COMPANY'S**
                versus                       **JOINT MOTION TO DISMISS OR STAY THE**
19                                           **ACTION BASED ON** *FORUM NON*
   CONTINENTAL CASUALTY                      *CONVENIENS*
20 COMPANY, et al.,
                                             Hearing Date:   August 27, 2008
21                  Defendants.              Hearing Time:   8:30 a.m.
                                             Dept.:          68
22                                           Room:           617
                                             Judge:          Hon. Judge Mooney
23
                                             Complaint Filed: May 20, 2008
24

25 **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

26       Please take notice that on August 27, 2008, at 8:30 a.m., in Department 68,

27 Room 617 of the above-entitled Court, located at 111 North Hill Street, Los Angeles,

28 California 90012, The Continental Insurance Company ("CIC") and Century Indemnity

CBM-IPG\SF408423.1

---

NOTICE OF MOTION AND CIC'S AND CENTURY'S JOINT MOTION TO DISMISS OR STAY

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 19 2008

John A. Clarke, Executive Officer/Clerk

By _____ Deputy
   A.E. LaFLEUR-CLAYTON

COPY

1    Company as successor to CCI Insurance Company, as successor to Insurance Company of

2    North America ("Century"), by their attorneys, through a special appearance, shall move

3    this Court for an order to dismiss or stay this action based on *forum non conveniens*

4    pursuant to CAL. CODE CIV. P. § 410.30.

5          CIC and Century filed an action in the United States District Court for the

6    Southern District of New York (the "New York Action") to resolve this dispute over three

7    months before Cyprus Amax Minerals Company, Phelps Dodge Corporation, and Amax

8    Metals Recovery Inc. (collectively, "Cyprus Amax") filed this action.  The United States

9    District Court for the Southern District of New York is the appropriate forum to resolve

10    the dispute between CIC, Century, and Cyprus Amax.  Those three parties' relationships

11    are deeply rooted in New York.  In contrast, California has no connection to these parties'

12    relationships with each other, or their dispute.

13          This motion is made and based upon the attached memorandum of points and

14    authorities, the exhibits attached thereto, the declarations, requests for judicial notice and

15    non-California authorities in support of the motion, this notice of motion and motion to

16    dismiss or stay, and such oral argument as the Court may entertain at the hearing of this

17    matter.

18          Wherefore, CIC and Century move the Court to dismiss or, in the alternative,

19    to stay this action as to them.

20    Dated:  June 19, 2008

21    CARROLL, BURDICK & McDONOUGH     BERMAN  AIWASIAN

22    LLP

23    By _____     By _____

                 Alison V. Lippa                Deborah A. Aiwasian

24               Alan P. Jacobus            Attorneys for Defendant

              Vance A. Woodward          Century Indemnity Company

25        Attorneys for Defendant

        The Continental Insurance Company

26

27

28



1  Alison V. Lippa, No. 160807
   Alan P. Jacobus, No. 206954
2  Vance A. Woodward, No. 231730
3  **CARROLL, BURDICK & McDONOUGH** LLP
   Attorneys at Law
   44 Montgomery Street, Suite 400
4  San Francisco, CA 94104
   Telephone:    415.989.5900
5  Facsimile:    415.989.0932
   Email:        alippa@cbmlaw.com
6                ajacobus@cbmlaw.com
                 vwoodward@cbmlaw.com
7  Attorneys for Defendant The Continental Insurance Company

8  Deborah A. Aiwasian, No. 125490
   **BERMAN AIWASIAN**
9  725 South Figueroa Street, Suite 1050
   Los Angeles, CA 90017
10 Telephone:    213.833.3200
   Facsimile:    213.833.3230
11 Email:        deborah.aiwasian@mclolaw.com
   Attorneys for Defendant Century Indemnity Company
12

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 19 2008

John A. Clarke, Executive Officer/Clerk

By_____ Deputy
A.E. LAFLEUR-CLAYTON

13        SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                    COUNTY OF LOS ANGELES

15 CYPRUS AMAX MINERALS          No. BC 391068
   COMPANY, et al.,
16                               **MEMORANDUM OF POINTS AND**
           Plaintiffs,          **AUTHORITIES IN SUPPORT OF THE**
17                              **CONTINENTAL INSURANCE COMPANY'S**
       versus                   **AND CENTURY INDEMNITY COMPANY'S**
18                              **JOINT MOTION TO DISMISS OR STAY THE**
   CONTINENTAL CASUALTY         **ACTION BASED ON** *FORUM NON*
19 COMPANY, et al.,             *CONVENIENS*

20         Defendants.          Hearing Date:  August 27, 2008
                                Hearing Time:  8:30 a.m.
21                              Dept.:         68
                                Room:          617
22                              Judge:         Hon. Judge Mooney
23
                                Complaint Filed: May 20, 2008
24

25

26

27

28

CBM-IPG\SF408288.6

MEMORANDUM IN SUPPORT OF CIC'S AND CENTURY'S JOINT MOTION TO DISMISS OR STAY

## TABLE OF CONTENTS

**Page**

I. SUMMARY OF ARGUMENT .................................................................................. 1

II. FACTS:  NEW YORK HAS SIGNIFICANT, LONGSTANDING CONNECTIONS WITH
THE CIC, CENTURY, CYPRUS AMAX DISPUTE; CALIFORNIA HAS NO
CONNECTION................................................................................................... 2

    A.   CIC and Century Issued their Policies to Amax Long Before Amax
Merged with Cyprus ................................................................................. 3

    B.   Amax and Cyprus Were Separate Companies Until 1993. .............................. 4

        1.   The Pre-Merger Amax Coverage Is at Issue in the First-Filed New
York Action ............................................................................... 4

        2.   Cyprus Amax's Dispute with the Cyprus Insurers Concerns the
Interpretation of the 2007 Cost Sharing Agreement, Which Is
Completely Unrelated to the Amax Coverage............................................. 4

    C.   The Subject Matter of This Action: The Revlon Dispute ................................. 5

III. PROCEDURAL HISTORY..................................................................................... 7

IV. LEGAL STANDARD: THIS COURT HAS THE POWER TO DISMISS OR STAY THIS
ACTION AS TO CIC AND CENTURY ON FORUM NON CONVENIENS GROUNDS........... 8

V. APPLICATION AND ARGUMENT: THIS ACTION SHOULD BE DISMISSED OR
STAYED AS TO CIC AND CENTURY ON FORUM NON CONVENIENS GROUNDS .......... 8

    A.   The Southern District of New York Is a Suitable Place for Trial of the
Dispute Between CIC, Century, and Cyprus Amax ....................................... 8

    B.   The Private and Public Interest Factors Weigh Heavily in Support of
Dismissal or Stay of this Action as to CIC and Century ................................. 8

        1.   CIC, Century and Cyprus Amax, and the Dispute Between Them,
Have No Connection to California Whereas They Have Strong
Connections with New York ............................................................... 9

            a.   The Parties Are Subject to Personal Jurisdiction in New York....... 9

            b.   The Relevant Parties Are Not Domiciled in California................. 10

            c.   The Amax Policies Were Issued Primarily in New York and
None Were Issued in California ...................................................... 11

            d.   California Has No Interest in Adjudicating Coverage Under
the Policies at Issue Whereas New York Has a Strong Interest .... 11

        2.   The Convenience of the Parties and Witnesses Strongly Favors
Litigating This Dispute in New York ...................................................... 12

-i-

1

**TABLE OF CONTENTS**
**(continued)**

2                                                                                                    **Page**

3          a.    The Convenience of the Parties Favors New York ....................... 12

4          b.    The Convenience of the Witnesses Favors New York ................. 12

5     3.    The Interests of Efficient Judicial Administration Favor Litigating
            This Dispute in New York....................................................................... 13

6

7          a.    The Conflict of Law Rules Favors Dismissal or Stay ................... 13

           b.    Litigating This Dispute in New York Will Avoid Multiplicity..... 13

8

9          c.    Access to Sources of Proof and the Ability to Compel
                 Attendance of Witnesses Are Greater in the New York Action.... 14

10         d.    Litigating This Dispute in California Will Place an
                 Undeserved Burden on California Courts and Taxpayers ............. 15

11

VI.   CONCLUSION AND REQUEST FOR RELIEF: THIS ACTION SHOULD BE DISMISSED
12    OR STAYED AS TO CIC AND CENTURY.................................................................... 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-ii-

---

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5 *Amax, Inc. v. Sohio Indus. Prods. Co.,*
    121 Misc. 2d 814, 469 N.Y.S.2d 282 (Supreme Ct., New York County
6     1983) .................................................................................................. 12

*Baltimore Football Club Inc. v. Super. Ct.,*
7     171 Cal. App. 3d 352, 215 Cal. Rptr. 323 (1985) ..................................... 11

8 *Century Indem. Co. v. Bank of Am.,*
    58 Cal. App. 4th 408, 68 Cal. Rptr. 2d 132 (1997) ................................. 11
9
*Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.,*
10     08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008).............................. 3, 5, 6, 7

11 *Certain Underwriters at Lloyd's London v. Foster Wheeler Corp.,*
    36 A.D.3d 17, 822 N.Y.S.2d 30 (2006)................................................. 13
12
*Cyprus Amax Minerals Co v. Cont'l Cas. Co.,*
13     No. BC391068 (Cal. Super. Ct., Los Angeles County May 16, 2008) ............ 3, 4, 5, 7

