UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

CENTURY INDEMNITY COMPANY, AS : 
SUCCESSOR TO CCI INSURANCE :
COMPANY, AS SUCCESSOR TO :   Electronically Filed
INSURANCE COMPANY OF NORTH :
AMERICA and THE CONTINENTAL :   Index No. 08 Civ. 02012 (PKL)
INSURANCE COMPANY, :
  :
             Plaintiffs, :
  :
  v. :
  :
FREEPORT-MCMORAN COPPER & GOLD :
INC., AS THE CLAIMED SUCCESSOR TO :
PHELPS DODGE CORPORATION, AS THE :
CLAIMED SUCCESSOR TO CYPRUS AMAX :
MINERALS COMPANY, AS THE CLAIMED :
SUCCESSOR TO AMAX INC., AS :
SUCCESSOR TO AMERICAN METAL :
CLIMAX, INC., :
  :
             Defendant. :
  :

-----------------------------------------------------------x

# FREEPORT-MCMORAN COPPER & GOLD INC.'S OBJECTIONS AND OPPOSITION TO THE DECLARATION AND ATTACHMENTS OF VANCE WOODWARD

Mark J. Plumer (admitted *pro hac vice*)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C. 20036
(202) 912-2000

Lisa M. Cirando (LC 1916)
HELLER EHRMAN LLP
7 Times Square
New York, New York 10036
(212) 832-8300

Attorneys for Defendant
Freeport-McMoRan Copper & Gold Inc.

## <u>INTRODUCTION</u>

On July 1, 2008, plaintiff Continental Insurance Company ("Continental" or "the insurer") filed the affidavit of its counsel, Vance A. Woodward ("Woodward Affidavit"), purporting to submit "newly discovered evidence" in support of Continental's pending Opposition to defendant Freeport-McMoRan Copper & Gold Inc.'s ("Freeport" or "defendant") motion to dismiss this lawsuit in favor of a more comprehensive suit filed by Freeport in state court in California. Freeport objected by letter and sought leave to supplement its prior briefing if the Court was inclined to receive the Woodward Affidavit and its 200-pages of cumulative exhibits and cases.  On July 11, 2008, the Court signed an order granting Freeport leave "to submit papers in response to Continental's Supplemental affidavit" filed by August 18, 2008.  The Court's order made clear that it would "determine whether to consider any of the supplemental papers at the time the motion [to dismiss] is decided."

With one exception, it remains Freeport's position that the Court had and has an adequate record upon which to make a decision on Freeport's motion to dismiss without the "supplemental papers" Continental has filed.  The one exception is a true example of "new" and important evidence.  In their opposition briefs, Continental and Century Indemnity Company ("Century") each highlighted the risk that the four Cyprus Insurers might mediate (as required) and settle leaving Continental and Century alone and stranded in a lawsuit in California.  This is no longer a risk.  Cyprus Amax Minerals Company, Amax Metals Recovery Inc. and Phelps Dodge mediated with the Cyprus Insurers on July 28, 2008 and the mediation failed.  Thus, the risk identified by Continental and Century has evaporated.  Notwithstanding the foregoing, if the Court sees fit to review supplemental papers, Freeport here provides the analog to Continental's filing.

## ARGUMENT

**I.    BECAUSE CONTINENTAL HAS IDENTIFIED NO "NEWLY DISCOVERED EVIDENCE," THE COURT SHOULD NOT CONSIDER ITS SUPPLEMENTAL PAPERS.**

Without seeking leave or filing a motion of any kind, counsel for Continental simply filed the Woodward Affidavit attaching Continental's motion to dismiss the competing California lawsuit, declarations in the California action (including a declaration by Mr. Woodward), some 200-pages of exhibits and cases filed in support of the motion and excerpts from the June 23, 2008 deposition of Bobby J. Medlin.[1]

**A.    Continental's Motion To Dismiss In California Is Not Evidence And The Related Declarations And Exhibits Are Redundant.**

Despite that Continental and its co-plaintiff filed 50 pages of briefs opposing Freeport's motion to dismiss this case, it appears that the purpose of filing the Woodward Affidavit is to supplement the record with the brief filed by the insurers in California seeking to dismiss the California action on grounds of *forum non conveniens.* Apart from the brief and related cases – all of which is argument, not "evidence" – there is no "new" evidence in the declarations and exhibits filed in support of the California motion.

The declarations and exhibits relied upon by Continental in support of the motion to dismiss in California for the most part duplicate the declarations and exhibits filed by Continental in this Court. Continental relied upon the affidavits of Robert Galardi and David Lehman in opposing Freeport's motion to dismiss in this case, and Continental relies upon the same affidavits – transformed into "declarations" but otherwise identical – in California. Continental relied upon an affidavit by its counsel, Alan Jacobus, in this Court to attach multiple

---

[1]    Mr. Woodward filed the affidavit in this action on July 1, 2008 and thereafter, on July 14, 2008, moved to be admitted *pro hac vice* in this action.

exhibits in support of its opposition to Freeport's motion to dismiss. Eight out of the nine exhibits to the Woodward Declaration filed in California in support of its *forum non conveniens* motion are identical, presented in the same order (nos. 1-8). A schedule comparing the Jacobus Affidavit exhibits (New York) and Woodward Declaration exhibits (California) is attached as Exhibit A hereto.

Though Exhibit 9 to the Woodward Declaration is different, it is hardly "new" evidence. Exhibit 9 to the Woodward Declaration in California is three pages from Freeport's 10-K for the year ended December 31, 2007. The pages at the bottom show that the 10-K was issued on February 29, 2008. Considering that Continental filed its Opposition brief in this case in on June 12, 2008 and included other pages from the same 10-K (Jacobus Affidavit, Exhibit 18), it is hard to understand how this exhibit constitutes "new" evidence that should be considered 18 days after the deadline for filing Continental's Opposition in this case.[2]

      B.    The Excerpts Provided By Continental From The Deposition Of Mr. Medlin
              Do Not Constitute Probative "Evidence" That Freeport Is The Proper Party.

The deposition of Bobby J. Medlin is evidence adduced after Continental's brief in this case was filed, but the excerpts relied on and the propositions for which Continental cites Mr. Medlin's testimony are not sufficiently probative of any issue or fact to be permitted to supplement Continental's previous filings.[3]

---

[2]      One new declaration was provided in the California action, from Margo Dedeyan. Ms. Dedeyan is claims specialist at Resolute Management, Inc., Mid-Atlantic Division, which performs claims management services for plaintiff Century Indemnity Company. The Dedeyan declaration also does not provide "new" evidence. It simply declares for the benefit of the California court that Century's Amended Complaint in this Court added a count for Unjust Enrichment.

[3]      Notably, the excerpted pages relied upon by Continental state as follows: "The realtime rough draft is intended only for the purpose of augmenting counsel's notes and is not intended to be used or cited in any court proceeding as representing a final edited and proofread transcript." Woodward Affidavit, Exhibit B at 1.

Mr. Medlin's testimony evidently is cited as support for Continental's argument that naming Freeport as the sole defendant in this lawsuit was proper even though Freeport is not named on any of the policies and is not a defendant in any of the underlying lawsuits. Yet, the Woodward Affidavit can state no more than the following based on Mr. Medlin's testimony: "[d]uring his employment with E[nviro] T[ox] L[oss] S[ervices], defendant Freeport-McMoRan has been a client of ETLS and Mr. Medlin has worked on the Freeport McMoRan account." Woodward Affidavit, at ¶ 7. Even if true, and the testimony cited is unclear on this point, this statement does not advance Continental's argument. The question is not whether Freeport was a client of ETLS. To prevail, Continental must prove that Freeport and Phelps Dodge Corporation and Cyprus Amax Minerals Company and Amax Metals Recovery Inc. are all one and the same corporate entity as a matter of law. However, Mr. Medlin never even comes close to contradicting the clear affidavit testimony of Michelle Hughes, Assistant Secretary for Cyprus Amax Minerals Company ("Cyprus Amax"), that Cyprus Amax and Phelps Dodge Corporation are distinct from Freeport. To reiterate, Cyprus Amax merged with and into *a subsidiary* of Phelps Dodge and Phelps Dodge merged with and into *a subsidiary* of Freeport. Affidavit of Michele Hughes, dated May 22, 2008, ¶¶ 7-8 (filed in support of Freeport's Motion to Dismiss or Stay, May 23, 2008).

Indeed, Mr. Medlin's testimony supports this distinctiveness. In the excerpts cited by Continental, Mr. Medlin testified that he was hired to work on a project for Phelps Dodge Corporation, not Freeport (Woodward Affidavit, ¶ 7, Exhibit B at Tr. 11:19-24, Tr. 12:2-5). Mr. Medlin further testified that his work involved Cyprus Amax companies (*Id*. at Tr. 18:6-9). It is unclear what Mr. Medlin meant by his statement that Cyprus Amax was "absorbed" by Phelps Dodge in 1999, *Id*. at Tr. 19:6-7, and that his work included setting up a database for "Phelps

Dodge or Freeport." *Id*. at Tr. 20:17-20.  The original questions prompting these responses were general ones asked by counsel for Freeport and no follow up questions were asked by counsel for any insurer or answered by Mr. Medlin.  Regardless of his intent, Mr. Medlin's testimony about the formal legal relationships among corporations is neither clear nor probative considering that the testimony was not in response to questions about the distinctiveness of the corporate forms.  Mr. Medlin's testimony on this legal issue is certainly is not a proper subject for supplementing the record on Freeport's motion to dismiss the Complaint in this case.[4]

## II.    IF THE COURT CONSIDERS THE SUPPLEMENTAL PAPERS OF CONTINENTAL, IT LIKEWISE SHOULD CONSIDER THE SUPPLEMENTAL PAPERS OF FREEPORT.

### A.    The Opposition of Cyprus Amax Minerals Company, Phelps Dodge Corporation and Amax Metals Recovery Inc To Continental's Motion To Dismiss The California Action Demonstrates That California Is A Convenient Forum To Resolve This Entire Dispute.

In the event the Court wishes to understand with greater particularity the insurers' arguments in favor of *forum non conveniens* dismissal of the California action and the response of Cyprus Amax Minerals Company, Phelps Dodge Corporation and Amax Metals Recovery

---

[4] What is most telling about Mr. Medlin's deposition is that it was attended by both the AMAX Insurers (Continental and Century) as well as the Cyprus Insurers (Continental Casualty Company, Truck Insurance Exchange, The American Insurance Company and Old Republic Insurance Company).  *See* Excerpts from Volumes 1 and 2 of the deposition of Bobby J. Medlin taken on June 23 and 24, 2008 Exhibit B hereto at 2-5; 168-71.  The deposition thus illustrates how discovery in this case and the California case overlaps as a practical matter.  Despite Continental's assertions that the AMAX Insurers and Cyprus Insurers' obligations are based on different "legal instruments," both sets of insurers each questioned Mr. Medlin to support the insurers' joint legal contention that the Document Review costs were not "necessary and reasonable."  *Id.* at 232:18-20 (Counsel for Century Indemnity) and 298:6-8 (Counsel for Truck Insurance Exchange).  Moreover, in contravention of Continental's and Century's argument that New York law applies to this dispute under their policies, Mr. Medlin testified that for purposes of adjusting the Louisiana asbestos claims, the parties (including Continental) have long informally agreed that Louisiana law applies.  *Id.* at 329:2-13.

Inc., to those arguments, the Opposition brief of the plaintiffs in the California action, and the affidavits, exhibits, and cases thereto are attached as Exhibit C hereto.[5]

## **CONCLUSION**

For all the foregoing reasons, Freeport respectfully requests the Court to disregard the supplemental papers filed by Continental or, alternatively, to consider Freeport's supplemental papers in addition to Continental's.

Dated: New York, New York
            August 18, 2008                                          Respectfully submitted,

                                                                          Mark J. Plumer /s/
                                                                          HELLER EHRMAN LLP
                                                                          1717 Rhode Island Avenue, NW
                                                                          Washington, D.C. 20036
                                                                          (202) 912-2000

                                                                          Lisa M. Cirando
                                                                          HELLER EHRMAN LLP
                                                                          7 Times Square
                                                                          New York, New York 10036
                                                                          (212) 832-8300

                                                                          Attorneys for Defendant
                                                                          Freeport-McMoRan Copper & Gold Inc.

DC 417301 v3
(41196.0003)

---

[5]        Two documents filed in the California action and attached as Exhibit C hereto merit specific mention. First, the August 8, 2008 letter from JAMS mediator, retired Justice Howard B. Wiener, California Court of Appeal, acknowledges that mediation with the Cyprus Insurers failed. *See* Declaration of Darren S. Teshima, dated August 13, 2008, Exh. L. Second, Cyprus Amax national coordinating counsel, Michael E. Hutchins, Esq., states in his Declaration, dated August 7, 2008 that he is a resident of Georgia and partner in charge of the Atlanta office of Kasowitz Benson Torres & Friedman LLP. This contradicts assertions that Freeport's national coordinating counsel is located in New York City (*see* Century Indemnity Company's Opposition to Freeport's motion to dismiss, filed June 12, 2008, at 2, 5).

**Comparison of Continental's Evidence in Support
of New York and California Motions**

| Vance Woodward Declaration (California) | Alan Jacobus Affidavit (New York) |
|---|---|
| Exhibit 1:  Complaint for Breach of Contract | Exhibit 1:  Complaint for Breach of Contract |
| Exhibit 2:  Affidavit of Gregory D. Winfree | Exhibit 2:  Affidavit of Gregory D. Winfree |
| Exhibit 3:  Email from Plumer to Jacobus (April 4, 2008) | Exhibit 3:  Email from Plumer to Jacobus (April 4, 2008) |
| Exhibit 4:  Complaint, *Century Indem. Co. v. Freeport,* 08 CV 0212 (PKL) (S.D.N.Y. February 28, 2008) | Exhibit 4:  Complaint, *Century Indem. Co. v. Freeport*, 08 CV 0212 (PKL) (S.D.N.Y. February 28, 2008) |
| Exhibit 5:  Letter from Peters to Dedeyan (December 21, 2007) | Exhibit 5:  Letter from Peters to Dedeyan (December 21, 2007) |
| Exhibit 6:  Letter from Bitter to Plumer (May 13, 2008) | Exhibit 6:  Letter from Bitter to Plumer (May 13, 2008) |
| Exhibit 7:  First Amended Complaint, *Century Indem. Co. v. Freeport*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) | Exhibit 7:  First Amended Complaint, *Century Indem. Co. v. Freeport*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) |
| Exhibit 8:  Letter from Galardi to Peters (February 28, 2008) | Exhibit 8:  Letter from Galardi to Peters (February 28, 2008) |
| Exhibit 9:  Excerpts from Freeport's Form 10-K (December 31, 2007) | Exhibit 9:  Stipulation Extending Time to Respond to Complaint, *Century Indem. Co. v. Freeport*, 08 CV 0212 (PKL) (S.D.N.Y. March 20, 2008) |

# Exhibit A

**Comparison of Continental's Evidence in Support
of New York and California Motions**

| Vance Woodward Declaration (California) | Alan Jacobus Affidavit (New York) |
|---|---|
| Exhibit 1: Complaint for Breach of Contract | Exhibit 1: Complaint for Breach of Contract |
| Exhibit 2: Affidavit of Gregory D. Winfree | Exhibit 2: Affidavit of Gregory D. Winfree |
| Exhibit 3: Email from Plumer to Jacobus (April 4, 2008) | Exhibit 3: Email from Plumer to Jacobus (April 4, 2008) |
| Exhibit 4: Complaint, *Century Indem. Co. v. Freeport,* 08 CV 0212 (PKL) (S.D.N.Y. February 28, 2008) | Exhibit 4: Complaint, *Century Indem. Co. v. Freeport*, 08 CV 0212 (PKL) (S.D.N.Y. February 28, 2008) |
| Exhibit 5: Letter from Peters to Dedeyan (December 21, 2007) | Exhibit 5: Letter from Peters to Dedeyan (December 21, 2007) |
| Exhibit 6: Letter from Bitter to Plumer (May 13, 2008) | Exhibit 6: Letter from Bitter to Plumer (May 13, 2008) |
| Exhibit 7: First Amended Complaint, *Century Indem. Co. v. Freeport*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) | Exhibit 7: First Amended Complaint, *Century Indem. Co. v. Freeport*, 08 CV 0212 (PKL) (S.D.N.Y. May 9, 2008) |
| Exhibit 8: Letter from Galardi to Peters (February 28, 2008) | Exhibit 8: Letter from Galardi to Peters (February 28, 2008) |
| Exhibit 9: Excerpts from Freeport's Form 10-K (December 31, 2007) | Exhibit 9: Stipulation Extending Time to Respond to Complaint, *Century Indem. Co. v. Freeport*, 08 CV 0212 (PKL) (S.D.N.Y. March 20, 2008) |

Exhibit B

1                         (Continued)
2      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
3      CENTURY INDEMNITY COMPANY,                    INDEX NO.
       AS SUCCESSOR TO CCI INSURANCE      08 CIV. 02012 (PKL)
4      COMPANY, AS SUCCESSOR TO
       INSURANCE COMPANY OF NORTH
5      AMERICA and THE CONTINENTAL
       INSURANCE COMPANY,
6
               Plaintiffs,
7
           v.
8
       FREEPORT-MCMORAN COPPER &
9      GOLD, INC., AS THE CLAIMED
       SUCCESSOR TO PHELPS DODGE
10     CORPORATION, AS THE CLAIMED
       SUCCESSOR TO CYPRUS AMAX
11     MINERALS COMPANY, AS THE
       CLAIMED SUCCESSOR TO AMAX,
12     INC., AS SUCCESSOR TO AMERICAN
       METAL CLIMAX, INC.,
13
               Defendants.
14
15
               **************************************
16
               ORAL AND VIDEOTAPED DEPOSITION OF
17
                      BOBBY J. MEDLIN
18
                       VOLUME I
19
                      CONFIDENTIAL
20
                     JUNE 23, 2008
21
               **************************************
22
23
24
25

Confidential

1                    (Continued)

2

3

4             ************************************

5             ORAL AND VIDEOTAPED DEPOSITION OF

6                    BOBBY J. MEDLIN

7                      VOLUME I

8                   CONFIDENTIAL

9                 JUNE 23, 2008

10            ************************************

11

12

13

14      ORAL AND VIDEOTAPED DEPOSITION OF BOBBY J. MEDLIN,

15  produced as a witness at the instance of the PLAINTIFFS,

16  CYPRUS AMAX MINERALS COMPANY, PHELPS DODGE CORPORATION,

17  and AMAX METALS RECOVERY, INC., and duly sworn, was

18  taken in the above-styled and numbered cause on JUNE 23,

19  2008, from 10:07 a.m. to 3:06 p.m., before Aubrea

20  Hendricks, CSR, RPR, CLR, in and for the State of Texas,

21  reported by machine shorthand, at the offices of Cotten

22  Schmidt, 420 Throckmorton Street, Suite 500, in the City

23  of Fort Worth, State of Texas, pursuant to the Notice

24  and the provisions stated on the record or attached

25  hereto.

Confidential

```
1                  A P P E A R A N C E S
2
3      FOR CYPRUS AMAX MINERALS COMPANY, PHELPS DODGE
       CORPORATION, AMAX METALS RECOVERY, INC., and
4      FREEPORT-McMORAN COPPER & GOLD, INC.:
              Ms. Lisa M. Cirando, Esq.
5             HELLER EHRMAN, LLP
              Times Square Tower
6             7 Times Square
              New York, New York 10036-6524
7
8
       FOR THE DEFENDANT, THE CONTINENTAL INSURANCE COMPANY:
9             Mr. Alan P. Jacobus, Esq.
              CARROLL, BURDICK & McDONOUGH, LLP
10            44 Montgomery Street, Suite 400
              San Francisco, California 94104-4606
11
12
       FOR THE DEFENDANT, CENTURY INDEMNITY COMPANY
13     ("CENTURY"):
              Mr. Shane Heskin, Esq.
14            WHITE & WILLIAMS, LLP
              1800 One Liberty Place
15            Philadelphia, Pennsylvania 19103-7395
16
17     FOR THE DEFENDANT, CONTINENTAL CASUALTY COMPANY:
              Mr. Shay Gilmore, Esq. (Telephonically)
18            CARROLL, BURDICK & McDONOUGH, LLP
              44 Montgomery Street, Suite 400
19            San Francisco, California 94104-4606
20
21     FOR THE DEFENDANT, OLD REPUBLIC INSURANCE COMPANY and
       TRUCK INSURANCE EXCHANGE:
22            Mr. George Soares, Esq.
              GORDON & REES, LLP
23            101 W. Broadway, Suite 2000
              San Diego, California 92101
24
25
```

Page 5

1          A P P E A R A N C E S (Continued)

2

3    FOR THE DEFENDANT, THE AMERICAN INSURANCE COMPANY:
           Mr. Jeffrey Turkell, Esq. (Telephonically)
4          WILSON & RYAN
           500 N. Brand Blvd., Suite 900
5          Glendale, California 91203

6

7    ALSO PRESENT:  Mr. Gary Payne, Videographer
                    Mr. Daniel Gervais

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 168

1                         (Continued)
2      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
3      CENTURY INDEMNITY COMPANY,              INDEX NO.
       AS SUCCESSOR TO CCI INSURANCE    08 CIV. 02012 (PKL)
4      COMPANY, AS SUCCESSOR TO
       INSURANCE COMPANY OF NORTH
5      AMERICA and THE CONTINENTAL
       INSURANCE COMPANY,
6
                   Plaintiffs,
7
            v.
8
       FREEPORT-MCMORAN COPPER &
9      GOLD, INC., AS THE CLAIMED
       SUCCESSOR TO PHELPS DODGE
10     CORPORATION, AS THE CLAIMED
       SUCCESSOR TO CYPRUS AMAX
11     MINERALS COMPANY, AS THE
       CLAIMED SUCCESSOR TO AMAX,
12     INC., AS SUCCESSOR TO AMERICAN
       METAL CLIMAX, INC.,
13
                   Defendants.
14
15
             *************************************
16
             ORAL AND VIDEOTAPED DEPOSITION OF
17
                      BOBBY J. MEDLIN
18
                        VOLUME II
19
                       CONFIDENTIAL
20
                      JUNE 24, 2008
21
             *************************************
22
23
24
25

Confidential

Page 169

1                          (Continued)

2

3

4              ************************************

5              ORAL AND VIDEOTAPED DEPOSITION OF

6                        BOBBY J. MEDLIN

7                          VOLUME II

8                          CONFIDENTIAL

9                       JUNE 24, 2008

10             ************************************

11

12

13

14        ORAL AND VIDEOTAPED DEPOSITION OF BOBBY J. MEDLIN,

15   produced as a witness at the instance of the PLAINTIFFS,

16   CYPRUS AMAX MINERALS COMPANY, PHELPS DODGE CORPORATION,

17   and AMAX METALS RECOVERY, INC., and duly sworn, was

18   taken in the above-styled and numbered cause on JUNE 24,

19   2008, from 10:01 a.m. to 3:04 p.m., before Aubrea

20   Hendricks, CSR, RPR, CLR, in and for the State of Texas,

21   reported by machine shorthand, at the offices of Cotten

22   Schmidt, 420 Throckmorton Street, Suite 500, in the City

23   of Fort Worth, State of Texas, pursuant to the Notice

24   and the provisions stated on the record or attached

25   hereto.

Confidential

Page 170

```
1                    A P P E A R A N C E S
2
3    FOR CYPRUS AMAX MINERALS COMPANY, PHELPS DODGE
     CORPORATION, AMAX METALS RECOVERY, INC., and
4    FREEPORT-McMORAN COPPER & GOLD, INC.:
          Ms. Lisa M. Cirando, Esq.
5         HELLER EHRMAN, LLP
          Times Square Tower
6         7 Times Square
          New York, New York 10036-6524
7
8
     FOR THE DEFENDANT, THE CONTINENTAL INSURANCE COMPANY:
9         Mr. Alan P. Jacobus, Esq.
          CARROLL, BURDICK & McDONOUGH, LLP
10        44 Montgomery Street, Suite 400
          San Francisco, California 94104-4606
11
12
     FOR THE DEFENDANT, CENTURY INDEMNITY COMPANY
13   ("CENTURY"):
          Mr. Shane Heskin, Esq.
14        WHITE & WILLIAMS, LLP
          1800 One Liberty Place
15        Philadelphia, Pennsylvania 19103-7395
16
17   FOR THE DEFENDANT, CONTINENTAL CASUALTY COMPANY:
          Mr. Shay Gilmore, Esq. (Telephonically)
18        CARROLL, BURDICK & McDONOUGH, LLP
          44 Montgomery Street, Suite 400
19        San Francisco, California 94104-4606
20
21   FOR THE DEFENDANT, OLD REPUBLIC INSURANCE COMPANY and
     TRUCK INSURANCE EXCHANGE:
22        Mr. George Soares, Esq.
          GORDON & REES, LLP
23        101 W. Broadway, Suite 2000
          San Diego, California 92101
24
25
```

Confidential

Page 171

1                A P P E A R A N C E S (Continued)

2

3      FOR THE DEFENDANT, THE AMERICAN INSURANCE COMPANY:

            Mr. Jeffrey Turkell, Esq. (Telephonically)
4           WILSON & RYAN

            500 N. Brand Blvd., Suite 900
5           Glendale, California 91203

6

7      ALSO PRESENT:  Mr. Gary Payne, Videographer

                      Mr. Daniel Gervais

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential

Page 232

1      A.   No.

2      Q.   Okay.  And I guess it's fair to say, then,

3  that you also didn't inform any of the carriers that

4  these documents were being reviewed, coded and analyzed

5  for lead, dust, hearing loss, cadmium, respiratory PE

6  [sic] or natural resources, correct?

7           MS. CIRANDO:  Objection, foundation.

8      A.   Correct.

9           MS. CIRANDO:  Vague as to time.

10     Q.   And when -- when -- in January of 2007 when

11  this project began and -- did you do any analysis, cost

12  benefit analysis of the project?

13     A.   No, we weren't asked to.

14     Q.   Okay.  Do --

15     A.   We probably wouldn't have anyway.  I'm not

16  sure we'd had any information to do a cost benefit

17  analysis.

18     Q.   Well, isn't -- in order for there to be

19  coverage, it has to be -- you -- you agree that it has

20  to be a reasonable and necessary expense, correct?

21           MS. CIRANDO:  Objection, calls for legal

22  spec -- legal conclusion.

23     A.   No, I don't necessarily agree with that.

24     Q.   You don't -- you don't agree that the costs

25  have to be reasonable and necessary?

Confidential

Page 329

1      A.    No.

2      Q.    Is there any reason, sir -- well, rather, let

3   me ask this question:  You testified that the allocation

4   as between Continental and Century was time on the risk?

5      A.    Right.

6      Q.    Do you understand the basis for that

7   conclusion?

8      A.    Yes.  The basis of that was the agreement that

9   Larry Poling had come to with Prater and I believe it's

10  Jay Borowsky.

11     Q.    And do you know if any particular state's law

12  was taken into account to reach that conclusion?

13     A.    Louisiana.

14            THE VIDEOGRAPHER:  Two minutes, Counsel.

15     Q.    Why did you spend so much time to make sure

16  that you had the correct list of cases with active

17  discovery?

18            MR. HESKIN:  Objection, assumes facts not

19  in evidence.

20     A.    We wanted to make sure that the allocation of

21  those expenses was accurate and that they're -- the

22  cases -- we just wanted to know about all of them that

23  were involved.

24     Q.    Did Mike Hutchins ever object to the document

25  review?

Exhibit C
Part 1 of 5

1

2  JOHN C. ULIN (Bar No. 165524)
   John.Ulin@hellerehrman.com
3  HELLER EHRMAN LLP
   333 South Hope Street
4  Los Angeles, CA 90071
   Telephone: +1 (213) 689-0200
5  Facsimile: +1 (213) 614-1868

6  Attorneys for Plaintiffs
7  CYPRUS AMAX MINERALS COMPANY,
   PHELPS DODGE CORPORATION, AND
8  AMAX METALS RECOVERY INC.

9           SUPERIOR COURT OF CALIFORNIA
10              COUNTY OF LOS ANGELES

11 CYPRUS AMAX MINERALS COMPANY, a    )  Case No.: BC391068
   Delaware corporation, PHELPS DODGE  )
12 CORPORATION, a New York corporation, and )
   AMAX METALS RECOVERY INC., a Delaware )
13 corporation,                        )
                                       )
14                         Plaintiffs,  )  **PLAINTIFFS' OPPOSITION TO**
                                       )  **DEFENDANTS' MOTION TO DISMISS**
15       v.                            )  **ON GROUNDS OF *FORUM NON***
                                       )  ***CONVENIENS***
16 CONTINENTAL CASUALTY COMPANY, et al., )
                                       )
17                         Defendants.  )
                                       )
18                                     )
                                       )
19 ————————————————————              )
                                       )  Case No.: BC198946
20 AND RELATED CROSS-ACTIONS           )
                                       )
21                                     )  Judge: Hon. Victoria G. Chaney
                                       )  Dept.: 324
22 ————————————————————              )

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

COUNTERSTATEMENT OF FACTS ......................................................................... 2

    Corporate History ................................................................................................. 2

    The AMAX Inc. Policies ...................................................................................... 3

    The Underlying Claims ......................................................................................... 3

        A.    The Cyprus Minerals Claims .............................................................. 3

        B.    The AMAX Inc. Claims ...................................................................... 4

    The Current Dispute Over AMRI's Defense Costs .............................................. 4

    The AMAX Insurers' Forum Shopping ............................................................... 5

PROCEDURAL HISTORY ........................................................................................... 5

        A.    The New York Action ......................................................................... 5

        B.    The California Action .......................................................................... 6

LEGAL STANDARD .................................................................................................... 6

ARGUMENT .................................................................................................................. 7

    I.      NEW YORK IS NOT A "SUITABLE" ALTERNATIVE FORUM
           FOR THIS ACTION. ....................................................................................... 7

    II.     THE PRIVATE AND PUBLIC INTEREST FACTORS FAVOR
           CALIFORNIA AS THE PROPER FORUM FOR THIS ACTION ............................. 9

        A.    There Is A Greater Relationship Of The Lawsuit And The
             Parties To California Than to New York ........................................... 9

        B.    California Is More Convenient To The Parties And To
             Witnesses Than New York ................................................................ 12

        C.    The Interests Of Judicial Administration Of This Action Favor
             California Over New York ................................................................. 13

CONCLUSION ............................................................................................................. 15

Heller
Ehrman LLP

i

# TABLE OF AUTHORITIES

**Page**

### Cases

*Aerojet-General Corp. v. Transport Indemnity Co.*
(1997) 17 Cal.4th 38............................................................................................. 1

*Ambassador Ins. Co. v. Truly Nolan of Am., Inc.*
(S.D.N.Y. 1981) 514 F.Supp. 985.......................................................................... 9

*American Cemwood Corp. v. American Home Assurance Co.*
(2001) 87 Cal.App.4th 431................................................................................ 6, 7

*Balttimore Football Club Inc. v. Superior Court*
(1985) 171 Cal.App.3d 352................................................................................. 11

*Century Indemnity Co. v. Bank of America*
(1997) 58 Cal.App.4th 408............................................................................ 11, 12

*Century Indemnity Co. v. Cannery Row Plaza Assoc.*
(Cal.App.Ct., Feb. 28, 2002, No. H021857) 2002 WL317915 ............................ 12

*Century Indemnity Co. v. Hearrean*
(2002) 98 Cal.App.4th 734................................................................................. 12

*Certain Underwriters at Lloyd's London v. Foster Wheeler Corp.*
(N.Y.App.Div. 2006) 36 A.D.3d 17, affd. N.Y. 3d 928 (2007)............................ 14

*Contineal Ins. Co. v. AMAX Inc.*
No. 19737/91 (N.Y. Sup. Ct. June 26, 1992), 6 *Mealey's Litig. Rpts.: Ins.* No.
34 (July 14, 1992).................................................................................................. 5

*Contineal Ins. Co. v. AMAX Inc.*
(N.Y.App.Div. 1993) 192 A.D.2d 391 .................................................................. 5

*Contineal Ins. Co. v. Am. Equity Ins. Co.*
(Cal.App.Ct., Mar. 29, 2006, No. A109642) 2006 WL 787975 .......................... 12

*Contineal Ins. Co. v. CLX Servs.*
(Cal.Super.Ct., Aug. 8, 2002, No. 842426-0) 2002 WL 32307824 ..................... 12

*Contineal Ins. Co. v. Columbus Line, Inc.*
(2003) 107 Cal.App.4th 1190.............................................................................. 12

*Ford Motor Co. v. Ins. Co. of N. America*
(1995) 35 CalApp.4th 604............................................................................. 10, 14

Heller
Ehrman LLP

ii

# TABLE OF AUTHORITIES

**Page**

*Great N. Railway. Co. v. Superior Court*
    (1970) 12 Cal.App.3d 105................................................................ 9, 12, 13

*Hughes v. BCI Int'l Holdings, Inc.*
    (S.D.N.Y. 2006) 452 F. Supp. 2d 290 .......................................... 11

*Ins. Co. of N. America v. EMCOR Group, Inc.*
    (N.Y.App.Div. 2004) 9 A.D.3d 319 ............................................. 8

*International Harvester Co. v. Superior Court*
    (1979) 95 Cal.App.3d. 652 ........................................................... 14

*National Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, P.L.C.*
    (S.D.N.Y. 2004) 319 F.Supp.2d. 352 .......................................... 8

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hick, Muse, Tate & Furst, Inc.*
    (S.D.N.Y., July 10, 2002, No. 02 Civ. 1334) 2002 WL 1482625 .......... 11

*Northrop Corp. v. American Motorists Ins. Co.*
    (1990) 220 Cal.App.3d 1553 ...................................................... 9, 12, 13

*Reich v. Purcell*
    (1967) 67 Cal.2d. 551 ................................................................... 14

*Royal & Sunalliance Ins. Co. v. Resolve Towing & Salvage, Inc.*
    (S.D.N.Y., Dec. 7, 2000, No. 00 Civ. 2473) 2000 WL 1801838 .......... 8

*Southeast. Express Systems v. Southern Guaranty Ins. Co.*
    (1995) 34 Cal.App.4th 1 ............................................................. 10

*Stangvik v. Shiley Inc.*
    (1991) 54 Cal. 3d 744 ................................................................... 6, 9

*State Street Bank and Trust Co. v. Thomas J. Arganese*
    (S.D.N.Y., Mar. 5, 1996, No. 95 Civ. 0440) 1996 WL 97186 .......... 8

*Waller v. Truck Ins. Exchange*
    (1995) 11 Cal.4th 1 ...................................................................... 13

### Statutes

Cal. Civ. Proc. Code § 2026.010 .............................................. 13

Cal. Civ. Proc. Code § 410.30 .................................................. 6, 9

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, CASE NO. BC391068

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Other Authorities**

4

1 William Meade Fletcher et al., <u>Fletcher Cyclopedia of the Law of Private Corporations</u> § 26 (perm. ed., rev. vol. 2007) ........................................................................ 11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, CASE NO. BC391068

# INTRODUCTION

Plaintiffs Cyprus Amax Minerals Company ("Cyprus Amax"), Amax Metals Recovery Inc. ("AMRI") and Phelps Dodge Corporation ("Phelps Dodge") (collectively "Plaintiffs") respectfully oppose the Joint Motion to Dismiss or Stay the Action Based on *Forum Non Conveniens* ("Mot. to Dismiss") filed by Continental Insurance Company ("Continental") and Century Indemnity Company ("Century") (collectively "the AMAX Insurers").

To begin, it is important to place the pending motion to dismiss in proper perspective. The motion is filed by two (out of six) insurer defendants in this insurance coverage case and requests dismissal only as to these two defendants solely on the ground of *forum non conveniens*. These two insurers, the AMAX insurers defined above, historically issued insurance to AMAX Inc., a predecessor of Plaintiff Cyprus Amax, and have filed a separate lawsuit over the same dispute in New York. Although they nowhere explain this in their motion to dismiss, the New York lawsuit was filed solely against an entirely separate corporate entity, Freeport-McMoRan Copper & Gold Inc. The New York lawsuit does not include any of the plaintiffs in this lawsuit: Cyprus Amax, AMRI and Phelps Dodge. The New York lawsuit also does not name any of the other four additional insurer-defendants named in this lawsuit.

Although the AMAX Insurers do their best to distinguish it, the insurance dispute that is the subject of both lawsuits is the same: whether the insurers are obligated to pay defense costs related to the review of certain recently discovered historic documents potentially relevant to pending discovery in ongoing litigations involving bodily injury claims asserted against Cyprus Amax and its subsidiaries and/or alleged predecessors. The documents reviewed were the historical corporate records of AMAX Inc. and Cyprus Minerals Company, which were commingled many years ago after these two corporations merged in the early 1990s to become Cyprus Amax. The identical legal question is presented as to the AMAX Insurers and the non-moving insurer-defendants (the "Cyprus Insurers"), whether the document review costs were "reasonable and necessary" and, therefore, covered defense costs. *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 58.

This is the only court where the entire dispute can be adjudicated. Because of a settlement

reached in 2007 between the four Cyprus Insurers and Cyprus Amax, this dispute by agreement must be litigated in the Los Angeles Superior Court pursuant to California law. Indeed, at the Cyprus Insurers' request, this case has been designated "related" to the prior litigation that gave rise to the 2007 settlement. Because of the settlement and forum selection clause, Cyprus Amax and the Cyprus Insurers cannot be forced to litigate the dispute in New York. A compounding problem for the AMAX Insurers is they cannot even join all necessary AMAX Inc. related entities to the New York action, because the New York court lacks personal jurisdiction over the most important AMAX Inc. party, AMRI.

Upon this backdrop, the AMAX Insurers' motion cannot satisfy the standard for *forum non conveniens* dismissal under California law. First, the New York forum is not a "suitable" alternative because the entire dispute cannot be litigated in New York. Second, the AMAX Insurers cannot meet their burden of proof to demonstrate that California is an inconvenient forum as compared to New York. Finally, this dispute has connections to numerous states, and it is hard to point to one forum whose interests are dominant; this said, the private and public interest factors as applied to this case clearly favor California over New York.

## COUNTERSTATEMENT OF FACTS

Corporate History

AMAX Inc., formerly named American Metal Climax, Inc., purchased liability insurance from Century from at least the 1960's to the mid-1970's and from Continental from the mid-1970's until at least 1986. Decl. of Victoria Bellamy, ¶¶ 4, 6. In 1971, AMAX Inc. formed a subsidiary to purchase and operate a pre-existing but then dormant nickel refinery in Braithwaite, Louisiana. Decl. of Michele A. Hughes, ¶ 4. The subsidiary, originally named Amax Nickel Refining Company Inc., later changed its name to Amax Metals Recovery, Inc. or AMRI. *Id.*, ¶¶ 4-5.

Cyprus Minerals Company is the corporate successor to Cyprus Mines Corporation. *Id.*, ¶ 6. Until 1993, Cyprus Minerals Company was wholly separate from AMAX Inc. During this period of independence, Cyprus Minerals Company and its subsidiaries and predecessors purchased separate insurance from American Insurance Company (at least 1961-64), Continental Casualty Company (at least 1956-1974), Truck Insurance Exchange (at least 1974-80), and Old Republic

1 | Insurance Company (at least 1985-88) (collectively, the "Cyprus Insurers"). Bellamy Decl., ¶ 9.

2 |      In 1993, AMAX Inc. merged into Cyprus Minerals Company; the surviving entity

3 | immediately changed its name to Cyprus Amax Minerals Company, referred to as Cyprus Amax

4 | herein. Hughes Decl., ¶ 6. Cyprus Amax and AMRI remain corporations in good standing, though

5 | they are both now subsidiaries of Phelps Dodge Corporation, which, in turn, is a subsidiary of

6 | Freeport-McMoRan Copper & Gold, Inc. *Id.*, ¶¶ 7-9.

7 | The AMAX Inc. Policies

8 |      Because AMRI was formed in 1971, any claims based on worker's exposure to asbestos at

9 | the AMRI facility would appear to implicate only those policies issued after the facility commenced

10 | operations. On information and belief, the Braithwaite facility began to operate as of

11 | approximately 1973. Decl. of Michael Hutchins, ¶ 3. The policies issued by Century from 1973-75

12 | include the following definition: "'Named Insured' means the person or organization named in the

13 | declarations of this policy and shall include any of its subsidiaries and any other company of which

14 | it assumes active management." Bellamy Decl., ¶ 7. AMRI was a subsidiary of AMAX Inc. during

15 | the period 1973-75. *See* Hughes Decl., ¶¶ 4-6. During this period, AMRI was headquartered in

16 | Louisiana and AMAX Inc. was headquartered in New York. *Id.*, ¶¶ 3 & 5.

17 |      The policies issued by Continental from 1975-86 include an Endorsement that includes a

18 | Schedule of additional Named Insureds, including either "Amax Nickel Refining Co., Inc." or

19 | "AMAX Inc. and "any Subsidiary, Affiliated or Related Company and any other Company coming

20 | under the Named Insured's control of which it assumes active Management." Bellamy Decl., ¶ 5.

21 | During this entire period, AMRI was headquartered in Louisiana and AMAX Inc. was

22 | headquartered in Connecticut. Hughes Decl., ¶¶ 3 & 6.

23 | The Underlying Claims

24 |      A.    The Cyprus Minerals Claims

25 |      The lawsuits affecting the Cyprus Insurers' policies seek damages for bodily injury related

26 | to Cyprus Minerals Company and/or its subsidiaries and alleged predecessors and have been

27 | asserted in multiple states, but the majority of active claims are venued in California (the "Cyprus

28 | Minerals Actions"). Bellamy Decl. ¶ 10. National Coordinating Counsel for these claims is based

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, CASE NO. BC391068

1 in Los Angeles, California.  Decl. of Gregory D. Winfree, ¶ 5.

2         **B.**    <u>The AMAX Inc. Claims</u>

3         The lawsuits affecting the AMAX Insurers' policies seek damages for bodily injury related

4 to AMRI's historic nickel refinery operations in Louisiana.  Hutchins Decl., ¶ 4.  All of the claims

5 are pending against AMRI in Louisiana's courts (the "AMRI Actions").  *Id.*  National Coordinating

6 Counsel for these claims is based in Atlanta, Georgia.  *Id.*, ¶ 2.

7 <u>The Current Dispute Over AMRI's Defense Costs</u>

8         Beginning in February 2007, Phelps Dodge and its subsidiary, Cyprus Amax, commenced a

9 review of certain commingled AMAX Inc. and Cyprus Minerals Company documents, many of

10 which previously were believed to have been destroyed.  Winfree Decl., ¶ 3.  The document review

11 was undertaken in response to outstanding discovery requests in the AMRI Actions and Cyprus

12 Minerals Actions as part of the defense of these actions (the "Document Review").  *Id.*, ¶ 4.

13         The review was necessary to defend the Cyprus Minerals Actions and the AMRI Actions.

14 The claim for defense costs for the Cyprus Minerals Actions is based upon a confidential settlement

15 agreement (the "2007 Agreement") entered into by Cyprus Amax and the Cyprus Insurers.  The

16 2007 Agreement sets out the parties' respective duties and responsibilities towards one another,

17 including the payment of defense costs.  It also provides that any alleged breach of the 2007

18 Agreement shall be enforced in an action in the Los Angeles Superior Court pursuant to California

19 law.  *Id.*, ¶ 7.  The Cyprus Insurers acknowledge that the 2007 Agreement controls this dispute but

20 disagree that the claimed costs are covered by the 2007 Agreement.  Decl. of Darren S. Teshima, ¶

21 2, Exh. A.

22         The claims for defense costs for the AMRI Actions are governed by the insurance policies

23 described *supra*, p. 3:8-16, none of which contain choice of forum or choice of law provisions.

24 Bellamy Decl., ¶¶ 5, 7.  The AMAX Insurers dispute coverage for the Document Review pursuant

25 to their policies.  During pre-suit negotiations over the claim and without warning, the AMAX

26 Insurers filed the New York lawsuit in lieu of providing a commitment or other response to the

27 pending claim discussion.  Bellamy Decl., ¶ 20; Winfree Decl. ¶ 9.

28

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, CASE NO. BC391068

The AMAX Insurers' Forum Shopping

This is not the first time that AMAX Insurers have strategically filed a lawsuit in New York over the same policies in the midst of ongoing negotiations over a claim. Continental did so in 1992 regarding nationwide environmental claims asserted against AMAX Inc. and its subsidiaries. *Continental Ins. Co. v. AMAX Inc.*, No. 19737/91 (N.Y. Sup. Ct. June 26, 1992), *reprinted in 6 Mealey's Litig. Rpts.: Ins.* No. 34, at B-1 (July 14, 1992). Teshima Decl. ¶ 3, Exh. B. AMAX Inc. moved to dismiss the suit in favor of its later-filed lawsuit in Colorado. The New York trial court granted AMAX Inc.'s motion to dismiss. *Id.*, Exh. B. The trial court ultimately found that "special circumstances" favored dismissal of the New York action "in the interest of discouraging forum shopping." *Id.*, Exh. B., pp. 10-11 (focusing on failure to negotiate in good faith). Continental <u>and</u> Century jointly appealed. The New York state appellate court affirmed, chastising the insurers for filing suit without warning during an ongoing negotiation. *Continental Ins. Co. v. AMAX Inc.* (N.Y.App.Div. 1993) 192 A.D.2d 391. The Colorado court ultimately applied Colorado law to the policies issued by the AMAX Insurers. Teshima Decl., ¶ 4, Exh. C.

## PROCEDURAL HISTORY

A.    The New York Action

The AMAX Insurers filed suit against Freeport on February 28, 2008. The AMAX Insurers originally only sought a declaration that the policies they issued to AMAX Inc. did not obligate them to contribute to the costs of the Document Review. Woodward Decl. Exh. 4, ¶26. Freeport sought an extension of time to Answer or otherwise move in New York in order to have sufficient time to mediate with the Cyprus Insurers in California pursuant to the 2007 Agreement and advised the New York Court that it intended to move to dismiss the New York action pursuant to the *Wilton* abstention doctrine and to file a comprehensive action in a more appropriate forum. Teshima Decl., ¶ 5, Exh. D. The New York court allowed Freeport until May 22, 2007 to answer or otherwise move. *Id.*, ¶6, Exh. E. On May 9, 2007 the AMAX Insurers amended their Complaint, adding claims for unjust enrichment and fraud. Woodward Decl., Exh. 7. ¶¶ 1, 41-44, 59-74. Freeport filed its motion to dismiss or stay the New York action on May 23, 2007 and filed a Reply Brief on June 23, 2008. Teshima Decl., ¶¶ 7-8, Exhs. F & G.

B.     The California Action

On April 11, 2008, Plaintiffs asked the Cyprus Insurers to agree to mediate and agree to submit to mediation in any location, with any mediator, on any date, as long as the mediation occurred within 30 days (before the deadline to answer or otherwise move in the New York action). *Id.*, ¶ 9, Exh. H. The Cyprus Insurers refused to mediate on this timetable. *Id.*, ¶ 10, Exh. I. Plaintiffs filed this suit on May 16, 2008, against the two AMAX Insurers and the four Cyprus Insurers.[1] On June 10, 2008, the Cyprus Insurers moved to have this case treated as a "related case" and transferred to the Complex Litigation Program before the Honorable Judge Victoria D. Chaney. *Id.*, ¶ 11, Exh. J. Plaintiffs did not object and the Court granted the motion. *See id.*, ¶ 12, Exh. K. On August 6, 2008, the Cyprus Insurers each answered Plaintiffs' complaint. *Id.*, ¶ 15.[2]

## LEGAL STANDARD

The AMAX Insurers' motion papers accurately recite that California applies a two-step legal test for analyzing a *forum non conveniens* dismissal motion predicated on California's Code of Civil Procedure. Mot. to Dismiss, p. 8 (citing Cal. Civ. Proc. Code § 410.30). First, the Court must determine whether the alternative forum is a suitable place for trial. Second, the Court must balance the private and public interest factors. *Stangvik v. Shiley Inc.* (1991) 54 Cal. 3d 744, 751.

However, in reciting the governing legal standards, the AMAX Insurers leave out that whereas the balancing of convenience factors is left to the sound discretion of the trial court, the "suitability" question is a "nondiscretionary determination." *American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 436. Furthermore, the AMAX Insurers – the moving parties – do not mention that "[o]n a motion for *forum non conveniens*, the defendant, as the moving party, bears the burden of proof." *Stangvik*, 54 Cal.3d at 751.

---

[1]     Plaintiffs and the Cyprus Insurers undertook mediation on July 28, 2008 in Los Angeles before retired Justice Howard Wiener. The parties did not settle. Teshima Decl. ¶ 14, Exh. L.

[2]     Old Republic Insurance Company also filed a cross-complaint. *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, CASE NO. BC391068

Heller
Ehrman LLP

**ARGUMENT**

## I.  NEW YORK IS NOT A "SUITABLE" ALTERNATIVE FORUM FOR THIS ACTION.

The AMAX Insurers cannot meet the first step of the applicable test and cannot demonstrate that New York is a "suitable" alternative forum. New York is unsuitable as a matter of law, because at least five of the nine parties to this California action cannot be joined to the pending New York proceeding, including four of the six defendants.

In *American Cemwood*, the California Court of Appeal considered the language of California's *forum non conveniens* statute, the accompanying Judicial Council commentary, the policies underlying the doctrine and authority from federal cases and determined on this basis that to be "suitable" an alternative forum must be able to accommodate ***all*** of the parties to a pending California litigation. 87 Cal.App.4th at 438-39. The *American Cemwood* Court reasoned as follows:

> The court's discretion to decline to exercise its authorized jurisdiction over an action for considerations of convenience is limited by the proviso that another forum must be available for the plaintiff's action. A rule permitting a stay or dismissal of an action over which no single alternative court could exercise jurisdiction would force the plaintiff to pursue separate actions in multiple states or countries to obtain complete relief. Such a rule, by encouraging piecemeal litigation and blossoming numbers of actions in multiple jurisdictions, would threaten precisely those considerations of convenience, economy and justice the doctrine was designed to bolster.

*Id.*

In this case, it is undisputed that the AMAX Insurers cannot add the four Cyprus Insurers into the New York proceeding, because those insurers and Cyprus Amax have agreed to litigate their dispute in this particular Court pursuant to a negotiated forum selection and choice of law clause contained in the 2007 Agreement, which disposed of litigation in this Court. Winfree Decl., ¶ 7. The AMAX Insurers acknowledge as much in their brief and do not even suggest that they can force the Cyprus Insurers into the New York forum. Mot. to Dismiss, pp. 5 & 11. The relief requested by the AMAX Insurers therefore is limited to a dismissal or stay as to themselves, only. *Id.*, p. 15. Such relief would completely contravene *American Cemwood's* prohibition on creating "piecemeal litigation and blossoming numbers of actions in multiple jurisdictions."

Heller
Ehrman LLP

Moreover, the AMAX Insurers have not sued any of the Plaintiffs in this case in the New York forum, and the New York court does not have jurisdiction over AMRI, a key Plaintiff in this litigation. Woodward Decl., Exhs. 4 & 7. All of the underlying asbestos claims giving rise to the AMAX Insurers' liability arise out of AMRI's operations in Louisiana. *See supra*, p. 4:3-6. Furthermore, AMRI has a great interest in this litigation as it personally is a Named Insured on each of the policies issued by the AMAX Insurers at issue in this case. *See supra*, p. 3:8-22. But, AMRI is a corporation licensed to do business only in Louisiana, *see supra*, p. 2:18-23, and is thus outside the reach of the New York Court's jurisdiction. Dismissing this case and proceeding in New York without AMRI would prejudice AMRI's interests.

The AMAX Insurers argue that despite its limited geographic presence, AMRI can be joined to the New York lawsuit on the authority of *National Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, P.L.C.* (S.D.N.Y. 2004) 319 F.Supp.2d. 352, 358-67 (January decision), which held that by allowing an insurance broker in New York to purchase its insurance, a foreign policyholder subjected itself to personal jurisdiction. Defendants do not mention that a later-decided New York Appellate Division, First Department case, *Insurance Co. of North America v. EMCOR Group, Inc.* (N.Y.App.Div. 2004) 9 A.D.3d 319, 320 (July decision), reached the opposite conclusion. *EMCOR* held that a court lacked jurisdiction over a defendant, one of many related companies insured under the policy at issue, even though the policies were negotiated in New York by the defendant's parent company and insurance broker, noting that "the existence of an agency upon which a finding of jurisdiction may be predicated may not be inferred from the mere existence of a parent-subsidiary relationship." *Id.* Indeed, in *State Street Bank and Trust Co. v. Thomas J. Arganese* (S.D.N.Y., Mar. 5, 1996, No. 95 Civ. 0440) 1996 WL 97186, the judge presiding over the New York action filed by the AMAX Insurers found that the activities of an agent in New York did not constitute sufficient "purposeful availment" to satisfy either the New York long-arm statute or Constitutional due process.[3] *Id.* at * 2.

---

[3]     Several other courts in the Southern District of New York likewise have found an insurance broker-agent's activities insufficient to confer jurisdiction over a foreign policyholder. *See, e.g., Royal & Sunalliance Ins. Co. v. Resolve Towing & Salvage, Inc.* (S.D.N.Y., Dec. 7, 2000, No. 00 Civ. 2473) 2000 WL 1801838 at * 2-3 (finding insurance broker's purchase of insurance sufficient under the New York long-
*(Footnote Continued)*

The AMAX Insurers devote just three sentences in their brief to the "suitability" issue, concluding without citation to any facts or legal authority that "[t]here is no serious dispute that the Southern District of New York is capable of trying the dispute between CIC, Century and Cyprus Amax" Mot. to Dismiss, p. 8. Leaving aside that the AMAX Insurers have not even sued Cyprus Amax in New York, this position is wrong on the facts and the law as demonstrated above.

## II. THE PRIVATE AND PUBLIC INTEREST FACTORS FAVOR CALIFORNIA AS THE PROPER FORUM FOR THIS ACTION.

The AMAX Insurers' motion papers accurately recite the list of private and public interest factors used to analyze a *forum non conveniens* dismissal motion. Mot. to Dismiss, pp. 8-9 (citing *Great N. Railway Co. v. Superior Court* (1970) 12 Cal.App.3d 105 & *Northrop Corp. v. American Motorists Ins. Co.* (1990) 220 Cal.App.3d 1553, 1560. However, the AMAX Insurers' analysis generally is flawed, because it ignores that the "action" in California includes the Cyprus Insurers.[4] Moreover, the parties completely disagree about how the relevant interest factors apply to the facts of this case, which are in many cases disputed. To reiterate, "[o]n a motion for *forum non conveniens*, the defendant, as the moving party, bears the burden of proof." *Stangvik*, 54 Cal.3d at 751.

### A. There Is A Greater Relationship Of The Lawsuit And The Parties To California Than to New York[5]

California is a superior forum for this action considering the relationship of the lawsuit and the parties to the competing fora. The Court indisputably has personal jurisdiction over all of the parties in California, whereas AMRI may not be sued in New York and the Cyprus Insurers may

---

arm statute but constitutionally deficient); *Ambassador Ins. Co. v. Truly Nolan of Am., Inc.* (S.D.N.Y. 1981) 514 F.Supp. 985, 988 (finding broker's purchase of insurance insufficient minimum contacts).

[4] Illustratively, the AMAX Insurers argue, as to the relationship of the lawsuit and the parties to the competing fora, that "California has no connection to the dispute between CIC, Century and Cyprus Amax." Mot. to Dismiss, p. 9. The AMAX insurers go on to make their argument as if the Cyprus Insurers are not parties to this "action." This ignores the governing statute, which allows "an action" to be heard in a forum outside the State in proper circumstances. Cal. Civ. Proc. Code § 410.30.

[5] In *Northrop*, the Court of Appeal concluded that the first category of interest factors includes the following eight *Great Northern* numbered factors: nos. 1, 4, 5, 11, 12, 13, 14 and 19. *Northrop Corp*, 220 Cal.App.3d at 1560 n.3. Plaintiffs address these and the other *Great Northern* factors in the text, as appropriate. Notably, the AMAX Insurers attach these factors as Exhibit 2 to their brief but neither mention nor address most of these factors in their arguments.

1  not be forced to litigate this dispute in New York. *See supra*, pp. 6:1-10, 7:20-8:9. Two of the

2  insurer defendants in this action – American Insurance Company and Truck Insurance Exchange –

3  have their principal places of business in California. Woodward Decl., Exh. 1, ¶¶ 9 & 11. None of

4  the parties have their principal places of business in New York.[6] The underlying actions against the

5  Cyprus Insurers are centered in California. *See supra*, p. 3:25-28. None of the underlying actions

6  or claims are in New York. California has an interest in assuring that insurance is available for

7  California claimants. *See, e.g., Ford Motor Co. v. Ins. Co. of N. America* (1995) 35 CalApp.4th

8  604, 612-14; *Southeastern Express Systems v. Southern Guaranty Ins. Co.* (1995) 34 Cal.App.4th 1,

9  7. New York has no comparable interest considering none of the underlying claims are in New

10  York.

11        There are several points made by the AMAX Insurers not previously responded to that

12  require rebuttal. First, the AMAX insurers are wrong as a matter of fact and law when they claim

13  that "Cyprus Amax, Phelps Dodge, and Freeport are all successors by corporate merger to Amax …

14  and therefore each of the successor entities by merger is also subject to personal jurisdiction" in

15  New York. Mot. to Dismiss, p. 9. As a matter of fact, Phelps Dodge and Freeport are not corporate

16  "successors" of AMAX Inc. Michele Hughes, Assistant Corporate Secretary of Cyprus Amax and

17  Phelps Dodge, attests in her declaration that AMAX Inc. merged into Cyprus Minerals Company to

18  create Cyprus Amax. Thereafter Cyprus Amax merged into *a subsidiary* of Phelps Dodge

19  Corporation, after which Phelps Dodge Corporation merged into *a subsidiary* of Freeport. (Hughes

20  Decl., ¶¶ 7-9). A graphic depicting the proper corporate relationships is attached as Exhibit A to

21  this brief.[7] As a matter of law, "[a] subsidiary corporation is presumed to be a separate and distinct

22  entity from its parent corporation. . . . Accordingly, a parent corporation does not, for reason of

23  owning the stock of a subsidiary, alone, own or have legal title to the assets of the subsidiary." 1

24  William Meade Fletcher et al., <u>Fletcher Cyclopedia of the Law of Private Corporations</u> § 26 (perm.

25

26        [6]    It is irrelevant for purposes of balancing current conveniences that one or more parties
27  historically may have been headquartered in New York. Mot. to Dismiss, p. 10.
         [7]    Plaintiffs dispute the accuracy of the AMAX Insurers' graphic depiction of Cyprus Amax's
28  corporate history which is wholly unsupported by any evidence.

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, CASE NO. BC391068

1  ed., rev. vol. 2007).[8]

2      Second, the AMAX Insurers are wrong about the facts and legal ramifications of the

3  formation of the AMAX Inc policies.  Of the policies issued by the AMAX Insurers relevant to this

4  dispute – the 1973 to 1985 policies – 83% (10 out of 12) were formed outside of New York.  *See*

5  *supra*, p. 3:8-22.  Regardless, New York has already has made clear that the formation of the

6  AMAX Inc. policies did not provide New York a "strong" interest.[9]  As described *supra*, p. 5:6-14,

7  despite the insurers' repeated arguments that the policies were brokered and delivered in New York,

8  the prior case filed by these insurers against AMAX Inc. was transferred out of New York, and

9  Colorado law was applied to the policies based on the principal location of the insured risk in that

10  case.[10]

11

12

13

14

---

15  [8]      Indeed, a federal district court in the Southern District of New York dismissed a parent-policyholder from a lawsuit brought against it by insurers where only its subsidiary's liabilities were at issue.

16  *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hick, Muse, Tate & Furst, Inc.* (S.D.N.Y., July 10, 2002, No. 02 Civ. 1334) 2002 WL 1482625, *4 ("*Hicks Muse*").  The AMAX Insurers' citation to *Hughes v. BCI*

17  *International Holdings, Inc.* (S.D.N.Y. 2006) 452 F. Supp. 2d 290, 301 begs the question since the court found the affected entities had merged into one another and did not consider whether a subsidiary

18  corporation is a "successor."  Here, in contrast, the undisputed fact is that Cyprus Amax did not merge into Phelps Dodge and Phelps Dodge did not merge into Freeport.

19  [9]      *Century Indemnity Co. v. Bank of America* (1997) 58 Cal.App.4th 408, 413 is cited by the

20  AMAX Insurers for the proposition that New York has a strong interest in interpreting policies allegedly formed there.  But *Bank of America* evaluates Hawaii's interests, not New York's.  Moreover, Hawaii had a

21  strong public interest because Bank of America had been sued by the Hawaii insurance commissioner and by the Hawaii Life and Disability Insurance Guarantee Association, and the State of Hawaii had an interest in

22  understanding "whether or to what extent insurance is available for the business practices involved in the marketing of the annuities" at issue.  *Id.* at 408 & 413.

23  [10]      *Baltimore Football Club Inc. v. Superior Court* (1985) 171 Cal.App.3d 352, 364-65 is cited by the AMAX Insurers for the proposition that California courts have no interest in adjudicating disputes

24  among nonresidents governed by foreign law.  Mot. to Dismiss, p. 11.  But in *Baltimore Football Club*, a case considering the propriety of trial court's certification of a nationwide class action, there were no parties

25  to the action who were California residents and California law did not apply to any aspect of the action.

26  That is not the case here, where two of the defendants are California residents and California law applies at least to the 2007 settlement agreement.

27

28

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, CASE NO. BC391068

B.    California Is More Convenient To The Parties And To Witnesses Than New York[11]

The Plaintiffs are headquartered in Arizona (Cyprus Amax and Phelps Dodge) and Louisiana (AMRI). Woodward Decl., Exh. 1, ¶¶ 5-7. The defendants are headquartered in California (American and Truck Exchange), Illinois (Continental and Continental Casualty), and Pennsylvania (Century and Old Republic). *Id.*, ¶¶ 8-13. Thus, two defendants are headquartered in California and the remainder are licensed to do business in California. *Id.* No party is currently headquartered in New York. *Id.*, ¶¶ 5-13. Moreover, two of the three Plaintiffs are headquartered in Phoenix, Arizona, which is approximately 350 miles from the Los Angeles Superior Court courthouse as compared to approximately 2500 miles from the Federal courthouse in New York. Teshima Decl. ¶ 13.[12]

The witnesses capable of shedding light on whether the Document Review was "necessary and reasonable" are presumably the document reviewers (in Arizona), Plaintiffs' claims-handling personnel (in Arizona and Texas) and the national coordinating defense counsel handling the AMAX Inc. claims (Michael Hutchins located in Georgia) and handling the Cyprus Minerals claims (Michael Bailey located in California). Winfree Decl., ¶ 5; Hutchins Decl., ¶ 2. To the extent that the AMAX Insurers argue that defense counsel for Cyprus Amax is in New York, that "fact" is wrong and disputed. Hutchins Decl. ¶ 3. To the extent that the AMAX Insurers argue that the New York broker for the AMAX Inc. policies is relevant, that legal proposition is disputed, because there is no dispute over whether the AMAX Inc. policies were issued or what they say; the

---

[11]    In *Northrop*, the Court of Appeal concluded that the second category of interest factors includes the following ten *Great Northern* numbered factors: nos. 2, 6, 8 9, 10, 16, 17, 18, 23 and 25. *Northrop Corp*, 220 Cal.App.3d at 1560 n.3.

[12]    The AMAX Insurers suggest that Cyprus Amax will not be prejudiced by litigating in New York considering that it has filed several non-insurance related cases in New York. Although this argument is not among the 25 Great Northern factors, if it matters both AMAX Insurers have filed coverage cases in California and thus similarly would not be prejudiced by litigating in California. *Continental Ins. Co. v. American Equity Ins. Co.* (Cal.App.Ct., Mar. 29, 2006, No. A109642) 2006 WL 787975; *Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190; *Continental Ins. Co. v. CLX Servs.* (Cal.Super.Ct., Aug. 8, 2002, No. 842426-0) 2002 WL 32307824; *Century Indemnity Co. v. Hearrean* (2002) 98 Cal.App.4th 734; *Century Indemnity Co. v. Cannery Row Plaza Assoc.* (Cal.App.Ct., Feb. 28, 2002, No. H021857) 2002 WL317915; *Century Indemnity Co. v. Bank of America, FSB* (1997) 58 Cal.App.4th 408.

Heller Ehrman LLP

12

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, CASE NO. BC391068

only dispute as to the policies is what they mean, which is a legal issue. *E.g., Waller v. Truck Ins. Exchange* (1995) 11 Cal.4th 1, 18. The subpoena power of the U.S. District Courts pursuant to Federal Rule 45 is broader than the power afforded to any state court, including California's. It does not automatically follow that jurisdiction in state court is *forum non conveniens* in comparison to any action filed in federal court. Indeed, California courts may issue commissions to allow discovery and depositions outside the Court's subpoena range, a process regularly utilized and accepted by state courts throughout the United States. *See* Cal. Civ. Proc. Code § 2026.010.[13]

C.    **The Interests Of Judicial Administration Of This Action Favor California Over New York**[14]

The Great Northern factors related to "judicial administration" also favor California over New York. This is because the most important factor is the "avoidance of multiplicity of actions and inconsistent adjudications." *See supra*, p. 7:7-19. Granting the AMAX Insurers' motion would directly contravene this public interest factor.[15] The remaining factors are mostly neutral. Both fora are "available" (*i.e.*, the same causes of actions can be asserted in both courts). Both fora are congested and the AMAX Insurers have not even attempted to prove that California is more congested than the Southern District of New York. Motion to Dismiss, pp. 13-15. Indeed, the AMAX Insurers concede that "[b]oth the New York federal court and this Court will provide a fair trial." Mot. to Dismiss, p. 15. Finally, judgments entered in either California or New York will be enforceable.

The AMAX Insurers misapprehend the conflicts of law analysis. The question is not what

---

[13]    To avoid any alleged harm to the AMAX Insurers, Plaintiffs will consent to any requirement set by the Court to make witnesses and documents of their employees, consultants and outside lawyers available to the same extent as they would be available under Federal Rule 45.

[14]    In *Northrop*, the Court of Appeal concluded that the third category of interest factors includes the following seven *Great Northern* numbered factors: nos. 3, 7, 15, 20, 21, 22 and 24. *Northrop Corp.*, 220 Cal.App.3d at 1560 n. 3.

[15]    Strikingly, the AMAX Insurers argue that litigating this dispute in two separate lawsuits will "avoid multiplicity." Mot. to Dismiss, p. 13. In support of this curious argument, they reason that application by a single court of more than one law and more than one legal instrument constitutes "multiplicity." Unsurprisingly, they cite no authority for this strained interpretation, and California precedent does not support it. The factor identified by the Great Northern court is clear on its face: "The avoidance of *multiplicity of actions* and *inconsistent adjudications.*"

1    law will apply (a choice of law analysis); rather, the question is whether the conflicts or law rules to

2    be applied might cause prejudice. *See International Harvester Co. v. Superior Court* (1979) 95

3    Cal.App.3d. 652, 659-60.  New York applies a "center of gravity" or "grouping of contacts"

4    approach in contract questions focused on the state with "the most significant relationship to the

5    transaction and the parties." *Certain Underwriters at Lloyd's London v. Foster Wheeler Corp.*

6    (N.Y.App.Div. 2006) 36 A.D.3d 17, 21, affd. N.Y. 3d 928.  California applies a "governmental

7    interest" conflict of law test that likewise examines the interests of the parties and the involved

8    states to determine the applicable law.  *Reich v. Purcell* (1967) 67 Cal.2d. 551, 553.  In considering

9    liability insurance contracts like those at issue in this case, both jurisdictions weigh more heavily

10   the principal location of the insured risk if it can be determined. *Foster Wheeler Corp*, 36 A.D.3d.

11   at 21-22; *Ford Motor Co*., 35 CalApp.4th at 614.  Application of a similar conflicts of law rules by

12   either court will not "prejudice" any party.[16]

13        While this lawsuit – like every lawsuit – will burden some court system and a jury in some

14   jurisdiction, it is not unjust to burden California considering that the majority of Cyprus Minerals

15   bodily injury claims are venued in California, two of the defendants are headquartered in

16   California, and this case grows out of a related case venued in California from which the 2007

17   settlement arose.  New York has no connection except that it the home of a historic insurance

18   broker in a case where there is no dispute that the policies were issued and no dispute over the

19   wording of the policies apart from the legal issue of what the words mean.

20                                    **CONCLUSION**

21        For all the foregoing reasons, the Court should deny the AMAX Insurers' motion to

22   dismiss on grounds of *forum non conveniens* and allow this comprehensive action to go forward in

23

---

24        [16]    Plaintiffs dispute that application of either test will result in the application of New York
25   law and reiterate that the last time the AMAX Insurers filed suit against AMAX Inc in New York, Colorado
     law was applied to the same insurance contracts. *See supra*, p. 5:1-14.  The likely principal location of the
26   insured AMRI risk in this case is the nickel refinery in Louisiana.  All of the claims arise out of that facility
     and all of the claims are pending in Louisiana, *supra*, p. 4:2-5.  A court performing a choice of law analysis
27   could well find Louisiana the principal location of the insured risk.  Alternatively, many of the relevant
     policies were issued in Connecticut, *see supra*, p. 3:21-22, making Connecticut a more likely "center of
28   gravity" than New York were a court to decide Louisiana is not the principal location of the insured risk.

1    a single court with all of the relevant parties.

2    August 14, 2008                 Respectfully submitted,

3

4                                HELLER EHRMAN LLP

5                          By   _John C. Ulin   M/D/B_

6                                JOHN C. ULIN (BAR NO. 165524)
                                Attorneys for Plaintiffs
                                CYPRUS AMAX MINERALS COMPANY,

7                                 PHELPS DODGE CORPORATION AND AMAX
                                METALS RECOVERY INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



Corporate History – Phelps Dodge, Cyprus Amax, AMRI

1   JOHN C. ULIN (Bar No. 165524)
    John.Ulin@hellerehrman.com
2   HELLER EHRMAN LLP
3   333 South Hope Street
    Los Angeles, CA 90071
4   Telephone: +1 (213) 689-0200
    Facsimile: +1 (213) 614-1868
5
    Attorneys for Plaintiffs
6   CYPRUS AMAX MINERALS COMPANY,
    PHELPS DODGE CORPORATION, AND
7   AMAX METALS RECOVERY INC.

8                   SUPERIOR COURT OF CALIFORNIA
9                     COUNTY OF LOS ANGELES

10  CYPRUS AMAX MINERALS COMPANY, a      )   Case No.: BC391068
    Delaware corporation, PHELPS DODGE   )
11  CORPORATION, a New York corporation, and )
12  AMAX METALS RECOVERY INC., a Delaware )   **APPENDIX OF NON-CALIFORNIA**
    corporation,                         )   **AUTHORITIES SUBMITTED WITH**
13                                       )   **PLAINTIFFS' OPPOSITION TO**
                          Plaintiffs,    )   **DEFENDANTS' MOTION TO DISMISS**
14                                       )   **ON GROUNDS OF *FORUM NON***
                                         )   ***CONVENIENS***
15       v.                              )
                                         )
16  CONTINENTAL CASUALTY COMPANY, et al., )
                                         )
17                        Defendants.    )
    _____ )
18  AND RELATED CROSS-ACTIONS            )   Case No.: BC198946
19                                       )
                                         )
20                                       )   Judge: Hon. Victoria G. Chaney
                                         )   Dept.: 324
21                                       )
                                         )
22                                       )
    _____ )
23
24
25
26
27

Heller
Ehrman LLP   28

1

APPENDIX OF NON-CALIFORNIA AUTHORITIES

2

**Tab No.**

3

*Ambassador Ins. Co. v. Truly Nolan of Am., Inc.*

4

    (S.D.N.Y. 1981) 514 F.Supp. 985 ................................................................................. 1

5

*Continental Ins. Co. v. AMAX Inc.*

    (N.Y.App.Div. 1993) 192 A.D.2d 391 ........................................................................... 2

6

*Ins. Co. of N. Am. v. EMCOR Group, Inc.*

7

    (N.Y.App.Div. 2004) 9 A.D.3d 319 ............................................................................... 3

8

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hick, Muse, Tate & Furst, Inc.*

9

    (S.D.N.Y., July 10, 2002, No. 02 Civ. 1334) 2002 WL 1482625 ................................. 4

10

*Royal & Sunalliance Ins. Co. v. Resolve Towing & Salvage, Inc.*

    (S.D.N.Y., Dec. 7, 2000, No. 00 Civ. 2473) 2000 WL 1801838 .................................. 5

11

*State Street Bank and Trust Co. v. Thomas J. Arganese*

12

    (S.D.N.Y., Mar. 5, 1996, No. 95 Civ. 0440) 1996 WL 97186 ...................................... 6

13

1 William Meade Fletcher et al., <u>Fletcher Cyclopedia of the Law of Private</u>

14

    <u>Corporations</u> § 26 (perm. ed., rev. vol. 2007)............................................................... 7

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX OF NON-CALIFORNIA AUTHORITIES SUBMITTED WITH PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS, CASE NO. BC391068

Tab 1

Westlaw.

514 F.Supp. 985
514 F.Supp. 985
**514 F.Supp. 985**

Page 1

▷Ambassador Ins. Co. v. Truly Nolan of America, Inc.
D.C.N.Y., 1981.

United States District Court, S. D. New York.
AMBASSADOR INSURANCE COMPANY,
Plaintiff,
v.
TRULY NOLAN OF AMERICA, INC., et al.,
Defendants.
**No. 80 CIV. 1235 (CBM).**

May 13, 1981.

Insurer brought suit to recover additional premiums allegedly due. On defendants' motions to dismiss and parties' motions concerning pending discovery, the District Court, Motley, J., held that: (1) where "jurisdiction-conferring" common-law claim was dismissed for lack of personal jurisdiction, dismissal of cross claim against same defendants was appropriate; (2) single transaction involving procurement of insurance policy by agent acting in New York on behalf of individual defendant was insufficient to support jurisdiction over defendant; (3) complaint was sufficient to state claim against the insurance broker; and (4) defendants which had been dismissed had to be subpoenaed before they could be deposed.

Order accordingly.

West Headnotes

**[1] Federal Courts 170B ☞31**

170B Federal Courts
  170BI Jurisdiction and Powers in General
    170BI(A) In General
      170Bk29 Objections to Jurisdiction, Determination and Waiver
        170Bk31 k. Waiver or Consent. Most Cited Cases
Objection by defendants to jurisdictional basis of cross claim against them would have been premature before district court dismissed primary claim against them, and thus defendants did not waive objections to

jurisdiction over them by not objecting to jurisdictional basis of cross claim either in their answer to complaint or their motion to dismiss plaintiff's complaint as to them. Fed.Rules Civ.Proc. Rule 12(b), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ☞1774**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)3 Pleading, Defects In, in General
        170Ak1774 k. Counterclaim. Most Cited Cases
Where "jurisdiction-conferring" common-law claim was dismissed for lack of personal jurisdiction, dismissal of cross claim against same defendants was appropriate. Fed.Rules Civ.Proc. Rule 12(b), 28 U.S.C.A.

**[3] Federal Courts 170B ☞76.15**

170B Federal Courts
  170BII Venue
    170BII(A) In General
      170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
        170Bk76.15 k. Transacting or Doing Business. Most Cited Cases
      (Formerly 170Bk76)
Single transaction involving procurement of insurance policy by agent acting in New York on behalf of individual defendant was insufficient to support jurisdiction over defendant in action by insurer to recover additional premiums allegedly due.

**[4] Federal Civil Procedure 170A ☞1773**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)3 Pleading, Defects In, in General
        170Ak1773 k. Clear or Certain Nature of Insufficiency. Most Cited Cases
Motion testing legal sufficiency of plaintiff's

complaint may not be granted unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of claim. Fed.Rules Civ.Proc. Rule 12, 28 U.S.C.A.

**[5] Insurance 217 ☞3571**

217 Insurance
    217XXXI Civil Practice and Procedure
        217k3571 k. Pleading. Most Cited Cases
    (Formerly 184k41)
Complaint alleging that defendant insurance broker negligently conveyed information to and from plaintiff insurer which formed basis for issuance of insurance policy as well as forming basis for calculations of premiums due from broker's principals alleged viable cause of action for negligent misrepresentation, even if broker was acting on behalf of disclosed principal.

**[6] Federal Civil Procedure 170A ☞1353.1**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(C) Depositions of Parties and Others
Pending Action
            170AX(C)2 Proceedings
                170Ak1353 Subpoena
                    170Ak1353.1 k. In General. Most
Cited Cases
    (Formerly 170Ak1353)
After defendants were dismissed from action and cross claims against them dismissed, they were no longer parties to action and had to be subpoenaed before they could be deposed.

**\*986** Howard S. Davis, New York City, for plaintiff. Baer, Marks & Upham by George H. Colin, New York City for defendants Truly Nolan of America, Inc. and Nozzle Nolan, Inc.
Feinberg, Siff & Herman by Peter S. Herman, New York City, for defendant Euclid Services.
Decker & Cooper by Richard P. Decker, Atlanta, Ga., for defendant William Savich and Associates.

MEMORANDUM OPINION

MOTLEY, District Judge.
Each of the defendants in this action has made a motion to dismiss pursuant to Fed.R.Civ.P. 12(b).

Two of the parties have also filed motions concerning pending discovery. A brief recitation of facts common to all the motions will be followed by individual treatment of each motion.

The Facts

Insofar as they are relevant to the instant motions, the facts of this case are as follows. Truly Nolan of America, Inc., an Arizona corporation, and Nozzle Nolan, Inc., a Florida corporation (the Nolan defendants)**\*987** hired William Savich and Associates (Savich), a Georgia corporation, to obtain certain liability insurance. Savich in turn retained defendant Euclid Services, Inc. (Euclid), a New York corporation and insurance broker, to obtain coverage for the Nolan defendants. Euclid purchased the requested insurance from plaintiff, Ambassador Insurance Company (Ambassador), a New York corporation. After conducting an audit, plaintiff determined that it was allegedly due an additional $27,478.00 in premiums. This suit is an attempt to recover the additional premium allegedly due.

After this action was instituted, Euclid cross-claimed against the Nolan defendants. Subsequent to the filing of the cross-claim, this court dismissed the Nolan defendants from this action. The dismissal was predicated by this court finding that the Nolan defendants did not have sufficient minimum contacts with New York for jurisdiction to be exercised over them consistent with the demands of due process. See Ambassador Insurance Co. v. Truly Nolan of America, Inc., et al., No. 80 Civ. 1235 (August 15, 1980 S.D.N.Y.).

Discussion

1. The Nolan Defendants' Motion to Dismiss the Cross-Claim.

(1) The Nolan defendants have moved for a dismissal of the cross-claim filed against them by Euclid. The motion is based upon this court's prior dismissal of the Nolan defendants from this action for jurisdictional reasons. Euclid's first response is that the Nolan defendants have waived any objections to jurisdiction over them in this action by not objecting to the jurisdictional basis of the cross-claim either in their answer to the complaint or their motion to dismiss plaintiff's complaint as to them. This

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

514 F.Supp. 985
514 F.Supp. 985
**514 F.Supp. 985**

argument is unpersuasive, however, because an objection by the Nolan defendants to the jurisdictional basis of the cross-claim would have been premature before this court dismissed the primary claim against them. The dismissal obviously occurred after the filing of the Nolan's motion to dismiss. It also occurred after the point at which they were required to file an answer to the cross-claim. When made, the cross-claim was clearly proper under Fed.R.Civ.P. 13(g), which provides for the filing of a cross-claim in a responsive pleading without the filing of a complaint, as normally required by Fed.R.Civ.P. 3, or service of process, as otherwise required by Fed.R.Civ.P. 4.

Next Euclid contends that the agency relationship between Euclid and the Nolan defendants constitutes an independent jurisdictional base for the cross-claim. While this may be the case, this question cannot be considered until personal jurisdiction over the Nolan defendants has been obtained by service of process as required by Fed.R.Civ.P. 4. Accordingly, this opinion should not be construed as in any way commenting on whether or not this court would have jurisdiction over a properly commenced action between Euclid and the Nolan defendants.

Finally, Euclid points to a number of cases decided by the New York State courts in support of the proposition that dismissal of the complaint against the Nolan defendants simply converts Euclid's cross-claim into a third-party claim. However, this court does not feel it is necessary to determine the correct disposition of this question under New York law. Instead this court will apply a recent decision of the Second Circuit dealing with the same issue now presented by the instant motion, Federman v. Empire Fire and Marine Insurance, Co., 597 F.2d 798 (2d Cir. 1979) (Federman ).

Federman involved allegations of false and misleading statements contained in a prospectus issued in connection with a public offering of securities. The plaintiffs in Federman sued the issuer, the underwriter, the law firm which helped to prepare the prospectus, and certain individuals within that law firm. Empire, the issuer, cross-claimed against the various co-defendants. Subsequently, a court approved settlement disposed of all the plaintiffs' claims, as well as most of the cross-claims. However, the settlement did not dispose of one of the issuer's

cross-claims, against an individual lawyer (Goldberg) employed in the firm *988 which had prepared the registration statement. After an extended discussion of applicable authority concerning a federal district court's discretionary exercise of pendent jurisdiction, the Second Circuit applied pertinent precedent as follows:

> The entry of the stipulation of settlement resulted in prejudicial dismissal on the merits of Empire's cross-claims against codefendant Sitomer and additional defendant Aschkenasy. Empire's cross-claims against Goldberg for contribution and indemnity merit the same disposition in view of the fact that the settlement eliminated the underlying jurisdictional bases for such claims. The stipulation of settlement also necessitates dismissal of Empire's remaining cross-claims against Goldberg for damages and reimbursement, this being the recommended procedure when the jurisdiction-conferring claim is dismissed prior to trial. The fact that the federal claim was dismissed pursuant to a settlement rather than by judicial determination does not justify the application of a different rule.

597 F.2d at 811 (citations omitted).

(2) Federman is clear authority for dismissal of the Euclid cross-claim against the Nolan defendants. Certainly there is a distinction between Federman and the instant case because the "jurisdiction-conferring claim" there was a federal question while here it is a common law claim based upon diversity jurisdiction.Id. However, this is not a material distinction. The underlying diversity claim by Ambassador served as the jurisdictional basis for Euclid's cross-claims in the same way that the securities claim in Federman served as the basis for the cross-claims there. If anything, dismissal of the cross-claim is more appropriate here, because the underlying claim was dismissed for lack of personal jurisdiction, rather than through a negotiated settlement. Acceptance of Euclid's argument is tantamount to saying that this court can obtain jurisdiction over one claim via another claim over which the court concludes there is no jurisdiction. Since the "jurisdiction-conferring claim" has been dismissed for lack of jurisdiction over the parties, the cross-claim must be dismissed at this time. As indicated above, this dismissal is without prejudice to the filing of a complaint directly by Euclid against

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

514 F.Supp. 985
514 F.Supp. 985
**514 F.Supp. 985**

Page 4

the Nolan defendants.

2. Savich's Motion to Dismiss for Lack of Personal Jurisdiction.

Savich's motion to dismiss for lack of personal jurisdiction is based upon his alleged lack of any sort of continuing contact with the State of New York. Ambassador does not dispute any of Savich's allegations concerning the dearth of contact between Savich and this jurisdiction. Instead, Ambassador points to Savich's dealings with Euclid in connection with the insurance policy at issue as sufficient "minimum contacts" with New York to maintain this action consistent with the requirements of due process. This position must be rejected.

(3) There is still no legal support for the exercise of jurisdiction by this court based upon a single commercial transaction which an out of state corporation initiated in New York through an agent. The cases cited by plaintiff in support of its position are inapposite. The cases cited by plaintiff for the general proposition that the acts of an agent may subject an out of state principal to suit in New York involved agents engaged in continuous and ongoing representation of their out of state principals.[FN1] The agent here, Euclid, is alleged to have engaged in only this single transaction on behalf of Savich, and plaintiff does not contest this allegation.

> FN1. See Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116 (2d Cir.), cert. denied, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1967); Frummer v. Hilton Hotels, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967); Bryant v. Finnish National Airline, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965); Ford v. Unity Hospital, 39 A.D.2d 569,331 N.Y.S.2d 865 (App.Div.1972).

Plaintiff cites only three cases to support its contention that a single act via an agent can subject an out of state plaintiff to suit. In *989Elkan v. Clyde L. Hindman Agency, Inc., 46 Misc.2d 403, 259 N.Y.S.2d 563 (1965), the judge relied upon the delivery of the insurance policy in New York to establish jurisdiction over a foreign corporation. Here the policy was delivered directly to the Nolan defendants outside the State of New York. The next

case, on which plaintiff primarily relies, is Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970) (Parke-Bernet ). However, Parke-Bernet is distinguishable from this case for essentially the same reasons recently set forth by Judge Weinfeld of this Court in distinguishing Parke-Bernet in Empresa Nacional Siderurgica, S.A. v. Glazer Steel, 503 F.Supp. 1064 (S.D.N.Y.1980). As Judge Weinfeld characterized Parke-Bernet :

The court found jurisdiction because the defendant's direct and personal involvement in an ongoing auction sale conducted in New York by telephone from California through a representative present at the auction sale was such that the defendant, "in a very real sense, projected himself into the auction room in order to compete with the other prospective purchasers who were there."

503 F.Supp. at 1066 (footnotes omitted). Thus, while Parke-Bernet in one sense involved only a single transaction, the transaction was of a considerable duration, and the defendant did not actually employ an agent. Instead the whole point of Parke-Bernet is that the defendant's involvement by phone was extensive enough to avoid even needing an agent in New York. The instant facts are obviously different. There appear to have been only a limited number of telephone contacts between Savich and Euclid previous to the issuance of the policy involved in this case.

The third case is a decision by a divided panel of the New York Appellate Term, Second Department, in La Rosa v. Levine, 49 Misc.2d 932, 268 N.Y.S.2d 737 (1966) (La Rosa ). La Rosa is a per curiam affirmance, and the only account of the facts is found in a dissenting opinion joined by two judges. The case involved the application of Section 404(a)(1) of the New York Uniform District Court Act to decide whether a defendant doing business in New York County could properly be sued in Nassau County. Apparently plaintiff, who lived in Nassau County, there communicated directly with defendant, who did business in New York County. Defendant mailed plaintiff an insurance policy, and plaintiff paid for the policy by return mail. No agent was involved in the case, and it is thus inapplicable to our situation. In addition, the insurance policy was delivered in the forum jurisdiction, rather than being delivered

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

514 F.Supp. 985
514 F.Supp. 985
**514 F.Supp. 985**

outside the forum as was done here.

This court's decision to dismiss the complaint against Savich is ultimately based not only on the lack of legal support for plaintiff's position, but on the factual conclusion that Savich has not engaged in sufficient purposeful activity in New York to be subject to suit. See International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159-60, 90 L.Ed. 95 (1945). A number of telephone calls to Euclid by Savich after the issuance of the policy to the Nolan defendants is insufficient activity because all the calls related to the single transaction involving procurement of the one insurance policy involved in this litigation. See Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 587 (2d Cir. 1965). There are insufficient "minimum contacts" between Savich and New York for this court to exercise jurisdiction without violating the requirements of due process.

3. Euclid's Motion to Dismiss for Failure to State a Claim.

(4) Euclid moves to dismiss the claim against it on the grounds that Euclid, acting as an agent for a disclosed principal, cannot be held liable, as a matter of law, to an insurance company which issues a policy to the disclosed principal. Although some confusion about the exact nature of this motion arose during a hearing before this court, the motion is being treated as one for dismissal pursuant to Fed.R.Civ.P. 12. Accordingly, as Euclid's own counsel states in a letter to the court dated March 25, 1981, the motion is solely an attempt to test the legal sufficiency of plaintiff's complaint.*990 As such, the motion may not be granted "unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim."Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).

(5) Put simply, there are "state(s) of facts" which could support the claim as alleged. Paragraph 30 of plaintiff's complaint alleges:

(t)hat upon information and belief, the defendant Euclid negligently conveyed information to and from the plaintiff which formed the basis for the issuance of the aforesaid insurance policy as well as forming the basis for the calculations of the premiums due from Euclid's principals.

(Emphasis added).

The complaint thus alleges negligent misrepresentation by Euclid. Despite Euclid's protestations to the contrary, some courts have held that such negligent misrepresentation is sufficient to hold an agent liable even when the agent involved is acting on behalf of a disclosed principal.[FN2] Euclid's other objections appear to stem from an unacceptably inflexible reading of the complaint. Euclid argues that the complaint does not allege misrepresentation by Euclid of facts to plaintiff, but only to its own principals. Yet the complaint plainly states that the misrepresentations involved were "to and from the plaintiff." Next, Euclid claims that plaintiff has failed to allege reliance. Again, the complaint explicitly states that the allegedly negligently conveyed information "formed the basis" for issuing the insurance policy involved in this litigation. Dismissal of this complaint just because plaintiff failed to use the word "reliance" would be elevating form over substance. Finally, Euclid objects because plaintiff claims in its memorandum opposing the instant motion that Euclid exceeded its authority. This argument is an attempt by plaintiff to avail itself of another recognized exception to the general rule prohibiting findings of liability against agents dealing on behalf of disclosed principals. Euclid's position is correct. The complaint is silent concerning alleged acts by Euclid in excess of its authority. However, plaintiff's incorrect mention of an allegation not found in the complaint is not sufficient ground to grant the motion since, as just described, the complaint does allege a viable cause of action. Euclid's motion to dismiss must be denied.

> FN2. See Home Mutual Insurance Co. v. Broadway Bank and Trust Co., 100 Misc.2d 228, 417 N.Y.S.2d 856 (1979); Midland Insurance Co. v. Markel Service, Inc., 548 F.2d 603 (5th Cir. 1977).

4. Pending Discovery Motions

(6) The pending discovery motions concern plaintiff's attempts to depose the Nolan defendants. Plaintiff has moved for sanctions for failure by the Nolan defendants to comply with notices of deposition. The Nolan defendants have responded by requesting a protective order providing for payment of their travel

514 F.Supp. 985
514 F.Supp. 985
**514 F.Supp. 985**

expenses and legal fees if they are required to attend depositions here in New York. The heart of this discovery dispute lies in the Nolan defendants' contention that they cannot simply be served with notices of deposition, but must also be subpoenaed like any other third party witness. Plaintiff responds that the Nolan defendants are still parties to this action because of the Euclid cross-claims against them. However, as described above, those cross-claims have been dismissed. The dismissal of the Euclid cross-claims moots the present discovery controversy. The Nolan defendants are no longer parties to this action. They must be subpoenaed before they may be deposed. In the event plaintiff resumes its efforts to depose the Nolan defendants, the court observes that a protective order providing for expenses and counsel fees would then be appropriate if plaintiff insisted upon compelling the New York appearance of persons presently living in Florida and Arizona.

Conclusion

For the reasons just given, the motions to dismiss by Savich and the Nolan defendants *991 are granted. Euclid's motion to dismiss is denied. Both pending discovery motions are denied as moot.

SO ORDERED.

D.C.N.Y., 1981.
Ambassador Ins. Co. v. Truly Nolan of America, Inc.
514 F.Supp. 985

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Tab 2

Westlaw.

192 A.D.2d 391

Page 1

192 A.D.2d 391, 596 N.Y.S.2d 370

**(Cite as: 192 A.D.2d 391)**

**H**

**\*391** Continental Insurance Company, Appellant-Respondent,

v.

AMAX Inc., Respondent, and Insurance Company of North America et al.,
Respondents-Appellants, et al., Defendant.

Supreme Court, Appellate Division, First Department, New York

(April 15, 1993)

CITE TITLE AS: Continental Ins. Co. v AMAX Inc.

Order, Supreme Court, New York County (Peter Tom, J.), entered August 31, 1992, which, *inter alia,* granted defendant AMAX's motion to dismiss the action on the grounds of forum non conveniens, and order, same court and Justice, entered October 29, 1992, which denied plaintiff's motion for renewal, unanimously affirmed, without costs.

Notwithstanding the parties' presence in New York and their execution here of the insurance contracts in issue, it was not an improvident exercise of the IAS Court's discretion to dismiss this declaratory judgment action on forum non conveniens grounds, where the underlying dispute as to whether the policies cover certain claims for pollution and toxic waste at various sites will require site-specific proof concerning, *inter alia,* the origin of the emissions giving rise to each claim *(see, Employers Ins. v UniDynamics Corp., 183 AD2d 657,lv denied80 NY2d 757;Avnet, Inc. v Aetna Cas. & Sur. Co., 160 AD2d 463).* Since plaintiff commenced this action at a time when negotiations for settlement of these claims were taking place, we afford plaintiff no benefit from having commenced this action before defendant AMAX commenced its similar Colorado action.

Concur--Murphy, P. J., Ellerin, Wallach and Asch, JJ.

Copr. (c) 2008, Secretary of State, State of New York.

N.Y.A.D.,1993.

Continental Ins. Co. v AMAX Inc.

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Tab 3

Westlaw.

9 AD3d 319                                                                                          Page 1
9 A.D.3d 319, 781 N.Y.S.2d 4, 2004 N.Y. Slip Op. 06181
**(Cite as: 9 A.D.3d 319, 2004 N.Y. Slip Op. 06181)**

**H**
**\*\*1** Insurance Company of North America et al.,
Appellants-Respondents
v
EMCOR Group, Inc., Respondent-Appellant, and
University Mechanical and
Engineering Contractors, Respondent, et al.,
Defendant. Insurance Company of
North America et al., Respondents, v EMCOR
Group, Inc., Appellant, et al.,
Defendants.

Supreme Court, Appellate Division, First
Department, New York

July 22, 2004
CITE TITLE AS: Insurance Co. of N. Am. v
EMCOR Group, Inc.

HEADNOTE
Courts
Jurisdiction
    Long-Arm Jurisdiction

Court properly dismissed complaint as against
defendant, corporation with its principal place of
business in California, on ground that it did not have
sufficient minimum contacts with New York to be
subject to long-arm jurisdiction pursuant to CPLR
302 (a) (1), since insurance policies, pursuant to
which plaintiffs sought declarations that they were
not obligated to defend and indemnify defendant in
action arising in California, were negotiated and
entered into in New York, negotiations were
conducted by defendant's parent company, and
existence of agency upon which finding of
jurisdiction may be predicated may not be inferred
from    mere    existence    of    parent-subsidiary
relationship.

Order, Supreme Court, New York County (Louise
Gruner Gans, J.), entered July 3, 2001, which, inter
alia, granted defendants' motion to dismiss insofar as
to dismiss the complaint as against defendant
University Mechanical and Engineering Contractors
(UMEC) but denied that part of defendants' motion
seeking    dismissal    of    the    complaint    as    against

EMCOR Group, Inc. (EMCOR), unanimously
modified, on the law, to the extent of dismissing the
complaint as against EMCOR, and otherwise
affirmed, with one bill of costs in favor of defendant
EMCOR **\*\*2** payable by plaintiffs. The Clerk is
directed to enter judgment in favor of EMCOR
Group, Inc. dismissing **\*320** the complaint as against
it. Appeal from order, same court and Justice, entered
March 1, 2002, which, to the extent appealed from,
denied EMCOR's motion for leave to renew its
motion to dismiss the complaint as against it,
unanimously dismissed, without costs, as academic in
light of the foregoing.

The court properly dismissed the complaint as
against UMEC, a California corporation with its
principal place of business in California, on the
ground that UMEC did not have sufficient minimum
contacts with New York to be subject to long-arm
jurisdiction pursuant to CPLR 302 (a) (1). UMEC
had no contacts in New York and although the
insurance policies, pursuant to which plaintiffs seek
declarations that they were not obligated to defend
and indemnify UMEC in an action arising in
California, were negotiated and entered into in New
York, the negotiations were conducted by EMCOR,
UMEC's parent company, and EMCOR's insurance
brokerage representative, and the existence of an
agency upon which a finding of jurisdiction may be
predicated may not be inferred from the mere
existence of a parent-subsidiary relationship (see
Frummer v Hilton Hotels Intl., 19 NY2d 533, 538
[1967], cert denied 389 US 923 [1967]). Further
discovery on the jurisdictional issue was not
warranted since plaintiffs did not make a "sufficient
start" in demonstrating that UMEC had the requisite
minimum contacts with this jurisdiction (cf. Peterson
v Spartan Indus., 33 NY2d 463, 467 [1974]).

The complaint as against EMCOR should have been
dismissed for failure to state a cause of action.
Dismissal of plaintiffs' first two claims, seeking
declarations that they had no obligation to defend and
indemnify EMCOR in the California action, is
warranted because EMCOR was not a party to that
action. The third cause of action, seeking
reimbursement from EMCOR, as the parent company
of UMEC, for defense costs and indemnity payments

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

9 AD3d 319                                                                                          Page 2
9 A.D.3d 319, 781 N.Y.S.2d 4, 2004 N.Y. Slip Op. 06181
**(Cite as: 9 A.D.3d 319, 2004 N.Y. Slip Op. 06181)**

incurred in the California action, should also be
dismissed. Because UMEC was a separate named
insured under the subject insurance policies, EMCOR
was not obligated under those policies to reimburse
plaintiffs for UMEC's defense and indemnification in
the California action. Concur--Mazzarelli, J.P.,
Andrias, Sullivan, Lerner and Gonzalez, JJ.

Copr. (c) 2008, Secretary of State, State of New
York.

NY,2004.

Insurance Co. of N. Am. v EMCOR Group, Inc.

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Tab 4

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**2002 WL 1482625 (S.D.N.Y.)**

Page 1

**H**National Union Fire Ins. Co. of Pittsburgh, PA v. Hicks, Muse, Tate & Furst, Inc.
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Plaintiff,
v.
HICKS, MUSE, TATE & FURST, INC. and International Wire Group, Inc., Defendants.
**No. 02 Civ. 1334(SAS).**

July 10, 2002.

Excess liability insurer brought declaratory judgment action against insured corporation and its parent corporation, seeking determination that it was not obligated to provide coverage for corporation's tort liability, in products liability actions by homeowners to recover property damages. Parent corporation removed action to federal court. Parent corporation moved to dismiss. The District Court, 2002 WL 1313293,Scheindlin, J., denied motion. On motion for reconsideration, the District Court, Scheindlin, J., held that: (1) declaratory judgment action against parent was not ripe; (2) allegations against subsidiary did not state claim against parent; and (3) allegations stated claim for declaration voiding excess policy.

Motion granted in part, and denied in part.

West Headnotes

**[1] Declaratory Judgment 118A ⟶165**

118A Declaratory Judgment
    118AII Subjects of Declaratory Relief
        118AII(G) Written Instruments and Contracts
            118AII(G)2 Insurance
                118Ak165 k. Liability or Indemnity Insurance in General. Most Cited Cases
Declaratory judgment action by excess liability insurer against parent of insured corporation seeking no coverage determination for products liability claims filed against insured corporation was not ripe, warranting dismissal, where parent corporation had

not yet received notice of products liability actions against it, and parent corporation had not yet presented any demands for coverage to insurer. U.S.C.A. Const. art 3 § 2, cl.1.

**[2] Declaratory Judgment 118A ⟶317**

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(D) Pleading
            118Ak312 Complaint, Petition or Bill
                118Ak317 k. Insurance. Most Cited Cases
Allegations by excess liability insurer that it was not required to provide coverage to insured corporation for products liability actions by homeowners to recover property damages, did not state action for declaratory judgment against parent corporation of insured corporation, even though parent procured policy, parent was first named insured on policy, parent paid premiums on policy, and parent had 100% ownership of insured corporation.. Fed.Rules Civ.Proc. Rule 12(b)(6).

**[3] Insurance 217 ⟶2998**

217 Insurance
    217XXIV Avoidance
        217XXIV(B) Particular Kinds of Insurance
            217k2998 k. Liability Insurance. Most Cited Cases
Allegations that parent corporation made certain material representations to excess liability insurer in procuring excess liability policy for its insured subsidiary corporation, and that insurer would not have issued policy if not for those material representations, stated claim for declaration voiding the excess policy as to parent corporation and its subsidiary, under either Texas or New York law.

**[4] Federal Civil Procedure 170A ⟶1101**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(N) Striking Pleading or Matter Therein
            170Ak1101 k. In General. Most Cited

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**2002 WL 1482625 (S.D.N.Y.)**

Cases
Plaintiff was not entitled to strike declarations made
by representatives of defendants under federal rule of
procedure, allowing federal court to strike redundant,
immaterial, impertinent or scandalous matter; rule
applied to pleadings only. Fed.Rules Civ.Proc. Rule
12(f).

James E. Carroll, Rory Z. Fazendeiro, Cetrulo &
Capone LLP, New York, NY, for Plaintiff.
David Hird, Peter Antonucci, Konrad L. Cailteux,
Weil, Gotshal & Manges LLP, New York, NY, for
Defendant Hicks Muse.

*AMENDED OPINION AND ORDER*

SCHEINDLIN, J.
**\*1** National Union Fire Insurance Company of
Pittsburgh, Pennsylvania ("National Union") sued
Hicks, Muse, Tate & Furst, Inc. ("Hicks Muse") and
its affiliate International Wire Group, Inc. ("IWG"),
seeking declaratory relief to avoid coverage of IWG's
tort liability.[FN1] Hicks Muse now moves to dismiss
the action against it pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure. For
the reasons set forth below, the motion is granted in
part and denied in part.[FN2]

> FN1. National Union filed this action in the
> Supreme Court of New York, New York
> County, on January 28, 2002. On February
> 20, 2002, Hicks Muse removed the action to
> this Court. Federal jurisdiction is based on
> diversity of citizenship because Hicks Muse
> is a Texas corporation with its principal
> place of business in Texas, and National
> Union is a Pennsylvania corporation with its
> principal place of business in New York.

> FN2. This opinion follows the Court's June
> 13, 2002 ruling on Hicks Muse's motion to
> dismiss, *National Union Fire Ins. Co. v.*
> *Hicks, Muse, Tate & Furst, Inc.,* No. 02 Civ.
> 1334, 2002 WL 1313293 (S.D.N.Y. June 14,
> 2002). On June 27, 2002, Hicks Muse
> moved for reconsideration of that ruling.
> The motion to reconsider is granted, and the
> June 13, 2002 ruling is amended in that it no
> longer reaches the choice-of-law issue.

I. BACKGROUND

A. The Facts

IWG, a corporation created in 1995 by two investor
groups led by Hicks Muse, assembles washing
machine inlet hoses.[FN3] *See* 4/25/02 Amended
Complaint ("Am.Compl.") ¶ 4. Beginning in 1986,
these hoses became the subject of a number of
products liability suits in which individual
homeowners complained of property damage caused
by exploding washing machines. *See id.* ¶ 23. From
1986 to 2002, IWG received approximately 15,000
claims alleging that the inlet hoses were defective.
*See id.* There were 3,200 such claims in the year 2001
alone.[FN4] *See id.* Many of these lawsuits also named
Whirlpool Corporation ("Whirlpool") and General
Electric Corporation ("GE") as defendants because
these companies manufactured the washing machines
at issue and designed the specifications for the hoses
in those machines. *See id.* ¶ 25. Lawsuits were also
filed by insurers for the individual homeowners
seeking subrogation from IWG and its insurers.
*See id.*

> FN3. Hicks Muse holds interests in a variety
> of different businesses. In addition to
> owning 100% of IWG, Hicks Muse has over
> 70 affiliates in industries as varied as real
> estate,        manufacturing,        energy,
> communications and sports industries. *See*
> 1/28/02 Complaint ("Compl.") ¶¶ 2-3, 5;
> Declaration of Marian Brancaccio, General
> Counsel to Hicks Muse ("Bran.Decl."), Ex.
> B to Affirmation of James E. Carroll,
> Plaintiff's Attorney ("Carroll Aff."), ¶¶ 1, 3.

> FN4. The claims, sounding in negligence
> and strict liability, fall into the following
> categories: failure to warn; failure to design,
> fabricate, manufacture, implement, sell or
> supply washing machine hoses and
> component parts in a way that would make
> them safe for their intended use; failure to
> make reasonable inspection; failure to use
> due care in hiring of contractors who
> inspected, assembled or maintained the
> hoses; failure to test the hoses. *See* Am.
> Compl. ¶ 24.

In April 1996, IWG entered into an agreement with
Whirlpool to indemnify and hold Whirlpool harmless

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**2002 WL 1482625 (S.D.N.Y.)**

with respect to hose claims against IWG. *See* Compl. ¶ 19. In May 1998, IWG entered into a similar agreement with GE. *Seeid.* ¶ 20.In August 1998, IWG signed a Claims Resolution Agreement with Allstate Insurance Company ("Allstate") (the "Allstate Agreement") to "resolve all claims arising from the underlying hose claims."*Id.* ¶ 21.*See also* 4/4/02 Plaintiff's Opposition to Motion to Dismiss ("Pl.Opp.") at 4 (agreement was "in settlement of numerous homeowner subrogation claims"). Pursuant to the Allstate Agreement, the homeowners' rights to sue IWG for damage allegedly caused by the hoses were assigned to Allstate. *See* Pl. Opp. at 4.

At some unspecified time, Hicks Muse's insurance broker, Aon Risk Services of Missouri ("Aon"), acting on behalf of Hicks Muse and its affiliates, applied for general liability insurance from National Union. Hicks Muse thereafter obtained two policies from National Union, one covering the period from April 1, 2000 to April 1, 2001, and the other covering the period from April 1, 2001 to April 1, 2002 ("National Union Policies" or "Policies").*See* Compl. ¶¶ 4-6; Bran. Decl. ¶ 8. The National Union Policies covered liability in excess of the coverage provided by two underlying primary policies that IWG had previously obtained from Royal & Sunalliance Insurance Company ("Royal Insurance"). The National Policies "follow" the same "form" as the Royal policies, Am. Compl. ¶ 17, and thus only cover liability that would have been covered by the Royal policies but for exhaustion of payment limits under those policies. *Seeid.* ¶ 15.

**\*2** IWG was among the additional named insureds or "affiliate[s]" listed on, and covered by, the National Union Policies. Bran. Decl. at ¶ 8. Hicks Muse, however, as the first named insured under the Policies, was responsible for paying premiums for itself, IWG and all other named insureds. *See* Policy No. 7017580 ("Policy 1"), Ex. C to Carroll Aff., at 1, 19; Policy No. 7398817 ("Policy 2"), Ex. D to Carroll Aff., at 1, 19. The Policies also contain a "Separation of Insureds" clause which provides in pertinent part: "[T]his insurance applies (1) as if each Named insured were the only Named insured; and (2) separately, to each insured against whom claim is made or suit is brought."Policy 1 ¶ VII.N; Policy 2 ¶ VII.N.

At some point in 2001, IWG tendered the underlying

hose claims and the agreements with Whirlpool, GE and Allstate (the "Agreements") to National Union and demanded coverage under the Policies. *See* Compl. ¶ 23. When National Union's investigation of the claims revealed the extent of the hose claims as well as the existence of the Agreements, it brought this suit against Hicks Muse. Hicks Muse itself, however, unlike IWG, has not presented any hose claim to National Union for coverage. Nor has it been named as a defendant in any lawsuit bringing hose claims, or received notice of any hose claim against it. *See* Bran. Decl. ¶¶ 5-6. In addition, Hicks Muse has not entered into any agreement with Whirlpool, GE or Allstate, or any other third party, in which it agreed to indemnify and hold harmless any third party for hose claims brought against it. *Seeid.*

After National Union filed this action against Hicks Muse in New York, IWG sued National Union in Illinois state court seeking coverage of the hose claims as well as coverage of its obligations to Whirlpool, GE and Allstate. *See* 2/27/02 Defendant's Memorandum in Support of Its Motion to Dismiss ("Def.Mem.") at 4 (citing *International Wire Group, Inc. v. National Union Fire Ins. Co.,* No. 02 Civ 2470 (Cir. Ct. Cook Cty. Ill.)).[FN5] On March 26, 2002, this Court granted National Union leave to amend its complaint to add IWG as a defendant. *See* Pl. Opp. at 1 n. 2. National Union filed its Amended Complaint on April 25, 2002.

> FN5. Hicks Muse is not a party to the Illinois action.

**B. The Amended Complaint**

National Union brings nine causes of action, all of which assert that the *terms* of the Policies preclude coverage of IWG's liability losses.[FN6]After each cause of action, National Union prays for a declaration that: (a) the Policies issued to Hicks Muse do not cover either the hose claims or the Agreements; and (b) National Union has no obligation to defend or indemnify either Hicks Muse or IWG for the hose claims or the obligations arising under the Agreements. *See* Am. Compl. ¶¶ 41-42; 46-47; 53-54; 61-62; 67-68; 73-74; 79-80; 85-86; 90-91.[FN7]The Amended Complaint also contains a request for a declaration that material omissions made by Hicks Muse in the application process for the National Union Policies voids the policies *abinitio.Seeid.* ¶¶

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**2002 WL 1482625 (S.D.N.Y.)**

Page 4

3-4 ("Wherefore" clause).

FN6. National Union claims that the terms of the Policies preclude coverage because: (1) the underlying hose claims and the Agreements are not "occurrences" under the National Union Policies; (2) the primary insurance provided by the Royal policies is not exhausted, and thus IWG does not qualify for excess coverage as provided by the National Union Policies; (3) the underlying hose claims and the obligations under the Agreements brought by IWG are not "fortuitous events," as required by the National Union Policies, but rather are known losses; (4) Hicks Muse and IWG made intentional omissions and misrepresentations regarding the extent and nature of underlying hose claims and Agreements, which is in violation of the National Union Policies' Unintentional Failure to Disclose clause; (5) IWG breached the "Voluntary payment" clause of the National Union Policies by entering into the Whirlpool, GE and Allstate Agreements which constitute voluntary payment for claims; (6) the Whirlpool, GE and Allstate Agreements are not "insured contracts" under the Royal policies; (7) IWG breached the "Supplementary Payment" provision of the Royal policies by waiving critical defenses and contribution claims in the Agreements; (8) IWG's hose claims and obligations in the Agreements fall within the "Property Damage Expected" exclusion clause in the Royal policies; (9) IWG's hose claims and obligations in the Agreements fall within the "Products-Completed Operations Hazards" exclusion in the National Union Policies. Am. Compl. ¶¶ 35-40; 43-45; 48-52; 55-58; 63-66; 75-78; 81-84; 87-89.

FN7. Following the fourth cause of action, National Union also prays for (1) a declaration that Hicks Muse's intentional omission of material information in the application process allows National Union to void the policies; and (2) a declaration that the omission "precludes coverage for IWG ... as well as precludes enforcement by Hicks Muse of the Separation of Insured provision in the National Union policies."Am. Compl. ¶¶ 59-60.These requests are grouped with the others into two claims for declaratory relief. See infra Part III.

## II. LEGAL STANDARD

**\*3** Hicks Muse contends that this Court should dismiss both claims under Rule 12(b)(1) because there is no justiciable controversy between Hicks Muse and National Union, and under Rule 12(b)(6) because National Union does not state a claim against Hicks Muse.

### A. Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. See Marakova v. United States, 201 F.3d 110, 113 (2d Cir.2000). A plaintiff asserting subject matter jurisdiction generally has the burden, once challenged, of proving by a preponderance of the evidence that jurisdiction exists. See id. In resolving a motion to dismiss under Rule 12(b)(1), a court is not limited to the face of the complaint but may consider evidence, including affidavits submitted by the parties. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 n. 6 (2d Cir.2001); Serrano v. 900 Fifth Ave. Corp., 4 F.Supp.2d 315, 316 (S.D.N.Y.1998).

### B. Rule 12(b)(6)

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) "is proper only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' Strougo v. Bassini, 282 F.3d 162, 167 (2d Cir.2002) (quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir.1999)). The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir.2000) (quotation marks omitted). To rule on a 12(b)(6) motion, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**2002 WL 1482625 (S.D.N.Y.)**

nonmoving party's favor. See *Kalnit v. Eichler,* 264 F.3d 131, 137-38 (2d Cir.2001).

III. DISCUSSION

National Union's various causes of action and requests for relief boil down to two claims for declaratory relief: (1) a declaration of no coverage for any inlet hose claim, any liability arising out of the Agreements, and any claim for defense or indemnity brought by Hicks Muse or IWG (the "no coverage declaration"); and (2) a declaration that the Policies are void (the "avoidance declaration"). *See* Pl. Opp. at 7.

A. The No Coverage Declaration

The issues raised by Hicks Muse with respect to the no coverage declaration are: (1) whether the action against Hicks Muse is justiciable with respect to defective hose claims brought by homeowners against Hicks Muse; (2) whether the action against Hicks Muse is justiciable with respect to hose claims brought against IWG; and (3) whether a claim for relief is stated against Hicks Muse.

1. The Action Is Not Ripe with Respect to Coverage of Hose Liability Incurred by Hicks Muse

Because a federal court's power extends only to cases and controversies, *see* U.S. Const. art. III, § 2, cl.1; *Valley Forge Coll. v. Americans United,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1981); *Marchi v. Bd. of Cooperative Educ. Servs. of Albany,* 173 F.3d 469, 478 (2d Cir.1999), "[it] may only be called upon to adjudge the legal rights of litigants in actual controversies...." *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch., Inc.,* 24 F.3d 427, 431 (2d Cir.1994). This case or controversy requirement also applies to declaratory judgment actions (*i.e.,* they must be justiciable). *See* *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 250, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,* 94 F.3d 747, 752 (2d Cir.1996). Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a case or claim is justiciable if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac.*

*Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). *See also* *Olin Corp. v. Consolidated Alum. Corp.,* 5 F.3d 10, 17 (2d Cir.1993).

*\*4 Among other requirements for justiciability, a claim must be ripe for review. See* *Thomas v. City of New York,* 143 F.3d 31, 34 (2d Cir.1998). "The ripeness doctrine protects the government from 'judicial interference until a [ ] ... decision has been formalized and its effects felt in a concrete way by the challenging parties." ' *Id.* (alterations in original) (citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds,* *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). An insurer's effort to defeat coverage is generally not ripe if there is no live claim for coverage by the insured. *See* *MacMillan Inc. v. Fed. Ins. Co.,* 764 F.Supp. 38, 42 (S.D.N.Y.1991). At the very least, there must be a claim against the insured to give rise to an anticipatory lawsuit by a liability insurance carrier. *See* *Nat'l Union Fire Ins. Co. v. Cont'l Illinois Corp.,* 110 F.R.D. 615 (N.D.Ill.1986).

[1] Hicks Muse has not presented any demands for coverage to National Union, nor has it received notice of claims against it for damage caused by the defective hoses. Therefore Hicks Muse currently has no hose liability, and National Union's case for a no coverage declaration as to Hicks Muse's hose liability is not ripe. Accordingly, this claim is not justiciable and must be dismissed pursuant to Rule 12(b)(1).

2. National Union Does Not State a Claim Against Hicks Muse for a No Coverage Declaration as to IWG

[2] Hicks Muse next argues that National Union cannot seek a no coverage declaration against it based solely on the close relationship between Hicks Muse and IWG and Hicks Muse's role in applying for the insurance, where there is no contention that Hicks Muse and IWG are alter egos. National Union maintains that the declaration may be sought against Hicks Muse because Hicks Muse: (1) procured the policy in question; (2) is the first named insured on the policy; (3) pays premiums on the policy; (4) has a 100% ownership interest in IWG; and (5) has several directors and officers in common with IWG. It insists that it need not pierce the corporate veil to seek a no coverage declaration against Hicks Muse as to IWG's

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 6
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**2002 WL 1482625 (S.D.N.Y.)**

liability. *See* Pl. Opp. at 10-11.

National Union has provided no legal support for its argument.[FN8] Indeed, courts in both Texas and New York regard parent and subsidiary corporations as legally distinct, and generally do not treat a contract under the name of one as that of both.[FN9] *See, e.g.,* Carte Blanche (Singapore) Pte, Ltd. v. Diner's Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir.1993); Gibraltar Savings v. LDBrinkman Corp., 860 F.2d 1275, 1286-87, 1290 (5th Cir.1988); Maltz v. Union Carbide Chemical & Plastics Co. 992 F.Supp. 286, 300 (S.D.N.Y.1998); *Davidson v. Time Warner, Inc.,* No. 94 Civ. 006, 1997 WL 405907, at *4-*5 (S.D.Tex. Mar. 31, 1997).

> FN8. The only case National Union cites, Payroll Express Corp. v. Aetna Cas. & Sur. Co., 186 F.3d 196, 207 (2d Cir.1997), held that an insurer could *void* a corporate principal's insurance policy that was obtained by the misrepresentations of its president, without disregarding the corporate form. *See* id. at 207-08. This case is inapposite for two reasons. *First,* National Union is seeking to bind the purported agent, Hicks Muse, not the principal. *Second,* plaintiff is requesting a no-coverage declaration, not a declaration to void the Policies, the remedy sought and obtained in *Payroll.* For a discussion of plaintiff's principal-agent theory as applied to plaintiff's request for a declaration to void the Policies, *see* infra Part III.B.

> FN9. The parties disagree as to whether the laws of Texas or New York apply to this case. *See* infra Part III.B.

There are various exceptions to this rule, *see* Itel Containers Int'l Corp. v. Atlantrafic Exp. Serv. Ltd., 909 F.2d 698, 703 (2d Cir.1990) (holding that the two exceptions in New York are fraud, and use of a subsidiary as an alter ego); Gibraltar, 860 F.2d at 1286 (holding that the three exceptions in Texas are alter ego, illegal purpose and sham to perpetrate a fraud); Davidson, 1997 WL 405907, at *4 (same), but National Union does not allege any of them. In the absence of any other allegation that might lead this Court to disregard the corporate form of the subsidiary, National Union cannot state a claim for a

no coverage declaration against Hicks Muse. Thus, this claim is dismissed pursuant to Rule 12(b)(6).

B. The Avoidance Declaration

*5 National Union argues that because Hicks Muse acted as IWG's agent in procuring the insurance, nondisclosure and misrepresentation by Hicks Muse justifies voiding the entire contract.[FN10]

> FN10. National Union contends that IWG is bound by the misrepresentations of its agent, Hicks Muse, and therefore the Policies are void. However, the issue here is whether National Union can obtain a declaration *against Hicks Muse* that the Policies are void as to IWG (and Hicks Muse). National Union cites non-binding authority in support of its argument. *See* Pl. Opp. at 10-11 (discussing Payroll Express Corp., 186 F.3d at 207, affirming an opinion from this Court applying New Jersey law). The only other case plaintiff cites, *Nationwide Ins. Co. v. Dorch,* No. 94 Civ. 5842, 1996 U.S. Dist. LEXIS 22730, at *5 (S.D.N.Y. Mar. 25, 1996) (not avail. on Westlaw), is not helpful. There the defendant's insurance agent, employed by the insurer, materially misrepresented facts, which the defendant knew to be false. The holding allowing rescission turned not on the principal-agent relationship but rather on the false statements in the application.

The parties disagree as to whether the laws of Texas or New York apply to this case. Hicks Muse argues that Texas law applies because the parties understood the principal location of the insured risks to be in Texas. National Union argues in response that New York law applies because defective hose claims-the only relevant insured risks in this suit-have been brought all over the country, not just Texas, *and* the parties have the greatest contacts with New York. Because the laws of the two states do not differ as applied to the allegations in this lawsuit, the Court need not reach the choice-of-law issue.

In Texas, an insurer may invalidate a policy based on alleged misrepresentations in an insurance application by proving: (1) the making of the representation; (2) the falsity thereof; (3) reliance by

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**2002 WL 1482625 (S.D.N.Y.)**

Page 7

the insurer; (4) the intent to deceive on the part of the insured in making the misrepresentation; and (5) materiality. See*Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 891 (5th Cir.1991); *Mayes v. Mass. Mutual Life Ins. Co.*, 608 S.W.2d 612, 616 (Sup.Ct.Tex.1980). Courts in Texas have stressed that the insurer must prove the insured's intent to deceive in order to invalidate a policy as to that insured. See*Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1492-93 (5th Cir.1992); *Albany Ins.*, 927 F.2d at 891.

Similarly, New York permits a court to void an insurance policy as to all insureds if the policy was procured through material misrepresentation. See*Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan*, 77 F.3d 48, 52 (2d Cir.1996); *American Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.*, No. 94 Civ. 2727, 1997 WL 906427, at *9 (S.D.N.Y. Sept.12, 1997); *Wedtech Corp. v. Fed. Ins. Co.*, 740 F.Supp. 214, 218-19 (S.D.N.Y.1990). A misrepresentation is material where the insurer would not have issued the policy had it known the truth. See*Nationwide*, 1996 U.S. Dist. LEXIS 22730, at *9; see also*Kantor v. Nationwide Life Ins. Co.*, 16 A.D.2d 701, 227 N.Y.S.2d 703, 704 (2d Dep't 1962).

[3] National Union alleges that Hicks Muse made "material representations regarding the hose claims," Am. Compl. ¶ 32, and that "Hicks Muse and/or IWG and/or their agents provided information about the defective hose claims which it knew to be false and misleading to the broker hired by Hicks Muse to obtain the National Union policies," Am. Compl. ¶ 58.[FN11]National Union further alleges that, had Hicks Muse disclosed the full extent of IWG's liabilities, it would not have issued the Policies. Under either Texas or New York law, as set forth above, this pleading suffices to state a claim for relief. See*Fed.R.Civ.P. 8(a)(2)* (requiring only a short and plain statement of the claim); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("Rule 8's simplified pleading standard applies to all civil actions, with limited exceptions [such as fraud]."); *Levesanos v. White*, No. 01 Civ. 8687, 2002 WL 1202472, at *2 (S.D.N.Y. June 4, 2002) (" 'A complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts.' ") (quoting *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir.2002)).[FN12] National Union thus states a claim for

a declaration voiding the Policies as to Hicks Muse and IWG.[FN13]

FN11. Defendant argues that National Union represented to the Court at the March 26 conference that it would not amend its Complaint beyond adding IWG, see 3/26/02 Transcript ("Tr.") at 10-instead, plaintiff added a paragraph to its Amended Complaint regarding misrepresentation. See Def. Mem. at 2 (referring to Am. Compl. ¶ 32); see also Am. Compl. ¶ 58. It is true that plaintiff alleges no misrepresentation whatsoever in its original Complaint against Hicks Muse. See 1/28/02 Complaint Filed in State Supreme Court in New York County, Ex. A to Affirmation of James E. Carroll, Plaintiff's Attorney. At the March 26 conference, counsel for Hicks Muse asked "With respect to Hicks Muse [sic] motion to dismiss, I am assuming the amendments [to the Complaint] are only going to add[ ] IWG?"Tr. at 10. The Court responded, "Yes, I am assuming that, too, because they already made their motion" and asked "They're not amending anything else in the complaint?"Id. National Union responded, "No." Counsel then clarified, "It is just ... to add that to clean up our complaint in the allegations with respect to Hicks Muse filing the application...."Id.The Court then noted that Hicks Muse would be able to respond to anything new in its Reply. Seeid. at 10-11.

Because the standard for allowing leave to amend pursuant to Rule 15 is very liberal, and because defendants were able to respond in their Reply papers, this amendment is permissible.

FN12. It is important to note that National Union does not plead fraud, which requires particularized pleading. See*Fed.R.Civ.P. 9(b)*. Yet, there is nothing in the pleadings concerning when or where the application or submission process took place, who was involved, or what allegedly false information Hicks Muse provided regarding the extent of IWG's hose liability. Most importantly, National Union does not allege that Hicks Muse provided any false

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**2002 WL 1482625 (S.D.N.Y.)**

Page 8

information regarding *the Agreements* between IWG and GE, Whirlpool and Allstate.

FN13. Hicks Muse argues that, at the least, its alleged misrepresentations do not affect IWG, which was separately insured under the Policies. This argument is unavailing because IWG is alleged to have participated in or known of Hicks Muse's alleged misrepresentations in obtaining the insurance. *See* Am. Compl. ¶¶ 32, 58.

## IV. PLAINTIFF'S MOTION TO STRIKE THE DECLARATIONS OF MICHAEL RE AND DAVID HIRD OR, IN THE ALTERNATIVE, TO TAKE DISCOVERY TO REBUT THEIR DECLARATIONS

*6 Defendant submitted the declarations of Michael Re, IWG's Attorney, and David Hird, Hicks Muse's Attorney (the "Declarations") in conjunction with its Reply Memorandum of Law. The Declarations concern, in part, the factual contention that (1) no questions were asked during the application process, and (2) IWG, and therefore Hicks Muse, lacked knowledge of the extent of IWG's hose liability (at the time the Policies were issued). Plaintiff objects to the additional material as irrelevant and prejudicial.

[4] On May 8, 2002, this Court denied, by letter endorsement, plaintiff's request to file a surreply and a motion to strike the Declarations or to request additional discovery. Instead the Court ordered that plaintiff's April 30, 2002 letter, *see* 4/30/02 Letter from James E. Carroll to the Court, be considered a motion to strike or to request discovery, and that Hicks Muse's response, *see* 5/6/02 Letter from David Hird to the Court ("5/6 Def. Ltr."), be considered its opposition.

Rule 12(f) provides that, upon motion by any party, "the court may order stricken from any pleading any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The Second Circuit has stated that district courts should be wary when deciding whether to grant a Rule 12(f) motion on the ground that certain pleading matter is impertinent or immaterial. *See* *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1975); *Lennon v. Seaman,* 63 F.Supp.2d 428, 446 (S.D.N.Y.1999).

Most importantly, Rule 12(f) allows a court to strike *pleadings* only. Declarations and affidavits are not pleadings. *See* Fed.R.Civ.P. 7(a) (defining pleadings as the complaint, answer, counter- and crossclaims); *Sierra v. United States,* No. 97 Civ. 9329, 1998 WL 599715, at *9 (S.D.N.Y. Sept.10, 1998) (denying plaintiff's motion to strike defendant's motion to dismiss because a motion is not a pleading). Thus, plaintiff's motion is denied.

National Union moves, in the alternative, for discovery to rebut the Declarations. National Union, however, has already taken extensive discovery in the Illinois action, where documents have been produced and nine depositions have been taken. *See* 5/6 Def. Ltr. Because additional discovery would unnecessarily protract this litigation, plaintiff's request is denied.

## V. CONCLUSION

For the foregoing reasons, Hick Muse's motion to dismiss the case against it is granted with respect to a no coverage declaration, but denied with respect to a declaration voiding the Policies as to all insureds.

S.D.N.Y.,2002.
National Union Fire Ins. Co. of Pittsburgh, PA v. Hicks, Muse, Tate & Furst, Inc.
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Tab 5

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1801838 (S.D.N.Y.), 2001 A.M.C. 718
**2000 WL 1801838 (S.D.N.Y.)**

Page 1

▷Royal & Sunalliance Ins. Co. v. Resolve Towing & Salvage, Inc.
S.D.N.Y.,2000.

United States District Court, S.D. New York.
ROYAL & SUNALLIANCE INSURANCE CO.,
Gerling Insurance Co. & Albany Insurance Co.,
Plaintiffs,
v.
RESOLVE TOWING & SALVAGE, INC.,
Defendant.
**No. 00 Civ. 2473 RO.**

Dec. 7, 2000.

James W. Carbin, Evan A. Showell, Duane, Morris & Heckscher LLP, Newark, New Jersey, for Plaintiff.
Edward M. Cuddy III, Snow Becker Krauss P.C., New York, New York, for Defendant.

*OPINION & ORDER*

OWEN, J.
*1 Royal and other marine insurance underwriters initiated this diversity and admiralty action for a judgment declaring that the underwriters are under no duty to satisfy a 1998 claim for engine or other damage submitted by Resolve, the owner of various tugs and barges and provider of towage/salvage services in the Caribbean. Defendant now moves to dismiss the complaint for lack of personal jurisdiction or, alternatively, to transfer this action to the United States District Court for the Southern District of Florida. The facts set forth below, based on the pleadings and affidavits, are construed in the light most favorable to Royal with all doubts resolved in its favor. See *Landoil Resources Corp. v. Alexander & Alexander Serv., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990).

Royal is an underwriter of marine insurance with its principal place of business in Charlotte, North Carolina, and also conducts business from its New York offices. Royal and two other New York underwriters, Gerling Insurance and Albany Insurance, issued a combined Marine Hull and Protection and Indemnity policy to Resolve effective

March 30, 1998 to March 30, 1999. The policy covered, in part, against certain risks of hull and machinery damage to the tug "SEAWITCH." Frenkel & Co., an insurance broker licensed and based in New York, was also involved in the procurement and issuance of the policy. In April 1998, the SEAWITCH sustained damages for which Resolve submitted claims to its underwriters, including Royal, that are the subject matter of this litigation. Royal asserts that Frenkel acted as Resolve's agent, transacted business in New York on Resolve's behalf and therefore concludes that this Court has personal jurisdiction over Resolve on the basis of the New York long-arm statute, CPLR § 302(a)(1), which states, "A court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state."

The determination of personal jurisdiction is a two step process. First, I look to the law of the forum state to determine whether the exercise of personal jurisdiction is appropriate. If it is, then I must assess whether such exercise of jurisdiction "comports with the requisites of due process." *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). However, assuming Frenkel's New York brokering activities constitute a prima facie agency relationship with Resolve, thus making application of the New York long-arm statute appropriate, it does not follow *afortiori* that an assertion of personal jurisdiction over this defendant comports with the due process clause. The New York statute casts a wide net by using the word "any" in the phrase "transacts any business." Such broad language provides New York courts with great flexibility to patrol virtually "any" business contact with New York, but also demands adequate case-by-case determinations of whether an assertion of *inpersonam* jurisdiction is appropriate. Not all applications of the net cast by the broad term "any" comport with the tenets of due process-that is, not every application of this broad standard is fair and reasonable. The due process requirement for personal jurisdiction protects a person without *meaningfulties* to the forum state from being subjected to binding judgments within its jurisdiction. See *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996) (emphasis added). A state may only exercise personal

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2000 WL 1801838 (S.D.N.Y.), 2001 A.M.C. 718
**2000 WL 1801838 (S.D.N.Y.)**

jurisdiction over a non-resident defendant with whom it has certain "minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."*SeeFort Knox Music, Inc. v. Baptiste,* 203 F.3d 193, 196 (2d Cir.2000) (internal marks omitted). I must consider the relationship among the defendant, the forum and the litigation in determining whether minimum contacts exist. *Seeid.*

**\*2** Royal must show that its claim arises out of or relates to Resolve's contacts with New York to establish the minimum contacts necessary to justify this "specific" [FN1] assertion of long-arm jurisdiction. *Seeid.* at 243.Royal must, furthermore, show that Resolve "purposefully availed" itself of the privilege of doing business in New York and that Resolve could foresee being "haled into court" in this forum. *Id.* (internal marks omitted).

> FN1. As the Second Circuit, collecting Supreme Court authority, noted in *Metropolitan Life,*"Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."*Metropolitan Life,* 84 F.3d at 567-568 (internal marks omitted). The instant case involves specific jurisdiction because the attempt to exercise jurisdiction over the defendant arises out of and relates to Resolve's employment of a New York insurance broker to obtain a marine insurance policy, and not allegations of a continued course of conduct or general business presence in the forum which would involve general jurisdiction.

The due process inquiry also requires an examination, beyond minimum contacts, of whether an assertion of jurisdiction over a non-resident defendant comports with traditional notions of fair play and substantial justice-that is, whether the exercise of jurisdiction is reasonable under the circumstances of this case. *SeeWiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 99 (2d Cir.2000)

(internal marks omitted). Whether it is reasonable to exercise jurisdiction in a particular case depends, among other things, on: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *SeeChaiken v. VV Publ'g Corp.,* 119 F.3d 1018, 1028 (2d Cir.1997), *cert. denied,*522 U.S. 1149 (1998).

This is the rare case where even if the facts justify an assertion of jurisdiction under the state long-arm statute, such an assertion does not pass constitutional muster because the defendant's relationship with the forum does not satisfy the minimum contacts and reasonableness prongs of the due process inquiry. Resolve did not purposefully avail itself of the opportunity to do business in New York or seek out benefits that would flow from this forum. Defendant simply sought out a marine insurance broker to obtain a policy to cover its activities in international waters and, at best, exercised some control over the broker's actions in New York through telephone calls from Florida. This is not soliciting and negotiating shipping or transportation contracts for Resolve's towage/salvage services in the Carribean or taking reservations from New York customers for passage aboard Resolve's watercrafts. The foregoing activities are the types of business contacts that would render it liable to suit in the forum. *SeeBurger King Corp. v.. Rudzewicz,* 471 U.S. 462, 471-472 (1985) (internal marks omitted). I need not, therefore, decide whether such an assertion of jurisdiction is reasonable because the constitutionally necessary first-tier minimum is lacking. *SeeMetropolitan Life,* 84 F.3d at 569-569 (citing with approval First Circuit decisions holding "[a] reviewing court must first examine the defendant's contacts with the forum. If the [contacts] do not exist in sufficient abundance, that is, if the constitutionally necessary first-tier minimum is lacking, the inquiry ends.").

**\*3** Accordingly, defendant's motion to dismiss the complaint for lack of personal jurisdiction is granted. The temporary restraining order dated November 29, 2000 is hereby dissolved and the hearing on the order to show cause scheduled for December 8, 2000 is

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 3
Not Reported in F.Supp.2d, 2000 WL 1801838 (S.D.N.Y.), 2001 A.M.C. 718
**2000 WL 1801838 (S.D.N.Y.)**

cancelled.

So ordered.

S.D.N.Y.,2000.
Royal & Sunalliance Ins. Co. v. Resolve Towing &
Salvage, Inc.
Not Reported in F.Supp.2d, 2000 WL 1801838
(S.D.N.Y.), 2001 A.M.C. 718

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Exhibit C
Part 2 of 5

Tab 6

Westlaw.

Not Reported in F.Supp.                                                                Page 1
Not Reported in F.Supp., 1996 WL 97186 (S.D.N.Y.)
**1996 WL 97186 (S.D.N.Y.)**

▷State Street Bank and Trust Co. v. Arganese
S.D.N.Y.,1996.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
STATE STREET BANK AND TRUST COMPANY,
Plaintiff,
v.
Thomas J. ARGANESE, et al., Defendants.
STATE STREET BANK AND TRUST COMPANY,
Plaintiff,
v.
James M. ANNIN, et al., Defendants.
**Nos. 95 Civ. 0440 (PKL), 95 Civ. 0442 (PKL).**

March 5, 1996.

<ins>Andrew Berdon</ins>, Parker Duryee Rosoff & Haft, New
York City.
<ins>Seth E. Lipner</ins>, Deutsch & Lipner, Garden City, New
York, for David F. Richardson.
<ins>Toni C. Lichstein</ins>, Milbank, Tweed, Hadley &
McCloy, New York City, for State Street Bank and
Trust Co.

MEMORANDUM ORDER

<ins>LEISURE</ins>, District Judge:
*1 Before the Court are the motions to dismiss of
certain defendants based on lack of personal
jurisdiction. In the Arganese action, defendants
David B. Kaye, M.D., Gerardo L. Yubero, and Lux
Yubero have moved to dismiss for lack of personal
jurisdiction, and in the Annin action, defendant
Sheldon Greenfield has moved to dismiss for lack of
personal jurisdiction (collectively the "moving
defendants"). For the reasons stated below, the
motions are granted.

BACKGROUND

These cases arise out of sale and lease-back
transactions involving airplanes. Defendants are
owners of units of trusts which purchased the
airplanes. The closing of the transactions took place
simultaneously in New York, where plaintiff's
predecessor in interest's lawyers had their offices; in
Hawaii, where the lessee was located; in Oklahoma,

where the FAA was present; in Utah, where the
trustee for the defendants had its offices; and in San
Francisco, where the sponsor of the transaction and
its attorneys were located. Prior to this closing, the
transactions had been substantially negotiated and
nearly finalized, and defendants were offered, by
subscription agreement, an opportunity to purchase
units of the trust and therefore participate in the
transaction to be consummated on substantially the
terms set forth in the offering memorandum.

Defendants signed the subscription agreement on
various dates between December 11, 1985 and
December 19, 1985.<ins>FN1</ins>The subscription agreement
appointed Polaris Investment Management
Corporation ("PIMC"), one of the sponsors of the
trust units, attorney-in-fact for defendants, with the
power to make, execute, endorse, acknowledge,
publish, file, and record any necessary documents to
the transaction. In addition, Polaris Aircraft Leasing
Corporation ("PALC"), the other sponsor, was
allegedly authorized to act as agents for the
defendants. These two entities were represented in
New York between roughly December 15 and
December 27, 1985, during which time PIMC
executed an indenture and deferred purchase
certificates on behalf of the defendants. The
indenture and deferred purchase certificates both
contain choice of law clauses which provide that
New York law will govern. The cause of action is
based on the indenture and deferred purchase
certificates.

DISCUSSION

Absent a specific grant of jurisdiction, the reach of a
federal district court's personal jurisdiction is
coterminous with that of the personal jurisdiction of a
court of general jurisdiction in the state in which the
court sits. See<ins>Fed. R. Civ. P. 4(k)(1)(A)</ins>. Therefore,
whether this Court has jurisdiction over defendants is
determined by whether a New York court would have
personal jurisdiction over defendants. See <ins>A.I. Trade
Finance, Inc. v. Petra Bank, 989 F.2d 76, 80 (2d Cir.
1993)</ins>.

There are two types of jurisdiction, general and
specific. See <ins>Helicopteros Nacionales de Colombia v.</ins>

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 97186 (S.D.N.Y.)
**1996 WL 97186 (S.D.N.Y.)**

_Hall,_ 466 U.S. 408, 414 (1984). With general jurisdiction, the claim need not arise out of the person's contact with the forum state, but the contact with the forum must be more substantial; with specific jurisdiction, the claim must arise out of the person's contacts with the forum, but the contact need not be as substantial. These two types of jurisdiction are reflected both in New York's jurisdictional statutes, _see_ New York Civ. Prac. L. & R. ("CPLR") §§ 301-302, and in the jurisprudence interpreting the Due Process limits of jurisdiction, _see Helicopteros Nacionales,_ 466 U.S. at 414.

I. _General Jurisdiction_

**\*2** There is no allegation that the moving defendants have waived jurisdictional defenses, that they are domiciled in New York, that they were personally served while present in New York, or that they have consented to New York jurisdiction. Therefore, there is no general personal jurisdiction over moving defendants in New York.

II. _Specific Jurisdiction_

Since the moving defendants are not subject to the general jurisdiction of New York, this Court only has jurisdiction over them in these cases if New York's long-arm statute asserts jurisdiction over them and that assertion of jurisdiction comports with Due Process requirements under the circumstances.

A. _Long-Arm Statute_

Under CPLR § 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary if that person or an agent of that person transacts any business within the state or contracts anywhere to supply goods or services within the state, provided the cause of action arises out of those acts. A nondomiciliary transacts business under CPLR § 302(a)(1) when he purposely avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. _See CutCo Indus. v. Naughton,_ 806 F.2d 361, 365 (2d Cir. 1986). Where long-arm jurisdiction is based on the activities of an agent of a defendant in New York, the ultimate issue remains whether that defendant has purposely availed himself of the privilege of conducting activities within New York. Accordingly, the agent must have acted in New York "'for the

benefit of, and with the knowledge and consent of' the non-resident principal." _Id._ at 366 (quoting _Grove Press, Inc. v. Angleton,_ 649 F.2d 121, 122 (2d Cir. 1981)). Thus, activities of an agent that take place in New York by mere fortuity, and without the knowledge of the principal, do not subject the principal to New York's long-arm jurisdiction. Such acts do not constitute a purposeful availment by the principal of the privilege of conducting activities in New York.

In these cases, although PIMC was appointed as attorney-in-fact for defendants, and negotiated and entered into agreements on their behalf in New York, there is no showing by plaintiff that the moving defendants knew that these activities would take place in New York. Nor is there any allegation of other facts that would suggest a purposeful availment by the moving defendants of the privilege of conducting activities in New York. Rather, defendants purchased interests in a business trust with a Utah bank as trustee, designated a California corporation as manager of the trust's business, authorized that management to engage in a sale and lease-back of an airplane to a Hawaiian airline, and authorized that management to enter into a financing arrangement with a consortium of Japanese lenders which had designated a Connecticut bank as mortgagee. None of these acts of the moving defendants constitute purposeful activity directed to New York. The activity that did take place in New York (among other places) -- the closing and final negotiation of the transaction by PIMC -- was not known by the moving defendants to have taken place in New York. Based on the fact that the activities of PIMC, although undertaken on behalf of and with the knowledge of the defendants, were not undertaken _in New York_ with the knowledge of the moving defendants, the Court finds that plaintiff has failed to make a prima facie showing of purposeful availment by the moving defendants. Accordingly, the Court finds that the moving defendants are outside the reach of CPLR § 302(a)(1), and this Court lacks personal jurisdiction over the moving defendants.

B. _Due Process_

**\*3** Even if New York's long-arm statute reached the conduct at issue in these cases, the Court would dismiss the cases on the grounds that the exercise of jurisdiction would violate the Due Process Clause.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*See A.I. Trade Finance,* 989 F.2d at 82. Under the well-established test, the exercise of jurisdiction violates Due Process unless the defendant has minimum contacts with the forum such that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."*International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The "minimum contacts must have a basis in 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"*Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Having found a purposeful availment, the Court considers five factors to determine whether the exercise of jurisdiction comports with notions of fair play and substantial justice: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See id.* at 113.

For the same reasons as stated above, the Court finds that there are no minimum contacts with New York which have their basis in some act by the moving defendants by which they purposely availed themselves of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. The acts undertaken on their behalf by PIMC and PALC in New York were not known by the defendants to have taken place in New York. Instead, the closing might have taken place anywhere, and took place in New York fortuitously. None of the major participants to the transaction were New Yorkers, and the subject matter of the transaction had no necessary connection to New York.

Even if there were minimum contacts with New York, the Court would find that the character of those contacts is such that the exercise of jurisdiction would not comport with notions of fair play and substantial justice. The burden on the moving defendants of litigating in New York is fairly high, the interests of the forum state are negligible, the plaintiff's interest in obtaining relief is not implicated

because the plaintiff can litigate in the moving defendants' home states, the interstate judicial system's interest in obtaining the most efficient resolution of controversies weighs in favor of jurisdiction in a single forum, but not necessarily New York, and the shared interest of the several states in furthering fundamental substantive social policies adds no weight to the exercise of jurisdiction in New York. The consideration of the five *Burger King* factors thus reveals that the connection to New York is attenuated, and the exercise of jurisdiction over the moving defendants would be unfair. Accordingly, the Court would find that the exercise of jurisdiction over the moving defendants would violate the Due Process Clause.

CONCLUSION

*4 For the reasons stated above, the Court HEREBY GRANTS the motions to dismiss of the moving defendants, and dismisses the actions as against them. The Court also declines plaintiff's request that the Court deny the motions to dismiss and allow plaintiff to conduct discovery in aid of determining the New York contacts of the moving defendants.

SO ORDERED.

> FN1. Defendant Greenfield did not date his subscription agreement, but it was notarized on December 24, 1985.

S.D.N.Y.,1996.
State Street Bank and Trust Co. v. Arganese
Not Reported in F.Supp., 1996 WL 97186 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# Tab 7

Westlaw.

Fletcher Cyclopedia of the Law of Corporations
Current through September 2007 update

William Meade Fletcher

Chapter 2. THE CORPORATE ENTITY OR PERSONALITY
I. NATURE OF THE CORPORATE ENTITY

§ 26. Corporation distinct from shareholders, directors and officers—Subsidiary and affiliated corporations

**West's Key Number Digest**

West's Key Number Digest, Corporations ☞1.3, 1.5(3)

A "subsidiary corporation" is one that is controlled by another corporation by reason of the latter's ownership of at least a majority of the shares of the capital stock. A subsidiary corporation is presumed to be a separate and distinct entity from its parent corporation.[FN1] This rule applies even where one corporation wholly owns another.[FN2] The rule applies also where several corporations own all of the stock of a subsidiary.[FN3] The mere ownership of the capital stock of one corporation by another does not create an identity of corporate interest between the two companies, or create the relationship of principal and agent, or representative, or alter ego between the two.[FN4] A corporation, just as an individual, is entitled to the benefits of limited liability if it chooses to invest in the securities of other corporations and may exercise the control that inheres in stock ownership.[FN5] A parent corporation does not lose the benefits of limited liability by taking an active interest in the affairs of its subsidiary, by using its voting power to elect directors, or by entering into contracts with the subsidiary, so long as the corporate formalities are observed.[FN6]

Accordingly, a parent corporation does not, for reason of owning the stock of a subsidiary alone, own or have legal title to the assets of the subsidiary.[FN7] This rule applies equally to the subsidiaries of a subsidiary.[FN8] Similarly, affiliated corporations are separate and distinct from one another regardless of whether they have common shareholders, directors or officers.[FN9]

[FN1]

**United States**

Benton v. Cameo Corp., 375 F3d 1070 (CA10 2004); Mellon Bank N.A. v. Metro Communications, Inc., 945 F2d 635 (CA3 1991); MSF Holding Ltd. v. Fiduciary Trust Co. International, 435 F Supp 2d 285 (SD NY 2006) (applying New York law); Koken v. Pension Benefit Guaranty Corp., 383 F Supp 2d 712 (ED Pa 2005) (applying Pennsylvania law); Noble v. Rural Community Insurance Services, 303 F Supp 2d 1279 (MD Ala 2004) (applying Alabama law); Worsham v. Provident Cos., Inc., 249 F Supp 2d 1325 (ND Ga 2002) (applying Georgia law); Pulte Home Corp., Inc. v. Ply Gem Industries, Inc., 804 F Supp 1471 (MD Fla 1992) (applying Michigan law); Boyle v. Jacor Communications, Inc., 799 F Supp 811 (SD Ohio 1992) (applying New York law).

**Alabama**

Noble v. Rural Community Insurance Services, 303 F Supp 2d 1279 (MD Ala 2004).

**Delaware**
Allied Capital Corp. v. GC-Sun Holdings, L.P., 910 A2d 1020 (Del Ch 2006).

**Georgia**
Reeves v. Mohawk Factoring, Inc., 261 Ga App 629, 583 SE2d 487 (2003).

**Illinois**
In re Rehabilitation of Centaur Ins. Co., 238 Ill App 3d 292, 606 NE2d 291 (1992) (parent and wholly owned subsidiary as distinct entities absent fraud).

Corporation is an entity separate and distinct from its shareholders and from other corporations with which it may be connected. Beatrice Foods Co. v. Illinois Ins. Guar. Fund, 122 Ill App 3d 172, 460 NE2d 908.

**Indiana**
Greater Hammond Community Services, Inc. v. Mutka, 735 NE2d 780 (Ind 2000).

**Louisiana**
In re New Orleans Train Car Leakage, 690 So 2d 255 (La App 1997).

**Michigan**
Ross Auto Club Group, 269 Mich App 356, 711 NW2d 787 (2006).

Pulte Home Corp., Inc. v. Ply Gem Industries, Inc., 804 F Supp 1471 (MD Fla 1992) (applying Michigan law).

**Mississippi**
MST, Inc. v. Mississippi Chemical Corp., 610 So 2d 299 (Miss 1992) (parent not liable for subsidiary's breach of contract).

**New York**
MSF Holding Ltd. v. Fiduciary Trust Co. International, 435 F Supp 2d 285 (SD NY 2006); Boyle v. Jacor Communications, Inc., 799 F Supp 811 (SD Ohio 1992) (applying New York law).

**Ohio**
Glidden Co. v. Lumbermens Mut. Cas. Co., 112 Ohio St 3d 470, 861 NE2d 109 (2006).

**Pennsylvania**
Koken v. Pension Benefit Guaranty Corp., 383 F Supp 2d 712 (ED Pa 2005).

**Texas**
Metropolitan Life Ins. Co. v. La Manion Hotels, 762 SW2d 646 (Tex App 1988), reh den; Rimes v. Club Corp. of America, 542 SW2d 909 (Tex Civ App).

**Washington**
Corporation is entity distinct from its shareholder, whether such shareholder is natural person or another corporation. Morgan Bros., Inc. v. Haskell Corp., Inc., 24 Wash App 773, 604 P2d 1294, citing this treatise.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

[FN2]

**United States**

Broenen v. Beaunit Corp., 440 F2d 1244; Gillis v. Jenkins Petroleum Process Co., 84 F2d 74; Shepherd v. Banking & Trust Co. of Jonesboro, 79 F2d 767, cert den 297 US 717, 80 L Ed 1002, 56 S Ct 592; Pulte Home Corp., Inc. v. Ply Gem Industries, Inc., 804 F Supp 1471 (MD Fla 1992) (applying Michigan law); Broenen v. Beaunit Corp., 305 F Supp 688 (applying New York law); Eskimo Pie Corp. v. Whitelawn Dairies, Inc., 266 F Supp 79 (applying New York law).

**Alabama**

First Health Inc. v. Blanton, 585 So 2d 1331 (Ala 1991).

**Delaware**

Pauley Petroleum, Inc. v. Continental Oil Co., 231 A2d 450 (Del Ch).

**Georgia**

Exchange Bank of Macon v. Macon Const. Co., 97 Ga 1, 25 SE 326.

**Illinois**

Polites v. U.S. Bank Nat. Ass'n, 361 Ill App 3d 76, 836 NE2d 133 (2005); Retzler v. Pratt and Whitney Co., 309 Ill App 906, 723 NE2d 345 (1999); Sinquefield v. Sears Roebuck & Co., 209 Ill App 3d 595, 568 NE2d 325 (1991); Boatman v. Jordan, 102 Ill App 2d 55, 243 NE2d 644; McDermott v. A.B.C. Oil Burner Sales Corp., 266 Ill App 115.

**Iowa**

Inn Operations, Inc. v. River Hills Motor Inn Co., 152 NW2d 808 (Iowa).

**Kentucky**

Harlan Public Service Co. v. Eastern Const. Co., 254 Ky 135, 71 SW2d 24; Commonwealth v. Muir, 170 Ky 435, 186 SW 194.

**Louisiana**

National Oil Works, Inc. v. Korn Bros., 164 La 800, 114 So 659; Collins Pipeline Co. v. New Orleans East, Inc., 250 So 2d 29 (La App) (all stock owned by two corporate entities).

**Maryland**

Food Fair Stores, Inc. v. Blumberg, 234 Md 521, 200 A2d 166 (Md 1964); Bethlehem Steel Co. v. Raymond Concrete Pile Co., 141 Md 67, 118 A 279.

**Massachusetts**

Manufacturing Improvement Corp. v. Georgia Pacific Corp., 286 NE2d 339 (Mass); Berry v. Old South Engraving Co., 283 Mass 441, 186 NE 601; Hallett v. Moore, 282 Mass 380, 185 NE 474.

**Michigan**

Bourne v. Muskegon Circuit Judge, 327 Mich 175, 41 NW2d 515.

Pulte Home Corp., Inc. v. Ply Gem Industries, Inc., 804 F Supp 1471 (MD Fla 1992).

**Minnesota**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Belle City Malleable Iron Co. v. Clark, 172 Minn 508, 215 NW 855.

**Missouri**
Blackwell Printing Co. v. Blackwell-Wielandy Co., 440 SW2d 433 (Mo); Turpin v. Chicago, B.&Q.R. Co., 403 SW2d 233 (Mo).

**New York**
Thomas v. Maigo Corp., 37 AD2d 754, 323 NYS2d 106 (wholly owned and dominated subsidiary as separate legal entity).

Berger v. Columbia Broadcasting System, Inc., 453 F2d 991; Eskimo Pie Corp. v. Whitelawn Dairies, Inc., 266 F Supp 79.

**North Carolina**
Huski-Bilt, Inc. v. First-Citizens Bank & Trust Co., 271 NC 662, 157 SE2d 352; B-W Acceptance Corp. v. Spencer, 268 NC 1, 149 SE2d 570.

**Ohio**
Glidden Co. v. Lumbermens Mut. Cas. Co., 112 Ohio St 3d 470, 861 NE2d 109 (2006).

**Pennsylvania**
In re Daily's Estate, 323 Pa 42, 186 A 754; Commonwealth v. J.G. Brill Co., 287 Pa 59, 134 A 441.

**Texas**
Bell Oil & Gas Co. v. Allied Chemical Corp., 431 SW2d 336 (Tex); Hubbard v. Capital Southwest Corp., 448 SW2d 571 (Tex Civ App).

**Washington**
Rena-Ware Distributors, Inc. v. State, 77 Wash 2d 514, 463 P2d 622.

**Wisconsin**
Milwaukee Toy Co. v. Industrial Commission, 203 Wis 493, 234 NW 748.

[FN3]

**United States**
Peterson v. U-Haul Co., 409 F2d 1174 (applying Nebraska law); Kardo Co. v. Adams, 231 F 950, revg 222 F 967.

**Kentucky**
Ayer & Lord Tie Co. v. Commonwealth, 208 Ky 606, 271 SW 693.

**Louisiana**
Fact that two corporations have same secretary and practically same officers, same office and telephone, and are engaged in same business, so that it is difficult to distinguish between them, would not enable creditor of one to collect from the other. Item Co. v. Codifer & Bonnabel, 18 La App 465, 138 So 914.

**Missouri**
Smith v. City of Lee's Summit, 450 SW2d 485 (Mo App).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**Nebraska**
Peterson v. U-Haul Co., 409 F2d 1174.

**New York**
Male v. Atchison, T.&S.F.R. Co., 230 NY 158, 129 NE 458.

**Pennsylvania**
Borough of Homestead v. Defense Plant Corp., 356 Pa 500, 52 A2d 581.

[FN4]

**United States**
Benton v. Cameo Corp., 375 F3d 1070 (CA10 2004); Catawba Indian Tribe v. State of South Carolina, 978 F2d 1334 (CA4 1992) (South Carolina law); AGS International Services S.A. v. Newmont USA Limited, 346 F Supp 2d 64 (D DC 2004), citing this treatise; First Nat. Bank & Trust Co. v. Consolidated Freightways, 797 F Supp 1262 (ED Pa 1992) (limiting liability for damages to subsidiary corporation).

**South Carolina**
Catawba Indian Tribe v. State of South Carolina, 978 F2d 1334 (CA4 1992).

[FN5]

**Missouri**
Acapolan Corp. v. Ralston Purina Co., 827 SW2d 189 (Mo 1992).

[FN6]

**United States**
An investor's or parent's participation in the management of a firm is not the same as disregarding the corporate form. National Labor Relations Board v. International Measurement & Control Co., Inc., 978 F2d 334 (CA7 1992).

**Missouri**
Acapolan Corp. v. Ralston Purina Co., 827 SW2d 189 (Mo 1992).

[FN7]

**United States**
Dole Food Co. v. Patrickson, 538 US 468, 123 S Ct 1655, 155 L Ed 2d 643 (2003), citing this treatise; Koken v. Pension Benefit Guaranty Corp., 383 F Supp 2d 712 (ED Pa 2005).

**Pennsylvania**
Glidden Co. v. Dep't of Labor & Indus., 700 A2d 555 (Pa Cmwlth 1997).

Koken v. Pension Benefit Guaranty Corp., 383 F Supp 2d 712 (ED Pa 2005).

[FN8]

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**United States**
Dole Food Co. v. Patrickson, 538 US 468, 123 S Ct 1655, 155 L Ed 2d 643 (2003), citing this treatise.

[FN9]

**Connecticut**
Old Farms Assoc. v. Commissioner of Revenue Services, 279 Conn 465, 903 A2d 152 (Conn 2006).

**Illinois**
Daley v. American Drug Stores, Inc., 294 Ill App 3d 1024, 691 NE2d 846 (1998).

**Tennessee**
Boles v. National Development Co., Inc., 175 SW3d 226 (Tenn App 2005).

© 2007 Thomson/West. No Claim to Orig. Govt. Works.

FLETCHER-CYC § 26

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

JOHN C. ULIN (Bar No. 165524)
John.Ulin@hellerehrman.com
HELLER EHRMAN LLP
333 South Hope Street
Los Angeles, CA  90071
Telephone: +1 (213) 689-0200
Facsimile: +1 (213) 614-1868

Attorneys for Plaintiffs
CYPRUS AMAX MINERALS COMPANY,
PHELPS DODGE CORPORATION, AND
AMAX METALS RECOVERY INC.

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

| | |
|---|---|
| CYPRUS AMAX MINERALS COMPANY, a Delaware corporation, PHELPS DODGE CORPORATION, a New York corporation, and AMAX METALS RECOVERY INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> CONTINENTAL CASUALTY COMPANY, et al., <br><br> Defendants. <br><br> AND RELATED CROSS-ACTIONS | Case No.: BC391068 <br><br> **DECLARATION OF DARREN S. TESHIMA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS*** <br><br> Case No.:  BC198946 <br><br> Judge:  Hon. Victoria G. Chaney <br> Dept.:  324 |

Heller
Ehrman LLP

I, Darren S. Teshima, declare:

1.    I am a member of the State Bar of California and an attorney at Heller Ehrman LLP, counsel for plaintiffs Cyprus Amax Minerals Company, Phelps Dodge Corporation, and Amax Metals Recovery Inc. in this action. I make this declaration based on personal knowledge, and I could and would competently testify to the matters herein if called upon to do so.

2.    Attached hereto as **Exhibit A** is a true and correct copy of the February 28, 2008 letter from Steven B. Bitter to Joe Peters.

3.    In 1992, Continental Insurance Company filed a lawsuit against AMAX Inc. in the Supreme Court of the State of New York, New York County and sought declaratory relief pursuant to a number of general liability policies, including the policies at issue in this case. The trial court dismissed the action in favor of a later-filed Colorado lawsuit. Attached hereto as **Exhibit B** is a true and correct copy of the Decision, dated June 26, 1992 entered by Justice Peter Tom in *Continental Ins. Co. v. AMAX Inc.*, No. 19737/91 (N.Y. Sup. Ct. June 26, 1992), *reprinted in 6 Mealey's Litig. Rpts.: Ins.* No. 34, at B-1 (July 14, 1992).

4.    The Colorado court ultimately applied Colorado law to the policies. Attached hereto as **Exhibit C** is a true and correct copy of the Order, dated May 24, 1993 entered by Judge John P. Leopold in *Amax Research & Development, Inc. v. Cont'l Ins. Co.*, No. 91CV3707 (Dist. Ct. Colo. May 24, 1993), *reprinted in 7 Mealey's Litig. Rpts.: Ins.* No. 30, at G-1 (June 8, 1993).

5.    Attached hereto as **Exhibit D** is a true and correct copy of the April 16, 2008 letter brief from Heller Ehrman LLP on behalf of Freeport-McMoRan Copper & Gold Inc. ("Freeport"), Phelps Dodge Corporation and Cyprus Amax Minerals Company to the Honorable Peter K. Leisure in *Century Indemnity Company, et al. v. Freeport-McMoRan Copper & Gold Inc., et al.*, Case No. 80 CV 02012 (PKL) (S.D.N.Y.) (the "New York Action").

6.    Attached hereto as **Exhibit E** is a true and correct copy of the April 21, 2008 Order issued by the Honorable Peter K. Leisure of the U.S. District Court for the Southern District of New York granting defendants a thirty-day extension of time in which to respond to the complaint in the New York Action.

Heller
Ehrman LLP

1

7.    Attached hereto as **Exhibit F** is a true and correct copy of Freeport's Memorandum of Law in Support of Its Motion to Dismiss or Stay, filed on May 23, 2008 in the New York Action.

8.    Attached hereto as **Exhibit G** is a true and correct copy of Freeport's Reply to Plaintiffs' Oppositions to Freeport's Motion to Dismiss or Stay, filed on June 23, 2008 in the New York Action.

9.    Attached hereto as **Exhibit H** is a true and correct copy of the April 11, 2008 letter from Mark J. Plumer to Steven B. Bitter.

10.    Attached hereto as **Exhibit I** is a true and correct copy of the April 24, 2008 letter from Steven B. Bitter to Mark J. Plumer.

11.    Attached hereto as **Exhibit J** is a true and correct copy of the Notice of Related Case, filed by Truck Insurance Exchange in Los Angeles County Superior Court on June 10, 2008.

12.    Attached hereto as **Exhibit K** is a true and correct copy of the July 25, 2008 Minute Order assigning this action to the Honorable Victoria G. Chaney "per her Minute Order relating this case to an earlier case assigned to Judge Chaney."

13.    Based upon my review of Google Maps, Phoenix is approximately 350 miles from the Los Angeles Superior courthouse, as compared to 2,500 miles from the Federal Courthouse in New York, New York.

14.    Plaintiffs and the Cyprus Insurers undertook mediation on July 28, 2008 in Los Angeles before retired Justice Howard Wiener, but were unable to settle the case. Attached hereto as **Exhibit L** is a true and correct copy of the August 8, 2008 letter from Justice Wiener to the parties regarding the impasse in the mediation.

15.    On August 6, 2008, the American Insurance Company, Truck Insurance Exchange, Old Republic Insurance Company, and Continental Casualty Company filed answers to Plaintiffs' complaint in this action. Old Republic Insurance Company also filed a cross-complaint in this action on August 6th. I have reviewed the served copies of each of these pleadings.

Heller
Ehrman LLP

DECLARATION OF DARREN S. TESHIMA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS, CASE NO. BC391068

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        I declare under penalty of perjury under the laws of the State of California that the foregoing

is true and correct, and that this declaration was executed on August 13, 2008 at San Francisco,

California.

_____

DARREN S. TESHIMA

DECLARATION OF DARREN S. TESHIMA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO
DISMISS, CASE NO. BC391068

# Exhibit A

STEVEN B. BITTER
SBITTER@GORDONREES.COM
DIRECT DIAL: (619) 230-7770

# GORDON & REES LLP



ATTORNEYS AT LAW
101 WEST BROADWAY
SUITE 1600
SAN DIEGO, CA 92101
PHONE (619) 696-6700
FAX. (619) 696-7124
WWW.GORDONREES.COM

February 26, 2008

## VIA REGULAR AND CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Joe Peters
Enviro-Tox Loss Services, Inc
P.O. Box 152859
Arlington, TX 76003-2859
2421 Callender Road, Suite 123
Mansfield, TX 76063

*RECEIVED*

**MAR 03 2008**

*Enviro-Tox Loss
Services*

|       | Companies:   | Truck Insurance Exchange            |
|-------|--------------|-------------------------------------|
| Re:   |              | Fireman's Fund Insurance Company    |
|       |              | Old Republic Insurance Company      |
|       |              | CNA Insurance Company               |
|       | Insured:     | Cyprus Mines Corporation            |
|       | Policy Nos.: | Various                             |
|       | Re:          | Talc Litigation                     |

Dear Mr. Peters:

Gordon & Rees, LLP has been retained by Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic Insurance Company and CNA Insurance Company (collectively referred to as the "Insurers") to assist with an evaluation of the Insurers' reimbursement obligations for certain legal billings submitted by Enviro-Tox Loss Services, Inc. for the period July 2007 through October 2007 purportedly for talc-related litigation ("Legal Billings") on behalf of Cyprus Mines Corporation ("Cyprus"). This letter supplements the Insurers' prior correspondence and communications regarding the Legal Billings. We understand that you have authority to receive communications regarding reimbursement issues for the Legal Billings by or on behalf of Cyprus.[1] If this understanding is incorrect, or if this and future communications regarding the Legal Billings should be directed to others, please advise the undersigned immediately.

As you know, the focus of the Insurers' investigation is on whether and to what extent Cyprus is entitled to reimbursement for the Legal Billings. This investigation and evaluation is being conducted pursuant to the provisions of the January 12, 2007 Cyprus Confidential Settlement Agreement for Defense and Indemnification for Certain Bodily Injury Claims (the

---

[1] In this regard, we understand that you, and not Bob Medlin, are the proper person at Enviro-Tox to direct communications regarding the Legal Billings.

Joe Peters
February 26, 2008
Page 2

"Cost Sharing Agreement"). As discussed in greater detail below, the Insurers have significant concerns as to whether the Legal Billings are reimbursable pursuant to the terms of the Cost Sharing Agreement and the Insurers reserve all rights under the Cost Sharing Agreement and applicable law to audit, limit or otherwise deny a reimbursement obligation to or on Cyprus' behalf for the Legal Billings.

The Cost sharing Agreement sets forth the protocol for the Insurers' reimbursement of "reasonable and necessary costs, fees or expenses incurred by or on behalf of Cyprus in connection with the defense of Bodily Injury Claims." (Cost Sharing Agreement, Section I.G.) "Bodily Injury Claims" are "lawsuits filed against Cyprus and alleging liability against Cyprus for damages for bodily injuries, illnesses, ailments, or diseases of any kind or death resulting therefrom, which are alleged to have occurred as a result of exposure to materials or products containing talc, manufactured, formulated, sold, distributed, packaged, trademarked, licensed, handled, installed or placed into the stream of commerce by Cyprus where the first exposure to such products took place, prior to July 1, 1988." (Cost Sharing Agreement, Section I.A.) "Defense Costs" do not include Cyprus' internal overhead or costs not associated with the defense of "Bodily Injury Claims." (Cost Sharing Agreement, Section I.G.)

Pursuant to the Cost Sharing Agreement, Cyprus is required to "use reasonable efforts to consult with the Lead Carrier on all matters related to Defense Costs." (Cost Sharing Agreement, Section I.G.2.) Furthermore, Defense counsel selected to defend Cyprus are required to comply with the billing guidelines set forth in attachment B ("Billing Guidelines") to the Cost Sharing Agreement. The Billing Guidelines require that the fees, costs or expenses incurred are reasonable and necessary. Moreover, under subsection C. Reporting Requirements, 2. Case Management of the Billing Guidelines Cyprus's defense counsel is required to:

> b)    Supplemental Case Analysis
>
> As additional relevant information regarding the case becomes available or a significant event occurs, counsel is responsible for notifying the [Lead Carrier], as well as modifying the case evaluation report and budget as appropriate. Supplementing the budget is required prior to performing the supplemental legal service.
>
> Consult with the [Lead Carrier/NCC] in advance whenever any significant decision must be made with respect to any strategic plan or significant expenditure. The firm should notify the [Lead Carrier] in advance of all filing deadlines (discovery, motions, court hearings, depositions). All trial dates should be reported in advance.

Additionally, pursuant to the Cost Sharing Agreement the National Coordinating Counsel ("NCC") is to be responsible for the coordination of defense of "Bodily Injury Claims" against Cyprus. The role of the NCC is to assist the various local counsel in discovery investigation and strategy and in appropriate situations be actively involved. The Cost Sharing Agreement required Cyprus and NCC provide advance notice and consult with the carriers concerning any material change in the handling, settlement, administration or disposition of the Bodily Injury Claims or any procedures, guidelines, practices, or strategies related thereto... ." (Cost Sharing



Joe Peters
February 26, 2008
Page 3

Agreement, Section XI.I.)  The Cost Sharing Agreement also contemplates that the Insurers will be consulted regarding the retention of law firms to conduct significant defense work or defense work typically performed by the NCC.

In regards to Billing Procedures the Cost Sharing Agreement requires that:

XII.    BILLING PROCEDURES

      A.     The Lead Carrier shall require defense counsel to submit Defense Costs bills through the agreed electronic billing system on a monthly basis.  Such bills shall contain a description of each item of service performed, the date it was performed, the identity of the attorney or paralegal performing it, the amount of time spent upon it, and the rate and charge for it.  The bills should also provide a summary of the total time of each timekeeper, the timekeeper's status (partner, associate or paralegal), the timekeeper's hourly rate, the total number of hours billed by each timekeeper, and the total charges for each timekeeper.  Out-of-pocket disbursements shall also be itemized.  The bill should be submitted electronically with a cover letter identifying the total amount of the bill itemized by legal fees and legal expenses.  All defense costs selected to defend Cyprus under this Agreement shall be provided the billing guidelines attached hereto as Attachment B (the "Billing Guidelines") and submit bills electronically.  Compliance with the Billing Guidelines shall give rise to a presumption that the fees, costs or expenses are reasonable and necessary.

      B.     The itemized documented Defense Cost bills shall be posted to the electronic billing system determined by the Lead Carrier (with an electronic pdf copy to the other Carriers).  The Lead Carrier shall review and make payment recommendations to all Carriers within thirty (30) days of receipt of the defense bills provided pursuant to Section XII.A and the payment shall be made by each Carrier in accordance with the allocated share for each Carrier set forth in Section III.B within thirty (30) days of receipt of the Lead Carrier's payment recommendation.  Any Party that objects to any such bill must inform defense counsel of its objections in writing specifying each item objected to, the basis for the objection, and the exact dollar amount of the reduction sought as to each item.  An invoice adjustment will be detailed in an Invoice Report attached to the check for payment of the undisputed amount of the invoice.  In the event that a Carrier fails to timely pay its share of itemized documented Defense Cost bills, the Reimbursing Carriers will proceed to equally fund the Orphan Share within thirty (30) days of the payment deadline and therein reserve their rights to reimbursement of the Orphan Share pursuant to Sections III.G and IX.B.

      C.     Law firms may request reconsideration of material reductions in writing within thirty (30) days of the payment of the undisputed portion of the bills.  The request for reconsideration must be sent to the bill reviewer (with copies to all Carriers) listed in the Invoice Report and include the specific reduction being challenged (date, timekeeper, task), the specific reason why the

Joe Peters
February 26, 2008
Page 4

firm believes the adjustment is inappropriate, and the amount requested. Relevant supplemental documentation should be attached to the request for reconsideration.

As discussed and as detailed in the Insurers' prior correspondence to Cyprus and Enviro-Tox, the Insurers have significant questions as to whether the Legal Billings are reimbursable under the Cost Sharing Agreement. Notably, questions exist as to whether Cyprus has complied with the Cost Sharing Agreement in both incurring and demanding reimbursement of the fees and costs depicted in the Legal Billings. The Insurers' concerns include, but are not limited to:

- Whether the fees and costs identified on the Legal Billings were reasonably and necessarily incurred in connection with the defense of Bodily Injury Claims;

- Whether the fees and costs depicted on the Legal Billings constitute "Defense Costs" within the scope of the Cost Sharing Agreement;

- Whether Cyprus consulted with the Lead Carrier as it is required to under the Cost Sharing Agreement both before and while it was incurring the fees and costs depicted on the Legal Billings;

- Whether the fees and costs depicted in the Legal Billings comply with the billing guidelines set forth in Attachment B to the Cost Sharing Agreement;

- Whether Cyprus properly utilized and coordinated with NCC in connection with the Legal Billings;

- Whether Cyprus and/or NCC provided advance notice and consulted with the carriers concerning the apparent material change in the handling and administration of Bodily Injury Claims as required by the Cost Sharing Agreement; and

- Whether Cyprus complied with Section XII of the Cost Sharing Agreement that sets forth the billing procedures for talc claims.

Based upon the foregoing, be advised that the Insurers formally object to the Legal Billings to the extent they depict fees and costs which are not associated with Cyprus' defense of talc claims or may not have been incurred in compliance with the Cost Sharing Agreement. The Insurers' continue to reserve all rights with respect to reimbursement of the Legal Billings pursuant to the Cost Sharing Agreement. Based upon information currently available, the Insurers are unable to determine whether any of the fees and costs depicted on the Legal Billings are reimbursable pursuant to the terms of the Cost Sharing Agreement.

As required by the Cost Sharing Agreement, Cyprus must provide the Insurers with information to enable the Insurers to evaluate their reimbursement obligations for talc Bodily Injury Claims. Therefore, the Insurers reiterate their requests that Cyprus provide detailed information which establishes that the fees and costs depicted in the Legal Billings are for claims

Joe Peters
February 26, 2008
Page 5

covered by the Cost Sharing Agreement and were incurred in compliance with the Cost Sharing Agreement. Although information that you provided during our conversation on January 22, 2008 shed some light on the Legal Billings,[2] further information is still required to allow the Insurers to complete their investigation. Accordingly, kindly provide me with the following at your earliest convenience:

1. The document review materials and criteria that the "Revlon reviewers" are utilizing in their review of the 18,000 boxes in Phoenix that are purportedly relevant to Cyprus' operations;

2. A report on the procedural status of the 12 Cyprus talc litigation cases that are open and to which billings are being allocated by the Ryley reviewers;

3. Additional detail on the 18,000 boxes that are being reviewed, specifically, where the boxes came from, what Cyprus operations they were retrieved from, and an overview of the content of the boxes;

4. Copies of the discovery that is at issue in the 12 open Cyprus talc litigation cases and how information obtained from the review of the boxes is integrated and incorporated into the discovery responses;

5. An explanation as to each timekeeper's role in each individual Cyprus talc claim/litigation and the basis for the hourly rate depicted in the Legal Billings;

6. All information and documentation which Cyprus contends supports a finding that the fees and costs depicted in the Legal Billings are reasonable and necessary costs, fees or expenses incurred by or on behalf of Cyprus in connection with the defense of Bodily Injury Claims within the meaning of the Cost Sharing Agreement;

7. All information and documentation which Cyprus contends supports a finding that the fees and costs depicted in the Legal Billings constitute "Defense Costs" as defined by the Cost Sharing Agreement;

8. All information and documentation which Cyprus contends supports a finding that the fees and costs depicted in the Legal Billings were incurred

---

2 On January 22, 2008, you advised that as a result of Freeport-McMoRan Cooper and Gold, Inc. ("Freeport") acquiring Phelps Dodge last year various operations located throughout the United States were shutdown resulting in a collection of 63,000 boxes of documents from former Phelps Dodge/Cyprus facilities. 18,000 of these boxes are purportedly relevant to Cyprus and Cyprus Amax operations. Freeport decided that the boxes had to be reviewed in order to determine whether information in the boxes either impacted pending or previously provided discovery responses. Freeport retained the firm of Ryley, Carlock & Applewhite ("Ryley") located in Phoenix to conduct the review. The document review is taking place at a former Revlon manufacturing facility outside of Phoenix and is scheduled to continue through June 2008. To review the 18,000 boxes the projected costs are $7.8 million, of which $1.8 million is projected to be billed to the Insurers.

Joe Peters
February 26, 2008
Page 6

in consultation with the Lead Carrier as required by the Cost Sharing Agreement;

9.  All information and documentation which Cyprus contends supports a finding that the fees and costs depicted in the Legal Billings were incurred in compliance with the billing guidelines as mandated by the Cost Sharing Agreement;

10. All information and documentation which Cyprus contends supports a finding that the fees and costs incurred and depicted in the Legal Billings incorporated NCC and that advance notice was provided to and the carriers were consulted prior to commencing the document review project; and

11. All information and documentation which Cyprus contends supports a finding that the fees and costs depicted in the Legal Billings were incurred in compliance with the billing procedure section (Section XII) of the Cost Sharing Agreement.

Upon the completion of its investigation, the Insurers will respond to Cyprus' demand for payment of the Legal Billings.

Your attention to the information requested herein is appreciated and will expedite the Insurers' review and reimbursement process.  If you have any questions about this, please feel free to contact me.

Very truly yours,

Steven B. Bitter

SBB:JJK

cc:  S. David Colton, Esq.
     Cyprus Mines Corporation
     c/o Phelps Dodge Corp.
     One North Central Avenue
     Phoenix, AZ 85004-4417

     Jerry Pizzo, Truck Insurance Exchange (via electronic mail)
     Amanda Webber, Fireman's Fund Ins. Co. (via electronic mail)
     Jeff Emory, Old Republic Ins. Co. (via electronic mail)
     John Kotte, CNA Ins. Co. (via electronic mail)



$05.770

neopost



CERTIFIED MAIL

7007 2560 0001 7482 6805

Joe Peters
Enviro-Tox Loss Services, Inc.
P.O. Box 172859
Arlington, TX 76003-2859

GORDON & REES LLP

101 WEST BROADWAY
SUITE 2000
SAN DIEGO, CA 92101

SAN DIEGO CA 921

27 FEB 2008 PM 3 T

"LET US DARE TO READ,
THINK, SPEAK AND WRITE."
John Adams, 1765
poweroftheletter.com

# Exhibit B

# MEALEY'S LITIGATION REPORTS
## *INSURANCE*

FOUR TIMES MONTHLY BY MEALEY PUBLICATIONS, INC. • P.O. BOX 446 • WAYNE, PA 19087-0446 • (215) 688-6566

Volume 6, Issue #34                                    July 14, 1992

CARRIERS OUT OF <u>TEXAS EASTERN</u> ON 'NOTICE'
Federal judge in Philadelphia also determines pollution exclusion applicable. Page 3

<u>SAFECO</u> COURT ADOPTS 'CONTINUOUS' TRIGGER
Each insurer between DES ingestion and manifestation of illness is liable. Page 4

EXCLUSION, 'DAMAGES' KEY ISSUES IN CARRIER WIN
Eighth Circuit also says PRP letters do not constitute suits seeking damages. Page 5

INSURERS OUT ON POLLUTION CLAUSE IN MICH.
Notice argument fails, but court says releases not 'sudden and accidental.' Page 7

SOIL REMOVAL PREJUDICED INSURERS
Michigan judge says carriers could have conducted their own investigation. Page 9

FIRE POLICIES DO NOT COVER ENVIRONMENTAL CLAIM
N.J. judge: Insured did not comply with timeliness provision in filing suit. Page 11

N.Y. CASE DISMISSED, DISPUTE PROCEEDS IN COLO.
State court case to focus on only Colorado hazardous waste site in dispute. Page 12

JUDGE ORDERS PRO RATA ALLOCATION OF LIABILITY
N.Y. federal court finds National Gypsum's Wellington settlements covered. Page 14

N.J. LAW APPLIED TO POLLUTION CLAUSE
Pa. was contract site, but N.J. has most significant contact to waste site. Page 16

DISSEMINATED LETTER IS PART OF STATUS QUO
Ill. appeals court determines preliminary injunction would be ineffective. Page 18

JOINDER OF OTHER INSURERS DENIED IN MINN.
Guaranty fund would not face multiple/inconsistent obligations, court holds. Page 19

COPYRIGHT 1992 MEALEY PUBLICATIONS, INC. ALL RIGHTS RESERVED.
REPRODUCTION STRICTLY PROHIBITED WITHOUT WRITTEN PERMISSION.

# MEALEY'S LITIGATION REPORTS
## INSURANCE

AMAX INC.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : I.A. PART 55

THE CONTINENTAL INSURANCE COMPANY,

     -against-    Plaintiff,

                       Index No.19737/91

AMAX INC., INSURANCE COMPANY OF NORTH           DECISION
AMERICA, THE HOME INSURANCE COMPANY AND
UNDERWRITERS AT LLOYD'S OF LONDON,

          Defendants.

---------------------------------x

PETER TOM, J.:

Plaintiff Continental Insurance Company moves for an order
recalling this Court's decision dated March 24, 1992 to correct
and/or modify the decision prior to the entry or settlement of an
order based upon that decision.

Defendant AMAX, Inc. cross-moves to modify the Court's March
24, 1992 decision for an order pursuant to CPLR §327 dismissing
this action on the ground of forum non conveniens.

Due to certain events which occurred prior to and subsequent
to the rendering of the March 24, 1992 decision and in considera-
tion of the cross-motion by AMAX the Court hereby recalls and
vacates its decision dated March 24, 1992 and renders the follow-
ing decision in its place and stead.

Motion by defendant AMAX, Inc. for an order dismissing the
complaint on various grounds are consolidated with plaintiff's
instant motion to recall this Court's decision and defendant's
instant motion to dismiss the complaint on the ground of forum
non conveniens for decision.

That portion of plaintiff's motion for an order recalling

- 1 -

---

Index No.19737/91

this Court's decision dated March 24, 1992 is granted.

Defendant Amax, Inc. ("AMAX") moves for an order dismissing
the complaint on the grounds that; 1) another action is pending
between the parties for the same cause of action in the state of
Colorado ("the Colorado Action"), and 2) plaintiff failed to join
necessary parties; or in the alternative, to stay this action
pending determination of the Colorado action. AMAX argues that
the more comprehensive Colorado action includes as parties the
AMAX subsidiaries which are not named herein but are the subject
of the environmental claims that are asserted in the amended
complaint of plaintiff Continental Insurance Company ("CONTINEN-
TAL"). AMAX asserts that Colorado is the convenient forum for a
more complete resolution of the coverage issues raised. Defendant
AMAX also cross-moves to dismiss this action based on the ground
of forum non-conveniens.

Plaintiff Continental is incorporated under the laws of the
State of New Hampshire and has its principal place of business in
New York. Continental is engaged in the business of issuing
insurance policies.

Defendant AMAX is incorporated under the laws of the State
of New York and maintains its principal place of business in New
York. AMAX is a diversified mining and industrial company with
subsidiaries operating at locations throughout the United States
and in several foreign countries.

Commencing January 1, 1975 and continuing until April 1,

- 2 -

# MEALEY'S LITIGATION REPORTS
## INSURANCE

Index No.19737/91

1992, Continental has been the primary insurer of AMAX and its subsidiaries, issuing sixteen (16) contracts of general liability insurance relevant to this action. Prior to 1975, co-defendant Insurance Company of North America ("INA") was their primary insurer. From 1958 to the present, co-defendants, the Home Insurance Company ("Home") and Underwriters at Lloyd's of London ("Lloyd's"), also engaged in the business of issuing insurance policies, have provided AMAX and its subsidiaries with initial excess and/or umbrella layer insurance. INA is incorporated under the laws of the State of Pennsylvania, maintains its principal place of business in Philadelphia, Pennsylvania, and is licensed to do business in the State of New York. Home is incorporated under the laws of the State of New Hampshire, maintains its principal place of business in New York and is licensed to do business in the State of New York. Lloyd's is an unincorporated association of underwriters organized under the laws of Great Britain and allegedly conducted business in New York at all relevant times to this action.

Continental commenced this action in or about August, 1991 against AMAX and on or about October 21, 1991, amended its complaint and joined INA, Home and Lloyd's as additional defendants. Over the last ten years, the United States Environmental Protection Agency ("EPA"), state regulatory agencies and/or private parties have requested information, commenced actions and made claims against AMAX and a number of its subsidiaries concerning

- 3 -

Index No.19737/91

their alleged liabilities for property damage, personal injury and/or bodily injury attributable to environmental contamination.

In this action, plaintiff seeks a declaratory judgment that it has no duty to defend AMAX in the underlying EPA and/or state environmental agency administrative proceedings as well as any third-party bodily injury or property damage claims or in any future cases or claims involving environmental contamination. Plaintiff further seeks a declaration that it has no duty to indemnify AMAX for any expenses or costs arising from the afore-mentioned proceedings or claims. Finally, plaintiff seeks attorney fees, costs and disbursements.

Approximately seven weeks after this action was commenced, AMAX and eight (8) of its subsidiaries commenced an action against Continental, INA, Home and Lloyd's in the District Court, County of Arapahoe, State of Colorado, seeking 1) a declaration of coverage with respect to all defendants; (2) damages from INA and Continental for breach of contract; and (3) punitive damages from Continental for bad faith misconduct.

In this action, coverage is disputed for claims of pollution and environmental contamination at approximately 33 sites located throughout the United States. The states involved include, inter alia, Colorado, California, Oklahoma, Utah, New Jersey, Kentucky, South Carolina, Montana, Florida, Georgia, Kansas, Wyoming, Arizona, New Mexico and Idaho.

AMAX argues that Colorado is a more convenient forum than

- 4 -

# MEALEY'S LITIGATION REPORTS

## *INSURANCE*

Index No.19737/91

New York for this litigation because, inter alia, Colorado is the state where the relevant AMAX companies' largest and most troublesome environmental claims are located; and where their environmental remediation work nationwide is based. It is further argued that New York has relatively small interest in the subject claims since there are presently no New York sites for which coverage is sought; none of the claimants against AMAX are based in New York; and most, if not all of the key witnesses and necessary documents are located outside of New York. Further, it is asserted that Continental will not be seriously inconvenienced if this action was heard in Colorado since it operates throughout the United States. Finally, AMAX argues that the more comprehensive subsequently filed action in Colorado would provide a more complete resolution of the case since the subsidiaries of AMAX, some of which are not subject to this Court's jurisdiction, are necessary parties.

Continental asserts that the AMAX subsidiaries are not indispensable or necessary parties to this action as they are controlled divisions of AMAX whose interests are united with AMAX and whose interests will be fully protected by AMAX. Continental further maintains that New York has the most significant contacts with, and interests in, this action since, among other things, the parties are located here; the insurance policies were executed, negotiated and delivered in New York; New York substantive law will apply in interpreting the policies at issue; and New York is

- 5 -

Index No.19737/91

easily accessible to witnesses and evidence located in other states. Continental contends that the "first-filed rule" mandates that, where, as here, the relief sought in both actions is the same, the priority in time of Continental's action should be dispositive in dismissing AMAX's motion.

The doctrine of forum non conveniens exists for the convenience of both the parties and the Court. (Silver v Great American Ins. Co., 29 NY2d 356, app.den. 31 NY2d 645). An analysis of this doctrine should "turn on consideration of justice, fairness, and convenience..." (id. at p.361; see also CPLR 327).

In determining an application for forum non conveniens, the Court must consider and balance a variety of factors. (See, Islamic Republic v Pahlavi, 62 NY2d 474). Among the factors to be considered in making this determination are the burden on New York courts, the inconvenience to the parties and the court, the nature of the relief sought and the availability of another forum (id. at p. 479). Both public and private interest factors include concerns about the appropriateness of having a court "that is at home with the state law that must govern the case," rather than having a court "in some other forum untangle problems in conflict of laws, and in law foreign to itself." (Gulf Oil Corp. v Gilbert, 330 US 501, 509).

The Court notes that because of the site, specific nature of the claims, the laws of the states where the claims arose will likely be relied upon to resolve the parties' disputes.

- 6 -

© COPYRIGHT 1992 MEALEY PUBLICATIONS, INC., WAYNE, PA

# MEALEY'S LITIGATION REPORTS
## INSURANCE

Index No.19737/91

(Avnet, Inc. v Aetna Casualty and Surety Company, et al., 140 AD2d 463, 464; The Flintkote Company v American Mutual Liability Insurance Co., 103 AD2d 501, aff'd 67 NY2d 857).

The Court in addressing forum non conveniens issues focuses on the location of the waste sites, location of witnesses and documents, and the experience of another forum with toxic waste issues. (Employers Ins. of Wausau, a Mutual Company, v UniDynamics Corp., NYLJ, June 1, 1992, p.27, col.1, (App.Div., 1st Jud. Dept.)).

It is undisputed that as of the date of this motion, there have been no environmental claims made against AMAX or any of its subsidiaries arising out of New York sites.

AMAX claims that Colorado and California also have the greatest liability potential out of all its sites throughout the United States.

In support of its cross-motion AMAX submits an affidavit by Howard Roitman, the Section Chief of the Remedial Programs Section of the Colorado Department of Health. Mr. Roitman states that the Department of Health is charged by law to enforce vigorously statutes, regulations and programs to preserve and protect the State's natural resources from contamination by pollution and, when necessary, to provide for the cleanup of contaminated natural resources. Mr. Roitman further states that the insured has a substantial presence in Colorado and that one of the major sites for which coverage is sought is the Lowry landfill, located

- 7 -

Index No.19737/91

In Arapahoe County, Colorado. The cleanup costs at the Lowry site may exceed one-half of one billion dollars for which the parties will be jointly and severally liable. Mr. Roitman asserts that Colorado has a compelling interest in ensuring that the Comprehensive General Liability policies such as those in issue in this case will be enforced and that the insurance companies be required whenever the law permits to indemnify their insureds for response costs necessary to clean up in-state contaminated sites and to prevent any further migration of contamination.

The New York presence of the parties, the execution and negotiation of the policies in New York, and the presence of the broker in New York do not prevent the Court from dismissing the complaint if in the interest of substantial justice and convenience, the action should be heard in another forum. (Atlantic Mutual Insurance Company v Cadillac Fairview US, Inc., 125 AD2d 181, lv. to app. denied, 69 NY2d 613; Avnet, Inc. v Aetna Casualty and Surety Co., supra).

Factors to be considered in determining the balance of convenience include the convenience of the parties and witnesses, access to sources of proof, expenses to the parties, the availability of process to compel the testimony of witnesses, whether executives will be interrupted in their functions if required to testify, and the interests of justice. (National Patent Dev. Corp. v American Hospital Supply Corp., 616 F. Supp. 114, 118-119).

- 8 -

# MEALEY'S LITIGATION REPORTS
## *INSURANCE*

Index No.19737/91

Both parties argue that the balance of convenience weighs in their favor. It appears that convenience of the parties as well as the witnesses does not favor either forum. Since the claims involve sites which are so spread out throughout the United States, witnesses from EPA, regulatory agencies and the facilities themselves including relevant documents will have to be produced from the various sites to whichever forum this action is heard. However, the Court notes that AMAX's undisputed claim that because AMAX Resources, the primary environmental facility for all the AMAX companies, is located in Colorado, necessary witnesses and documents relating to numerous sites across the country are located in Colorado.

Continental's argument that compulsory process is not available in Colorado for certain non-party witnesses who participated in the insurance underwriting and claims is not dispositive of the issue of which forum is more convenient. The provisions of the contracts at issue herein are generally considered to be standard form provisions used in the insurance industry, thus, interpretation of these provisions will likely turn on questions of law. Moreover, as was previously noted, since the sites are so spread out and different insurance companies are involved, witnesses and documents will have to be produced from a variety of states. (see, *The Aetna Casualty & Surety Co. v Champion International Corp.*, et al, No.18054/90 , Sup. Ct. N.Y. County, February 19, 1991).

- 9 -

Index No.19737/91

The fact that Continental filed the first suit is not dispositive of this motion. Although generally, the first suit should have priority, this rule "should not be applied in a mechanical way that disregards other considerations." The balance of convenience or the existence of special circumstances are two factors which the Court should consider. (*Continental Insurance Companies v Mickee Companies, Inc.*, 90 Civ. 8215, 1991 U.S. Dist. LEXIS 12426 [S.D.N.Y., Sept. 6, 1991]; *Factors, Etc., Inc. v Pro Arts, Inc.*, 579 F. 2d 215, 218 [2nd Cir. 1978], cert. den., 440 U.S. 908; *Great American Inc. Co. v Houston General Ins. Co.*, 735 F. Supp. 581, 586).

It is undisputed that prior to the commencement of either action, the parties met to discuss the potential environmental claims of AMAX and its subsidiaries and the coverage issues. AMAX claims it relied on Continental's misrepresentations that it intended to negotiate in good faith out of court, and thus, delayed in commencing its action. Several courts have expressed their concern about the use of a declaratory judgment action to prevent a later filed action to proceed in plaintiff's chosen forum. (see, *The Continental Insurance Companies v Mickee Companies*, supra; *Rokeby-Johnson v Kentucky Agricultural Energy Corp.*, 108 AD2d 336; *Sweetheart Plastics, Inc. v Illinois Tool Works, Inc.*, 267 F.Supp. 918, 941-42 [S.D.N.Y. 1967]; *National Patent Dev. Corp. v American Hosp. Supply, supra*).

The Court finds that New York is an inconvenient forum for plaintiff's claim and that Colorado is the preferred forum to

- 10 -

C.     © COPYRIGHT 1992 MEALEY PUBLICATIONS, INC., WAYNE, PA

# MEALEY'S LITIGATION REPORTS
## *INSURANCE*

Index No.19737/91

adjudicate this action. (see, *Islamic Republic of Iran v Pahlevi*, supra). The Court further finds that the "special circumstances" here favor this Court's dismissal of the New York action in favor of the Colorado action in the interest of discouraging forum shopping.

The Court also notes that the Colorado Court has vacated its dismissal of the Colorado Action, therefore making that jurisdiction an alternative forum to hear this action.

Based upon the foregoing, motion and cross-motion by defendant AMAX, Inc. is granted to the extent of dismissing this action on the ground of forum non conveniens.

That portion of plaintiff's motion for an order correcting and/or modifying the Court's decision is denied as being moot.

Settle order.

DATED: June 26, 1992

_____
J.S.C.

- 11 -

# Exhibit C

# MEALEY'S LITIGATION REPORTS
## *INSURANCE*

AMAX

DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO

Case No. 91CV3797, Division 5

ORDER

AMAX RESEARCH & DEVELOPMENT, INC., et al,

Plaintiffs,

v.

THE CONTINENTAL INSURANCE COMPANY, et al,

Defendants.

THIS MATTER comes on for the Court's determination of choice of law issues. The Court has read the parties' briefs and substantial case law.

At the outset, the Court rejects any implication that the Court's initial forum non conveniens decision controls herein. The factors set out in PMI Mortgage Insurance Company v. Desmond Federal Savings and Loan, 757 P. 2d 1156 (Colo. App., 1988) are not applicable to the issues which the Court must resolve at this time.

Plaintiffs' Amended Complaint was filed on January 8, 1993. It contains the following claims for relief:

1. Breach of Contract (1a, duty to defend various claims, asserted against Defendants in counts one through three);

2. Declaratory judgment (an insurance coverage and duty to defend assertion in count four);

3. Bad faith (against The Continental Insurance Company in count five).

Plaintiffs' bad faith claim sounds in tort. *Travelers Insurance Company v. Savio*, 706 P. 2d 1258 (Colo. 1985). Colorado has adopted the "most significant relationship" test for resolution of choice of law issues in bad faith claims. *First National Bank in Fort Collins v. Rostek*, 182 Colo. 437, 514 P. 2d 314 (1973).

Our Court of Appeals has performed such an analysis in *Abdelsamed v. New York Life Insurance Company*, 16 Brief Times Reporter 1408 (Colo. App., 1992). The Court agrees with Plaintiffs' assertion that the ruling in *Abdelsamed* is controlling precedent herein. Clearly, the Court of Appeals' ruling is that

Colorado law applies as to tortious bad faith claims. 16 Brief Times Reporter at 1412.

A petition for certiorari is pending in the *Abdelsamed* case. If our Supreme Court were to reverse the Court of Appeals, this Court will of course, follow the precedent established by such a ruling. However, this Court will not attempt to anticipate the Supreme Court's decision nor invent new law where an issue has been resolved.

Accordingly, Colorado law will be applied with respect to Plaintiffs' bad faith claim.

II.

Colorado also applies a "most significant relationship" test in contract cases. *Wood Brothers Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P. 2d 1369 (1979). As such, the Court must consider *Restatement (Second) of Conflict of Laws*, §§188, 6 and 193.

Under the §188 (2) factors, the Court finds:

1. The place of contracting is New York.

2. The place of negotiation is New York.

3. The place of performance is in various states. Payment of premiums has occurred in New York. The policies ostensibly cover twenty-three sites in as many states. A reference in a Continental Insurance Company policy describes world wide territorial significance. The Court finds that this factor provides no assistance to the Court in its analysis.

4. The location of the subject matter of the contract can be any one of twenty-three sites. However, this Court has ordered that this case address issues relating to Lowry Landfill only. The Court stated its inclination in this regard during the early stage of this case. The Court also notes that Defendants specifically invited this Court to maintain this position in its response to Plaintiffs' motion for clarification (filed July 23, 1992) Thus, for the purposes of the instant motion, the location of the contract's subject matter is Colorado.

5. The Court previously has found that Plaintiffs are Delaware, Nevada and New York corporations. Continental is a New Hampshire corporation with a principal place of business in New York. INA is a Pennsylvania corporation; its principal place of business is Pennsylvania. Home is a New Hampshire corporation; its principal place of business is New York. Lexington Insurance Company appears to be a British corporation with its headquarters in London and an agent's office in Massachusetts. With the

2

# MEALEY'S LITIGATION REPORTS
## INSURANCE

exception of Lexington (whose authorization status has not been disclosed to the Court), all of the principals herein are authorized to transact business in Colorado and do so.

6. For the purposes of this ruling, the Court finds that the place of negotiating and the place of performance of the relevant policies are not the same.

The Court must balance these factors but should not "count" contacts. Instead, the Court must consider which contacts are most significant and determine where these contacts are found. Diesel Service Co. v. AMBAC International Corporation, 961 F. 2d 635 (7th Cir., 1992).

The Court now turns to Restatement (Second) of Conflicts of Law §6. The Court finds:

1. This Court will not establish lasting precedent for interstate or international systems. The Court does not presume to know how any other judge would view this Court's ruling.

2. New York maintained a strong policy, vis-a-vis environmental pollution (See: Page 10 of Continental's brief). The Court will not totally discount New York's stance, nor close its eyes to the obvious problems of Lowry Landfill. Apparently, Colorado's legislature never enacted similar legislation. New York's legislature repealed its law, allegedly after all of the toxic waste was placed into Lowry Landfill.

At the same time, this case involves who will pay for toxic cleanup. Colorado's citizens clearly have an interest in a complete cleanup. New York's citizens have an interest in the enforcement of New York's public policy, as expressed by the New York legislature.

3. Both briefs give the protection of justified expectations short shrift. Continental states "...Continental's justified expectations certainly would be defeated if Colorado law were (sic) applied because waste happened to be damaged at Colorado law." Plaintiffs skirt this issue. The Court cannot adequately address this factor.

4. The basic field of law deals both with contracts, in general and insurance, in particular. In Colorado, contracts must be construed as a whole giving effect to the intention of the parties. Lawrence Street Partners, Ltd. v. Lawrence Street Ventures, 786 P. 2d 508 (Colo. Appl. 1989). The Court surmises that New York's policy in this regard is similar.

In the area of insurance law, the subject matter's location has substantial significance. See, e.g. First Federal Savings and Loan Association of Fargo, North Dakota v. Transamerica Title Insurance Company, 793 F. Supp. 265 (D. Colo., 1992).

5. The Court can enter orders with certainty irrespective of the choice of law. Uniformity may be enhanced by applying New York law. The Court elects to remain silent as to predictability.

6. Colorado law affords ease in determination and applicability.

Finally the Court turns to §193 of the Restatement (Second). Casualty insurance policy cases favor a finding that the principal location of the insured risk during the term of the policy provides the most significant relationship. Mitchell v. Birth Farm First Casualty Company, 902 F. 2d 790 (10th Cir., 1992).

Comment (f) of §193 states that Courts should defer to local law in real property cases. Indeed, the court should apply the substantive law of the state in which an individual risk is located. As a result, cases involving comprehensive policies should be considered as if several different policies were in effect, Shapiro v. Associated International Insurance Company, 899 F. 2d 1116 (11th Cir., 1990).

Colorado's federal cases law is of two minds. One judge has held that, in multiple risk policy cases, the law that governs an insurer's duties is that law of the state where the occurrence giving rise to the claim arose. Denny's Marina v. Renfro, 634 F. Supp. 217 (D. Colo. 1986). Another court has stated that insurance policies are interpreted under the law of the state of issuance. Telectronics, Inc. v. United National Insurance Co., 796 F. Supp. 1382 (D. Colo., 1992).

In Mitchell (Supra), the 10th circuit held that the location of the insured property is the single most important factor for choice of law determinations. 902 F. 2d at 794. The fact that either state looks more favorably on a party's claim is not dispositive. 902 F. 2d at 795.

The realities of multistate, multiple risk insurance matters suggest that the parties probably did not consider choice of law issues where policies are silent as to that issue. The Court has not observed any document which specifically refer to Lowry Landfill (at the time any policy was executed).

The court has balanced all relevant factors and finds:

1. Payment by some entity will inure to the benefit of Colorado citizens. New York's citizens will receive no appreciable benefit from any aspect of the Court's decision.

3

# MEALEY'S LITIGATION REPORTS
## *INSURANCE*

2. This case deals with insurance coverage and duty to defend issues. The Mitchell Court's directive (that location is the single most important factor) is persuasive.

3. The Court need not ignore the New York Legislature's directive. Indeed, any insurer may utilize that law to establish that an exemption applies and that any exclusions are not subject to other reasonable interpretations. Hecla Mining Company v. New Hampshire Insurance Company, 811 P. 2d 1083, 1090 (Colo., 1991).

Accordingly, Colorado law will be applied with respect to Plaintiffs' first four claims for relief.

DONE THIS 24 day of May, 1993.

BY THE COURT:

JOHN P. LEOPOLD
DISTRICT JUDGE



CERTIFICATE OF SERVICE

5

# Exhibit D

# HellerEhrman LLP

April 16, 2008

Mark J. Plumer
Shareholder
Mark.Plumer@hellerehrman.com
Direct +1 (202) 912-2021
Direct Fax +1 (202) 912-2202
Main +1 (202) 912-2000
Fax +1 (202) 912-2020

41196.0003

*Via Hand Delivery*

The Honorable Peter K. Leisure
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1910
New York, New York 10007

> **Re:** ***Century Indemnity Company, et al. v. Freeport-McMoRan Copper & Gold Inc., et al.,* Case No. O8 CV 02012 (PKL) (S.D.N.Y.)**

Dear Judge Leisure:

We represent defendants Freeport-McMoRan Copper & Gold Inc., Phelps Dodge Corporation and Cyprus Amax Minerals Company (collectively, "Cyprus Amax").[1]  This letter serves as a request, pursuant to Federal Rule of Civil Procedure 6(b)(1) and Rule 1.E. of this Court's individual practices, for a 45 day extension of the current deadline of April 23, 2008 to answer, move or otherwise respond to the Complaint or, in the alternative, for a 45 day stay of the litigation. Should the Court grant Cyprus Amax additional time to answer, we respectfully request, in addition, that the preliminary pre-trial conference, currently scheduled for May 22, 2008, be adjourned 45 days as well, until June 6, 2008 or the next available date on the Court's calendar. Consistent with Rule 1.E of this Court's individual practices, we have enclosed a proposed order rescheduling the date of the preliminary pre-trial conference, a copy of which has been electronically mailed to the Orders and Judgment Clerk pursuant to the Guidelines for Electronic Case Filing in the Southern District of New York.

Cyprus Amax previously requested and plaintiffs consented to a 30-day extension, and this Court "so ordered" the parties' stipulation on March 20, 2008. On Monday, April 14, 2008, Cyprus Amax requested consent for an additional 45 day extension from plaintiffs' counsel. *See* Exhibit A. Counsel for Century Indemnity Company ("Century") replied that it

---

[1] This dispute involves Cyprus Amax Minerals Company and its predecessors and subsidiaries. Accordingly, Cyprus Amax has met and conferred with plaintiff-insurers and requested that they agree to dismiss Freeport McMoRan Copper & Gold Inc., which is not necessary to a resolution of insurers' claims and is not properly named as a defendant. Insurers have refused, and Cyprus Amax intends to file, at the appropriate time, a motion to dismiss Freeport McMoRan Copper & Gold Inc. from this lawsuit.

Heller Ehrman LLP  1717 Rhode Island Avenue, NW,  Washington, D.C.  20036-3001  www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Shanghai   Silicon Valley   Singapore   Washington, D.C.

HellerEhrman<sub>LLP</sub>

would agree to the extension but only if Cyprus Amax stipulated that it would not seek to transfer the action to another jurisdiction or court. *See* Exhibit B. Continental has not yet provided its final position. Cyprus Amax has informed Century that it cannot agree to Century's demand; such a stipulation would not "secure the just, speedy, and inexpensive determination of this action." Fed. R. Civ. P. 1. Therefore, Cyprus Amax is compelled to seek relief directly from the Court.

Factual Background

A brief review of the facts will assist the Court in understanding the basis for Cyprus Amax's request.

The current dispute is over an alleged $7.8 million to be spent by Cyprus Amax segregating, indexing and privilege reviewing some 18,000 boxes of documents in defense of multiple lawsuits now pending in various jurisdictions against Cyprus Amax. Prior to a 1993 merger that created Cyprus Amax, there were two separate companies: (1) AMAX Inc. and (2) Cyprus Minerals Company. Prior to the merger, each of these companies had separate identities (and subsidiaries) and separately maintained their records in separate locations. After the merger, the records of these two companies were transferred to a single location and combined. Later-filed asbestos, silica, talc and clay lawsuits against these entities and their subsidiaries have necessitated the current review and segregation of the commingled records, which unfortunately were not reliably indexed. Until recently, Cyprus Amax believed that many of these documents had long-ago been destroyed. Upon learning some had not and that the existing indices were not reliable, Cyprus Amax commenced the disputed review.

The insurer-plaintiffs in this lawsuit issued primary insurance to AMAX Inc. and its subsidiaries. The current case seeks a declaratory judgment (only) that Century and Continental have no obligation to pay the costs of reviewing the newly discovered and commingled documents in defense of their insured, despite that outstanding discovery requests in the pending litigations may call for production of certain of the documents.

Thus, what plaintiffs' Complaint refers to as the "Corporate Records Assimilation Project" of Phelps Dodge Corporation is, rather, a project undertaken by Cyprus Amax in order to defend itself in lawsuits pending against certain of its predecessors. Plaintiffs have acknowledged that they have a duty and obligation to pay the defense costs for these actions and, in fact, both Century and Continental are defending several lawsuits pending against Amax Metals Recovery, Inc. ("AMRI"), a current Cyprus Amax subsidiary (and former AMAX Inc. subsidiary), with asbestos claims against it. However, both Century and Continental have reneged on their duty to defend and refused to pay for the litigation driven document review at the center of this case. In December 2007 and January 2008, Cyprus Amax met face-to-face with Continental and Century to discuss the project and related costs

HellerEhrman ʟʟᴘ

and to answer its insurers' questions. At these meetings, Cyprus Amax requested the insurers to provide their commitment to provide coverage for these costs. In lieu of providing such a commitment, Century and Continental filed this lawsuit terminating the ongoing claims discussion.[2]

Although it is not reflected in the Complaint, the present defense costs dispute is not properly limited to AMAX Inc.'s primary insurers (plaintiffs Century and Continental ("AMAX insurers")). The dispute also involves Cyprus Minerals Company's primary insurers (Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic Insurance Company and Continental Insurance Company ("Cyprus insurers")). Like the AMAX insurers, the historic Cyprus insurers have refused to pay the requested defense costs related to the review of commingled AMAX Inc. and Cyprus Minerals Company documents. However, there is a requirement that Cyprus Amax engage in non-binding mediation with the Cyprus insurers before commencing any lawsuit against them. Co-plaintiff in this lawsuit, Continental, is well aware of this requirement, because it insured both AMAX Inc. and Cyprus Minerals Company. Cyprus Amax last week sent a letter to the Cyprus insurers demanding mediation within 30 days.

Importantly, the Complaint filed by Century and Continental in this Court does not name AMRI as a party, despite that all of the underlying lawsuits for which the AMAX insurers owe defense costs have been filed against AMRI. AMRI, a wholly owned subsidiary of Cyprus Amax, is incorporated in Delaware and has its principal place of business in Louisiana. AMRI is not authorized to do business in New York and is not subject to this Court's jurisdiction.

Finally, since the Complaint was filed, Cyprus Amax and Continental have met to discuss the potential settlement of this dispute. While the outcome of these discussions remains uncertain, there is at least a chance that a settlement may be accomplished between these parties. It is Cyprus Amax's hope that a similar meeting will be held with Century within the next few weeks.

---

[2] This is not the first time that Continental has filed a lawsuit during ongoing claims negotiations with AMAX Inc. and its subsidiaries. For example, in 1993, Continental filed a lawsuit against AMAX Inc., which was dismissed in favor of a later lawsuit filed in Colorado by AMAX Inc. and its relevant subsidiaries. New York's Appellate Division, First Department recognized on an appeal taken by Continental and Century – the same plaintiffs here – that "[s]ince [Continental] commenced this action at a time when negotiations for settlement of these claims were taking place, we afford plaintiff no benefit from having commenced this action before defendant Amax commenced its similar Colorado action." *Cont'l Ins. Co. v. Amax Inc.*, 192 A.D.2d 391, 391, 596 N.Y.S.2d 370, 370-71(1st Dept. 1993).



<u>Reasons for Defendants' Request</u>

Upon this factual backdrop, defendants respectfully request that there is good cause for the Court to order a 45-day extension, or stay, for the following reasons:

This is a lawsuit that never should have been filed in this forum and insurers' decision to seek a coverage determination in this Court is exactly the kind of forum shopping that they engaged in against AMAX Inc. previously and for which their conduct previously was condemned by the New York courts. *See* note 1. Based on information currently available to Cyprus Amax, the basis for filing the current lawsuit in New York is far weaker than the last time, as none of the parties are currently based in New York, there is no dispute about the existence or wording of the relevant policies and none of the key witnesses or documents are located in New York.

Moreover, this entire dispute over the scope of its insurers' duty to defend should be adjudicated, if necessary, in a single lawsuit that includes both the AMAX insurers and the Cyprus insurers. It is possible that mediation with the Cyprus insurers will resolve part of the dispute, although these insurers have identified numerous reasons why they believe the disputed defense costs are not covered. The requested extension will provide the time necessary for Cyprus Amax to complete the required mediation process. Thus, within 45 days, Cyprus Amax will know which parties are or are not necessary to resolve this entire dispute and can answer, move or otherwise respond to the Complaint without further delay. It is within this Court's inherent power to extend the time to answer or to issue a stay on these facts. *See, e.g., Don King Prod., Inc. v. Hopkins,* No. 04 Civ. 9705, 2004 U.S. Dist. LEXIS 25917, *8 (S.D.N.Y. Dec. 23, 2004) ("Rule 6 of the Federal Rules of Civil Procedure provides a district court with wide discretion to grant a request for an extension of time made prior to the expiration of the period prescribed. Indeed, courts will normally grant such applications in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party.") (internal citations omitted); *Kernisant v. City of New York,* 225 F.R.D. 422, 431 (E.D.N.Y. 2005) (explaining that an application for the enlargement of time under Rule 6(b)(1) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1360 (3d ed. 2008) (recognizing that federal courts "rely[] on their inherent power . . . in an effort to maximize the effective utilization of judicial resources and to minimize the possibility of conflicts between different courts").

If Cyprus Amax's efforts to resolve this entire dispute outside of litigation should prove unsuccessful, Cyprus Amax intends to move this Court to dismiss the current lawsuit in favor of a more comprehensive action to be filed in a more appropriate forum where all of the necessary parties may be sued. The alternative action will include additional necessary claims and parties. Importantly, neither AMRI nor the Cyprus insurers may be sued in this



Court. Under such circumstances, the Court has ample discretion to dismiss or stay this diversity action seeking a declaratory judgment in favor of a more appropriate forum pursuant to the United States Supreme Court's decision in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) and, also, pursuant to Federal Rule of Civil Procedure 12(b)(7) in view of the fact that AMRI, a necessary and indispensable party to this action, cannot be joined in this proceeding.

Finally, an extension or stay will allow Cyprus Amax and Continental to continue ongoing settlement discussions and, we hope, will enable Cyprus Amax and Century to begin such discussions. Of course, it would be preferable if this dispute could be settled (in whole or in part), averting further litigation in this Court.[3]

\* \* \* \* \*

Cyprus Amax has and intends to continue to act with urgency to resolve this entire dispute in the most efficient manner, with a view toward including all of the correct parties in the correct forum should litigation be necessary. A 45-day extension or stay would promote efficiency by averting premature and potentially unnecessary motion practice. The requested relief will not in any way prejudice plaintiffs' rights. Indeed, plaintiff insurers' goal is to avoid payment of monies due and owing to Cyprus Amax and no harm can be worked upon them by delaying their payment obligation for an additional 45 days. There is good cause to grant the requested relief, and the requested extension or stay is well within the Court's discretion and is necessary to ensure the "just, speedy, and inexpensive determination of this action." Fed. R. Civ. P. 1.

Respectfully submitted,

*Mark J. Plumer*

Mark J. Plumer

Enclosures
cc:    Shane R. Heskin, Esq. (via facsimile and overnight mail)
       Alan P. Jacobus, Esq. (via facsimile and overnight mail)

---

[3] Cyprus Amax is cognizant of the Court's individual practices which require a pre-motion letter for motions other than discovery motions and motions to dismiss in lieu of an answer (Rule 2.A), and Cyprus Amax will file any such letter at an appropriate time.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x

CENTURY INDEMNITY COMPANY,         :
AS SUCCESSOR TO CCI INSURANCE      :
COMPANY, AS SUCCESSOR TO           :    08 Civ. 02012 (PKL)
INSURANCE COMPANY OF NORTH         :
AMERICA and THE CONTINENTAL        :    **[PROPOSED]**
INSURANCE COMPANY,                 :    **REVISED SCHEDULING ORDER**
                                   :
          Plaintiffs,              :
                                   :
     v.                            :
                                   :
FREEPORT-MCMORAN COPPER &          :
GOLD INC., AS THE CLAIMED          :
SUCCESSOR TO PHELPS DODGE          :
CORPORATION, AS THE CLAIMED        :
SUCCESSOR TO CYPRUS AMAX           :
MINERALS COMPANY, AS THE           :
CLAIMED SUCCESSOR TO AMAX,         :
INC., AS SUCCESSOR TO AMERICAN     :
METAL CLIMAX, INC.,                :
                                   :
          Defendants.              :
---------------------------------------------------x

     The Court hereby ORDERS that Defendants' time to answer, move or otherwise respond to the Complaint now due on April 23, 2008 is extended for 45 days.

     The Court hereby ORDERS that the preliminary pre-trial conference currently scheduled for May 22, 2008 is adjourned until July 6, 2008, or the next available date on the Court's calendar.

Dated: _____, 2008          **SO ORDERED:**
        New York, New York


                                    _____
                                    Hon. Peter K. Leisure
                                    United States District Court

## Cirando, Lisa M.

| | |
|---|---|
| **From:** | Plumer, Mark J. |
| **Sent:** | Monday, April 14, 2008 4:04 PM |
| **To:** | Heskins@whiteandwilliams.com; Alan P. Jacobus (ajacobus@cbmlaw.com) |
| **Cc:** | Cirando, Lisa M. |
| **Subject:** | Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY) |

**Attachments:** 793306_1.DOC

Counsel:

On behalf of defendants Freeport-McMoRan Copper & Gold, Inc., Phelps Dodge Corporation and Cyprus Amax Minerals Company ("Cyprus Amax"), we write to request an additional extension of 45 days from the current deadline of April 23 to answer, move or otherwise respond to the Complaint and, in addition, your



793306_1.DOC (49 KB)

agreement to extend by the same time the court-ordered conference currently scheduled for                    ay 22. With your approval, we will file the attached stipulation with the court on Wednesday April 16. We recognize that the parties cannot extend a Court ordered deadline but the parties can at least consent to adjourn it. If plaintiffs are unwilling to agree to a further extension, defendants plan to seek either a 45-day extension of all deadlines or a 45-day stay of this litigation.

This brief extension or stay is necessary. First, it will allow certain of the parties to the current lawsuit to continue ongoing settlement discussions and, we hope, will enable the remaining parties to begin such discussions. It obviously would be ideal if the current dispute could be settled (in whole or in part) and further litigation could be averted or streamlined. Second, the requested extension will begin a process designed to resolve this entire dispute efficiently by including all of the correct parties and resolving the entire dispute in the correct forum. What plaintiffs' Complaint refers to as the "Corporate Records Assimilation Project" was undertaken by Cyprus Amax Minerals Company ("Cyprus Amax") to defend certain lawsuits pending against certain of its predecessors. Prior to the merger that created Cyprus Amax in 1993, there were two separate companies, AMAX Inc and Cyprus Minerals Company, each with separate identities and records. After the merger, the records of these two companies were combined. The current defense of later-filed claims now pending against an AMAX Inc and Cyprus Minerals Company predecessors or subsidiaries has necessitated the review and segregation of commingled and un-indexed records. Indeed, the plaintiffs were advised before this litigation commenced that the $7.8 million estimate identified in the Complaint was the cost of segregating, indexing and privilege reviewing the commingled documents of these two former entities. What is in part at issue therefore is defense costs assignable to AMAX Inc's primary insurers in this lawsuit (Century and Continental) and Cyprus Minerals Company's primary insurers (Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic Insurance Company and Continental Insurance Company). The historic Cyprus Minerals Company insurers likewise have been tendered this claim and, like Century and Continental in this case, have thus far refused to pay the requested defense costs. This entire dispute should be adjudicated, if necessary, in one lawsuit. Because Cyprus Amax is required to mediate with the Cyprus Minerals Company insurers before filing any lawsuit, it has sent a letter to them demanding mediation within 30 days.

Within 45 days, Cyprus Amax should know whether the Cyprus Minerals Company insurers are or are not necessary to resolve this dispute and can so answer or otherwise plead. If one or both of the current plaintiffs are unwilling to provide the requested 45-day extension, we request that each of you let us know promptly, as we plan to request an extension or stay from Judge Leisure by the close of business on Wednesday April 16, 2008.

Thank you for your assistance. Please contact me if you have any questions or concerns. Thank you.



Mark J. Plumer | Attorney | HellerEhrmanLLP | 1717 Rhode Island Avenue, NW | Washington, DC 20036
tel: +1.202.912.2021 | fax: +1.202.912.2202 | email: mark.plumer@hellerehrman.com | web:
www.hellerehrman.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CENTURY INDEMNITY COMPANY, AS       :
SUCCESSOR TO CCI INSURANCE          :
COMPANY, AS SUCCESSOR TO            :    08 Civ. 0212 (PKL)
INSURANCE COMPANY OF NORTH       :
AMERICA and THE CONTINENTAL     :    **STIPULATION**
INSURANCE COMPANY,                 :    **EXTENDING TIME TO**
                                   :    <u>**RESPOND TO COMPLAINT**</u>
                Plaintiffs,       :

                             :

            v.                   :

FREEPORT-MCMORAN COPPER & GOLD   :
INC., AS THE CLAIMED SUCCESSOR TO  :
PHELPS DODGE CORPORATION, AS THE :
CLAIMED SUCCESSOR TO CYPRUS    :
AMAX MINERALS COMPANY, AS THE   :
CLAIMED SUCCESSOR TO AMAX, INC.,  :
AS SUCCESSOR TO AMERICAN METAL  :
CLIMAX, INC.,                    :

              Defendants.     :
                             :
-------------------------------------------------------x

IT IS HEREBY STIPULATED by and between the undersigned counsel that Defendants'

time to answer, move or otherwise respond to the Complaint now due on April 23, 2008 has been

extended for 45 days.  One previous extension was agreed by all parties and so ordered by the

Court on March 20, 2008.

It is further stipulated and agreed by all parties, subject to court approval, that the court-

ordered preliminary pre-trial conference currently scheduled for May 22, 2008 be postponed to a

date after the Defendants' extended time to answer, move or otherwise respond to the Complaint.

It is further stipulated and agreed that facsimile signatures may be deemed as originals.

Dated: New York, New York
         April 14, 2008


WHITE AND WILLIAMS LLP                          HELLER EHRMAN LLP

By:_____                    By:_____
     Shane R. Heskin, Esq. (SH-9984)                 Lisa M. Cirando, Esq. (LC-1916)

1800 One Liberty Place                          7 Times Square
Philadelphia, Pennsylvania 19103                New York, New York 10036
(215) 864-7000                                  (212) 832-8300

Attorneys for Plaintiff Century Indemnity       Attorneys for Defendants Freeport-McMoRan
Company                                         Copper & Gold Inc., Phelps Dodge
                                                Corporation, Cyprus Amax Minerals Company



CARROLL BURDICK & McDONOUGH LLP

By:_____
     Alan P. Jacobus, Esq.
     (*pro hac vice* pending)

44 Montgomery Street
San Francisco, California 94104
(415) 989-1900

Attorneys for Plaintiff The Continental
Insurance Company




SO ORDERED:


_____
Hon. Peter K. Leisure
United States District Court




2



**Cirando, Lisa M.**

| | |
|---|---|
| **From:** | Heskin, Shane [heskins@whiteandwilliams.com] |
| **Sent:** | Monday, April 14, 2008 4:25 PM |
| **To:** | Plumer, Mark J. |
| **Cc:** | Cirando, Lisa M.; Cellucci, Guy; ajacobus@cbmlaw.com |
| **Subject:** | RE: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY) |

Mark:

Century will agree to the 45 day-extension of time to answer the complaint on the condition that Freeport/Amax stipulate that it will not seek to remove the NY action in favor of another jurisdiction or court. If Freeport/Amax needs in good-faith additional time to answer for reasons other than resolving its Cyprus obligations, we are happy to consider a reasonable extension of time not to exceed 14 days. We also do not feel an adjournment of the Rule 16 conference is appropriate at this time.

Regards,
-Shane

-----Original Message-----
From: Plumer, Mark J. [mailto:Mark.Plumer@hellerehrman.com]
Sent: Monday, April 14, 2008 4:04 PM
To: Heskin, Shane; ajacobus@cbmlaw.com
Cc: Cirando, Lisa M.
Subject: Century Indemnity Co., et al. v. Freeport-McMoRan Copper & Gold Inc., No. 08-CV-0212 (PKL) (SDNY)

Counsel:

On behalf of defendants Freeport-McMoRan Copper & Gold, Inc., Phelps Dodge Corporation and Cyprus Amax Minerals Company ("Cyprus Amax"), we write to request an additional extension of 45 days from the current deadline of April 23 to answer, move or otherwise respond to the Complaint and, in addition, your agreement to extend by the same time the court-ordered conference currently scheduled fo <<793306_ 1.DOC>> r May 22. With your approval, we will file the attached stipulation with the court on Wednesday April 16. We recognize that the parties cannot extend a Court ordered deadline but the parties can at least consent to adjourn it. If plaintiffs are unwilling to agree to a further extension, defendants plan to seek either a 45-day extension of all deadlines or a 45-day stay of this litigation.

This brief extension or stay is necessary. First, it will allow certain of the parties to the current lawsuit to continue ongoing settlement discussions and, we hope, will enable the remaining parties to begin such discussions. It obviously would be ideal if the current dispute could be settled (in whole or in part) and further litigation could be averted or streamlined. Second, the requested extension will begin a process designed to resolve this entire dispute efficiently by including all of the correct parties and resolving the entire dispute in the correct forum. What plaintiffs' Complaint refers to as the "Corporate Records Assimilation Project" was undertaken by Cyprus Amax Minerals Company ("Cyprus Amax") to defend certain lawsuits pending against certain of its predecessors. Prior to the merger that created Cyprus Amax in 1993, there were two separate companies, AMAX Inc and Cyprus Minerals Company, each with separate identities and records. After the merger, the records of these two companies were combined. The current defense of later-filed claims now pending against an AMAX Inc and Cyprus Minerals Company predecessors or subsidiaries has necessitated the review and segregation of commingled and un-indexed records. Indeed, the plaintiffs were advised before this litigation commenced that the
$7.8 million estimate identified in the Complaint was the cost of segregating, indexing and privilege reviewing the commingled documents of these two former entities. What is in part at issue therefore is defense costs assignable to AMAX Inc's primary insurers in this lawsuit (Century and Continental) and Cyprus Minerals Company's primary insurers (Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic



Insurance Company and Continental Insurance Company).  The historic Cyprus Minerals Company insurers likewise have been tendered this claim and, like Century and Continental in this case, have thus far refused to pay the requested defense costs.  This entire dispute should be adjudicated, if necessary, in one lawsuit. Because Cyprus Amax is required to mediate with the Cyprus Minerals Company insurers before filing any lawsuit, it has sent a letter to them demanding mediation within 30 days.

Within 45 days, Cyprus Amax should know whether the Cyprus Minerals Company insurers are or are not necessary to resolve this dispute and can so answer or otherwise plead.  If one or both of the current plaintiffs are unwilling to provide the requested 45-day extension, we request that each of you let us know promptly, as we plan to request an extension or stay from Judge Leisure by the close of business on Wednesday April 16, 2008.

Thank you for your assistance.  Please contact me if you have any questions or concerns.  Thank you.

Mark J. Plumer | Attorney | HellerEhrmanLLP | 1717 Rhode Island Avenue, NW | Washington, DC 20036
tel: +1.202.912.2021 | fax: +1.202.912.2202 | email:
mark.plumer@hellerehrman.com | web: www.hellerehrman.com

===============================================

This email is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the email and notify us immediately.

===============================================

# Exhibit E

Exhibit C
Part 3 of 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CENTURY INDEMNITY COMPANY, AS
SUCCESSOR TO CCI INSURANCE
COMPANY, AS SUCCESSOR TO
INSURANCE COMPANY OF NORTH
AMERICA and THE CONTINENTAL
INSURANCE COMPANY,

           Plaintiffs,

  - against -

FREEPORT-MCMORAN COPPER & GOLD
INC., AS THE CLAIMED SUCCESSOR
TO PHELPS DODGE CORPORATION, AS
THE CLAIMED SUCCESSOR TO CYPRUS
AMAX MINERALS COMPANY, AS THE
CLAIMED SUCCESSOR TO AMAX,
INC., AS SUCCESSOR TO AMERICAN
METAL CLIMAX, INC.,

           Defendants.



**ORDER**

08 Civ. 02012 (PKL)

**LEISURE, District Judge:**

    The Court hereby ORDERS that defendants' time to
answer, move, or otherwise respond to the Complaint is
extended for 30 days.  The pre-trial conference scheduled
for May 22, 2008 is hereby ADJOURNED to June 26, 2008 at
10:00 a.m.

**SO ORDERED.**

**New York, New York**

April **21** , 2008

_____

U.S.D.J.

Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

CENTURY INDEMNITY COMPANY, AS
SUCCESSOR TO CCI INSURANCE
COMPANY, AS SUCCESSOR TO
INSURANCE COMPANY OF NORTH
AMERICA and THE CONTINENTAL
INSURANCE COMPANY,

                Plaintiffs,

          v.

FREEPORT-MCMORAN COPPER & GOLD
INC., AS THE CLAIMED SUCCESSOR TO
PHELPS DODGE CORPORATION, AS THE
CLAIMED SUCCESSOR TO CYPRUS
AMAX MINERALS COMPANY, AS THE
CLAIMED SUCCESSOR TO AMAX INC.,
AS SUCCESSOR TO AMERICAN METAL
CLIMAX, INC.,

                Defendant.

--------------------------------------------------------------x

ELECTRONICALLY FILED

Index No. 08 Civ. 02012 (PKL)

## MEMORANDUM OF LAW OF DEFENDANT
## FREEPORT-MCMORAN COPPER & GOLD INC.
## IN SUPPORT OF ITS MOTION TO DISMISS OR STAY THIS ACTION

Mark J. Plumer (admitted *pro hac vice*)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C. 20036
(202) 912-2000

Lisa M. Cirando (LC 1916)
Chelsea J. Walsh (CW 1489)
HELLER EHRMAN LLP
7 Times Square
New York, New York 10036
(212) 832-8300

Attorneys for Defendant

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................. 5

ARGUMENT ...................................................................................................... 9

I. THIS CASE SHOULD BE DISMISSED BECAUSE IT IS PROCEDURALLY
   DEFECTIVE ................................................................................................ 9

   A. The Complaint Against Freeport Should be Dismissed Under Rule 12
      Because There Is No Case or Controversy And The Complaint Fails to
      State A Claim Upon Which Relief Can be Granted. ............................... 9

   B. AMRI Is A Necessary and Indispensable Party, And The Insurers'
      Inability To Join AMRI To This Action Requires Dismissal Under Rule
      12(b)(7) and Rule 19 ............................................................................. 13

      1. AMRI Is A Necessary Party ............................................................ 14

         a. AMRI Cannot Be Joined to this Action ................................... 15

         b. AMRI is an Indispensable Party .............................................. 16

II. THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE IN
    FAVOR OF THE MORE APPROPRIATE AND COMPREHENSIVE
    ACTION PENDING IN CALIFORNIA .................................................... 16

    A. The Court Should Abstain Pursuant To The Brillhart Doctrine. ......... 17

       1. This Insurance Dispute Involves No Federal Law Issues. ............. 18

       2. All Parties are Amenable to Process in the California Action,
          While Not All Necessary or Otherwise Relevant Parties Can Be
          Joined To This Action ..................................................................... 18

       3. The California Action Will Allow The Claims Of All Parties In
          Interest To Be Satisfactorily Adjudicated ..................................... 18

       4. Abstention Will Avoid Duplicative Proceedings and Inconsistent
          Results ............................................................................................ 19

       5. The Totality of Other Circumstances Likewise Favor Abstention ... 20

    B. The Court Should Abstain Pursuant To the Colorado River Doctrine. .... 21



1.    Abstention is Necessary to Avoid Piecemeal Litigation ............................22

2.    The Fact that this Action was Filed First does not Militate
      Against Abstention ...................................................................................23

3.    No Federal Law is Implicated Here...........................................................23

4.    The Inconvenience of the Federal Forum ..................................................23

5.    The California Action will Adequately Protect Insurers' Rights ..............24

CONCLUSION...............................................................................................................24

ii

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*
   436 F.3d 82 (2d Cir. 2006) ............................................................................... 12

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*
   961 F. Supp. 652 (S.D.N.Y. 1997) ................................................................... 22

*Am. Home Assur. Co. v. Babcock & Wilcox Co.*
   No. 06-CV-6506, 2007 WL 4299847 (E.D.N.Y. Dec. 6, 2007) ...................... 14

*AmSouth Bank v. Dale*
   386 F.3d 763 (6th Cir. 2004) ........................................................................... 21

*Brillhart v. Excess Ins. Co. of America*
   316 U.S. 491 (1942) ............................................................................... passim

*Calhoun v. La. Materials Co.*
   206 So. 2d 147 (La. Ct. App. 1968) ................................................................ 13

*Colorado River Water Conser. Dist. v. United States*
   424 U.S. 800 (1976) ............................................................................... passim

*Commercial Underwriters Ins. Co. v. Glowmaster Corp.*
   105 F. Supp. 2d 268 (S.D.N.Y. 2000) ............................................................ 20

*Conley v. Gibson*
   355 U.S. 41 (1957) .......................................................................................... 13

*Cont'l. Ins. Co. v. Wickes Cos. Inc.*
   No. 90 Civ. 8215, 1991 WL 193771 (S.D.N.Y. Sept. 6, 1991) ...................... 20

*DiVittorio v. Equidyne Extractive Indus., Inc.*
   822 F.2d 1242 (2d Cir. 1987) ......................................................................... 13

*E & L Consulting, Ltd. v. Doman Indus.Ltd.*
   472 F.3d 23 (2d Cir. 2006) ............................................................................. 12

*Ente Nazionale Idrocarburi v. Prudential Securities Group, Inc.*
   744 F. Supp. 450 (S.D.N.Y. 1990) ................................................................. 15

*Fireman's Fund Ins. Co v. Chris Craft Indus.. Inc.*
   932 F. Supp. 618 (S.D.N.Y. 1996) ................................................................. 19

*Gen. Reins. Corp. v. CIBA-Geigy Corp.*
   853 F.2d 78 (2d Cir. 1998) ............................................................................. 23

*Gen. Star Int'l Indem. Ltd v. Chase Manhattan Bank*
   No. 01 Civ. 1139, 2002 WL 850012 (S.D.N.Y. May 3, 2002) .............. 21, 22, 23, 24

*Gilbraltar Sav. v. LDBrinkman Corp.*
   860 F.2d 1275 (5th Cir. 1988) ........................................................................ 13

*Global Disc. Travel Serv., LLC v. Trans World Airlines, Inc.*
   960 F. Supp. 701 (S.D.N.Y. 1997) ...............................................................14, 15, 16

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*
   735 F. Supp. 581 (S.D.N.Y. 1990) .........................................................................17, 20

*Hess v. L.G. Balfour Co., Inc.*
   822 F. Supp. 84 (D. Conn. 1993) ..............................................................................13

*Int'l. Customs Assocs., Inc. v. Ford Motor Co.*
   893 F. Supp. 1251 (S.D.N.Y. 1995) ..........................................................................13

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ...................................................................................................12

*Maltz v. Union Carbide Chemical & Plastics Co.*
   992 F. Supp. 286 (S.D.N.Y. 1998) ............................................................................13

*Marakova v. United States*
   201 F.3d 110 (2d Cir. 2000) ......................................................................................10

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*
   312 U.S. 270 (1941) ...................................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
   460 U.S. 1 (1983) ......................................................................................................22

*N. Am. Airlines, Inc. v. Int'l Broth. of Teamsters, AFL-CIO*
   No. 04 Civ. 9949, 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) ..............................21

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hick, Muse, Tate & Furst, Inc.*
   No. 02 Civ. 1334, 2002 WL 1482625 (S.D.N.Y. July 10, 2002) ..................11, 12, 13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Warrantech Corp.*
   No. 00 Civ. 5007, 2001 WL 194903 (S.D.N.Y. Feb. 27, 2001) ..........................18, 19

*Natowitz v. Mehlman*
   542 F. Supp. 674 (S.D.N.Y. 1982) ............................................................................13

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*
   94 F.3d 747 (2d Cir. 1996) ........................................................................................10

*Randolph Found. v. Duncan*
   No. 00 Civ. 6445, 2002 WL 32862 (S.D.N.Y. Jan. 11, 2002) .................................14

*Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp.*
   No. 94 CIV. 6971, 1996 WL 61763 (S.D.N.Y. Feb. 3, 1996) .......................18, 19, 20

*Robinson v. Gov't of Malaysia*
   269 F.3d 133 (2d Cir. 2001) ........................................................................................9

*Shimkin v. Tompkins, McGuire, Wachenfeld & Barry*
   No. 02 Civ. 9731, 2003 WL 21964959 (S.D.N.Y. Aug. 19, 2003) ...........................16

*Travelers Indem. Co. v. Philips Elec. N. Am. Corp.*
   No. 02 Civ. 9800, 2004 WL 193564 (S.D.N.Y. Feb. 3, 2004) ..................................18

*Valley Forge Coll. v. Americans Unitedfor the Separation of Church and State*
    454 U.S. 464 (1982) ..................................................................................................10

*Wilton v. Seven Falls Co.*
    515 U.S. 277 (1995) ............................................................................................ passim

## STATE CASES

*Cont'l Ins. Co. v. AMAX Inc.*
    No. 19737/91 (N.Y. Sup. Ct. June 26, 1992), 6 Mealey's Litig. Rpts.: Ins. No. 34, at B-1
    (July 14, 1992).......................................................................................................3, 8

*Cont'l Ins. Co. v. AMAX Inc.*
    192 A.D.2d 391, 596 N.Y.S.2d 370 (1st Dep't 1993)..............................................4, 8

*Landoil Res. Corp. v. Alexander & Alexander Serv., Inc.*
    77 N.Y. 28, 565 N.E.2d 488 (N.Y. 1990) ..................................................................15

*WarckMeister v. Diana Lowenstein Fine Arts*
    7 A.D. 3d 351, 775 N.Y.S.2d 859 (1st Dep't 2004)...................................................16

*Washington Mut. Bank, FA v. Superior Court*
    24 Cal. 4th 906, 15 P.3d 1071 (Cal. 2001) ...............................................................19

## STATUTES, RULES AND CONSTITUTIONS

15 U.S.C.A. § 1011 (1945)...............................................................................................18

28 U.S.C.A. § 2201 (2006) ..............................................................................................10

CPLR 302(a)(1) (McKinney's 2008).................................................................................15

Fed. R. Civ. P. 9(b) ..........................................................................................................13

Fed. R. Civ. P. 12 ..........................................................................................................1, 16

Fed R. Civ. P. 12(b)(1) ....................................................................................................1, 10

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 9, 12, 13

Fed. R. Civ. P. 12(b)(7) ..................................................................................2, 13, 14

Fed. R. Civ. P. 19................................................................................................1, 13, 16

Fed. R. Civ. P. 19(a)(1)(B)(i) ..........................................................................................14

Fed. R. Civ. P. 19(a)(1)(B)(ii) .........................................................................................15

Fed. R. Civ. P. 19(b) .....................................................................................................2, 16

U.S. Const. art. III § 2 cl. 1..............................................................................................10

## OTHER AUTHORITIES

1 William Meade Fletcher et al., <u>Fletcher Cyclopedia of the Law of Private Corporations</u> § 26
    (perm. ed., rev. vol. 2007) .........................................................................................11

Defendant Freeport-McMoRan Copper & Gold Inc. ("Freeport") respectfully submits this Memorandum of Law in Support of its Motion to dismiss or stay this action. First, the current action is procedurally defective under Federal Rules of Civil Procedure ("FRCP") 12 and 19. Second, the Court should abstain from hearing this action in lieu of another action now pending in California pursuant to the abstention doctrines set forth by the U.S. Supreme Court in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) and *Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800 (1976).

## INTRODUCTION

This is an insurance dispute between two primary insurers, Continental Insurance Company ("Continental") and Century Indemnity Company ("Century") (collectively the "insurers"), and the policyholders to whom they issued liability insurance. The particular question presented is whether insurers are obliged to pay defense costs related to the review of certain documents potentially relevant to pending discovery requests in ongoing litigations over asbestos bodily injury claims asserted against Amax Metals Recovery, Inc. ("AMRI").

To begin, insurers have sued the wrong party. The only defendant sued by insurers in this case is Freeport. Yet, Freeport is not a party to any of the contracts of insurance at issue. Freeport is not a defendant in any of the underlying asbestos claims for which coverage is claimed. Furthermore, Freeport is not claiming on the policies. Freeport's only connection to this dispute is that it is the ultimate parent of a series of companies, two of whom were issued coverage directly by insurers and claim coverage for the defense costs in dispute in this case. On these facts, not one of insurers' claims support the exercise of this Court's jurisdiction, and the case should be dismissed pursuant to FRCP 12(b)(1) and 12(b)(6).

Insurers also have failed to sue the proper parties, at least one of whom is indispensable and cannot be joined in this action. The two necessary parties to this dispute are Cyprus Amax

1

Minerals Company ("Cyprus Amax") and AMRI. Cyprus Amax is the corporate successor by merger to AMAX Inc., a Named Insured on policies issued by Continental and Century. AMRI is a former subsidiary of AMAX Inc. and a current subsidiary of Cyprus Amax, and is also a Named Insured on the policies issued by Continental and Century. Cyprus Amax and AMRI are defending multiple lawsuits for alleged bodily injuries arising out of exposure to asbestos at AMRI's nickel refinery in Braithwaite, Louisiana. The current dispute over Continental's and Century's insurance obligations arise solely out of these lawsuits, all of which are pending in Louisiana. AMRI, at least, cannot involuntarily be joined as a defendant, because this Court lacks personal jurisdiction over it. Hence, this action is properly dismissed under FRCP 12(b)(7) and 19(b).

Putting aside the procedural defects of insurers' pleading, the Court should exercise its discretion and abstain from asserting jurisdiction in this case and should allow a recently filed, more comprehensive state court action to proceed in California. *Cyprus Amax Minerals Co., et al. v. Cont'l. Casualty Co., et al.*, No. BC391068 (Super. Ct. L.A. County). The California action includes as plaintiffs both Cyprus Amax and AMRI. In addition to naming as defendants Continental and Century, the California action also names as defendants four additional insurers interested in the dispute. These other insurers are interested because the document collection giving rise to the current dispute involved the commingled documents of AMAX Inc. and Cyprus Mines Corporation, and their former predecessors and subsidiaries; these two companies merged in 1993 to create Cyprus Amax. The historic insurers of Cyprus Mines Corporation likewise dispute their obligation to pay the disputed defense costs for review of the commingled document collection. Whether such costs are covered under the AMAX Inc. and AMRI policies, on the one hand, and the Cyprus Mines Company policies, on the other hand, will require nearly identical

2

discovery and application of similar or identical legal principles. Importantly, pursuant to a 2007 settlement agreement between the four Cyprus Mines insurers and Cyprus Amax, any such disputes between them must be heard in California State Court (in Los Angeles County) and decided pursuant to California law. Thus, the Cyprus Mines insurers cannot be sued over this dispute in New York while the insurers in this case (who do business in California) can be joined to the California case.

Moreover, this dispute does not involve the New York forum nor any federal issue. The underlying claims are all in Louisiana and brought against a Louisiana defendant (AMRI). The witnesses and documents at issue are predominantly in Arizona, where the documents at the center of this case are located and were reviewed and where Cyprus Amax is headquartered. Other known witnesses and documents may be found in Chicago (where Continental is headquartered) and Philadelphia (where Century is headquartered). AMAX Inc. and Continental both were at one time headquartered in New York, but both left long ago, and there is no dispute in this case about contract formation as Cyprus Amax has copies of the disputed policies and the wording at issue is standard-form. Interpretation of the policies will be pursuant to state substantive law and no federal statute or policy is implicated.

This is simply a case of forum shopping by Continental and Century, and it should not be countenanced. It is not the first time these insurers have tried to take a bite at this apple. In 1992, Continental filed a lawsuit against AMAX Inc. in state court in New York and sought declaratory relief under the same policies seeking the application of New York law. *Cont'l Ins. Co. v. AMAX Inc.*, No. 19737/91 (N.Y. Sup. Ct.). Continental claimed that New York was the proper forum because the parties had once been headquartered in New York, AMAX Inc.'s broker was resident in New York, the policies allegedly had been formed in New York, and the claims then at issue

(over environmental liabilities) had been negotiated in New York. Notwithstanding, the action was dismissed on AMAX Inc.'s motion in favor of a later-filed Colorado lawsuit that included the actual subsidiaries against whom claims had been made (who resided outside of New York). On an appeal taken by Continental <u>and</u> Century (the two plaintiffs here), the New York Appellate Division held that "[s]ince [Continental] commenced this action at a time when negotiations for settlement of these claims were taking place, we afford plaintiff no benefit from having commenced this action before defendant Amax commenced its similar Colorado action." *Cont'l Ins. Co. v. AMAX Inc.*, 192 A.D.2d 391, 391, 596 N.Y.S.2d 370, 370-71 (1st Dep't 1993). History repeats itself. Once again, the factual predicate for this lawsuit is that the policyholder presented a claim and sought to resolve it outside of court, but the insurers filed a tactical lawsuit in New York in an effort to preempt the insured's choice of forum and to secure what they obviously consider to be a more favorable forum and the application of New York law.

Taking into account all of the relevant facts and circumstances, the Court should exercise its discretion and abstain from hearing this case. The California action is the only suit that can comprehensively resolve all of the issues presently in dispute, among all of the relevant parties in interest, including the insurer-plaintiffs in this case, the historical Cyprus Mines Company insurers, Cyprus Amax Minerals Company and AMRI. All of the insurers' claims sought to be decided – whether declaratory judgment, unjust enrichment or fraud – can be decided in the California action. The abstention doctrine set forth by the U.S. Supreme Court in *Wilton*, 515 U.S. at 286 most properly applies here. Insurers transparent attempt to plead around *Wilton* by filing an Amended Complaint and adding claims for unjust enrichment and fraud *after* Freeport advised the Court of its intention to file an abstention motion pursuant to *Wilton* cannot transform what is essentially a declaratory judgment action over insurance coverage into

4



something more. Gamesmanship of this sort should not be tolerated. Even if the Court were to find that insurers' eleventh-hour amendment allows them to circumvent *Wilton*, it does not change the outcome. This action also presents sufficiently "exceptional circumstances" to permit abstention under the *Colorado River* abstention doctrine.

## STATEMENT OF FACTS

<u>The Relevant Corporate History</u>

AMAX Inc., formerly named American Metal Climax, Inc., purchased liability insurance from Century from at least the 1960's to the mid-1970's and from Continental from the mid-1970's until at least 1986. Affidavit of Victoria Bellamy, sworn to on May 22, 2008 ("Bellamy Aff."), at ¶¶ 4, 6. In 1971, AMAX Inc. formed a subsidiary, AMRI, to operate a nickel refinery in Braithwaite, Louisiana. Affidavit of Michelle A. Hughes, sworn to on May 22, 2008 ("Hughes Aff."), at ¶ 4. The subsidiary, originally named Amax Nickel Refining Company Inc., later changed its name to Amax Metals Recovery, Inc. or AMRI. Hughes Aff. ¶ 4. In 1993, AMAX Inc. merged into Cyprus Minerals Company, which immediately changed its name to Cyprus Amax Minerals Company or Cyprus Amax. Hughes Aff. ¶ 6. Cyprus Amax and AMRI remain corporations in good standing, though they are now subsidiaries of Phelps Dodge Corporation, which, in turn, is a subsidiary of Freeport-McMoRan Copper & Gold, Inc. Hughes Aff. ¶ 7-9.

<u>The AMAX Inc. And AMRI Policies</u>

Considering that AMRI was not formed until 1971, any claims based on exposure to asbestos at the AMRI facility would appear to implicate only those policies issued beginning in 1971. The policies issued by Century, then named Insurance Company of North America, from 1971-75, all were issued to American Metal Climax, Inc. (now Cyprus Amax), and all include the following definition: "'Named Insured' means the person or organization named in the

declarations of this policy and shall include any of its subsidiaries and any other company of which it assumes active management." Hughes Aff. ¶ 7.

The policies issued by Continental from 1975-86 all were issued to AMAX Inc. (now Cyprus Amax), and all include an Endorsement which includes a Schedule of additional Named Insureds, including either "Amax Nickel Refining Co., Inc." or "AMAX Inc. and "any Subsidiary, Affiliated or Related Company and any other Company coming under the Named Insured's control of which it assumes active Management." Hughes Aff. ¶ 5.

The Claims Arising Out Of AMRI Operations

Lawsuits seeking damages for bodily injury related to AMRI's historic nickel refinery operations are pending exclusively in Louisiana against AMRI (the "AMRI Actions"). Bellamy Aff. ¶ 9. Since approximately the middle of 2004, Continental and Century each have provided coverage for the AMRI Actions, including paying defense costs related to the AMRI Actions. Bellamy Aff. ¶ 12.

The Current Dispute Over AMRI's Defense Costs

Beginning in February 2007, Cyprus Amax commenced a review of commingled AMAX Inc. and Cyprus Minerals Company documents. Affidavit of Gregory D. Winfree, sworn to on May 22, 2008 ("Winfree Aff."), at ¶ 3 . The review was undertaken in response to outstanding discovery requests in the AMRI Actions as part of the defense of the AMRI Actions (the "Document Review"). Winfree Aff. ¶ 4. The review also was undertaken in response to outstanding discovery requests in defense of certain actions pending against Cyprus Minerals Company and/or its historic subsidiaries or predecessors (the "Cyprus Actions"). Winfree Aff. ¶ 5.

The Cyprus Minerals Company component of the review is governed by a confidential settlement agreement (the "2007 Agreement") entered into by Cyprus Amax and its four primary

6



insurers providing coverage for the historic operations of Cyprus — Continental Casualty

Company, American Insurance Company, Old Republic Insurance Company , and Truck

Insurance Company (collectively, the "Cyprus Insurers"). The 2007 Agreement sets out the

parties' respective duties and responsibilities towards one another, including the payment of

defense costs. It also provides that any breach of the 2007 Agreement shall be enforced in an

action in the Los Angeles Superior Court and shall be construed under California law. Winfree

Aff. ¶ 7.

The AMAX Inc. component of the review, involving the insurer-plaintiffs in this case, are

governed by the insurance policies described *supra* at 4-5, none of which contain choice of forum

or choice of law provisions. Bellamy Aff. ¶¶ 5, 7. Once it realized that Continental and Century

were reneging on their duty to defend with respect to the Document Review, Cyprus Amax

initiated discussions with its insurers in an effort to resolve the dispute. On December 6, 2007,

principals from Freeport, on behalf of Cyprus Amax and AMRI, traveled to Philadelphia to meet

with principals from CNA, the parent of Continental, and Resolute Management, a claims

management company acting on behalf of Century. Bellamy Aff. ¶ 15. On December 21, 2007,

insurers were provided information requested at the December 6 meeting and were requested by

letter to provide "your written commitment to participate in the Cyprus Amax review project no

later than 5:00 p.m. EST on January 31, 2008." Bellamy Aff. ¶ 16; Declaration of Chelsea J.

Walsh, dated May 22, 2008 ("Walsh Decl."), Ex. A. On January 11, 2008, Century sent a letter

stating that the information provided to date "is insufficient for us to make a decision regarding

our commitment to this Project at this time" and requested the opportunity to tour the Document

Review facility in Arizona on January 31, 2008. Bellamy Aff. ¶ 17; Walsh Decl. Ex. B. On

January 14, 2008, CNA wrote that "CNA is currently in the process of reviewing all of the



information at its disposal with regard to the project . . .and will continue to do so . . .it is simply

not feasible to relay our position at present." Bellamy Aff. ¶ 18; Walsh Decl. Ex. C.  On January

31, 2008, Century and CNA sent representatives to Arizona to tour the facility where the

Document Review was ongoing.  Bellamy Aff. ¶ 19.  Without warning and to Freeport's, Cyprus

Amax's and AMRI's complete surprise, Continental and Century filed this lawsuit on February

28, 2008 in lieu of providing a commitment or other response to the pending claim discussion.

Bellamy Aff. ¶ 20; Winfree Aff. ¶ 9.

The Insurers' Forum Shopping

     This is not the first time that Cyprus Amax's insurers have strategically filed a lawsuit in

New York in the midst of ongoing negotiations over a claim.  Continental did so in 1992

regarding nationwide environmental claims asserted against AMAX Inc. and its subsidiaries.

*Cont'l Ins. Co. v. AMAX Inc.*, No. 19737/91 (N.Y. Sup. Ct. June 26, 1992), *reprinted in* 6

*Mealey's Litig. Rpts.: Ins.* No. 34, at B-1 (July 14, 1992); *see* Walsh Decl. Ex. D.  AMAX Inc.

moved to dismiss in favor of its later-filed lawsuit in Colorado.  The New York trial court granted

AMAX Inc.'s motion to dismiss.  Walsh Decl. ¶ 5.  The trial court pointed out in its decision that

"[i]t is undisputed that prior to the commencement of either action, the parties met to discuss the

potential environmental claims of AMAX and its subsidiaries and the coverage issues.  AMAX

claims it relied on Continental's misrepresentations that it intended to negotiate in good faith out

of court, and thus, delayed in commencing its action." *Id.* at 10.  The trial court ultimately found

"special circumstances" and favored dismissal of the New York action "in the interest of

discouraging forum shopping." *Id.* at 11.  Continental and Century jointly appealed.  In its ruling

affirming the dismissal, the New York state appellate court likewise chastised insurers for filing

suit without warning during an ongoing negotiation. *Cont'l Ins.*, 192 A.D.2d at 391.  The

Colorado court ultimately applied Colorado law to the policies.  Walsh Decl. ¶ 6, Ex. E.

<u>The Insurers' Amended Complaint</u>

      Continental and Century filed this diversity lawsuit against Freeport on February 28, 2008. In their original Complaint ("Orig. Compl."), insurers sought only a declaratory judgment that the policies they issued to AMAX Inc. did not obligate them to contribute to the costs of the Document Review. Orig. Compl. ¶ 26; Walsh Decl. Ex. F. After Freeport advised the Court (on April 16th) that it intended to move to dismiss the action under the *Wilton* abstention doctrine, insurers amended their Complaint (on May 9th ) to add claims for unjust enrichment and fraud ("Amd. Compl."). Amd. Compl. ¶¶ 1, 41-44, 59-74; Walsh Decl. Ex. G .

<u>Cyprus Amax's More Comprehensive Lawsuit In California</u>

      On May 16, 2008, Cyprus Amax and AMRI filed an insurance coverage action in the Los Angeles Superior Court, naming the two AMAX Insurers and the four Cyprus Insurers ("CA. Compl.") as defendants. Walsh Decl. Ex H.

## **ARGUMENT**

## I.    **THIS CASE SHOULD BE DISMISSED BECAUSE IT IS PROCEDURALLY DEFECTIVE**

      A.    The Complaint Against Freeport Should be Dismissed Under Rule 12 Because There Is No Case or Controversy And The Complaint Fails to State A Claim Upon Which Relief Can be Granted.

      Pursuant to Rules 12(b)(1) and 12(b)(6), insurers' Amended Complaint is deficient because it sues the wrong party. The Amended Complaint identifies a single defendant: Freeport-McMoRan Copper & Gold, Inc. Amd. Compl. ¶ 4; Walsh Decl. Ex. G. But, Freeport is not a Named Insured under any of the policies of insurance at issue in this lawsuit. Amd. Compl. ¶¶ 15-16; Walsh Decl. Ex. G. Moreover, Freeport is not a defendant in any of the Louisiana claims asserted against AMRI as a result of the historic operation of its nickel refinery. Bellamy Aff. ¶ 10. Perhaps most important, Freeport is not making a claim for coverage for the defense costs

related to the Document Review at issue in this case nor is it making a claim of any kind under

Continental and Century's policies for any of the claims asserted against AMRI. Bellamy Aff. ¶

11. Freeport's only connection to this dispute is that it is the ultimate parent of Cyprus Amax and

AMRI. *See supra* at 5.

First and foremost, therefore, the Amended Complaint is deficient, because it fails to

identify a case and controversy mandating dismissal under Rule 12(b)(1).[1] Federal courts possess

subject matter jurisdiction over "justiciable" declaratory judgments. *See* U.S. Const. art. III, § 2,

cl. 1; *Valley Forge Coll. v. Americans United for the Se*, 454 U.S. 464, 471 (1982); *Niagara*

*Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747 (2d Cir. 1996). Under

the Declaratory Judgment Act, 28 U.S.C. § 2201, a case is justiciable only when the "facts

alleged, under all the circumstances, show that there is a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

There is no "controversy" between Freeport and the plaintiff-insurers in this case. There is

no privity between Freeport and the insurers, as Freeport was not insured under the insurance

policies at issue in this case; indeed, at the time these policies were issued, there was no corporate

relationship between Freeport and what was then AMAX Inc. Hughes Aff. ¶¶7-8. In the caption

of the Amended Complaint, insurers plead that Freeport is the "successor" to Phelps Dodge,

Cyprus Amax and AMRI, although in the body of the Amended Complaint, insurers allege no

more than that "Freeport McMoRan acquired Phelps Dodge Corporation." Amd. Compl. ¶¶ 9-14,

---

[1] To sustain an action upon a motion to dismiss under Rule 12(b)(1), insurers must prove jurisdiction
"by a preponderance of the evidence." *See Marakova v. United States*, 201 F.3d 110, 113 (2d Cir.
2000). A court considering a 12(b)(1) motion is not limited to the face of complaint, but may
consider evidence, including affidavits submitted by the parties. *See Robinson v. Gov't of Malaysia*,
269 F.3d 133, 141 n. 6 (2d Cir. 2001).



Walsh Decl. Ex. G. To be clear, Phelps Dodge is a subsidiary of Freeport, Cyprus Amax is a

subsidiary of Phelps Dodge, and AMRI is a subsidiary of Cyprus Amax. Hughes Aff. ¶¶4, 7-8.

To the extent that insurers suggest that a parent and its subsidiary corporations are alter egos or

otherwise one and the same, they are wrong as a matter of well-established law.

A leading treatise on corporate law, states the rule as follows:

A 'subsidiary corporation' is one that is controlled by another corporation by
reason of the latter's ownership of at least a majority of the shares of the capital
stock. A subsidiary corporation is presumed to be a separate and distinct entity
from its parent corporation. This rule applies even where one corporation wholly
owns another ... the mere ownership of the capital stock of one corporation by
another does not create an identity of corporate interest between the two
companies, or create the relationship of principal and agent, or representative, or
alter ego between the two. Accordingly, a parent corporation does not, for reason
of owning the stock of a subsidiary, alone, own or have legal title to the assets of
the subsidiary. This rule applies equally to the subsidiaries of a subsidiary.

1 William Meade Fletcher et al., <u>Fletcher Cyclopedia of the Law of Private Corporations</u> § 26

(perm. ed., rev. vol. 2007)

A federal district court in the Southern District of New York unsurprisingly dismissed a

parent-policyholder from a lawsuit brought against it by insurers where only its subsidiary's

liabilities were at issue. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hick, Muse, Tate & Furst,*

*Inc.*, No. 02 Civ. 1334, 2002 WL 1482625, *4 (S.D.N.Y. July 10, 2002) ("*Hicks Muse*"). The

insurer in *Hicks Muse* sought a declaratory judgment of no coverage against the parent, Hicks

Muse, for claims pending against its subsidiary, International Wire Group, Inc. ("IWG"), relating

to underlying lawsuits alleging damages from exploding washing machines assembled with IWG

hoses. *Id.* at *1. IWG alone sought coverage as an insured under policies issued to Hicks Muse.

*Id.* at *2. The court held that the insurer's declaratory judgment action against Hicks Muse was

neither ripe nor justiciable because Hicks Muse (i) had not submitted any demand for coverage;



(ii) had not been named as a defendant in any of the underlying lawsuits; and (iii) had not received notice of any potential claim against it. *Id.* at *4.

Freeport is even further removed than the corporate parent in *Hicks Muse*, because it is not named in the policies, is not claimed to have caused the alleged bodily injury arising out of AMRI operations, and is not asserting any rights to coverage under the policies issued by Continental and Century. *See supra* at 9. In sum, Freeport is a virtual stranger to this dispute except in so far as it may have assisted its subsidiary in making the subsidiary's claim for coverage, which is no more than Continental's parent – CNA – did during pre-litigation negotiation of the claim. *See supra* at 7. As between insurers and Freeport, there simply is no dispute, let alone a ripe, justiciable claim for declaratory relief. Based on *Hicks Muse* and the relevant facts, Plaintiffs' claims against Freeport should be dismissed as failing to meet the minimum Constitutional requirement of a case and controversy sufficient to confer subject matter jurisdiction on the Court.[2]

In addition, the Amended Complaint fails to state a claim under Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 28 (2d

---

[2]    The insurers' more recently pled claims likewise are deficient. "An important component of the Article III jurisdictional limit of federal courts to decide 'cases' or 'controversies' is standing. In order for this Court to exercise its jurisdiction, Plaintiffs must allege (i) an injury-in-fact that is (ii) fairly traceable to defendants' allegedly unlawful conduct that is (iii) likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). Plaintiffs bear the burden of establishing the elements of standing. *Lujan*, 504 U.S. at 561. There are no facts to support the conclusion that either the fraud or the unjust enrichment claims allege harm that is "fairly . . . trace[able] to the challenged action of [Freeport], and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 561. Freeport is a corporate parent, twice removed from the parties with direct claims to coverage. Amd. Compl. ¶¶ 9-14, Walsh Decl. Ex. G. Freeport has made no claim for benefits under the Policies. Bellamy Aff. ¶ 11. Continental's claim for fraud makes no mention of Freeport whatsoever; rather, it repeatedly identifies Cyprus Amax and Phelps Dodge. Amd. Compl. ¶¶ 59-74; Walsh Decl. Ex. G. The claim for unjust enrichment seeks "damages for amounts billed to and paid by Century and Continental for uncovered defense costs purportedly related to the Louisiana Litigation." Amd. Compl. Count II(i); Walsh Decl. Ex. G. Plaintiffs have not presented – and cannot present – proof to demonstrate that Freeport is the entity that directed the allegedly improper allocations or billings and/or that Freeport is the entity that directly received and benefited from the payments. Therefore, Plaintiffs lack standing to assert such ancillary claims against Freeport.

Cir. 2006); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Again, *Hicks Muse* controls. The

*Hicks Muse* court flatly refused, as legally unsupportable, the insurer's invitation that it disregard

the corporate form to permit a coverage declaration against the parent as to its subsidiary's

liability. 2002 WL 1482625, at *4 (citing cases). Insurers in this case cannot even avail

themselves of the factual arguments relied upon by the insurer in *Hicks Muse*, because Freeport (i)

did not procure the policy; (ii) is not an insured; and (iii) did not pay premiums. Thus, as in *Hicks*

*Muse*, this Court should be guided by the rule that "parent and subsidiary corporations [are

regarded] as legally distinct, and [courts] generally do not treat a contract under the name of one

as that of both[,]" and dismiss the pending claim for declaratory judgment. *Id.; see e.g.*,

*Gilbraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1286-87 (5th Cir. 1988); *Maltz v. Union*

*Carbide Chem. & Plastics Co.*, 992 F. Supp. 286, 300 (S.D.N.Y. 1998); *Int'l. Customs Assocs.*,

*Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1255 (S.D.N.Y. 1995), *Hess v. L.G. Balfour Co., Inc.*,

822 F. Supp. 84, 86 (D. Conn. 1993); *Calhoun v. La. Materials Co.*, 206 So.2d 147, 150 (La. Ct.

App. 1968).[3]

      B.      AMRI Is A Necessary and Indispensable Party, And The Insurers' Inability To
              Join AMRI To This Action Requires Dismissal Under Rule 12(b)(7) and Rule 19

      Rule 19 establishes a two-step process for determining whether an action should be

dismissed for non-joinder.[4] The Court first must evaluate whether the party is necessary.[4] *See*

---

[3]    Continental also "can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief" as
against Freeport for fraud. Amd. Compl. ¶¶ 59-74; Walsh Decl. Ex. G. Continental makes no mention of
Freeport whatsoever in its fraud pleadings. According to Rule 9(b), fraud claims must be alleged with
particularity and fraud allegations "should inform each defendant of the nature of his alleged participation in
the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Natowitz v.
Mehlman*, 542 F. Supp. 674, 676 (S.D.N.Y. 1982). The fraud claim fails to meet these standards and must be
dismissed for failure to state a claim under Rule 12(b)(6).

[4]    According to Rule 19(a)(1), a party is necessary if: "(B) that party claims an interest in relating to the subject
of the action and is so situated that disposing of the action in the party's absence may: (i) as a practical matter
impair or impede the party's ability to protect the interest, or (ii) leave an existing party subject to a substantial
risk of incurring double, multiple or otherwise inconsistent liability obligations because of the interest."

*(Footnote continued)*

*Randolph Found. v. Duncan*, No. 00 Civ. 6445, 2002 WL 32862, at *4 (S.D.N.Y. Jan. 11, 2002). If the party is deemed necessary, then it must be joined. If, however, joinder is not feasible, then the court must determine if the party is indispensable. *Global Disc. Travel Serv., LLC v. Trans World Airlines Inc.*, 960 F. Supp. 701, 709 (S.D.N.Y. 1997). Here, dismissal is mandated by Rule 12(b)(7) and Rule 19, because AMRI is necessary and indispensable and cannot be joined because this Court lacks personal jurisdiction over it.

    1.    <u>AMRI Is A Necessary Party</u>

    AMRI is a necessary party under Rule 19(a)(1)(B)(i) because it (and not Freeport) has a clear interest in the subject matter and outcome of this action. *Am. Home Assur. Co. v. Babcock & Wilcox Co.*, No. 06-CV-6506, 2007 WL 4299847, at *2 (E.D.N.Y. Dec. 6, 2007) (co-insurer and named party to contract is necessary); *Randolph Found.*, 2002 WL 32862, at *4 ("[I]t is well established that a party to a contract which is the subject of the litigation is considered a necessary party."); *Global Disc. Travel Serv.*, 960 F. Supp. at 707-08 (same). AMRI is a Named Insured under Continental's and Century's Policies. *See supra* at 6. Moreover, as insurers acknowledge, AMRI (not Freeport) is the defendant in the Underlying Actions and "AMRI . . . has sought and continues to seek reimbursement of certain claimed costs of defending itself in the Louisiana Litigation under the Century and Continental policies." Amd. Comp. at ¶¶ 17-18; Walsh Decl. Ex. G.

    On these facts, it is indisputable that AMRI's rights to coverage will be affected by the outcome of this litigation and that AMRI will be unable to protect its interests should the coverage issues be determined in this Court in its absence. *Babcock*, 2007 WL 4299847, at *5; *Global*

---

Generally, in an insurance coverage action, a party with coverage rights that will be determined by the outcome of the case is deemed a necessary party. *Am. Home Assur. Co. v. Babcock & Wilcox Co.*, No. 06-CV-6506, 2007 WL 4299847, at *5 (E.D.N.Y. Dec. 6, 2007).

*Disc. Travel Serv.*, 960 F. Supp. at 708; *Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.*, 744 F. Supp. 450, 458 (S.D.N.Y. 1990). Under Rule 19(a)(1)(B)(ii), there is a significant risk that the parties will incur inconsistent obligations. *Global Disc. Travel Serv.*, 960 F. Supp. at 708-09; *Entze Nazionale*, 744 F. Supp. at 458. AMRI is a plaintiff in the California action where it has chosen to assert its coverage claims and has raised breach of contract and declaratory judgment claims against insurers that duplicate the claims raised here, creating the risk of inconsistent results. *See infra* at Section II.A.4 at p. 19. It is inconceivable that AMRI's rights to coverage can be determined in this case in its absence.

       a.     <u>AMRI Cannot Be Joined to this Action</u>

      Although AMRI is a necessary party, it cannot be joined to this action because this Court lacks personal jurisdiction over it. Although insurers mention AMRI in their Amended Complaint after they were alerted by Freeport to AMRI's importance, insurers did not seek to add AMRI as a defendant nor do any of their pleadings even suggest facts sufficient to demonstrate personal jurisdiction exists. A "foreign corporation," such as AMRI, is only "amenable to suit in New York courts under CPLR 301 if it has engaged in such continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." *Landoil Res. Corp. v. Alexander & Alexander Serv., Inc.* 77 N.Y. 28, 33, 565 N.E.2d 488, 490 (N.Y. 1990). There is no evidence that AMRI has been present in New York at all, let alone with the "fair measure of permanence and continuity" required to find its presence here for jurisdictional purposes. *See id.* at 34. Rather, AMRI is organized under the laws of Delaware and is licensed to conduct business only in Louisiana. Hughes Aff. ¶ 4. Furthermore, there is no evidence that AMRI has "purposefully availed [itself] of the privilege of transacting business in New York" in any manner that would support jurisdiction over AMRI under New York's long-arm statute, CPLR 302(a)(1),



and on information and belief it has not. *WarckMeister v. Diana Lowenstein Fine Arts*, 7 A.D. 3d 351, 352 (1st Dep't 2004).

        b.    <u>AMRI is an Indispensable Party</u>

Because AMRI is a necessary party and joinder is infeasible, Rule 19(b) requires that this Court determine whether "in equity and good conscience" the action should continue. *Global Disc. Travel Serv.*, 960 F. Supp. at 707. Here, the equities strongly favor dismissal. Any judgment rendered in this action will affect AMRI's ability to protect its coverage interests under the policies. *See Shimkin v. Tompkins, McGuire, Wachenfeld & Barry*, No. 02 Civ. 9731, 2003 WL 21964959 (S.D.N.Y. Aug. 19, 2003). At the same time, the opportunity exists to litigate this dispute in the California action with all the parties in one forum. *See Global Disc. Travel Serv.*, 960 F. Supp. at 709. "[C]ourts and the public have an interest in the complete, consistent and efficient settlement of controversies." *Id.* For any and all of the foregoing reasons, this Court should dismiss this action on the basis of Rules 12 and 19.

**II.    THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE IN FAVOR OF THE MORE APPROPRIATE AND COMPREHENSIVE ACTION PENDING IN CALIFORNIA**

The focus of the current litigation is whether insurers must pay as defense costs the monies spent to conduct the Document Review (*see supra* at 6-8). Whether such costs must be paid by Cyprus Amax's historic insurers and whether such costs, if covered, are "unreasonable and/or unnecessary" in whole or in part (Amd. Compl. at ¶ 40(d); Walsh Decl. Ex. G) are the key issues presented in this lawsuit and the separate lawsuit filed by Cyprus Amax and AMRI in Los Angeles Superior Court. Since both lawsuits arise out of the same transaction – the Document Review – and raise the same legal issues – including whether the monies spent are reasonable and necessary defense costs – the issues should be decided in one proceeding to avoid piecemeal and

potentially inconsistent litigation. The Los Angeles Superior Court is the only court that can

adjudicate the entire case, as the dispute with the Cyprus Minerals Company insurers must be

heard in that Court and AMRI is not a party to this case nor subject to this Court's jurisdiction.

Thus, even if the Court were to conclude that it has subject matter jurisdiction and could proceed

without AMRI, it should not, based upon an exercise of its discretion under the doctrine of

abstention.

A.    The Court Should Abstain Pursuant To The *Brillhart* Doctrine.

Federal District Courts have broad discretion to dismiss or stay actions seeking a

declaratory judgment. As the U.S. Supreme Court reiterated in *Wilton v. Seven Falls Co.*, 515

U.S. 277 (1995), upholding the doctrine first articulated in *Brillhart v. Excess Ins. Co. of Am.*, 316

U.S. 491 (1942), "[c]onsistent with the nonobligatory nature of the [Declaratory Judgment Act]

remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss

an action seeking a declaratory judgment ...." *Wilton*, 515 U.S. at 288. Indeed, this Court has

recognized that "[t]he Court must look at the litigation situation as a whole in determining whether

it is appropriate for the Court to exercise its jurisdiction over [a] declaratory judgment ...." *Great*

*Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990) (Leisure, P.).

Thus, "[i]n the declaratory judgment context, the normal principle that federal courts should

adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial

administration." *Wilton*, 515 U.S. at 288. This is such a case, and every one of the factors

identified by the Supreme Court in *Brillhart* and *Wilton* favoring abstention are satisfied here.[5]

---

[5]    Tellingly, when Continental sued AMAX Inc. in 1992 in State Court in New York, *see supra* at 8, it sought to distinguish federal cases cited by AMAX Inc. and properly observed that "[w]hen the federal action is one for declaratory judgment the court is under no compulsion to exercise its jurisdiction." Brief of Plaintiff Cont'l. Ins. Co. at p. 28 n. 14, Cont'l. Ins. Co. v. AMAX Inc., No. 19737/91 (N.Y. Sup. Ct. Dec. 7, 1991) (quoting *Hartford Accident & Indemnity Co. v. Hop-On International Corp.*, 568 F. Supp. 1569, 1571 (S.D.N.Y. 1983)); Walsh Decl. Ex I.



1.    This Insurance Dispute Involves No Federal Law Issues.

In this case, insurers seek to have the Court declare the meaning of state law applicable to the insurance contracts they sold to AMAX Inc. and AMRI. Insurance is a creature largely relegated to the States. 15 U.S.C.A. § 1011 (1945). Abstention is appropriate where no question of federal law is presented, and that is almost always the case in insurance coverage disputes. Indeed, some courts even "weight[] the scales presumptively in favor of abstention in declaratory judgment actions where insurance coverage disputes are the issue." *Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp.*, No. 94 CIV. 6971, 1996 WL 61763, at *3 (S.D.N.Y. Feb. 3, 1996); *see Travelers Indem. Co. v. Philips Elec. N. Am. Corp.*, No. 02 Civ. 9800, 2004 WL 193564, at *2 (S.D.N.Y. Feb. 3, 2004) (stating that "district courts routinely invoke [the] doctrine of abstention in insurance coverage actions, which necessarily turn on issues of state law") (citing cases); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Warrantech Corp.*, No. 00 Civ. 5007, 2001 WL 194903, at *3 (S.D.N.Y. Feb. 27, 2001).

2.    All Parties are Amenable to Process in the California Action, While Not All Necessary or Otherwise Relevant Parties Can Be Joined To This Action

Federal courts consider whether necessary parties have been joined and whether such parties are amenable to process in the competing state action. *Wilton*, 515 U.S. at 283. The California action is the only proceeding that will permit the satisfactory adjudication of all parties and all issues on all sides of this dispute, including the AMAX Insurers, the Cyprus Insurers as well as AMRI, the principal insured seeking coverage as the entity defending the underlying claims. *Multi-Fin.*, 2004 WL 193564, at *3-4. Both Continental and Century do business in California, and both are amenable to service of process in California.

3.    The California Action Will Allow The Claims Of All Parties In Interest To Be Satisfactorily Adjudicated

Federal courts also consider whether the claims of all parties in interest can satisfactorily be adjudicated in the competing state action. *Wilton*, 515 U.S. at 283. As stated above, the California action is the only proceeding that will allow for satisfactory adjudication of all parties in interest, including the Cyprus Insurers and AMRI. *Warrantech*, 2001 WL 194903 at *3; *Multi-Fin.*, 1996 WL 61763, at *3. Moreover, Continental and Century can obtain a declaratory judgment on their newly pled allocation issues in California (Cyprus Amax and AMRI raised these same issues in their California Complaint), and they are entitled to argue – as they would before this Court – for choice of whatever law they believe is appropriate as well as raise any defenses available to them. *Washington Mut. Bank, FA v. Superior Court,* 24 Cal. 4th 906, 916-918, 15 P.3d 1071, 1080-81 (Cal. 2001).

4.     Abstention Will Avoid Duplicative Proceedings and Inconsistent Results

Abstention is favored under *Wilton* when necessary to avoid duplicative proceedings. Litigating this action while the same claims are being litigated in California creates the real risk of two courts reaching inconsistent results. *Wilton*, 515 U.S. at 283; *Fireman's Fund Ins. Co v. Chris Craft Indus., Inc.*, 932 F. Supp. 618, 620-621 (S.D.N.Y. 1996). This action and the California action involve overlapping claims, legal issues, and parties. There is no question that the California action will proceed – it must as against at least the Cyprus Insurers – because they agreed with Cyprus Amax that any claims against each other would be litigated in the Los Angeles Superior Court. If the two cases proceed in parallel, this Court and the California court could reach conflicting decisions about the scope of plaintiff-insurers' duty to defend related to Document Review project under the identical policies. Moreover, the same discovery – focused on the necessity and reasonableness of the Document Review – will be taken twice. For this action to proceed under such circumstances would be "a wasteful expenditure of judicial

19



resources" and a "[g]ratuitous interference with the orderly and comprehensive disposition" of the California action. *Wilton*, 515 U.S. at 288; *Brillhart*, 316 U.S. at 495.

> 5.    The Totality of Other Circumstances Likewise Favor Abstention

This action has little or no connection to New York. *Multi-Fin.*, 1996 WL 61763, at *4. The challenged document review took place in Arizona. The Underlying Actions are pending in Louisiana. Documents and witnesses are scattered across several states, principally in Arizona, but not in New York. Whatever slim interest New York may have in this dispute is heavily outweighed by the fact that this action does not involve policy formation issues as the case involves undisputed standard-form policy language involving the duty to defend in primary policies.

Moreover, this Court need not add to its financial and administrative burdens by entertaining litigation that is the obvious product of forum shopping. *Commercial Underwriters Ins. Co. v. Glowmaster Corp.*, 105 F. Supp. 2d 268, 270 (S.D.N.Y. 2000). It should not be forgotten that the insurers initiated this lawsuit without prior warning in the midst of negotiations in an obvious effort to preempt an action by their policyholder (the natural insurance plaintiff) so as to gain a perceived litigation advantage. "[D]eclaratory judgment is not a prize to the winner of a race to the courthouse."[6] *Id.* at 270 (quotations omitted). On this point, further evidence of

---

[6]    Significantly, Cyprus Amax is not the only policyholder that Continental has attempted to prevent from choosing a forum. In *Cont'l. Ins. Co. v. Wickes Cos. Inc.*, No. 90 Civ. 8215, 1991 WL 193771 (S.D.N.Y. Sept. 6, 1991). Continental commenced a declaratory judgment action in the United States District Court for the Southern District of New York the day before it sent a letter to its insured denying coverage for a pending shareholder suit. When the insured then filed its own coverage action in California state court, Judge Wood of the Southern District, transferred the New York action. In doing so, she condemned Continental's "preemptive strike," stating that, "by anticipating the possible filing of a suit by [the insured], Continental reversed the usual roles of plaintiff and defendant and deprived the putative injured party [i.e., the insured], of its chance to have this dispute heard in the forum of its choice." That is precisely what Continental has tried to do here, and it is respectfully submitted that this Court should prevent this blatant forum shopping maneuver by dismissing the present action. *See, also, Great Am. Ins. Co. v. Houston General Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ("misuse [by insurer] of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff . . . militates in favor of dismissing the declaratory judgment action").

Continental's gamesmanship is that CNA (the lead parent-negotiator for Continental prior to the filing of this lawsuit) issued primary insurance both to AMAX Inc. (as Continental Insurance) and to the Cyprus Minerals Companies (as Continental Casualty); as such, CNA knew that Continental Casualty was required to litigate *this dispute* in California, but nonetheless filed its lawsuit on the AMAX Inc. policies in New York.

Finally, the insurers filed an Amended Complaint in this case only after Freeport advised them (and the Court) that it would be filing an abstention motion. The addition of claims for unjust enrichment and fraud in the Amended Complaint is an obvious attempt to side-step *Brillhart* and highlights the insurers' attempt to elevate form over substance. Gamesmanship should not be rewarded and, indeed, counsels in favor of the Court exercising its discretion to abstain.[7] At least one federal court in this District found as much in similar circumstances. *See e.g. Gen. Star Int'l Indem. Ltd v. Chase Manhattan Bank*, No. 01 Civ. 1139, 2002 WL 850012, *5, *10 (S.D.N.Y. May 3, 2002) ("the late addition of the [claims] . . . strongly suggests that it is pretextual, designed to manufacture jurisdiction." and "merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit.").

B.    The Court Should Abstain Pursuant To the Colorado River Doctrine.

Whether or not the *Brillhart* abstention doctrine applies, the Court separately may and should abstain pursuant to the abstention doctrine articulated in *Colorado River Water Conser. Dist. v. U.S.*, 424 U.S. 800 (1978). Although less permissive than the *Brillhart* doctrine, "the

---

[7]    Additionally, insurers headquartered in Illinois (Continental) and Pennsylvania (Century) are entitled to no deference in their choice of this New York forum. "Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *N. Am. Airlines, Inc. v. Int'l Broth. of Teamsters, AFL-CIO*, No. 04 Civ. 9949, 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)).

federal courts have frequently followed Colorado River and abstained from exercising jurisdiction in deference to parallel state actions." *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652, 656 (S.D.N.Y. 1997) ("*Eagle*"). Under *Colorado River* and its progeny, a federal court is required to weigh six factors – several of which are similar or identical to the *Brillhart* factors – to ascertain whether "exceptional circumstances" exist sufficient to justify the surrender of federal jurisdiction.[8] *Colorado River*, 424 U.S. 800; *Gen. Star*, 2002 WL 850012, at *5; *Eagle*, 961 F. Supp. at 655. The requisite "exceptional circumstances" exist in this case, as demonstrated below.[9] *See e.g. Gen. Star*, 2002 WL 850012, *5, *10.

    1.    <u>Abstention is Necessary to Avoid Piecemeal Litigation</u>

"The avoidance of piecemeal litigation goes to the heart of the abstention doctrine, principles of which 'rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Gen. Star*, 2002 WL 850012, at *7. This factor quite closely resembles the *Brillhart* factor of avoiding duplicative proceedings and inconsistent results discussed, *supra* Section II.A.4 at p. 19, and favors abstention. In sum, this action does not, and cannot, resolve the claims and defenses of all the parties to the dispute and allowing parallel proceedings to proceed raises the specter of conflicting decisions about the scope of the plaintiff-insurers' duty to defend as to the same Document Review project under the same policies.

---

[8]    The Colorado River factors are as follows: (1) the avoidance of piecemeal litigation; (2) the order in which jurisdiction was obtained in the concurrent forums; (3) whether state or federal law supplies the rule of decision; (4) the inconvenience of the federal forum; (5) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction; and (6) whether either court has jurisdiction over property at issue in the dispute. *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652, 656 (S.D.N.Y. 1997). In this insurance case involving defense costs, there is no "res" or property over which either court has jurisdiction so that factor is not discussed.

[9]    No one factor is controlling, and the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

2.     The Fact that this Action was Filed First does not Militate Against Abstention

Federal courts weighing *Colorado River* factors consider the order in which the competing lawsuits were filed, but only "in terms of how much progress has been made in the two actions" because "speed does not carry much weight with regard to abstention." *Gen. Star*, 2002 WL 850012, at *8-9. This action was filed first (insurers' Amended Complaint was filed only 14 days ago), but there has been no Answer filed in either action and no discovery has taken place in either court. This factor is neutral.

3.     No Federal Law is Implicated Here

For the same reasons noted in Section II.A.1 at p. 17, the complete absence of federal issues in this insurance coverage case favors abstention. "Indeed, abstention may be favored where the overwhelming majority of issues are state law-based." *Gen. Star*, 2002 WL 850012, at *10 (citing *Gen. Reins. Corp. v. CIBA-Geigy Corp.*, 853 F.2d 78, 82 (2d Cir. 1998)).

4.     The Inconvenience of the Federal Forum

The principal witnesses related to this dispute – the Document Review project – are located in Phoenix Arizona, where the 18,000 boxes of disputed documents are located, were reviewed, and where the document reviewers and Cyprus Amax reside. Winfree Aff. ¶ 3; 6. Phoenix is approximately 350 miles from the Los Angeles Superior Court courthouse, as compared to approximately 2500 miles from the Federal courthouse in New York. Walsh Decl. ¶ 11. Moreover, at least one of the Cyprus Minerals insurers, Truck Insurance Exchange, is headquartered in California. CA Complaint ¶ 11; Walsh Decl. Ex. H. No party to this action or the California action reside in New York and no known relevant documents reside in New York. Witnesses in other locations, such as Louisiana, Texas, Pennsylvania, and Illinois, will be equally inconvenient to either a California or New York forum. On balance, the federal court is less convenient.



5.    The California Action will Adequately Protect Insurers' Rights

Just as the *Brillhart* doctrine requires consideration of whether the claims of all parties in interest can satisfactorily be adjudicated in the competing state court action, *see supra* Section II.A.3 at p. 18, federal courts considering *Colorado River* abstention examine whether the parallel state court proceeding will provide an adequate vehicle for the complete and prompt resolution of the issues between the parties. *Gen. Star*, 2002 WL 850012, at *11. To reiterate, there is no claim or defense insurers cannot raise in the California action and no party they cannot join. The California forum adequately protects insurers' <u>and</u> all parties' rights.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed. If the Court does not dismiss the Complaint, then the action should be stayed pending a final determination in the California state proceeding.

Dated: New York, New York
May 23, 2008

Respectfully submitted,

<u>Mark J. Plumer /s/</u>
Mark J. Plumer (admitted *pro hac vice*)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C. 20036
(202) 912-2000

Lisa M. Cirando (LC 1916)
Chelsea J. Walsh (CW 1489)
HELLER EHRMAN LLP
7 Times Square
New York, New York 10036
(212) 832-8300

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

CENTURY INDEMNITY COMPANY,         :
AS SUCCESSOR TO CCI INSURANCE      :
COMPANY, AS SUCCESSOR TO           :
INSURANCE COMPANY OF NORTH         :
AMERICA and THE CONTINENTAL        :     08 Civ. 2012 (PKL)
INSURANCE COMPANY,                 :
                                   :
                                   :
                    Plaintiffs,    :     <u>**CERTIFICATE OF SERVICE**</u>
                                   :
                                   :
          v.                       :

FREEPORT-MCMORAN COPPER &
GOLD INC., AS THE CLAIMED
SUCCESSOR TO PHELPS DODGE
CORPORATION, AS THE CLAIMED
SUCCESSOR TO CYPRUS AMAX
MINERALS COMPANY, AS THE
CLAIMED SUCCESSOR TO AMAX,
INC., AS SUCCESSOR TO AMERICAN
METAL CLIMAX, INC.,

                    Defendant.

-------------------------------------------------------x

I, Ryan Larson, hereby declare under penalty of perjury, on the 23rd day of May, 2008, I

caused true and correct copies of Defendant Freeport-McMoRan Copper & Gold Inc.'s Notice of

Motion and Memorandum of Law In Support of Its Motion to Dismiss or Stay this Action, and

the affidavits of Gregory D. Winfree, Victoria Bellamy, and Michelle A. Hughes, each dated

May 22, 2008; and the Declaration of Chelsea J. Walsh, dated May 22, 2008; in the above

captioned case to be served on plaintiffs Century Indemnity Company's and The Continental

Insurance Company's counsel listed below by US Mail:

Shane R. Heskin, Esq.
White and Williams LLP

1800 One Liberty Place
Philadelphia, Pennsylvania 19103
(215) 864-7000
Attorneys for Plaintiff Century Indemnity Company

Alan P. Jacobus, Esq.
Carroll Burdnick & McDonough LLP
44 Montgomery Street
Suite 400
San Francisco, California 94104
(415) 989-1900
Attorneys for Plaintiff The Continental Insurance Company

Dated: New York, New York
       May 23, 2008

                              Ryan P. Larson

2

# Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

CENTURY INDEMNITY COMPANY, AS       :
SUCCESSOR TO CCI INSURANCE
COMPANY, AS SUCCESSOR TO            :     Electronically Filed
INSURANCE COMPANY OF NORTH          :
AMERICA and THE CONTINENTAL         :     Index No. 08 Civ. 02012 (PKL)
INSURANCE COMPANY,                  :
                                    :
                Plaintiffs,         :
                                    :
        v.                          :
                                    :
FREEPORT-MCMORAN COPPER & GOLD      :
INC., AS THE CLAIMED SUCCESSOR TO   :
PHELPS DODGE CORPORATION, AS THE    :
CLAIMED SUCCESSOR TO CYPRUS AMAX    :
MINERALS COMPANY, AS THE CLAIMED    :
SUCCESSOR TO AMAX INC., AS          :
SUCCESSOR TO AMERICAN METAL         :
CLIMAX, INC.,                       :
                                    :
                Defendant.          :
                                    :
------------------------------------------------------x

## REPLY
## TO PLAINTIFFS' OPPOSITIONS TO DEFENDANT FREEPORT-MCMORAN
## COPPER & GOLD, INC.'S MOTION TO DISMISS OR STAY

Mark J. Plumer (admitted *pro hac vice*)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C. 20036
(202) 912-2000

Lisa M. Cirando (LC 1916)
Chelsea J. Walsh (CW 1489)
HELLER EHRMAN LLP
7 Times Square
New York, New York 10036
(212) 832-8300

Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

I.   INSURERS' AMENDED COMPLAINT IS PROCEDURALLY DEFECTIVE ...............2

    A.   The Case Should Be Dismissed On The Basis Of Federal Rule 12..........................2

    B.   The Case Should Be Dismissed On The Basis Of Federal Rule 19.........................5

II.   THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE IN FAVOR OF THE ACTION PENDING IN CALIFORNIA ...............................................................7

    A.   Brillhart Abstention Is Appropriate ........................................................................7

    B.   Colorado River Abstention Is Appropriate .............................................................8

### TABLE OF AUTHORITIES

**Page**

#### Federal Cases

*Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.,*
  140 B.R. 56, 61 (S.D.N.Y. 1992)................................................................. 5

*Ambassador Ins. Co. v. Truly Nolan of America, Inc.,*
  514 F.Supp. 985 (S.D.N.Y. 1981)................................................................. 7

*BMG Music v. Vanxy, Inc.,*
  No. 98 Civ. 6496. 1999 WL 493345 (S.D.N.Y. July 12, 1999) ..................... 5

*Bon Jour Group, Ltd. v. Elan-Polo,*
  No. 96 Civ. 6705, 1997 WL 401814 (July 16, 1997) ................................... 9

*Brillhart v. Excess Ins. Co. of Am.,*
  316 U.S. 491 (1942)................................................................................. 7

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002)...................................................................... 3

*CutCo Indus., Inc. v. Naughton,*
  806 F.2d 361 (2d Cir. 1986)...................................................................... 3

*Gen. Star Int'l Ltd v. Chase Manhattan Bank,*
  No. 01 Civ 1139, 2002 WL 850012 (S.D.N.Y. May 3, 2002).............. 7, 8, 9, 10

*In re Magnetic Audiotape Antitrust Litig.,*
  334 F.3d 204 (2d Cir. 2003)...................................................................... 3

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, P.L.C.,*
  319 F. Supp. 2d. 352 (S.D.N.Y. 2004)........................................................ 6

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hicks, Muse, Tate & Furst, Inc.,*
  No. 02 Civ. 1334, 2002 WL 1482625 (S.D.N.Y. July 10, 2002) ................... 2

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Warrantech Corp.,*
  No. 00 Civ. 5007, 2001 WL 194903 (S.D.N.Y. Feb. 27, 2001) .................... 9

*Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp.,*
  No. 94 CIV. 6971, 1996 WL 61763 (S.D.N.Y. Feb. 3, 1996) ...................... 9

*Robinson v. Gov't of Malaysia,*
  269 F.3d 133, 1414 (2d Cir. 2001)............................................................. 3

*Rose v. Simms,*
  No, 95 Civ. 1466, 1995 WL 702307 (S.D.N.Y. Nov. 29, 1995) ................... 5

*Royal & Sunalliance Ins. Co. v. Resolve Towing & Salvage, Inc.,*
  No. 00 Civ. 2473, 2000 WL 1801838 (S.D.N.Y. Dec. 7, 2000)................... 7

*State Street Bank and Trust Company v. Thomas J. Arganese,*
  No. 95 Civ. 0440, 1996 WL 97186 (S.D.N.Y. March 5, 1996)..................... 6



*Travelers Indem. Co. v. Philips Elec. N. Am. Corp.,*
    No. 02 Civ. 9800, 2004 WL 193564 (S.D.N.Y. Feb. 3, 2004) ............................................ 9

*Village of Westfied v. Welch's,*
    170 F.3d 116 (1999) ........................................................................................................... 9

*Wilshire Ltd v. Rajaie,*
    No. 06 Civ. 5613, 2007 WL 2457410 (S.D.N.Y. Aug. 22, 2007) ..................................... 5

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ........................................................................................................... 7


## State Cases

*Certain Underwriter at Lloyd's London v. Foster Wheeler Corp.*
    36 A.D.3d 17, 822 N.Y.S. 2d 30 (1st Dep't. 2006), *aff'd*, 9 N.Y. 3d 928, 876 N.E.2d 500
    (2007) ................................................................................................................................. 9

*Ins. Co. of N. Amer. v. EMCOR Group, Inc.,*
    9 A.D. 3d 319, 781 N.Y.S.2d 4 (1st Dep't 2004) ............................................................ 6


## Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................................................ 2, 3

Fed. R. Civ. P. 12(b)(2) ............................................................................................................... 3

Fed. R. Civ. P. (b)(6) ................................................................................................................... 3

Fed. R. Civ. P. 12 (c) ................................................................................................................... 3

Fed. R. Civ. P. 12(d) .................................................................................................................... 3

Fed. R. Civ. P. 19 ..................................................................................................................... 2, 5


## Other Authorities

<u>Fletcher Cyclopedia of the Law of Private Corporations</u> § 26 ............................................... 2

**INTRODUCTION**

The Continental Insurance Company ("Continental") and Century Indemnity Company's ("Century") (collectively "insurers" or "AMAX Inc. insurers") oppositions to Freeport-McMoRan Copper & Gold Inc.'s ("Freeport") motion to dismiss or stay this case ignore critical arguments raised by Freeport and rely instead on arguments that are off-point or that seek to elevate form over substance. Neither insurer responds to the cases and other authorities cited in support of Freeport's Rule 12(b) and Rule 19 arguments. Moreover, insurers do not dispute that *Brillhart* abstention would be proper but for the amendment of their Complaint and the addition of damages claims *after* Freeport advised the Court it would seek abstention on this ground. Finally, in any event, insurers cannot overcome Freeport's *Colorado River* abstention arguments.

Importantly, insurers do not dispute that their behavior in this case mirrors their prior discredited behavior in an earlier case involving the same policies. The current lawsuit was filed by Continental and Century without warning in the midst of claims negotiations while insurers claimed to be evaluating their insured's claim. Insurers do not dispute that the New York Appellate Division dismissed an action filed in New York by Continental in the 1990's against AMAX Inc. and the same Continental and Century policies, criticized insurers for forum shopping, and that a Colorado state court thereafter took jurisdiction of the case and interpreted the policies pursuant to Colorado law.

Insurers suggest that Freeport has misbehaved in this case by not mediating with insurers under a different program, as it promised it would when seeking an extension to answer or otherwise move. In fact, Cyprus Amax Minerals Company ("Cyprus Amax") demanded mediation with the Cyprus Mines insurers before filing the California lawsuit and offered to mediate in any location, with any mediator, on any date, as long as the mediation occurred within 30 days (*i.e.*,

before this Court's extension to Freeport expired). When, after 30 days, the mediation had not

taken place because the Cyprus Mines insurers would not agree to mediate on that timetable,

Cyprus Amax and AMRI filed suit. Cyprus Amax and the Cyprus Mines insurers now have agreed

to mediate on July 28th in Los Angeles.[1]

## ARGUMENT

## I.    INSURERS' AMENDED COMPLAINT IS PROCEDURALLY DEFECTIVE

### A.    The Case Should Be Dismissed On The Basis Of Federal Rule 12

Freeport argued in its opening brief that insurers' Amended Complaint is deficient because

it names the wrong defendant. Freeport is undisputedly not an insured under the Century and

Continental policies and is not a defendant in any of the Louisiana asbestos claims at issue.

Accordingly, Freeport's principal argument is that there is no case and controversy mandating

dismissal under Rule 12(b)(1). (Freeport Br. at 9-12.) Alternatively, Freeport argued, for

essentially the same reasons, that the Amended Complaint fails to state a claim under Rule 12(b)(6).

(Freeport Br. at 12-13.) Neither Century nor Continental even attempt to respond to the legal

authorities cited by Freeport, including the well-established principle that parent companies are

legally distinct from their subsidiaries (citing to Fletcher Cyclopedia of the Law of Private

Corporations § 26) and case law from this District holding that parent corporations may not be sued

by insurers over their subsidiary's claims for coverage (citing to *Nat'l Union Fire Ins. Co. of*

---

[1]    Century repeatedly accuses Freeport of bad acts; for example, making "false representations by claiming no parties, documents or key witnesses to this lawsuit reside in New York." (Century Opp. at 2.) In making this particular allegation, Century claims – at least five times (*Id.* at 2, 5, 13, 14, and 25) – that national coordinating counsel for the Louisiana asbestos claims resides in New York City. In fact, the lawyer acting as national coordinating counsel, Michael Hutchins of the Kasowitz Benson firm, resides in Atlanta, Georgia as his letterhead makes clear (Heskin Aff., Exh. B); the most insurers can say is that his law firm has an office in New York. The accusation – like the others – is simply wrong. No parties, documents or key witnesses are in New York.

*Pittsburgh, Pa. v. Hicks, Muse, Tate & Furst, Inc.*, No. 02 Civ. 1334, 2002 WL 1482625, at *4 (S.D.N.Y. July 10, 2002)).

Insurers' first response is procedural, alleging that Freeport's brief improperly relies upon matters outside the pleadings to support its argument and citing as support *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). (Continental Br. at 10-11.) Leaving aside that Continental and Century themselves have relied extensively on evidence outside the four corners of the Amended Complaint, insurers confuse the standards that govern Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted. The Rule 12(d) prohibition is limited to the 12(b)(6) cases, like *Chambers*.[2] Federal courts are free to consider evidence outside of the pleadings in ruling on a motion to dismiss under 12(b)(1). *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 1414 n.6 (2d Cir. 2001). Freeport's principal argument was under Rule 12(b)(1). Moreover, Freeport did not rely upon any extrinsic evidence to support its 12(b)(6) argument.[3]

Insurers' second response is factual, that Freeport is the correct party defendant based on its actions. (Century Br. at 7-11.) Insurers' argument appears to sound in waiver or estoppel, although no cases are cited to support such an argument. Freeport does not dispute that it assisted Cyprus Amax and Amax Metals Recovery, Inc. ("AMRI") in making their claims for coverage, but this

---

[2] Federal Rule 12(d) states: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the materials that is pertinent to the motion."

[3] The other cases cited by Continental are also inapposite. In *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) and *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003), the Second Circuit considered motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2), not 12(b)(1) for lack of subject matter jurisdiction.

assistance does not convert Freeport into its subsidiaries or vice versa.[4]  Indeed, during the claims

negotiations, Century was represented by Resolute Management, Inc., which performs claims

services for Century.  (Dedyan Aff. ¶ 1.)  Continental was represented by its parent company, CNA

Insurance.  (Walsh Aff., Exh. C.)  The fact that a parent may exercise a degree of control over a

subsidiary does not transform one into the other.  The fact that Phelps Dodge Corporation, and later

Freeport, participated in claims negotiations on behalf of their subsidiary, or that certain monies

were paid directly to Freeport on Cyprus Amax's behalf is not a sufficient basis to ignore well-

settled corporate law principles distinguishing parent and subsidiary corporations.

     To the extent that insurers argue that "Phelps Dodge, however, is Freeport-McMoRan"

(Century Br. at 9), they are simply incorrect.  There is no basis for this statement and insurers

provide none.  Neither Phelps Dodge nor Freeport are corporate "successors" of Cyprus Amax.

Michele Hughes, Assistant Corporate Secretary of Cyprus Amax and Phelps Dodge, attested in an

affidavit that AMAX Inc. merged into Cyprus Minerals Company to create Cyprus Amax.

Thereafter Cyprus Amax merged into *a subsidiary* of Phelps Dodge Corporation, after which

Phelps Dodge Corporation merged into *a subsidiary* of Freeport.  (Aff. of Michele Huges ¶¶ 6-8.)

None of the SEC documents cited by Century contradict this.  Finally, it is mystifying how a letter

from counsel in this case recounting this corporate history, asking as a result that Freeport be

dismissed as improperly sued (before the Amended Complaint was filed) and stating that "any

documents implicated by plaintiffs' claims arise out of the operations of Cyprus Amax Minerals

Company or its corporate predecessors" bolsters insurers' argument.  (Century Br. at 10.)

---

[4]  Ironically, Continental goes to great pains to explain that although it is currently a wholly-owned
subsidiary of Continental Casualty Company, a Cyprus Mines insurer sued in the California action, the two insurers
-- parent and subsidiary – are distinct.  (*See* Continental Aff. of David Lehman and Continental Br. at p. 5, n. 15.)

**B.**     **The Case Should Be Dismissed On The Basis of Federal Rule 19**

Freeport argued in its opening brief that AMRI is a necessary and indispensable party that cannot be joined because the Court lacks personal jurisdiction over it. There is no dispute that all of the underlying claims arise out of AMRI operations in Louisiana. Moreover, there is no dispute that AMRI is a corporation licensed to do business only in Louisiana. Finally, there is no dispute that AMRI is a Named Insured on all of the relevant insurance contracts. On this basis, Freeport cited to authorities confirming that AMRI's rights to coverage would be adversely affected if this litigation goes forward without it. Insurers did not respond to this argument or any of the cited authorities but instead raise two separate arguments.

First, insurers assert that AMRI is not necessary under Rule 19 because Freeport owns it and presumably may exert control over it. Absent a showing that the corporate veil should be pierced, this proposition, if accepted, would obliterate the distinction between corporate parents and subsidiaries. The lead case cited by insurers, *Wilshire Ltd v. Rajaie*, No. 06 Civ. 5613, 2007 WL 2457410 at *5 (S.D.N.Y. Aug. 22, 2007), provides minimal support. In *Wilshire*, a group of seven defendant-tenants (brothers and sisters) allegedly breached a lease, were sued individually and sought to defeat diversity jurisdiction by claiming a 100% owned corporation was a necessary party. But defendants in that case did "not address the merits of the legal position articulated by Plaintiff," *id.*, and the court's conclusion that joinder was not necessary is therefore of little value. *Wilshire* relied upon a string of cases, none of which support the broad gloss insurers would attribute to it. In *BMG Music v. Vanxy, Inc.*, No. 98 Civ. 6496. 1999 WL 493345 at *2 (S.D.N.Y. July 12, 1999), the corporation sought to be added was 100% owned by an individual and was bankrupt; the court held "a bankrupt party is not necessary under Rule 19." *Id. See also Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 61 n.3 (S.D.N.Y. 1992) (a bankrupt party "may not be joined because of the automatic stay provision of the bankruptcy code"). In *Rose v. Simms*, No,

- 5 -

95 Civ. 1466, 1995 WL 702307 at *6 (S.D.N.Y. Nov. 29, 1995), a construction manager, who was

the sole shareholder and President of a one-man company, was sued individually and sought to

defeat diversity by joining the company he owned on the ground that it was the company that

actually had contracted with the plaintiff. However, the cause of action at issue in the lawsuit was

based on tort, not contract, so the court properly found the corporation was not a necessary party.

*Id.* The same cannot be said here, where the insurance contracts were issued to AMRI as a Named

Insured, where those same contracts are in dispute, and where the underlying claims arise out of

AMRI's activities.

Second, insurers argue that if "necessary," AMRI can be joined on the authority of *Nat'l*

*Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, P.L.C.*, 319 F. Supp. 2d. 352, 358-67

(S.D.N.Y. 2004), which holds that by allowing an insurance broker in New York to purchase its

insurance, a foreign policyholder subjects itself to personal jurisdiction in this court. Defendants

fail to mention that a later-decided New York Appellate Division, First Department case, *Ins. Co. of*

*N. Am. v. EMCOR Group, Inc.*, 9 A.D. 3d 319, 320, 781 N.Y.S.2d 4 (1st Dep't 2004), reached the

opposite conclusion. *EMCOR* held that a court lacked jurisdiction over a defendant, one of many

related companies insured under the policy at issue, even though the policies were negotiated in

New York by the defendant's parent company and insurance broker, noting that "the existence of

an agency upon which a finding of jurisdiction may be predicated may not be inferred from the

mere existence of a parent-subsidiary relationship." *Id.* Indeed, in *State Street Bank and Trust Co.*

*v. Thomas J. Arganese*, No. 95 Civ. 0440, 1996 WL 97186 (S.D.N.Y. March 5, 1996) (Leisure, P.),

this Court found that the activities of an agent in New York did not constitute sufficient "purposeful

availment" to satisfy either the New York long-arm statute or Constitutional due process. *Id.* at *2.[5]

## II.    THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE IN FAVOR OF THE ACTION PENDING IN CALIFORNIA

### A.    Brillhart Abstention Is Appropriate

The insurers are confident that their Amended Complaint eliminates the risk of abstention pursuant to *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). Insurers argue that by adding unjust enrichment and fraud claims, they effectively foreclosed this Court's discretion to abstain under *Brillhart*. Insurers' argument elevates form over substance. The amendment of their pleading was a blatant attempt to manufacture federal jurisdiction following Freeport's disclosure to the Court that it would seek abstention on this ground. The insurers' joint epiphany that new claims had to be added by each of them immediately after Freeport's disclosure based on "continuing investigations" undertaken after insurers had disclaimed coverage, had filed a lawsuit and before discovery commenced are simply not credible.[6]

As pointed out in Freeport's opening brief, such action was criticized in this District in *Gen. Star Int'l Ltd v. Chase Manhattan Bank*, No. 01 Civ 1139, 2002 WL 850012, *5, 10 (S.D.N.Y. May 3, 2002). Century seeks to distinguish *Gen. Star* by arguing that its unjust enrichment claim is not duplicative of its declaratory judgment claim. (Century Br. at 21.) But, the Amended

---

[5]  Several other courts in this District likewise have found an insurance broker-agent's activities insufficient to confer jurisdiction over a foreign policyholder. *See, e.g., Royal & Sunalliance Ins. Co. v. Resolve Towing & Salvage, Inc.*, No. 00 Civ. 2473, 2000 WL 1801838 at * 2-3 (S.D.N.Y. Dec. 7, 2000)(finding insurance broker's purchase of insurance sufficient under the New York long-arm statute but constitutionally deficient); *Ambassador Ins. Co. v. Truly Nolan of Am., Inc.*, 514 F.Supp. 985, 988 (S.D.N.Y. 1981) (finding broker's purchase of insurance insufficient minimum contacts).

[6]  The timing of the insurers' filings is not disputed. On February 28, 2008, insurers filed the Complaint in this case seeking a declaratory judgment (only) as to their responsibility to pay defense costs related to the document review project. On April 16, 2008, Freeport informed the Court (and insurers) it planned to move for abstention pursuant to *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). On May 9, 2008, insurers filed an Amended Complaint.

Complaint seeks "[a] declaration of the rights of all the parties under the Century and Continental Policies regarding the Louisiana litigation." (Amended Complaint at Demand for Judgment ¶ iii.) Such a broad declaration would result in a finding of whether and how much insurers owe, a final accounting of exactly the sort contemplated by the unjust enrichment claim. Similarly, Continental's fraud claim – like the RICO claim in *Gen. Star* – is wholly derivative of the declaratory judgment claim for the document review project; if Continental must pay for the document review project, its fraud claims are *de facto* extinguished.

Separately, insurers argue that the California action is not "parallel" because any payment obligation they may have is pursuant to their policies whereas the Cyprus Mines insurers' payment obligation will be pursuant to the 2007 Settlement Agreement. However, the test is not whether the legal instruments are different – for example, every insurers' contract is slightly different – but rather whether the legal test the courts must apply is different. *Gen. Star*, 2002 WL 850012 at * 4 ( "[m]ore important than the specific films involved, however, is the fact that the legal issues in the instant actions and the [] state court action are the same ...") In this case, the legal standard will be the same: whether the document review costs were "necessary and reasonable."

## B.    Colorado River Abstention Is Appropriate

The parties dispute the proper application of four of the six factors set out by the Supreme Court in *Colorado River*.[7] First, as to whether abstention is necessary to avoid piecemeal litigation, neither insurer has responded to Freeport's argument that this action cannot comprehensively resolve the claims and defenses of all of the parties to the dispute and will give rise to inconsistent rulings if both cases go forward. Illustratively, Cyprus Amax and AMRl will be making exactly the

---

[7]    The parties agree that (1) there is no assumption of jurisdiction over a res in this case and (2) state law – not federal law – will supply the rule of decision for these claims.

same claims pursuant to exactly the same policies on exactly the same facts in California as insurers

press against parent Freeport here. In addition, the Cyprus Mines insurers will need to conduct

largely overlapping discovery involving the same documents and witnesses.[8] It is inconsequential

that whichever court(s) decide the case may have to apply different law to different contracts;

indeed, if insurers are correct about the proper choice of law principle – which Freeport disputes –

different law would apply to the Century and Continental policies in this case considering some

were issued to AMAX Inc. when its principal place of business was in New York and others were

issued to AMAX Inc. when its principal place of business was in Connecticut. *Certain*

*Underwriters at Lloyd's London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 22, 822 N.Y.S. 2d 30 (1st

Dep't. 2006), *aff'd*, 9 N.Y. 3d 928, 876 N.E.2d 500 (2007).[9]

Second, there is no doubt that this action was filed first, but no substantive progress has

been made in either case. Despite Century's heavy reliance upon the first filed rule,[10] and

---

[8]  Indeed, a concrete dispute already has been put before Magistrate Judge Freeman involving the deposition of a consultant who communicated on behalf of both historic Cyprus Mines and AMAX Inc. with both sets of historic insurers regarding the document review project; this individual is being deposed on June 23-24 by both sets of insurers, and the scope of his deposition is subject to potentially disparate rulings on the scope of document production and privilege.

[9]  Insurers' briefs argue for the application of New York law. However, in ruling under the *Wilton* or *Colorado River* abstention doctrines, a district court should not reach the choice of law question. *See Travelers Indem. Co. v. Philips Elec. N. Am. Corp.*, No. 02 Civ. 9800, 2004 WL 193564, at *3 (S.D.N.Y. Feb. 3, 2004); *Nat'l Unton Fire Ins. Co. of Pittsburgh, Pa. v. Warrantech Corp.*, No. 00 Civ. 5007, 2001 WL 194903 at *3 (S.D.N.Y. Feb. 27, 2001). The court should consider whether state or federal law applies, not which state law applies. *See Village of Westfied v. Welch's*, 170 F.3d 116,123 (1999); *Philips Elec. N. Am. Corp.*, 2004 WL 193564 at *3; *Warrantech Corp.*, 2001 WL 194903 at *18; *Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp.*, No. 94 CIV. 6971, 1996 WL 61763, at *3 (S.D.N.Y. Feb. 3, 1996). For the record, Freeport's position is that New York law does not apply and requests the opportunity to brief the choice-of-law issue fully if the Court determines the issue is ripe.

[10]  Although Century makes much of it, the first-filed rule is applicable to situations where competing lawsuits are filed in two different *federal* district courts. *See, e.g. Bon Jour Group, Ltd. v. Elan-Polo*, No. 96 Civ. 6705, 1997 WL 401814, at *3 (July 16, 1997). None of the cases cited by Century involve abstention. Both the Wilton and Colorado River abstention cases make clear that the order of filing factor does not turn "exclusively on the sequence in which cases were filed, but rather in terms of how much progress has been made in the two actions." *See Welch's*, 170 F.3d at 123 ); *see, e.g., Gen. Star,* 2002 WL 850012, at *8 (noting that the speed of filing "does not carry much weight with regard to abstention").

Continental's unsupported claim that filing first "weighs heavily" (Continental Br. at 23), "speed does not carry must weight with regard to abstention." *Gen. Star*, 2002 WL 850012 at *8-9.

Third, the federal court is relatively less convenient considering that most of the evidence and witnesses specific to this dispute are in Arizona – where the document review was conducted and where Freeport and Cyprus Amax are located. Underlying claims related to the Cyprus Mines insurers are in California, as is at least one of those insurers. No parties, documents or witnesses are in New York. Other evidence is scattered throughout the country.

Fourth, insurers dispute that their rights will be adequately protected in California, but they identify no claim or defense they cannot raise in California and no party they cannot join in California. The Cyprus Mines insurers have agreed to mediate on July 28, 2008, after which the California action may move forward as expeditiously as this one. Century and Continental complain that if the mediation results in a settlement of the claims against the other insurers, they could be left stranded in California. Considering how little nexus this case has to New York, this result would work no harm. However, if this potential is troubling to the Court, it can eliminate any such risk by staying rather than dismissing this case and waiting to see what happens; the mediation is scheduled to take place in July and the insurers' hypothetical worries will either materialize or evaporate within the next 45 days.

Dated: New York, New York
     June 30, 2008

                                      Respectfully submitted,

                                        Mark J. Plumer /s/
                                        HELLER EHRMAN LLP
                                        1717 Rhode Island Avenue, NW
                                        Washington, D.C.  20036
                                        (202) 912-2000
                                        Lisa M. Cirando
                                        Chelsea J. Walsh
                                        HELLER EHRMAN LLP
                                        7 Times Square
                                        New York, New York 10036
                                        (212) 832-8300

                                        Attorneys for Defendant

# Exhibit C
# Part 4 of 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | | |
|---|---|---|
| CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA and THE CONTINENTAL INSURANCE COMPANY, | : : : : : : | 08 Civ. 2012 (PKL) |
| Plaintiffs, | : : | **CERTIFICATE OF SERVICE** |
| v. | : | |
| FREEPORT-MCMORAN COPPER & GOLD INC., AS THE CLAIMED SUCCESSOR TO PHELPS DODGE CORPORATION, AS THE CLAIMED SUCCESSOR TO CYPRUS AMAX MINERALS COMPANY, AS THE CLAIMED SUCCESSOR TO AMAX, INC., AS SUCCESSOR TO AMERICAN METAL CLIMAX, INC., | | |
| Defendant. | | |

-------------------------------------------------------x

I, Ryan Larson, hereby declare under penalty of perjury, on the 23rd day of June

2008, I caused true and correct copies of defendant Freeport-McMoRan Copper & Gold,

Inc.'s Reply to Plaintiffs' Opposition to Defendant Freeport-McMoRan Copper & Gold,

Inc.'s Motion to Dismiss or Stay this Action in the above captioned case to be served on

plaintiffs Century Indemnity Company's and The Continental Insurance Company's

counsel listed below by US Mail:

Shane R. Heskin, Esq.
White and Williams LLP

1800 One Liberty Place
Philadelphia, Pennsylvania 19103
(215) 864-7000
Attorneys for Plaintiff Century Indemnity Company

Alan P. Jacobus, Esq.
Carroll Burdnick & McDonough LLP
44 Montgomery Street
Suite 400
San Francisco, California 94104
(415) 989-1900
Attorneys for Plaintiff The Continental Insurance Company

Vance Woodward Esq.
Carroll Burdnick & McDonough LLP
44 Montgomery Street
Suite 400
San Francisco, California 94104
(415) 989-1900
Attorneys for Plaintiff The Continental Insurance Company

Marian S. Hertz, Esq.
Colliau Elenius Murphy Carluccio Keener & Morrow
40 Wall Street, 7th Floor
New York, NY 10005
(212) 440-2743
Attorneys for Plaintiff The Continental Insurance Company

Dated: New York, New York
June 23, 2008

Ryan P. Larson

2

# Exhibit H

# HellerEhrman LLP

April 11, 2008

*Via Facsimile and U.S. Mail*

Mark J. Plumer
Mark.Plumer@hellerehrman.com
Direct +1 (202) 912-2021
Main +1 (202) 912-2000
Fax +1 (202) 912-2020

41196.0003

Steven B. Bitter, Esq.
Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101

**Re: Mandatory Mediation Demand - Cyprus Amax Minerals Company**

Dear Mr. Bitter:

We represent Cyprus Amax Minerals Company ("Cyprus Amax"). We are directing this letter to you as counsel for Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic Insurance Company and Continental Insurance Company (collectively, the "Cyprus Insurers") in relation to reimbursement sought by Cyprus Amax for certain defense costs incurred as a result of clay-, talc- and silica-related claims and lawsuits brought against Cyprus Mines Corporation and the review of documents potentially relevant to these claims and suits (the "defense costs dispute"). The particulars of the defense costs dispute are set out in your letter dated February 26, 2008.

Pursuant to Section IX.A. of the January 12, 2007, Cyprus Confidential Settlement Agreement for Defense and Indemnification for Certain Bodily Injury Claims (the "Cyprus Agreement"), Cyprus Amax hereby formally requests that the Insurers agree to submit to non-binding mediation to resolve, to the extent practicable, the defense costs dispute.

As you may know, Cyprus Amax was sued in federal court in New York on February 28, 2008 by those primary insurers that issued coverage to AMAX Inc. and its predecessors over the defense costs dispute. A copy of the complaint in that action is attached. Cyprus Amax is required to respond to the complaint by or before April 23, 2008. Continental Insurance Company is a signatory to the Cyprus Agreement and also is plaintiff in the lawsuit. It is Cyprus Amax's view that if this issue must be litigated, then it is properly litigated in one coordinated proceeding in California with both the AMAX Inc. and Cyprus insurers present.

Heller Ehrman LLP  1717 Rhode Island Avenue, NW,  Washington, D.C.  20036-3001  www.hellerehrman.com

Beijing  Hong Kong  London  Los Angeles  Madison, WI  New York  San Diego  San Francisco  Seattle/Anchorage  Shanghai  Silicon Valley  Singapore  Washington, D.C.

HellerEhrman LLP

Of course, it would be preferable to resolve the defense costs dispute with the Cyprus Agreement insurers outside of litigation. For this to happen, the parties must meet and reach an agreement quickly, considering the litigation exigencies now confronting Cyprus Amax. Accordingly, Cyprus Amax plans to inform the Federal District Court that it has served this request to mediate. Cyprus Amax is aware of no reason this mediation cannot take place within the next 30 days. *See e.g.,* Cyprus Agreement, Section IV.E. In order to facilitate a mediation in this time-frame, Cyprus Amax is available to mediate on any day and at any time. Cyprus Amax will agree to any JAMS mediator acceptable to the Cyprus insurers. Further, Cyprus Amax will agree to mediate in whatever location the Cyprus insurers choose using any reasonable mediation protocol that will allow for a determination of whether this dispute can be resolved quickly using a mediator.

Cyprus Amax is hopeful that it will be able to negotiate its differences with the Cyprus Insurers without resort to litigation. If the defense costs dispute is not resolved within the next 30 days, however, Cyprus Amax will have no choice but to file a lawsuit for breach of the Cyprus Agreement in the Superior Court of California, County of Los Angeles. *See* Cyprus Agreement, Section XXX.

I look forward to hearing back from you and stand ready to discuss whatever issues will help to facilitate the requested mediation.

Very truly yours,

Mark J. Plumer

Enclosure

NY 793198 v1
(41196.0003)

JUDGE LEISURE

08 CV 02012

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



Rec'd
3/4/08
JNCII

| | |
|---|---|
| CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA and THE CONTINENTAL INSURANCE COMPANY | : <br> : <br> : <br> : <br> : <br> : <br> : |
| | : JURY TRIAL DEMANDED |
| Plaintiffs, | : <br> : COMPLAINT |
| versus | : <br> : CIVIL ACTION NO. _____ |
| FREEPORT-MCMORAN COPPER & GOLD INC., AS THE CLAIMED SUCCESSOR TO PHELPS DODGE CORPORATION, AS THE CLAIMED SUCCESSOR TO CYPRUS AMAX MINERALS COMPANY, AS THE CLAIMED SUCCESSOR TO AMAX, INC., AS SUCCESSOR TO AMERICAN METAL CLIMAX, INC. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendant. | : |

RECEIVED
FEB 28 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

Plaintiffs Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance Company of North America) ("Century") and The Continental Insurance Company ("Continental") invoke the jurisdiction of this court pursuant to 28 U.S.C.A. § 1332 (diversity of citizenship) and plead as their complaint against defendant Freeport-McMoRan Copper and Gold Inc., as the claimed successor to Phelps Dodge Corporation, as the claimed successor to Cyprus Amax Minerals Company, as the claimed successor to Amax, Inc., as successor to American Metal Climax, Inc. ("Freeport McMoRan") as follows:

PHLDMS1 4085092v.1

### Introduction

1.     In this insurance coverage action, Century and Continental seek a declaratory judgment that the liability insurance policies Century and Continental issued to Amax, Inc. and/or American Metal Climax, Inc. (collectively, "Amax") provide no insurance coverage for the costs Freeport-McMoRan claims it has incurred and continues to incur in its effort to assimilate the corporate records of Amax into Freeport-McMoRan's own corporate records (the "Corporate Records Assimilation Project").

### The Parties

2.     Plaintiff Century is a corporation that is incorporated in the Commonwealth of Pennsylvania and whose principal place of business is in Philadelphia, Pennsylvania. Century, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Pennsylvania.

3.     Plaintiff Continental is a corporation that is incorporated in the Commonwealth of Pennsylvania and whose principal place of business is in Chicago, Illinois. Continental, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Pennsylvania and Illinois.

4.     Defendant Freeport-McMoRan is a corporation that is incorporated in the State of Delaware and whose principal place of business is in New Orleans, Louisiana. Freeport-McMoRan, for purposes of 28 U.S.C.A. § 1332 (c), is a citizen of Delaware and Louisiana.

### Amount in Controversy

5.     Freeport McMoRan claims it has incurred $3,900,000 through December 2007 and that it will incur a total of $7,800,000 by year-end 2008 for the Corporate Records Assimilation Project. The parties dispute whether (a) Freeport McMoRan is entitled to coverage under the policies that Century and Continental issued to Amax,  and (b) even if Freeport

McMoRan is entitled to coverage, whether Century and Continental are responsible for these costs.

### JURISDICTION

6.    Jurisdiction is proper in this court under 28 U.S.C.A. § 1332 (diversity of citizenship) because this is a civil action between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### VENUE

7.    Venue is proper in this court under 28 U.S.C.A. § 1391 (a) and 28 U.S.C.A. § 1391 (c) because Freeport-McMoRan is a defendant corporation that resides in this judicial district because it is subject to personal jurisdiction in this district at the date of commencement of this action.

8.    Venue is further proper in this court under 28 U.S.C.A. § 1391 (a) and 28 U.S.C.A. § 1391 (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### STATEMENT OF CENTURY'S AND CONTINENTAL'S CLAIM

9.    On January 1, 1958, Climax Molybdenum Company merged with American Metals Company to form American Metal Climax, Inc.

10.    On or after January 1, 1975, American Metal Climax, Inc. became Amax, Inc.

11.    On or around November 15, 1993, Amax, Inc. merged with Cyprus Minerals Company to form Cyprus Amax Minerals Company.

12.    On December 2, 1999, Phelps Dodge Corporation acquired Cyprus Amax Minerals Company.

13.    On March 19, 2007, Freeport-McMoRan acquired Phelps Dodge Corporation.

14.    Century issued the following liability insurance policies to Amax:

-3-

(a)    Policy No. LB 39736 for the January 1, 1965 to January 1, 1968 policy period;

(b)    Policy No. ALB 47168 for the January 1, 1968 to January 1, 1971 policy period;

(c)    Policy No. ALB 47212 for the January 1, 1971 to January 1, 1972 policy period;

(d)    Policy No. ALB 47240 for the January 1, 1972 to January 1, 1974 policy period;

(e)    Policy No. ALB 47276 for the January 1, 1974 to January 1, 1975 policy period; and

(f)    Policy No. ALB 47279 for the January 30, 1974 to January 1, 1975 policy period.

15.    Continental issued the following primary, occurrence-based, liability insurance policies to Amax:

(a)    Policy No. L-3 32 08 62 for the January 1, 1975 to January 1, 1976 policy period;

(b)    Policy No. L-3 61 88 26 for the January 1, 1976 to January 1, 1977 policy period;

(c)    Policy No. L 1 18 43 28 for the January 1, 1977 to January 1, 1980 policy period;

(d)    Policy No. SRL-3 63 59 13 for the January 1, 1980 to January 1, 1981 policy period;

-4-

(e)    Policy No. SRL 3 63 60 99 for the January 1, 1981 to January 1, 1982 policy period;

(f)    Policy No. SRL 3 63 62 91 for the January 1, 1982 to January 1, 1983 policy period;

(g)    Policy No. SRL 3 63 66 77 for the January 1, 1983 to January 1, 1984 policy period;

(h)    Policy No. SRL 3 63 68 59 for the January 1, 1984 to January 1, 1985 policy period;

(i)    Policy No. SRL 3 34 44 12 for the January 1, 1985 to January 1, 1986 policy period;

(j)    Policy No. SRL 3 34 74 18 for the January 1, 1986 to April 1, 1986 policy period.

16.    Beginning in April 2005, Phelps Dodge Corporation began to ship corporate documents from its locations around the country to Phoenix, Arizona to review the documents and to assimilate those records into its general corporate records.

17.    Beginning in February 2007, Phelps Dodge Corporation undertook the review and corporate assimilation of the documents it obtained from Cyprus Amax Minerals Company when Phelps Dodge Corporation acquired Cyprus Amax Minerals Company in 1999.

18.    Phelps Dodge Corporation neither sought nor obtained the consent of Century or Continental before it began the review and corporate assimilation of the Cyprus Amax Minerals Company records.

19.    Since March 2007, Freeport-McMoRan has continued the review and corporate assimilation of the Cyprus Amax Minerals Company records.

20.    Freeport-McMoRan neither sought nor obtained the consent of Century or Continental before it continued the review and corporate assimilation of the Cyprus Amax Minerals Company records.

21.    Through December 2007, Freeport-McMoRan claims the review and corporate assimilation of the Cyprus Amax Minerals Company records cost $3,900,000.

22.    Through the project's completion, Freeport-McMoRan claims the review and corporate assimilation of the Cyprus Amax Minerals Company records will cost an additional $3,900,000, for a total of $7,800,000.

23.    Freeport-McMoRan claims the insurance policies Century and Continental issued to Amax cover the cost of the assimilation of the Cyprus Amax Minerals Company corporate records into Freeport-McMoRan's corporate records.

24.    Century and Continental deny any obligation for the cost of the Corporate Records Assimilation Project.

25.    An actual controversy exists between Century and Continental, on the one hand, and Freeport-McMoRan, on the other hand, over whether the insurance policies cover the cost of the Corporate Records Assimilation Project.

## COUNT I

26.    Century and Continental seek a declaratory judgment under 28 U.S.C.A. § 2201 that the insurance policies issued to Amax do not provide coverage for the cost of the Corporate Records Assimilation Project on the following grounds:

(a)    The costs incurred are not defense costs within the meaning of the policies;

(b)    Century and Continental are not responsible for costs Freeport-McMoRan voluntarily incurs;

(c)    Century and Continental are not responsible for costs Freeport-McMoRan incurred without Century's and Continental's consent;

(d)    Century and Continental are not responsible for unreasonable and/or unnecessary costs;

(e)    Freeport-McMoRan is neither the named insured nor a successor entitled to coverage under the liability insurance policies that Century and Continental issued to Amax; and

(f)    Any other grounds stemming from the policies, the law, or otherwise.

### DEMAND FOR JUDGMENT

Wherefore, Century and Continental demand judgment, as follows:

1.    A declaratory judgment that Century and Continental have no obligation to pay for Freeport-McMoRan's Corporate Records Assimilation Project;

2.    Alternatively, should the court determine that Century and Continental have an obligation to pay any portion of the Corporate Records Assimilation Project, a declaratory judgment over the respective rights and obligations of the parties under the Century and Continental policies, and declaratory judgment for the amount of any obligation of Century and/or Continental to pay for the Corporate Records Assimilation Project;

3.    Costs;

4.    All other relief to which Century and Continental are entitled.

-7-

Dated: February 28, 2008.

WHITE AND WILLIAMS LLP

By: _Rafael Vergara_

Rafael Vergara (RV-4098)
White and Williams LLP
One Penn Plaza, Suite 1801
New York, NY 10119
Phone: 212-244-9500
            -and-
Shane R. Heskin (SH-9984)
White and Williams LLP
1800 One Liberty Place
Philadelphia, Pennsylvania 19103
Telephone: (215) 864-7000

COLLIAU ELENIUS MURPHY
CARLUCIO KEENER & MORROW

By: _Marian S. Hertz_

Marian S. Hertz (MSH-9644)

40 Wall Street, 7th Floor
New York, New York 10005
Telephone: (212) 440-2743

and

Gretchen A. Ramos (pro hac vice pending)
Alan P. Jacobus (pro hac vice pending)
CARROLL BURDICK & McDONOUGH
L.L.P.
44 Montgomery Street
San Francisco, California 94104
Telephone: (415) 989-1900

Attorneys for Plaintiff The Continental
Insurance Company

-8-

# Exhibit I

# FACSIMILE TRANSMISSION

## GORDON & REES LLP

Attorneys At Law
101 W. Broadway, Suite 2000
San Diego, CA  92101
Phone: (619) 696-6700
Fax: (619) 696-7124
www.gordonrees.com

**DATE:**       April 24, 2008

**TO:**

| NAME | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|
| Mark J. Plumer | Heller Ehrman, LLP | (202) 912-2202 | (202) 912-2021 |

**FROM:**     Steven B. Bitter

**SENDER INFORMATION (NAME / USER ID / EXTENSION):**  Maria G. Cerezo/2861/7480

| FILE NO.: FAR 1002053 | NUMBER OF PAGES, INCLUDING COVER: -6- |
|---|---|

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE AS SOON AS POSSIBLE.**

**MESSAGE:**

Please see attached.

Thank you.

Maria G. Cerezo
Secretary to Steven Bitter

FAR/1002053/5020608v.1

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THE FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE VIA THE U.S. POSTAL SERVICE.  THANK YOU.

SAN FRANCISCO ♦ SAN DIEGO ♦ LOS ANGELES ♦ SACRAMENTO ♦ ORANGE COUNTY ♦ LAS VEGAS ♦ PORTLAND ♦ HOUSTON ♦ PHOENIX ♦ DALLAS ♦ NEW YORK

STEVEN B. BITTER
SBITTER@GORDONREES.COM
DIRECT DIAL: (619) 230-7770

# GORDON & REES LLP

ATTORNEYS AT LAW
101 WEST BROADWAY
SUITE 1600
SAN DIEGO, CA 92101
PHONE: (619) 696-6700
FAX: (619) 696-7124
WWW.GORDONREES.COM

April 24, 2008

## VIA FACSIMILE AND U.S. MAIL

Mark J. Plumer, Esq.
Heller Ehrman, LLP
1717 Rhode Island Avenue, NW
Washington, D.C. 20036-3001

|  |  |  |
|---|---|---|
| Re: | Companies: | Truck Insurance Exchange |
|  |  | Fireman's Fund Insurance Company |
|  |  | Old Republic Insurance Company |
|  |  | CNA Insurance Company |
|  | Insured: | Cyprus Mines Corporation |
|  | Policy Nos.: | Various |
|  | Re: | Talc Litigation |

Dear Mr. Plumer:

Gordon & Rees, LLP has been retained by Truck Insurance Exchange, Fireman's Fund Insurance Company, Old Republic Insurance Company and CNA Insurance Company (collectively referred to as the "Cyprus Mines Insurers") to assist with an evaluation of the Cyprus Mines Insurers' reimbursement obligations for certain legal billings submitted by Enviro-Tox Loss Services, Inc. purportedly for talc-related litigation ("Legal Billings") on behalf of Cyprus Amax Minerals Co. ("Cyprus").

The Cyprus Mines Insurers are in receipt of your April 11, 2008 correspondence demanding a mediation pursuant to the Cyprus Confidential Settlement Agreement for Defense and Indemnification for Certain Bodily Injury Claims (the "Agreement") entered into between the Cyprus Mines Insurers and Cyprus. The Cyprus Mines Insurers read the Agreement to mandate their participation in mediation demanded by the parties thereto, and as a consequence, so long as your client, is, in fact, a party to the Agreement, it appears that the Cyprus Mines Insurers have no choice but to participate in a mediation.

While the Cyprus Mines Insurers will participate in a mediation pursuant to Section 9.A. of the Agreement, any mediation conducted between Cyprus and the Cyprus Mines Insurers can only be productive if the Cyprus Mines Insurers are provided with information in the exclusive possession of your client. The Cyprus Mines Insurers have repeatedly requested additional

ON ● DALLAS ● NEW YORK

Mark J. Plumber, Esq.
April 24, 2008
Page 2

information to evaluate the tendered Legal Billings and whether they are subject to reimbursement under the Agreement, but to date substantive responses have not been provided.

Notably, the Agreement sets forth the protocol for the Cyprus Mines Insurers' reimbursement of "reasonable and necessary costs, fees or expenses incurred by or on behalf of Cyprus in connection with the defense of Bodily Injury Claims." (Agreement, Section I.G.) "Bodily Injury Claims" are "lawsuits filed against Cyprus and alleging liability against Cyprus for damages for bodily injuries, illnesses, ailments, or diseases of any kind or death resulting therefrom, which are alleged to have occurred as a result of exposure to materials or products containing talc, manufactured, formulated, sold, distributed, packaged, trademarked, licensed, handled, installed or placed into the stream of commerce by Cyprus where the first exposure to such products took place, prior to July 1, 1988." (Agreement, Section I.A.) "Defense Costs" do not include Cyprus' internal overhead or costs not associated with the defense of "Bodily Injury Claims." (Agreement, Section I.G.)

In regards to Billing Procedures the Agreement requires that:

XII.    BILLING PROCEDURES

A.      The Lead Carrier shall require defense counsel to submit Defense Costs bills through the agreed electronic billing system on a monthly basis. Such bills shall contain a description of each item of service performed, the date it was performed, the identity of the attorney or paralegal performing it, the amount of time spent upon it, and the rate and charge for it. The bills should also provide a summary of the total time of each timekeeper, the timekeeper's status (partner, associate or paralegal), the timekeeper's hourly rate, the total number of hours billed by each timekeeper, and the total charges for each timekeeper. Out-of-pocket disbursements shall also be itemized. The bill should be submitted electronically with a cover letter identifying the total amount of the bill itemized by legal fees and legal expenses. All defense costs selected to defend Cyprus under this Agreement shall be provided the billing guidelines attached hereto as Attachment B (the "Billing Guidelines") and submit bills electronically. Compliance with the Billing Guidelines shall give rise to a presumption that the fees, costs or expenses are reasonable and necessary.

B.      The itemized documented Defense Cost bills shall be posted to the electronic billing system determined by the Lead Carrier (with an electronic pdf copy to the other Carriers). The Lead Carrier shall review and make payment recommendations to all Carriers within thirty (30) days of receipt of the defense bills provided pursuant to Section XII.A and the payment shall be made by each Carrier in accordance with the allocated share for each Carrier set forth in Section III.B within thirty (30) days of receipt of the Lead Carrier's payment recommendation. Any Party that objects to any such bill must inform defense counsel of its objections in writing specifying each item objected to, the basis for the objection, and the exact dollar amount of the reduction sought as to each item.

Mark J. Plumber, Esq.
April 24, 2008
Page 3

An invoice adjustment will be detailed in an Invoice Report attached to the check for payment of the undisputed amount of the invoice. In the event that a Carrier fails to timely pay its share of itemized documented Defense Cost bills, the Reimbursing Carriers will proceed to equally fund the Orphan Share within thirty (30) days of the payment deadline and therein reserve their rights to reimbursement of the Orphan Share pursuant to Sections III.G and IX.B.

C.    Law firms may request reconsideration of material reductions in writing within thirty (30) days of the payment of the undisputed portion of the bills. The request for reconsideration must be sent to the bill reviewer (with copies to all Carriers) listed in the Invoice Report and include the specific reduction being challenged (date, timekeeper, task), the specific reason why the firm believes the adjustment is inappropriate, and the amount requested. Relevant supplemental documentation should be attached to the request for reconsideration.

The Legal Billings as tendered by Cyprus do not provide enough information for the Cyprus Mines Insurers to determine whether they constitute covered Defense Costs and/or are reimbursable under the Agreement. Significant questions exist as to whether Cyprus has complied with the Agreement in both incurring and demanding reimbursement of the fees and costs depicted in the Legal Billings. As such, Cyprus needs to respond to the Cyprus Mines Insurers' previous requests for additional information not only because they are required to do so pursuant to the Agreement, but any mediation conducted without the production of such information will likely not be productive.

Accordingly, please provide the Cyprus Mines Insurers with the information previously requested in the advance of any mediation amongst the parties to enable the Cyprus Mines Insurers to evaluate their reimbursement obligations for talc Bodily Injury Claims and participate in a meaningful mediation. We reiterate the previous information requests below for your convenience:

1.    The document review materials and criteria that the "Revlon reviewers" are utilizing in their review of the 18,000 boxes in Phoenix that are purportedly relevant to Cyprus' operations;

2.    A report on the procedural status of the 12 Cyprus talc litigation cases that are open and to which billings are being allocated by the Ryley reviewers;

3.    Additional detail on the 18,000 boxes that are being reviewed, specifically, where the boxes came from, what Cyprus operations they were retrieved from, and an overview of the content of the boxes;

4.    Copies of the discovery that is at issue in the open Cyprus talc litigation cases and how information obtained from the review of the boxes is integrated and incorporated into the discovery responses;

Mark J. Plumber, Esq.
April 24, 2008
Page 4

5.  An explanation as to each timekeeper's role in each individual Cyprus talc claim/litigation and the basis for the hourly rate depicted in the Legal Billings;

6.  All information and documentation which Cyprus contends supports a finding that the fees and costs depicted in the Legal Billings are reasonable and necessary costs, fees or expenses incurred by or on behalf of Cyprus in connection with the defense of Bodily Injury Claims within the meaning of the Agreement;

7.  All information and documentation which Cyprus contends supports a finding that the fees and costs depicted in the Legal Billings constitute "Defense Costs" as defined by the Agreement;

8.  All information and documentation which Cyprus contends supports a finding that the fees and costs depicted in the Legal Billings were incurred in consultation with the Lead Carrier as required by the Agreement;

9.  All information and documentation which Cyprus contends supports a finding that the fees and costs depicted in the Legal Billings were incurred in compliance with the billing guidelines as mandated by the Agreement;

10. All information and documentation which Cyprus contends supports a finding that the fees and costs incurred and depicted in the Legal Billings incorporated NCC and that advance notice was provided to and the carriers were consulted prior to commencing the document review project; and

11. All information and documentation which Cyprus contends supports a finding that the fees and costs depicted in the Legal Billings were incurred in compliance with the billing procedure section (Section XII) of the Agreement.

Additionally, you propose to include the Amax insurers in the mediation. Participation of the Amax insurers in the mediation is problematic for several reasons. First, the Amax insurers are not parties to the Agreement, and as a consequence, those insurers' rights and duties are not governed by, nor are they coextensive with the duties of the Cyprus Mines Insurers and Cyprus. Second, the Agreement contains a confidentiality provision which restricts the dissemination of information regarding the Legal Billings to non-parties to the Agreement. Nevertheless, the Cyprus Mines Insurers will consider any rationale or proposal that you and your clients may have to address these concerns.

The Cyprus Mines Insurers' continue to reserve all rights with respect to reimbursement of the Legal Billings pursuant to the Agreement.

Mark J. Plumber, Esq.
April 24, 2008
Page 5

Please let us know if your clients will finally respond to the Cyprus Mines Insurers'
information requests and also address the timing and participation of the Amax insurers in a
mediation.

Very truly yours,

Steven B. Bitter

SBB:JJK

cc:    Jerry Pizzo, Truck Insurance Exchange (via electronic mail)
       Amanda Webber, Fireman's Fund Ins. Co. (via electronic mail)
       Jeff Emory, Old Republic Ins. Co. (via electronic mail)
       John Kotte, CNA Ins. Co. (via electronic mail)

FAR/1002053/5601716v 1

# Exhibit J



1  GORDON & REES LLP
   STEVEN B. BITTER (State Bar No. 156911)
2  101 West Broadway, Suite 2000
   San Diego, CA 92101
3  Telephone: (619) 696-6700
   Facsimile: (619) 696-7124
4
   GORDON & REES LLP
5  GARY J. LORCH (State Bar No. 119989)
   633 West Fifth Street, Suite 4900
6  Los Angeles, CA 90071
   Telephone: (213) 576-5000
7  Facsimile: (213) 680-4470

8  Attorneys for Defendant
   TRUCK INSURANCE EXCHANGE
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  FOR THE COUNTY OF LOS ANGELES

12

13  CYPRUS AMAX MINERALS COMPANY; et )   Case No. BC 198946
    al.,                             )
14                                   )   [Assigned for All Purposes to the Honorable
                 Plaintiff,          )   Victoria G. Chaney – Dep. 324]
15                                   )
        vs.                          )   **NOTICE OF RELATED CASE**
16                                   )   **[CRC 3.300 and Los Angeles Superior**
    ALLIANZ INSURANCE COMPANY, et al. )  **Court Rule 7.3(f)]**
17                                   )
                 Defendants.         )   Complaint Filed: October 9, 1998
18                                   )
    AND RELATED CROSS-ACTIONS.       )
19                                   )
                                     )
20                                   )

21  **TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS**

22  **OF RECORD:**

23          Pursuant to California Rule of Court 3.300 and Los Angeles Superior Court Rule 7.3(f),

24  Defendant TRUCK INSURANCE EXCHANGE ("Truck") hereby provides notice that the

25  following cases are understood to be, and should be considered by this Court as being, related:

26  ///

27  ///

28  ///

                                    -1-

1           1.    *Cyprus Amax Minerals Company, et al. v. Allianz Insurance Company, et*

2 *al.*, Los Angeles Superior Court Case No. BC 198946, filed on October 9, 1998, and assigned to

3 the Honorable Victoria G. Chaney, Judge presiding in Department 324 of the Los Angeles

4 Superior Court (hereinafter referred to as the "1998 Case");  and

5           2.    *Cyprus Amax Minerals Company, et al. v. Continental Casualty Company,*

6 *et al.*, Los Angeles Superior Court Case No. BC 391068, filed on May 16, 2008, and currently

7 pending before the Honorable Mark V. Mooney, Judge presiding in Department 68 of the Los

8 Angeles Superior Court (hereinafter referred to as the "2008 Case").

9      The 1998 Case, entitled *Cyprus Amax Minerals Company, et al. v. Allianz Insurance*

10 *Company, et al.*, which was assigned to the Honorable Victoria G. Chaney, Judge presiding in

11 Department 324 of the Los Angeles Superior Court, has the earliest filing date.

12      For the Court's convenience, a true and correct copy of the operative Fifth Amended

13 Complaint filed in the 1998 Case is attached hereto as Exhibit "A" and a true and correct copy of

14 the Complaint filed in the 2008 Case is attached hereto as Exhibit "B."

15      Truck respectfully submits that the two cases identified above are related for at least the

16 following reasons:

17           1.    <u>The Two Cases Involve Common Parties.</u>

18      Cyprus Amax Minerals Company ("Cyprus Amax") was the lead plaintiff in the 1998

19 Case, and is also the lead plaintiff in the 2008 case.

20      Continental Casualty Company ("Continental Casualty"), The American Insurance

21 Company ("American"), Truck Insurance Exchange ("Truck"), The Continental Insurance

22 Company ("Continental"), and Insurance Company of North America ("ICNA") each were

23 defendants in the 1998 Case. Old Republic Insurance Company ("Old Republic") was a Cross-

24 Defendant in the 1998 Case. Those same entities also are named as defendants in the 2008

25 Case.[1]

26

27

28   [1]    Century Indemnity Company ("Century"), as Successor to Insurance Company of North America, is named in the 2008 Case in place of Insurance Company of North America.

NOTICE OF RELATED CASE

2.     The Two Cases Arise From The Same Or Substantially Identical Transactions, Happenings or Events, And Involve The Same or Similar Claims.

The 1998 Case was a coverage action filed by Cyprus Amax against Continental Casualty, American, Truck, Continental, ICNA and others seeking damages and a declaration of coverage for defense and indemnity expenses arising out of certain claims alleged by Cyprus Amax to be covered under the terms of insurance policies issued by Continental Casualty, American, Truck, Continental, ICNA and others. Effective January 12, 2007, Cyprus Amax, on the one hand, and Continental Casualty, American, Truck, Continental, and Old Republic, on the other, entered into that certain Confidential Settlement Agreement pursuant to which said parties agreed to a mechanism for allocating responsibility for defense costs and indemnification costs with respect to claims arguably covered under the subject insurance policies (hereinafter the "2007 Agreement"). That settlement required that certain relevant portions of the 1998 Case be dismissed with prejudice.

The 2008 Case is based, in substantial part, on Cyprus Amax's claim that Continental Casualty, American, Truck, Continental, and Old Republic each breached the 2007 Agreement and their respective policies of insurance (those same policies at issue in the 1998 Case) by allegedly refusing and failing to pay certain alleged defense costs. In addition, the 2008 Case also is based on Cyprus Amax's claim that it is entitled to a declaration of its rights concerning insurance coverage under policies issued by ICNA (now Century) and Continental. Those same policies were at issue in the 1998 Case.

3.     The Two Cases Require A Determination Of The Same Or Substantially Identical Questions Of Law And/Or Fact.

Both the 1998 and the 2008 Cases will involve a factual and legal determination by the Court of the insurers' obligations to pay for certain alleged defense costs allegedly incurred by Cyprus Amax in connection with its defense of certain talc-related claims.

/ / /

/ / /

1

2

4.   The 2008 Case Is The Same Or Substantially Similar To The Prior 1998 Case.

3       As noted above, the 1998 Case was terminated following entry by the parties into the

4   2007 Agreement. At the heart of the 2008 Case is the claim by Cyprus Amax that the defendants

5   breached the 2007 Agreement.

6       For all of the foregoing reasons, Truck Insurance Exchange respectfully submits that the

7   2008 Case is related to the 1998 Case within the scope and purpose of California Rule of Court

8   3.300 and Los Angeles Superior Court Rule 7.3(f), and must be deemed related by this Court.

9                              Respectfully submitted,

10  Dated: June 10, 2008           GORDON & REES LLP
                                   STEVEN B. BITTER
11                                 GARY J. LORCH

12

13                             By:_____
                                        GARY J. LORCH
14                             Attorneys for Defendant TRUCK INSURANCE
                               EXCHANGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

<u>PROOF OF SERVICE</u>

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is: Gordon & Rees LLP 633 West Fifth Street, Suite 4900, Los Angeles, CA  90071.  On June 10, 2008, I served the within documents:

**NOTICE OF RELATED CASE [CRC 3.300 and Los Angeles Superior Court Rule 7.3(f)]**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at Los Angeles, addressed as set forth below.

**SEE ATTACHED SERVICE LIST**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 10, 2008 at Los Angeles, California.

_____
Mila Owen

Gordon & Rees LLP
633 West Fifth Street, Suite 4900
Los Angeles, CA  90071

### CYPRUS AMAX MINERALS CO. v. ALLIANZ INSURANCE CO., ET AL.
Los Angeles County Superior Court No. BC 198946

## SERVICE LIST

Michael Miguel
**Morgan, Lewis & Bockius LLP**
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
Telephone: (213) 612-2500
Facsimile: (213) 612-2501

Gretchen Ramos
**Carroll, Burdick & McDonough LLP**
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone: 415-989-5900
Facsimile: 415-989-0932

Jeffrey A. Turkell
**WILSON & RYAN**
500 N. Brand Boulevard, Suite 900
Glendale, CA 91203
Telephone: (818) 547-6503
Facsimile : (818) 547-6582

Amy R. Paulus
**CLAUSEN MILLER, P.C.**
10 S. LaSalle Street
Chicago, IL 60603-1098
Telephone: (312) 606-7848 (Direct)
Facsimile: (312) 606-7777

Kevin G. McCurdy, Esq.
**McCurdy & Brown**
1080 Marsh Road
Suite 110
Menlo Park, CA 94025
Telephone: (650) 618-3500
Facsimile: (650) 618-3599

Edward Corey, Esq.
**Corey & Patzakis**
3580 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90010
Telephone: (213) 385-7003
Facsimile: (213) 385-6908



*CYPRUS AMAX v CONTINENTAL CASUALTY, et al.*
Los Angeles County Superior Court No. BC 391068

### **SERVICE LIST**

Lawrence A. Hobel, Esq.
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104-2878
(415) 772-6000 telephone
(415) 772-6268 fax


Lisa M. Cirando, Esq.
Heller Ehrman LLP
Times Square Tower
7 Times Square
New York, NY 10036-6524
(212) 832-8300 telephone
(212) 763-7600 fax


Gretchen A. Ramos, Esq.
Carroll, Burdick & McDonough LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104
(415) 989-5900 telephone
(415) 989-0932 fax


Shay A. Gilmore, Esq.
Carroll, Burdick & McDonough LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104
(415) 989-5900 telephone
(415) 989-0932 fax


Alan P. Jacobus, Esq.
Carroll, Burdick & McDonough LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104
(415) 989-5900 telephone
(415) 989-0932 fax

*CYPRUS AMAX v CONTINENTAL CASUALTY, et al.*
Los Angeles County Superior Court No. BC 391068

### SERVICE LIST (continued)

Deborah Aiwasian, Esq.
Berman & Aiwasian
725 S. Figueroa Street, Suite 1050
Los Angeles, CA 90017-5524
(213) 617-6100 telephone


Shane R. Heskin, Esq.
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395
(215) 864-7000 telephone
(215) 864-7123 fax


Jeffrey A. Turkell, Esq.
Wilson & Ryan
500 N. Brand Blvd., Suite 900
Glendale, California 91203
(818) 547-6530 direct line
(818) 547-6582 fax

# Exhibit K

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 07/25/08 | DEPT. 323 |
| HONORABLE CAROLYN B. KUHL    JUDGE | S. WHITE    DEPUTY CLERK |
| HONORABLE    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| J. O'NEAL, C.A.    Deputy Sheriff | NONE    Reporter |

| 8:30 am | BC391068 | Plaintiff Counsel | |
| | CYPRUS AMAX MINERALS COMPANY ET | | ***NO APPEARANCES*** |
| | VS | Defendant | |
| | CONTINENTAL CASUALTY COMPANY ET | Counsel | |
| | DEEMED COMPLEX (7/3/08) | | |

**NATURE OF PROCEEDINGS:**

COURT ORDER

This Court's Minute Order of July 3, 2008, is
Vacated NUNC PRO TUNC.  The case is assigned for
all purposes to the Honorable Victoria Chaney,
Department 324, per her Minute Order relating this
case to an earlier case assigned to Judge Chaney.

All Future hearing dates are ordered advanced to
this date and vacated.

Counsel for plaintiff shall give notice.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
07/24/2008 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: 07/25/2008

Page  1 of  2    DEPT. 323

| MINUTES ENTERED |
| 07/25/08 |
| COUNTY CLERK |

08/08/2008  15:17    213-639-1363              L.A. SUPERIOR COURT                    PAGE  05

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 07/25/08 | | DEPT. 323 |
| HONORABLE CAROLYN B. KUHL | JUDGE | S. WHITE  DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| J. O'NEAL, C.A. | Deputy Sheriff | NONE  Reporter |

| | | |
|---|---|---|
| 8:30 am | BC391068 | Plaintiff Counsel |
| | CYPRUS AMAX MINERALS COMPANY ET | ***NO APPEARANCES*** |
| | VS | Defendant |
| | CONTINENTAL CASUALTY COMPANY ET | Counsel |
| | DEEMED COMPLEX (7/3/08) | |

**NATURE OF PROCEEDINGS:**

John A. Clarke, Executive Officer/Clerk

By: _____/S/_____
              S. White

Lawrence A. Hobel
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878

Page   2 of  2    DEPT. 323

| MINUTES ENTERED |
|---|
| 07/25/08 |
| COUNTY CLERK |

PAGE 5/5 * RCVD AT 8/8/2008 3:15:45 PM [Pacific Daylight Time] * SVR:LAS-CS01/4 * DNIS:7682 * CSID:213 639 1363 * DURATION (mm-ss):01-44

Exhibit L

PAGE 1/2 * RCVD AT 8/8/2008 4:29:38 PM [Eastern Daylight Time] * SVR:DCS-CSO1/0 * DNIS:2046 * CSID: * DURATION (mm-ss):01-04



THE RESOLUTION EXPERTS

www.jamsadr.com                                                              **Offices Nationwide**

# Memo

| | | | | |
|---|---|---|---|---|
| **To:** | Mark Plumer | **Phone:** 202-912-2000 | **Fax:** 202-912-2020 |
| | Heller Ehrman LLP | | |
| | Steven B. Bitter Esq. | 213-576-5000 | 213-680-4470 |
| | Gordon & Rees LLP | | |
| | Jeffrey A. Turkell Esq. | 818-547-6503 | 818-547-6582 |
| | Wilson & Ryan | | |
| | Gretchen A. Ramos Esq. | 415-989-5900 | 415-989-0932 |
| | Carroll Burdick & McDonough LLP | | |

**From:** Jenny Truex          **Phone:** 619-237-0805

**Date:** August 08, 2008          **Pages (Including Cover):**

**Case Name:** Cyprus Amax Minerals Company, et al vs. Continental Casualty Company, et al

**Reference:** 1240019104

**Comments:**

Counsel:

Please see attached.

Thank you.

This facsimile transmission is confidential. If you have received this transmission in error, please notify the sender at the number listed above and discard the transmission. Thank you for your assistance.

401 "B" Street • Suite 2100 • San Diego, CA 92101 • TEL 619.236.1848 • FAX 619.236.9032

PAGE 2/2 ' RCVD AT 8/8/2008 4:29:38 PM [Eastern Daylight Time] ' SVR:DCS-CS01/0 ' DNIS:2046 ' CSID: ' DURATION (mm-ss):01-04



**JAMS**

THE RESOLUTION EXPERTS®

## HOWARD B. WIENER
Justice of the California Court of Appeal, Retired

August 8, 2008

Re:   CYPRUS AMAX MINERALS COMPANY, et al., Plaintiffs
                                        v.
      CONTINENTAL CASUALTY COMPANY, et al., Defendants

Dear Counsel:

I certainly enjoyed working with you on July 28, 2008 to see if we could amicably resolve this interesting case. Although we explored some interesting concepts during our mediation we were unable to settle the matter. Notwithstanding everyone's conscientious and good faith efforts I have therefore concluded that the mediation among plaintiffs Cyprus Amax Minerals Company, Amax Metals Recovery Inc and Phelps Dodge Corporation, and defendants American Insurance Company, Continental Casualty Company, Truck Insurance Exchange and Old Republic Insurance Company has reached an impasse.

If there is anything further you think I can or should do to assist you please let me know.

Very truly yours,

Howard B. Wiener

1

2  JOHN C. ULIN (Bar No. 165524)
   John.Ulin@hellerehrman.com
3  HELLER EHRMAN LLP
   333 South Hope Street
4  Los Angeles, CA  90071
   Telephone: +1 (213) 689-0200
5  Facsimile: +1 (213) 614-1868

6  Attorneys for Plaintiffs
   CYPRUS AMAX MINERALS COMPANY,
7  PHELPS DODGE CORPORATION, AND
   AMAX METALS RECOVERY INC.
8

9              SUPERIOR COURT OF CALIFORNIA
                  COUNTY OF LOS ANGELES
10

11 CYPRUS AMAX MINERALS COMPANY, a        Case No.: BC391068
   Delaware corporation, PHELPS DODGE
12 CORPORATION, a New York corporation, and )
   AMAX METALS RECOVERY INC., a Delaware  )
13 corporation,                             )
                                           )
14                          Plaintiffs,    )  **DECLARATION OF MICHELE A.**
                                           )  **HUGHES IN SUPPORT OF**
15      v.                                 )  **PLAINTIFFS' OPPOSITION TO**
                                           )  **DEFENDANTS' MOTION TO DISMISS**
16 CONTINENTAL CASUALTY COMPANY, et al., ) **ON GROUNDS OF** *FORUM NON*
                                           )  *CONVENIENSS*
17                                         )
                            Defendants.    )
18 _____ )
                                           )
19 AND RELATED CROSS-ACTIONS              )  Case No.:  BC198946
                                           )
20                                         )
                                           )  Judge:  Hon. Victoria G. Chaney
21                                         )  Dept.:  324
                                           )
22 _____ )

23

24

25

26

27

Heller
Ehrman LLP  28

_____
DECLARATION OF MICHELE A. HUGHES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO
DISMISS, CASE NO. BC391068

1    I, Michele A. Hughes, declare:

2    1.    I submit this Declaration in support of Plaintiffs Cyprus Amax Minerals Company,

3    Phelps Dodge Corporation, and Amax Metals Recovery Inc.'s opposition to the motion to dismiss

4    filed by Defendants Continental Insurance Company ("Continental") and Century Indemnity

5    Company. Unless stated upon information and belief, I have personal knowledge of the facts stated

6    herein and affirm that such statements of fact are true and correct to the best of my knowledge.

7    2.    I am the duly elected and acting Assistant Secretary of Cyprus Amax Minerals

8    Company ("Cyprus Amax"), a Delaware corporation, and Phelps Dodge Corporation (renamed

9    Freeport-McMoRan Corporation on April 15, 2008) ("Phelps Dodge"), a New York corporation

10    (together, the "Corporations"). My office is located in Phoenix, Arizona.

11    3.    AMAX Inc. ("AMAX") was incorporated in New York under the name The

12    American Metal Company, Limited, on June 17, 1887. It changed its name to American Metal

13    Climax, Inc. on December 30, 1957. Subsequently, on July 1, 1974, its name was changed to

14    AMAX. From at least 1973 to 1975, AMAX's headquarters were located in New York. In 1975,

15    its headquarters moved to Connecticut, where it remained at least through 1986.

16    4.    On January 25, 1971, Amax Nickel Refining Company, Inc. was incorporated in

17    Delaware as a subsidiary of AMAX for the purpose of operating a nickel refinery in Braithwaite,

18    Louisiana. Amax Nickel Refining Company, Inc. qualified to do business in Louisiana effective

19    February 5, 1971.

20    5.    On December 30, 1980, Amax Nickel Refining Company, Inc.'s name was changed

21    to Amax Nickel, Inc.

22    6.    On January 1, 1988, Amax Nickel, Inc.'s name was changed to Amax Metals

23    Recovery, Inc. ("AMRI"). From 1971 through 1988, the headquarters of Amax Nickel Refining

24    Company, Inc.'s, later called Amax Nickel, Inc, and now known as AMRI, were located in

25    Louisiana.

26    7.    On November 15, 1993, AMAX merged into Cyprus Minerals Company, which is

27    the corporate successor to Cyprus Mines Corporation. Cyprus Minerals Company was the

28    surviving entity and it changed its name to Cyprus Amax.

Heller
Ehrman LLP

2

8.    On December 2, 1999, Cyprus Amax merged with and into a subsidiary of Phelps Dodge, which was renamed Cyprus Amax.

9.    On March 19, 2007, Phelps Dodge merged with and into a subsidiary of Freeport-McMoRan Corporation.

10.    Cyprus Amax and AMRI remain corporations in good standing in their respective states of incorporation.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on August 8, 2008 at Phoenix, Arizona.

_____
MICHELE A. HUGHES

Heller
Ehrman LLP

3

JOHN C. ULIN (Bar No. 165524)
John.Ulin@hellerehrman.com
HELLER EHRMAN LLP
333 South Hope Street
Los Angeles, CA  90071
Telephone: +1 (213) 689-0200
Facsimile: +1 (213) 614-1868

Attorneys for Plaintiffs
CYPRUS AMAX MINERALS COMPANY,
PHELPS DODGE CORPORATION, AND
AMAX METALS RECOVERY INC.

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

| | |
|---|---|
| CYPRUS AMAX MINERALS COMPANY, a Delaware corporation, PHELPS DODGE CORPORATION, a New York corporation, and AMAX METALS RECOVERY INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> CONTINENTAL CASUALTY COMPANY, et al., <br><br> Defendants. <br> ───────────────────────────────── <br> AND RELATED CROSS-ACTIONS | Case No.: BC391068 <br><br><br><br><br><br> **DECLARATION OF GREGORY D. WINFREE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS*** <br><br><br> Case No.:  BC198946 <br><br> Judge:  Hon. Victoria G. Chaney <br> Dept.:  324 |

Heller
Ehrman LLP

DECLARATION OF GREGORY D. WINFREE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS, CASE NO. BC391068

1    I, Gregory D. Winfree, declare:

2    1.    I submit this Declaration in support of Plaintiffs Cyprus Amax Minerals Company

3   ("Cyprus Amax"), Phelps Dodge Corporation ("Phelps Dodge"), and Amax Metals Recovery Inc.'s

4   ("AMRI") opposition to the motion to dismiss filed by Defendants Continental Insurance Company

5   ("Continental") and Century Indemnity Company ("Century").  Unless stated upon information and

6   belief, I have personal knowledge of the facts stated herein and affirm that such statements of fact

7   are true and correct to the best of my knowledge.

8    2.    I am Chief Litigation Counsel with Freeport-McMoRan Copper & Gold Inc.

9   ("Freeport").  In my capacity as Chief Litigation Counsel, I am responsible for managing all of the

10   active litigation involving Freeport and its subsidiaries, affiliates, and business units.  I have held

11   this position since March 2007 at an office located in Phoenix, Arizona.  Previously, I was

12   employed by Phelps Dodge as Chief Litigation Counsel, a position I held from June 2004.

13    3.    Beginning in February 2007, Cyprus Amax commenced a review of 18,000 boxes of

14   commingled AMAX Inc.("AMAX") and Cyprus Minerals Company ("Cyprus") documents, many

15   of which previously were believed to have been destroyed.

16    4.    The document review was undertaken in response to outstanding discovery requests

17   in certain lawsuits seeking damages for bodily injury related to AMRI's historic operations (the

18   "AMRI Actions") and certain lawsuits seeking damages for bodily injury related to Cyprus

19   Minerals Company historic operations (the "Cyprus Minerals Actions").

20    5.    Michael Bailey is national coordinating counsel for the Cyprus Minerals Actions.

21   Mr. Bailey is based in Los Angeles, California.

22    6.    The document review took place in Phoenix, Arizona and the law firm that

23   conducted the review is based in Phoenix, Arizona.

24    7.    Insurance coverage for the Cyprus component of the document review is governed

25   by a confidential settlement agreement (the "2007 Agreement" or "Agreement") entered into by

26   Cyprus Amax and four primary insurers providing coverage for the historic operations of Cyprus.  I

27   have reviewed the 2007 Agreement.  The existence of the 2007 Agreement is not confidential,

28   although the Agreement generally is confidential.  Consistent with the 2007 Agreement, any dispute

1  must be adjudicated in the Superior Court of California, County of Los Angeles and will be

2  controlled by and interpreted according to the laws of the State of California.

3      8.    Heller Ehrman LLP, outside insurance counsel for Cyprus Amax, apprised the

4  parties to the 2007 Agreement in advance — pursuant to the Agreement's terms — that Cyprus

5  Amax intended to disclose the general nature of the Agreement and its application to the current

6  dispute and the substance of those specific terms related to choice of forum and choice of law

7  requirements.

8      9.    I participated in the pre-litigation claim discussions with Continental and Century.

9  Freeport and its subsidiaries negotiated in good faith with Continental and Century, including

10  attending face-to-face meetings, providing requested information and allowing them to visit the site

11  of the document review, which was ongoing at the time.  I relied upon the impression they

12  conveyed that they were evaluating the claim for purposes of engaging in a serious claims

13  discussion.  There was no prior warning that they intended to file a lawsuit and we were completely

14  blindsided by the filing of Continental's and Century's lawsuit against Freeport in the Southern

15  District of New York.

16      I declare under penalty of perjury under the laws of the State of California that the foregoing

17  is true and correct, and that this declaration was executed on August 7, 2008 at Phoenix, Arizona.

18

19                                    GREGORY D. WINFREE

20

21

22

23

24

25

26

27

28

1

2  JOHN C. ULIN (Bar No. 165524)
   John.Ulin@hellerehrman.com
3  HELLER EHRMAN LLP
   333 South Hope Street
4  Los Angeles, CA 90071
   Telephone: +1 (213) 689-0200
5  Facsimile: +1 (213) 614-1868

6  Attorneys for Plaintiffs
   CYPRUS AMAX MINERALS COMPANY,
7  PHELPS DODGE CORPORATION, AND
   AMAX METALS RECOVERY INC.
8

9              SUPERIOR COURT OF CALIFORNIA
                  COUNTY OF LOS ANGELES
10

11 CYPRUS AMAX MINERALS COMPANY, a          Case No.: BC391068
   Delaware corporation, PHELPS DODGE
12 CORPORATION, a New York corporation, and   )
   AMAX METALS RECOVERY INC., a Delaware      )
13 corporation,                               )
                                              )
14                          Plaintiffs,       )  **DECLARATION OF VICTORIA**
                                              )  **BELLAMY IN SUPPORT OF**
15          v.                                )  **PLAINTIFFS' OPPOSITION TO**
                                              )  **DEFENDANTS' MOTION TO DISMISS**
16 CONTINENTAL CASUALTY COMPANY, et al.,      )  **ON GROUNDS OF** *FORUM NON*
                                              )  *CONVENIENS*
17                          Defendants.       )
                                              )
18 _____   )
                                              )  Case No.: BC198946
19 AND RELATED CROSS-ACTIONS                  )
                                              )
20                                            )
                                              )  Judge: Hon. Victoria G. Chaney
21                                            )  Dept.: 324
                                              )
22 _____

23

24

25

26

27

Heller
Ehrman LLP   28

1    I, Victoria Bellamy, declare:

2        1.    I submit this Declaration in support of Plaintiffs Cyprus Amax Minerals Company

3    ("Cyprus Amax"), Phelps Dodge Corporation ("Phelps Dodge"), and Amax Metals Recovery Inc.'s

4    ("AMRI") opposition to the motion to dismiss filed by Defendants Continental Insurance Company

5    ("Continental") and Century Indemnity Company. Unless stated upon information and belief, I

6    have personal knowledge of the facts stated herein and affirm that such statements of fact are true

7    and correct to the best of my knowledge.

8        2.    I am employed by Freeport-McMoRan Copper & Gold Inc. ("Freeport") as the

9    Manager, Risk Programs. I have held this position since March 2007 in an office located in

10   Phoenix, Arizona. From 1999 to 2007, I worked in the Risk Management Department of Phelps

11   Dodge.

12       3.    In my current position, I am responsible for historic insurance coverage issued to or

13   for the benefit of Freeport's corporate subsidiaries and predecessors, including Cyprus Amax and

14   AMRI.

15       4.    I am in possession of at least the following liability insurance policies issued by

16   Continental to AMAX Inc. and AMRI or their corporate predecessors (collectively, the

17   "Continental Insurance Policies"):

18           a. Policy No. L 3 32 08 62, effective January 1, 1975 to January 1, 1976

19           b. Policy No. L 3 61 88 26, effective January 1, 1976 to January 1, 1977;

20           c. Policy No. L 1 18 43 28, effective January 1, 1977 to January 1, 1980;

21           d. Policy No. SRL 3 63 59 13, effective January 1, 1980 to January 1, 1981;

22           e. Policy No. SRL 3 63 60 99, effective January 1, 1981 to January 1, 1982;

23           f. Policy No. SRL 3 63 62 91, effective January 1, 1982 to January 1, 1983;

24           g. Policy No. SRL 3 63 66 77, effective January 1, 1983 to January 1, 1984;

25           h. Policy No. SRL 3 63 68 59, effective January 1, 1984 to January 1, 1985;

26           i. Policy No. SRL 3 34 44 12, effective January 1, 1985 to January 1, 1986;

27           j. Policy No. SRL 3 34 74 18, effective January 1, 1986 to April 1, 1986.

Heller
Ehrman LLP

5.    With the assistance of counsel, I have confirmed that the aforementioned policies issued by Continental all include a Schedule A which includes as a Named Insured either "Amax Nickel Refining Co., Inc" or "AMAX Inc. and any Subsidiary, Affiliated or Related Company and any other Company coming under the Named Insured's control of which it assumes active Management." With the same assistance, I have confirmed that none of the aforementioned policies contain choice of forum or choice of law provisions.

6.    I am in possession of at least the following liability insurance policies issued by Insurance Company of North America ("Century" and, on information and belief, predecessor to CCI Insurance Company, predecessor to Century Indemnity Company) to AMAX Inc. and AMRI or their corporate predecessors (collectively, the "Century Policies"):

        a.  Policy No. LB 39736, effective January 1, 1965 to January 1, 1968;

        b.  Policy No. ALB 47618, effective January 1, 1968 to January 1, 1971;

        c.  Policy No. ALB 47212, effective January 1, 1971 to January 1, 1972;

        d.  Policy No. ALB 47240, effective January 1, 1972 to January 1, 1974;

        e.  Policy No. ALB 47276, effective January 1, 1974 to January 1, 1975;

        f.  Policy No. ALB 47279, effective January 30, 1974 to January 1, 1975.

7.    With the assistance of counsel, I have confirmed that the aforementioned policies issued by Century all include the following definition: "'Named Insured' means the person or organization named in the declarations of this policy and shall include any of its subsidiaries and any other company of which it assumes active management." With the same assistance, I have confirmed that none of the aforementioned policies contain choice of forum or choice of law provisions.

8.    Freeport had no involvement in purchasing the Continental Policies or the Century Policies, which on information and belief were purchased by Cyprus Amax or its subsidiaries and predecessors in or about 1965-1975 (Century) and 1975-1986 (Continental).

9.    On information and belief, until 1993, Cyprus Minerals Company was wholly separate from AMAX Inc. During this period, Cyprus Minerals Company and its subsidiaries and predecessors purchased separate insurance from American Insurance Company (at least 1961-

Heller
Ehrman LLP

2

1  1964), Continental Casualty Company (at least 1956-1974), Truck Insurance Exchange (at least

2  1974-1980), and Old Republic Insurance Company (at least 1985-1988) (collectively, the "Cyprus

3  Insurers").

4      10.    Lawsuits seeking damages against Cyprus Minerals Company and/or its subsidiaries

5  and alleged predecessors for alleged bodily injury related to Cyprus Minerals Company's historic

6  operations have been asserted in multiple states, but the majority of active claims are venued in

7  California (the "Cyprus Minerals Actions").

8      11.    Lawsuits seeking damages against AMRI (the "AMRI Actions") for alleged bodily

9  injury related to AMRI's historic operations currently are pending in the State of Louisiana.

10      12.    Continental and Century each began to pay defense costs related to the AMRI

11  Actions beginning in approximately mid-2004.

12      13.    Continental and Century initially made payments toward the costs incurred by

13  Cyprus Amax and AMRI related to the review of Cyprus Amax documents at the center of this

14  litigation. However, Continental and Century eventually stopped making such payments.

15      14.    Once it became clear that Continental and Century were unwilling to continue

16  paying the costs of the document review at issue, discussions with the insurers were initiated in an

17  effort to resolve the matter outside of court.

18      15.    On December 6, 2007, I traveled to Philadelphia to meet with principals from CNA,

19  the parent of Continental, and Resolute Management, a claims management company acting on

20  behalf of Century.

21      16.    On December 21, 2007, insurers were provided information requested at the

22  December 6th meeting and were requested by letter to provide "your written commitment to

23  participate in the Cyprus Amax review project no later than 5:00 PM EST on January 31, 2008."

24      17.    On January 11, 2007, Resolute Management (on behalf of Century) sent a letter

25  stating that the information provided to date was "insufficient for us to make a decision regarding

26  our commitment to this project at this time" and requested the opportunity to tour the document

27  review facility in Arizona on January 31, 2008.

28

18.    On January 14, 2008, CNA sent a later stating, "CNA is currently in the process of reviewing all of the information at its disposal with regard to this project ... and will continue to do so ... it is simply not feasible to relay our position at present."

19.    We agreed to Century's request, and on January 31, 2008, CNA and Century both sent representatives to Arizona to tour the facility where the document review was ongoing.

20.    On February 28, 2008, without warning and to Freeport's complete surprise, Continental and Century filed a lawsuit against Freeport in the Southern District of New York in lieu of providing a commitment or other response as part of the pending claim discussion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on August 8, 2008 at Phoenix, Arizona.

VICTORIA BELLAMY

JOHN C. ULIN (Bar No. 165524)
John.Ulin@hellerehrman.com
HELLER EHRMAN LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: +1 (213) 689-0200
Facsimile: +1 (213) 614-1868

Attorneys for Plaintiffs
CYPRUS AMAX MINERALS COMPANY,
PHELPS DODGE CORPORATION, AND
AMAX METALS RECOVERY INC.

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

| | |
|---|---|
| CYPRUS AMAX MINERALS COMPANY, a Delaware corporation, PHELPS DODGE CORPORATION, a New York corporation, and AMAX METALS RECOVERY INC., a Delaware corporation,<br><br>                                    Plaintiffs,<br><br>        v.<br><br>CONTINENTAL CASUALTY COMPANY, et al.,<br><br>                                    Defendants.<br>_____<br>AND RELATED CROSS-ACTIONS | Case No.: BC391068<br><br><br><br><br><br>**DECLARATION OF MICHAEL E. HUTCHINS**<br><br><br><br><br><br><br>Case No.: BC198946<br><br><br>Judge: Hon. Victoria G. Chaney<br>Dept.: 324 |

Heller
Ehrman LLP

DECLARATION OF MICHAEL E. HUTCHINS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO
DISMISS, CASE NO. BC391068

1     I, Michael E. Hutchins, declare:

2     1.     I submit this Declaration in connection with the above-captioned matter.  Unless

3 stated upon information and belief, I have personal knowledge of the facts stated herein and affirm

4 that such statements of fact are true and correct to the best of my knowledge.

5     2.     I am a partner in the law firm of Kasowitz Benson Torres & Friedman LLP

6 ("KBT&F").  I am a resident of the State of Georgia  and I am the partner in charge of  KBT&F's

7 Atlanta office, where I work on a daily basis.

8     3.     I am national coordinating counsel for Cyprus Amax with respect to asbestos-related

9 premises liability claims asserted against the historical entity AMAX, Inc. and its subsidiaries,

10 including AMRI.

11     4.     Based on investigation conducted to date,  refurbishing activities at the AMRI nickel

12 refinery in Braithwaite, Louisiana commenced in 1973 and production operations at the site began

13 in early 1975.

14     5.     At this time, all asbestos claims involving  AMRI pend in the Louisiana state court

15 system.  All of those cases seek damages for bodily injury or death related to AMRI's historical

16 nickel refinery operations in Louisiana.

17     I declare under penalty of perjury under the laws of the State of California that the foregoing

18 is true and correct to the best of my knowledge, information and belief, and that this declaration

19 was executed on August 7, 2008 at Atlanta, Georgia.

20

21                   MICHAEL E. HUTCHINS

22

23

24

25

26

27

28



1

2  JOHN C. ULIN (Bar No. 165524)
   John.Ulin@hellerehrman.com
3  HELLER EHRMAN LLP
   333 South Hope Street
4  Los Angeles, CA  90071
   Telephone: +1 (213) 689-0200
5  Facsimile: +1 (213) 614-1868

6  Attorneys for Plaintiffs
   CYPRUS AMAX MINERALS COMPANY,
7  PHELPS DODGE CORPORATION, AND
8  AMAX METALS RECOVERY INC.

9                  SUPERIOR COURT OF CALIFORNIA
                     COUNTY OF LOS ANGELES
10

11 CYPRUS AMAX MINERALS COMPANY, a     )  Case No.: BC391068
   Delaware corporation, PHELPS DODGE   )
12 CORPORATION, a New York corporation, and )
   AMAX METALS RECOVERY INC., a Delaware )
13 corporation,                          )
                                         )
14                          Plaintiffs,  )  **NOTICE OF ASSIGNMENT OF CASE**
                                         )  **TO HON. VICTORIA G. CHANEY**
15            v.                         )
                                         )
16                                       )
   CONTINENTAL CASUALTY COMPANY, et al., )
17                                       )
                           Defendants.   )
18 ────────────────────────────────────── )
                                         )
19 AND RELATED CROSS-ACTIONS            )  Case No.:  BC198946
                                         )
20                                       )
                                         )  Judge:  Hon. Victoria G. Chaney
21                                       )  Dept.:  324
                                         )
22 ────────────────────────────────────── )

23

24

25

26

27

28

Heller
Ehrman LLP

# Exhibit C
# Part 5 of 5

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2      PLEASE TAKE NOTICE THAT on July 25, 2008, the Court issued a Minute Order

3  assigning the above-captioned case to the Honorable Victoria G. Chaney, Department 324.  A true

4  and correct copy of the Minute Order is attached hereto as Exhibit A.

5

6  August 14, 2008                          Respectfully submitted,

7                                           HELLER EHRMAN LLP

8                                           By _John C. Ulin_ M/D/B

9                                           JOHN C. ULIN (Bar No. 165524)
                                            Attorneys for Plaintiffs
10                                          CYPRUS AMAX MINERALS COMPANY,
                                            PHELPS DODGE CORPORATION AND
11                                          AMAX METALS RECOVERY INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Heller
Ehrman LLP

# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 07/25/08                                                    **DEPT.** 323

HONORABLE CAROLYN B. KUHL        JUDGE | S. WHITE           DEPUTY CLERK

HONORABLE                        JUDGE PRO TEM            ELECTRONIC RECORDING MONITOR

J. O'NEAL, C.A.        Deputy Sheriff | NONE                     Reporter

| | | Plaintiff |
|---|---|---|

8:30 am | BC391068                     Plaintiff
                                        Counsel
         CYPRUS AMAX MINERALS COMPANY ET              ***NO APPEARANCES***
         VS                            Defendant
         CONTINENTAL CASUALTY COMPANY ET  Counsel


         DEEMED COMPLEX (7/3/08)

**NATURE OF PROCEEDINGS:**


John A. Clarke, Executive Officer/Clerk

By: _____
              S. White


Lawrence A. Hobel
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA   94104-2878

Page   2 of  2    DEPT. 323

```
MINUTES ENTERED
07/25/08
COUNTY CLERK
```

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 07/25/08 | | | DEPT. 323 |
|---|---|---|---|
| HONORABLE CAROLYN B. KUHL | JUDGE | S. WHITE | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| J. O'NEAL, C.A. | Deputy Sheriff | NONE | Reporter |

| 8:30 am | BC391068 | Plaintiff Counsel | |
|---|---|---|---|
| | CYPRUS AMAX MINERALS COMPANY ET | | ***NO APPEARANCES*** |
| | VS | Defendant | |
| | CONTINENTAL CASUALTY COMPANY ET | Counsel | |
| | | | |
| | DEEMED COMPLEX (7/3/08) | | |

**NATURE OF PROCEEDINGS:**

COURT ORDER

This Court's Minute Order of July 3, 2008, is
Vacated NUNC PRO TUNC.  The case is assigned for
all purposes to the Honorable Victoria Chaney,
Department 324, per her Minute Order relating this
case to an earlier case assigned to Judge Chaney.

All Future hearing dates are ordered advanced to
this date and vacated.

Counsel for plaintiff shall give notice.

### CLERK'S CERTIFICATE OF MAILING/
### NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
07/24/2008 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: 07/25/2008

Page  1 of  2   DEPT. 323

```
MINUTES ENTERED
07/25/08
COUNTY CLERK
```

1

2   JOHN C. ULIN (Bar No. 165524)
    John.Ulin@hellerehrman.com
3   HELLER EHRMAN LLP
    333 South Hope Street
4   Los Angeles, CA 90071
    Telephone: +1 (213) 689-0200
5   Facsimile: +1 (213) 614-1868

6   Attorneys for Plaintiffs
    CYPRUS AMAX MINERALS COMPANY,
7   PHELPS DODGE CORPORATION, AND
8   AMAX METALS RECOVERY INC.

9              SUPERIOR COURT OF CALIFORNIA
                 COUNTY OF LOS ANGELES
10

11  CYPRUS AMAX MINERALS COMPANY, a          Case No.: BC391068
    Delaware corporation, PHELPS DODGE
12  CORPORATION, a New York corporation, and   )
    AMAX METALS RECOVERY INC., a Delaware      )
13  corporation,                               )
                                               )
14                            Plaintiffs,      )   **PROOF OF SERVICE**
                                               )
15        v.                                   )
                                               )
16                                             )
    CONTINENTAL CASUALTY COMPANY, et al.,      )
17                                             )
                              Defendants.      )
18  ─────────────────────────────────────     )   Case No.: BC198946
19  AND RELATED CROSS-ACTIONS                  )
                                               )
20                                             )   Judge: Hon. Victoria G. Chaney
                                               )   Dept.: 324
21                                             )
22  ─────────────────────────────────────     )

23

24

25

26

27

Heller
Ehrman LLP   28

PROOF OF SERVICE, CASE NO. BC391068

## PROOF OF SERVICE

I, Linda Pettigrew, declare as follows:

I am and was at the time of the service mentioned in this declaration, employed in the County of Los Angeles, California. I am over the age of 18 years and not a party to the within action. My business address is Heller Ehrman LLP, 333 South Hope Street, 39th Floor, Los Angeles, CA 90071-3043.

On August 14, 2008, I served the following documents:

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS*;**

**APPENDIX OF NON-CALIFORNIA AUTHORITIES SUBMITTED WITH PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS*;**

**DECLARATION OF DARREN S. TESHIMA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS*;**

**DECLARATION OF MICHELE A. HUGHES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS*;**

**DECLARATION OF GREGORY D. WINFREE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS*;**

**DECLARATION OF VICTORIA BELLAMY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS*;**

**DECLARATION OF MICHAEL E. HUTCHINS;**

**NOTICE OF ASSIGNMENT OF CASE TO HON. VICTORIA G. CHANEY; and**

**PROOF OF SERVICE**

on the parties to this action as follows:

### SEE ATTACHED SERVICE LIST

☒      (BY MAIL). I placed true copies thereof in sealed envelopes, addressed as shown, for collection and mailing pursuant to the ordinary business practice of this office

Heller
Ehrman LLP

PROOF OF SERVICE; CASE NO. BC391068

which is that correspondence for mailing is collected and deposited with the United States Postal Service on the same day in the ordinary course of business.

☐ (BY EXPRESS COURIER). I placed true copies thereof in a sealed [Courier Company] envelope, air bill addressed as shown, for collection and delivery pursuant to the ordinary business practice of this office which is that correspondence for overnight delivery via courier service is collected and deposited with the courier service representative on the same day in the ordinary course of business.

☐ (BY MESSENGER SERVICE). I placed true copies thereof in a sealed envelope for hand delivery by [Courier Company] to the addressee(s) noted above to the person or leaving it at the person's office with a person in charge.

☐ (BY FACSIMILE). At approximately [Transmission Time], by use of facsimile machine, I served a copy of the above documents. The facsimile machine that I used complied with California Rules of Court, Rule 2003(3) and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2005, I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

☐ (BY EMAIL SERVICE). I served the document(s) identified above to be served in this action by attaching a copy thereof to an electronic mail message and transmitting the same to the e-mail addresses shown below. This electronic mail service is made pursuant to a stipulation for e-mail service entered into herein.

☒ (STATE): I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (FEDERAL): I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed at Los Angeles, California on August 14, 2008.

Linda Pettigrew

# SERVICE LIST

| Attorney/Addressee | Party(ies) Served | Method of Service |
|---|---|---|
| Jeffrey Turkell, Esq.<br>Wilson & McQueeny<br>500 N. Brand Blvd., Ste. 900<br>Glendale, CA 91203<br>jeffrey.turkell@ffic.com | The American<br>Insurance Company | By Mail |
| Alan P. Jacobus, Esq.<br>Carroll, Burdick & McDonough,<br>LLP<br>44 Montgomery St., Ste. 400<br>San Francisco, CA 94104<br>ajacobus@cbmlaw.com | The Continental<br>Insurance Company | By Mail |
| Shane Heskin, Esq.<br>White & Williams LLP<br>1800 One Liberty Place<br>Philadelphia, PA 19103-7395<br>heskins@whiteandwilliams.com | Century Indemnity<br>Company ("Century") | By Mail |
| Gretchen A. Ramos, Esq.<br>Carroll, Burdick & McDonough,<br>LLP<br>44 Montgomery St., Ste. 400<br>San Francisco, CA 94104<br>gramos@cbmlaw.com | Continental Casualty<br>Company | By Mail |
| Steven Bitter, Esq.<br>Gordon & Rees, LLP<br>101 W. Broadway, Ste. 2000<br>San Diego, CA 92101<br>sbitter@gordonrees.com | Old Republic<br>Insurance Company<br>and Truck Insurance<br>Exchange | By Mail |
| Gary J. Lorch, Esq.<br>Gordon & Rees, LLP<br>633 W. Fifth Street, Ste. 4900<br>Los Angeles, CA 90071<br>glorch@gordonrees.com | Old Republic<br>Insurance Company<br>and Truck Insurance<br>Exchange | By Mail |
| Deborah A. Aiwasian, Esq.<br>Berman & Aiwasian<br>725 S. Figueroa St., Ste. 1050 | Century Indemnity<br>Company ("Century") | By Mail |

Heller
Ehrman LLP

PROOF OF SERVICE; CASE NO. BC391068

| Attorney/Addressee | Party(ies) Served | Method of Service |
|---|---|---|
| Los Angeles, CA 90017<br>Deborah.aiwasian@mclolaw.com | | |
| Marian Hertz<br>Colliau Elenius Murphy Carluccio<br>Keener & Morrow<br>40 Wall Street, 7th Floor<br>New York, NY 10005<br>Marian.Hertz@cna.com | The Continental<br>Insurance Company | By Mail |
| Vance Woodward<br>Carroll, Burdick & McDonough,<br>LLP<br>44 Montgomery St., Ste. 400<br>San Francisco, CA 94104<br>vwoodward@cbmlaw.com | The Continental<br>Insurance Company | By Mail |
| Shay Gilmore<br>Continental Insurance<br>Carroll, Burdick & McDonough,<br>LLP<br>44 Montgomery St., Ste. 400<br>San Francisco, CA 94104<br>sgilmore@cbmlaw.com | Continental Insurance<br>Company | By Mail |

LA 447944 v1

Heller
Ehrman LLP

PROOF OF SERVICE; CASE NO. BC391068