14 *Cyprus Amax Minerals Co. v. Asarco Inc.,*
    2003 WL 22118989 (S.D.N.Y. Sept. 11, 2003) ..................................... 12
15
*Great N. Ry. Co. v. Super. Ct. (Curtin),*
16     12 Cal. App. 3d 105, 90 Cal. Rptr. 461 (1970) ...................................... 9

17 *Hughes v. BCI Int'l Holdings, Inc.,*
    452 F. Supp. 2d 290 (S.D.N.Y. 2006) ................................................. 10
18
*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, P.L.C.,*
19     319 F. Supp. 2d 352 (S.D.N.Y. 2004) ................................................. 10

20 *Northrop Corp. v. Am. Motorists Ins. Co.,*
    220 Cal. App. 3d 1553, 270 Cal. Rptr. 233 (1990) ................................. 9
21
*Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.,*
22     484 U.S. 97, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987)............................. 9

23 *Phelps Dodge Indus., Inc.,*
    131 A.D.2d 675, 516 N.Y.S.2d 754 (2 Dep't 1987)................................ 12
24
*Prashker v. United States Guar. Co.,*
25     1 N.Y.2d 584, 136 N.E.2d 871, 154 N.Y.S.2d 910 (1956) ....................... 7

26 *Stangvik v. Shiley Inc.,*
    54 Cal. 3d 744, 819 P.2d 14, 17, 1 Cal. Rptr. 2d 556 (1991) ...................... 8
27
*Stonewall Surplus Lines Ins. Co. v. Johnson Controls,*
28     14 Cal. App. 4th 637, 17 Cal. Rptr. 2d 713 (2006) ............................. 13, 14

MEMORANDUM IN SUPPORT OF CIC'S AND CENTURY'S JOINT MOTION TO DISMISS OR STAY

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

**Statutes**

4

Code of Civil Procedure
    Section 410.30 ......................................................................................................... 1, 8

5

**Rules**

6

7

New York Civil Practice Law and Rules
    Section 302 (a) (1) ...................................................................................................... 9

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   SUMMARY OF ARGUMENT.

In this motion, the Continental Insurance Company ("CIC") and Century Indemnity Company as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century") seek, through a special appearance, an order dismissing or, in the alternative, staying this action as to CIC and Century on *forum non conveniens* grounds, pursuant to CAL. CODE CIV. P. § 410.30, for the following reasons:

➤ CIC and Century commenced an action in the United States District Court for the Southern District of New York (the "New York Action") to resolve this dispute over three months before Cyprus Amax Minerals Company, Phelps Dodge Corporation, and Amax Metals Recovery Inc. (collectively, "Cyprus Amax") initiated this action.

➤ There is no California connection between CIC, Century and Cyprus Amax with respect to this dispute. All the Century policies were issued to American Metals Climax, Inc. ("Amax") (a predecessor of Cyprus Amax) while Amax was headquartered in New York. Moreover, CIC issued all its policies to Amax, Inc. (a predecessor of Cyprus Amax) while CIC was a New York corporation, through a New York broker, and, with respect to the first two policies, while Amax was headquartered in New York.

➤ Cyprus Amax's proffered connection with California is a 2007 cost sharing agreement *to which neither CIC nor Century is a party*. The 2007 agreement requires Cyprus Amax to mediate with all the insurer defendants that issued coverage to Cyprus Minerals Company ("Cyprus"). When those other parties complete their mediation (as required by contract), CIC and Century will be left litigating with Cyprus Amax alone in this Court, in a jurisdiction that has nothing to do with the dispute between CIC, Century, and Cyprus Amax.

➤ The dispute between CIC, Century, and Cyprus Amax has nothing to do with the 2007 cost sharing agreement, to which CIC and Century are not parties, and has no connection to California. The dispute between CIC, Century, and Cyprus Amax is under the policies CIC and Century issued.

1   ➢   Cyprus Amax's attempt to conflate the Amax insurers with the Cyprus insurers must

2       be rejected. Amax and Cyprus merged to become Cyprus Amax in 1993, long after

3       the policies in dispute were issued.

4   ➢   Combining the Cyprus and Amax disputes would cause utter confusion. In addition to

5       involving different governing instruments, *i.e.,* a settlement agreement versus an

6       insurance policy, the two disputes involve different governing law, different

7       underlying lawsuits and discrete coverage issues. California law applies to the Cyprus

8       insurers by contract, and either New York or Connecticut law applies to the Amax

9       insurers. The Cyprus underlying dispute involves, clay, silica and talc claims whereas

10      the Amax underlying dispute involves only asbestos claims at a single premises

11      location in Louisiana. Finally, the Amax coverage dispute involves certain unjust

12      enrichment and common law fraud claims relating solely to the Louisiana asbestos

13      litigation.

14         In sum, the Southern District of New York is the most suitable place for the

15 resolution of the dispute between CIC, Century, and Cyprus Amax. Public and private

16 interest factors show this Court is an inconvenient forum. Consequently, this Court should

17 dismiss this action as to CIC and Century or, alternatively, stay the action until the

18 conclusion of the first-filed New York Action.

19 **II.   FACTS: NEW YORK HAS SIGNIFICANT, LONGSTANDING CONNECTIONS WITH THE**

20         **CIC, CENTURY, CYPRUS AMAX DISPUTE; CALIFORNIA HAS NO CONNECTION.**

21         CIC, Century, and Cyprus Amax and the insurance policies at issue in the

22 dispute between them have a long history of connections with New York:

23   ➢   Amax (a predecessor to Cyprus Amax), the company to which Century issued liability

24       insurance policies from 1965 to 1975, was headquartered in New York during that

       entire time.

25   ➢   CIC, which issued liability policies to Amax from 1975 to 1986, was incorporated in

       New York from January 1853 to June 1977.

26   ➢   CIC maintained its corporate headquarters in New York from January 1853 to April 1,

27       1986, and the CIC policies issued to Amax were issued from CIC's New York office.

  ➢   CIC issued the first two CIC policies to Amax at its Manhattan address.

28

> Amax itself has elected to litigate in the New York courts as a plaintiff, as have its successors Cyprus Amax and Phelps Dodge.

**A.    CIC and Century Issued their Policies to Amax Long Before Amax Merged with Cyprus.**

Before 1993, Amax and Cyprus had nothing to do with each other. *See* Exhibit 1, Cyprus Amax Corporate History Chart. It was before 1993 that CIC[1] and Century[2] issued the policies relevant to this action to Amax. It was before 1993 that the other insurer defendants issued the policies to Cyprus[3] that are subject to a 2007 cost sharing agreement.[4] It is only a result of happenstance—a corporate merger of Amax and Cyprus in 1993 to form Cyprus Amax Minerals Company, and subsequent corporate mergers of Cyprus Amax with Phelps Dodge in 1999, and then Phelps Dodge with Freeport-McMoran Copper & Gold, Inc. ("Freeport") in 2007—that Freeport, through Phelps Dodge, is now the entity that controls both the Amax coverage and the Cyprus coverage.[5] In summary, the Amax coverage line and the Cyprus coverage line are discrete because:

> The policies CIC and Century issued to Amax and the policies the other insurers issued to Cyprus *were issued years before 1993, when Amax and Cyprus merged*. The last relevant policy issued to Amax expired on April 1, 1986, seven years before Amax and Cyprus had any corporate relationship whatsoever.[6]

> Cyprus Amax's dispute with the Amax insurers concerns insurance policies CIC and Century issued to Amax.[7] Cyprus Amax's dispute with the Cyprus insurers concerns a 2007 cost sharing agreement, to which neither CIC nor Century is a party.[8]

---

[1] Galardi Decl. at 1-4, ¶¶ 3-12, Ex. A-J (selected Declarations and Daily Report of Continental policies).

[2] Woodward Decl. at 1, ¶ 5, Ex. 1 (Complaint for Breach of Contract and Declaratory Relief, *Cyprus Amax Minerals Co v. Cont'l Cas. Co.*, No. BC391068 (Cal. Super. Ct., Los Angeles County May 16, 2008) at 6-7, ¶¶ 29-30).

[3] Woodward Decl. at 1, ¶ 5, Ex. 1 (Complaint for Breach of Contract and Declaratory Relief, *Cyprus Amax Minerals Co v. Cont'l Cas. Co.*, No. BC391068 (Cal. Super. Ct., Los Angeles County May 16, 2008) at 5-6, ¶¶ 19-26).

[4] Woodward Decl. at 2, ¶ 6, Ex. 2 (Affidavit of Gregory D. Winfree at 3, ¶ 7)).

[5] Woodward Decl. at 2, ¶ 7, Ex. 3 (Email from Plumer to Jacobus (Apr. 4, 2008)).

[6] Galardi Decl. at 1-4, ¶¶ 3-12, Ex. A-J (selected Declarations and Daily Report of Continental policies).

[7] Woodward Decl. at 2, ¶ 8, Ex. 4 (Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. Feb. 28, 2008) *passim*).

[8] Woodward Decl. at 2, ¶ 6, Ex. 2 (Affidavit of Gregory D. Winfree at 3, ¶ 7).

MEMORANDUM IN SUPPORT OF CIC'S AND CENTURY'S JOINT MOTION TO DISMISS OR STAY

➤ The underlying liabilities for which Cyprus Amax seeks coverage are different. From the Amax insurers, Cyprus Amax seeks coverage for asbestos claims.[9] From the Cyprus insurers, Cyprus Amax seeks coverage for clay, silica, and talc claims.[10]

➤ The two disputes also involve different governing law. California law applies to the Cyprus insurers under the express written terms of the settlement agreement. Either New York or Connecticut law, however, applies to the Amax insurers.

**B.    Amax and Cyprus Were Separate Companies Until 1993.**

As Exhibit 1 shows, Amax and Cyprus were separate companies with separate insurance coverage before 1993. Before their November 15, 1993 merger (to become Cyprus Amax Minerals Company), Cyprus had no corporate relationship with Amax. Thus, pre-merger, CIC and Century issued policies to Amax; pre-merger, the other insurer defendants in this action issued policies to Cyprus. Cyprus Amax's dispute in this action with the Cyprus insurers concerns the 2007 cost sharing agreement. In stark contrast, Cyprus Amax's dispute with the Amax insurers concerns their policies, which have nothing to do with California.

**1.    The Pre-Merger Amax Coverage Is at Issue in the First-Filed New York Action.**

Century issued primary liability policies to Amax (and its predecessor) from January 1, 1965 to January 1, 1975.[11] CIC issued primary liability policies to Amax from January 1, 1975 to April 1, 1986.[12] These policies are at issue in the first-filed New York Action.

**2.    Cyprus Amax's Dispute with the Cyprus Insurers Concerns the Interpretation of the 2007 Cost Sharing Agreement, Which Is Completely Unrelated to the Amax Coverage.**

Before the merger of Amax and Cyprus in 1993, various insurers issued

---

[9] Woodward Decl. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007, at 2).

[10] Woodward Decl. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007, at 2).

[11] Woodward Decl. at 1, ¶ 5, Ex. 1 (Complaint for Breach of Contract and Declaratory Relief, *Cyprus Amax Minerals Co v. Cont'l Cas. Co.*, No. BC391068 (Cal. Super. Ct., Los Angeles County May 16, 2008) at 6-7, ¶¶ 29-30).

[12] Galardi Decl. at 1-4, ¶¶ 3-12, Ex. A-J (selected Declarations and Daily Report of Continental policies).

1  liability coverage to Cyprus.[13]   In 2007, those insurers entered into a cost sharing

2  agreement with Cyprus Amax,[14] which (1) required meditation of any dispute before

3  beginning litigation,[15] and (2) required any litigation over the disputes concerning that

4  agreement to be heard in California state court in Los Angeles, with California law

5  applying to any dispute over the 2007 agreement.[16]

6      **C.    The Subject Matter of This Action: The Revlon Dispute.**

7          According to Cyprus Amax, in 2005, its successor in interest Phelps Dodge

8  began reviewing and cataloging its corporate records from sites all over the country, as

9  part of its demolition, environmental reserve, and asset retirement obligation projects.[17]

10  In February 2007, Phelps Dodge (and later its successor, Freeport) began reviewing and

11  cataloging another set of historical corporate records, those of Cyprus Amax Minerals

12  Company,[18] which came to be known as the "Revlon Project."   Although Cyprus Amax

13  claims it gave notice of this project to CIC and Century before the project began, which

14  CIC and Century contest, it appears the first notice of the project to CIC was when

15  Freeport sent approximately $211,000 worth of bills to CIC.[19]   When CIC inquired about

16  the bills through Cyprus Amax's agent Enviro-Tox Loss Services, Inc., Cyprus Amax

17  fraudulently induced CIC to pay the bills by claiming the document review costs were

18  related to the defense of underlying tort cases, when, in fact, the document review costs

19

20

21

---

22  [13] Woodward Decl. at 1, ¶ 5, Ex. 1 (Complaint for Breach of Contract and Declaratory Relief, *Cyprus Amax Minerals Co v. Cont'l Cas. Co.*, No. BC391068 (Cal. Super. Ct., Los Angeles County May 16,

23  2008) at 5-6, ¶¶ 19-26).

24  [14] Woodward Decl. at 2, ¶ 6, Ex. 2 (Affidavit of Gregory D. Winfree at 3, ¶ 7).

[15] Woodward Decl. at 2, ¶ 10, Ex. 6 (Letter from Bitter to Plumer (May 13, 2008) at 1-2).

25  [16] Woodward Decl. at 2, ¶ 6, Ex. 2 (Affidavit of Gregory D. Winfree at 3, ¶ 7).

26  [17] Woodward Decl. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007) *passim*).

27  [18] Woodward Decl. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007) *passim*).

[19] Woodward Decl. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-*

28  *McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) *passim*).

MEMORANDUM IN SUPPORT OF CIC'S AND CENTURY'S JOINT MOTION TO DISMISS OR STAY

1    were corporate record management costs incurred in the ordinary course of Cyprus

2    Amax's business.[20]

3       It was only in December 2007 that Cyprus Amax came clean about the nature,

4    scope, and cost of the project: It turned out Freeport was reviewing approximately 18,000

5    boxes of old corporate records, unrelated to defense of underlying tort claims, with total

6    projected costs of $7,800,000,[21] something never before revealed to CIC or Century.[22]

7       Since the document review projects were plainly not covered defense costs

8    under the CIC and Century policies, CIC[23] and Century each informed Cyprus Amax that

9    the costs were not covered under their policies, and initiated the New York Action in

10   February 2008.[24]  When further investigation revealed that Cyprus Amax was not only

11   making a bogus claim for coverage, but had, in fact, defrauded CIC into paying an

12   estimated $211,000 for the cost of the project, CIC amended the complaint in the New

13   York Action to include a fraud and unjust enrichment count to recover amounts CIC

14   paid.[25]

15      Century similarly amended its complaint in the New York Action to assert an

16   unjust enrichment claim to recover approximately $117,000 purportedly paid in

17   connection with the document review project.[26]  Century also amended its complaint to

18   recover approximately $667,000 in improperly past amounts allocated to its policy periods

19   for underlying claimants who could not have possibly been exposed to the Amax premise

20

---

21   [20] Woodward Decl. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-*

22   *McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) *passim*).

 [21] Woodward Decl. at 2, ¶ 9, Ex. 5 (Letter from Peters to Dedeyan (Dec. 21, 2007) *passim*).

23   [22] Woodward Decl. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-*

24   *McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) *passim*).

 [23] Woodward Decl. at 2, ¶ 12, Ex. 8 (Letter from Galardi to Peters (Feb. 28, 2008) *passim*).

25

26   [24] Woodward Decl. at 2, ¶ 8, Ex. 4 (Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. Feb. 28, 2008) *passim*).

27   [25] Woodward Decl. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-*

*McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008)).

28   [26] Dedeyan Decl. at 2, ¶ 7.

1   at issue, which was *dormant* at the time.[27]  Again, these claims have absolutely nothing to

2   do with Cyprus, the Cyprus line of insurance coverage, or the Cyprus cost sharing

3   agreement.

4   **III.  PROCEDURAL HISTORY.**

5          On February 28, 2008, CIC and Century commenced the New York Action,

6   requesting a determination of whether the Cyprus Amax document review costs constitute

7   defense costs under the CIC and Century policies.  Seeking declaratory relief is an

8   appropriate means of determining insurance coverage obligations under New York law.[28]

9   On May 9, 2008, after CIC's investigation revealed that Cyprus Amax had fraudulently

10   induced CIC to pay an estimated $211,000 of the document review project costs, CIC

11   filed its First Amended Complaint in the New York Action to add counts for unjust

12   enrichment and common law fraud.[29]  Century also amended its complaint to assert unjust

13   enrichment to recover improper past amounts paid under the document review project, as

14   well as, improper past amounts allocated to its policies for periods when the underlying

15   premise location was *dormant*.

16          Despite the pending New York Action, Cyprus Amax then filed its complaint

17   with this Court on May 16, 2008, against not only CIC and Century, but all of the Cyprus

18   insurers that had entered into a cost sharing agreement with Cyprus Amax in 2007.[30]

19

20

21

22

---

[27] Dedeyan Decl. at 2, ¶ 8.

[28] *See Prashker v. United States Guar. Co.*, 1 N.Y.2d 584, 591-592, 136 N.E.2d 871, 875, 154 N.Y.S.2d 910, 916 (1956) (declaratory judgment action is a proper vehicle for determining whether a coverage obligation exists); *Velleman v. Cont'l Ins. Co., Inc.*, 162 Misc. 2d 95, 616 N.Y.S.2d 146 (Supreme Ct., Tompkins County 1994) (same).

[29] Woodward Decl. at 2, ¶ 11, Ex. 7 (First Amended Complaint, *Century Indem. Co. v. Freeport-McMoRan Copper & Gold Inc.*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008)).

[30] Woodward Decl. at 1, ¶ 5, Ex. 1 (Complaint for Breach of Contract and Declaratory Relief, *Cyprus Amax Minerals Co v. Cont'l Cas. Co.*, No. BC391068 (Cal. Super. Ct., Los Angeles County May 16, 2008)).

IV. **LEGAL STANDARD: THIS COURT HAS THE POWER TO DISMISS OR STAY THIS ACTION AS TO CIC AND CENTURY ON FORUM NON CONVENIENS GROUNDS.**

*Forum non conveniens* is codified in California. CAL. CODE CIV. P. § 410.30 provides, in relevant part:

> When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just.

California courts apply a two-step test to determine whether an action should be dismissed or stayed on *forum non conveniens* grounds. First, the court determines whether the alternative forum is a suitable place for trial. *See Stangvik v. Shiley Inc.*, 54 Cal. 3d 744, 751, 819 P.2d 14, 17, 1 Cal. Rptr. 2d 556, 559 (1991). Second, the court evaluates the private interests of the litigants and the interests of the public in trying the action in California. *See id.*

V. **APPLICATION AND ARGUMENT: THIS ACTION SHOULD BE DISMISSED OR STAYED AS TO CIC AND CENTURY ON FORUM NON CONVENIENS GROUNDS.**

Application of the test for *forum non conveniens* requires dismissal or stay of this action as to CIC and Century.

A. **The Southern District of New York Is a Suitable Place for Trial of the Dispute Between CIC, Century, and Cyprus Amax.**

There is no serious dispute that the Southern District of New York is capable of trying the dispute between CIC, Century, and Cyprus Amax. The parties are guaranteed due process there and the federal district court has nationwide subpoena power. There is no question that Cyprus Amax, Phelps Dodge and AMRI are all subject to personal jurisdiction in New York.

B. **The Private and Public Interest Factors Weigh Heavily in Support of Dismissal or Stay of this Action as to CIC and Century.**

The courts apply a variety of private and public interest factors in determining whether to grant a motion based on *forum non conveniens* grounds. *See Stangvik v. Shiley*

CBM-IPG\SF408288.6

-8-

1  *Inc.*, 54 Cal. 3d at 751, 819 P.2d at 17-18, 1 Cal. Rptr. 2d at 559-60. Perhaps the most

2  comprehensive list of factors is outlined in *Great N. Ry. Co. v. Super. Ct. (Curtin)*, 12 Cal.

3  App. 3d 105, 90 Cal. Rptr. 461 (1970). [31] Those factors tend to fall into three groups:

4  1) the relationship of the lawsuit and the parties to the forum and alternative forum, 2) the

5  convenience to the parties and to witnesses of litigating in the chosen and alternative

6  forums, and 3) the interests of efficient judicial administration. *See Northrop Corp. v.*

7  *Am. Motorists Ins. Co.*, 220 Cal. App. 3d 1553, 1560, 270 Cal. Rptr. 233, 236 (1990).

8  Applying those factors to this action indicates dismissal or stay of this action as to

9  Continental is required.

10         **1.    CIC, Century and Cyprus Amax, and the Dispute Between**
                   **Them, Have No Connection to California Whereas They**

11                **Have Strong Connections with New York.**

12        California has no connection to the dispute between CIC, Century and Cyprus

13 Amax. But those parties and the insurance policies between them have substantial

14 connections to New York in relation to this dispute. Thus, New York has a stronger

15 interest in adjudicating this dispute than California.

16           **a.    The Parties Are Subject to Personal Jurisdiction in New York.**

17        CIC, Century, and Cyprus Amax, Phelps Dodge, and AMRI are all subject to

18 personal jurisdiction in New York. Amax is subject to personal jurisdiction because it

19 transacted business within New York by negotiating and purchasing insurance policies

20 from CIC and Century in New York. N.Y. C.P.L.R. § 302 (a) (1)[32]. Cyprus Amax,

21 Phelps Dodge, and Freeport are all successors by corporate merger to Amax,[33] over which

22 the New York court has personal jurisdiction, and therefore each of the successor entities

23 by merger is also subject to personal jurisdiction in this Court. *See Hughes v. BCI Int'l*

---

[31] The complete list of twenty-five factors endorsed in *Great N. Ry. Co. v. Super. Ct.*, 12 Cal. App. 3d 105, 113-115, 90 Cal. Rptr. 461, 466-67 (1970) is attached hereto as Exhibit 2.

[32] In diversity actions, a United States District Court may exercise jurisdiction over a foreign defendant if the defendant is amenable to personal jurisdiction under the law of the forum state. *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105, 108 S. Ct. 404, 410, 98 L. Ed. 2d 415 (1987).

[33] Woodward Decl. at 2, ¶ 7, Ex. 3 (Email from Plumer to Jacobus (Apr. 4, 2008)).

1  *Holdings, Inc.*, 452 F. Supp. 2d 290, 301 (S.D.N.Y. 2006) (holding that when predecessor

2  corporation is subject to personal jurisdiction in New York, successor corporations are

3  subject to personal jurisdiction by virtue of the merger alone).[34]   AMRI, by allowing

4  Amax to purchase insurance for it in New York, is also subject to personal jurisdiction in

5  this Court. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, P.L.C.*, 319 F. Supp.

6  2d 352, 358-367 (S.D.N.Y. 2004) (holding that where an entity subject to personal

7  jurisdiction in New York procures insurance for another entity, the second entity is subject

8  to personal jurisdiction in New York).

9  **b.    The Relevant Parties Are Not Domiciled in California**

10        CIC, Century, and Amax have a long, substantial history of business

11  transactions among themselves in New York.   The majority of the insurance policies

12  involved were issued to Amax when it was headquartered in New York.   None of the

13  parties has its principal place of business in California.   Furthermore, none of the parties is

14  or was during any relevant time a California corporation.   Rather, Amax and CIC

15  previously had their corporate headquarters in New York, and Phelps Dodge is currently a

16  New York corporation.[35]

17        None of the insured entities has any California contacts.   Two insurers,

18  American and Truck, are alleged to have a principal place of business in California;

19  however, those insurers are not at issue in the coverage dispute between CIC, Century and

20  Cyprus Amax.   As detailed above, there are two completely separate lines of coverage in

21  issue.   In short, CIC, Century, and Cyprus Amax, insofar as the dispute between them is

22  concerned, have no connection to California.   Nevertheless, they have significant

23  connections to New York.

24

25

26

---

27  [34] *See* Woodward Decl. at 2, ¶ 7, Ex. 3 (Email from Plumer to Jacobus (Apr. 4, 2008)).

28  [35] *See* Woodward Decl. at 2, ¶ 13, Ex. 9 (Freeport 10-K listing subsidiary Phelps Dodge as a New York corporation).

1

              **c.**     **The Amax Policies Were Issued Primarily in New York and None Were Issued in California.**

2

3           Century issued primary liability policies to Amax, Inc. (and its predecessor)

4  from January 1, 1965 to January 1, 1975.  Continental issued primary liability policies to

5  Amax, Inc. from January 1, 1975 to April 1, 1986.  Notably, the first 11 years of coverage

6  was issued to Amax in New York City.  Furthermore, all the policies were issued through

7  a New York broker.  Consequently, all the policies between CIC, Century and Cyprus

8  Amax were issued from New York.  New York therefore has a strong interest in

9  interpreting those policies.  *See Century Indem. Co. v. Bank of Am.*, 58 Cal. App. 4th 408,

10  413, 68 Cal. Rptr. 2d 132, 134-35 (1997) (action stayed because Hawaii had a "strong

11  interest" in interpreting insurance contracts issued there).

12

              **d.**     **California Has No Interest in Adjudicating Coverage Under the Policies at Issue Whereas New York Has a Strong Interest.**

13

14           California courts have no interest in adjudicating disputes among nonresidents

15  governed by foreign law.  *See Baltimore Football Club Inc. v. Super. Ct.*, 171 Cal. App.

16  3d 352, 364-65, 215 Cal. Rptr. 323, 330 (1985).  The *Baltimore Football Club* court

17  dismissed the action against the out-of-state defendants on *forum non conveniens* grounds

18  because it would be an abuse of discretion for a court to assume jurisdiction over a dispute

19  between "non-California claimants against out-of-state defendants over causes of action

20  governed by foreign law and about which California has no interest whatsoever." *Id.*

21           California has an interest in adjudicating the dispute between Cyprus Amax

22  and all the parties *except CIC and Century* because of the forum selection clause in those

23  other parties' 2007 cost sharing agreement.  There is no reason, however, to drag CIC and

24  Century into California because they are not parties to the 2007 cost sharing agreement

25  and their dispute with Cyprus Amax has no connection whatsoever to California.  Rather,

26  their dispute involves parties that were or are domiciled in New York and the

27  interpretation of policies issued from New York.  Accordingly, New York has a strong

28  public interest in adjudicating this dispute.

CBM-IPG\SF408288.6                 -11-

1

**2.    The Convenience of the Parties and Witnesses Strongly Favors Litigating This Dispute in New York.**

2

3    New York is more convenient for the parties than California because the

4  parties are generally closer to New York and because the only known witnesses and

5  sources of documents (aside from the parties themselves) are located in New York.

6    **a.    The Convenience of the Parties Favors New York.**

7    None of CIC, Century, and Cyprus Amax is located in California.  Century is

8  located in Philadelphia, Pennsylvania,[36] a short distance from New York.  Phelps Dodge is

9  a New York corporation.  CIC is incorporated in Pennsylvania.[37]  Thus, New York is

10  more convenient than California for the parties.

11    Furthermore, Cyprus Amax will not be prejudiced litigating this dispute in

12  New York as shown by its choice to litigate as a plaintiff in the New York courts before.

13  *See Amax, Inc. v. Sohio Indus. Prods. Co.*, 121 Misc. 2d 814, 469 N.Y.S.2d 282 (Supreme

14  Ct., New York County 1983); *Cyprus Amax Minerals Co. v. Asarco Inc.*, 2003 WL

15  22118989 (S.D.N.Y. Sept. 11, 2003); *In re Phelps Dodge Indus., Inc.*, 131 A.D.2d 675,

16  516 N.Y.S.2d 754 (2 Dep't 1987).[38]

17    **b.    The Convenience of the Witnesses Favors New York.**

18    There are no known witnesses in California.  Every witness relevant to the

19  CIC, Century, Cyprus Amax dispute would be a non-California resident.  The broker of

20  the CIC and Century policies as well as Cyprus Amax's defense counsel for the

21  underlying claims are in New York.  Thus, the convenience of the witnesses strongly

22  favors New York.

23

24

25
[36] Dedeyan Decl. at 1, ¶ 4.

26
[37] Lehman Decl. at 2, ¶ 9.

27
[38] Continental requests the Court take judicial notice of these actions and that the policyholder entities

28  have previously litigated as plaintiffs in the New York courts.  *See* Request for Judicial Notice submitted with these moving papers.

1

**3.    The Interests of Efficient Judicial Administration Favor Litigating This Dispute in New York.**

2

3    The federal district court in New York will enable the most efficient

4    administration of this litigation because New York law will likely apply to the CIC and

5    Century policies and that court's nationwide subpoena power will better enable the parties

6    to discover needed documents and compel the attendance of witnesses.

7    **a.    The Conflict of Law Rules Favors Dismissal or Stay.**

8    This Court should apply California law to the settlement agreement between

9    Cyprus and its insurers under the 2007 agreement because of the California choice of law

10   provision in that contract.[39]  In contrast, this Court would not apply California law to the

11   CIC and Century policies, because California courts apply the law of the forum where the

12   insured risk was located when the policies were issued—therefore, likely New York law

13   will apply under California's choice-of-law rules.  *Stonewall Surplus Lines Ins. Co. v.*

14   *Johnson Controls*, 14 Cal. App. 4th 637, 646, 17 Cal. Rptr. 2d 713, 718 (2006).

15   Likewise, the New York court will likely apply New York law to the CIC,

16   Century, Cyprus Amax dispute.  *Certain Underwriters at Lloyd's London v. Foster*

17   *Wheeler Corp.*, 36 A.D.3d 17, 26-27, 822 N.Y.S.2d 30, 37 (2006), *aff'd* 9 N.Y.3d 928,

18   876 N.E.2d 500, 844 N.Y.S.2d 773 (2007).  Because New York law will likely apply to

19   the policies issued by CIC and Century, their dispute should be adjudicated in New York.

20   **b.    Litigating This Dispute in New York Will Avoid Multiplicity.**

21   If the dispute between CIC, Century and Cyprus Amax continues in this Court,

22   there will be a multiplicity of actions.  <u>First, this Court would apply two different bodies</u>

23   <u>of substantive law.</u>  California law applies to the settlement agreement between Cyprus

24   and its insurers under the 2007 cost sharing agreement because of the California choice of

25   law provision in that contract.[40]  In contrast, this Court will likely apply New York law to

26

27   [39] Woodward Decl. at 2, ¶ 6, Ex. 2 (Affidavit of Gregory D. Winfree at 3, ¶ 7).

28   [40] Woodward Decl. at 2, ¶ 6, Ex. 2 (Affidavit of Gregory D. Winfree at 3, ¶ 7).

1    the CIC, Century, Cyprus Amax dispute because most of the relevant policies were issued

2    in New York. *See Stonewall Surplus Lines Ins. Co. v. Johnson Controls*, 14 Cal. App. 4th

3    637, 646, 17 Cal. Rptr. 2d 713, 718 (2006).

4      Second, this Court would be interpreting a cost sharing agreement as to the

5    insurers that issued policies to Cyprus versus the policies CIC and Century issued to

6    Amax. The rights and obligations of the insurers that issued policies to Cyprus before its

7    merger with Amax are governed not by insurance policies, but by the 2007 agreement,[41]

8    to which CIC and Century are not parties. Resolution of that dispute will turn on the

9    interpretation of the cost sharing agreement. In contrast, the rights and obligations of CIC

10    and Century are governed exclusively by the CIC and Century insurance policies.

11      Third, this Court would apply two different dispute resolution methods:

12    mediation for the Cyprus insurers and a civil action for the Amax insurers. The 2007

13    agreement between the Cyprus insurers and Cyprus Amax requires the parties to mediate

14    disputes before litigating them.[42] Freeport initiated its California action in violation of

15    this agreement to set-up this wasteful and improper challenge to the New York forum. If

16    the Cyprus insurers are sent to mediation, as required by contract, then CIC and Century

17    will be left litigating in California superior court with Cyprus Amax, even though

18    California has no connection to these parties' transactions with each other.

19       **c. Access to Sources of Proof and the Ability to Compel**

20        **Attendance of Witnesses Are Greater in the New York Action.**

21      The nationwide subpoena power of the United States District Court provides

22    better access to witnesses and evidence. This Court's more limited subpoena power is not

23    as effective because all witnesses and documents relevant to the CIC, Century, Cyprus

24    Amax dispute *are outside of California.*

---

[41] Woodward Decl. at 2, ¶ 6, Ex. 2 (Affidavit of Gregory D. Winfree at 3, ¶ 7).

[42] Woodward Decl. at 2, ¶ 10, Ex. 6 (Letter from Bitter to Plumer (May 13, 2008) at 1-2).

1    Both the New York federal court and this Court will provide a fair trial.

2  Nevertheless, the greater access to witnesses and evidence available through the New

3  York Action will help assure all parties have a full and fair opportunity to litigate the

4  merits of the dispute.

5    **d.    Litigating This Dispute in California Will Place an Undeserved Burden on California Courts and Taxpayers.**

6

7    The dispute between CIC, Century and Cyprus Amax has nothing to do with

8  California.  This Court should not be called upon to consume resources for this dispute.

9  California taxpayers should not be called upon to fund it.  And Californians should not be

10  called upon as jurors to hear it.  Given the New York connections discussed above, the

11  parties can justifiably call upon New York to adjudicate this dispute.

12  **VI.  CONCLUSION AND REQUEST FOR RELIEF: THIS ACTION SHOULD BE DISMISSED OR STAYED AS TO CIC AND CENTURY.**

13

14    The Southern District of New York is the appropriate forum to resolve the

15  dispute between CIC, Century, and Cyprus Amax.  These parties' relationships are deeply

16  rooted in New York whereas California has no connection to their relationships with each

17  other, or their dispute.  Applying the California *forum non conveniens* factors, therefore,

18  indicates dismissal or stay is appropriate here as to CIC and Century.

19    Wherefore, CIC and Century request the Court dismiss or, in the alternative,

20  stay this action as to these parties.

21  Dated: June 19, 2008

22  CARROLL, BURDICK & McDONOUGH          BERMAN  AIWASIAN
    LLP
23

24  By _____          By _____
         Alison V. Lippa                      Deborah A. Aiwasian
25       Alan P. Jacobus                   Attorneys for Defendant
         Vance A. Woodward                 Century Indemnity Company
26     Attorneys for Defendant
     The Continental Insurance Company
27

28



Cyprus Amax Corporate History Chart

Exhibit 1

**Exhibit 2**

List of factors to be considered in determining whether the doctrine of forum non conveniens applies:

1. The amenability of the defendant to personal jurisdiction in the alternative forum.

2. The relative convenience to the parties and witnesses of trial in the alternative forum.

3. The differences in conflict of law rules applicable in this state and in alternative forum.

4. The principal place of business of the defendant.

5. Whether the situation, transaction or events out of which the action arose exists, occurred in, or had a substantial relationship to this state.

6. Whether any party would be substantially disadvantaged in having to try the action (a) in this state or (b) in the forum in which the moving party asserts it ought to be tried.

7. Whether any judgment entered in the action would enforceable by process issued or other enforcement proceedings undertaken in this state.

8. Whether witnesses would be inconvenienced if the action were prosecuted (a) in this state or (b) in the forum in which the moving party asserts it ought to be prosecuted.

9. The relative expense to the parties of maintaining the action (a) in this state and (b) in the state in which the moving party asserts the action ought to be prosecuted.

10. Whether a view of premises by the trier of fact will or might be necessary or helpful in deciding the case.

11. Whether prosecution of the action will or may place a burden on the courts of this state which is unfair, inequitable or disproportionate in view of the relationship of the parties or of the cause of action to this state.

12. Whether the parties participating in the action have a relationship to this state which imposes upon them an obligation to participate in judicial proceedings in the courts of this state.

13. The interest, if any, of this state in providing a forum for some or all of the parties to the action.

14. The interest, if any, of this state in regulating the situation or conduct involved.

CBM-IPG\SF408426.1

15. The avoidance of multiplicity of actions and inconsistent adjudications.

16. The relative ease of access to sources of proof.

17. The availability of compulsory process for attendance of witnesses.

18. The relative advantages and obstacles to a fair trial.

19. The public interest in the case.

20. Whether administrative difficulties and other inconveniences from crowded calendars and congested courts are more probable in the jurisdiction chosen by plaintiff.

21. Whether imposition of jury duty is imposed upon a community having no relation to the litigation.

22. The injustice to, and burden on, local courts and taxpayers.

23. The difficulties and inconvenience to defendant, to the court, and to jurors hearing the case, attending presentation of testimony by depositions.

24. Availability of the forum claimed to be more appropriate.

25. The other practical considerations that make trial of a case convenient, expeditious and inexpensive.

*Great N. Ry. Co. v. Super. Ct.*, 12 Cal. App. 3d 105, 113-115, 90 Cal. Rptr. 461, 466-67 (1970).

1   Alison V. Lippa, No. 160807
    Alan P. Jacobus, No. 206954
2   Vance A. Woodward, No. 231730
    **CARROLL, BURDICK & McDONOUGH LLP**
3   Attorneys at Law
    44 Montgomery Street, Suite 400
4   San Francisco, CA 94104
    Telephone:    415.989.5900
5   Facsimile:    415.989.0932
    Email:    alippa@cbmlaw.com
6             ajacobus@cbmlaw.com
              vwoodward@cbmlaw.com
7   Attorneys for Defendant The Continental Insurance Company

8   Deborah A. Aiwasian, No. 125490
    **BERMAN AIWASIAN**
9   725 South Figueroa Street, Suite 1050
    Los Angeles, CA 90017
10  Telephone:    213.833.3200
    Facsimile:    213.833.3230
11  Email:    deborah.aiwasian@mclolaw.com
    Attorneys for Defendant Century Indemnity Company

12

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 19 2008

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
A.E. LaFLEUR-CLAYTON

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

15

16  CYPRUS AMAX MINERALS
    COMPANY, et al.,
17
                Plaintiffs,
18
        versus
19
    CONTINENTAL CASUALTY
    COMPANY, et al.,
20
                Defendants.
21

No. BC 391068

**REQUEST FOR JUDICIAL NOTICE IN CONNECTION WITH THE CONTINENTAL INSURANCE COMPANY'S AND CENTURY INDEMNITY COMPANY'S JOINT MOTION TO DISMISS OR STAY THE ACTION BASED ON *FORUM NON CONVENIENS***

Hearing Date:    August 27, 2008
Hearing Time:    8:30 a.m.
Dept.:           68
Room:            617
Judge:           Hon. Judge Mooney

Complaint Filed: May 20, 2008

25          Pursuant to CAL. EV. CODE §§ 452(a) and 453, and CAL. R. CT. 3.1113(l), The

26  Continental Insurance Company ("CIC") and Century Indemnity Company as successor to

27  CCI Insurance Company, as successor to Insurance Company of North America

28  ("Century") hereby request that the Court take judicial notice of the following:

CBM-IPG\SF408424.1

1.    Attached as Exhibit 1 is a true and correct copy of *Amax, Inc. v. Sohio Indus. Prods. Co.*, 121 Misc. 2d 814, 469 N.Y.S.2d 282 (Supreme Ct., New York County 1983).

2.    Attached as Exhibit 2 is a true and correct copy of *Cyprus Amax Minerals Co. v. Asarco Inc.*, 2003 WL 22118989 (S.D.N.Y. Sept. 11, 2003).

3.    Attached as Exhibit 3 is a true and correct copy of *In re Phelps Dodge Indus., Inc.*, 131 A.D.2d 675, 516 N.Y.S.2d 754 (2 Dep't 1987).

4.    CIC and Century request this Court take judicial notice of these actions and that Amax, Inc., Cyprus Amax Minerals Company, and Phelps Dodge Industries, Inc. have previously litigated as plaintiffs in the New York courts.

Dated:  June 19, 2008

CARROLL, BURDICK & McDONOUGH LLP

By _____
        Alison V. Lippa
        Alan P. Jacobus
        Vance A. Woodward
Attorneys for Defendant
The Continental Insurance Company

BERMAN  AIWASIAN

By _____
        Deborah A. Aiwasian
Attorneys for Defendant
Century Indemnity Company

# EXHIBIT 1

**REQUEST FOR JUDICIAL NOTICE IN CONNECTION WITH THE CONTINENTAL INSURANCE COMPANY'S AND CENTURY INDEMNITY COMPANY'S JOINT MOTION TO DISMISS OR STAY THE ACTION BASED ON *FORUM NON CONVENIENS***

*CYPRUS AMAX MINERALS CO., ET AL., V. CONTINENTAL CASUALTY CO., ET AL.*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

**CASE NO. BC 391068**

Westlaw.

121 Misc.2d 814
121 Misc.2d 814, 469 N.Y.S.2d 282
(Cite as: 121 Misc.2d 814, 469 N.Y.S.2d 282)

Page 1

▷

Amax, Inc. v. Sohio Indus. Products Co.
N.Y.Sup.,1983.

Supreme Court, New York County, New York,
Special Term, Part I.
AMAX, INC., Plaintiff,
v.
SOHIO INDUSTRIAL PRODUCTS COMPANY,
Defendant.
Oct. 4, 1983.

Purchaser of property brought action against previous owner to recover damages for radioactive contamination resulting from previous owner's manufacturing operation. On defendant's motion to dismiss, the Supreme Court, Special Term, New York County, Part I, Richard W. Wallach, J., held that the nuisance was continuous in sense that it gave rise to successive causes of action that continuously accrued throughout period that the property remained contaminated and, thus, the suit was not untimely.

Motion denied.

West Headnotes

[1] Limitation of Actions 241 ⬤55(6)

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(A) Accrual of Right of Action or Defense
            241k55 Torts
                241k55(6) k. Continuing Injury in General. Most Cited Cases
For purposes of statute of limitations governing nuisance actions, injuries to property need not be intermittent or episodic in order for there to be successive causes of action continuously accruing throughout the period that harm is suffered and damages sustained, that is, period during which the wrongful act has consequences adverse to use and enjoyment of the property.

[2] Limitation of Actions 241 ⬤55(6)

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(A) Accrual of Right of Action or Defense
            241k55 Torts
                241k55(6) k. Continuing Injury in General. Most Cited Cases
A structure encroaching upon easements of light, air and access, though not actively maintained by defendant during period that damages are sustained, is regarded as a continuing trespass giving rise to successive causes of action barred only by expiration of such time as would create an easement by prescription or change of title by operation of law.

[3] Trespass 386 ⬤51

386 Trespass
    386II Actions
        386II(D) Damages
            386k51 k. Continuing Trespass to Real Property. Most Cited Cases
Damages recoverable for a continuing trespass are for past injury to the freehold and possession, that is, pecuniary loss sustained by plaintiff in use and enjoyment of his property up to time suit was commenced.

[4] Nuisance 279 ⬤50(5)

279 Nuisance
    279I Private Nuisances
        279I(D) Actions for Damages
            279k50 Damages
                279k50(5) k. Mitigation and Reduction of Loss. Most Cited Cases
Abatement of a continuous nuisance does not affect right to recover damages for its past existence, although damages are limited to those sustained during three years prior to commencement of suit.

[5] Nuisance 279 ⬤50(1)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

121 Misc.2d 814                                                                                   Page 2
121 Misc.2d 814, 469 N.Y.S.2d 282
**(Cite as: 121 Misc.2d 814, 469 N.Y.S.2d 282)**

279 Nuisance
   2791 Private Nuisances
      2791(D) Actions for Damages
         279k50 Damages
            279k50(1) k. Elements and Measure of Damages in General. Most Cited Cases
Owner of real property affected by a nuisance cannot recover damages based upon assumption that an injury to his property will be permanent or unabatable, i.e., he cannot obtain a single recovery including prospective as well as past damages unless the injury is incapable of actual, physical repair.

**[6] Trespass 386 &#8596;47**

386 Trespass
   386II Actions
      386II(D) Damages
         386k47 k. Grounds and Elements of Compensatory Damages in General. Most Cited Cases
Injuries to land are held to be incapable of repair and thus permanent in nature for which prospective damages can be recovered when things attached to the land, such as timber, trees, soil and buildings, are removed or destroyed.

**[7] Limitation of Actions 241 &#8596;55(5)**

241 Limitation of Actions
   241III Computation of Period of Limitation
      241III(A) Accrual of Right of Action or Defense
         241k55 Torts
            241k55(5) k. Injuries to Property in General. Most Cited Cases
Permanent injuries incapable of repair arising when things attached to the land are removed or destroyed are actionable at time of initial encroachment and give rise to but a single cause of action.

**[8] Limitation of Actions 241 &#8596;55(6)**

241 Limitation of Actions
   241III Computation of Period of Limitation
      241III(A) Accrual of Right of Action or Defense

         241k55 Torts
            241k55(6) k. Continuing Injury in General. Most Cited Cases
Injury to property caused by radioactive contamination which resulted from prior owner's manufacturing operations gave rise to successive causes of action that continuously accrued throughout period that the property remained contaminated and, thus, nuisance action brought 18 years after the property was sold but within one year after prior owner completed cleanup and eliminated the nuisance was not untimely.

**283 *814** Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff.
Squire, Sanders & Dempsey, Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant.

RICHARD W. WALLACH, Justice:
This is a motion by defendant for an order dismissing that portion of the action as time-barred which seeks money damages for nuisance. The basic issue here involves application of the statute of limitations to a claim arising from radioactive contamination of land and improvements.

For determination of this motion plaintiff may be considered as the owner of real property and defendant as the immediate prior owner. An ore processing plant for **284 the production of nuclear grade zirconium metals was operated on the property during defendant's ownership. Defendant stored the radioactive residues resulting from the operation in drums, or buried the waste in a waste dump located on the property. These storage and disposal techniques caused the property to become contaminated with radiation. Thereafter plaintiff became legally obligated to decontaminate or clean up the property. The action seeks to recover the clean-up costs incurred, plaintiff contending that the storage and disposal techniques used by defendant violated a legal duty owed not only to plaintiff but also to the public, either absolute or measured by a standard of *815 reasonable care, not to cause the property to become contaminated with radi-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ation.

The storage and disposal techniques complained of were in effect from 1961 to 1964; defendant sold the property in 1965; the contamination was discovered in 1978; plaintiff acknowledged legal responsibility for cleaning up the property some time prior to 1980; "radioactive contamination stabilization" was completed in late 1982; and suit was commenced in 1983.

Defendant urges dismissal of the action because it was not commenced within three years from the date in 1965 when defendant sold the property and thereafter could not possibly have had any connection with whatever activity it was that caused the contamination. In opposition, plaintiff argues that the three-year period should be measured from 1982, when the clean-up was completed and the "nuisance" eliminated.

At issue is whether the injury sustained, the radioactive contamination, should be regarded as permanent, in the sense that it gave rise to but a single cause of action that accrued when defendant undertook to store and dispose of the radioactive residues, or continuous, in the sense that it gave rise to successive causes of action that continuously accrued throughout the period that the property remained contaminated (see, *509 Sixth Avenue Corp. v. New York City Transit Authority,* 15 N.Y.2d 48, 255 N.Y.S.2d 89, 203 N.E.2d 486).

[1][2][3][4] Injuries to property need not be intermittent or episodic (e.g., *Meruk v. The City of New York,* 223 N.Y. 271, 119 N.E. 571; *Reed v. The State of New York,* 108 N.Y. 407, 15 N.E. 735) in order for there to be successive causes of action continuously accruing throughout the period that harm is suffered and damages sustained-that is, the period during which the wrongful act has consequences adverse to the use and enjoyment of the property. Injuries can also be fluid and constant through time, recurring not from time to time, but, in theory, second-by-second, as, for example, when a structure such as an elevated street railroad en-

croaches upon easements of light, air and access (e.g., *Galway v. M.E.R. Co.,* 128 N.Y. 132, 28 N.E. 479; *Pappenheim v. M.E.R. Co.,* 128 N.Y. 436, 28 N.E. 518). A structure so encroaching, though not actively maintained by the defendant during the period that damages *816 are sustained, is regarded as a continuous trespass giving rise to successive causes of action barred only by the expiration of such time as would create an easement by prescription or change of title by operation of law (*509 Sixth Ave. Corp.,* supra). The damages recoverable are for the past injury to the freehold and possession; that is, the pecuniary loss sustained by the plaintiff in the use and enjoyment of his property up to the time suit was commenced (*Uline v. N.Y.C. & H.R.R.R. Co.,* 101 N.Y. 98, 116,4 N.E. 536). In such a case, it may not be to the injured party's advantage to bring successive actions often and promptly; he may prefer to delay the action until his damages are large and immediate (*Galway,* supra, 128 N.Y. at 147, 28 N.E. 479). The abatement of the nuisance does not affect the right to recover damages for its past existence (42 NY Jur., Nuisances, § 58), although damages are limited to such as were sustained within three years prior to the commencement of suit (36 NY Jur., Limitations and Laches, § 88).

[5][6][7] Defendant would not analogize the contamination to an encroaching structure;**285 no doubt, if analogy there must be, it would urge that the contamination is like the disease contracted as a result of an act of medical malpractice which manifests itself only after a long interval of time (e.g., *Schmidt v. The Merchants Despatch Transportation Company,* 270 N.Y. 287, 200 N.E. 824; *Schwartz v. Heyden Newport Chemical Corporation,* 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142; *Thornton v. Roosevelt Hospital,* 47 N.Y.2d 780, 417 N.Y.S.2d 920, 391 N.E.2d 1002), the act of malpractice being analogous to the storage and disposal techniques used by defendant in producing the nuclear materials. Such an argument, however, overlooks that the owner of real property cannot recover damages based upon the assumption that an injury

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

121 Misc.2d 814                                                                    Page 4
121 Misc.2d 814, 469 N.Y.S.2d 282
(Cite as: 121 Misc.2d 814, 469 N.Y.S.2d 282)

to his property will be permanent or "unabatable", i.e., he cannot obtain a single recovery including prospective as well as past damages (see, *Boomer v. Atlantic Cement Co., Inc.*, 26 N.Y.2d 219, 226, 309 N.Y.S.2d 312, 257 N.E.2d 870), unless the injury is incapable of actual, physical repair (*Dietzel v. City of New York*, 218 N.Y. 270, 112 N.E. 720). Injuries to land are held to be incapable of repair and thus permanent in nature when things attached to the land, such as timber, trees, soil and buildings, are removed or destroyed (see, *Dietzel,*supra, at 272, 112 N.E. 720; **\*817**Hartshorn v. Chaddock, 135 N.Y. 116, 31 N.E. 997; 13 NY Jur., Damages, §§ 87-88). Such injuries, like the one here, are actionable at the time of the initial encroachment, but unlike the one here, give rise to but a single cause of action (*509 Sixth Avenue Corp.*, supra, 15 N.Y.2d at 52, 255 N.Y.S.2d 89, 203 N.E.2d 486).

Thus, in *509 Sixth Avenue Corp., supra,* excavation work undertaken by plaintiff in 1960 for the purpose of constructing a building was hindered by an underground "encroachment" allegedly belonging to defendant and erected in 1939. Rejecting an argument by plaintiff that its lack of knowledge prevented the cause of action from accruing in 1939, the court nevertheless held the action timely on the ground that the encroachment in question should be classified as a continuous trespass. The court stated: "In New York, we have consistently characterized an unlawful encroachment as a continuous trespass giving rise to successive causes of action".

[8] Accordingly, the motion is denied. Within ten days after service of a copy of this order with notice of entry, plaintiff shall serve an amended complaint repleading its second cause of action for "negligence", its third cause of action for "strict liability" and its fourth cause of action for "nuisance" as a second cause of action for a nuisance based on negligence and a third cause of action for a nuisance based on liability for abnormally dangerous conditions or activities (see, *Copart Industries, Inc. v. Consolidated Edison Co. of New York*, 41 N.Y.2d 564, 569, 394 N.Y.S.2d 169, 362

N.E.2d 968; *Schmidt v. Merchants Despatch Trans. Co.,* supra, 270 N.Y. at 299, 200 N.E. 824).

N.Y.Sup.,1983.
Amax, Inc. v. Sohio Indus. Products Co.
121 Misc.2d 814, 469 N.Y.S.2d 282

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

REQUEST FOR JUDICIAL NOTICE IN CONNECTION WITH THE CONTINENTAL INSURANCE
COMPANY'S AND CENTURY INDEMNITY COMPANY'S JOINT MOTION TO DISMISS OR STAY THE
ACTION BASED ON *FORUM NON CONVENIENS*

*CYPRUS AMAX MINERALS CO., ET AL., V. CONTINENTAL CASUALTY CO., ET AL.*

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

CASE NO. BC 391068

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 22118989 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 22118989 (S.D.N.Y.))

**H**

Cyprus Amax Minerals Co. v. Asarco Inc.

S.D.N.Y.,2003.

Only the Westlaw citation is currently available.

United States District Court,S.D. New York.

CYPRUS AMAX MINERALS COMPANY, a
Delaware corporation, Plaintiff,

v.

ASARCO INCORPORATED, a New Jersey cor-
poration, Defendants.

No. 99 Civ. 11198(LMM).

Sept. 11, 2003.

*MEMORANDUM AND ORDER*

MCKENNA, J.

*1 The Court has considered the parties' corres-
pondence regarding a motion by plaintiff for leave
to amend its complaint. Following the practice of
Judge Martin, to whom this case was previously as-
signed, the Court will, as suggested by the parties,
decide the motion on the correspondence.[FN1]

> FN1. The correspondence consists of
> plaintiff's counsels' letter to Judge Martin
> of July 11, 2003, defendant's counsels' let-
> ter to the undersigned of July 29, 2003,
> plaintiff's counsel's letter to the under-
> signed of August 5, 2003, defendant's
> counsel's letter to the undersigned of Au-
> gust 8, 2003, and plaintiff's counsel's leter
> to the undersigned of August 13, 2003, the
> first two letters being accompanied by ex-
> hibit booklets.

"Leave to file an amended complaint 'shall be
freely given when justice so requires,' and should
not be denied unless there is evidence of undue
delay, bad faith, undue prejudice to the non-
movant, or futility."*Milanese v. Rust-Oleum Corp..*
244 F.3d 104, 110 (2d Cir.2001) (quoting
Fed.R.Civ.P. 15(a), and citing *Foman v. Davis,* 371
U.S. 178, 182 (1962)). The Court is not persuaded

that any of those impediments to amendment has
been demonstrated.[FN2]

> FN2. The Court has applied the
> Fed.R.Civ.P. 12(b)(6) standard in consider-
> ing whether the amendment would be fu-
> tile, rather than the *id.* 56 standard, be-
> cause the parties have not "fully briefed
> the issue whether the proposed amended
> complaint could raise a genuine issue of
> fact and have [not] presented all relevant
> evidence in support of their positions."*Mil-
> anese,* 244 F.3d at 110.

Plaintiff may serve and file its proposed amended
complaint.

SO ORDERED.

S.D.N.Y.,2003.

Cyprus Amax Minerals Co. v. Asarco Inc.

Not Reported in F.Supp.2d, 2003 WL 22118989
(S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

REQUEST FOR JUDICIAL NOTICE IN CONNECTION WITH THE CONTINENTAL INSURANCE
COMPANY'S AND CENTURY INDEMNITY COMPANY'S JOINT MOTION TO DISMISS OR STAY THE
ACTION BASED ON *FORUM NON CONVENIENS*

*CYPRUS AMAX MINERALS CO., ET AL., V. CONTINENTAL CASUALTY CO., ET AL.*

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

CASE NO. BC 391068

Westlaw.

131 A.D.2d 675                                                                  Page 1
131 A.D.2d 675, 516 N.Y.S.2d 754
**(Cite as: 131 A.D.2d 675)**

**H**

In the Matter of Phelps Dodge Industries, Inc., Re-
spondent,

v.

John F. Kondzielaski et al., Appellants.

Supreme Court, Appellate Division, Second De-
partment, New York

June 15, 1987

CITE TITLE AS: Matter of Phelps Dodge Indus. v
Kondzielaski

OPINION OF THE COURT

Weinstein, J. P., Rubin, Kooper and Sullivan, JJ.,
concur.

In a tax certiorari proceeding pursuant to Real
Property Tax Law article 7 to review assessments
on certain real property for the taxable status dates
December 1, 1978, December 1, 1979, December 1,
1980, December 1, 1981 and December 1, 1982
(tax years 1979/1980, 1980/1981, 1981/1982,
1982/1983 and 1983/1984), the appeal is from an
order and judgment (one paper) of the Supreme
Court, Westchester County (Burchell, J.), dated
June 10, 1985, which reduced the assessments for
each of the years in issue.

Ordered that the order and judgment is affirmed,
without costs or disbursements. *676

The principal issue on appeal is whether the peti-
tioner's 105-foot high, one story and mezzanine, re-
search laboratory building erected in 1969 and con-
taining extra high-voltage test facilities, should
have been treated as a specialty structure and thus
valued by a cost approach. The appellants used the
income capitalization approach with respect to the
entire factory complex on the subject improved par-
cel except for the detached research laboratory
building, which their experts valued by the cost ap-
proach. The appellants added their income ap-
proach valuations to their valuation of the research

laboratory by the cost approach to derive total valu-
ations vastly in excess of those of petitioner.

The trial court declined to treat the subject research
laboratory as a specialty. The appellants now con-
tend that the court erred in not doing so. We dis-
agree and affirm for the reasons stated in the
amended decision of Justice Burchell, dated May
13, 1985, with the following additional comments.

The appellants argue that by virtue of the judgment
entered on the July 9, 1979 decision rendered by
the late Justice Timothy J. Sullivan *(Matter of
Phelps Dodge Indus. v. Kondzielaski*, Sup Ct,
Westchester County, Oct. 19, 1979 [Sullivan, J.],
*affd* 86 AD2d 989, 990, *lv denied* 57 NY2d 602)
with respect to a tax certiorari review of the subject
plant (and other properties of the petitioner) for a
span of years immediately preceding the years now
under review, the subject research laboratory build-
ing was adjudicated by Justice Sullivan to be a spe-
cialty building, and thus a cost approach valuation
(reproduction cost less depreciation) is required in
the instant proceeding for the research laboratory
building. The appellants contend that in the present
proceeding the parties and the court were bound by
Justice Sullivan's determination, and by independ-
ent evidence in the present proceeding that the re-
search laboratory building is still a specialty and
must be valued by the cost approach. We disagree.
An examination of Justice Sullivan's decision re-
veals that he dismissed the petitions in that pro-
ceeding based upon the failure of the petitioner's
expert to provide adjustments to the comparable
leases used under that expert's income approach
valuations, and that Justice Sullivan's ensuing com-
ments with respect to the research laboratory facil-
ity being a specialty were therefore dicta.

Further, even assuming, arguendo, that Justice Sul-
livan's specialty comments were not dicta, they
could not conclusively bind Justice Burchell in a re-
view of the assessments for subsequent tax years,
even those immediately following the *677 years

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

131 A.D.2d 675                                                                    Page 2
131 A.D.2d 675, 516 N.Y.S.2d 754
**(Cite as: 131 A.D.2d 675)**

reviewed in the prior proceeding *(see, People ex rel. Hilton v. Fahrenkopf,* 279 NY 49). As the Court of Appeals held in *People ex rel. Hilton v. Fahrenkopf (*supra., at 52-53): "It is of the essence of an assessment that it fixes value as of a certain time. Each annual proceeding is separate and distinct from every other. Year by year an assessor must use his own judgment and must verify the roll (Tax Law, §28). From these considerations it results that a prior judicial determination of value does not legally bind successor assessors. *(People ex rel. Eckerson v. Zundel,* 157 N.Y. 513.) It was by that decision suggested, to be sure, that a different result might consistently be predicated of the circumstance that no change in the personnel of an assessing board had occurred since a prior adjudication of value was made. We are now persuaded to say that we think this suggestion was unsound, for value in one year is not in issue thereafter nor are the assessors themselves real parties in interest. Accordingly, we conclude that (though the assessing officers have at all times been the same persons) the doctrine of *res judicata* can have no true application to the issues of value in recurring assessment proceedings. (cf. *Tait v. Western Maryland Ry. Co.,* 289 U. S. 620.)" The same principle applies to the question of whether the evidence in the present proceeding establishes that the research laboratory building currently meets the criteria for specialty treatment and cost approach valuation.

Moreover, with respect to the independent evidence on the specialty issue presented in the present proceeding, we conclude that Justice Burchell correctly applied the legal criteria for specialty valuation set forth in *Matter of County of Nassau (Colony Beach Club of Lido)* (43 AD2d 45, 49, *affd* 39 NY2d 958; *see, Matter of Great Atl. & Pac. Tea Co. v. Kiernan,* 42 NY2d 236; *see also, Matter of Brooklyn Union Gas Co. v. State Bd. of Equalization & Assessment,* 65 NY2d 472, 486, *cert denied* 475 US 1082, 106 S Ct 1461). Moreover, the court properly concluded that the evidence before it established the existence of a sale and rental market for the subject research laboratory building, thereby negat-

ing specialty treatment. Thus, the income capitalization method could and should be used to value the research laboratory even though a higher square foot rental value would be assigned to it than to the main plant complex. The court also properly concluded that the subject improvement could not reasonably have been expected to be replaced were it destroyed during the time periods under review.

With considerable force and specification, the appellants **\*678** argue that the purported comparables with respect to the subject research laboratory were, in fact, not comparable and thus do not demonstrate the existence of a specialty-undercutting market. Although the issue was closely contested, we observe that the degree of comparability is a question of fact to be resolved by the trial court *(see, Freiberger v. State of New York,* 33 AD2d 619). In *Matter of City of Rochester v. BSF Realty* (59 AD2d 1035, 1036), the Appellate Division, Fourth Department, stated: "The suitability of comparable sales, absent legal error *(Argersinger v. State of New York,* 32 AD2d 708, 709), is a matter for resolution by the trial court *(Yonkers Realty Assoc. v. State of New York,* 52 AD2d 1014, 1015; *Sapia v. State of New York,* 33 AD2d 821). Here the amount of the award demonstrates that the testimony of the city's expert was at least partially discounted. We do not find that the court's approach represents an abuse of discretion (cf. *Levin v. State of New York,* 13 NY2d 87, 92-93)".

Based on our review of all the evidence on the comparability issue, we find no basis for disturbing the trial court's conclusions on the issue of comparability and the existence of a market for the research laboratory.

We have examined the appellants' other contentions and conclude that they provide no basis for disturbing the judgment under review.

Copr. (c) 2008, Secretary of State, State of New York.

N.Y.A.D.,1987.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

131 A.D.2d 675

131 A.D.2d 675, 516 N.Y.S.2d 754
**(Cite as: 131 A.D.2d 675)**


PHELPS    DODGE    INDUSTRIES,    INC.    V
KONDZIELASKI

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.